JENNINGS SIGMOND
800 North Kings Highway, Suite 403
Cherry Hill, NJ 08034
(856) 755-3484
By: James Katz, Esquire (JK-3915)
Attorneys for Plaintiff

| | |
|---|---|
| ALLIED PILOTS ASSOCIATION,<br>14600 Trinity Boulevard<br>Suite 500<br>Fort Worth, Texas 76155,<br><br>    Plaintiff,<br><br>    v.<br><br>AVIATION WORKERS RIGHTS<br>FOUNDATION, INC., 309 Fellowship<br>Road, Mt. Laurel, New Jersey 08064,<br><br>    and<br><br>LEROY "BUD" BENSEL,<br>No. 14 Larsen Park Drive<br>Medford, New Jersey 08055-8169,<br>individually and as representative<br>of a class consisting of former Trans<br>World Airlines, Inc., pilots employed<br>by TWA Airlines LLC as of<br>April 2001,<br><br>    Defendants,<br><br>    and<br><br>AMERICAN AIRLINES, INC.,<br>4333 Amon Carter Boulevard<br>Fort Worth, TX 76155,<br><br>    Rule 19 Defendant. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br><br>CIVIL ACTION NO.<br><br>02cv2917 (JEI)<br><br><br>COMPLAINT – CLASS ACTION |

FILED
JUN 19 2002
WILLIAM T. WALSH
CLERK

1

## CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT

### I. INTRODUCTION

1. This action for a declaratory judgment seeks to resolve threatened claims concerning the negotiation, formation and/or implementation of a collectively bargained seniority integration agreement between the Allied Pilots Association ("APA") and American Airlines, Inc. ("American"), under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188. The APA-American seniority integration agreement governs pilot training, flying assignments, cockpit positions and furloughs for over 13,000 pilots at a major air carrier operating nationwide and internationally. Plaintiff APA, therefore, seeks an adjudication of the propriety of the seniority integration agreement in order to forestall potential disruption of air transportation through serial challenges, at later dates and in multiple forums, to the collectively bargained agreement and its implementation. This case was originally brought before the United States District Court for the Northern District of Texas but was dismissed on June 7, 2002, on the ground that the court lacked personal jurisdiction over Defendant Bensel, a New Jersey resident.

### II. JURISDICTION AND VENUE

2. Because this action arises under federal law, this Court has subject matter jurisdiction under 28 U.S.C. § 1331. Venue is proper in this district under 28 U.S.C. §1391(b), because the defendants reside in this District.

2

## III. **PARTIES**

3. Plaintiff APA is an unincorporated association and labor organization maintaining its headquarters at 14600 Trinity Blvd., Suite 500, Fort Worth, Texas 76155-2512. The National Mediation Board ("NMB"), a federal agency, has certified APA as the exclusive bargaining representative under the RLA for a bargaining unit of airline pilots employed by American. On April 3, 2002, the NMB extended that certification so that as of that date the APA also represented the pilots who work for TWA Airlines, LLC ("TWA LLC"). Among the pilots represented by the APA are pilots residing in this District.

4. Defendant American is a corporation and air carrier maintaining its business headquarters at 4333 Amon Carter Blvd., Fort Worth, Texas 76155. American is named as a defendant in this matter as a necessary party pursuant to Fed.R.Civ.P. 19(a). In April 2001 American purchased certain assets of Trans World Airlines, Inc. ("TWA"), an air carrier that had filed for bankruptcy and whose pilots were represented for RLA bargaining purposes by the Air Line Pilots Association International ("ALPA"). Pending complete integration of the acquired TWA operations into the American system, American established a wholly owned subsidiary, TWA LLC, to carry on those former TWA operations. TWA LLC maintains its principal place of business at 4333 Amon Carter Blvd., Fort Worth, Texas 76155. Both American and TWA LLC conduct operations within this District. In the absence of American, complete relief cannot be

3

accorded to the other parties to this action, and, as a practical matter, American's ability to protect its interests would be impaired or impeded.

5. American and APA are now and at all relevant times have been parties to a collective bargaining contract covering the bargaining unit of approximately 11,300 pilots employed by American. Subsequent to the April 2001 purchase of TWA assets, American and APA negotiated and executed a modification of the collective bargaining agreement. This supplemental agreement ("Supplement CC" or "Seniority Integration Agreement"), dated November 8, 2001, governs the allocation of seniority standing between incumbent American pilots and those former TWA pilots who are employed by TWA LLC and who became employees of American by virtue of a "single carrier" determination by the NMB on March 5, 2002, finding that the former TWA operations carried on by TWA LLC had become part of American's transportation system for RLA representation purposes. Supplement CC took effect on April 3, 2002, when the NMB declared that APA was the certified bargaining representative for the pilots in the single transportation system. Prior to that date, and during the time that APA negotiated and entered into Supplement CC with American, ALPA was the exclusive RLA collective bargaining representative of the TWA LLC pilots.

6. Defendant Leroy "Bud" Bensel, whose residential address is No. 14 Larsen Park Drive, Medford, New Jersey 08055-8169, is a former TWA pilot who was initially employed by TWA LLC in April 2001 and is still currently employed by TWA LLC.

Since April 3, 2002, Defendant Bensel's employment has been governed by the APA-American collective bargaining contract, including Supplement CC. As a member of ALPA's TWA MEC Merger Committee, Defendant Bensel personally participated in meetings and discussions with APA officials concerning, among other things, the future seniority placement of former TWA pilots once they became part of the American workforce and bargaining unit.

7. On behalf of himself and other former TWA pilots, and as the President and principal spokesman for Defendant Aviation Workers Rights Foundation, Inc. ("AWRF"), a New Jersey corporation, Defendant Bensel has been outspoken in his public criticism of Supplement CC, of the APA's conduct in negotiating Supplement CC, and of the APA's conduct during its discussions with the TWA LLC MEC over seniority. Individually and through AWRF, Defendant Bensel has publicly and repeatedly threatened litigation against APA and American concerning these issues.

8. Defendant Bensel is sued, pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2), in both his individual capacity and as a representative of a Class of persons consisting of former TWA airline pilots who became employees of TWA LLC when American established the entity in April 2001. All members of the proposed Class are covered by and affected by Supplement CC.. The members of the Defendant Class are readily identifiable from the business records of TWA LLC, and the Class is comprised of at least 2300 TWA LLC pilots, who are dispersed geographically throughout the United

States. The claims of the APA against Defendant Bensel and all proposed Class members are capable of orderly and efficient administration and adjudication in this action.

9. Defendant AWRF is a New Jersey corporation formed for the purpose of challenging the legality of the seniority integration ultimately established in Supplement CC. AWRF's principal place of business is located at 309 Fellowship Road, Mt. Laurel, New Jersey 08064.

## IV. GENERAL ALLEGATIONS

10. At all times relevant to this action, APA has been certified by the NMB to represent a single bargaining unit, the pilots employed by American. On April 3, 2002, the NMB extended APA's certification to the TWA LLC pilots.

11. On or about April 10, 2001, American acquired certain assets of TWA under a purchase agreement approved by a federal Bankruptcy Court. American did not immediately incorporate all of the acquired TWA assets and associated airline operations into the American transportation system, and former TWA pilots did not immediately become employees of American. Rather, during a transitional period following the April 10 acquisition, certain operations formerly conducted by TWA have been carried on by TWA LLC, American's wholly owned subsidiary. During that transitional period until April 3, 2002, TWA LLC recognized and dealt with ALPA as the exclusive collective bargaining representative of former TWA pilots who took employment with TWA LLC. That recognition of ALPA remained in effect until April 3, 2002, when the NMB issued

6

a determination establishing that, for RLA purposes, APA was the certified bargaining representative for pilots in the combined American and TWA LLC transportation system.

12. At the time American acquired TWA assets, Section 13 of the collective bargaining agreement between APA and American provided that all pilots entering American's workforce and bargaining unit for the first time, either through an acquisition or as new hires, obtained a seniority date and seniority rights corresponding to the original date on which they were first assigned to air line flying duty by American. Neither the American-APA collective bargaining agreement, nor any other agreement to which APA was a party, required the APA to participate in any particular process for the integration of seniority lists in the event that American acquired the assets of another carrier. Thus, in the event American were to hire a group of pilots in connection with American's acquisition of all or part of another carrier, Section 13's date-of-hire seniority provision would protect incumbent American pilots' job security by requiring "end tailing" of the new pilots' seniority standing after that of the incumbent American pilots.

13. During the period April-October 2001, APA negotiated in good faith with American for a supplemental agreement, now codified as Supplement CC, that would modify the seniority provisions of the existing APA-American collective bargaining agreement as they would apply - - and as of April 3, 2002, were applied - - to former TWA pilots who became part of the American workforce and bargaining unit. American and APA formally executed Supplement CC on November 8, 2001.

14. Although APA was under no obligation to engage in any particular process involving TWA LLC pilots to achieve a seniority integration agreement, during the period February-October 2001, APA also held at least 25 days of meetings with ALPA's TWA LLC MEC Merger Committee to discuss seniority integration and other issues arising from American's purchase of TWA. Defendant Bensel personally attended and participated in at least four days of these meetings as Chairman of the TWA MEC Merger Committee. As a result of those meetings, and although APA had no obligation to do so, the APA received and incorporated many of the TWA LLC MEC Merger Committee's ideas and concerns into the APA's negotiations with American for Supplement CC.

15. Supplement CC modifies the general seniority provisions of the existing APA-American contract to the advantage of many former TWA pilots. For example, instead of placing all incoming TWA LLC pilots after incumbent American pilots on the American seniority roster, as Section 13 would require, Supplement CC assigns 1095 former TWA LLC pilots a seniority ranking above that of incumbent American pilots and gives all remaining former TWA LLC pilots a seniority placement retroactive to the April 10, 2001 acquisition date, rather than commencing on such date as they actually were assigned to air line flying duty in American's transportation system. In addition, Supplement CC includes certain provisions, known in the industry as "fences," that give TWA LLC pilots protected bidding rights and Captain upgrade rights on aircraft formerly operated by TWA, particularly in St. Louis, the only former TWA pilot "base" that

American, in its discretion, has chosen to maintain. Thus, Supplement CC strikes a compromise between the complete "dovetailing" of American pilots' and former TWA pilots' respective seniority rankings and the complete "end tailing" of former TWA pilots upon their employment with American. The APA took this course in a good-faith attempt to balance legitimate career expectations of incumbent American and former TWA pilots.

16. Supplement CC had no effect on pilots in the separate bargaining unit represented by ALPA at TWA LLC until April 3, 2002, when the NMB certified APA as the collective bargaining representative of pilots within the combined system. At that time, the collective bargaining agreement between ALPA and the TWA LLC, by its express terms, terminated.

17. On November 9, 2001, APA filed a petition with the NMB seeking a legal determination that American and TWA LLC were a single transportation system and a single carrier for RLA collective bargaining purposes. On December 4, 2001, American responded to APA's petition and took the position that a single transportation system and single carrier existed as of December 2, 2001. The NMB subsequently received submissions from other interested persons, including ALPA and AWRF, contesting the petition for a single carrier determination. On March 5, 2002, the NMB determined that American and TWA LLC constituted a single transportation system. On April 3, 2002, the NMB declared that APA was the exclusive bargaining representative for all pilots in that system, including those at American and TWA LLC.

9

18. Prior to and since November 2001, a group of TWA LLC pilots calling themselves AWRF began collecting funds to assert their seniority integration demands through litigation and other action. Among other things:

a. Defendant Bensel has identified himself as the principal representative, President and spokesman for AWRF. In his own name, and on behalf of other TWA LLC pilots who wish to protect their identities, Defendant Bensel has publicly challenged Supplement CC, APA's conduct in negotiating Supplement CC with American, and APA's conduct in its dealings with the TWA LLC MEC as unfair and improper and has threatened litigation over the matter.

b. In early December 2001, AWRF announced the retention of legal counsel to achieve a different seniority integration. AWRF declared that the former TWA pilots were "clearly contemplating action in the near term" to remedy what they alleged to be APA's failure to negotiate seniority issues with the TWA LLC MEC and to achieve a result other than Supplement CC.

c. By letter dated December 13, 2001 and published on AWRF's web site, Defendant Bensel harshly criticized Supplement CC and demanded, on behalf of AWRF and the former TWA pilots, that ALPA oppose APA's single carrier petition before the NMB.

d. On December 13, 2001, AWRF filed its own submission with the NMB contesting APA's single carrier petition and charging, among other things, that

APA failed to bargain in good faith with the TWA LLC MEC and that Supplement CC is not "fair and equitable."

e. Also on December 13, 2001, AWRF wrote the U.S. Secretary of Transportation seeking immediate action by the President of the United States to override Supplement CC, alleging that "the seniority integration rights of the TWA pilots" are "currently under siege by American Airlines . . . and its pilots union, Allied Pilots Association."

f. Also in its filings before the NMB, in public statements and in filings and other declarations to the Court in the predecessor action (in Ft. Worth) to this case, Defendants AWRF and Bensel have claimed that American defrauded the former TWA pilots into waiving, through their collective bargaining representatives, certain provisions in the TWA/ALPA collective bargaining agreement and that the APA "colluded" in that alleged fraud in order to "railroad" the TWA pilots into what they deem an unfair and improper placement - - by means of Supplement CC - - on the combined American/TWA LLC seniority list.

19. On the basis of these charges, Defendants AWRF and Bensel have threatened litigation, the objective of which is to invalidate the seniority integration agreement contained in Supplement CC and replace it with another seniority integration method.

20. While Defendant Bensel, on his own behalf and on behalf of former TWA pilots and as the principal spokesman for AWRF and its members, has complained about

11

insufficient "dovetailing" of TWA LLC pilot seniority under Supplement CC, incumbent American pilots have concurrently accused APA of being too generous to former TWA pilots at the expense of incumbent American pilots. Among other things, affected APA members have contended that APA could have and should have insisted on "end tailing" all former TWA pilots who join the bargaining unit after incumbent American pilots, as required by Section 13 of the APA-American collective bargaining contract.

21. APA thus faces competing claims, potentially in multiple venues, asserting conflicting interests and liabilities under federal law, because it has concluded a Seniority Integration Agreement that neither completely "dovetails" nor completely "endtails" the former TWA pilots' seniority rankings, but which instead seeks to balance competing considerations and legitimate career expectations of both incumbent American and former TWA pilots. APA's ability to honor and administer its lawful and binding contract with American will be compromised by the litigation threatened by Defendants Bensel and AWRF and potentially other affected claimants on both sides of the seniority divide.

22. The revised and integrated seniority list of American pilots as determined under Supplement CC governs numerous important terms and conditions of employment under the collective bargaining agreement between APA and American, including the award of flying assignments and positions, furloughs and displacements, and bidding on flight schedules throughout the combined system. Multiple litigations in multiple venues will doubtless disrupt the complex, interrelated facets of the pilot assignment and training

system, thereby potentially threatening the efficient provision of air transportation services by American.

23. In addition, serial litigation, in a variety of forums, with respect to the seniority integration poses a clear and present financial danger to American in the event Supplement CC must be revised and American must incur the considerable expense of modifying the seniority and assignment system for all of its pilots.

24. Finally, as the exclusive bargaining representative of pilots in the combined system, charged with the duty to administer and enforce the collective bargaining contract, APA has an obvious and legitimate interest in determining whether that agreement will be enforceable as negotiated and agreed to with American.

25. Accordingly, APA seeks the remedy of declaratory judgment under 28 U.S.C. §2201 in order to resolve these uncertainties and competing claims; to confirm the lawfulness of Supplement CC; to minimize potential damage to APA, to American itself and to the nation's air transportation system; and to avoid potentially conflicting rulings in multiple lawsuits arising from the same transaction and raising the same issues.

## V. DEFENDANT CLASS ALLEGATIONS

26. Defendant Bensel is sued individually and as a representative of a Class as defined by Fed. R. Civ. P. 23(b)(1) or (b)(2). Accordingly, the Court should enter an Order certifying a defendant class consisting of Defendant Bensel and all former TWA pilots employed by TWA LLC as of the establishment of TWA LLC in April 2001.

267. The Defendant Class is so numerous that joinder of all members is impracticable. In excess of 2300 former TWA pilots became employees of TWA LLC as of the establishment of TWA LLC in April 2001, and those pilots are dispersed geographically throughout the United States.

28. In that Supplement CC between American and APA affects Defendant Bensel and each and every member of the Defendant Class, there are questions of law and fact pertaining to the legitimacy of the negotiation, formation and implementation of Supplement CC that are common to all members of the Class.

29. The widely-publicized contentions of Defendant Class Representative Bensel involving the negotiation, formation and implementation of Supplement CC - - including, without limitation, the contention that Supplement CC was wrongfully negotiated and formed, that Supplement CC itself is illegitimate and wrongful, that Supplement CC is the product of wrongful "collusion" between APA and American and that the implementation of Supplement CC would impose actionable injury on the former TWA pilots employed by TWA LLC - - are typical of the expected defenses of the Class in this case.

30. Defendant Class Representative Bensel has the same interest in defending this lawsuit as the members of the Defendant Class and will fairly and adequately protect the interests of the Defendant Class. Indeed, Defendant Class Representative Bensel has already voluntarily purported to take on a representative status for former TWA pilots employed by TWA LLC by forming AWRF and by publicly decrying the process by

14

which Supplement CC was negotiated and concluded, by charging unlawful collusion between American and APA and by proclaiming the allegedly wrongful impact of Supplement CC on former TWA pilots employed by TWA LLC. Defendant Class Representative Bensel, in his role as principal representative of AWRF, has already retained the services of well-qualified, experienced, able and nationally prominent counsel to represent the interests of former TWA pilots employed by TWA LLC. Said counsel will also fairly and adequately represent the interests of the Defendant Class.

31. The prosecution of the APA's claims with respect to Supplement CC against individual members of the Class in separate actions in various jurisdictions - - or the prosecution by individual class members of claims with respect to Supplement CC against the APA in separate actions in various jurisdictions - - would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the APA.

32. In negotiating and concluding Supplement CC with American, the APA has acted or refused to act on grounds generally applicable to all members of the Defendant Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## VI. PRAYER FOR RELIEF

WHEREFORE, APA respectfully requests that this Court enter a Judgment and Order in its favor:

(a) certifying a Defendant Class consisting of Named Class Representative Bensel and all former TWA pilots employed by TWA LLC as of the establishment of TWA LLC in April 2001;

(b) declaring that Supplement CC is a legally enforceable agreement, properly negotiated by APA within the scope of its authority and responsibility as the exclusive bargaining representative of the American pilots;

(c) declaring that at the time APA negotiated and concluded Supplement CC with American, APA did not owe and did not violate any duty of fair representation or any other duty or obligation to former TWA pilots or current TWA LLC pilots who were not employed by American and who were not yet part of APA's certified American bargaining unit;

(d) declaring that APA will not violate any legal obligation to former TWA pilots, current TWA LLC pilots or current American pilots by honoring and enforcing Supplement CC as written, as of and after its effective implementation date; and

(e) declaring that APA engaged in no wrongful action, including collusion, with American or any other person, in order to violate any right or entitlement of the former TWA pilots or current TWA LLC pilots; and

16

(f) granting such other and further relief as this Court may deem just and proper.

> Respectfully Submitted,
>
> _/s/ James Katz_
> James Katz (JK-3915)
> JENNINGS SIGMOND
> Summit Buildings
> 800 North Kings Highway, Suite 403
> Cherry Hill, N.Jersey 08034
> (856) 755-3484
> (856) 667-6982 FAX
>
> Edgar N. James
> D.C. Bar No. 333013
> Steven K. Hoffman
> D.C. Bar No. 384696
> Kathy L. Krieger
> D.C. Bar No. 385877
> JAMES & HOFFMAN, P.C.
> 1101 17th Street, N.W., Suite 510
> Washington, D.C. 20036
> (202) 496-0500
> (202) 496-0555 FAX
>
> Wesley G. Kennedy
> Illinois Bar No. 6188089
> ALLISON, SLUTSKY & KENNEDY
> 208 South LaSalle St., Suite 1880
> Chicago, IL 60604
> (312) 364-9400
> (312) 364-9410 FAX
>
> COUNSEL FOR PLAINTIFF
> ALLIED PILOTS ASSOCIATION

DATED: June 19, 2002