John B. Clark Jr.
PO Box 5926
Incline Village, NV 89450
(775) 233-4842

December 4, 2006

Honorable Joseph E. Irenas
United States District Court for the District of New Jersey
401 Market Street, Room 310
Camden, NJ 08101
VIA FACSIMILE (856) 757-5295 and US Mail

RE: Bensel, et al. v. Airline Pilots Association, et al., Civil Action No. 02-2917

Your Honor:

I was served a subpoena in the above matter on November 3, 2006 at Los Angeles International Airport after clearing U.S. Customs following my work as an American Airlines pilot on a flight from Tokyo, Japan. The deposition pursuant to this subpoena was conducted Friday, December 1, 2006 at the Hyatt Regency Lake Tahoe in Incline Village, Nevada. I made it clear to the Plaintiff and his counsel, Mr. Press that I viewed this subpoena was both harassment and intrusion into my privacy as I was not a party or an officer of a party. My union, APA, had been dismissed from the case and I did not have the documents requested in their subpoena. I notified Mr. Press, by letter on November 14, 2006, that I objected to the subpoena and why (attached).

Immediately following my deposition, as I was leaving the hotel and was 50-75 feet walking away from the door of the meeting room where the deposition was recorded, I heard Mr. Bensel shout out to me saying:

"YOU ARE SO DEAD, IT'S UNBELIEVABLE!"

I stopped and turned around to confirm Mr. Bensel was shouting at me and saw him standing outside the door, looking at me with no one else in the hallway between he an myself. I then observed him going back into the meeting room and close the door. I went back and re-entered the meeting room and asked him to repeat what he had just said. He mumbled something like, "if you didn't hear it, then I didn't say anything." He then added, "Happy Holidays." Mr. Press was in the room as was the court reporter and video recording technician and observed this exchange. I said nothing further, left the room and went home. About a half an hour later, I called Mr. Press in his hotel room to emphasize my extreme displeasure at being threatened by his client and attempted to reconcile the problem. I told him that I intended to notify the Court of the incident. Mr. Press denied hearing Mr. Bensel's comments, but agreed to speak with him and call me back. He called me back and said his client did not threaten me. I told him I was clear about what I had heard and would follow through with a letter to the Court. A short time later, Mr. Bensel called me using Mr. Press' cellular phone and refused to admit what he said. Instead, he said he was wishing me well. I told him that was a preposterous mischaracterization and again asked him to repeat what he had actually said. He refused. I told him he was harassing me and hung up.

It is clear to me Mr. Bensel is abusing his subpoena power for political or other retaliation against me, a non party. At worst, he has threatened the life of the non party.

Letter to Honorable Joseph E. Irenas
December 4, 2006

Mr. Press was in the meeting room and within 10 feet of Mr. Bensel when he shouted his threat out to me as I was about 50-75 feet down the hall walking away. Thus, Mr. Press' statement to me that he did not hear the threat is incredible, but is troublesome as well. Subsequent to this, I contacted three witnesses who all recalled that Mr. Bensel said something to me down the hallway, but they could not say exactly what:

    (1) The court reporter, Kim Waldie (530) 577-5548; and
    (2) The video recording technician, Bill Stephens (775) 322-6292; and
    (3) The video conferencing technician, Megan Kutzkey (775) 886-6707.

At the point Mr. Bensel made his comments, Ms. Kutzkey was sitting in the hall just a few steps further from where I stopped and turned back to go to the meeting room (She had been waiting to collect her equipment). They all heard Mr. Bensel say something and they all observed how upset I was when I returned to the meeting room and then left.

Both Mr. Bensel, as a party to the suit, and Mr. Press, as his attorney and as an officer of the Court, are responsible for the issuance and service of the subpoena to which I was responding. As such, they have an obligation to avoid imposing upon me any annoyance, embarrassment, oppression, or undue burden. After Mr. Bensel's comments, I made several good faith attempts to confer with Mr. Bensel and Mr. Press in an effort to resolve the dispute without court action, but neither would even acknowledge Mr. Bensel's comments, much less explain or apologize for them. The facts and circumstances of their misconduct have unreasonably infringed on my privacy and therefore call for a measure of extra protection. Thus, I believe there is good cause for me to move that Mr. Bensel and his counsel be sanctioned. Specifically, I am asking that the Court take any or all of the actions below, or other actions the Court deems appropriate:

1. Order that all records of my deposition and exhibits be confiscated and placed under Court seal and (a) prohibited from any release or any use by any party, or (b) only made available to parties pursuant to specific Court order; and
2. Order prohibiting plaintiffs from any public or private communication regarding my deposition; and
3. Order prohibiting plaintiffs from issuing any further subpoenas upon me; and
4. Order prohibiting plaintiffs from issuing any further subpoenas to any other non-parties without approval of the subpoena by the Court; and
5. Whatever additional sanctions the Court may deem appropriate.

Please feel free to contact me if you have any questions.

Sincerely,

John B. Clark Jr.

Atch: Letter, November 14, 2006
Cc: Allen P. Press, Esq.
    Daniel M. Katz, Esq.

John B. Clark Jr.<br>
578 McDonald Dr.<br>
Incline Village, NV 89451<br><br>
November 14, 2006

Allen P. Press, Esq.
Green Jacobson & Butch, P.C.
7733 Forsyth Blvd - Suite 700
Clayton, MO 63105
VIA FACSIMILE (314) 862-1606 and FedEx - Tracking Number:

Re: Subpoena for Bensel et al v. Air Line Pilots Association

Mr. Press:

On November 3, 2006 you served me with a subpoena in Los Angeles, California in the above matter. Pursuant to our telephone conversation today and our more lengthy conversation in early October of this year, I am sending this letter. We agreed to have my deposition in Incline Village, NV at 1:30 PM on Friday, December 1, 2006. You said you will send me a letter via FedEx to confirm the location once you have that scheduled. Both times you and I have spoke at length about this case, I have sought to make clear that you understand several points, so I will list them here for you as well.

We discussed my concerns about your subpoena in which I made it clear that I object to the following at the very least:

1. I told you that I am unable to plan on traveling to Los Angeles on November 28, 2006. I also explained that date conflicts with my Air Force Reserve commitment.

2. You have requested a very large amount of documentation to be produced and I have told you I no longer have any since they have long ago been disposed of due to my family moving twice in the last three years.

3. I have told you I no longer have the computers I used during the time frame you are requesting documentation to be produced and I have told you that if you were to show me some document from another source I would have a difficult time recalling the issues or if it was indeed authentic because I could not verify its authenticity with either a hard-copy or electronic version.

4. After you implied that ALPA has not been entirely responsive to your document discovery requests, I told you that this upcoming deposition was your one chance to depose me. You acknowledged that you understood this was your "one bite at the apple." I will object if further subpoenas are issued against me.

I will answer your questions as I am able, but will not be bringing any documents described in the subpoena.

Sincerely,<br><br>
John B. Clark Jr.