IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LEROY "BUD" BENSEL, ET AL. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 02-2917 (JEI) |
| ) | |
| ALLIED PILOTS ASSOCIATION, ) | |
| ET AL. ) | Motion Date: February 1, 2010 |
| ) | |
| Defendants. ) | |

**REPLY BRIEF OF DEFENDANT AIR LINE PILOTS ASSOCIATION, INT'L, IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF THE ORDER OF DECEMBER 17, 2009, DENYING SUMMARY JUDGMENT, FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b), AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION OF THE ORDER OF DECEMBER 17, 2009, DENYING PLAINTIFFS' SANCTIONS MOTION, FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b)**

Archer & Greiner
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, New Jersey 08033-0968
(856) 795-2121
By:   John C. Connell, Esquire
      Alexander Nemiroff, Esquire

*Pro Hac Vice*:
    Daniel M. Katz, Esquire
    Katz & Ranzman, P.C.
    4530 Wisconsin Ave., N.W., Suite 250
    Washington, DC  20016
    (202) 659-4656

Counsel for Defendant Air Line Pilots Association, International

ALPA responds below, first, to Plaintiffs' objections to the certification for interlocutory appeal of the Court's denial of summary judgment. We then explain ALPA's reasons for opposing an interlocutory appeal of the Court's denial of Plaintiffs' request for sanctions.

## I. ALPA's Motion to Certify Should Be Granted

### A. "Controlling Questions of Law"

Plaintiffs' opposition to ALPA's motion to certify an interlocutory appeal does not come to grips with ALPA's showing that the two specific issues for appeal are controlling questions of law. Plaintiffs erroneously argue that ALPA is asking to appeal issues that are "factual" and "vague." Plaintiffs have misconstrued ALPA's request.

The first issue concerns the judicial deference owed to a union's collective bargaining decisions when bad faith is alleged. The Court has held that a jury might reasonably find a bad faith violation of the duty of fair representation ("DFR") based solely on an inference that a union's strategic decisions concerning the group it represented were colored by its desire to "curry favor" with another group if the union desired to expand its representation to the other group. Opinion at 21-22. This position is in tension, however, with the Supreme Court's directive, based on the particular structure and purpose of unions, that courts owe a high degree of deference to a union's decisions regarding bargaining, and that plaintiffs claiming bad faith must therefore produce "substantial evidence of fraud, deceitful action or dishonest conduct." *Humphrey v. Moore*, 375 U.S. 335, 348 (1964). It may be that, as this Court observed, "The focus of the case at bar is not . . . the wrongfulness of the decisions made by ALPA, but rather ALPA's state of mind when making those decisions." Opinion at 20. We respectfully submit, however, that, since organizing is a fundamental right of unions under the Railway Labor Act, the judiciary should refrain from inferring dishonesty or deceitful action simply from a union's

goal, expressed by its elected representatives, to expand its representation of workers to additional employers in the same industry. ALPA's suggested approach would require proof that the union acted against the interests of the represented employees in order to win over another group, extending appropriate deference to the union's decision-making in accordance with the Supreme Court's directive in *Humphrey* and its progeny, similar to the approach the courts implement in reviewing legislative determinations.

The second issue is whether an essential element of an action for a bad faith DFR breach is a showing that the union would have acted differently in the absence of its improper motivation and that, if it had, the union's conduct actually harmed the plaintiffs because the outcome would have been different. While this Court has drawn an analogy to the harm under 18 U.S.C. § 1346 in "depriv[ing] the public of its right to disinterested decision making," Opinion at 20, the Third Circuit has approvingly quoted Judge Learned Hand's statement in *Western Union Telegraph Co. v. NLRB*, 113 F.2d 992, 997 (2d Cir. 1940), that liability *under the labor laws* must rest on "proof that 'the unfair labor practice' actually impinged upon the putative victims and caused them pecuniary damage." *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1019 n.29 (3d Cir. 1977) (finding no liability for DFR violations based on misrepresentations "in the absence of injury proximately caused by the misrepresentations").

Contrary to Plaintiffs' contentions, these two issues raise purely legal questions. Each satisfies the standard the Third Circuit has established for a "controlling issue of law," in that "if erroneously decided, [it] would result in reversible error on final appeal." *Viking Yacht Co. v. Composites One L.L.C.*, No. 05-538 (JEI/JS), 2009 WL 1683991, at *1 (D.N.J. June 15, 2009).

Plaintiffs erroneously contend, however, that Third Circuit law bars § 1292(b) review of an order denying summary judgment. The cases Plaintiffs cite do not support that proposition

and Plaintiffs misrepresent the law in positing such a rule. Thus, in *Chambers Development Co. v. Passaic County Utilities Authority*, 62 F.3d 582, 584 (3d Cir. 1995), the Third Circuit addressed an appeal from a final order, not a request for interlocutory review under § 1292(b). In the other cases Plaintiffs cite in which § 1292(b) certification was denied, the question for review was not a legal issue, as in the present case, but whether a genuine issue of material fact actually existed to justify the denial of summary judgment. *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 676-77 (7th Cir. 2000); *Hart v. Overseas Nat'l Airways Inc.*, 541 F.2d 386, 391, 394 (3d Cir. 1976). In contrast, ALPA does not ask that the Third Circuit go "hunting through the record compiled in the summary judgment proceedings to see whether there may be a genuine issue of material fact lurking there." *Ahrenholz*, 219 F.3d at 677. Rather, ALPA has posed two specific legal questions that control the outcome of this case for which it seeks immediate appellate court review.[1]

### B. "Substantial Ground for Difference of Opinion"

Plaintiffs also dispute that there are substantial grounds for differences of opinion on either of the two issues presented for immediate appeal. They argue first that "the Court properly denied summary judgment," Opposition at 4, but this effort to reargue their opposition to summary judgment misses the point.

ALPA's § 1292(b) motion does not turn on the question whether the Court's denial of summary judgment is right or wrong, but on whether the issues for interlocutory review are subject to reasonable debate and disagreement, which is the test under Third Circuit law. Here,

---

[1] Decisions discussed in ALPA's opening brief entailed interlocutory appeals from summary judgment denials, *see, e.g., United States v. 92 Buena Vista Ave.*, 742 F. Supp. 189 (D.N.J. 1990); *Abrams v. United Steelworkers of Am., AFL-CIO-CLC*, No. 1:07-CV-181, 2009 WL 700699 (S.D. Ohio Mar. 13, 2009), and the Third Circuit has frequently authorized interlocutory appeals under § 1292(b) from district court rulings denying summary judgment. *See, e.g., Colacicco v. Apotex, Inc*, 521 F.3d 253, 261 (3d Cir. 2008); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 378 (3d Cir. 2007); *Bartnicki v. Vopper*, 200 F.3d 109, 113-14, 129 (3d Cir. 1999), *aff'd*, 532 U.S. 514, 535 (2001); *Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 97 (3d Cir. 1994).

as in *Levine v. United Healthcare Corp.*, 285 F. Supp. 2d 552, 559 (D.N.J. 2003), "the issues involved in this case are complex and subject to debate." This prong of the § 1292(b) test is met because "the question involved here is admittedly complicated and sufficiently close that reasonable minds could disagree with this Court's conclusion." *Id.* at 560.

Plaintiffs next claim that "the Third Circuit has already addressed the issue of bad faith," Opp. at 5, but this is simply untrue. The Third Circuit did not rule in 2004 on the bad faith issue ALPA now seeks to appeal. The majority of the Third Circuit panel merely held that "it is premature to dismiss these duty of fair representation claims at this time," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 311 (3d Cir. 2004), because, as this Court put it, Opinion at 9, "under the ray of hope doctrine, the statute of limitations did not preclude Plaintiffs' suit against ALPA."

Despite exhaustive discovery, Plaintiffs have not adduced any evidence that ALPA failed to take any specific actions on behalf of the former TWA pilots for an improper purpose and have not produced any proof that the former TWA pilots would have fared better if ALPA had done anything differently. This Court nonetheless found that an inference could be drawn based on what it viewed as "ALPA's conflict of interest with regard to actively recruiting the American pilots," Opinion at 25, a fundamental union right under the Railway Labor Act, by analogizing the situation to one facing a lawyer attempting to represent two clients with conflicting interests in the same matter. The Third Circuit panel, however, neither addressed nor resolved this issue in its 2004 ruling.

Plaintiffs next contend that ALPA raised the causation issue for the first time in the present motion; this assertion also is incorrect. ALPA explicitly addressed the issue in its summary judgment reply brief (Doc. 309) at 4-5, and this Court discussed the issue in its Opinion at 13. It is not a new issue to the case.

Finally, Plaintiffs contend that the Supreme Court has adopted the analogy of the DFR to the attorney-client relationship. This too is wrong. In arguing the absence of a debatable issue on the degree of judicial deference due to the bargaining determinations of unions, Plaintiffs confuse the Supreme Court's explanation of the reason for the creation of the DFR with its articulation of the extent of the duty. Opp. at 7-8 (citing *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 74-75 (2001)). The **origins** of the DFR may echo those of a lawyer's professional obligations to her clients—both are granted exclusive authority to act in a particular area, and both thereby have duties to those on whose behalf they act—but the **standards** for those obligations clearly differ. Indeed, when the Supreme Court first conceived the DFR in *Steele v. Louisville & Nashville Railway Co.*, 323 U.S. 192, 198-99 (1944), the comparison the Court drew was not to the attorney-client relationship but to the relationship between courts and legislatures. The Court continued and reinforced that analogy in *O'Neill*, 499 U.S. at 78-81, and that level of deference appears throughout the corpus of DFR decisional law.

Unions attempt to increase the bargaining power of workers by representing the employees of numerous employers within the same industry, with the result that they seek to organize those whom they do not already represent. While representing and seeking to represent these overlapping and divergent constituencies, unions like ALPA operate, by law and custom, within the framework of bylaws that require the regular election of officers by and from the ranks of the represented workers themselves. ALPA's decision-making, like that of many other labor organizations, is a function of the determinations of the pilots of the airline who are affected by and involved in the bargaining on their behalf. Hence, the Supreme Court in *O'Neill* emphasized the importance of judicial deference to unions' bargaining determinations, an approach at odds with the wholesale incorporation of a lawyer's ethical requirements into the

collective bargaining arena. *Id.* We respectfully submit that this Court's adoption of principles relevant to lawyers' ethical standards in the context of labor union collective bargaining unnecessarily departs from well-established DFR precedent regarding both judicial deference to union decision-making and causation, as discussed in ALPA's opening brief at 6-12, and that the substantial grounds for differences of opinion on this issue argue for interlocutory review.

### C. "May Materially Advance the Ultimate Termination of the Litigation"

Plaintiffs fail to meet ALPA's point that the trial in this case, which they admit "will be lengthy," Opp. at 11, would waste valuable judicial resources and constitute an unnecessary expense for the parties, if the appellate court disagrees with this Court's resolution of either of the two legal questions ALPA now seeks to appeal. If ALPA is correct with respect to the proper disposition of either of these issues, no trial will be needed. Even if a trial is ultimately required, moreover, evidentiary rulings and jury instructions will undoubtedly be affected if the Third Circuit's resolution of these issues differs from that of this Court. Thus, regardless of the time that has elapsed since the initiation of this case, it presents a classic case for interlocutory review of the legal issues in question.

Plaintiffs nonetheless argue that this Court should deny permission to seek an interlocutory appeal on account of the timing of ALPA's request, citing *SEC v. Lucent Technologies, Inc.*, 2009 WL 4508583 (D.N.J. Nov. 16, 2009), and *Viking Yacht Co. v. Composites One L.L.C.*, 2009 WL 1683991 (D.N.J. June 15, 2009). In *Viking Yacht*, 2009 WL 1683991, at *1-*2, the motion for certification was filed just ten days before the trial, and sought to amend an order entered almost two years earlier, among others. In *Lucent*, 2009 WL 4508583, at *10, the motion was also "significantly time-delayed," having been filed four years after the court's decision on the key legal question and only nineteen days before the final pre-

trial conference. Here, by contrast, there is no date set for a pre-trial conference or trial. And, unlike in *Lucent* and *Viking Yacht*, ALPA acted expeditiously after the Court denied summary judgment on December 17, 2009, filing its motion to certify on January 5, 2010. Doc. 312, 314.

## II. Plaintiffs' Cross-Motion Should Be Denied

As an afterthought, Plaintiffs toss out the conditional request that the Court's denial of their sanctions motion should be certified for immediate appeal if ALPA's motion is granted. Opp. at 11-12. Plaintiffs' request should be denied. Other than the fact that the Court denied ALPA's summary judgment motion and Plaintiffs' sanctions motion on the same day, the rulings have nothing in common.

Plaintiffs do not even attempt to show that the three prongs of the § 1292(b) standard are met as to their sanctions motion. And for good reason. The sanctions motion was entirely fact-driven, and Plaintiffs have not even attempted to identify a controlling issue of law appropriate for appellate court review. Indeed, they cite no basis for debate as to the propriety of this Court's ruling. In a word, it is precisely the type of interlocutory order that has always awaited a final order before being subject to appeal.

Plaintiffs improperly seek to justify their request for an immediate appeal by referring to a supplemental production of documents by the firm Cohen, Weiss and Simon LLP. The law firm—a third party that produced documents pursuant to a Rule 45 subpoena duces tecum served on it in 2008—explained in its transmittal letter accompanying the supplemental production of documents that these materials were discovered as a result of some year-end housekeeping: "After finding a responsive document in a year end clean-up of unrelated files, we reviewed additional files and located further documents, all of which are included in the enclosed CD."

Plaintiffs' effort to spin this responsible and forthcoming production of later-discovered materials into spoliation fails for three reasons. First, Plaintiffs mistakenly equate supplemental production with spoliation. But the former does not establish the latter and the law firm's supplemental production demonstrates the openness with which it has fulfilled its discovery obligations. Next, Plaintiffs compound this error by conflating the conduct of a third party—ALPA's outside legal counsel—with the conduct of ALPA. Rule 26(e) requires a "party" to supplement its production of documents, but Rule 45 imposes no comparable duty on an entity such as Cohen, Weiss and Simon that is not a "party" to the litigation.[2] Finally, Plaintiffs make no effort to establish that the materials contained in the recent production have any relevance to the current issue, and indeed the recent production yields no new relevant information. Plaintiffs refer to the law firm's production of "emails to and from ALPA's President," Opp. at 12, but ALPA some time ago produced the same emails in a form that differs only in reflecting additional transmissions of the same messages. Plaintiffs do not even allege that a single one of these emails has significance as to any issue discussed in the parties' substantial summary judgment filings. The law firm's supplemental production accordingly provides no support for Plaintiffs' sanctions motion, nor for their conditional request to certify the Court's order denying their sanctions motion for interlocutory appeal under 28 U.S.C. § 1292(b).

## CONCLUSION

For the foregoing reasons, as well as those set forth in ALPA's opening brief, ALPA respectfully submits that its motion to certify for interlocutory appeal the Court's Order of December 17, 2009, denying summary judgment, pursuant to 28 U.S.C. § 1292(b), should be

---

[2] The Federal Civil Rules Handbook describes the "core concept" of Rule 26(e) as follows: "Parties have a duty to supplement automatic disclosures and discovery responses under certain limited conditions set forth in Rule 26(e). Otherwise, *there is no general duty to supplement*." Steven Baicker-McKee et al., *Federal Civil Rules Handbook 2010* 757 (2009) (emphasis supplied) (footnotes omitted).

granted, and that Plaintiffs' conditional request to certify for interlocutory appeal the Court's Order of December 17, 2009, denying their sanctions motion, pursuant to 28 U.S.C. § 1292(b), should be denied.

Dated: January 25, 2010

                                        Archer & Greiner
                                        A Professional Corporation
                                        One Centennial Square
                                        P.O. Box 3000
                                        Haddonfield, New Jersey 08033-0968
                                        (856) 795-2121

                                        By:   /s/ Alexander Nemiroff
                                               John C. Connell, Esquire
                                               Alexander Nemiroff, Esquire

*Pro Hac Vice*:
    Daniel M. Katz, Esquire
    Katz & Ranzman, P.C.
    4530 Wisconsin Ave., N.W., Suite 250
    Washington, DC  20016
    (202) 659-4656

                Counsel for Defendant Air Line Pilots Association, International