UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LEROY "BUD" BENSEL, *et al.*,  )
)
)
Plaintiffs,  )
)
v.  )          Civil Action No.  02-2917 (JEI)
)
AIR LINE PILOTS ASSOCIATION,  )
)
)
Defendant.  )
)

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION**

---

Lisa J. Rodriguez
Nicole M. Acchione
**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
258 Kings Highway East
Haddonfield, NJ 08033
(856) 795-9002

Martin M. Green
Allen P. Press
Jonathan F. Andres
**GREEN JACOBSON, P.C**
7733 Forsyth Boulevard
Pierre Laclede Center, Suite 700
St. Louis, Missouri 63105
(314) 862-6800

Dated:  January 25, 2010

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

Caldwell v. Atlantic Co. Animal Shelter,
  2009 U.S. Dist. LEXIS 67659 (D.N.J. Aug. 4, 2009) ............................... 3

Circuit. Schmid v. Milwaukee Electric Tool Corp.,
  13 F.3d 76 (3d Cir. 1994)..................................................................... 12

In re Royal Dutch/Shell Transport Sec. Litigation,
  2008 U.S. Dist. LEXIS 50869 (D.N.J. May 21, 2008)............................. 2

### SLIP OPINIONS

Pension Committee of the University of Montreal Pension Plan v.
  Back of America Securities, LLC, et. al.,
  Amended Opinion and Order (S.D.N.Y. January 15, 2010) ...........*passim*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 1

II.   ARGUMENT.............................................................................. 2

    A.   Standard of Review on Motion for Reconsideration .................. 2

    B.   The Newly Discovered Evidence Supports Plaintiffs
       Entitlement to an Award of Sanctions ....................................... 4

         1.   Internal CWS Memorandum ........................................ 4
         2.   Duane Woerth Emails .................................................. 8

    C.   Recent Case Law Lends Additional Support for
       Reconsideration .................................................................. 11

III.  CONCLUSION ......................................................................... 13

Plaintiffs respectfully move, pursuant to Local Civil Rule 7.1(i), for reconsideration of the Court's Memorandum and Order entered on December 17, 2009, denying Plaintiffs' Motion for Sanctions.   PACER Docket No. 310 ("Sanctions Opinion").

## I.    INTRODUCTION

On the heels of the denial of Plaintiffs' motion for sanctions, and over one year after the close of discovery, ALPA's outside general counsel, Cohen Weiss & Simon (CW&S) produced over 450 pages of relevant ALPA documents, some of which were never before seen by Plaintiffs.   The newly produced documents not only are relevant to Plaintiffs' allegations set forth in the Second Amended Complaint, but provide further evidence of the prejudice Plaintiffs have suffered as a result of ALPA's discovery misconduct.

Among the recently produced documents is an internal memorandum concerning ALPA's efforts to acquire the American Pilots.   This new evidence contradicts the deposition testimony of every ALPA witness concerning ALPA's support and endorsement of the authorization card campaign.

Also among the newly produced documents are emails to and from ALPA's former president, Duane Woerth.   This evidence contradicts ALPA's express representations that Duane Woerth did not use email.   This new evidence, which was otherwise unavailable to the Plaintiffs until after this Court denied Plaintiffs'

1

motion for sanctions, pose extraordinary circumstances that justify reconsideration of Plaintiffs' motion.    Plaintiffs were denied the opportunity to use these documents during deposition discovery, and have been further prejudiced by not having these documents in advance of the filing of their sanctions motion.   These new documents provide further evidence of ALPA's misconduct and, if these documents were available to the Court prior to ruling on the motion for sanctions, the Court may have granted Plaintiffs' motion.

## II.   ARGUMENT

### A.   Standard of Review on Motion for Reconsideration

Motions for reconsideration are governed by Local Civil Rule 7.1(i). *In re Royal Dutch/Shell Transport Sec. Litig.*, 2008 U.S.Dist. LEXIS 50869, *6 (D.N.J. May 21, 2008) (Pisano, J.) "A district court exercises discretion on the issue of whether to grant a motion for reconsideration." *Id.* (*citing North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1203 (3d Cir.1995)). "A court may grant a motion for reconsideration if the moving party establishes at least one of the following grounds '(1) an intervening change in controlling law; (2) **the availability of new evidence not available previously**; or (3) the need to correct clear error of law or prevent manifest injustice.'" *In re Royal Dutch/Shell,* at *6-7 (*citing North River Ins. Co.,* at 1218) (emphases added; internal quotation and editing marks omitted).

Plaintiffs bring this motion pursuant to the second ground for reconsideration in bringing this motion, *i.e.,* that there is new evidence not previously available.

It is anticipated that ALPA will object to this motion as untimely. Courts, however, may relax the ten-day time limitation to prevent injustice and for good cause. *Caldwell v. Atl. Co. Animal Shelter*, 2009 U.S.Dist. LEXIS 67659 (D.N.J. Aug. 4, 2009). *See also* L.Civ.R. 83.2 which states that "any Rule may be relaxed or dispensed with by the Court if adherence would result in surprise or injustice."[1]

Plaintiffs are not responsible for the belated production of documents by ALPA's outside counsel.[2] Plaintiffs' subpoenaed records from CW&S, ALPA's outside general counsel, over a year and half ago, by subpoena dated June 10, 2008. In response, on July 17, 2008, CW&S produced over 3000 responsive documents. Richard Seltzer, a CWS attorney, was deposed by the Plaintiffs on September 19, 2008 and was questioned at length about the documents produced.

---

[1]     This Court denied Plaintiffs' Motion for Sanctions without prejudice. *Sanctions Opinion*, PACER Doc. No. 310, p. 8 ("the Court declines to issue a spoliation inference or to impose any other sanction at this time."). In the event this Court rejects Plaintiffs' Motion for Reconsideration on the grounds that it is untimely, Plaintiffs respectfully request that the Court deem Plaintiffs' motion as a Renewed Motion for Sanctions Based Upon New Evidence.

[2]     Richard Seltzer, a CW&S attorney, served as one of the TWA MEC's advisors during the April 2, 2001 meeting in which ALPA advisors coerced the TWA MEC to waive their contractual LPPs.

The recent documents were produced to Plaintiffs' counsel under cover letter dated January 13, 2010, stating that the enclosed discs contained documents that were discovered during a "year end clean up of unrelated files."  Acchione Decl., Ex. A.

These documents should have been collected by ALPA when the duty to preserve was triggered in June of 2002.[3]  The documents relate directly to the claims alleged in Plaintiffs' Complaint.[4]  ALPA's failure to produce these documents provides further evidence of ALPA's reckless document collection efforts, and its disregard for the discovery rules of this Court.

### B.    The Newly Discovered Evidence Supports Plaintiffs' Entitlement to an Award of Sanctions

#### 1.    Internal CWS Memorandum

The first document is a November 6, 2000 memorandum from Cohen Weiss & Simon lawyer Michael G. Dzialo to several other lawyers within the CW&S firm.  Acchione Decl., Ex. B.  The memo was written following a November 3, 2000 meeting between RSS [Richard Seltzer] and Jon Cohen and Marcus Migliore

---

[3]    This Court ruled that the duty to preserve was triggered upon the filing of this litigation on June 19, 2002, rejecting Plaintiffs' arguments that the duty was triggered much earlier. *Sanctions Opinion*, PACER Doc. No. 310, p. 5.

[4]    This Court has already ruled that ALPA was less than diligent in collecting documents relating to Plaintiffs' claim that ALPA was motivated to mislead the TWA pilots by the addition of the American pilots to ALPA. *Sanctions Opinion*, PACER Doc. No. 310, pp. 5-6.

(both of whom are ALPA in-house counsel), as well as Duane [sic] Woerth.  The

memo states:

> Discussion of scenarios and risk/reward in terms of how ALPA might go
>
> about affecting a change in representation rights:
>
> > *Consensus against merger agreement.*
> >
> > *Process should include collection of authorization cards.*
>
> In terms of successorship questions, consensus that the least
> participation by APA officer and committee hierarchy and the least
> use of APA resources (e.g., a raid) would present weakest case for
> holding ALPA liable for APA debts."

*See* Acchione Decl., Ex. B (Supp CWS03914-15).  The memorandum goes on to

pose the following question and answer:

> 5.  What if the APA BOD, APA key committee members, etc. offer to
> distribute and collect ALPA cards for a representation election?
>
> It will be difficult to stand in the way of getting this kind of assistance if
> ALPA really wants to run a quick and successful representation campaign:
> ALPA has to start out by colleting close to 7,000 cards if it wants 70%
> which is what ALPA always likes as a minimum before it files with the
> NMB.  This is a big job that is very hard to do with an outside organizing
> committee.

*Id.* at Supp  CWS03917.

The statements in this memorandum contradict the testimony of nearly every

ALPA witness who trumpeted the refrain: "we don't do card campaigns."    In

fact, that very testimony was used by ALPA in its summary judgment motion to

deny the relevance of the ALPA card campaign. ALPA stated in that regard:

> Nor would ALPA have used these cards in attempting a hostile
> takeover. 'If you have a group that's represented by an independent, ...
> it's our policy and our practice to try and merge with that group.'
> [Quoting testimony of its Rule 30(b)(6) representative, Seth Rosen].
> As ALPA General Manager Johnson explained, '[O]ur whole
> approach in bringing pilots that are organized and have an incumbent
> union into [ALPA] is through union mergers. It's not through card
> campaigns because we focus on having a merger as being a unifying
> event and not a disunifying event.'

*Memorandum in Support of Summary Judgment Motion*, PACER Doc. No. 295,

pages 29-30 (citing also the testimony of Duane Woerth and Ron Rindfleisch for

the same proposition).

Likewise, in response to Plaintiffs' allegation that ALPA should be

sanctioned for its destruction of authorization cards, ALPA claims that the

authorization card effort was lead by only two American pilots (Clark and

Hunnibell) and that ALPA "did not initiate, encourage or fund their effort."

*ALPA's Memorandum in Opposition to Plaintiffs' Motion for Sanctions*, PACER

Docket No. 301, p. 20.     Again, this CW&S memorandum casts doubt onto

ALPA's representations about its involvement with this campaign.    It also

highlights the prejudice Plaintiffs have suffered by virtue of the cards' destruction

since the cards themselves may have provided ALPA's inextricable link to the

campaign.    This memorandum provides evidence of that link.    *See Pension*

*Committee of the University of Montreal Pension Plan v. Back of America*

*Securities, LLC, et. al.,* Amended Opinion and Order (S.D.N.Y. January 15, 2010)

("'Courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence, because doing so would ... allow parties who have ... destroyed evidence to profit from that destruction.'")(internal quotations omitted)(quoting *Residential Funding*, 306 F.3d at 109 (quoting *Kronisch*, 150 F.3d at 128))).  *See* Acchione Decl., Ex. C ("*Pension Committee*").

This Court's opinion denying Plaintiffs' motion for sanctions does not address the destroyed authorization cards (or the other tangible examples of evidence destruction),[5] but Plaintiffs believe that if this CW&S memorandum was available, it would have resulted in the Court's granting Plaintiffs' motion for sanctions with respect to the destroyed authorization cards.[6]

ALPA will likely argue that it cannot be held accountable for the belated production of documents from third party, CW&S.  However, in May of 2005, ALPA sent a letter to third parties, including CW&S, advising that the Third Circuit had remanded the case against ALPA for discovery and requesting that

---

[5]     Instead, the Court cites only to the 269 boxes of documents that were shipped to Iron Mountain for storage during the pendency of this litigation and subsequently destroyed.  *Sanctions Opinion*, PACER Doc. No. 310, p. 7.

[6]     Importantly, ALPA does not know when the authorization cards were destroyed, stating only that it conducted a search for the cards and speculated that they were returned to American Pilot John Clark, misplaced or discarded. *Memorandum in Opposition to Plaintiffs' Motion for Sanctions*, PACER Doc. No. 301, p. 21, fn. 5.

CWS review its files for documents relevant to Plaintiffs' allegations.   *See* Acchione Decl., Ex. F.   The letter, however, limits the search for documents to those pertaining to the allegation that ALPA advisors coerced the MEC into waiving scope.

This letter demonstrates two things.  First, it shows that ALPA knew it had a duty to collect discovery from CW&S.  That is  why it sent the May 2005 letter. ALPA can not now claim it was not obligated to collect discovery of relevant documents from CW&S.  More importantly, however, this letter underscores the inadequacy of ALPA's collection efforts.  This letter incorrectly defines the scope of what CW&S (and other third parties) ought to be looking for in their files.  If ALPA's May 2005 letter had adequately described the Plaintiffs' allegations (which would have included ALPA's attempts to acquire the American Pilots), then this CWS memo may have been located sooner.   Again, it is just more evidence of ALPA's discovery misconduct.

### 2.   Duane Woerth Emails

The next document[7] contained within the belated production that warrants reconsideration of Plaintiffs' Motion for Sanctions is a November 13, 2001 email from Duane Woerth to CW&S lawyers and ALPA in-house lawyers forwarding an

---

[7]     Also among the newly produced documents was a December 6, 2001 email to Duane Woerth that had not been previously produced.  Acchione Dec., Ex. E (SUPP CWS003904).

email he received from Keith O'Leary which forwarded Bob Pastore's email of that date with a draft letter to Don Carty. *See* Acchione Decl., Ex. D (Doc. No. SUPP CWS003827.)

This email refutes Woerth's testimony that he never used email. It also refutes various statements made by ALPA in opposing Plaintiffs' sanctions motion. In particular, in explaining the lack of any response from Woerth to any of Rindfleisch's email, ALPA stated:

> Woerth testified that he adhered to a consistent policy while in office: 'I did not ever use email as a method of communication as ALPA president.' All emails sent to him were automatically routed to his executive assistant, upon whom Woerth 'relied heavily' to 'filter.'

*Memorandum in Opposition to Plaintiffs' Motion for Sanctions*, Doc. No. 301, page 39. Similarly, in justifying the destruction of Woerth's laptops during the relevant time period, ALPA stated:

> Woerth maintained a policy not to use email during his tenure as ALPA president.

*Memorandum in Opposition to Plaintiffs' Motion for Sanctions*, Doc. No. 301, p. 41.

ALPA made similar claims as to other ALPA officials whose computers were destroyed. *Memorandum in Opposition to Plaintiffs' Motion for Sanctions*, PACER Doc. No. 301, p. 40-42. In explaining that it preserved the documents of its eight "key players," ALPA stated that the "record is particularly clear that

ALPA produced all of the emails of these eight," including Woerth. *Memorandum in Opposition to Plaintiffs' Motion for Sanctions*, Doc. No. 301, page 42.   The recent production of these Woerth emails cast doubt on all of ALPA's representations in this regard.

This is yet another example of an email that should have been produced by ALPA.   It supports Plaintiffs' argument that Plaintiffs will never know the full extent or content of emails destroyed as a result of ALPA's failure to properly institute a litigation hold when the duty to preserve was triggered.     Indeed, Plaintiffs would have never seen relevant email had it not been for the belated production of CW&S.   This Court has acknowledged that ALPA failed to institute a litigation hold until three years following the date its duty to preserve was triggered.   *Sanctions Opinion*, PACER Doc. No. 310, p. 6.     Under *Pension Committee*, this alone amounts to sanctionable gross negligence or negligence:

> Plaintiffs admit they failed to institute written litigation holds until 2007 when they returned their attention to discovery after a four year hiatus. Plaintiffs should have done so no later than 2005… This requirement was clearly established in this District by mid-2004, after the last relevant Zubulake opinion was issued." Thus, the failure to do so as of that date was, at a minimum, grossly negligent. …

> Almost all plaintiffs pre-2005 conduct, apart from the failure to issue written litigation holds, is best characterized as either grossly negligent or negligent because they failed to execute a comprehensive search for documents and/or failed to sufficiently supervise or monitor their employees' document collection.

*Pension Committee*, p. 37.

Here, had ALPA issued a written litigation hold in June of 2002 – the date this Court has held the duty was triggered – this email would still have been available, if not in hard copy, on ALPA's backup tapes.   We know, however, that ALPA did not cease its normal rotation of back up tapes until 2006, long after the duty was triggered and the 2001 back up tape had already been over written.  As stated above and as evidenced by this belatedly produced email, it is impossible to now know the extent of the prejudice suffered by Plaintiffs as a result of ALPA's spoliation, but ALPA should not be permitted to profit by virtue of the thoroughness of its destruction. *Pension Committee*, p. 41, fn. 96.

C.    **Recent Case Law Lends Additional Support for Reconsideration**

On January 15, 2010, the Honorable Shira Scheindlin -- the same Judge who authored the *Zubulake* opinions -- rendered a new decision which she refers to as *Zubulake* Revisited, Six Years Later. *Pension Committee*.   Although not governing law in this District, Judge Scheindlin's *Zubulake* opinions have been followed nationally and it is anticipated that the *Pension Committee* case will be similarly cited with great frequency. *Pension Committee* provides great clarity into the standards governing spoliation conduct, the varying degrees of culpability, and the respective burdens of proof with regard to establishing prejudice.

Importantly, *Pension Committee* makes clear that bad faith is not required to

impose sanctions. Nor are "egregious examples of litigants purposefully destroying evidence" necessary to impose sanctions, *Pension Committee*, p. 5. This standard is consistent with Plaintiffs' interpretation of the law in the Third Circuit. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). In denying Plaintiffs' motion for sanctions, however, this Court held that Plaintiffs had "failed to establish any evidence of bad faith," and were therefore not entitled to an award of any sanctions. *Sanctions Opinion*, PACER Doc. No. 310, p. 3, 4 and 7 ("Plaintiffs do not point to any evidence of bad faith."). Respectfully, Plaintiffs submit that this Court relied upon the wrong standard in deciding Plaintiffs' motion.

*Pension Committee* also holds that negligence, such as failing to issue a written litigation hold upon the triggering of a duty to preserve or failing to take backup tapes out of rotation, is sanctionable conduct. *Pension Committee*, p. 36. Here, although denying Plaintiffs any sanctions, this Court acknowledged that ALPA failed to issue a written litigation hold on electronic discovery until 2006, four (4) years after its duty to preserve was triggered. *See* Sanctions Opinion, p. 5 (duty to preserve triggered in June of 2002) and p. 6 (ALPA placed a litigation hold on documents in January 31, 2005 and electronic discovery on November 2006). Applying the rationale of *Pension Committee*, Plaintiffs submit that this Court erred to deny sanctions in the face of ALPA's admitted gross negligence.

12

And, importantly, *Pension Committee* acknowledges that there may be instances where a party's spoliation is so significant that there is no way to know what the destroyed evidence says or contains and, in those instances, the burden should not be so strict to the innocent party that the spoliator profits from its document destruction. *Pension Committee*, pp. 13-18.

Finally, *Pension Committee* reiterates the varying degrees of sanctions available, depending on the level of culpability and prejudice suffered. *Pension Committee*, pp. 18-25.

If this Court does not grant Plaintiffs' motion for reconsideration, Plaintiffs' alternatively submit that the recent *Pension Committee* decision supports Plaintiffs' argument that in the event this Court grants ALPA's pending motion for leave to appeal, it should likewise certify Plaintiffs' Motion for Sanctions so that the Third Circuit can address the appropriate standard, in light of the *Pension Committee* Opinion.

## CONCLUSION

As a result of newly discovered evidence discussed above, Plaintiffs respectfully request that this Court reconsider its denial of Plaintiffs' Motion for Sanctions, vacate the order, and grant Plaintiffs' motion.

Dated:  January 25, 2010                    Respectfully submitted,


                                            s/ Lisa J. Rodriguez
                                            Lisa J. Rodriguez
                                            Nicole M. Acchione
                                            TRUJILLO RODRIGUEZ & RICHARDS,
                                            LLC
                                            258 Kings Highway East
                                            Haddonfield, NJ 08033
                                            (856) 795-9002
                                            (856) 795-9887 facsimile

                                            Martin M. Green
                                            Allen P. Press
                                            Jonathan F. Andres
                                            **GREEN JACOBSON, P.C**
                                            7733 Forsyth Boulevard
                                            Pierre Laclede Center, Suite 700
                                            St. Louis, Missouri 63105
                                            (314) 862-6800