IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEROY "BUD" BENSEL, et al.<br><br>Plaintiffs,<br><br>v.<br><br>AIR LINE PILOTS ASSOCIATION.<br><br>Defendant. | Civil Acton No. 02-2917 (JEI)<br><br>**DECLARATION OF NICOLE M. ACCHIONE** |

I, Nicole M. Acchione, declare under penalty of perjury as follows:

I am an attorney-at-law with the firm of Trujillo Rodriguez & Richards, LLC, and I submit this declaration upon personal knowledge in support of Plaintiffs' Motion for Reconsideration of this Court's December 17, 2009, Order denying Plaintiffs' Motion for Sanctions..

Attached as Exhibits A through F are true and correct copies of the following documents:

| **EXHIBIT** | **DESCRIPTION** |
|---|---|
| A | January 12, 2010 Letter from Richard Seltzer to Nicole M. Acchione enclosing supplemental document production |
| B | November 6, 2000 Memorandum from Michael G. Dzialo (SUPP CWS0003913-18) |
| C | *Pension Committee of the University of Montreal Pension Plan v. Back of America Securities, LLC, et. al.,* Amended Opinion and Order (S.D.N.Y. January 15, 2010) |
| D | November 13, 2001 email from D. Woerth to J. Mugerditchian (ALPA), J. Cohen (ALPA), C. Warner (ALPA), M. Migliore (ALPA) and M. Abram (CWS) (SUPP CWS0003827-28) |
| E | December 6, 2001 email from J. Cohen (ALPA) to D. Woerth and others (SUPP CWS0003804) |

1

| | |
|---|---|
| F | May 11, 2005 Letter from Jonathan Cohen (ALPA) to Richard M. Seltzer (produced by ALPA in opposition to Plaintiffs' Motion for Sanctions, PACER Doc. No. 301-2) |

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND ACCURATE.

January 25, 2010

*/s/ Nicole M. Acchione*

Nicole M. Acchione

# EXHIBIT A

BRUCE H. SIMON
ROBERT S. SAVELSON
STEPHEN B. MOLDOF
MICHAEL E. ABRAM
KEITH E. SECULAR
PETER HERMAN
RICHARD M. SELTZER
JAMES L. LINSEY*
JANI K. RACHELSON
BABETTE CECCOTTI*
SUSAN DAVIS*
MICHAEL L. WINSTON
THOMAS N. CIANTRA
JOSEPH J. VITALE*
PETER D. DECHIARA
LISA M. GOMEZ*
BRUCE S. LEVINE
JAMES R. GRISI*
ELIZABETH O'LEARY
TRAVIS M. MASTRODDI
MANLIO DIPRETA

# COHEN, WEISS AND SIMON LLP
COUNSELLORS AT LAW
330 WEST 42ND STREET
NEW YORK, N.Y. 10036-6976

(212) 563-4100

WRITER'S DIRECT INFORMATION:

PHONE: (212) 356-0219
FAX: (646) 473-8219
E-MAIL: RSELTZER@CWSNY.COM

SAMUEL J. COHEN (1908-1991)
HENRY WEISS (1910-2004)

DAVID R. HOCK*
CLAIRE TUCK*
RICHARD C. HARMON
MARCELLE J. HENRY
EVAN HUDSON-PLUSH
MICHAEL S. ADLER*
JOSHUA ELLISON
ZACHARY N. LEEDS

* ALSO ADMITTED IN NJ

January 12, 2010

By FedEx

RECEIVED
JAN 13 2010

Nicole M. Acchione, Esq.
Trujillo Rodriguez & Richards, LLC
258 Kings Highway East
Haddonfield, NJ 08033

      Re:    Bensel v. ALPA; Case No. 02-2917; June 10, 2008 Subpoena to Cohen, Weiss, and Simon LLP

Dear Ms. Acchione:

      I enclose a CD with additional documents responsive to the above subpoena bates marked Supplemental CWS 3496-3949. After finding a responsive document in a year end clean-up of unrelated files, we reviewed additional files and located further documents, all of which are included in the enclosed CD.

      In addition, we believe we previously provided CWS 3475-95 and the four page unmarked document in hard copy accompanying my July 17, 2008 letter, but are providing additional copies in the a second CD in event we failed to do so

Sincerely,

Richard M. Seltzer

RMS:mat
Enclosures

cc:    D. Katz (w/enc.)


00150590.DOC.1

# EXHIBIT B

## CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED INFORMATION WORK-PRODUCT

MEMORANDUM

TO: File (003.18), BHS, SBM, MEA, SD, and DEH

FROM: Michael G. Dzialo

DATE: November 6, 2000

RE: APA issues

---

RSS met with Jon Cohen and Marcus Migliore (and briefly with Dwayne Woerth) on Thurs. Nov. 3. the APA issues. A synopsis of the discussion with Cohen and Migliore:

- AA CEO Carty is believed to be likely to collect now on $20 million of the contempt judgment. Possibility that American may or may not hold off on collecting on the rest of the judgment while APA reorganizes itself politically.

- The whole political atmosphere at APA at this point is very unclear and amorphous. It may be that while Carty feels pressured to collect the $20 million he will not want to move too precipitously to collect the remainder of the judgment for fear that pilot representation on the property will become chaotic. We won't know more about that until we see what develops.

- The APA BOD will be meeting next week (wk of Nov. 6 to 10) to elect new interim officers. If a political deal has been made we will start to get a better

## CONFIDENTIAL:
## ATTORNEY-CLIENT PRIVILEGED INFORMATION
## WORK-PRODUCT

picture of how things may develop.

- RSS and ALPA Legal agreed that outcome of Texas the consumer litigation cannot be accurately assessed at this point. Cohen to discuss issue of quantifying the exposure in the consumer litigation with Anna M. Schultz, (Director of ALPA's Economic and Financial analysis department): whether or not the department has capacity to do this, whether we should go out and get some analysis on it or whether it is a hopeless task.

- Jonathan and legal department will look at state law, starting with Texas state law, on successorship liability for a union.

Discussion on merits of the consumer case brought against ALPA as successor if ALPA takes over representation rights in some form of representation election proceeding:

- RSS and ALPA Legal consensus that there are good arguments to be made by ALPA against being held liable after a representation change even with the typical support from within the independent union that one finds in such situations.

- Consensus that ALPA has a different and stronger argument to make on labor law preemption based upon and starting from the right of employees to change their representation

Discussion of scenarios and risk/reward in terms of how ALPA might go about affecting a change in representation rights:

00012389.1 -2- November 6, 2000 12:58 pm

SUPP CWS003914

## CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED INFORMATION WORK-PRODUCT

- Consensus against merger agreement.

- Process should include collection of authorization cards.

- In terms of successorship questions, consensus that the least participation by the APA officer and committee hierarchy and the least use of APA resources (e.g., a raid) would present weakest case for holding ALPA liable for APA debts.

Short of this, however, questions were raised (the five "dilemma questions") regarding what effect potential APA support would have on successorship.

1. What if the APA BOD, in light of how APA sees its future, desires to formally support the change to ALPA representation and adopts a resolution formally supportting the change?

2. What if, short of formal action by the Board, the APA President, the APA National Officers and various individuals on the Board and all their key committees want to support a change to ALPA representation?

3. What if members at APA "base meetings" or local council meetings around the country want to adopt resolutions, support change and organize local committees and their councils to support change to ALPA?

4. What if APA offers to make mailings explaining ALPA's structure, how ALPA works and so forth to the members? What if APA goes further than that, and is willing to mail actual ALPA organizing literature to the members or give ALPA access to stuffing the

## *CONFIDENTIAL:*
## *ATTORNEY-CLIENT PRIVILEGED INFORMATION*
## *WORK-PRODUCT*

pilots' mailboxes?

5. What if the APA BOD, APA key committee members, etc., offer to distribute and collect ALPA cards for a representation election?

- It will be difficult to stand in the way of getting this kind of assistance if ALPA really wants to run a quick and successful representation campaign: ALPA has to start out by collecting close to 7,000 cards if it wants 70%, which is what ALPA always likes as a minimum before it files with the NMB. This is a big job that is very hard to do with an outside organizing committee.

Other items:

- ALPA filed an amicus brief in its name in the district court on the preemption issue in the consumer litigation. Should the amicus brief being prepared for filing with the Fifth Circuit be filed under the AFL-CIO's name?
- Consensus that it would be premature at any time in the foreseeable future to have any discussion with any of the consumer plaintiffs' lawyers.

Post representation considerations:

- If ALPA prevails in representation election, what ought it do with regard to APA records and APA facilities? How does ALPA go about acquiring assets and records necessary for representing AA pilots?
    - Lease APA building at arm's length? Buy building at arm's length? Hire

## CONFIDENTIAL:
## ATTORNEY-CLIENT PRIVILEGED INFORMATION
## WORK-PRODUCT

APA employees? Pay for computers which are on the property, etc.?

ALPA will appoint a new interim MEC if it is elected the representative on AA:

- It would not appoint anyone who held office in whatever APA shell is left. *What did UAW do in District 65?*

  Would it exclude people who previously held office in APA?

Bankruptcy issues (particularly in light of the fact that American is taking a lot of their cash now, and may soon be taking the rest — a matter that RSS wishes BHS to give special consideration).

- If APA put itself into bankruptcy, could ALPA do a simple merger deal with APA in bankruptcy where it would not risk liability because APA debts would have been discharged?

- In order to accomplish that, what ALPA might do is, for example, buy the building and buy the assets in bankruptcy for X million dollars. Toss that money into the bankruptcy pot. Money would be divided up by trade creditors, AA and consumer litigants.

  - Problem with the stream of dues income and whether or not the consumer litigants, feeling they are not getting what they should be getting, would then be going after the stream of dues income? *Local 890*

- Alternatively a representation dispute: while APA is in bankruptcy, ALPA buys the assets?

Alternative structuring for ALPA?

## CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED INFORMATION WORK-PRODUCT

It is highly likely that alternative structuring is institutionally unwise:

- ALPA would have to structure the American pilots as a typical, local union, with its own bargaining rights, its own contract, its own dues. ALPA would receive a per capita in Washington (typical industrial local structure).
- Probably be an unacceptable and unwise cost in view of ALPA's own difficulties with structure: Large MECs that see this as an opportunity and some of the small regional carriers that would like to be free of ALPA restraints in some respects but stay with ALPA.

Services agreement?

- APA buying ALPA services — passing up the opportunity to bring AA under ALPA representation?

SUPP CWS003918