

**ARCHER & GREINER, P.C.**
ATTORNEYS AT LAW

**JOHN C. CONNELL**
*Also Member of Pennsylvania Bar*

ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033-0968
856-795-2121
FAX 856-795-0574

Email Address:
jconnell@archerlaw.com

Direct Dial:
(856) 354-3074

www.archerlaw.com

February 4, 2011

**ELECTRONIC FILING**
The Honorable Joseph E. Irenas, U.S.D.J.
United States District Judge
Mitchell H. Cohen Federal Building & U.S. Courthouse
1 John F. Gerry Plaza, Room 310
Camden, NJ 08101

    RE:    **Bensel, et al. v. Air Line Pilots Association, et al.**
            **Civil Action No. 02-cv-02917-JEI (D.N.J. Camden)**
            **Explanation of JFPTO Issues**

Dear Judge Irenas:

I am writing in anticipation of the Pretrial Conference scheduled in this matter at 10:00 a.m. on Tuesday, February 8, 2011, in this matter, for the purpose of providing some background on two of the issues raised in the parties' proposed Joint Final Pretrial Order. Specifically, I have set forth below a fuller explanation of the issues of Decertification and a Supplemental Deposition of Roland Wilder raised by Defendant ALPA in the Miscellaneous section of the proposed Joint Final Pretrial Order at page 70.

| PRINCETON OFFICE | FLEMINGTON OFFICE | PHILADELPHIA OFFICE | WILMINGTON OFFICE | GEORGETOWN OFFICE | NEW YORK OFFICE |
|---|---|---|---|---|---|
| 700 Alexander Park | Plaza One | One Liberty Place - 32nd | 300 Delaware Avenue | 9 East Market Street | 2 Penn Plaza |
| Suite 102 | 1 State Route 12, Suite 201 | Floor | Suite 1370 | P.O. Box 977 | Suite 1500 |
| Princeton, NJ 08540 | Flemington, NJ 08822-1722 | 1650 Market Street | Wilmington, DE 19801 | Georgetown, DE 19947 | New York, NY 10121 |
| P 609-580-3700 | P 908-788-9700 | Philadelphia, PA 19103-7393 | P 302-777-4350 | P-302-858-5151 | P 212-292-4988 |
| F 609-580-0051 | F 908-788-7854 | P 215-963-3300 | F 302-777-4352 | F-302-858-5161 | F 212-629-4568 |
| | | F 215-963-9999 | | | |

The Honorable Joseph E. Irenas, U.S.D.J.
February 4, 2011
Page 2

Decertification

As noted at §IX.B.1, ALPA believes that the Court should re-consider whether this case can properly proceed as a class action and will move to decertify this action pursuant to Fed. R. Civ. P. 23(c)(1)(C), which provides that an order that grants or denies class certification "may be altered or amended before final judgment."

In its recent decision in In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305 (3d Cir. 2008), which was decided well after this Court granted class certification, the Third Circuit tightened the requirements for the certification of class actions and held, among other things, that class certification is inappropriate unless all of the members of the class can demonstrate injury in fact and that trial courts must conduct a "rigorous analysis" of the requirements of Rule 23 before certifying an action as a class action.

Both at the time this action was originally certified as a class action on February 12, 2003 [Docket 48], and when the Court modified the nature of class certification in its Order filed on March 19, 2007 [Docket 205], this Court did not have the benefit of the guidance provided by Hydrogen Peroxide and its ruling that class certification is not appropriate unless each member of a proposed class can demonstrate the fact of injury. Because that requirement cannot be met in this case, the Court should consider decertification of this action as a class action.

Hydrogen Peroxide was an antitrust case. The Third Circuit noted in its opinion that an antitrust plaintiff must prove (1) a violation of the antitrust laws; (2) individual injury resulting from that violation, and (3) measurable damages. Id. at (citing 15 U.S.C. § 15; Am. Bearing Co. v. Litton Indus., Inc., 729 F.2d 943, 948 (3d Cir. 1984); Blades, 400 F.3d at 566). It then noted

that because "individual injury (also known as antitrust impact) is an element of the cause of action, to prevail on the merits, every class member must prove at least some antitrust impact resulting from the alleged violation." Id. The court further emphasized that proof of injury is distinct from proof of the amount of damages suffered by the members of the class. Id. at See also Newton, 259 F.3d at 188 (holding that in antitrust and securities fraud class actions, "[p]roof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)").

Hydrogen Peroxide held that the ability to prove the fact of injury to all of the members of the class often is "critically important" for the purpose of evaluating Rule 23(b)(3)'s predominance requirement because the fact of damages for the class must be a common issue to justify certification:

> [T]he task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members. Deciding this issue calls for the district court's rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove impact at trial. See Fed. R. Civ. P. 23 advisory committee's note, 2003 Amendments ("A critical need is to determine how the case will be tried."); see, e.g., In re Linerboard Antitrust Litig., 305 F.3d 145, 155 (3d Cir.2002) ("reject[ing] the contention that plaintiffs did not demonstrate that sufficient proof was available, for use at trial, to prove antitrust impact common to all the members of the class").

552 F.3d at 311-12 (emphasis added).

Although Hydrogen Peroxide was an antitrust case, ALPA submits that its requirement that all members of a class suffer a common injury applies with full force to this case because there is no question that the Plaintiffs in this case, like antitrust plaintiffs, will be required to

The Honorable Joseph E. Irenas, U.S.D.J.
February 4, 2011
Page 4

prove that a violation by ALPA of its duty of fair representation caused injury to all of the members of the class. As this Court noted in its recent opinion,

> In the specific case of an alleged breach of the duty of fair representation, the Third Circuit explicitly determined that "liability for a labor union's deceptive conduct in breach of the fiduciary duty of fair representation arises only if the breach directly causes damages to an individual or group to whom the duty is owed."

Bensel v. Allied Pilots Ass'n, 675 F. Supp. 2d 493, 499 (D.N.J. 2009) (quoting Deboles v. Trans World Airlines, 552 F.2d 1005, 1019 (3d Cir. 1977)). Other, duty of fair representation cases, including cases decided since this Court's opinion, also clearly indicate that proof of injury in fact is an essential element of a violation of the duty of fair representation. For example, in Vaughn v. ALPA, 604 F.3d 703 (2d Cir. 2010), the Second Circuit recently noted:

> To prove that a union has breached its duty of fair representation, the challenging members must establish two elements. First, they must prove that the union's action or inactions "are either 'arbitrary, discriminatory, or in bad faith.'" . . . Second, <u>the challenging members must "demonstrate a causal connection between the union's wrongful conduct and their injuries."</u>

Id. at 709 (citations omitted) (emphasis added).

In this case there is no question that all of the members of the class will be required to prove the fact of injury, as opposed to the amount of damages, during the liability trial. Indeed, it is well settled that when cases are bifurcated into separate trials for liability and damages that issues of causation and the fact of injury are considered liability issues. For example, in Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 802 (3d Cir. 1984), also an antitrust case, the trial court conducted separate trials before separate juries, with the first jury considering whether there was an antitrust violation and, if so, whether that violation caused injury, and the second jury considering the issue of damages. On appeal, the defendant argued that it was

The Honorable Joseph E. Irenas, U.S.D.J.
February 4, 2011
Page 5

prejudiced by bifurcation because the liability jury did not distinguish among the alleged anticompetitive acts in its determination of causation; as a result, it argued "the damages jury could not know from what acts they could attribute damages." The Third Circuit rejected this argument, holding that causation was properly tried with liability because it is an element of liability:

> Kaiser contends . . . [that] the issues on liability could not be separated from the issues on damages. We believe that Kaiser has confused the questions of causation and calculation of damages. <u>Causation is an element of liability in this case.</u> See *REA v. Ford Motor Co.*, 560 F.2d 554, 557 (3d Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977). The liability jury properly found causation from only those acts which could evince the defendants' willful acquisition or maintenance of a monopoly. See *Brunswick Corp. v. Pueblo Bowling Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). In finding causation, the jury must find the nexus between the act and the injury. Once a jury has properly found causation of antitrust injury from unlawful activity, however, the damages in this case may be determined without strict proof of what act caused which injury as long as the damages are not based upon speculation or guesswork.

Id. at 812-13 (some citations omitted) (emphasis added).

ALPA submits that the fact of injury is not a common issue for the members of the class and that the requirement of predominance under Rule 23 cannot be established with respect to the claims in this case. Even if plaintiffs can persuade a jury that ALPA acted in bad faith and that the seniority integration process would have been different, whether all of the members of the class have suffered injury will depend entirely on how and the degree to which the seniority process might have been different. For example, if the only 10% of the members of the class would have received greater seniority rights, only those 10% will have suffered the fact of injury. In short, if the outcome of the seniority integration would only have been different for some, but

The Honorable Joseph E. Irenas, U.S.D.J.
February 4, 2011
Page 6

not all of the members of the class, plaintiffs will not have established the fact of injury for all of the members of the class.

In Hydrogen Peroxide the Third Circuit emphasized, in light of the 2003 amendments to Rule 23, that courts should engage in a "rigorous" analysis of the claims advanced in proposed class actions before granting certification motions and should also consider requiring plaintiffs to submit a "trial plan" when certification is requested. Such a trial plan, Hydrogen Peroxide noted, will assist a trial court in "focus[ing] attention on a rigorous evaluation of the likely shape of a trial on the issues":

> A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a "trial plan" that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof.

Id. (quoting Fed. R. Civ. P. 23 advisory committee's note, 2003 Amendments).

ALPA submits that the specific analysis of individual injury among class members that has been required since Hydrogen Peroxide, which was not undertaken in this case at the time of certification, makes clear that, with respect to plaintiffs' claims, the fact of injury is an individual issue as to the members of the class. As a consequence, this case should not proceed to trial as a class action but should instead be decertified.

Supplemental Deposition of Roland Wilder

As noted at §IX.B.2, ALPA requests leave to conduct a brief supplemental deposition of Roland Wilder, whose videotaped testimony Plaintiffs intend to present at the time of trial.

Under questioning by Plaintiffs' counsel during his videotaped deposition on August 8, 2008, Mr. Wilder testified that he was present at and participated in what has emerged as a

The Honorable Joseph E. Irenas, U.S.D.J.
February 4, 2011
Page 7

pivotal event in this case, the meeting of the TWA Master Executive Council in St. Louis on April 2, 2001. This was the meeting at which the TWA MEC voted to waive the labor protective provisions of the TWA pilots' collective bargaining agreement with TWA. Several of the Named Plaintiffs, including Ted Case, Bud Bensel and Howard Hollander, also testified during their depositions that Mr. Wilder attended the meeting on April 2, 2001, but was intimidated into silence by other ALPA advisors.

This claim that Wilder was bullied by other ALPA advisors has been one of the contentions relied upon by Plaintiffs in claiming that ALPA breached its duty of fair representation to Plaintiffs. For example, in Plaintiffs' Brief in Opposition to ALPA's Motion for Summary Judgment, which was filed on May 11, 2009 [Docket 306-2], Plaintiffs asserted the following:

> ALPA also coerced the MEC's independent counsel, Roland Wilder, Wilder came to the April 2nd meeting firm in his belief that the MEC should not agree to waive the pilots' scope protections. . . . At a break in the meeting, however, the ALPA advisors held a closed door meeting with Wilder in which the advisers bullied him into acquiescence to their position.

Brief at page 30 (citations to the record omitted).

After the close of discovery, Mr. Wilder reviewed his billing and other records and his daily calendar and provided counsel for ALPA with an affidavit in which he corrected his testimony. He confirmed that he attended the MEC meeting on April 1, 2001, but asserted that he was not present during the TWA MEC meeting on April 2, 2001. ALPA filed Wilder's Affidavit in connection with its summary judgment motion. [Docket No. 296-6 – Attachment 27]. Mr. Wilder corrected his testimony to indicate that on the evening of April 1, 2001, he flew from St. Louis to Louisville, and that he spent the entire day on April 2, 2001, attending

The Honorable Joseph E. Irenas, U.S.D.J.
February 4, 2011
Page 8

collective bargaining negotiations in Louisville for another client. Confirming documentation includes Mr. Wilder's contemporaneous daytimer entries, his firm's bill to the TWA MEC and a copy of his airplane ticket from St. Louis to Louisville on April 1, 2001.

Given the importance of what occurred at the meeting on April 2, 2001, and the significant disputes that exist about the events of that date, ALPA submits that it is essential for the jury to have accurate testimony from Mr. Wilder on this issue so that the jury can make fully-informed credibility determinations about what happened – or did not happen – during that meeting. Moreover, because the jury will be asked to make more general credibility determinations about witness testimony concerning many events beyond those of April 2, 2001, Mr. Wilder's corrected testimony is crucial so that the jury can assess more generally the credibility of the class representatives who have claimed that Mr. Wilder participated at the meeting on April 2, 2001, and was bullied into silence by the other ALPA advisors.

Counsel for ALPA have requested that counsel for Plaintiffs agree to a brief supplemental deposition of Mr. Wilder but counsel for Plaintiffs have rejected that request. Instead, counsel for Plaintiffs have indicated that they intend to present to the jury during trial portions Mr. Wilder's videotaped deposition in which he mistakenly testified that he was present at the meeting on April 2, 2001. Because Mr. Wilder resides and works in the District of Columbia, he is beyond the subpoena power of the Court and cannot be compelled by ALPA to testify at trial. ALPA respectfully requests that the Court grant its counsel leave to take a supplemental deposition of Mr. Wilder in order to correct the record on a crucial issue and to prevent the jury from being misled.

The Honorable Joseph E. Irenas, U.S.D.J.
February 4, 2011
Page 9

      I hope that this explanation will facilitate the Court's consideration of these important issues at the Pretrial Conference. If you have any questions, please let me know.

      Thank you.

      Respectfully submitted,

      /s/ John C. Connell

      JOHN C. CONNELL

JCC/jcw
cc:    Martin M. Green, Esquire (via reg. mail)
       Allen Press, Esquire (via reg. mail)
       Lisa J. Rodriguez, Esquire (via ecf)
       Nicole M. Acchione, Esquire (via ecf)
       Daniel M. Katz, Esquire (via ecf)
       Steven J. Fram, Esquire (via ecf)

6409114v1