UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LEROY "BUD" BENSEL, *et al.*,

Plaintiffs,

v.

AIR LINE PILOTS ASSOCIATION,

Defendant.

Civil Action No. 02-2917 (JEI)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS**

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ 08033
Telephone: 856-795-9002

**GREEN JACOBSON, P.C**
Martin M. Green
Joe D. Jacobson
Allen P. Press
Jonathan F. Andres
7733 Forsyth Boulevard
Suite 700
St. Louis, Missouri 63105
Telephone: 314-862-6800
*Attorneys for the Plaintiffs*

Dated: March 14, 2011

**TABLE OF CONTENTS**

Page

INTRODUCTION....1

LEGAL ARGUMENT ....2

I. THE CLASS WAS PROPERLY CERTIFIED AND SHOULD NOT BE DECERTIFIED....2

A. The Class Was Properly Certified Under Rule 23(b)(3)....2

B. Decertification is Not Warranted....4

II. THE ISSUES OF CAUSATION AND "FACT OF DAMAGES" ARE NOT PROPERLY BEFORE THIS COURT....7

III. BIFURCATION OF CAUSATION AND DAMAGES IS COMPLETELY APPROPRIATE....9

IV. PLAINTIFFS WILL BE ABLE TO ESTABLISH CAUSATION AND DAMAGES FOLLOWING A SUCCESSFUL LIABILITY FINDING....10

CONCLUSION....11

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Acri v. International Associate of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986) ..... 10

*Aguinaga v. United Food & Commercial Workers International Union*, 993 F.2d 1463 (10th Cir. 1993) ..... 10, 11

*Air Line Pilots Association v. O'Neill*, 499 U.S. 65 (1991) ..... 10

*Anderson v. United Paperworkers International Union, AFL-CIO*, 641 F.2d 574 (8th Cir. 1981) ..... 10

*Barrett v. Thorofare Markets, Inc.*, 452 F. Supp. 880 (W.D. Pa. 1978) ..... 10

*Bayshore Ford Truck v. Ford Motor Co.*, 2010 U.S. Dist. LEXIS 7454 (D.N.J. 2010) ..... 4

*Elias v. Ungar's Food Products, Inc.*, 2009 U.S. Dist. LEXIS 74140 (D.N.J. 2009) ..... 4, 5

*Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887 (7th Cir. 1995) ..... 9

*In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008) ..... *passim*

*Lewis v. Tuscan Dairy Farms*, 25 F.3d 1138 (2d Cir. 1994) ..... 11

*In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009) ..... 6

*Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508 (3d Cir. 1976) ..... 4

## FEDERAL STATUTES

Fed. R. Civ. P. 23 ..... 2,6

Fed. R.Civ.P. 23(b)(1)....................................................................................................3

Fed. R. Civ. P. 23(c)(1)(C) ..............................................................................................4

Fed. R. Civ. P. 42(b)............................................................................................9

## INTRODUCTION

ALPA's response to the looming trial date on the issue of whether it breached its duty of fair representation to the TWA Pilots is to file a motion seeking to decertify the Class. This motion stands in the unique position of either being premature or filed too late. ALPA stipulated to class certification in 2002 and, in 2005 successfully moved to bifurcate the issues of liability and damages. ALPA again stipulated to a revised Class in 2007. Now, on the eve of a trial on liability – and after assuring this Court and Plaintiffs that "bifurcation will not create any prejudice or burden on Plaintiffs," and that "calculation of damages would involve a completely separate set of facts," *see* Doc. No. 112, p. 14 (*Def.'s Motion to Bifurcate*) – ALPA is asking this Court to decertify the stipulated Class because Plaintiffs, according to ALPA, lack any set of facts or evidence to prove damages, *i.e.* classwide injury in fact. ALPA's motion has no basis in fact or in law.

The liability issue in this case, as ALPA argued in 2005 in support of bifurcation, "is whether ALPA breached its duty of fair representation to the former TWA pilots." *Id.* The bifurcation order adopted that as the sole issue to be considered at the liability phase. Now, ALPA objects to proceeding on a class basis because, it argues, Plaintiffs in the liability phase will not be able to prove injury in fact on a class--wide basis. *See* Defendant's Brief in Support of Decertification, p. 1 ("Db"). ALPA makes no objection to the Court's earlier finding that the issue of whether ALPA breached its duty of fair representation to the TWA Pilots predominates. Instead, ALPA seeks decertification because "Plaintiffs have never articulated, through an expert report or otherwise, the specifics of who they contend the benefit package and seniority program for the class would have been more favorable for any members of the class, much less for all of them." Db, p. 5. ALPA does not explain, however, why Plaintiffs should be prepared to litigate

the very issues that ALPA bifurcated out of the case. Plaintiffs are prepared to try the issue of liability and they will use common evidence to prove that ALPA breached its duty of fair representation to the entire certified class.

ALPA incorrectly relies upon *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) – a case decided over two years ago - as requiring this Court to re-examine its previous two findings that the case was properly certified as a class action. ALPA's motion, posing as a motion for decertification based on something *In re Hydrogen Peroxide* does *not* say, is nothing but a backdoor attempt to have this Court reconsider its denial of summary judgment.

## LEGAL ARGUMENT

### I. THE CLASS WAS PROPERLY CERTIFIED AND SHOULD NOT BE DECERTIFIED.

#### A. The Class Was Properly Certified Under Rule 23(b)(3).

ALPA stipulated to class certification in 2002, and did not oppose Plaintiffs' Motion to Amend the Class Certification Order in 2005. In so doing, it agreed that the four criteria under Federal Rule of Civil Procedure 23 were satisfied. Specifically, that the proposed class is so numerous that joinder of all members is impracticable; that common questions of law and fact exist, that the representative plaintiffs' claims and defenses are "typical of the claims or defenses of the class;" and that plaintiffs are adequate to protect the interests of the Class.

Federal Rule of Civil Procedure 23 also requires Plaintiffs to satisfy one of the three categories of Rule 23(b). These three categories are: (1) the risk of inconsistent or varying adjudication; (2) action by the defendant on grounds generally applicable to the class; and (3) common questions of law or fact predominate and class resolution is superior to other available methods. The TWA Pilot Class, through the course of this litigation, has satisfied, and been sufficiently certified under, each prong of 23(b).

By Order dated February 12, 2003, and with ALPA's consent, this Court first certified this case as a class action pursuant to Fed. R.Civ.P. 23(b)(1) and (b)(2). Certification under 23(b)(1) and (2) was appropriate when the first class certification Order was entered because American Airlines ("AA") and its pilots' collective bargaining agent, the Allied Pilots Association ("APA"), were defendants from whom injunctive relief – in terms of seniority integration – was sought, in addition to the monetary damages being sought against ALPA.

ALPA was the sole defendant after the Third Circuit affirmed this Court's dismissal of AA and APA, and monetary damages were the only available remedy. Accordingly, the Court on March 19, 2007, at Plaintiffs' request, amended its earlier Order and certified the Class pursuant to Rule 23(b)(3). *See* Doc. No. 205. Significantly, ALPA did not oppose Plaintiffs' application, did not challenge the propriety of class certification, and certainly never suggested that bifurcation was no longer appropriate. To the contrary, ALPA objected to Plaintiffs' motion to amend the class certification order solely as to the dissemination of class notice, arguing that class notice would be confusing to the Class since the case was bifurcated and -- according to ALPA - would surely be dismissed following summary judgment. Doc. No. 178, p. 2. "ALPA accordingly proposes a single notice, mainly because we see no justification for drawing on the parties' resources to develop, mail and require responses to a notice ***when the case will in all probability be dismissed prior to trial.***" *Id.* (emphasis added).

Now, apparently less convinced that it will prevail on the issue of liability, ALPA argues that the Court failed to conduct a "rigorous analysis" required under governing class certification case law, and as recently described by the Third Circuit in *In re Hydrogen Peroxide*. ALPA's argument, and reliance on *Hydrogen Peroxide,* is disingenuous and misplaced. Had ALPA not consented to class certification, the parties likely would have conducted discovery prior to class

certification. Plaintiffs, for example, would have retained liability and damage experts in advance of class certification or, at a minimum, would have sought clarification whether expert testimony was necessary in light of the bifurcation order which was sought by ALPA. Instead, ALPA consented to class certification and Plaintiffs have litigated this case based upon ALPA's consent as well as ALPA's request to bifurcate.

Professing no prejudice to Plaintiffs and denying any need five years ago for evidence of damages at the liability phase, ALPA cannot now seek to claim that a rigorous analysis with admissible expert testimony as to causation and damages is required when those issues have been bifurcated out of the case.

**B. Decertification is Not Warranted.**

The standard for decertification is high. Although District Courts may alter or amend certification orders, *see* Fed. R. Civ. P. 23(c)(1)(C), parties are not permitted to reargue issues to which they stipulated, conceded, or lost in earlier proceedings. A motion for decertification must be premised on a change of circumstances that makes continued class action treatment improper. *Elias v. Ungar's Food Products, Inc.*, 2009 U.S.Dist.LEXIS 74140, * 15 (D.N.J. 2009)("In order to warrant motion practice to decertify the earlier-certified class, the Court must be presented with a changed factual situation that renders the original certification 'unsound.'"). *See also Bayshore Ford Truck v. Ford Motor Co.*, 2010 U.S.Dist.LEXIS 7454, * 6 (D.N.J. 2010)(citing *Zenith Labs, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976)(court's decertification order should not be reviewed for just any reason, but rather, if upon further development of the facts, it appears that the original certification order is unsound). Here, ALPA has neither satisfied its burden to show any changed circumstances, nor demonstrated any cognizable reason to justify decertifying the class.

ALPA fails to identify or comply with the threshold requirements to decertify a class action. It merely cites cases in which Courts considered decertification motions generally, but it fails to cite to any facts, or change in the substantive law applicable to Plaintiffs' duty of fair representation claim, that would warrant this court to re-evaluate its earlier two decisions certifying this case as a class action.

ALPA argues that the Third Circuit's 2008 decision, *In re Hydrogen Peroxide*, is somehow a clarion call for all district courts everywhere to reexamine their certification orders entered before 2008. ALPA argues that "The Third Circuit recently clarified that trial courts must conduct a 'rigorous analysis' of each of the elements of class certification and that trial courts should require class counsel to submit a 'trial plan' at the time certification is required in order to demonstrate that a case may properly proceed as a class action." Db, p. 1. Not so. *Hydrogen Peroxide* is not new, the "rigorous analysis" standard is not new, and certainly does not mandate reconsideration of all earlier class certification decisions. *Elias*, 2009 U.S.Dist.LEXIS 74140, * 15-16 (quoting *In re Hydrogen Peroxide*, 552 F.3d at 324 ("*The Hydrogen Peroxide Antitrust Litig.* decision does not address whether a decertification motion may be made – but merely shows that an analysis under Rule 23 must consider all evidence, including expert reports and stands for the proposition that '[g]enuine disputes with respect to the Rule 23 requirements must be resolved after considering all relevant evidence submitted by the parties.'").

ALPA misinterprets *Hydrogen Peroxide*. At best, *Hydrogen Peroxide* outlines a procedural change in class certification, a point long passed in these proceedings. The question before the Third Circuit in *Hydrogen Peroxide* was whether the predominance requirement of Rule 23 had been satisfied; specifically, whether the fact of damages could be proven using

common evidence. *In re Hydrogen Peroxide*, 552 F.3d at 321. There was no discussion, as ALPA suggests, that there must be a specific analysis of individual injury. Db, p. 25.

The Third Circuit considered whether the proposed class was sufficiently cohesive to warrant adjudication by representation. In determining that remand was appropriate, the Court took issue with the trial court's reference to plaintiffs making a "threshold showing," fearing it suggested a presumption of class certification favorable to plaintiffs' instead of undertaking the requisite "rigorous analysis." *In re Hydrogen Peroxide*, 552 F.3d. at 322.

ALPA goes further to suggest that decertification is warranted because the Plaintiffs here have never submitted a "trial plan" outlining precisely how this case will be presented. Db, p. 27. A trial plan is not, however, a prerequisite to finding that the requirements of Fed. R. Civ. P. 23 have been satisfied, and *Hydrogen Peroxide* does not suggest otherwise. Moreover, it is elevating form over substance that such a plan is appropriate at this late stage of the proceedings. On February 8, 2011, the parties appeared before the Court for a pretrial conference. Following that conference, which addressed precisely how this case would be tried, the Court entered the parties' 77-page Joint Final Pretrial Order (excluding exhibits). *See* Doc. No. 352. Plaintiffs cannot envision a more precise trial plan.[1]

As recognized by Judge Debevoise *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009), the "[p]laintiffs' burden at the class certification stage is not to prove the elements of their particular claim. Instead, the task for plaintiffs at class certification is to demonstrate [those elements are] capable of proof at trial through evidence that is common to the

---

1 The parties also extensively briefed the motion for summary judgment. There was no suggestion by ALPA that the issues before the Court were individual issues not appropriate to be tried on a classwide basis.

class rather than individual to its members" *Id.* at 49 (citing *Hydrogen Peroxide*, 552 F. 3d at 309).

Defendant does not challenge this Court's previous class certification analysis, or suggest the wrong standard was applied to (stipulated) class certification in 2003. Similarly, Defendant does not argue that a common methodology is unavailable to prove damages. While a set of facts separate from those offered to prove liability may show that some members of the Class may not have sustained recoverable monetary damages, *i.e.* class members who suffered no monetary harm by virtue of the seniority integration, or were so junior on the seniority integration list that they would have been furloughed regardless following the events of September 11, 2001, this fact does not mandate decertification or even a restructuring of the class at the liability phase of the litigation.

*Hydrogen Peroxide* does not provide the Defendant the basis to walk away from its stipulation of class certification or its specific request to bifurcate damages and liability. And it certainly does not provide a basis for decertifying this nine-year old case which is ready for trial on liability.

## II. THE ISSUES OF CAUSATION AND "FACT OF DAMAGES" ARE NOT PROPERLY BEFORE THIS COURT.

ALPA spills much ink discussing possible damages in this litigation, Db, pp. 13-19, including the various damage theories it believes Plaintiffs might advance, and takes issue with each proposed theory. That discussion, however, bears little relationship to the issue at hand, and the evidence developed to date, whether ALPA breached its duty to the TWA Pilot Class.

After urging this Court to bifurcate liability and damage because damages involves "a complete separate set of fact," ALPA now argues in a blatantly prejudicial turnaround that Plaintiffs be required to prove causation and the fact of injury as part of the liability phase. The

complexity of these issues, -- indeed, the separate set of facts – were the very basis for ALPA's decision to seek bifurcation in 2005 following remand from the Third Circuit.[2] In support of bifurcation, ALPA argued:

> [T]he liability and damages issues present distinct burdens for the plaintiff to meet: in the former, to establish that *the behavior of the defendant was deficient*; and in the latter, to establish the actual harm *caused* by that deficient behavior to the individual plaintiffs. *Doc. No. 112*, p. 14 (emphasis added).
>
> *　　*　　*
>
> The liability issue in this case is whether ALPA breached its duty of fair representation to the former TWA pilots. The question is one that *solely concerns the actions of ALPA* in the 2001 negotiations that resulted in the seniority arrangements that ultimately emerged. *Id.* (emphasis added).
>
> *　　*　　*
>
> If Plaintiffs' case survives ALPA's summary judgment motion (which we doubt), bifurcation would have the effect of focusing the jury's attention on *the actual behavior of ALPA* during the events in question to determine liability. *Id.*, p. 16 (emphasis added).[3]

---

2 ALPA's motion to bifurcate, which was not opposed by Plaintiffs' former Class Counsel, was granted by the Court without elaboration. *See* Doc. No. 113.

3 ALPA further argued that the complexity and expense associated with recreating a fair and reasonable seniority list warranted bifurcation.

> Given the nature of the transaction involved, calculation of damages would be an extremely complex undertaking. To prove the proper amount of damages, Plaintiffs would need to show what the seniority list would have looked like had ALPA not [breached its duty of fair representation]. *Doc. No. 112*, pp. 8-9.
>
> *　　*　　*
>
> Establishing what the consolidated seniority list would have looked like had negotiations turned out differently in this case would be, in short, an exceedingly complex and resource-intensive endeavor, requiring extensive discovery and expert witness testimony. *Id.*, p. 10.
>
> *　　*　　*
>
> ALPA is confident that it will prevail on the question of liability, most likely on summary judgment, but, in any event, certainly at trial on that issue, thus obviating the need for the extensive inquiry that would be required to establish damages. *Id.*, p. 11.

*See* Doc. No. 112.

It should not be overlooked that ALPA and its arguments are the reasons that causation was excised or bifurcated from the liability phase of trial. Indeed, Plaintiffs' discovery and trial preparation were conducted in reliance on this fact, and ALPA is quite aware that Plaintiffs have not yet undertaken the "exceedingly complex and resource-intensive endeavor" to reconstruct the seniority list. Indeed, this issue is one on which ALPA specifically requested a separate trial. ALPA now takes a diametrically opposed position. Knowing that Plaintiffs have not developed the "completely separate set of facts" needed to prove damages, it would be fundamentally unfair for ALPA to reverse its position and place upon plaintiffs the burden of proving causation, without the benefit of discovery and expert testimony, in the liability phase of this trial.

## III. BIFURCATION OF CAUSATION AND DAMAGES IS COMPLETELY APPROPRIATE.

ALPA seems to suggest that, notwithstanding the bifurcation order, Plaintiffs must make some showing of causation and injury in fact. ALPA is incorrect.

Federal Rule of Civil Procedure 42(b) governs bifurcation in federal trials. In relevant part, Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may issue a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The Court need not draw the line at the intersection of liability and damages, but instead can draw the line wherever it deems best. *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995). "The judge can bifurcate (or for that matter trifurcate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication." *Id.*

Plaintiffs are challenging whether ALPA properly exercised its duty to fairly represent them. This Court properly ordered that the first trial would be limited to a determination of whether "the behavior of the defendant was deficient," *i.e.* duty and breach of duty, as requested by ALPA. *See* Doc. No. 112, p. 14. The Court in *Aquinaga*, a factually analogous case, engaged in a similar bifurcation. There, the parties tried liability to a jury and reserved the damage phase for the court. *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1469 (10th Cir. 1993).

It is too late for ALPA to suggest that this Court essentially reverse its bifurcation order, upon which the Plaintiffs have relied. Not only would it be prejudicial to require Plaintiffs to prove an element of their claim prematurely, it would require additional discovery and would unnecessarily delay trial as to liability.

## IV. PLAINTIFFS WILL BE ABLE TO ESTABLISH CAUSATION AND DAMAGES FOLLOWING A SUCCESSFUL LIABILITY FINDING.

ALPA cites to a series of collective bargaining decisions in support of their motion. *See, e.g.*, Db, p. 16-18 (citing *Acri v. Int'l Assoc. of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986); *Barrett v. Thorofare Markets, Inc.*, 452 F.Supp. 880 (W.D. Pa. 1978) and *Anderson v. United Paperworkers Int'l Union*, AFL-CIO, 641 F.2d 574 (8th Cir. 1981)). While it is not entirely clear why ALPA believes these cases are relevant to a motion for decertification, it is clear that those cases address a standard different than the standard that should be applied when Plaintiffs reach the damage phase of this litigation. For unlike *O'Neill*[4] and similar cases, this is not a case where union members are suing their union for failure to strike a better deal through collective bargaining. Instead, this case involves the primary concern that a duty of fair representation was designed to address. That is, the concern that individual employees not be

[4] *Air Line Pilots Association v. O'Neill*, 499 U.S. 65 (1991).

deprived of all effective means of protecting their interests. *See, e.g., Lewis v. Tuscan Dairy Farms*, 25 F.3d 1138, 1142 (2d Cir. 1994)(distinguishing *O'Neill*); *Aquinaga,* 933 F.2d at 1471.

The TWA Pilot Class has alleged, and intends to prove using common evidence, a laundry list of misdeeds and lost opportunities committed by ALPA, all of which were motivated by ALPA's desire to curry favor with the American Pilots. ALPA's actions deprived the pilots of all effective means of protecting their seniority interests in their negotiations with the American pilots. And, following a favorable decision on liability, the Plaintiffs will be prepared to establish that ALPA's conduct caused the Pilot Class to suffer damages, as was done in *Lewis* and *Aquinaga* courts.

## CONCLUSION

For the reasons stated herein, ALPA's Motion to Decertify the Class must be denied.

Dated: March 14, 2011

Respectfully submitted,

TRUJILLO RODRIGUEZ & RICHARDS, LLC

By: s/ Lisa J. Rodriguez
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ 08033
(856) 795-9002

GREEN JACOBSON, P.C
Martin M. Green
Joe D. Jacobson
Allen P. Press
Jonathan F. Andres
7733 Forsyth Boulevard
Suite 700
St. Louis, Missouri 63105
Telephone: 314-862-6800