# Exhibit Q

1

1

2                    IN THE UNITED STATES DISTRICT COURT.
                     FOR THE DISTRICT  OF NEW JERSEY
3                    CIVIL 02-2917  (JEI)

4      PATRICK BRADY, SALLY YOUNG,
       HOWARD HOLLANDER, THEODORE CASE,
5      AND MICHAEL FINUCAN, individually
       and on behalf of all others
6      similarly situated,
                          Plaintiffs,
7                                          VOLUME 13
            V.                             TRIAL TRANSCRIPT
8
       AIR LINE PILOTS ASSOCIATION,
9
                          Defendant.
10
                          CAMDEN, NEW JERSEY
11                        JUNE  29, 2011

12     B E F O R E:   HONORABLE JOSEPH E. IRENAS
                      UNITED STATES DISTRICT JUDGE
13
                     A P P E A R A N C E S:
14
            TRUJILLO, RODRIGUEZ & RICHARD
15          BY:  NICOLE M. ACCHIONE, ESQ.
                 AND: LISA J. RODRIGUEZ, ESQ.
16                   AND
            GREEN JACOBSON, P.C.
17          BY:  ALLEN PRESS, ESQ.   (MO. BAR)
            AND:  JOE D.  JACOBSON, ESQ.   (MO. BAR)
18          For the Plaintiffs.

19          ARCHER GREINER
            BY:  STEVEN FRAM, ESQ.
20               AND
            KATZ & RANZMAN
21          BY:  DANIEL M. KATZ, ESQ.
            FOR THE DEFENDANT AIR LINE PILOTS ASSOCIATION.

22
            ELIZABETH  GINSBURG, ESQ.
23          IN-HOUSE COUNSEL FOR ALPA.

24

25

1

2          Pursuant to Section 753 Title 28 United States
Code,  the following transcript is certified to be an
3   accurate record as taken stenographically in the
above-entitled proceedings.

4
                         S/   LYNNE JOHNSON
5
                         Lynne Johnson, CSR, CM, CRR
6                        Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18
                    LYNNE JOHNSON, CSR, CM, CRR
19                  OFFICIAL COURT REPORTER
                    UNITED STATES DISTRICT COURT
20                  P.O. BOX 6822
                    LAWRENCEVILLE, NJ  08648.
21

22

23

24

25

Rautenberg-direct/Fram                                    16

1   there was a lot of discussions about those topics.

2   Q.   And did you view that as a good thing or a bad thing, if

3   American were to walk away from the transaction?

4   A.   I view Americans departure from the transaction to be

5   disastrous.

6   Q.   Explain to us why you felt that would be disastrous?

7   A.   I was confident that Americans departure from the

8   transaction would cause the liquidation of TWA and the loss

9   of jobs.

10  Q.   All right.  Let's move ahead to the meetings of the MEC

11  on April 1 and April 2.  Do you recall those meetings?

12  A.   I do.

13  Q.   Just to put in context, I refer you to defendant's

14  exhibit 210 in evidence.  It should be the next document

15  there.  Do you recall that as an email of Thursday, March 29,

16  scheduling a work session on Sunday, April 1, and a formal

17  meeting on Monday, April 2?

18  A.   Yes.

19  Q.   We projected that.  And then the next document, so you

20  have it in context, is defendant's exhibit 179 in evidence,

21  and that is the agenda for the April 2 meeting.  Pull that up

22  real quick.

23  A.   Yes.

24  Q.   All right.  Let's focus on the April 2 meeting, and I am

25  going to ask you to start by telling us who was present at

Rautenberg-direct/Fram                                    17

 1   this work session on Sunday, April 2.

 2   A.    I am confident that the entire MEC was present for the

 3   simple reason that, I had a habit of leaving the house early

 4   because I was local, sometimes there was traffic.  And I

 5   would tend to get to the meetings a bit early.  And upon

 6   arrival at this meeting on the second, after the work meeting

 7   on the first, I went in to the meeting room and Scott

 8   Shwartz, the vice chairman of the MEC, was in the room

 9   preparing, making sure the room was prepared for the outset

10   of the meeting.  And we entered into a brief discussion about

11   how he thought things would go.

12   Q.    Let's go back to April 1.

13   A.    Okay.

14   Q.    I want to first focus on who was present for the work

15   session.  Do you recall that the work session was on the

16   afternoon of April 1?

17   A.    Yes, I do.

18   Q.    Okay.  Do you recall who was present for that meeting on

19   Sunday, April 1?

20   A.    Well, I was trying to explain that I think that every

21   one was present at that meeting, because of what I did the

22   following day.

23   Q.    Go ahead.  I am sorry to interrupt you.

24   A.    That is quite all right.

25         At any rate, as Scott Shwartz and I greeted one

1    Q.   We will come back to him in a minute.  What was the

2    discussion on Sunday, April 1, 2001?

3    A.   The discussion was about the impending 1113 hearing.

4    And what was likely to transpire, and what were the

5    alternatives.  Advisors, it was more of an open dialogue, it

6    was not a formal MEC meeting, per se.  It was a dialogue.  It

7    seemed that the basic format was the individual advisors took

8    turns, but on occasion, others would pipe in.  And

9    individually they just, they offered their thoughts about the

10   1113 and what the probabilities of prevailing in the 1113 and

11   what the implications of prevailing in the 1113 were.

12   Q.   When you say prevailing, prevailing in the sense of TWA

13   prevailing or prevailing from the sense of defeating it?

14   A.   Prevailing in the sense of potentially defeating TWA's

15   motion.

16   Q.   What do you recall advisors saying about the chances of

17   defeating the motion?

18   A.   Virtually nothing.  Virtually nil.  Advisors were

19   extremely pessimistic about the prospect of us prevailing and

20   defeating TWA's 1113 motion.

21   Q.   Were there was there any disagreement among advisors

22   about the prospect of defeating the motion?

23   A.   There was no disagreement about the prospects of

24   defeating the motion.  There was disagreement about other

25   issues, but not about the prospect of defeating the motion.

1    of how the TWA pilots were going to get integrated in?

2    A.   I expected that we would not have a great deal of

3    leverage in any case, no matter what we did, and that seemed

4    to be the case about this point in time, that there wasn't

5    very much movement on behalf of the Allied Pilots.

6    Q.   Going back to the meetings on April 1 and 2 and focusing

7    on the Section 1113 motion, what do you recall being

8    discussed at those meetings about the likelihood that the

9    motion would be granted, and that TWA would be successful in

10   rejecting the collective bargaining agreements?

11   A.   Again, I don't have an independent recollection of April

12   1.  But I do recall the discussions we were having that

13   evening.

14        I don't believe anybody in the MEC really had a

15   clear handle of what the likelihood was then.  There were a

16   few, one or two maybe, that had made up their minds, but

17   certainly the majority of us really had not decided what

18   those issues were and what those likelihoods were at that

19   point, on April 1.

20   Q.   The discussions you recall on April 1, who was there,

21   who do you recall being involved?

22   A.   I recall every member of the MEC being there, as well as

23   Bob Pastore, the MEC chairman.  And several of our advisors,

24   including some of the people on the finance committee that we

25   had, and other people who were involved in the bankruptcy,

# Exhibit R

```
 1                    IN THE UNITED STATES DISTRICT COURT.
                      FOR THE DISTRICT  OF NEW JERSEY
 2                    CIVIL 02-2917  (JEI)

 3        PATRICK BRADY, SALLY YOUNG,
          HOWARD HOLLANDER, THEODORE CASE,
 4        AND MICHAEL FINUCAN, individually
          and on behalf of all others
 5        similarly situated,
                         Plaintiffs,
 6                                         VOLUME 16
               V.                          TRIAL TRANSCRIPT
 7
          AIR LINE PILOTS ASSOCIATION,
 8
                         Defendant.
 9
                                   CAMDEN, NEW JERSEY
10                                 JULY 6, 2011

11        B E F O R E:   HONORABLE JOSEPH E. IRENAS
                         UNITED STATES DISTRICT JUDGE
12
                         A P P E A R A N C E S:
13
              TRUJILLO, RODRIGUEZ & RICHARD
14            BY:  NICOLE M. ACCHIONE, ESQ.
                   AND: LISA J. RODRIGUEZ, ESQ.
15                 AND
              GREEN JACOBSON, P.C.
16            BY:  ALLEN PRESS, ESQ.   (MO. BAR)
              AND:  JOE D.  JACOBSON, ESQ.   (MO. BAR)
17            For the Plaintiffs.

18            ARCHER GREINER
              BY:   STEVEN FRAM, ESQ.
19                  AND
              KATZ & RANZMAN
20            BY:  DANIEL M. KATZ, ESQ.
              FOR THE DEFENDANT AIR LINE PILOTS ASSOCIATION.
21
              ELIZABETH  GINSBURG, ESQ.
22            IN-HOUSE COUNSEL FOR ALPA.

23

24

25
```

1          Pursuant to Section 753 Title 28 United States
Code,  the following transcript is certified to be an
2    accurate record as taken stenographically in the
above-entitled proceedings.

3
                         S/   LYNNE JOHNSON
4
                         Lynne Johnson, CSR, CM, CRR
5                        Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17
                    LYNNE JOHNSON, CSR, CM, CRR
18                  OFFICIAL COURT REPORTER
                    UNITED STATES DISTRICT COURT
19                  P.O. BOX 6822
                    LAWRENCEVILLE, NJ  08648.
20

21

22

23

24

25

1    the 21st, TWA filed an amended motion stating that the

2    hearing would be held on April 6, and that objections would

3    be due March 30 instead of March 26.

4    Q.    Okay.

5    A.    And I believe I reported at that meeting that at some

6    point during that meeting.

7    Q.    When you reported to the MEC -- by the way, just tell us

8    generally who was present at the meetings on March 21 and 22,

9    2001?

10   A.    It was an MEC meeting.  There were a series of these

11   meetings.  Members of the MEC would be there and the officers

12   and the chairs at least of the negotiating and merger

13   committees, and the creditors committee representatives, and

14   David Holtzman and me and Steve Tumblin and Michael Glanzer,

15   and I think at most of these meetings, if not all of them,

16   Clay Warner.

17   Q.    Did you talk at the meeting on March 21 and 22 about

18   whether the hearing date could be postponed, whether there is

19   a way to get the motion to be considered to be put off?

20   A.    I believe I did.

21   Q.    What did he say?

22   A.    The statute, this is a very unusual statute.  The

23   statute says that when the motion is filed, the hearing, the

24   Court will schedule the hearing no later than two weeks after

25   the motion is filed.  And the Court, for, it says something

1   like special circumstances or the circumstances of the case,

2   can extend it one week, and that is all.  The hearing has to

3   start 21 days after the motion is filed.  No later than that.

4   Unless the company agrees.

5           As I remember, April 6 was 21 days, maybe it was 20

6   days, but it was 21 days after March 15.  So that unless the

7   company agreed, the hearing was going on start on April 6.

8   The statute instructed the Judge not to extend the start of

9   the hearing unless the company agreed.

10  Q.   Did you have a sense on March 21 or 22 of how long the

11  hearing would take?

12  A.   Yes.  I had a general sense.

13  Q.   Did you talk to the people at the meeting about how long

14  you thought the hearing would take?

15  A.   At both this meeting and the meeting on, the last

16  meeting which was April 1, 2, my -- and we were focusing at

17  this point more on getting the objection done and filed.

18  That was the first thing we needed to do.  But that -- from

19  everything I knew in the negotiations, everything was

20  focusing now on scope and successorship.  And seniority

21  integration.   I sort of mean that too.

22          And so my view, I think I expressed at this point,

23  I know I expressed at the next meeting, was that we would

24  need a witness, the negotiating history was going to be

25  agreed to, I thought, what is in the contract is going to be

# Exhibit S

1

```
 1                    IN THE UNITED STATES DISTRICT COURT.
                      FOR THE DISTRICT  OF NEW JERSEY
 2                    CIVIL 02-2917  (JEI)

 3          PATRICK BRADY, SALLY YOUNG,
            HOWARD HOLLANDER, THEODORE CASE,
 4          AND MICHAEL FINUCAN, individually
            and on behalf of all others
 5          similarly situated,
                         Plaintiffs,
 6                                               VOLUME 18
                 V.                              TRIAL TRANSCRIPT
 7
            AIR LINE PILOTS ASSOCIATION,
 8
                         Defendant.
 9
                                         CAMDEN, NEW JERSEY
10                                       JULY 11, 2011

11          B E F O R E:   HONORABLE JOSEPH E. IRENAS
                           UNITED STATES DISTRICT JUDGE
12
                         A P P E A R A N C E S:
13
                 TRUJILLO, RODRIGUEZ & RICHARD
14               BY:  NICOLE M. ACCHIONE, ESQ.
                     AND: LISA J. RODRIGUEZ, ESQ.
15                   AND
                 GREEN JACOBSON, P.C.
16               BY:  ALLEN PRESS, ESQ.   (MO. BAR)
                 AND:  JOE D.  JACOBSON, ESQ.   (MO. BAR)
17               For the Plaintiffs.

18               ARCHER GREINER
                 BY:   STEVEN FRAM, ESQ.
19                     AND
                 KATZ & RANZMAN
20               BY:  DANIEL M. KATZ, ESQ.
                 FOR THE DEFENDANT AIR LINE PILOTS ASSOCIATION.
21
                 ELIZABETH  GINSBURG, ESQ.
22               IN-HOUSE COUNSEL FOR ALPA.

23

24

25
```

1           Pursuant to Section 753 Title 28 United States
Code,  the following transcript is certified to be an
2    accurate record as taken stenographically in the
above-entitled proceedings.

3
                            S/   LYNNE JOHNSON
4
                         Lynne Johnson, CSR, CM, CRR
5                        Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17
               LYNNE JOHNSON, CSR, CM, CRR
18             OFFICIAL COURT REPORTER
               UNITED STATES DISTRICT COURT
19             P.O. BOX 6822
               LAWRENCEVILLE, NJ  08648.
20

21

22

23

24

25

1    faction.  Look at this room.  And my clients, he called them

2    all liars.  I want you to remember, some of them are here.

3    Alan, Sean Clarke.  Please stand up.  Sally Young.  Alan

4    Altman.  Matt Comlish.

5          They are all liars.  That is what he just told you.

6    You remember these people.  They sat there, right in that

7    chair and looked you all in the eyes and told you what they

8    believed.

9          They told you what they remembered.  To the best of

10   their ability, stuff that happened ten years ago.  Their

11   story was completely consistent, unlike some of the ALPA

12   witnesses that we will get into.  That is who they are

13   calling liars to you today.

14         And then this charming fellow, remember him.  This

15   was Howard.  Howard Hollander.  He is a liar, too.  He is the

16   fellow that remember, that fateful day, April 2, he followed

17   advisors out of the conference room, they went in and  have a

18   conference call and he put his ear on the wall, the room next

19   door and he overheard what they were saying, which wasn't

20   very nice.

21         But that is who they are now trying to portray as

22   just completely dishonest people.  And I hope you don't

23   believe it.  These people are serious, credible people.  They

24   came in here and told you the truth to the best they could,

25   and they are no faction.

the members vote on it.  Ratification.  The conclusion of an

agreement shall, at the discretion of the MEC, be subject to

MEC or membership ratification.

So if the MEC wants, it can put out a contract for

membership ratification.

What happened here?  On April 2 when the advisors

are all there telling them the train is leaving the station,

they may say that comment wasn't made, but you know it was,

they all say it.  But when that conversation was taking place

the MEC said they were reluctant to do this.  They didn't

want to.  They said can't we put this out for vote?  Can't we

have membership ratification?  And what was the response?

No.  There is not enough time.  There is not enough time to

do that.

Well, what was driving that issue?  The bankruptcy

hearing which was set to be heard four days later.  Okay.

The meeting was on Monday and then the bankruptcy hearing was

on a Friday, and they are saying, well, there is not enough

time to put it up for ratification.  But there was.  Mr.

Seltzer supplied the proof.  He told you that there is an

automatic right to an extension of the 1113 hearing.  All

they had to do is go into court and say Judge, we would like

an extension of this hearing so that we can put this issue

out to vote to the members, the union local representatives

have asked for it, and that is what we want to do.

1          And that would have been done.  Then ALPA has

2     procedures for telephonic balloting.  In can be done very

3     quickly.  So when they told the MEC there is not enough time,

4     that wasn't true.  There was time.  They just wanted a

5     decision that day.  And I will explain to you why that was

6     important to them.  But not now.

7          The next highlighted page, again, how to negotiate

8     a contract policy.  This one is "Crisis and concessionary

9     Negotiations."

10          The TWA pilots were clearly involved in a

11     concessionary negotiation.  They were being asked to give up

12     their scope.  Nothing could be more important to them.

13          So this policy applies.  And what does it say on

14     the next page?  If you are involved in that kind of

15     negotiation, ALPA shall provide to the MEC, can you highlight

16     that?  Shall provide three things.  First one is probably the

17     most important one:  Coordination directly through the

18     president's office.  So under ALPA's written policy, if an

19     MEC is involved in a concessionary negotiation, that

20     negotiation has to be coordinated through the president's

21     office.

22          That didn't happen here.  Woerth didn't tell you

23     one thing that he did coordinating any of this negotiation of

24     this new contract.  He wasn't involved.  They violated the

25     policy.

# Exhibit T

1

```
 1                    IN THE UNITED STATES DISTRICT COURT.
                      FOR THE DISTRICT  OF NEW JERSEY
 2                    CIVIL 02-2917  (JEI)

 3          PATRICK BRADY, SALLY YOUNG,
            HOWARD HOLLANDER, THEODORE CASE,
 4          AND MICHAEL FINUCAN, individually
            and on behalf of all others
 5          similarly situated,
                         Plaintiffs,
 6                                            VOLUME  19
                  V.                          TRIAL TRANSCRIPT
 7
            AIR LINE PILOTS ASSOCIATION,
 8
                         Defendant.
 9
                                      CAMDEN, NEW JERSEY
10                                    JULY 12, 2011

11          B E F O R E:   HONORABLE JOSEPH E. IRENAS
                           UNITED STATES DISTRICT JUDGE
12
                         A P P E A R A N C E S:
13
                 TRUJILLO, RODRIGUEZ & RICHARD
14               BY:  NICOLE M. ACCHIONE, ESQ.
                      AND: LISA J. RODRIGUEZ, ESQ.
15                    AND
                 GREEN JACOBSON, P.C.
16               BY:  ALLEN PRESS, ESQ.   (MO. BAR)
                 AND:  JOE D.  JACOBSON, ESQ.   (MO. BAR)
17               For the Plaintiffs.

18               ARCHER GREINER
                 BY:   STEVEN FRAM, ESQ.
19                     AND
                 KATZ & RANZMAN
20               BY:  DANIEL M. KATZ, ESQ.
                 FOR THE DEFENDANT AIR LINE PILOTS ASSOCIATION.
21
                 ELIZABETH  GINSBURG, ESQ.
22               IN-HOUSE COUNSEL FOR ALPA.

23

24

25
```

2

1        Pursuant to Section 753 Title 28 United States
Code,  the following transcript is certified to be an
2 accurate record as taken stenographically in the
above-entitled proceedings.

3

                  S/   LYNNE JOHNSON

4

                  Lynne Johnson, CSR, CM, CRR
5                   Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

              LYNNE JOHNSON, CSR, CM, CRR
18           OFFICIAL COURT REPORTER
            UNITED STATES DISTRICT COURT
19           P.O. BOX 6822
            LAWRENCEVILLE, NJ  08648.

20

21

22

23

24

25

1    That is what they want you to believe.  Because Roland Wilder

2    testified he wasn't there on April 2.

3            Well, what is missing from that argument is the

4    fact that Roland Wilder flip-flopped three times on whether

5    he was there on April 1 or April 2.  And that was played to

6    you.  And what Mr. Fram played to you was his last testimony

7    where he flip-flopped back saying no, I wasn't there.  I was

8    there on the first, but not on the second.

9            So instead of coming in and trying to convince you

10   that all my clients lied, isn't it more reasonable to think

11   that Mr. Wilder was just confused on the date?  Isn't that

12   more reasonable?

13           You know what I think about it.  But you also have

14   something that was missing.  David Singer, their own witness,

15   testified that Roland Wilder was there on April 2.  Their

16   other pilot witnesses, Rautenberg, he conveniently couldn't

17   recall.  That was his testimony.  So every pilot witness that

18   hit that stand told you that Roland Wilder was there that

19   day.

20           And Roland Wilder, again he went back and forth

21   several times and then finally, the last time he testified it

22   was, no, Roland wasn't there.

23           So let's get back to this list of tools.  Where I

24   left off was funding.

25           The next one I want to talk about is lobbying.  The

1    its rent, yeah, have its meetings and for the various MEC

2    officers and committee members did do their work.

3           So ALPA allows TWA to strip the pilots of their

4    flight pay loss bank and then they replenish it.  Did that

5    provide any leverage to Mike Day's committee, negotiating for

6    seniority?  No.  That is not leverage.

7           The next thing, I don't know about the order, but

8    another one, he said, that Duane Woerth appeared before the

9    American Airline pilot union's board on April 5 and had a

10   discussion with them.  Woerth, 4/5, at APA.

11          Okay.  What else did he say?  Oh.  Yeah.  Mr. Fram

12   told you that Duane Woerth went down there to Dallas and told

13   the American pilots that they had to be fair to the TWA

14   pilots.  That is what he supposedly did.

15          And what is the proof of that?  Duane Woerth's

16   testimony.  There is not one substantiating piece of evidence

17   in the record.  Yeah, the TWA pilots reported in their memos

18   afterward what Duane Woerth had told them he said.  That is

19   not evidence of what Duane Woerth actually said.  That is

20   just them parroting what he said,  what he told them.

21          We showed you, we read you a deposition, very short

22   one we took of an American pilot who was actually at the

23   meeting.  Do you remember we had to read it?  I had, we had

24   Joe Jacobson sit in the witness stand and be the witness, I

25   think.  And his name was Reifsnyder.  This guy was at the

# Exhibit U

```
                        ALPA C&R Discussions.txt
From:          Robert Reifsnyder LAX/FO/737/D 332408 #7065
               <RReifsnyder@HQ.ALLIEDPILOTS.ORG>
Subject:       Re: ALPA won't take us!
MIME-Version: 1.0
Content-Type: text/plain; charset="iso-8859-1"

>-----Original Message-----
>From: Robert Johnson Jr DFW CKA 137522 #5046
>[mailto:bobjohn783@AOL.COM]
>Sent: Tuesday, April 17, 2001 1:05 AM
>To: C-R@ALLIEDPILOTS.ORG
>Subject: Re: ALPA won't take us!
>
>
>What I was wondering was: Would ALPA take us if we stapled TWA
>to the bottom of our list?  Could it be possible that our
>stance on the TWA merge would be affected by what ALPA might
>think? What if we did not use a framework such as their merger
>protocol which was just explained in the APA mailer? Might
>they block an attempt to reaffiliate? <<

Bob,

While you and I have disagreed on many issues, generally I can see the
rationale for your arguments.

Here, I can't.

Do you think ALPA national will decide to keep 15,000 pilots out of ALPA
(don't forget, TWA will probably be APA eventually) just because of a
dispute on a seniority merge?

Hell, when TWA and Ozark merged, TWA pointedly and specifically ignored ALPA
merger policy.

Duane Woerth stood in front of the APA BOD and told us that he had told the
TWA pilots to "get real" on their aspirations of the seniority merge.

Pandering?  Maybe.  But hardly the kind of talk that would seem to counsel
against any ideas we might have on the seniority integration.

Reif

--> C & R Acceptable Use Policy - http://www.alliedpilots.org/aup.01.html <--


>>> Posting number 71833, dated 17 Apr 2001 10:12:23
Date:          Tue, 17 Apr 2001 10:12:23 -0500
Reply-To:      APA Challenge & Response <C-R@ALLIEDPILOTS.ORG>
Sender:        APA Challenge & Response <C-R@ALLIEDPILOTS.ORG>
From:          Robert Johnson Jr DFW CKA 137522 #5046 <bobjohn783@AOL.COM>
Subject:       Re: ALPA won't take us!
Comments: To: Robert Reifsnyder LAX/FO/737/D 332408 #7065
          <RReifsnyder@HQ.ALLIEDPILOTS.ORG>

On Tue, 17 Apr 2001 09:56:07 -0500, Robert Reifsnyder LAX/FO/737/D 332408
#7065
<RReifsnyder@HQ.ALLIEDPILOTS.ORG> wrote:


>Bob,
>
>While you and I have disagreed on many issues, generally I can see the
                              Page 14
```

C00311

# Exhibit V

#25



# STL COUNCIL 003

## INFORMATION UPDATE

### BRIEFING #: 2001-09,

### May 8, 2001



EXHIBIT
D025
_____

**HELLO, THIS IS RON TAMACCIO, COUNCIL 003 COMMUNICATIONS CHAIRMAN WITH AN ALPA INFORMATION UPDATE.**

**TODAY IS TUESDAY, MAY 08, 2001.**

**IT'S 15:04 HOURS IN ST. LOUIS.**

**THERE ARE TEN ITEMS IN THIS BRIEFING.**

**1. AS ALWAYS, SAFETY FIRST!**

In our last Update, we cited a few examples of how some of our captains declare themselves experts in airworthiness requirements by not entering malfunctioning components or known deficiencies in the aircraft's logbook.

AS a follow on, we'd like to remind you that whenever you encounter any non-normal situation; be prudent and use all the resources available to you.

Don't proclaim yourself the on-site "expert," and start making decisions before you've had a chance to consult with the real experts.

Worse yet, don't ignore a bad situation hoping it will just go away.

The former is foolish, and the latter is just plain stupid!

1

Unfortunately, last week we had another in-flight engine failure.

The crew landed without incident, but, once again, failed to call anyone from ALPA's Safety Department.

We found out about it the next day.

Please remember, anytime you declare a flight segment *"non-routine"* per Chapter 6, Section VII, P., s., of the FOP; whatever happened to cause you to make that declaration is probably something ALPA needs to know about.

In some respects, our simulator training for these kinds of abnormal procedures sets us up for not following through with the necessary notifications.

In the sim, once we touch down, the event ends and we go on to the next one.

However, in the real world, when we experience one of these kinds of situations, the crew is put on Chief Pilot Hold (CHP) and the 21(A) inquiries begin immediately thereafter.

The first things you do or say are the very things that will have the greatest impact on the eventual outcome.

Don't start talking or writing until you talk to us!

Call 1-800-USE-ALPA.

## 2. INTEGRATION UPDATE.

Things aren't going well in our discussions with APA about how to integrate the TWA pilots into the American Airlines' Pilot Seniority List.

To date, both proposals from APA included a methodology whereby the most senior TWA pilot ends up somewhere below the middle of the current AA list, and more than half of the rest of the TWA group is stapled to the bottom.

Unlike Mr. Carty, the rest of AA's top managers, and many airline industry analysts, the APA's leadership still refuses to attribute any value to TWA's contributions to the transaction between the two airlines.

2

It's apparent to us that APA feels AA "saved" TWA from extinction, and absent that, we'd all be out of work.

So, from their perspective, we should be quite happy with APA's current offer.

Until their mindset changes, and APA's leadership recognizes how this transaction *enhances the career expectations of its members,* it's unlikely their negotiating position will change.

Nevertheless, our team is preparing a very detailed counter-proposal; based on a concept that does reflect the substantial positive contribution the TWA assets bring to AA's system, the company's "bottom line," and the career expectations of all its pilots.

Also, there's another *sub-rosa* aspect to this whole negotiation.

Since the pilots from Continental recently voted to rejoin ALPA, APA is now the only large, stand-alone pilots union in the US.

Its leadership just agreed to pay a $49.5 million claim to AA management resulting from APA's illegal sick out in February 1999.

The former Reno Air pilots are suing them and there's a group of AA pilots in a shadow union on their property.

All things considered, perhaps APA's leadership feels they must appear "strong" to their members in order to maintain their independent status and their position as bargaining agent for the AA pilots. It's no secret that ALPA would like to have AA back in the Association. We'll keep you posted as events unfold.

Because of scheduling conflicts, the next meeting between the parties will not occur until sometime later this month.

## 3. STAFFING REPORT.

What follows is from Gary Tritt, Acting Chairman of the System Schedule Committee.

*The following information is for distribution to the pilot group.*

*First item concerns the future wide body displacement message.* ***At this time there are no plans by***

3

**the company to post another wide body displacement bid message.**

The current staffing of the wide body fleet is such that there is minimal overstaffing through the fall, 2001.

Second item concerns the 717 fleet. The company has created an aggressive June schedule for the 717 fleet that has resulted in excessive penalty time creating a situation whereby the crews available were not sufficient to fly the schedule. In an effort to reduce the crew requirements for June the result was a decrease in actual flying hours and very few 1 and 2 day trips for the fleet.

Third item again concerns the 717 fleet. Expect a bid message within the next month effective probably in August for 717 vacancies. We are requesting that all pilots, especially the DC9 pilots review their standing bids. If the company is unable to fill the 717 vacancies and there is an overstaffing of the DC9 fleet (a real probability due to DC9 aircraft being retired), then we can probably expect a displacement message for the DC9.

Fourth item. The company is in the process of completing their semi-annual review of the financial plan and will adjust the financial plan as required.

It is unknown at this time the specifics, however, considering the changes that have occurred in ownership and fleet size we expect to see changes, to what extent, we don't know. It is imperative that all pilots continue to review their standing bids.

Last item. When pilots have questions concerning their schedule, they should first contact crew scheduling. If your answer is not satisfactorily answered then you next step should be to contact your domicile for resolution.

If your problem is not answered satisfactorily, or you feel that this could be a problem to other pilots, please notify your Scheduling Committee representative, a Grievance Committee representative or your elected LEC representatives.

These representatives are listed on the MEC website. And again, have a question, just ask, we'll try our best to get an answer for you.

Gary Tritt

ALPA 000212

4

*SSC Chmn, Acting*

## 4. RETIREMENT PLAN OPTIONS.

Sometime last week, everyone should have gotten a letter confirming the amount of past-due company contributions, plus interest, made to your DAP account. The payments were made on April 19th.

These monies were the last contributions from any source, excluding rollovers, to the TWA DAP and 401(k) accounts.

All future TWA LLC retirement contributions and your personal 401(k) contributions will go to your new AA $uper $aver Account.

Also in the letter was important information about the future of the DAP and 401(k) Plan.

It appears that the DAP will continue, as is, with a new sponsor. However the 401(k) Plan will eventually be terminated.

Please pay close attention to the directions for requesting a

distribution or rollover from either your DAP or 401(k) account.

Errors could have substantial tax consequences.

## 5. NEW MEC OFFICER.

The MEC elected Keith O'Leary to replace Scott Schwartz as its Vice Chairman.

Keith is a STL MD-8 Captain. He lives in STL.

## 6. MORE CHANGES ON THE MERGER COMMITTEE.

The MEC chose Captain D.J. Glasby to replace Captain Gary Flor on the Merger Committee.

Captain Flor left the committee for personal reasons.

The Merger Committee member are:

Captain Mike Day
Captain D. J. Glasby
Captain John Swanson
F/O John Hefley
F/O Sean Clark

5

ALPA 000213

## 7. ALPA PRESIDENT SPEAKS TO APA ABOUT TWA PILOTS.

What follows is an excerpt from ALPA's President, Captain Duane Woerth's comments to the TWA MEC and ALPA members present at a Special MEC meeting on April 23, 2001.

Addressing the current issues facing TWA pilots specifically, Captain Woerth said that as an ex-Braniff pilot he was happy that TWA pilots had hung on to get to the point we are. The Association's focus now is on obtaining a fair seniority integration for the TWA pilots, he said.

Captain Woerth reported that earlier this month he traveled to Dallas with the intention of speaking to the Allied Pilots Association Board of Directors about the TWA pilots' seniority integration. Although the APA did not guarantee that Captain Woerth would be allowed to speak to the APA BOD, he went with the hope of receiving an official invitation. That morning, APA President John Darrah contacted Captain Woerth with that invitation. This would be only the second time since APA was formed that a sitting ALPA President had been able to officially address the APA BOD, according to Woerth.

During his discussion with the APA, Captain Woerth said that this transaction would mark the first time in the American pilots' careers that they would have to deal with integrating a large airline with a long history. He said this transaction is different than Reno or Air Cal and the APA must realize that and be fair in their negotiations.

He went on to tell the APA that the TWA MEC had recently made one of the hardest decisions he has ever seen any MEC make in reaching the transition agreement with TWA Airlines LLC. Captain Woerth said that the TWA MEC had made a realistic assessment of their situation and made the hard decision, and now the APA needs to get realistic and make a hard decision.

He told the APA that they have an even greater responsibility to be fair and realistic since they would not allow a third party to facilitate the negotiations. (NOTE: Subsequent to Captain Woerth's meeting with the APA, they agreed to the use of a facilitator if needed.)

ALPA 000214

6

*Captain Woerth told the MEC then that he would send a letter to the TWA pilots and others to be sure they all know what his position is. Captain Woerth pledged the financial support of the entire Association for the TWA pilots. In light of losing the 9,000-hour flight pay loss bank previously negotiated with TWA, Inc., Captain Woerth assured the MEC and other members present that the TWA MEC will be provided the funds and other support necessary from ALPA to process MEC activities.*

*Capt. Woerth stated that they would look at the TWA MEC's financial needs quarter by quarter without micromanaging the MEC.*

*This is a unique situation - we are going to take care of business, he added.*

*Question and Answers (paraphrased and condensed):*

*Q: What is APA's status with regard to the AFL-CIO?*

*A: The APA has been trying to get into the AFL-CIO for a long time, and they have not been successful. They need to be true members of the labor movement if they want the political support and*

*clout that goes along with a national union.*

*Q: What did you think of the APA's latest proposal?*

*A: I saw their first proposal, and when they said they had a better one I certainly thought it would be better than that. I found it highly unsatisfactory.*

*Q: Do we have your commitment to use the resources of ALPA, including litigation, to ensure TWA pilots are integrated fairly?*

*A: If we have any basis for litigation, we will do what is necessary, including litigation. We hold the bargaining rights-we don't need MCF for litigation.*

*Q: What is your assessment of the APA Board of Directors? How did they receive you?*

*A: When I was in front of them, it was a very controlled group. There are less than 20 members on the BOD, out of which maybe two are approaching 50 years old. Frankly, in that way they don't look all that different than any MEC. Their Vice President is an ex-Eastern pilot; however, since American growth has been mostly through internal expansion and*

ALPA 000215

the APA has never been through a large merger like the rest of ALPA's MECs, they are struggling with how to do this.

Q: Are you of the opinion that an integration that is not fair to the TWA pilots will have long-range consequences for the industry and American Airlines going forward?

A: I think that's obvious. This transaction results in the largest airline with the largest pilot group. What the rest of the world's pilots will be counting on is for this combined group to have the unification and strength to do their job in negotiating their next contract. We need leading edge companies with leading edge contracts. The biggest airlines can raise the bar for everyone. If one big airline does not, then it negatively impacts the rest of the pilots in the industry.

The consequences of not doing the right thing are serious. The APA can use the addition of the TWA pilots to strengthen their position. If not, with a hostile political environment and an aggressive management, they might stay a notch below where they need to be. They need to be aware of the long-term consequences of what they do.

Q: Is there anything that you can do to assist the five pilots who have not been offered employment by American Airlines in the TWA LLC?

A: Bob Pastore and I will talk to Don Carty before any decision is made to be sure he understands all the issues involved.

Q: What influence do you think Don Carty has with the APA? Is there any assistance we can get from him?

A: We have an open dialogue with him. How effective he will be, I'm not certain. He has a hard time reaching a deal with his own pilots. If he doesn't want to look like the dumbest CEO in the industry he's got to do this right.

Q: Why did ALPA not choose to sponsor the pilots' DAP?

A: If we agree to sponsor one, we would have to be prepared to take on more. We simply don't have the resources to take on that kind of liability.

Q: What's the status of the fine levied against the APA as a result of their sickout in 1998?

A: I don't think Don Carty is going to make them write a check for something when they don't have

8

ALPA 000216

*it. I don't know what he will tell the judge.*

*The members applauded Capt. Woerth at the conclusion of his remarks.*

## 8. AA EXECS MEET WITH TWA LINE PILOTS IN STL.

Captain Rick Crocker provided this summary of the "Meet & Greet" session with AA managers in STL on May 3[d].

*The representative in attendance for AA were:*

*Capt. Bob Kudwa: VP Flight Operations*

*Jeff Brundage: VP employee relations*

*Capt. Eric Lewis: Managing Director (I believe of Flt Ops)*

*Capt Kudwa opened up the session with a few comments:*

*The TWA/AA combination places AA ahead of UAL strategically and puts UAL in a position of trying to find a way to counter what AA has done.*

*TWA runs an outstanding airline.*

*He wants everybody's motto for this merger to be "treat everybody like you want to be treated."*

*They do most of their company communication over their website.*

*They have access to Sabre from the website (you will no longer have to maintain a CompuServe account).*

*There were a few more comments but they are the same things we have already heard a 100 times. The rest of the statements were from the question and answer portion.*

*Someone asked about the potential loss of 60 A/C. He said they plan to move A/C out of LLC only to match the retirements of LLC pilots. Most of the A/C transfers would happen to A/C whose leases run out.*

*The future of the B717 depends on Boeing. They were offered a deal to replace every F100 with a B717. The returned F100's would not be used in the states. The deal got a little cloudy when they were going to have to include the extra F100's coming from USAir.*

9

ALPA 000217

The drop dead last possible date to be LLC is 12/31/04, but the LLC could disappear sooner.

Part of the delay in figuring out fleet plans and training issues was that they couldn't look at everything until the bankruptcy judgment was final (antitrust laws prohibited it).

If at any point there is an excess of pilots in the LLC they will be able to move across the fence (instead of being furloughed) based on whatever is agreed upon for our seniority integration.

The first noticeable change to our A/C is going to be the seats -- were going back to comfort class.

There will not be disposal of TWA a/c. They do not plan to replace 180 a/c unlike the Reno acquisition were they are replacing all of the a/c.

His comment on seniority integration is that it's "like everyone showing up to the dance with two dates but you are still worried about losing your girlfriend."

AA will not accept a proposal from APA that creates large costs.

Management is neutral on the position of seniority integration.

They would like an integration process sooner rather than later.

NO ONE WILL BE DISPLACED. He said that they do not have a displacement program and that as long as no one bids out of their seat they should not be forced out.

On their upgrade or out policy he said it is not their intention to eliminate people, in fact he thought we had a stricter policy.

When do we train to AA procedures? It will be slow integration followed by some sort of FAA requirement. They have no idea at this time what is exactly going to be required.

Are we a pawn in the upcoming Section 6 negotiations? We don't plan to use LLC as a pawn either way in negotiations.

They want the integration done quickly. "This has got to be done right from the people side, people issues are very important."

Any plans to change our domiciles? No changes currently, they plan to keep things status quo at the co-located domiciles.

10                                    ALPA 000218

They do NOT want another integration like Reno. They were not happy with the way the labor portion of the Reno integration worked out.

They thought the Air Cal integration went smoothly and like the easy way that integration of work forces took place.

Based on current staffing if we went to AA work rules there would be a significant shortage of LLC pilots.

We will be on AA pay and benefits NO LATER than 1/1/02.

Pref bid will be dead 12/31/01.

The type of flights using STL will be focused on connecting traffic so they can utilize ORD for more O&D traffic. They do not see an immediate increase in our international flying out of STL, they are still trying to get landing slots in NRT for the route authorities they have so don't look for a STL-NRT route anytime soon.

LLC new hires will be hired by A/A and then allotted to LLC, as LLC needs new pilots. They are currently looking into the status of the pilots in our pilot pool.

When will we get new uniforms? They have not set a date yet but would like it sooner rather than later.

They are currently working on who is going to be our feeder in STL.

When will we be eligible for profit sharing? LLC pilots will not be eligible for a profit sharing check for the year 2001 but should be eligible after that.

What is the status of the LLC5? They are currently still reviewing their legal issues and hope to have it resolved soon. It is now the LLC4 because one pilot has already been returned to the list.

These above comments are only my perception from my notes of the meeting.

Hope this helps those that want more info.

Rick

## 9. A MESSAGE FROM OUR COUNCIL'S NEW SECRETARY/TREASURER

Fellow Council 3 Pilots

ALPA 000219

I have just recently been able to obtain the email addresses of those pilots in Council 3, that have them on file with TWA ALPA. This was not an easy task with all the red tape involved.

As I have committed to a better line of communication with you, I will begin to give you EMAIL updates as to our progress with APA in the coming days, weeks and months.

You can also store my email address; so in the event you have any questions, feel free to email me. I will do my best to respond appropriately to those questions. In that, I will say that there may be times that I will not be able to be specific about sensitive issues that have to do with Strategic Planning Issues with the APA

This will be in your best interest in the long term. You may ask why? The answer is simple and to the point. Information that is often in the planning stage is not complete nor is it appropriate to communicate it if it may jeopardize the plan before it even gets started.

Often EMAILS and general postings have found themselves in the hands of the APA and being

counteracted to our Merger Committee, at their surprise. This is a tremendous problem that hurts the TWA pilots and your MEC's fight to seek a fair and equitable integration of the seniority list.

It is incumbent upon each one of us to understand this process. I ask that each of you take it upon yourself to limit your Internet and ALPA Board communication of items that may not already be released by ALPA.

I will also state, if ever in the future I feel that this process has a flaw or seems to be going down the wrong path, I will immediately communicate this to ALL C3 Pilots.

Those that represent you in ALPA are to be held accountable for their actions, this includes me. If you ever doubt their actions or their intent, it is perfectly within your right, to question their motives and their actions or lack thereof.

I am still committed to seeking (DOH) or it's equivalent for the TWA pilot's.

I will be putting a briefing together in the next 24 hours to bring as

12

*much of you up to date as possible.*

*Again, please feel free to email me at anytime.*
*Fraternally,*
*Jim Arthur*
*C3 Secretary/Treasurer*
*STL MD80 Captain*
*TWAC3JIMARTHUR@CS.COM*

## 10. A SPECIAL FRIEND APPROACHES RETIREMENT.

Our Chief Pilot will retire on May 24th. Captain Magnuson has served us well during his tenure as our "boss."

He's an outstanding example of the true spirit of enlightened, customer-oriented management.

Lee's unique style and genuinely caring approach to his responsibilities has, on more than one occasion, resulted in preserving a fledgling pilot's flying career that was in serious jeopardy.

His successor will have a difficult time following such a fine manager.

Before he retires, please try to stop by or send him a note to wish him well.

## THAT'S ALL FOR NOW. LOOK FOR OUR NEXT UPDATE SOMETIME LATER THIS MONTH.

## THANKS FOR CALLING WATSON.

## GOOD BYE.

The preceding information is a verbatim transcript of a TWA ALPA Council 003 Code-A-Phone message. The messages are updated frequently. Each message is prepared by Captain Ron Tamaccio and is sequentially numbered to provide continuity. The recording is available around-the-clock by calling WATSON at 314-426-1011.

ALPA maintains an office in the STL airport terminal. It's located in room MTS-2267, on the lower level in the corridor behind the rental car counters between exits MT-14 and MT-15.

The office is open weekdays from 0800 to 1600. The telephone number is (314)-426-1789. The FAX number is (314)-426-7295.

The mailing address is:
Air Line Pilots Association,
P.O. Box 10277,
SAINT LOUIS, MISSOURI 63145

ALPA 000221

Council 003 BRIEFING TRANSCRIPT #2001-09, 8-May-01, STL.
D-025

# HERE ARE SOME IMPORTANT TELEPHONE NUMBERS.

YOUR Captain Rep:
Steve Rautenberg,
(636) 561-4884

YOUR F/O Rep:
Sally Young,
(636) 561-1621

YOUR Secretary/Treasurer:
Jim Arthur
(314) 422-9518

MEC Safety Reporting Voice-Mail System:
(800) USE ALPA
(314) 770-8556

ALPA Worldwide Safety & Accident Investigation Hotline:
(202) 797-4180
CALL COLLECT!

MEC Code-a-Phone:
(800) 253-7919
MEC Office:
(314) 770-8500
MEC FAX:
(314) 770-8510/8597
MEC Benefits Specialist
Mary Ulett (314) 770-8500
DAP Office:
(314) 739-7373
DAP NAV Update:
http://resources.hewitt.com/4twadap.
DAP Information:
(877) 4TWADAP
CCS Hotline:
(800) 388-7665
TWA Info Line:

(800) TWA-1976
Council 002 CDP:
(800) 253-7928
Council 004 CDP:
LAX & SFO: (800) 887-1821
TWA Flight Information:
(800) 893-5436
TWA Non-Rev VRU System:
(800) 449-3833

American Airlines Info Line:
(800) 222-2789

STL Chief Pilot
Captain Lee Magnuson
Office: (314) 429-9452
Beeper: (800) 673-5488
Weekly Recorded Update:
(800) 892-5123
* 505-785-27 *

STL Asst Chief Pilot
Captain Roger Mason
Office: (314) 429-9453
Beeper: (800) 578-5244

Domicile Week End Duty Mgr
Beeper: see FIF/106

ALPA 000222

Council 003 BRIEFING TRANSCRIPT #2001-09, 8-May-01, STL.
D-025
Page 14 of 14

# Exhibit W

# TWA MEC Minutes

Written, edited and published by your TWA Master Executive Council, these minutes provide a record of the business conducted during the representative body's last meeting. This document is not a verbatim transcript of the meeting's reports, discussions and actions. Rather, it is a comprehensive summary of those events. For more information on the issues influencing TWA pilots' careers, consult the TWA MEC's other various communications.

SPECIAL MEETING DATE: April 23-24, 2001 St. Louis, Missouri

### MASTER EXECUTIVE OFFICERS
**Robert A. Pastore, Master Chairman**
**Scott A. Schwartz, Vice Chairman**
**Robert C. Stow, Sr., Secretary/Treasurer**

EXHIBIT
D078

**COUNCIL 2 - NY**
Howard B. Hollander, Captain Rep.
David B Singer, First Officer Rep.
Theodore A. Case, Secretary/Treasurer

**COUNCIL 4 - LAX/SFO**
Pablo Lewin, Captain Rep.
Alan Altman, First Officer Rep.
Glenn Stieneke, Secretary/Treasurer

**COUNCIL 3 - STL**
Steven P. Rautenberg, Captain Rep.
Sally D. Young, First Officer Rep.
Jim Arthur, Secretary/Treasurer

---

### Monday, April 23, 2001

1335 Master Chairman Bob Pastore called the meeting to order.

Secretary/Treasurer Bob Stow called the roll, members present or accounted for with the exception of Howard Hollander and Glenn Stieneke. Hollander proxy to Case. Stieneke was not present due prior family obligations.

Committee Members: Keith O'Leary, Ron Kiel, Cary Bouchard, John Swanson, Sean Clarke, John Hefley, Keith Holcomb, Mike Day, Steve Parrella, Rick Crocker, Bill Kientz, Kim Pearson, Vince Lombardi

Guests: On File MEC office

Steering Committee: Case, Rautenberg, Lewin

Sergeant at Arms: Ron Kiel

Announcements

Case read for the record the following statement written by Hollander to the Master Chairman:
"Due to personal reason, which we have spoken about last week, I am unfortunately unable to attend the TWA MEC Special Meeting on April 23-24. It is however my intent to attend the second day of the Special Meeting if at all possible. So that there is no confusion or misunderstanding, I have sent F/O Ted Case a valid proxy to vote on all issues in my place. We have spoken at length on all the published agenda items and he has a clear understanding on how the Council 002 pilots wish to be represented. I have asked F/O Ted Case to read this into the record at the start of the meeting and hand you this for your record."

---

**Duane Woerth, President ALPA**

Captain Duane Woerth briefed the MEC regarding the Delta's tentative agreement, the Comair strike, the legislative progress on the Age-60 rule and his presence at an APA Board meeting in Dallas. Captain Woerth discussed the current situation of the TWA pilots and stated the TWA MEC made one of the most difficult decisions any MEC could be faced with – waiving their scope protection. Captain Woerth stated the MEC's decision although tough, was the right decision and that he was extremely proud of the courage displayed by the TWA MEC.

At the conclusion of Captain Woerth's statements, there was a question and answer session with members of the MEC and pilots in attendance.

Questions and Answers

Case for the record stated that the TWA pilots have been loyal, dedicated ALPA members for more than 50 years. They have the distinct honor of holding ALPA post's, Council 2, Council 3 and Council 4. During fifty plus years as ALPA union members, the TWA ALPA pilots have contributed millions of dollars to the Association. Along with their monetary contributions, TWA ALPA pilots have also contributed countless hours of service within the Association furthering ALPA's Safety, Union, Political and Labor causes. He asked Captain Woerth if the TWA pilots had his commitment as the President of ALPA to use the full resources of the Association, including litigation if possible or necessary, against the APA, AMR, and TWA LLC to ensure that the TWA pilots were integrated into the American Airlines pilots seniority list, in a manner other than a staple job.

Captain Woerth responded if there were any basis for litigation, ALPA would do what was necessary to protect the pilots. ALPA would not leave any stone unturned to protect the TWA pilots.

1448 Presentation concluded.

1449 Recess
1505 Reconvened

**Membership and Guest Hour**

Dean Seward, Council #3:  Addressed the MEC regarding his concerns that flying time was going away.

Questions and Answers

Dee J Glasby, Council #2:  Addressed the MEC regarding a position on Merger Committee.

Questions and Answers

Russ Hazelton, Retired TWA Pilot:  Addressed the MEC regarding retired pilots issues.  Requested the MEC to continue their support of the retired pilots causes.  ALPA cannot walk away from the retired pilots.  He detailed his efforts to help both active and retired participants in the terminated A Plan.

Questions and Answers

John Fuerhmeyer, Council #3:  Thanked the MEC for the great job they have been doing on behalf of the TWA pilots.

1524 Membership and Guest Hour concluded.

Pastore welcomed Jim Arthur, newly elected Council #3 Secretary/Treasurer, to the MEC and presented him with his pewter ALPA pin.

## Master Chairman Report:  Bob Pastore

Pastore gave brief overview of the work undertaken since he became chairman last August. Stressed that in seniority integration discussion with APA, all were professionals and should treat each other with the respect that each group deserves.  Also stressed that unity among the TWA pilots was critical to moving forward.   Pastore thanked the Merger Committee for all the work they have done.  Concluding his report, Pastore announced that Scott Schwartz was stepping down as Vice Chairman and an election was scheduled during the second of the meeting.

1540 Report concluded.

## Secretary/Treasurer Report:  Bob Stow

Stow reported due to contractual changes under TWA LLC, ALPA would no longer have the 9000-hour flight pay loss bank. This translated into approximately a 40% reduction in funding for union work. He also updated the MEC on Merger Assessment delinquent payments.  Only 13 members currently have not paid their Merger Assessment.  In accordance with ALPA Constitution and Bylaws, Article VIII charges would be taken against those members. Stow said that a detailed update of expenses paid by the Merger Assessment would be posted on the TWA MEC website.

Questions and Answers

1545 AI#0104-77 Lewin/Rautenberg
Approval to Reimburse LEC Rep David Singer

Discussion

## Resolution #01-66 by P. Lewin/S. Rautenberg

WHEREAS Council #2 F/O Representative David Singer tried to get to this meeting today by all possible means, and

WHREAS there was no other opportunity but to purchase a full fare ticket on USAir, now

**THEREFORE BE IT RESOLVED that the TWA MEC directs Secretary/Treasurer Bob Stow to reimburse Council #2 F/O Representative Singer for the ticket.**

**PASSED** voice vote

1549 Reports concluded.

## Merger Committee Report/Strategic Planning

Day updated the MEC regarding recent committee activities and meetings with the APA.  He indicated that full support of all of ALPA would be necessary going forward.  Day also addressed some administrative issues relating to Merger Committee work the MEC would need to address.

Questions and Answers

1601 Rautenberg/Singer moved to enter into Executive Session.
VOTE: **PASSED** unanimous voice vote.

1755 Rautenberg/Lewin moved to come out of Executive Session.
VOTE: **PASSED** unanimous voice vote.

1800 Recess

---

### Tuesday, April 24, 2001

0900 Master Chairman Bob Pastore called the meeting to order.

Committee Members:  Cary Bouchard, John Swanson, Mike Day, John Hefley

Guests:  On File MEC office

0903 Altman/Lewin moved to enter back into Executive Session to conclude Merger Committee Report.
Note:  Stow called the rolled during Executive Session, members present or accounted for with the
exception of Hollander and Young.  Hollander proxy to Case and Young called the office and reported
she would be arriving in approximately 30 minutes.

0928 Young arrived at the meeting.

1000 Case *(Proxy for Hollander)*/Altman moved to come out of Executive Session.
VOTE: **PASSED** unanimous voice vote.

1004 Recess

Pastore briefed the MEC regarding phone conversation with Captain Duane Woerth.

1012 Stow called the roll, members present or accounted for.

Stow updated the MEC regarding various advisors fees.

1015 Case, for the record, stated that he was in receipt of a mailing from T. O. Richardson Company.  He
didn't know how they got his address or knew that he was a TWA pilot.  Also, didn't know how this
company knew the details concerning the DAP and its termination.  T. O. Richardson had informed him
that two active TWA pilots were in their employment. One was currently a high-ranking ALPA Union
official; the other was a former high-ranking ALPA union official.

### Grievance Committee Report:  Sean Clarke

Clarke updated the MEC regarding recent committee activities.  Discussed the five pilots who were not
offered employment by American Airlines under the TWA LLC.  He indicated that AMR could make a
decision on these five individuals later this week.  He added that ALPA would continue to support these
pilots.  Clark announced that Jim Arthur was stepping down as Grievance Committee Vice Chairman due
to his recent election on the MEC.  He recommended Buzz Erickson as his replacement.

Pastore appointed Arthur (Buzz) Erickson.

---

1017 Lewin/Rautenberg moved that the TWA MEC approve the appointment of Arthur (Buzz) Erickson as Vice Chairman of the Grievance Committee.
VOTE: **PASSED** unanimous voice vote.

Questions and Answers

1034 Report concluded.

### Negotiating Committee Report:  Ron Kiel and Cary Bouchard
Bouchard briefed the MEC regarding his conversation with Rick Cannon on displacements.  Kiel discussed issues relating to the agreement with TWA Airlines LLC.  He stated that all documents comprising the agreement had been posted on the MEC website earlier this month.

Stow requested that the Negotiating Committee report be interrupted and continue after the DAP/401K Report.

### 1051 DAP/401k Report:  Marty Zygmund (via teleconference)
Zygmund updated the MEC regarding events that occurred since last MEC meeting.  Discussed meeting with Community America Credit Union regarding outstanding loans and possible source for the loans and Plan sponsor.  They were receptive to being Plan sponsor and would be contacting their legal advisors.  Discussed meeting with TWA Benefits as well to discuss possible change in the Plan sponsor.

Zygmund highlighted the Plan under Community America. The Credit Union has done due diligence and he was anticipating a letter of intent in the near future.

1054 Hollander arrived at the meeting.

Questions and Answers

1109 Report concluded.

### Negotiating Committee Report (continued)

Kiel discussed the training program differences between TWA and AMR and briefly discussed benefit transition issues.  Hoped to have remaining unanswered benefit questions resolved later in the week.  TWA Benefits Specialist Mary Ulett stated Larry Cleveland was hoping to have these answers by the end of the week.  Class 9 passes were still an ongoing issue and the committee was waiting to hear from Labor Relations.

Questions And Answers

1131 Report concluded.

### Schedule Committee Report:  Gary Tritt (via teleconference)
Tritt updated the MEC on schedule and equipment changes that had occurred recently and reminded the MEC that pilots would be more than likely be subject to balancing due to these changes.  Updated the MEC regarding satellites, AMR satellites were different from TWA.  Satellites would continue under LLC because of their cost savings but anticipated them going away as the integration of the operation was closer to completion.

Questions and Answers

1144 Report concluded.

1145 Recess

1150 **STL Airport Expansion Committee:  Bud Bensel (via teleconference)**
Bensel spoke to the MEC about the status of Air Traffic control upgrades in St. Louis.  He reported the progress continues and a meeting on the issue with ALPA National Safety representatives would be held in May.

Questions and Answers

1214 Report concluded.

1215 Recess

1300 Stow called the roll, all members present or accounted for.

**Membership & Guest Hour**
Bill Kientz, Council #3:  Addressed the MEC regarding his willingness to serve a MEC Vice Chairman.  Discussed his background and prior ALPA experience.

Questions and Answers

Keith O'Leary, Council #3:  Addressed the MEC regarding his willingness to serve a MEC Vice Chairman.  Discussed his background and prior ALPA experience.

Questions and Answers

1315 Membership & Guest Hour concluded.

**Non-Payment of Merger Assessment/Article VIII Charges:  Don Knight**
Knight updated the MEC regarding progress of collecting delinquent assessment payments. Discussed the procedure of filing Article VIII charges against pilots who have not paid their assessment and gave overview of the hearing that would be held to hear the charges.

Questions and Answers

The MEC agreed that the pilots who retired in January pay the full $300.00.   They also agreed to file charges in small claims court for those pilots who were now employed by non-ALPA carriers and had not paid their assessment.

1349 Report concluded.

Steering Committee Report

1359 Lewin/Rautenberg moved to accept AI#0104-78, AI#0104-79 and AI#0104-80 as late agenda items.  VOTE:  **PASSED** unanimous voice vote.

---

Lewin/Singer moved to enter into Executive Session.
VOTE:  **PASSED** voice vote.

**RESOLUTION #01-67 WAS PASSED IN EXECUTIVE SESSION, NOT FOR DISTRIBUTION**

1400 Lewin/Singer moved to come out of Executive Session.
VOTE:  **PASSED** voice vote.

1401 MEC Caucus

1551 **Election – MEC Vice Chairman**

Singer/Hollander moved to open the floor for nominations.
VOTE: **PASSED** unanimous voice vote.

Young nominated Bill Kientz
Hollander nominated Keith O'Leary

Singer/Altman moved to close the floor for nominations.
VOTE:  **PASSED** unanimous voice vote.

Ballot Certification Committee:  Don Knight, Cary Bouchard

1558 O'Leary was elected Vice Chairman

Pastore announced that Ed Johns was willing to serve on the Merger Committee.   MEC questioned
whether or not Ed Johns had the time to devote to the committee.  Pastore stated that Ed Johns would
have the time necessary to devote to the committee.

1604 Young/Hollander moved to RECONSIDER the election of the Vice Chairman.
Discussion

Lewin requested a ruling from ALPA National.

Stow reported that per Clay Warner, ALPA Legal, the motion was out of order.

Motion was withdrawn.

1607 Young requested MEC Caucus

1625 Rautenberg/Singer moved to extend the meeting 15 minutes.
VOTE:  **PASSED** unanimous voice vote.

**Merger Committee Member Election**

Lewin/Hollander moved to open the floor for nominations.
VOTE:  **PASSED** unanimous voice vote.

Hollander nominated Ed Johns
Altman nominated Dee J. Glasby

ALPA 006473

Singer/Lewin moved to close the floor for nominations
VOTE:  **PASSED** unanimous voice vote.

Glasby was elected (Lewin requested recorded vote).
**FOR Glasby:**
Hollander, Council #2
Singer, Council #2
Rautenberg, Council #3
Young, Council #3
Altman, Council #4

**FOR Johns:**
Lewin, Council #4

1635 AI#0104-78 Lewin/Altman
**SUBJECT:**   Approval of request(s) for Council affiliation transfers.

### Resolution #01-68 by P. Lewin/A. Altman

WHEREAS the following pilots have requested their council affiliation be changed and/or frozen and,

WHEREAS the pilots' eligibility has been verified by the ALPA Membership department, now

**THEREFORE BE IT RESOLVED that the following pilots have their council affiliation changed
and/or frozen as indicated in accordance with Article III, Sect. 10(a) of the ALPA Constitution and
By- Laws and the TWA MEC Policy Manual Section VII para 17:**

| Name | ALPA # | From | To | State |
|------|--------|------|-----|-------|
| Rights, Theresa | 1197235 | 3 | 4 | CA |

PASSED recorded vote
(Lewin requested recorded vote)
FOR:
      Singer, Council #2
      Rautenberg, Council #2
      Lewin, Council #4
      Altman, Council #4
AGAINST:
      Hollander, Council #2
      Young, Council #3

1640 AI#0104-79 Rautenberg/Altman
**SUBJECT:**   Level of Support for Retired Pilots.

Discussion

### Resolution #01-69 by S. Rautenberg/A. Altman

**BE IT RESOLVED the TWA MEC directs the TWA MEC Chairman to submit the attached
resolution as an agenda item for the next regularly scheduled ALPA Executive Board meeting.**

WHEREAS most pilots retire from their respective airlines, and

WHEREAS once retired ALPA cannot, under its Charter, represent a retired pilot, now

THEREFORE BE IT RESOLVED that the ALPA Executive Board determines what level of support is to be afforded retired pilots.

**PASSED** voice vote

1640 AI#0104-80 Hollander/Singer
**SUBJECT:** Amend MEC Policy Manual, Section XXVI, Strategic Planning Committee.

WHEREAS The TWA MEC has passed a resolution establishing a Strategic Planning Committee and

WHEREAS the TWA MEC now wishes to establish policy for the authority, objectives and staffing of the Strategic Planning Committee, now

THEREFORE BE IT RESOLVED the TWA MEC Policy Manual Section XXVI. H. be changed to read as follows:

"H.      STRATEGIC PLANNING COMMITTEE
    1.      AUTHORITY
        a)      The TWA MEC shall have a continuing committee to carry-out the following objectives:
            (1)      In coordination with the MEC Officers, to interface with and lobby the ALPA National Officers, the members of the ALPA Executive Council and the members of the ALPA Executive Board to insure the utmost strategic and financial support to the TWA pilots.
            (2)      To participate in a regular conference call on at least two days each week (unless the MEC is in session during a given week, then the conference call schedule shall be amended by the Master Chairman). The conference call will be conducted by an MEC Officer, or the Chairman of the Strategic Planning Committee if an MEC Officer is not available. The conference call is to insure up to date communications between TWA MEC Officers, committee chairmen (including, but not limited to the following as needed: Negotiating Committee Chairman, Merger Committee Chairman, Government Affairs Chairman, Grievance Committee Chairman and Communications Committee Chairman) and MEC Advisors on issues concerning the integration of the TWA LLC operations and pilot seniority integration. The MEC members shall be informed of these conferences and shall be informed of these conferences and shall have the right to ask questions of the participants at the conclusion of each conference.
            (3)      In conjunction with strategic plans adapted by the MEC, to co-ordinate with the TWA MEC officers and the TWA MEC members, when in session, to develop strategic planning initiatives on the whole range to issues facing the TWA pilots.

---

        (4)     To carry out other strategic initiatives when specifically tasked by the TWA MEC Master Chairman or the TWA MEC, by resolution.

2.    Personnel

    a)    Strategic Planning Committee Chairman

        (1)    The Chairman shall be appointed by the TWA Master Chairman and approved by the TWA MEC in accordance with Section VIII.B of this TWA MEC Policy Manual.

        (2)    Qualifications:

            (a)    Shall be knowledgeable in all areas of committee activities.

            (b)    Shall be a member of TWA ALPA in good standing.

    b)    Strategic Planning Committee Members

        (1)    The Chairman of the Strategic Planning Committee may appoint up to three committee members who shall all be TWA ALPA members in good standing.

Discussion

Altman/Rautenberg moved to **POSTPONE** until next MEC meeting.
VOTE: **PASSED** unanimous voice vote.

1643 Lewin/Rautenberg moved to **ACCEPT** AI#0104-81 and #0104-82 as late agenda items.
VOTE: **PASSED** unanimous voice vote.

1645 Hollander left the meeting *(Proxy to Case)*.

AI#0104-82 Singer/Case (Proxy for Hollander)
**SUBJECT:** U.S. Bankruptcy Code changes.

Discussion

**Resolution #01-70 by D. Singer/T. Case** *(Proxy for H. Hollander)*

**BE IT RESOLVED the TWA MEC directs the TWA MEC Chairman to submit the attached resolution as an agenda item for the next regularly scheduled ALPA Executive Board meeting.**

WHEREAS it has been one of the primary tenets of ALPA to insure the integrity of each and every pilot groups' Collective Bargaining Agreement, and

WHEREAS in the past the tactic of utilizing the U.S. Bankruptcy Code to circumvent traditional labor laws and unilaterally abrogate proper agreements was engaged by Francisco Lorenzo and others, and

WHEREAS ALPA lobbied effectively to demonstrate that the anti-labor behavior and practice was so egregious and potentially devastating to collective bargaining agreements, and

WHEREAS ALPA sought and achieved appropriate legislative changes so as to no longer permit such unilateral changes without due process and a proper hearing and arguments of cause in the applicable Bankruptcy Court, and

WHEREAS in today's legal environment, the TWA pilots along with tens of thousands of other ALPA and non-ALPA pilots have relied upon the hard-fought language of their Scope and Successor clauses, and

WHEREAS the TWA pilots received a great deal of protection form those past changes to the Bankruptcy Code, they nevertheless were forced, under the provisions of Section 1113 of the U.S. Bankruptcy Code, to abandon the primary protection of the Scope Clause section of the Collective Bargaining Agreement in order to avoid Chapter 7 liquidation of their carrier and affect the transition to TWA LLC, and

WHEREAS it is conceivable that any carrier could utilize such tactics while operating and seeking shelter under the protection of Chapter 11 of the U.S. Bankruptcy Code, and

WHEREAS the sanctity of every pilots' Collective Bargaining Agreement is of paramount importance and concern to ALPA, now

THEREFORE BE IT RESOLVED that ALPA shall adopt, as one of our highest legislative priorities, the goal of bringing the appropriate changes to the U.S. Bankruptcy Code to provide specific protections and legal immunity for seniority, employment and Scope and Successor clauses that contractually provide for the specific protections of seniority and fair and equitable merger integration.

**PASSED** unanimously voice vote

AI#0104-81 by Singer/Case (Proxy for Hollander)
**SUBJECT:**  ALPA National Support

Discussion

**Resolution #01-71 by D. Singer/T. Case (*Proxy for H. Hollander*)**

**BE IT RESOLVED the TWA MEC directs the TWA MEC Chairman to submit the attached resolution as an agenda item for the next regularly scheduled ALPA Executive Board meeting.**

WHEREAS the TWA pilots have faced incredible challenges for more than a decade and a half, living through three changes in corporate ownership, a corporate raider and three bankruptcies, and;

WHEREAS the TWA pilots have been loyal members of ALPA from ALPA's inception, currently representing Councils Two, Three and Four, and;

WHEREAS the TWA pilots have contributed millions of dollars into the MCF to support their brother and sisters and to protect the piloting profession, and;

WHEREAS the TWA pilots are now facing extraordinary expenses in their current merger with American Airlines, which occurred, without precedent, during a Chapter 11 proceeding, and;

WHEREAS the TWA pilots have also been forced to abandon the primary protection of the Scope Clause section of their Collective Bargaining Agreement in order to avoid Chapter 7 liquidation of their carrier and affect the transition to TWA LLC, and;

WHEREAS the TWA MEC has enormous obstacles remaining before them in order to protect their loyal ALPA members and affect a successful transition to American Airlines, obstacles including ongoing negotiations, the continuing need for Bankruptcy counsel, extraordinary communications needs both

internally and externally, a yet to be defined merger integration process, the need for Merger counsel and Pension plan termination litigation, and;

WHEREAS the long-term goal of ALPA of "one Union for all pilots" could be realized with the return of the pilots of American Airlines and the best ambassadors to lead that charge would be the post-merger TWA pilots who truly appreciated the value of having proper support both morally and financially of a National Union, and;

WHEREAS the plethora of problems before the TWA MEC are only compounded by a dramatic reduction in available funding, coupled with enormous expenses to properly represent their constituents, including the loss of previously contractually provided Flight Pay Loss of over one million dollars ($1,000,000) annually, and;

WHEREAS the future of U.S. airline consolidation will be clearly affected by the outcome of the current acquisition of TWA by American Airlines and thus the very future of our profession and our careers would be impacted by a negative outcome, now

THEREFORE BE IT RESOLVED that the Executive Board pledges the full moral and financial support of the Association to enable the TWA MEC to properly represent the TWA pilots through this crisis and to properly complete the tasks before them.

**PASSED** unanimously voice vote

1648 Lewin/Altman moved to adjourn.
VOTE:  **PASSED** unanimous voice vote.

1650 All business concluded; the meeting was adjourned.

_Robert C. Stow Sr_

Robert C. Stow, Sr.
TWA MEC Secretary/Treasurer

# Exhibit X

1106



# BAPTISTE & WILDER, P.C.

ATTORNEYS AT LAW

1150 CONNECTICUT AVENUE, N.W., SUITE 500

WASHINGTON, D.C. 20036

(202) 223-0723

ROLAND P. WILDER, JR.

FACSIMILE (202) 223-9677
E-MAIL BapWild@aol.com

May 9, 2001

Capt. Robert A. Pastore
TWA Master Executive Council
500 Northwest Plaza
Suite 1200
St. Ann, MO 63074

Pd 5/18/01

Re:    File No. 00-513

Dear Capt. Pastore:

Enclosed please find this firm's statement reflecting services rendered and expenses incurred in serving as outside counsel for the TWA MEC for the period of April 1, 2001 through April 30, 2001.

Should you have any questions about the foregoing or any aspect of our representation, please do not hesitate to call me.

Very truly yours,

BAPTISTE & WILDER, P.C.

> **EXHIBIT**
> **D176**

By: _Roland P. Wilder, Jr._
Roland P. Wilder, Jr.

RPWJr:beu

Enclosure

ALPA 050418

# BAPTISTE & WILDER, P.C.
1150 Connecticut Avenue, N.W.
Suite 500
Washington DC 20036
FEDERAL I.D. NO.: 52-1422718

May 9, 2001

TWA Master Executive Council
500 Northwest Plaza
Suite 1200
St. Ann MO 63074
Robert A. Pastore, Chairman

IN REFERENCE TO:   File No. 00-513
INVOICE NO.:        14784

FOR LEGAL SERVICES RENDERED:

| | | | Hours | Amount |
|---|---|---|---|---|
| 4/1/01 | RPW | Meeting with D. Holtzman, M. Glanzer; review documents; outline presentation; attend MEC meeting | 7.50 | 1,875.00 |
| 4/2/01 | RPW | Phone conference with J. Hefley, C. Warner, WRW; respond to messages | 1.60 | 400.00 |
| | WRW | Review collective bargaining agreement; review documents; phone conference with RPW | 0.70 | 136.50 |
| 4/3/01 | RPW | Phone conference with Clay Warner; respond to messages | 0.80 | 200.00 |
| | WRW | Phone conference with RPW; review letter to White | 0.40 | 78.00 |
| 4/4/01 | RPW | Conference with WRW, JPB re: integration anlysis of financially troubled carrier; research; phone conference with D. Holtzman and M. Day; review documents | 6.20 | 1,550.00 |
| | JPB | Conference with RPW re: seniority integration memorandum; review seniority integration decisions and DOT information | 1.50 | 262.50 |

ALPA 050419

**TWA Master Executive Council**

Page    2

| | | | Hours | Amount |
|---|---|---|---|---|
| 4/4/01 | WRW | Conference with RPW | 0.40 | 78.00 |
| 4/5/01 | RPW | Legal research; review documents; conference with M. Day, S. Tremblin, J. Swanson; meet with MEC; draft letter | 8.90 | 2,225.00 |
| | JPB | Legal research re: American website; review notes of integration decisions | 0.50 | 87.50 |
| | JPB | Prepare memorandum on seniority integration of financially troubled carriers | 2.00 | 350.00 |
| | WRW | Conference with RPW | 0.50 | 97.50 |
| 4/6/01 | RPW | Review documents; phone conference with M. Tannen; respond to messages | 6.90 | 1,725.00 |
| | JPB | Prepare and revise seniority integration memorandum | 2.00 | 350.00 |
| 4/9/01 | RPW | Respond to messages; phone conference with M. Day, M. Tannen; review expert statements; phone conference with D. Holtzman; review draft memorandum | 3.10 | 775.00 |
| | JPB | Revise seniority integration memorandum; conference with RPW re: revisions | 1.50 | 262.50 |
| 4/10/01 | RPW | Phone conference with M. Day, M. Tannen; review and revise memorandum; research; respond to messages; conference with JPB | 5.40 | 1,350.00 |
| | JPB | Revise memorandum; conference with RPW | 1.25 | 218.75 |
| 4/11/01 | RPW | Review documents; respond to messages; conference with JPB; research; review and revise memorandum; planning analysis | 7.20 | 1,800.00 |
| | JPB | Conference with RPW; review FedEx/Flying Tigers opinion and award; revise memorandum | 2.00 | 350.00 |
| 4/12/01 | RPW | Review and revise memorandum; draft correspondence; phone conference with M. Tannen; phone conference with Merger Committee; research; review TWA LLC memorandum | 5.50 | 1,375.00 |
| | JPB | Revise memorandum and add FedEx/Flying Tigers analysis | 1.25 | 218.75 |
| 4/13/01 | RPW | Finalize memorandum; conference with JPB; review correspondence; reply to messages; conference with WRW | 2.90 | 725.00 |

**ALPA 050420**

**TWA Master Executive Council**

Page    3

| | | | Hours | Amount |
|---|---|---|---|---|
| 4/13/01 | JPB | Final revisions; send memorandum | 1.00 | 175.00 |
| | WRW | Conference with RPW; review documents | 0.40 | 78.00 |
| 4/16/01 | RPW | Phone conference with MEC; respond to messages; phone conference with M. Tannen | 1.90 | 475.00 |
| | WRW | Review integration decision; conference with RPW | 0.50 | 97.50 |
| 4/17/01 | RPW | Phone conference with R. Pastore; respond to messages; review documents | 0.90 | 225.00 |
| 4/18/01 | RPW | Meeting with Merger Committee; review documents | 2.70 | 675.00 |
| 4/19/01 | RPW | Attend AA/TWA Committee discussions; telephone conference with MEC; meet with Merger Committee; draft correspondence | 10.70 | 2,675.00 |
| 4/20/01 | RPW | Phone conference with M. Day, M. Tannen; review documents | 3.90 | 975.00 |
| 4/23/01 | RPW | Attend MEC meetings; draft; review and revise letters; strategy session | 11.10 | 2,775.00 |
| 4/24/01 | RPW | Attend MEC and Merger Committee meetings; draft facilitator protocol | 9.00 | 2,250.00 |
| | WRW | Review documents | 0.90 | 175.50 |
| 4/25/01 | RPW | Phone conference with M. Day; complete agreement; phone conference with W. Kennedy | 1.75 | 437.50 |
| 4/26/01 | RPW | Phone conference with M. Day; review documents; complete LOA | 3.40 | 850.00 |
| 4/27/01 | RPW | Phone conference with D. Holtzman; review documents; phone conference with J. Brundage; respond to messages | 3.50 | 875.00 |
| 4/30/01 | RPW | Review strategic action plan; suggest additional items; phone conference with O'Leary; draft memorandum to MEC; respond to messages | 4.10 | 1,025.00 |

LEGAL SERVICES:                                    125.75    $30,253.50

FOR EXPENSES AND COSTS ADVANCED:

| 4/1/01- | Travel/Airfare (One-half of Full Fare) | 601.63 | *A* |
| | - Taxicab Fares | 12.00 | *A* |
| | - March Lexis/Nexis Research Fees | 68.32 | *B* |

# TWA Master Executive Council

Page    4

Amount

| | | |
|---|---|---|
| 4/1/01- March Lexis/Nexis Research Fees | 161.77 | B |
| 4/5/01- Travel/Train | 174.00 | C |
| - Travel/Meal | 8.50 | hu |
| - Taxicab Fare | 8.00 | hu |
| 4/11/01- U.P.S. Fees | 14.50 | D |
| 4/13/01- U.P.S. Fees | 14.50 | E |
| 4/16/01- Postage | 1.60 | hu |
| 4/19/01- Travel/Airfare | 1,419.00 | F |
| - Travel/Hotel | 7.65 | G |
| - Taxicab Fares/Tips | 47.70 | H |
| 4/24/01- Travel/Airfare | 1,531.50 | I |
| - Taxicab Fares | 38.25 | J |
| 4/29/01- Document Reproduction | 18.58 | K |
| 4/30/01- In-House Photocopying | 46.50 | L |
| - Facsimile | 2.50 | IH |
| - L.D. Telephone | 125.95 | M |

EXPENSES AND COSTS:                                  $4,302.45

TOTAL AMOUNT OF THIS BILL:                          $34,555.95

PREVIOUS BALANCE:                                   $63,955.91

4/18/01- PAYMENT - THANK YOU                       ($63,955.91)

BALANCE DUE:                                        $34,555.95

ALPA 050422



ALPA 050423

# LEXIS·NEXIS®
*A member of the Reed Elsevier plc group*

| INVOICE NO. | INVOICE DATE |
|---|---|
| 0103025243 | 31-MAR-01 |

| ACCOUNT NUMBER |
|---|
| 1039GH |

BILLING PERIOD 01-MAR-01 - 31-MAR-01

*INVOICE TO:*
BAPTISTE & WILDER PC
WASHINGTON, DC 20036-4194

## ITEMIZATION OF LEXIS-NEXIS ONLINE CHARGES
### ACCOUNT SUMMARY BY CLIENT

| CLIENT | GROSS AMOUNT | CONTRACT USE ADJUSTMENT | NET AMOUNT | TRANSACTIONAL USE OVER THE CAP | OUTSIDE CONTRACT | TOTAL BEFORE TAX | TAX | TOTAL CHARGES |
|---|---|---|---|---|---|---|---|---|
| TWA MERGER | $759.55 | ($694.93) | $64.62 | - | - | $64.62 | $3.70 | $68.32 |
| | | | $0.00 | - | $21.94 | $21.94 | $1.24 | |
| | | | $0.00 | - | $26.18 | $26.18 | $1.51 | |
| 01-513 ARBITRATION AND 1113 | $2,068.06 | ($1,883.13) | $186.73 | - | $253.61 | $439.34 | $25.31 | |
| 01-513 | $918.69 | ($843.69) | $75.00 | - | - | $75.00 | $4.30 | |
| 01-513 1113 AND GRIEVANCES | $273.98 | ($249.71) | $24.27 | - | - | $24.27 | $1.40 | |
| | $1,401.13 | ($1,289.69) | $111.44 | - | $0.24 | $111.68 | $6.44 | $118.12 |
| | $1173.88 | ($158.38) | $15.50 | - | - | $15.50 | $0.89 | 116.39 |
| | $267.65 | ($241.90) | $25.75 | - | - | $25.75 | $1.51 | $27.26 |

| ACCOUNT TOTAL: | $10,422.08 | ($9,512.08) | $910.00 | $0.00 | $140.49 | $1,054.49 | $95.15 | $1,149.64 |

5

ALPA 050424

D-176
Page 7 of 20

Fare Display Screen

 **AMTRAK** HOME

## Schedules & Fares          Reservations & Tickets

### One-way Adult Coach Fare: $91.00

**Washington-Union Station (DC) to Wilmington (DE) on Wednesday (5/9/01)**

| 2170 | Washington-Union Station, DC | Wilmington, DE | 5/9/01 3:00PM | 5/9/01 4:14PM |
|------|------------------------------|----------------|---------------|---------------|
|      | *Business Class Seat*        |                |               |               |

*""This fare is subject to a cancellation and exchange fee. For details on Amtrak's cancellation and exchange policy, click here.*

Please be aware that Amtrak fares are subject to change without notice. It is possible that the only seat left at this fare is currently being booked by another customer. **In addition, this train may sell out and tickets may be unavailable at the time you choose to book.** For information on your departure and arrival station, click on the underlined station name listed above.

If you wish to make reservations, click here to log into our system (you may also call 1-800-USA-RAIL).





CONTACT US          FAQS          POLICIES

http://reservations.amtrak.com/novus/process-form

**ALPA 050425**

5/9/01

Fare Display Screen

 **AMTRAK** HOME

## Schedules & Fares                    **Reservations & Tickets**

### One-way Adult Coach Fare: $83.00

**Wilmington (DE) to Washington-Union Station (DC) on Wednesday (5/9/01)**

| 125 | Wilmington, DE | Washington-Union Station, DC | 5/9/01 | 5/9/01 |
|-----|----------------|------------------------------|--------|--------|
| | *Full Fare Coach Seat* | | 7:32PM | 8:59PM |

**This fare is subject to a cancellation and exchange fee. For details on Amtrak's cancellation and exchange policy, click here.**

Please be aware that Amtrak fares are subject to change without notice. It is possible that the only seat left at this fare is currently being booked by another customer. **In addition, this train may sell out and tickets may be unavailable at the time you choose to book.** For information on your departure and arrival station, click on the underlined station name listed above.

If you wish to make reservations, click here to log into our system (you may also call 1-800-USA-RAIL).





**CONTACT US          FAQS          POLICIES**

http://reservations.amtrak.com/novus/process-form

**ALPA 050426**                    5/9/01

Page 1

UPS OnLine WorldShip 3.0.9 winspool 1290

**Baptiste & Wilder, P.C.**
**DAILY SHIPMENT DETAIL REPORT**
04/11/01 04:14 PM

Pickup Date: 04/11/01
Pickup Record No.: 1131369 06 1

UPS Account No.: 29745
Sorted By: Order of Shipmer

| Name/Address | Shipment Detail | | Options | | Reference Rate Charges | |
|---|---|---|---|---|---|---|
| Ship To: Mr. David C. Holtzman<br>Mr. David C. Holtzman<br>TWA Master Executive Council<br>Suite 1200<br>500 Northwest Plaza<br>SAINT ANN MO 63074 | Service Type:<br>Total Packages:<br>Hundredweight:<br>Billable Wt.:<br>Billing Option:<br>Package Ref No.1: | UPS NEXT DAY AIR<br>1<br>No<br>LTR<br>Prepaid<br>01-578 | Shipment Service Charge: | | $ | 14.50 |
| | Tracking No.:<br>Package Type:<br>Trx Ref No.: | 1ZZ974590142703933<br>UPS Letter<br>01-578 | Package Service Charge:<br>Shipper Amt:<br>UPS Total Charge: | | $<br>$<br>$ | 14.50<br>14.50<br>14.50 |

**Summary Totals:**

| Shipment Option | Shpts | Pkgs | Ref Charges | Billing Option | Shpts | Pkgs | Ref Charges | |
|---|---|---|---|---|---|---|---|---|
| | | | | Prepaid | 1 | 1 | $ | 14.50 |
| Package Option | | Pkgs | Ref Charges | **TOTAL CHARGES** | | | **$** | **14.50** |
| | | | | 1 Shipment(s)<br>1 Package(s) | | | | |

ALPA 050427

Page 1

UPS OnLine WorldShip 3.0.9 winspool 1290

Baptiste & Wilder, P.C.
**DAILY SHIPMENT DETAIL REPORT**
04/13/01 06:47 PM

Pickup Date: 04/13/01
Pickup Record No.: 1131859 06 3

UPS Account No.: 297456
Sorted By:Order of Shipment

| Name/Address | Shipment Detail | | Options | Reference Rate Charges | |
|---|---|---|---|---|---|
| **Ship To:** Capt. Michael Day<br>Capt. Michael Day<br>TWA Master Executive Council<br>Suite 1200<br>500 Northwest Plaza<br>SAINT ANN MO 63074 | Service Type:<br>Total Packages:<br>Hundredweight:<br>Billable Wt.:<br>Billing Option:<br>Package Ref No.1: | UPS NEXT DAY AIR<br>1<br>No<br>LTR<br>Prepaid<br>00-513 | Shipment Service Charge: | $ | 14.50 |
| | Tracking No.:<br>Package Type:<br>Trx Ref No.: | 1Z2974560147309173<br>UPS Letter<br>00-513 | Package Service Charge:<br>Shipper Amt:<br>UPS Total Charge: | $<br>$<br>$ | 14.50<br>14.50<br>14.50 |

**Summary Totals:**

| Shipment Option | Shpts | Pkgs | Ref Charges | Billing Option | Shpts | Pkgs | Ref Charges |
|---|---|---|---|---|---|---|---|
| | | | | Prepaid | 1 | 1 | $ 14.50 |
| Package Option | | Pkgs | Ref Charges | **TOTAL CHARGES** | | | $ 14.50 |
| | | | | 1 Shipment(s)<br>1 Package(s) | | | |

ALPA 050428

*E*

FOR: WILDER/ROLAND

```
18 APR 01  -- WEDNESDAY
   AIR    TRANS WORLD AIRLINES FLT:323      ECONOMY        SNACK
          LV WASHINGTON REAGAN              449P           EQP: MD-80
          DEPART: TERMINAL A                               02HR 26MIN
          AR ST LOUIS INTL                  656P           NON-STOP
          ARRIVE: MAIN TERMINAL                            REF: 225394
          WILDER/ROLAND        SEAT-23D

19 APR 01  -- THURSDAY
   AIR    TRANS WORLD AIRLINES FLT:19       ECONOMY        SNACK
          LV ST LOUIS INTL                  656P           EQP: BOEING 757
          DEPART: MAIN TERMINAL                            02HR 64MIN
          AR WASHINGTON REAGAN              1059P          NON-STOP
          ARRIVE: TERMINAL A                               REF: 225374
          WILDER/ROLAND        SEAT-15A
          EARLIER TWA FLIGHT 30 DEPARTS AT 359PM ARRIVES 7P
          NO AISLE SEAT AVAILABLE
   MCO         X09130125613
                                      BILLED TO AX378202259866998          22.00*

   AIR TICKET   TW7168779482           WILDER ROLAND
                                       BILLED TO AX378202259866898       1,397.50*

                                       SUB TOTAL                         1,419.50
                                       NET CC BILLING                    1,419.50*

                                       TOTAL AMOUNT DUE                      0.00
```

THANKS FOR CHOOSING ESPRIT RAINBOW TRAVEL
PHOTO ID REQUIRED FOR ADULTS AT DOMESTIC FLT CHECKIN.
REQUIRED CHECKIN TIME..1HR DOMESTIC, 2HRS INTERNATIONAL
AFTER HOURS EMERGENCY SERVICE 1-888-459-7708

*GP W

QC67

```
01 8212 3042
PASSENGER TICKET AND BAGGAGE CHECK
SUBJECT TO CONDITIONS OF CONTRACT
ISSUED BY                     ARC   12APR01    PASSENGER RECEIPT 1 of 1
TRANS WORLD AIRLINES            0011/LV28 *67/A67                US
ESPRIT RAINBOW TRAVEL          /BETHESDA    MD    FARE BASIS  TOUR CODE  21793505
WILDER/ROLAND                                     MULTI
          **NOT VALID FOR*****RETAIN THIS RECEIPT***
          **TRANSPORTATION***THROUGHOUT YOUR JOURNEY*
ENDORSEMENTS/RESTRICTIONS

ORIGINAL ISSUE              ISSUED IN EXCHANGE FOR                    PNR CODE
WAS TW STL Q18.60 688.37Y25AP3 TW WAS Q18.60 563.72BAP7 1289.29 END ZPDCASTL XFDCA3ST
L3
FARE
 USD  1289.29
  US
TAX/FEE/CHARGE  96.71
  ZP
TAX/FEE/CHARGE   5.50          FORM OF PAYMENT
  XF             6.00         AX378202259866898*1702/
TOTAL
 USD  1397.50     88922625013165      0 015 7168779482 1
```

```
014100        0944425
DCA                        1
DSTL TW 323   Y 18APR Y25AP3
DCA TW 10     B 19APR 8AP7

CARRIER/FLIGHT   CLASS/DATE   TIME
CARRIER/FLIGHT   CLASS/DATE   TIME
GATE   BOARD TIME   SEAT      SMOKE

ADDITIONAL SEAT INFORMATION

NOT VALID FOR TRAVEL
015 7168779482 1
```

ALPA 050429

Date 04/19/01                                             Acct# P06005-00
Time 11:43                                                Room# 215
Page  3

Rate Code
                                                              Group ALP
# Holiday Inn®                                    Room Type TDBN
                                                          Room Rate      .00
**Airport / Riverport**

WILDER, ROLAND                    13735 Riverport Drive        Arrive APR 18 01 19:10
                                    St. Louis, MO 63043        Depart APR 19 01 11:43 CP
                                Telephone: (314) 298-3400
ALP                              Fax: (314) 298-9646
                                            300 NORTHWEST PLAZA
                                            SAINT ANN        MO      63074

Payment AX 37820225986XXXX              Exp: 12/02

  Date     Description              Reference        Room    Charges    Credits

  APR 18   ROOM CHARGE                                          .00
  APR 19   RIVERPORT CHARGE        * Charge to Room *          7.65
  APR 19   AMERICAN EXPRESS        CHECKED OUT                            7.65

                          Balance Due:                         .00
This hotel independently owned by HIAR Holdings LLC and operated by Hospitality
Management Associates.  I agree that my liability for this bill is not waived.

Authorized Signature:_____

# TAXI CAB RECEIPT   Date 6/8/01

CAB  FARE FROM: _CONX MAN_

TO: _AIRPORT_

NO. OF PASSENGERS: _1_   TOTAL FARE $16.00

CAB CO. & NO.: _8_   DRIVER _____

**ALL STAR TOWING & RECOVERY, INC.**
7 Days a Week
Local & long Distance • Junk Cars Towed *FREE* • 24 Hours, Radio Dispatched
2405 22nd Street, N.E. • Washington, DC 20018 • (202) 832-2717

## Taxi Cab Receipts

DATE: _04 19 01_ TIME: _10:24 PM_

TRIP ORIGIN: _____

DESTINATION: _____

FARE: $ _14.00_ SIGNATURE _____

```
INDEPENDENCE EXP
CAB. #. 1508.
04^10^01 TR 2000
START  END MILES
16:25 16:36  6.9
FARE :  $  16.70
```

*H*



**Esprit Rainbow Travel** LLP
7706 Woodmont Avenue • Bethesda MD 20814-6004
Phones: 301-656-4060 • 800-767-4061 • Fax: 301-656-2452
www.espritrainbow.com



*Personalized service in the automated world*

```
SALES PERSON: 67          ITINERARY/INVOICE NO. 0044728         DATE: 20 APR 01
CUSTOMER NBR: 014100                            TOLLGF         PAGE: 01

        TO: BAPTISTE AND WILDER
            1150 CONNECTICUT AVE NW
            SUITE 500
            WASHINGTON DC 20036


FOR: WILDER/ROLAND


23 APR 01  -  MONDAY
   AIR     TRANS WORLD AIRLINES FLT:123      ECONOMY          SNACK
           LV WASHINGTON REAGAN              910A             EQP: MD-80
           DEPART: TERMINAL A                                 02HR 24MIN
           AR ST LOUIS INTL                  1034A            NON-STOP
           ARRIVE: MAIN TERMINAL                              REF: 23PRA8
           SEAT ASSIGNED UPON AIRPORT CHECK-IN


24 APR 01  -  TUESDAY
   AIR     TRANS WORLD AIRLINES FLT:10       ECONOMY          SNACK
           LV ST LOUIS INTL                  656P             EQP: BOEING 757
           DEPART: MAIN TERMINAL                              02HR 04MIN
           AR WASHINGTON REAGAN              1000P            NON-STOP
           ARRIVE: TERMINAL A                                 REF: 23PRA8
           WILDER/ROLAND          SEAT-12D
   MCO          XD8130642147
                                     BILLED TO AX3782022598660008              22.00*


  AIR TICKET     TW7176539020      WILDER ROLAND
  ELEC TKT                         BILLED TO AX3782022598660008            1,531.50*

                                   SUB TOTAL                               1,553.50
                                   NET CC BILLING                          1,553.50*

                                   TOTAL AMOUNT DUE                            0.00
```

THANKS FOR CHOOSING ESPRIT RAINBOW TRAVEL



ALPA 050432

## UNIVERSAL CAR SERVICE CHARGE FORM

| DATE | TIME A.M. ☐ P.M. ☐ | CALL/FARE/JOB NO. | CAR NO. | BASIC FARE $ 12.2 |
|---|---|---|---|---|
| PICKUP POINT | | ZONE/ZIP | W.T. | MISC. $ 2.00 |
| | | | B.R. | |
| FINAL DESTINATION | | | O.T. | TOLLS/PARKING $ |
| | | STOPS | MISC | |
| | | | PHONE | STOPS $ |
| | | | SPEC ROUTE | |
| | | | PACKAGE | WAIT TIME $ |
| | | | TOTAL | 14 25 |

Customer Account Number

Customer

Date of Charge  4-23-01

1314

APPROVAL CODE

MBC TOP SEDAN
ARLINGTON VA

AMEX  D.C.  DISC.  MC  VISA  OTHER

Customer Signature

Cardholder acknowledges receipt of goods and/or services in the amount of the Total shown hereon and agrees to perform the obligations set forth in the Cardholder's agreement with the Issuer.

Invoice Number  628778

**PASSENGER COPY**

---

(314) 843-3571  (314) 277-8207

## LAMBERT AIRPORT TRANSPORT CO., INC.

10137 HILLTOP DRIVE
ST. LOUIS, MO 63128

JOHN D. VAINIKO, C.E.O.

79

DATE  4/23/2001

FARE  $10 00

GRATUITY

TOTAL

DRIVER

VEHICLE NUMBER  27

Run#

From

To  Alex, VA

Date  4/24/01  Time

Signature

Cab# 2w

Fare $ 4.-

ALPA 050433

# *ABS*  COMPLETE PRINTING SERVICES

1135 18th Street, NW · Washington, D.C. 20036
(202) 833-9444 · Fax (202) 452-1087

INVOICE NUMBER

**47350**

| SOLD TO | BAPTISTE & WILDER | DELIVER/SHIP TO |
|---|---|---|

| CUST. ACCT. NO. | ORDER DATE 4-11-01 | ENTERED BY DAVE | ☐ Customer Pickup  ☐ Deliver  ☐ Ship via | DATE DUE Stone |
|---|---|---|---|---|
| PURCHASE ORDER/CHARGE NUMBER TWA | | ORDER PLACED BY KIM | TELEPHONE  ☐ Call when ready | |

| ITEM | QUANTITY | ITEM NAME/DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | 1 | 251 originals - Judgment Motions | .07 | 17.57 |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| | | | Sub Total | 17.57 |
| | | | Sales Tax | 1.01 |
| | | | Deposit | |
| | | | INVOICE TOTAL (Balance Due) | 18.58 |

RECEIVED the above merchandise in good order:

X _____  Date 5/11/01

TERMS: NET CASH UPON RECEIPT.  50% Deposit required on all orders without prior established open credit.
ESTABLISHED CHARGE ACCOUNTS: Due in FULL by the 10th of the month following Invoice Date.  1½% per month FINANCE CHARGE on past due accounts.

*Printing / Copying / Binding / Laminating / Fax / Business Forms*

ORIGINAL INVOICE

ALPA 050434

K

April 2001

COPYGUARD AUDITOR - COPIER USAGE REPORT

DATA FROM UNIT 000 SERIAL NUMBER 005567
NONZERO DEPARTMENT/USER ACCOUNTS

ACCOUNT-NUMBER      LIMIT   COPY-COUNT

00513  19.95  1        000133
01513  26.55  1        000177

TOTAL      00014202

ALPA 050435

LONG DISTANCE SERVICE
ELIGIBLE FOR DISCOUNT
CALL MANAGER CODE:   513

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | 3/05/01 10:50:00A | TO ST ALBANS | VT 802 524-3380 | 2:48 | DDC PEAK | | 0.31 |
| 2 | 3/05/01 1:55:34P | TO BRIDGETON | MO 314 770-8500 | 1:12 | DDC PEAK | | 0.13 |
| 3 | 3/05/01 5:09:00P | TO BRIDGETON | MO 314 770-8500 | 17:12 | DDC OPEAK | | 1.69 |
| 4 | 3/06/01 12:21:33P | TO CHICAGO | IL 312 344-9400 | 1:24 | DDC PEAK | | 0.15 |
| 5 | 3/06/01 12:47:19P | TO BRIDGETON | MO 314 770-8500 | 8:18 | DDC PEAK | | 0.91 |
| 6 | 3/07/01 2:18:03P | TO MARLTON | NJ 856 596-9443 | 11:42 | DDC PEAK | | 1.29 |
| 7 | 3/10/01 2:54:59P | TO NEW YORK | NY 212 377-5032 | 16:36 | DDC OPEAK | | 1.83 |
| 8 | 3/12/01 10:46:01A | TO BRIDGETON | MO 314 770-8500 | 0:30 | DDC PEAK | | 0.05 |
| 9 | 3/12/01 12:30:53P | TO BRIDGETON | MO 314 770-8500 | 0:42 | DDC PEAK | | 0.07 |
| 10 | 3/12/01 12:38:15P | TO BRIDGETON | MO 314 770-8500 | 1:00 | DDC PEAK | | 0.11 |
| 11 | 3/12/01 2:15:34P | TO BRIDGETON | MO 314 770-8500 | 25:00 | DDC PEAK | | 2.76 |
| 12 | 3/12/01 5:40:35P | TO NEW YORK | NY 212 563-4100 | 2:00 | DDC OPEAK | | 0.22 |
| 13 | 3/12/01 5:40:01P | TO NEW YORK | NY 212 645-5434 | 0:30 | DDC OPEAK | | 0.05 |
| 14 | 3/12/01 5:46:00P | TO BRIDGETON | MO 314 770-8500 | 0:30 | DDC OPEAK | | 0.05 |
| 15 | 3/13/01 11:36:04A | TO BRIDGETON | MO 314 770-8500 | 4:36 | DDC PEAK | | 0.51 |
| 16 | 3/15/01 12:49:20P | TO BRIDGETON | MO 314 770-8500 | 13:54 | DDC PEAK | | 1.53 |
| 17 | 3/15/01 10:44:41A | TO BRIDGETON | MO 314 770-8500 | 0:36 | DDC PEAK | | 0.07 |
| 18 | 3/15/01 12:07:24P | TO TAMPA | FL 813 494-6559 | 1:24 | DDC PEAK | | 0.15 |
| 19 | 3/20/01 9:46:24A | TO BRIDGETON | MO 314 770-8500 | 0:48 | DDC PEAK | | 0.09 |
| 20 | 3/20/01 10:47:04A | TO BRIDGETON | MO 314 770-8500 | 1:30 | DDC PEAK | | 0.17 |
| 21 | 3/20/01 11:02:42A | TO NEW YORK | NY 212 424-8245 | 2:24 | DDC PEAK | | 0.27 |
| 22 | 3/20/01 11:06:32A | TO SALT LAKE | UT 801 320-6745 | 27:42 | DDC PEAK | | 3.09 |
| 23 | 3/23/01 4:08:33P | TO BRIDGETON | MO 314 770-8500 | 25:30 | DDC OPEAK | | 2.59 |
| 24 | 3/24/01 11:28:20A | TO BRIDGETON | MO 314 770-8500 | 14:06 | DDC PEAK | | 1.55 |
| 25 | 3/26/01 11:43:41A | TO TAMPA | FL 813 494-6559 | 0:30 | DDC PEAK | | 0.05 |
| 26 | 3/26/01 1:04:29P | TO TAMPA | FL 813 494-6559 | 1:24 | DDC PEAK | | 0.15 |
| 27 | 3/26/01 1:16:55P | TO BRIDGETON | MO 314 770-8500 | 0:42 | DDC PEAK | | 0.07 |
| 28 | 3/26/01 1:28:49P | TO TAMPA | FL 813 494-6559 | 0:30 | DDC PEAK | | 0.05 |
| 29 | 3/26/01 1:54:17P | TO BRIDGETON | MO 314 770-8500 | 9:36 | DDC PEAK | | 1.04 |
| 30 | 3/30/01 5:30:22P | TO BRIDGETON | MO 314 770-8500 | 12:04 | DDC PEAK | | 1.35 |
| 31 | 3/30/01 11:28:45A | TO BRIDGETON | MO 314 770-8500 | 0:48 | DDC PEAK | | 0.09 |

TOTAL FOR CALL MANAGER CODE   513                              $21.42

| ITEM | DATE | TIME (hh:mm:ss) | PLACE | AREA CODE/ NUMBER | DURATION (hh:mm:ss) | CALL TYPE | TIME OF DAY | POST DISCOUNT AMOUNT |
|---|---|---|---|---|---|---|---|---|

PRIMARY ACCOUNT CODE: 01513
LONG DISTANCE SERVICE
ELIGIBLE FOR DISCOUNT
INTERSTATE DIRECT DIALED

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | 3/06/01 12:49:39P | TO CHICAGO | IL 312 344-9410 | 1:18 | DDC PEAK | | 0.15 |
| 2 | 3/06/01 3:40:30P | TO MARLTON | NJ 856 985-5247 | 2:54 | DDC PEAK | | 0.29 |
| 3 | 3/06/01 5:58:07P | TO CHICAGO | IL 312 344-9410 | 1:30 | DDC OPEAK | | 0.17 |
| 4 | 3/06/01 6:06:28P | TO BRIDGETON | MO 314 770-8510 | 3:42 | DDC OPEAK | | 0.41 |
| 5 | 3/07/01 11:23:51A | TO MARLTON | NJ 856 985-5247 | 2:30 | DDC PEAK | | 0.27 |
| 6 | 3/08/01 2:59:07P | TO WILMINGTON | DE 302 429-5979 | 11:12 | DDC PEAK | | 1.23 |
| 7 | 3/13/01 10:07:55A | TO BRIDGETON | MO 314 770-8500 | 2:54 | DDC PEAK | | 0.29 |
| 8 | 3/15/01 1:35:44P | TO CHICAGO | IL 312 344-9410 | 2:12 | DDC PEAK | | 0.25 |
| 9 | 3/15/01 1:38:23P | TO BRIDGETON | MO 314 770-8510 | 2:48 | DDC PEAK | | 0.31 |
| 10 | 3/16/01 4:13:45P | TO BRIDGETON | MO 314 770-8500 | 5:30 | DDC PEAK | | 0.59 |
| 11 | 3/26/01 4:06:53P | TO BRIDGETON | MO 314 770-8500 | 2:54 | DDC PEAK | | 0.32 |
| 12 | 3/24/01 4:12:00P | TO MONROE | MI 734 264-6303 | 1:30 | DDC PEAK | | 0.17 |
| 13 | 5/26/01 4:13:57P | TO NEW YORK | NY 212 239-1012 | 2:00 | DDC PEAK | | 0.22 |
| 14 | 3/26/01 4:16:24P | TO SALT LAKE | UT 801 359-8266 | 1:30 | DDC PEAK | | 0.17 |
| 15 | 3/26/01 4:22:02P | TO BRIDGETON | MO 314 770-8510 | 2:54 | DDC PEAK | | 0.32 |
| 16 | 3/27/01 2:47:57P | TO SADLECKVLY | CA 949 452-6459 | 0:30 | DDC PEAK | | 0.05 |
| 17 | 3/29/01 3:14:27P | TO BRIDGETON | MO 314 770-8500 | 0:38 | DDC PEAK | | 0.05 |
| 18 | 3/29/01 5:01:03P | TO BRIDGETON | MO 314 770-8541 | 0:30 | DDC OPEAK | | 9.05 |

TOTAL FOR PRIMARY ACCOUNT CODE   01513                        $5.11

CALL MANAGER CODE:   513

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 73 | 3/07/01 10:48:03A | TO HOUSTON | TX 832 264-4587 | 1:12 | DDC PEAK | | 0.13 |
| 74 | 3/01/01 2:42:40P | TO BRIDGETON | MO 314 770-8500 | 0:54 | DDC PEAK | | 0.10 |
| 75 | 3/01/01 5:10:07P | TO BRIDGETON | MO 314 770-8500 | 38:30 | DDC OPEAK | | 4.24 |
| 76 | 3/03/03 9:18:21A | TO IRVING | TX 972 929-8800 | 18:48 | DDC OPEAK | | 2.08 |
| 77 | 3/05/01 1:54:59P | TO ST LOUIS | MO 314 773-0310 | 0:30 | DDC OPEAK | | 3.05 |
| 78 | 3/03/01 10:31:44P | TO ST LOUIS | MO 314 773-0318 | 2:30 | DDC OPEAK | | 0.27 |
| 79 | 3/05/01 9:55:23A | TO IRVING | TX 972 929-8800 | 1:24 | DDC PEAK | | 0.15 |

PRIMARY ACCOUNT CODE: 00513
LONG DISTANCE SERVICE
ELIGIBLE FOR DISCOUNT
INTERSTATE DIRECT DIALED

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 59 | 3/08/01 2:54:47P | TO WILMINGTON | DE 302 655-0400 | 0:36 | DDC PEAK | | 0.07 |
| 60 | 3/13/01 10:18:21A | TO BRIDGETON | MO 314 770-8510 | 6:36 | DDC PEAK | | 0.73 |

TOTAL FOR PRIMARY ACCOUNT CODE   00513                        $0.80

ALPA 050436

M

Page   27

BAPTISTE & WILDER PWC
1150 CONN AVE NW STE 500
WASHINGTON DC  20036

**AT&T**

REF # 202 225 0723

| Account Number | Bill Date | Payment Due Date |
|---|---|---|
| 20 797 9879 001 | APR  1, 2001 | MAY  1, 2001 |

Subaccount: 011 023 2603 003

## AT&T Service
## Call Detail

| ITEM | DATE | TIME (hh:mm:ss) | PLACE | AREA CODE/ NUMBER | DURATION (hh:mm:ss) | CALL TYPE | TIME OF DAY | POST DISCOUNT AMOUNT | ITEM | DATE | TIME (hh:mm:ss) | PLACE | AREA CODE/ NUMBER | DURATION (hh:mm:ss) | CALL TYPE | TIME OF DAY | POST DISCOUNT AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | BILLED NUMBER: 054 177 1446 LONG DISTANCE SERVICE ELIGIBLE FOR DISCOUNT INTERSTATE AT&T CARD | | | | | | | | | BILLED NUMBER: 054 177 1446 LONG DISTANCE SERVICE ELIGIBLE FOR DISCOUNT INTERSTATE AT&T CARD | | | | | |
| | | | ROLAND WILDER | | | | | | 34 | 3/27/01 | 6:19:13P | TO SYRACUSE FR ARLINGTON | NY 315 582-5237 TX 817 649-9727 | 6:24 | CCS | OPEAK | 2.36 |
| 2 | 2/26/01 | 9:21:18P | TO FLS CHURCH FR CHAMPAURBN | VA 703 538-2577 IL 217 239-0091 | 4:42 | CCS | OPEAK | 1.76 | 35 | 3/27/01 | 9:19:59P | TO SYRACUSE FR ARLINGTON | NY 315 582-5237 TX 817 649-4355 | 13:42 | CCS | OPEAK | 3.59 |
| | | | | | | | | | 36 | 3/27/01 | 9:34:10P | TO HAMILTON FR ARLINGTON | NY 315 226-1755 TX 817 640-4355 | 0:30 | CCS | OPEAK | 0.90 |
| 4 | 01 | 12:41:09P | TO BETHESDA FR BRIDGETON | MD 301 652-4248 MO 314 770-2356 | 8:54 | CCS | PEAK | 2.42 | 37 | 3/27/01 | 9:35:08P | TO HAMILTON FR ARLINGTON | NY 315 226-1755 TX 817 640-4355 | 36:36 | CCS | OPEAK | 8.26 |
| 5 | 3/02/01 | 3:10:21P | TO BETHESDA FR BRIDGETON | MD 301 320-3344 MO 314 770-2356 | 1:10 | CCS | PEAK | 1.07 | 38 | 3/28/01 | 9:51:56A | TO WASHINGTON FR ARLINGTON | DC 202 223-0723 TX 817 640-4355 | 4:36 | CCS | PEAK | 1.74 |
| 6 | 3/04/01 | 9:05:20P | TO CARDEN FR ALEXANDRIA | NJ 609 504-4169 VA 703 897-0475 | 0:48 | CCS | OPEAK | 0.97 | 39 | 3/28/01 | 10:17:19A | TO BRIDGETON FR ARLINGTON | MO 314 770-8500 TX 817 640-8759 | 11:04 | CCS | PEAK | 5.04 |
| 7 | 3/04/01 | 9:18:35P | TO ST LOUIS FR ALEXANDRIA | MO 314 773-0310 VA 703 833-0475 | 13:30 | CCS | OPEAK | 3.55 | 40 | 3/28/01 | 1:28:32P | TO WASHINGTON FR ARLINGTON | DC 202 223-0723 TX 817 640-8500 | 3:36 | CCS | PEAK | 1.84 |
| 8 | 3/08/01 | 1:03:37P | TO WASHINGTON FR WILMINGTON | DC 202 223-0723 DE 302 777-9098 | 1:48 | CCS | PEAK | 1.63 | 41 | 3/28/01 | 1:42:04P | TO WASHINGTON FR ARLINGTON | DC 202 797-4090 TX 817 640-0763 | 5:36 | CCS | PEAK | 1.56 |
| 9 | 3/08/01 | 3:16:57P | TO WASHINGTON FR WILMINGTON | DC 202 223-0723 DE 302 773-9271 | 1:48 | CCS | PEAK | 1.63 | 42 | 3/28/01 | 1:49:10P | TO WASHINGTON FR ARLINGTON | DC 202 223-0723 TX 817 640-0763 | 7:00 | CCS | PEAK | 2.23 |
| 10 | 3/09/01 | 9:25:53A | TO WASHINGTON FR WILMINGTON | DC 202 252-3513 DE 302 652-9093 | 0:30 | CCS | PEAK | 1.16 | 43 | 3/28/01 | 5:20:50P | TO WASHINGTON FR ARLINGTON | DC 202 223-0723 TX 817 640-0820 | 1:04 | CCS | PEAK | 1.03 |
| 11 | 3/09/01 | 9:27:04A | TO WASHINGTON FR WILMINGTON | DC 202 250-3513 DE 302 652-9093 | 1:30 | CCS | PEAK | 1.49 | 44 | 3/28/01 | 6:07:16P | TO BRIDGETON FR ARLINGTON | MO 314 770-8500 TX 817 640-4355 | 1:00 | CCS | OPEAK | 1.01 |
| 12 | 3/09/01 | 10:24:16A | TO WASHINGTON FR WILMINGTON | DC 202 223-0723 DE 302 652-9093 | 1:30 | CCS | PEAK | 1.49 | | | | TOTAL INTERSTATE AT&T CARD | | | | | 195.82 |
| 13 | 3/09/01 | 10:29:44A | TO WASHINGTON FR WILMINGTON | DC 202 797-4090 DE 302 652-9093 | 0:36 | CCS | PEAK | 1.18 | | | | INTRALATA AT&T CARD | | | | | |
| 14 | 3/09/01 | 3:27:43P | TO WASHINGTON FR WILMINGTON | DC 202 223-0723 DE 302 652-9255 | 2:00 | CCS | PEAK | 1.47 | 45 | 3/06/01 | 9:19:32A | TO WASHINGTON FR ARLINGTON | DC 202 225-0723 DE 302 779-9135 | 3:00 | CCS | PEAK | 1.16 |
| 15 | 3/09/01 | 3:31:18P | TO BETHESDA FR WILMINGTON | MD 301 320-3346 DE 302 652-9255 | 0:30 | CCS | PEAK | 1.16 | | | | TOTAL INTRALATA AT&T CARD | | | | | 91.78 |
| 16 | 3/14/01 | 4:57:18P | TO WASHINGTON FR HERNDON | DC 202 223-0723 VA 703 689-2224 | 2:24 | CCS | PEAK 8 | 1.02 | | | | SUBTOTAL FOR 054 177 1446 | | | | | 9100.00 |
| 17 | 3/14/01 | 4:57:38P | TO WASHINGTON FR HERNDON | DC 202 223-0723 VA 703 689-2274 | 5:10 | CCS | PEAK8 | 0.95 | | | | | | | | | |
| 18 | 3/16/01 | 4:04:24P | TO TAMPA FR BRETTON WD | FL 813 494-4559 NH 603 270-1000 | 0:42 | CCS | PEAK | 0.95 | | | | | | | | | |
| 19 | 3/16/01 | 4:26:29P | TO BRETTON WD FR BRETTON WD | MO 314 770-8500 NH 603 270-1000 | 51:54 | CCS | PEAK | 7.30 | | | | | | | | | |
| 20 | 3/16/01 | 4:41:03P | TO WASHINGTON FR BRETTON WD | DC 202 225-0723 NH 603 270-1000 | 19:00 | CCS | PEAK 8 | 4.55 | | | | | | | | | |
| 21 | 3/16/01 | 4:41:03P | TO WASHINGTON FR BRETTON WD | DC 202 225-0723 NH 603 270-1000 | 4:00 | CCS | OPEAK8 | 0.35 | | | | | | | | | |
| 22 | 3/16/01 | 5:04:42P | TO WASHINGTON FR BRETTON WD | DC 202 797-4099 NH 603 270-1000 | 15:24 | CCS | OPEAK | 3.53 | | | | | | | | | |
| 23 | 3/17/01 | 1:20:22P | TO TAMPA FR BRETTON WD | FL 813 494-6554 NH 603 270-5257 | 0:54 | CCS | PEAK | 3.24 | | | | | | | | | |
| 24 | 3/17/01 | 4:50:50P | TO TAMPA FR BRETTON WD | FL 813 494-6559 NH 603 270-1000 | 0:42 | CCS | OPEAK | 0.35 | | | | | | | | | |
| 25 | 3/17/01 | 5:03:44P | TO TAMPA FR BRETTON WD | FL 813 494-6559 NH 603 270-1000 | 27:24 | CCS | OPEAK | 6.38 | | | | | | | | | |
| 26 | 3/19/01 | 9:32:44A | TO BRETTON WD FR BRETTON WD | DC 202 225-0723 NH 603 270-5256 | 2:12 | CCS | PEAK | 1.51 | | | | | | | | | |
| 27 | 3/21/01 | 1:30:19P | TO ALEXANDRIA FR BRIDGETON | VA 703 802-3425 MO 314 770-2356 | 6:54 | CCS | PEAK | 2.21 | | | | | | | | | |
| 29 | 3/27/01 | 1:07:02P | TO WASHINGTON FR ARLINGTON | DC 202 223-0723 TX 817 649-9727 | 0:36 | CCS | PEAK | 1.10 | | | | | | | | | |
| 30 | 3/27/01 | 1:22:10P | TO BRIDGETON FR ARLINGTON | MO 314 770-8500 TX 817 649-9727 | 10:00 | CCS | PEAK | 3.06 | | | | | | | | | |
| 31 | 3/27/01 | 1:34:47P | TO BRIDGETON FR ARLINGTON | MO 314 770-8500 TX 817 649-9727 | 10:06 | CCS | PEAK | 3.12 | | | | | | | | | |
| 32 | 3/27/01 | 2:51:21P | TO BRIDGETON FR ARLINGTON | DC 202 223-0723 TX 817 649-9727 | 1:18 | CCS | PEAK | 1.33 | | | | | | | | | |
| 33 | 3/27/01 | 3:53:02P | TO BRIDGETON FR ARLINGTON | MO 314 770-8500 TX 817 649-9727 | 0:42 | CCS | PEAK | 1.20 | | | | | | | | | |
| | | | | | 9:48 | CCS | PEAK | 3.06 | | | | | | | | | |

Call originates from a pay phone and includes a per use charge which is ineligible for discount.

D-176

ALPA 050437

# Exhibit Y



EXHIBIT
D179

### TWA MEC SPECIAL MEETING
### APRIL 2, 2001
### ST. LOUIS, MO

**<u>Monday, April 2, 2001</u>** ***************LARGE PORTION OF MEETING IN CLOSED SESSION*

| | |
|---|---|
| 0900 – 0915 | **Call to order**<br>*Roll Call of Members, Announcements* |
| 0915 – 0945 | **Officer Reports** |
| 0945 – 1015 | **Retirement & Insurance Issues**<br>➢ Catherine Powers, ALPA R&I |
| 1015 – 1045 | **Bankruptcy/Transaction Update**<br>➢ *Negotiating Committee:  Ron Kiel*<br>▪ *David Holtzman, Contract Administrator*<br>▪ *Steve Tumblin, LeBoeuf Lamb Greene & MacRae*<br>▪ *Michael Glanzer, Glanzer & Company*<br>▪ *Richard Seltzer, Cohen Weiss & Simon*<br>▪ *Clay Warner, ALPA Legal*<br>▪ *Randy Babbitt, Eclat Consulting*<br>➢ *Merger Committee:  Sean Clarke, Gary Flor, John Hefley, John Swanson*<br>▪ *Robert Christy, ALPA E&FA* |
| 1045 – 1100 | Break |
| 1100 – 1200 | **Update Continues** |
| 1200 - 1330 | Recess - Lunch |
| 1330 – 1430 | **Membership & Guest Hour** |
| 1430 – 1435 | **Steering Committee Report** *(Per MEC Policy Section IV.6.d.)* |
| 1435 – 1545 | **Update Continues/MEC Discussion** |
| 1545 – 1600 | *Break* |
| 1600 – 1630 | **MEC Direction** |
| 1630 | **Adjourn** |

**PER MEC POLICY MANUAL SECTION XV.A.2.**
*All handouts for the MEC must be presented to
the Steering Committee for distribution*

*STEERING COMMITTEE: Schwartz*

REVISED on 03/30/01

**ALPA 000860**

# Exhibit Z

**EXHIBIT**

**D210**

**Menoni, Suzi, TWAMEC**

| | |
|---|---|
| **From:** | Robert Stow [RStow@compuserve.com] |
| **Sent:** | Thursday, March 29, 2001 2:54 PM |
| **To:** | Sherrin, Scott, TWAMEC; Alan Altman; Bud Bensel; Gary Bouchard; Ted Case; Sean Clarke; Michael Day; Gary Flor; John Helley; Howard Hollander; Ron Kiel; Lane, Michele, TWAMEC; Pablo Lewin; Menoni, Suzi, TWAMEC; Keith O'Leary; Bob Pastore; David Singer; Steve Rautenberg; Scott Schwartz; Glenn Stieneke; Stow, Robert, TWAMEC; John Swanson; Sally Young |
| **Cc:** | Holtzman, David, TWAMEC |
| **Subject:** | MEC Meeting |

At the request of the TWA MEC Master Chairman a Special TWA MEC Meeting
will be held at the TWA MEC Office 500 Northwest Plaza, Suite 1200, St.
Ann
Mo. Beginning at 0900 (CDST) on Monday 2 April, 2001.  There will be a
work
session beginning at 1300 (CDST) on Sunday April 1st at the MEC Office.
Based on information that is available now the agenda will include
Contractual Review of proposed TWA Airlines LLC / ALPA agreement, update
on
Merger Talks and other Negotiations which are taking place.  The
following
advisors have been requested to be at the work session to review and
discuss any proposals which might require MEC Action during the meeting
on
Monday.  Michael Glanzer, Steve Tumblin, Rolland Wilder, Randy Babbitt,
Bob
Christy, Clay Warner.

NOTE*******    Daylight Savings Time BEGINS ON SUNDAY

Suzy will follow with the hotel information and any other questions
please
call the office.
Robert Stow
TWA MEC Sec/Tres

1

# EXHIBIT AA

# TWA MEC Minutes

Written, edited and published by your TWA Master Executive Council, these minutes provide a record of the business conducted during the representative body's last meeting. This document is not a verbatim transcript of the meeting's reports, discussions and actions. Rather, it is a comprehensive summary of those events. For more information on the issues influencing TWA pilots' careers, consult the TWA MEC's other various communications.

SPECIAL MEETING DATE: March 21-22, 2001 St. Louis, Missouri

### MASTER EXECUTIVE OFFICERS
**Robert A. Pastore, Master Chairman**
**Scott A. Schwartz, Vice Chairman**
**Robert C. Stow, Sr., Secretary/Treasurer**

> **EXHIBIT**
> *D223*

**COUNCIL 2 - NY**
Howard B. Hollander, Captain Rep.
David B Singer, First Officer Rep.
Ted Case, Secertary/Treasurer

**COUNCIL 4 - LAX/SFO**
Pablo Lewin, Captain Rep.
Alan Altman, First Officer Rep.
Glenn Stieneke, Secretary/Treasurer

**COUNCIL 3 - STL**
Steven P. Rautenberg, Captain Rep.
Sally D. Young, First Officer Rep.

---

### Wednesday, March 21, 2001

1330 Master Chairman Bob Pastore called the meeting to order.

Secretary/Treasurer Bob Stow called the roll, members present or accounted for. (Stieneke was unable to attend for personal reasons.)

Committee member: Ron Kiel, Marty Zygmund, Jim Arthur, Bill Kientz, Jeff Darnall, Jonathan Goldstein, Rick Crocker

Guests: List on file MEC office.

Sergeant at Arms: Jim Arthur

Steering Committee: Schwartz, Hollander, Rautenberg, Lewin

Announcements

### Master Chairman Report: Bob Pastore
Pastore thanked the membership for their participation at the bankruptcy hearing in Delaware. The pilots' presence had a major impact on the proceedings especially the "Stop Icahn" buttons. Announced Mike Day was replacing Bud Bensel as chairman of the Merger Committee. Due to health reasons, Bud resigned his position but would remain on the committee. Briefed the MEC on the activities of the Merger Oversight Committee. Schwartz would further update the MEC later in the meeting.

---

**Vice Chairman Report:  Scott Schwartz**

Schwartz reported that the U.S. Bankruptcy Court would likely hold a hearing on TWA's Section 1113 filing on April 6, though no absolute date had been set.  Stated that negotiations continued on those areas of the ALPA Collective Bargaining Agreement to be amended for the transition into TWA LLC.  The Merger Committee was working on various fronts, legal issues and scope issues.  Briefed the MEC regarding teleconference with Duane Woerth, who promised to ramp up ALPA support and utilize other legal venues for support.  Discussed the relaying of the information to the pilots, a streamline communications effort was being made.  He also reported that TWA ALPA had scheduled meetings with Department of Transportation representatives.

**Secretary/Treasurer Report: Bob Stow**

Stow briefed the body on MEC account, which was currently under budget.  Also cited recent legal fees paid out of the assessment fund.  Briefed the MEC on status of members who have not paid their assessment.  An updated list of those members had been posted on the TWA MEC web site.

1347 Reports concluded.

1348 **Membership and Guest Hour**

Joe Montanaro and Marty Zygmund/DAP/401K: addressed the MEC on the status of the DAP/401K as the transition from TWA to TWA LLC moved forward.   Indicated they were examining several options for a new plan sponsor and a resolution from the MEC would be necessary to ensure that the Plan's Board of Directors could assume governance when TWA was transitioned into TWA LLC.

Questions and Answers

1409 Jeff Darnall, Council #3:  Addressed the MEC on current situation and asked several questions about TWA's recent Section 1113 filing in bankruptcy court.

1430 Membership and Guest Hour concluded.

1432 Recess
1440 Reconvened

AI#0103-65 Lewin/Singer
SUBJECT:  Addition of Jerome Lawler to Aspen System.

**Resolution #01-56 by P. Lewin/D. Singer**

WHEREAS the Master Chairman has requested that Jerome Lawler be added to the ALPA aspen system for the purpose of serving on the Retired Pilots Committee, and

WHEREAS MEC Policy Section IV.E.5.a states *"that no individual is authorized an Aspen box who is neither an MEC member, Committee member or staff member unless specified authorized by MEC resolution,"* now

**THEREFORE BE IT RESOLVED that Jerome Lawler be added to the TWA ALPA Aspen system immediately and remain on the Aspen system until the Master Chairman requests his removal or by completion of participation on the Retired Pilots Committee.**

**PASSED** unanimous voice vote

---

**ALPA 006489**

D-223
Page 2 of 5

AI#0103-66 Lewin/Altman
**SUBJECT:**   Retired Pilots Committee Chairman.

Discussion

### Resolution #01-57 by P. Lewin/A. Altman

WHEREAS retired Captain H.O. Van Zandt has requested to be relieved of his duties as chairman of the Retired Pilots Committee, and

WHEREAS retired Captain Jerome Lawler has indicated a willingness to chair the Retired Pilots Committee, and

WHEREAS the Master Chairman has appointment Jerome Lawler as Chairman of the Retired Pilots Committee, now

**THEREFORE BE IT RESOLVED the TWA MEC approves the appointment of retired Captain Jerome Lawler as chairman of the TWA MEC Retired Pilots Committee.**

**PASSED** unanimous voice vote

### Transaction Update
Negotiating Committee:  Ron Kiel and Alan Altman

1446 Hollander/Altman moved to enter into Executive Session.
VOTE:  **PASSED** unanimous voice vote.

1755 Hollander/Young moved to come out of Executive Session.
VOTE:  **PASSED** unanimous voice vote.

1800 Recess

---

### Thursday, March 22, 2001

0900 Vice Chairman Scott Schwartz called the meeting to order.

Secretary/Treasurer Bob Stow called the roll, members present or accounted for. (Dave Singer proxy to Altman.)

Committee members:  Jim Arthur, Gary Flor, Jonathan Goldstein, John Swanson, Mike Day, John Hefley

Guests:  List on file MEC office.

Announcements

### Transaction Update: Merger Committee

0915 Rautenberg/Young move to enter into Executive Session.
VOTE: **PASSED** unanimous voice vote.

---

**PAGE - 3**
*Approved MEC Resolution #01-88*

***RESOLUTION #01-58 WAS PASSED IN EXEUCTIVE SESSION,  NOT FOR
DISTRIBUTION.***

***RESOLUTION #01-59 WAS PASSED IN EXEUCTIVE SESSION, NOT FOR
DISTRIBUTION***

1230 Altman/Young moved to come out of Executive Session.
VOTE: **PASSED** unanimous voice vote.

1231 Recess
1240 Reconvened

### System Schedule Report:  Gary Tritt
Reported on some problems with Crew Schedule.  Also reported some flights were being canceled and
there were several changes in fleet allocation.  STL would be the most impacted with pairings changes.
Most of the operation would be run on a month-to-month basis.

Questions and Answers

1255 Report concluded.

Hollander/Altman moved to accept AI# 0103-68 as late agenda item.
VOTE: **PASSED** unanimous voice vote.

AI#0103-68 Lewin/Hollander
**SUBJECT:** DAP Plan Sponsorship

Discussion
### Resolution #01-60 by P. Lewin/H. Hollander

WHEREAS Article XV of the DAP provides that, upon the occurrence of a Triggering Event (as defined
in Section 15.02 of the Plan), the Association may elect to assume the roles, powers, and duties of the
Company under the Plan and Trust Agreement, including the roles, powers and duties of Plan Sponsor,
and

WHEREAS one or more of the Triggering Events defined in Section 15.02 of the Plan has already
occurred or will soon occur, and

WHEREAS the MEC believes it is in the best interest of the Plan participants for the DAP to remain in
effect, and

WHEREAS the MEC believes that the transfer of the Plan Sponsorship of the DAP from the Company to
another entity is necessary in order for the DAP to remain in effect for the benefit of the Plan participants,
then

**THEREFORE BE IT RESOLVED the MEC requests that the Association agree to assume the
roles, powers and duties of Plan Sponsor of the DAP, in accordance with Article XV of the Plan.**

**PASSED** unanimous voice vote

---

**ALPA 006491**
D-223
Page 4 of 5

1300 Hollander/Altman moved to adjourn the meeting.
VOTE: **PASSED** unanimous voice vote.

1301 All business concluded; the meeting was adjourned.


_Robert C. Stow S_
_____
Robert C. Stow, Sr.
TWA MEC Secretary/Treasurer

**ALPA 006492**
D-223
Page 5 of 5

# EXHIBIT BB

EXHIBIT

D233

**TWA MEC**
**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**
500 NORTHWEST PLAZA, SUITE 1200 □ ST. ANN, MISSOURI 63074 □ 314-770-8500

July 10, 2001

Captain Duane Woerth, President
Air Line Pilots Association, International
1625 Massachusetts Avenue, N.W.
Washington, DC 20036

Dear Duane:

I am writing to thank you for your support of our pilot group at the last Executive Board meeting. With your support, the Agenda Item pledging the full moral support and the necessary funding to enable our MEC to properly represent our pilots passed by acclamation.

As you know, the TWA pilots are fighting for fair treatment by both American Airlines and the Allied Pilots Association. The issues involved in this integration, however, reach beyond TWA pilots. The loss of our Scope due to the TWA acquisition by American has far reaching consequences for many ALPA pilots. The APA's concept of stapling of two thirds of our pilots flies in the face of fairness and professionalism. The very foundation of our profession, including seniority, relies on mutual respect between pilots and an appreciation for the rights of all pilots.

Our MEC is facing many significant obstacles and challenges, including extraordinary expenses for our Merger Committee and Merger Counsel. Another challenge facing our pilots is the public nature of the seniority integration negotiations. The APA unilaterally decided early on in the negotiations to release proposals into the public domain. In order to keep our membership equally informed we have also released information about the proposals.

Not surprisingly, the public nature of the negotiations has fueled miscommunication and misperceptions by both pilot groups, increasing tensions between our respective pilot groups. A major initiative of our MEC, therefore, has been a communications campaign to ensure that our pilots and other ALPA pilots have accurate information in order to counter this misinformation.

Enclosed is a copy of a video presentation that was produced with your assistance and the assistance of the ALPA communications department. In addition to the video, I am enclosing recent print communications that provide additional information on our seniority integration.

Once again, I would like to thank you for your support of our pilot group. The ongoing support of our Association is crucial to our future success.

Sincerely,

Captain Robert A. Pastore
Master Chairman

cc: TWA MEC

SCHEDULE WITH SAFETY  •  AFFILIATED WITH AFL-CIO

**ALPA 020210**
D-233
Page 1 of 1

# EXHIBIT CC

02/20/2009  18:39   2022372487
02/20/2009  18:02   202.  3677          BAPTISTE & WIL   . PC



EXHIBIT
D236

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| LEROY "BUD" BENSEL, ET AL. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 02-2917-JEI |
| ) | |
| ALLIED PILOTS ASSOCIATION, ET AL. ) | |
| ) | Motion Date: |
| Defendants. ) | |

## AFFIDAVIT OF ROLAND P. WILDER, JR.

I, Roland P. Wilder, Jr., of 1150 Connecticut Ave., N.W., Suite 500, Washington, D.C. 20036, do hereby declare and state:

1.      Your declarant is a lawyer licensed to practice law in the District of Columbia, and a senior principal of the firm Baptiste & Wilder, P.C. I served as Merger Counsel of the TWA Master Executive Counsel in connection with the acquisition of Trans World Airways by American Airlines in 2001.

2.      The purpose of this declaration is to clarify when I attended a meeting of the Master Executive Counsel in St. Louis, MO in early April 2001. I was present in St. Louis at the MEC's offices on April 1, 2001 until approximately 4:30 p.m. that afternoon. My activities at the MEC's offices on that day are accurately described in my November 7, 2006 deposition, at pp. 97-100, in *Baptiste & Wilder, P.C. v. TWA MEC, et al.*, No. 04 CC 004764, Circ. Ct., St. Louis County, MO. (Exh. A).

02/20/2009  18:39    2022372487                                              PAGE   04/23
___02/20/2009  18:02 .  202:    577                 BAPTISTE & WIL.    PC      PAGE   03/21

3.      On the evening of April 1, 2001, I traveled to Louisville, KY in connection with my representation of another client.  My hand-written time records disclose that I met with the Louisville client that evening, and attended collective bargaining negotiations in Louisville all day on April 2, 2001 (Exh. B).  Contrary to my November 20, 2006 trial testimony in the Circuit Court and my August 8, 2008 deposition in the captioned case, the events and meetings with the MEC described in Att. A occurred on April 1, not April 2, of 2001.  In all other respects, my testimony of the April 1 events was accurate in both my trial testimony and both depositions.  I did not learn of the MEC's decision until April 2 during a telephone call with John Hefley, a member of the Merger Committee.

4.      Until Mr. Seham's "Expert Testimony" was publicly posted on the internet, I did not think it material whether I spoke to the MEC on April 1 or 2.  Upon returning to Washington, I consulted my original, hand-written time records covering my activities on April 1 and 2, and confirmed that my original testimony on November 7, 2006 was accurate.

5.      Apparently Mr. Seham's research did not uncover the judgment of the Court in *Baptiste & Wilder v. TWA MEC, supra* (Exh. C).   There, after hearing the testimony of Mssrs. Pastore and Bensel, the Circuit Court held: "There is no credible evidence that Plaintiffs failed to perform their services to TWA LLC MEC in a competent, professional and loyal manner.  They cannot be expected to guarantee specific results as the defense seems to contend."

02/20/2009  18:39   2022372487                                          PAGE  05/23
    02/20/2009  18:02   202⸱  ⸱677              BAPTISTE & WILl  PC      PAGE  04/21

I hereby state under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing declaration, consisting of paragraphs 1-5 above, is true and accurate to the best of my knowledge, information and belief.

Signed this 20th day of February 2009, in Washington, D.C.

_Roland P. Wilder, Jr._

Roland P. Wilder, Jr.

D-236
Page 3 of 20

2

1          In the Circuit Court of the County of St. Louis

2                          State of Missouri

3

4      BAPTISTE & WILDER, P.C.,

5              Plaintiff,

6          vs.                        Cause No. 04CC-004764

7                                     Division 19

8      TRANS WORLD AIRLINES, LLC, et al.,

9              Defendants.

10

11     DEPOSITION OF ROLAND P. WILDER, JR., produced, sworn and

12     examined on behalf of the Defendants, on the 7th day of

13     November 2006, at the Law Offices of Murphy Wasinger, LC,

14     1401 South Brentwood Boulevard, in the County of St.

15     Louis, State of Missouri, before Vanessa L. Hertich, a

16     Certified Court Reporter and Notary Public within and for

17     the State of Missouri.

18

19

20

21

22

23

24                                          EXHIBIT _A_

25

*Gore Perry Gateway Lipa Baker Dunn & Butz*
*St. Louis 314.241.6750    St. Charles 636.940.0926*

02/20/2009  18:39   2022372487                                    PAGE  07/23
02/20/2009  18:02   202:   677          BAPTISTE & WIL  PC       PAGE  06/21

97

1    A:  -- the MEC meeting, just before.

2    Q:  I should have asked a better question, and let's

3    go to April 1st.  Now we're -- Now we're in the front of

4    the full MEC and the eight ALPA advisors, I understand,

5    are also sitting in front of the room, right?

6    A:  Yes.

7    Q:  And it's a true fact that they said in very

8    strong terms that you need to waive scope?

9    A:  That is correct.

10   Q:  You need to dismiss your grievance that you filed

11   in early March, right, abandon that?

12   A:  That would have been the consequence of waiving

13   scope because there would be no contract violation to

14   support the grievance.

15   Q:  And it was always your opinion and it was your

16   opinion that day that waiving scope was not the way to

17   go?

18   A:  Correct.

19   Q:  And my question is:  Before the MEC made their

20   vote, at which they ultimately did vote to surrender

21   scope, did you tell the MEC, the people that retained

22   you, this is a bad idea?

23   A:  I spoke for almost an hour to that effect, yes.

24   Q:  When was that?

25   A:  That was toward the end of April 1st.

D-236
Page 5 of 20

98

Q: All right. And you spoke for an hour. Was that in front of the whole group or was that --

A: It was, and the ALPA advisors.

Q: Did people ask you questions?

A: They did.

Q: And your advice to them at the end of that meeting was what exactly?

MR. COLE: Excuse me. Let me ask for clarification. I think the meeting went on to April 2nd. We're talking about the meeting of April 1st still, aren't we?

MR. PRESS: Right. Before it adjourned, yes.

MR. COLE: Okay.

A: As I said, I was one of the last speakers and my advice was consistent with the memorandum of March 13th and my letter of March 26 to Mr. Woerth. What I told the MEC was we had prepared the papers, I had them there, they were behind Mr. Pastore, along with my letter to Captain Woerth and I told them we were ready to proceed.

Q: As a matter of fact, could you proceed without ALPA's authorization?

A: We could not.

Q: Who, specifically, had to authorize the filing of the lawsuit, Duane Woerth?

A: I think so and I say that because I don't believe

02/20/2009  18:39    2022372487                                                    PAGE  09/23
  02/20/2009  18:02   202:  577                   BAPTISTE & WIL   PC          PAGE  08/21



99

1      the ALPA constitution and bylaws specified who would do

2      that, but under the Railway Labor Act, ALPA was the

3      collective bargaining representative and so only ALPA

4      could sue to enforce a collective bargaining agreement.

5      The TWA pilots could not.  My clients could not and I

6      could not proceed with the lawsuit without ALPA's

7      acquiescence, or permission I should say, and the

8      condition precedent to that was the TWA MEC's

9      determination that should happen.

10         Q:  You lost me there at the end.

11         A:  All right.  I'm sorry.

12         Q:  If the MEC -- Is this fair, if the MEC says, no,

13     we want to file this lawsuit, is ALPA compelled then to

14     allow you to do so?

15         A:  ALPA was not compelled to do it, no.

16         Q:  Okay.  I mean, it's a fact that ALPA was not

17     going to authorize this filing, were they, no matter what

18     the MEC said?

19         MR. COLE:  Object to the characterization.  I

20     think it mischaracterized his previous testimony and it's

21     lacking foundation of a final decision by ALPA, but go

22     ahead and answer if you can.

23         A:  Nobody told me that.

24         Q:  (By Mr. Press)  What was your supposition at the

25     time?  I mean, did you have a feel that ALPA was not

100

1    going to get behind this?

2         MR. COLE:  Object to the question as calling for

3    speculation.  Go ahead and answer if you can.

4         A:  Get behind what?

5         Q:  (By Mr. Press)  The filing of the lawsuit.  Did

6    you have a feeling that it would ever be authorized?

7         MR. COLE:  Object on the same ground.

8         A:  My -- My feeling was at the meeting on April 1st

9    that I was the one person who was recommending this

10   course of action.  I received no encouragement from

11   anyone on the MEC, on the Merger Committee, ALPA's

12   advisors, or anybody in the room.

     Q:  Did you speak with any of the MEC members, you

     know, privately before they voted, at which they told you

     anything about their thought process?

     A:  No.

     Q:  All right.

     A:  The reason for that is that I had a commitment

     for another client in another city and I, therefore, left

     after the meeting.  I did not learn about the vote on

     April 2 until I called up the MEC the following day.

     Q:  Did anybody at ALPA ever tell you they would

     authorize the filing of the lawsuit if the MEC directs

     such action?

     A:  No.



EXHIBIT _B_

02/20/2009  18:39   2022372487                                          PAGE  12/23
02/20/2009  18:02   202  .677                    BAPTISTE & WIL   PC     PAGE  11/21



02/20/2009  18:39    2022372487                                              PAGE  13/23
02/20/2009  18:02    202  3677            BAPTISTE & WIL   PC              PAGE  12/21



02/20/2009  18:39    2022372487                                                    PAGE  14/23
___ 02/20/2009  18:02    202  677                 BAPTISTE & WIL   PC              PAGE  13/21

STATE OF MISSOURI        )
                         ) ss
COUNTY OF ST. LOUIS      )


IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI


| | |
|---|---|
| BAPTISTE AND WILDER, P.C.,<br>Plaintiff, ) ) ) | |
| ) ) ) | CAUSE No.<br>04CC-4764 |
| vs ) | DIVISION 19 |
| TRANS WORLD AIRLINES LLC<br>MASTER EXECUTIVE COUNCIL,<br>And ) ) ) | |
| ROBERT A PASTORE, Individually and<br>in his capacity as TWA LLC MEC<br>Chairman, and ) ) ) | |
| JOHN HEFLEY, Individually and<br>in his capacity as TWA LLC MEC<br>Vice Chairman, and ) ) ) | |
| TED CASE, Individually and ) ) | |

1

**EXHIBIT _C_**

in his capacity as TWA Secretary-        )
Treasurer, and                           )
                                         )
HOWARD HOLLANDER, Individually           )
  and  in his capacity as TWA LLC MEC    )
Captain Representative, and              )
                                         )
JIM ARTHUR, Individually and             )
in his capacity as TWA LLC MEC           )
First Officer Representative, and        )
                                         )
SALLY YOUNG, Individually and            )
in her capacity as TWA LLC MEC           )
First Officer Representative, and        )
                                         )
SEAN CLARK, Individually and             )
in his capacity as TWA LLC MEC           )
First Officer Representative             )
                        Defendants, and  )
                                         )
AIR LINE PILOTS ASSOCIATION              )
INTERNATIONAL,                           )
                        Defendants       )

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER, JUDGMENT AND DECREE OF COURT

This cause was called on November 20, 2006, for trial. The parties
waived jury trial. The cause was heard before the court without a jury
on November 20 and 21, 2006. Evidence was adduced. The cause was

2

02/20/2009  18:39    2022372^87                                          PAGE  16/23
    02/20/2009  18:02    202i  J677          BAPTISTE & WIL_  . PC        PAGE  15/21

submitted on the same date. The parties were granted until December
8, 2006, to submit memoranda, proposed orders and supporting case
law and until December 14, 2006, to file reply memoranda. Plaintiff
and Defendant, Robert A. Pastore, each filed briefs and reply briefs.

## FINDINGS OF FACT

The Court, having considered the evidence adduced and having
taken judicial notice of the legal file and the pleadings and ruling
therein, makes the following findings. Any finding of fact herein
equally applicable as a conclusion of law is adopted as such and any
conclusion of law equally applicable as a finding of fact is adopted as
such.

1. Plaintiff filed its Petition for Breach of Contract for Legal Fees and
Expenses on November 8, 2004.

2. On November 12, 2004, a Writ of Attachment was issued against
funds of the Trans World Airlines LLC Master Executive Council
(hereinafter referred to as TWA LLC MEC) in Union Planter's
Bank(hereinafter refer to as Regions Bank). On February 8, 2005,
pursuant to court order, the court accepted payments in the amounts
of $20,848.89 and $130,000.00 from Regions Bank. Subsequently, on
April 13, 2006, the sum of $144,000.13 was deposited into the
registry of the court in interest bearing accounts.

3. Service was obtained on Defendant, Robert A. Pastore, and
Michael Katz entered his appearance as attorney for Defendant,
Pastore.

3

4. Service was also obtained upon Defendants, Sean Clark, Trans World Airlines LLC, and Jim Arthur.

5. Although there is no return of service upon Defendant, Howard Hollander, there is an entry of appearance and answer filed on his behalf.

6. No service was obtained on Defendants, John Hefley, Ted Case or Sally Young.

7. On February 14, 2005, Plaintiff filed a First Amended Petition. On July 11, 2005, Defendants, Pastore and Hollander, filed a counterclaim against Plaintiff to which Plaintiff filed a reply on September 29, 2005.

8. On July 19, 2006, the Motion of Defendant Airline Pilots Association International to dismiss for lack of jurisdiction was heard and sustained and the cause was dismissed as to that party.

9. On October 13, 2006, Plaintiff moved to file a Second Amended Petition and set that motion for hearing. Nothing within the legal file reflects that the motion was ever heard or ruled upon or that the court ever granted leave to file a Second Amended Petition.

10. Defendants, Hollander, Clark and Pastore, each filed a Motion for Judgment on the Pleadings. The motions were called and heard and, on October 25, 2006, the Motions were granted as to Defendants, Hollander and Clark, and denied as to Defendant, Pastore. Judgment was entered in favor of Defendants, Hollander and Clark, on Plaintiff's claim for damages against those Defendants.

4

02/20/2009  18:39    2022372487                                                    PAGE  18/23
    02/20/2009  18:02    2022.   677                BAPTISTE & WILL   PC          PAGE  17/21

11. On October 31, 2006, Defendant, Hollander, dismissed his counterclaim without prejudice.

12. On November 15, 2006, counterclaim of Defendant, Pastore, was dismissed for failure to state a cause of action without leave to amend. On that same date, the parties waived jury trial and consented to trial of the cause before the court.

13. The credible evidence is that TWA LLC MEC is an unincorporated association established by the Airline Pilot's Association (hereinafter referred to as ALPA) Constitution and By-Laws. Although Defendant, Pastore, signed the contract with Plaintiff to render legal services to TWA LLC MEC without designating his representative capacity, the evidence is clear that Defendant, Pastore, signed in his capacity as the Chairman of the TWA LLC MEC and not individually. Plaintiff knew that Defendant, Pastore, was acting as an agent for a disclosed principal. There is no credible evidence that either Plaintiff or Defendant, Pastore, understood Defendant, Pastore, to assume personal responsibility for the contractual obligation or to guarantee its payment personally. All references in the unambiguous contract to Defendant, Pastore, as "you" meant him in his representative capacity and not individually.

14. There is no credible evidence that Defendant, Jim Arthur is personally liable to Plaintiffs for any obligation under its contract with TWA LLC MEC.

15. The Chairman of the TWA LLC MEC was accountable for funds of the Master Executive Council, according to Article IV, Section 14

5

of the ALPA Constitution and By-Laws. Even after the merger of
TWA with American Airlines, the funds in Regions bank which were
attached by way of a garnishment from Union Planters Bank (n/k/a
Regions Bank) issued November 12, 2004, were those in the name of
TWA Merger Fund, which the evidence reflects were funds of the
TWA LLC MEC. There is no credible evidence that anyone has
replaced Defendant, Pastore, as Chairman of the Master Executive
Council, although the last approved signature on the account was that
of Defendant, Theodore Case, as Secretary Treasurer.

16. Defendant, Pastore, had an obligation, as the last Chairman of the
TWA LLC MEC chairman to use the funds of the TWA LLC MEC to
pay Plaintiff's bill from merger funds of the TWA LLC MEC. He
was directed to do so by the President of ALPA, International. This
was true even though he was never an authorized signatory on the
accounts holding those funds. The funds in the registry of the court
are the TWA LLC MEC merger funds that were not remitted to
ALPA after the merger. Those funds were obtained by special
assessment of the pilots and were not from dues. Although the merger
funds were initially obtained to fund merger efforts of TWA pilots in
merger efforts between TWA and America West, the court finds the
use of those funds to fund efforts of TWA pilots in the TWA/
American Airlines merger was within the permissible scope of the use
of those funds as set forth in Exhibit 48, the resolution authorizing the
collection and use of the funds.

17. Plaintiff provided merger related legal services and incurred
expenses pursuant to the contract between Plaintiff and TWA LLC
MEC at issue in this case in the reasonable value of $69,012.49.
ALPA had directed Defendant, Pastore, as Chairman of the TWA

6

LLC MEC to use merger funds to pay those bills. The interest thereon to the date of this judgment at a rate of 9% is $37,267.20. The principal of the bills due plus interest all aggregates to $106,279.69.

18. There is no credible evidence that Plaintiffs failed to perform their services to TWA LLC MEC in a competent, professional and loyal manner.  They cannot be expected to guarantee specific results as the defense seems to contend.

## CONCLUSIONS OF LAW

1. Plaintiffs are not entitled to recover judgment against Defendants, Pastore   or  Arthur, individually

2. The Court has jurisdiction over Defendant, TWA LLC MEC, through its Chairman, Pastore, and has jurisdiction over its merger funds which have been deposited into the registry of this court.

3. Plaintiffs are entitled to recover of Defendant, TWA LLC MEC, fees and expenses in the amount of $69,012.49 plus interest thereon in the amount of  $37,267.20, all aggregating to $106,279.69, which shall be satisfied by distribution of monies deposited into the registry of the court from TWA Merger Funds attached from Regions Bank.

7

## ORDER, JUDGMENT AND DECREE OF COURT

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs recover nothing. of Defendants, Robert A. Pastore and Jim Arthur, individually,

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs recover of Defendant, TWA LLC MEC, through its Chairman, Robert A. Pastore, the sum of $69,012.49 plus interest thereon in the amount of $37,267.20, all aggregating to $106,279.69, which shall be satisfied by distribution of monies heretofore deposited into the registry of the court from Regions Bank by way of attachment.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the funds in the registry of the court not be distributed to satisfy this judgment until all appeals have been exhausted. After the distribution of funds to satisfy the judgment, the balance thereof, if any, shall be remanded to Regions Bank.

SO ORDERED:

MELVYN W. WIESMAN, JUDGE

Entered this 30 day of January 2007.

8

02/28/2009  18:39    2022372487                                    PAGE  22/23
     02/28/2009  18:02    202    J677          BAPTISTE & WIL   PC    PAGE  21/21

cc:   James S. Cole, Attorney for Plaintiffs
      Allen P. Press and Michael Katz , Attorneys for Defendant,
      Robert A. Pastore.

9

# EXHIBIT DD



# TABLE OF CONTENTS

I. THE PROCESS ........................................................................8

II. THE OBJECTIVES OF THE SENIORITY INTEGRATION ...................10

III. THE TIMELINE FOR IMPLEMENTING AN INTEGRATED LIST ........11

IV. CONSTRUCTION OF THE INTEGRATED SENIORITY LIST ...........................13

    A.    The Integrated List ...............................................................13

    B.    Building Blocks for Construction of the List ......................14

    C.    Objectives Achieved by the Integrated List ..........................17

V. FENCES ...............................................................................19

    A.    AA Large Wide-Body Fences ...............................................19

    B.    TWA Small Wide-Body and Narrow-Body Fences ....................20

          1.    Rationales for the Fences ...............................................20

          2.    St. Louis....................................................................23

          3.    Captain Positions Outside of St. Louis ...........................25

    C.    The Combined Impact of the Integrated List and Fences .....................28

VI. FURLOUGHS AND DISPLACEMENT ..........................................28

VII. OTHER PROVISIONS OF SUPPLEMENT CC ................................29

VIII. CONCLUSION ....................................................................30

P03858

D-282
Page 1 of 25

**TWA MEC SPECIAL MEETING**
**March 21-22, 2001**
**ST. LOUIS, MO**

_**Wednesday, March 21, 2001**_ *****************

| | |
|---|---|
| 1330 – 1400 | **Call to order** |
| | _Roll Call of Members, Announcements_ |
| | **Officer Reports** |
| | |
| 1400 – 1500 | **Membership & Guest Hour** |
| | |
| 1500 – 1505 | **Steering Committee Report** _(Per MEC Policy Section IV.6.d.)_ |
| | |
| 1505 – 1605 | **Transaction Update** |
| | ➢ _Negotiating Committee:  Ron Kiel_ |
| | ▪ _David Holtzman, Contract Administrator_ |
| | ▪ _Steve Tumblin, LeBoeuf Lamb Greene & MacRae_ |
| | ▪ _Michael Glanzer, Glanzer & Associates_ |
| | ▪ _Richard Seltzer, Cohen Weiss & Simon_ |
| | ▪ _Clay Warner, ALPA Legal_ |
| | |
| 1605 – 1620 | _Break_ |
| | |
| 1620 – 1720 | **Transaction Update Continued** |
| | ➢ _Merger Committee:  Mike Day, Sean Clarke, Gary Flor,_ |
| | _John Hefley, John Swanson, Bud Bensel_ |
| | ▪ _Roland Wilder, Baptiste & Wilder_ |
| | ▪ _Robert Christy, ALPA E&FA_ |
| | |
| 1720 – 1800 | **System Schedule Committee Report** |
| | ➢ _Gary Tritt_ |
| | |
| 1800 | **Recess** |

**PER MEC POLICY MANUAL SECTION XV.A.2.**
_All handouts for the MEC must be presented to_
_the Steering Committee for distribution_

_STEERING COMMITTEE: Schwartz_

REVISED on 03/20/01

ALPA 000887

**TWA MEC SPECIAL MEETING**
**March 21-22, 2001**
**ST. LOUIS, MO**

_**Thursday, March 22, 2001**_ ***************TENTATIVE

| | |
|---|---|
| 0900 – 0915 | **Call to order**<br>_Roll Call of Members, Announcements_ |
| 0915 – 1045 | **Transaction Update Continued -- IF REQUIRED** |
| 1045 – 1100 | **Break** |
| 1100 – 1200 | **MEC Discussion/Direction** |
| 1200 | **Adjourn** |

**PER MEC POLICY MANUAL SECTION XV.A.2.**
**_All handouts for the MEC must be presented to_**
**_the Steering Committee for distribution_**

_STEERING COMMITTEE: Schwartz_

REVISED on 03/20/01

Page 2 of 2        **ALPA 000888**