UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PATRICK BRADY, *et al.*,          )
                                  )
          Plaintiffs,             )
                                  )
v.                                )     Civil Action No.  02-2917 (JEI)
                                  )
AIR LINE PILOTS ASSOCIATION,      )
                                  )
          Defendant.              )

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR RULE 11 SANCTIONS**

---

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ 08033
(856) 795-9002

**GREEN JACOBSON, P.C.**
Martin M. Green
Allen P. Press
Jonathan Andres
7733 Forsyth Boulevard
Suite 700 Pierre Laclede Center
St. Louis, Missouri 63105
(314) 862-6800

Dated:  September 6, 2011

## I.  INTRODUCTION

It is said that a desperate party unable to win his case on the merits, will sometimes resort to an attack on the lawyer.  Defendant's Motion to Revoke the *Pro Hac Vice* Admissions of Allen Press and Joe Jacobson [Doc. No. 417] is a disgraceful example of that adage at work.  The motion accuses Press and Jacobson of carrying out a grand conspiracy to commit perjury.  This is as serious an accusation as one can make against a lawyer.  In support of its grave allegation, however, defendant rests simply on its counsel's wild imagination.  The motion is frivolous on its face. The lawyer who signed it, Steve Fram (hereinafter "Counsel" or "Defense counsel"), should be sanctioned.

## II.  ARGUMENT

Federal Rule of Civil Procedure 11 states, in relevant part:

> **(b)**   **Representations to the Court.**  By presenting to the court a pleading, written motion, or other paper ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1)   it is not being presented for any improper purpose, such as to harass ...
> >
> > \* \* \*
> >
> > (3)   the factual contentions have evidentiary support ....

""It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court.'" *Hurdleston v. New Century Financial Services, Inc.*, 629 F.Supp.2d 434, 444 (D.N.J. 2009), quoting *Brubaker Kitchens Inc. v. Brown*, 280 Fed.Appx. 174, 185 (3d Cir. 2008).  Reasonableness in the context of a Rule 11 inquiry is

"an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." *Id.* The moving party is not required to make a showing of bad faith. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (citation omitted).

To comply with Rule 11, counsel are required to conduct "a reasonable inquiry into both the facts and law supporting a particular pleading." *Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir. 1989). An "empty head, pure heart" excuse cannot be used as justification for filing a frivolous motion. *Clement v. Public Service Electric & Gas Co.*, 198 F.R.D. 634, 637 (D. N.J. 2001).

In its motion, defendant charges five witnesses with having knowingly testified falsely at trial, and charges Press and Jacobson with intentionally orchestrating that fraud. These claims are objectively unreasonable. The proof is in the jury's verdict.

Counsel argued in his closing argument that the witnesses' testimony was false. He marshalled his contrary evidence. Indeed, his closing was dominated by his attacks on the credibility of plaintiffs' witnesses. The jury heard all this and rejected the contention that plaintiffs' witnesses were all liars. A jury has already rejected defendant's accusations of choreographed false testimony – "like a Broadway show," as Fram described it in closing. Since the contention was already presented and rejected by the jury, it is objectively unreasonable to assert it again. Defendant's accusations are thus frivolous on their face, and the Court's Rule 11 inquiry should end here. Plaintiffs will nevertheless discuss the so-called "evidentiary support" for defendant's motion.

The principal basis for defendant's motion is Roland Wilder's fourth sworn account as to his whereabouts on April 2, 2001. The chronology of Wilder's testimony on this subject shows

the absurdity of defendant's position.

Wilder initially testified in a different case that he was not in St. Louis for the April 2, 2001 MEC meeting (11/7/06 deposition). Two weeks later, he testified at the trial of that case that he *was* in St. Louis for that meeting (11/21/06 trial). Almost two years later, at his first deposition in this case, Wilder confirmed that he was in St. Louis on April 2 (8/8/08 deposition). He then reversed back, and said he was not in St. Louis on April 2 (2/20/09 affidavit and 4/20/11 deposition).

Wilder's final word on the subject of his whereabouts April 2 is the lynchpin of defendant's contention that everyone else is a liar. This contention, however, ignores a fundamental tenet of the law -- the jury was free to disbelieve Wilder's fourth and final account, especially in light of his inconsistent testimony on the subject on two prior occasions. Defendant unreasonably chooses to ignore this history and the jury's findings.

The trial testimony Wilder gave in November 2006 was in support of his law firm's claim for legal fees against the TWA MEC. At the trial where he was seeking legal fees from the MEC, he testified he met with the MEC on April 2. Two years later, at his first deposition in this case, Wilder confirmed he was in St. Louis on April 2. In doing so, Wilder specifically noted, and *corrected*, his prior testimony where he had inconsistently stated that he was not in St. Louis that day:

> Q:     And do you recall back in November '06 you gave a deposition in a related matter and you testified under oath then too, correct?
>
> A:     I did.
>
> Q:     And – and then shortly thereafter you testified in a hearing in front of a judge under oath again, correct?

A:      Correct.

Q:      ... In preparation for today did you review any of your prior testimony?

A:      Yes.  I reviewed my deposition and I went over briefly the Court testimony that I gave.

Q:      Okay.  And in reviewing that did you find anything that was glaringly incorrect or something that you read and said, boy, that was wrong, I need to change that?

A:      There was an inconsistency between the Court testimony and the deposition in terms of when certain meetings took place on or about April 1st and 2nd. The correct dates were set forth in the Court testimony.

Q:      I know precisely what you are referring to.  When you testified in your deposition, you testified you attended an MEC meeting with the ALPA advisors on April 1 and at Court you testified it was April 2.

A.      That's correct.

Q:      And the accurate testimony was that provided in Court?

A:      Correct.

(8/8/08 depo., page 8, line 17 through page 9, line 23).

Despite these *facts*, defendant makes the wholly *conclusory* contention that Wilder's subsequent flip-flop on the issue "rendered false the trial testimony of Plaintiffs' pilots." *Doc. No. 417*, p. 12.  This contention is based on the illogical and unreasonable premise that the Court is required to accept Wilder's final word on the subject incontestably accurate.

Defendant insinuates that Press concealed the supposed truth when he did not use an invoice from Wilder to "refresh" Wilder's memory when he was deposed in August 2008.  The invoice reflects that Wilder did not charge the MEC for his attendance at the TWA MEC meeting of April 2.  Defense counsel writes: "one can only wonder how two experienced attorneys [Press

-4-

and Wilder] ... could have failed to discuss the Wilder invoice ...." *Doc. No. 417*, p. 17.

Counsel's mental wanderings are not relevant and are the product of some serious misconceptions.  Wilder's memory did not fail, and did not need to be refreshed with a document.  Wilder recognized his prior inconsistent statements on this issue, and under oath clarified that he in fact was at the meeting on April 2.  Indeed, the very invoice that defendant now claims put Press on notice of the supposed irrefutable fact that Wilder was not in St. Louis on April 2, was one of the exhibits introduced by Wilder at the very trial where he testified he was at the meeting on April 2.

Moreover, although perhaps unknown to Counsel, responsible lawyers frequently will not bill clients for time spent that did not benefit the client's interests.  Given the outcome of the April 2 meeting, and Wilder's reaction to it, it would have been perfectly reasonable for Wilder to have decided not to have billed the MEC for that time.  Certainly, it can not be denied that it is more reasonable to believe that one lawyer decided not to bill for his time (and then forgot about it) than to believe that two lawyers and five witnesses entered into a conspiracy to present false testimony.

Defendant's motion includes a long discussion of the consistency of plaintiffs' witnesses testimony, and somehow concludes that this is a "sign of perjury." *Doc. No. 417*, p. 25.  In doing so, defendant defames these pilots by name: Young, Hollander, Altman, Case and Day.  In a serious lack of candor to the Court, however, Counsel leaves out a sixth pilot who also testified consistently with plaintiffs' witnesses.  That pilot was David Singer – *defendant's own witness*. He, too, testified that Wilder was in St. Louis on April 2.  (Trial Transcript Volume 13, page 149, lines 8 through 14).

-5-

While defendant charges everyone with perjury, there is additional evidence that Wilder attended the April 2 meeting which defendant failed to disclose to the Court. Three ALPA witnesses who gave depositions, and attended the April 2 MEC meeting, testified that Wilder was there that day. These witnesses were Clay Warner, Michael Glanzer, and Steve Tumblin.[1] Copies of the relevant excerpts from these witnesses' depositions are attached as Group Exhibit A to the Declaration of Nicole M. Acchione.

In the face of this record, defendant accuses Press and Jacobson of suborning perjury. Counsel writes in this regard that the "only logical conclusion" is that Press and Jacobson counseled plaintiffs' witnesses to lie. He further claims it is "obvious that Plaintiffs' witnesses were improperly coached" to lie. *Doc. No. 417*, page 26. Counsel concludes his brief by claiming Press and Jacobson have "lost their moral compass." *Id.*, page 29.

There is not one morsel of evidence to support these outrageous claims. Rather it is Counsel who appears to have lost both his compass and his ability to engage in deductive reasoning, as he excludes the alternate possibility that Wilder was simply forgetful or mistaken, a simpler alternative favored by Occam's razor, a key rule in rational analysis. The complete lack of evidence supporting Counsel's accusations leads one to reasonably inquire whether defendant's motion is brought for some ulterior and improper purpose. While accusations that

---

[1]     . Defendant makes another wild insinuation about the fact that plaintiffs did not call TWA MEC Chairman Robert Pastore. Counsel writes this was "significant," as if Pastore would have refuted the other witnesses on this issue. *Doc. No. 417*, page 16. Far from significant, Pastore was not called because (a) he was not a decision-maker, (b) his main area of testimony concerned TWA's ability to stand-alone, an area the Court had largely excluded from the trial, and (c) the balance of his testimony would have been unnecessarily cumulative.

question the legitimacy of the jury's verdict advance the union's own political interest,[2] plaintiffs

do not need to establish a motive for the false accusations to prevail under Rule 11 – plaintiffs

merely need to show that the filing was unreasonable and without factual basis after a reasonable

inquiry.

      Whatever the purpose, defendant's claims were made without any concern for the truth,

or concern for the reputations of those that the defendant has recklessly defamed. Defendant's

motion is nothing but a baseless and malicious attack on Plaintiffs' counsel and witnesses that

should be punished with the imposition of an appropriate Rule 11 sanction. Other courts have

not hesitated to impose sanctions when faced with similar cases of lawyers recklessly accusing

other lawyers in court filings with ethical violations.

      In *Kemp v. Pfizer, Inc.,*152 F.R.D. 556 (E.D. Mich. 1993), plaintiffs' counsel in a product

liability case accused defendant's witnesses and lawyers of having committed perjury. The court

imposed sanctions on plaintiffs' counsel. Its reasoning could not be more fitting to this case:

> Plaintiffs' accusations of perjury and request for referral of this matter to state bar
> disciplinary committees are not well grounded in fact and are not warranted by existing
> law or even a good faith argument for extension or modification of existing law. ...
> Plaintiffs' counsel has attempted to turn reasonable legal disputes into an occasion to use
> the ugly accusation of "perjury" against six different individuals employed by defendants
> or acting as defense counsel. Furthermore, plaintiffs' request that this matter be referred
> to state bar disciplinary committees has no basis and is inflammatory. Plaintiffs' counsel
> has not even demonstrated one episode of misconduct on the part of any of the attorneys
> employed by defendants. Thus, mention of the state bar committees by plaintiffs' counsel
> was unnecessary, unreasonable, and extreme. Plaintiffs' claims that defendants "have
> been remarkably consistent in their complete disregard for ethical conduct" and that

---

[2]     The jury's verdict has been a hot topic of discussion on pilot blogs across the country.
ALPA's president has at least twice addressed ALPA's members concerning the verdict. This
comes while a group of Delta Airlines' pilots are seeking to have a representational election
among the 12,000 Delta pilots to decertify ALPA as their union, and while ALPA is engaged in a
contested campaign to organize the Jet Blue pilots.

defendants have made a "mockery of the civil justice system" go beyond the bounds of reasonable and professional commentary before this court. Accusations of "conspiracy," "fraud," and "witness tampering" do not serve the adjudication of this dispute.

*Kemp*, 152 F.R.D. at 561-62.[3]

The same conclusion was reached in *Bockman v. Lucky Stores, Inc.*, 108 F.R.D. 296 (E.D. Cal. 1985). In that case, defense counsel in a class action received an anonymous call from someone who claimed to be the former husband of one of the plaintiffs. The caller suggested he had evidence that could lead to class decertification. In response, and with no further inquiry, defense counsel moved to decertify the class and to disqualify plaintiffs' counsel. In doing so, defendant impugned the professional integrity of plaintiffs' counsel. The court sanctioned defense counsel under Rule 11, and in doing so reasoned:

> In so ruling, the Court is particularly mindful of the extreme gravity of the accusations leveled at plaintiffs' counsel in defense counsel's motion to decertify. A claim that a member of the Bar has so violated the ethics of his profession as to be removed from an action, should surely be preceded by the accuser's careful inquiry into the facts giving rise to the accusation. In opposition to this motion for sanctions, defense counsel has cited to this Court no steps whatsoever which were taken to verify the telephone accounts of the husband. The only information available to defense counsel prior to filing the motion was that the caller could not be encouraged during the week following the call to place his declarations in writing. Moreover, the inherent unreliability of a non-party making an accusatory telephone call to a former spouse's opposing counsel should have been carefully considered before filing a motion of this kind. ...

> Finally, and perhaps most telling, defense counsel argued in the motion to decertify that plaintiffs' counsel had, in fact, violated an ethical duty, when the facts then available warranted no such flat conclusion.

*Bockman*, 108 F.R.D. at 298.

Counsel's misconduct here is no different than the misconduct sanctioned in *Kemp* and

---

[3] The sanction order was vacated per the parties' stipulation upon settling the case. *Kemp*

-8-

*Bockman.*  And like the lawyers in those cases, who also made baseless claims of perjury and other ethical violations, defense counsel here should be sanctioned.

The sanction to be imposed is left to the sound discretion of the Court:

> Under Rule 11, the appropriate sanction is one which "is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Fed.R.Civ.P. 11(c)(2).*  "The sanctions may consist of, or include, directives of a nonmonetary nature, or an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.* Among the nonmonetary sanctions contemplated by the rule is to order the offending attorney to attend courses or other educational programs.  See, e.g., *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987); *Carlino*, 57 F.Supp.2d at 39; *Thomason v. Lehrer*, 182 F.R.D. 121, 131-32 (D. N.J.1998).

*Balthazar v. Atlantic City Medical Center*, 279 F.Supp.2d 574, 595 (D. N.J. 2003).

## III.   CONCLUSION

Plaintiffs request that Counsel be ordered to pay the reasonable attorneys' fees incurred in responding to defendant's motion to revoke *pro hac vice* admission and in bringing this motion, and that the Court impose such further sanctions as the Court deems proper.

Dated:  September 6, 2011             Respectfully submitted,

                                     **TRUJILLO RODRIGUEZ & RICHARDS, LLC**

                              By:    s/ Lisa J. Rodriguez
                                     Lisa J. Rodriguez
                                     Nicole M. Acchione
                                     258 Kings Highway East
                                     Haddonfield, NJ  08033
                                     (856) 795-9002

                                     **GREEN JACOBSON, P.C**
                                     Allen P. Press

*v. Pfizer, Inc.*, 964 F.Supp.2d 245 (E.D. Mich. 1997).

-9-

Joe Jacobson
Pierre Laclede Center, Suite 700
7733 Forsyth Boulevard
St. Louis, Missouri 63105
(314) 862-6800