UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PATRICK BRADY, *et al.,*                    )
                                            )
                    Plaintiffs,             )
                                            )
v.                                          )          Civil Action No.  02-2917 (JEI)
                                            )
AIR LINE PILOTS ASSOCIATION,                )
                                            )
                                            )
                    Defendant.              )
                                            )

---

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59 OR FOR DISMISSAL

---

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ 08033
(856) 795-9002

**GREEN JACOBSON, P.C.**
Martin M. Green
Joe Jacobson
Allen P. Press
Jonathan Andres
7733 Forsyth Boulevard
Suite 700 Pierre Laclede Center
St. Louis, Missouri 63105
(314) 862-6800

Dated:  September 12, 2011

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

LEGAL ARGUMENT............................................................................................2

    I.    The Court's Instructions Were Proper .................................................2

        A.  The Court's Instructions Accurately Stated the Law Defining Arbitrariness in a DFR Context. ...................................................3

        B.  Defendant Waived any Objection to the Inclusion of "Perfunctory or Superficial" in the Instruction.............................5

        C.  The Court's Instruction Concerning Bad Faith was Proper...........6

             1.  Acting with Hostility............................................................7

             2.  Making Misleading Statements.............................................7

             3.  Ignoring Union Policies. ......................................................8

             4.  Not Disclosing Conflicts of Interest. ...................................8

             5.  The Court's Instruction on Bad Faith Motive was an Accurate Statement of the Law.........................................9

        D.  The Court's Causation Instruction was Appropriate. ...................10

        E.  The Evidence Supports the Jury's Finding of Injury....................11

    II.   Jeffrey Brundage's Testimony Was Not Offered or Admissible..........12

    III.  Plaintiffs' Counsel Did Not Engage In Any Misconduct. ...................14

        A.    Extension of the 1113 hearing. ...............................................14

        B.    Funding provided by ALPA......................................................16

    C.    ALPA's Negotiating Assistance. ....................................................18

    IV.  Plaintiffs' Cross-Examination of Seth Rosen was Appropriate............18

    V.    The Court Did Not Engage In Any Misconduct. ..................................20

    VI.  ALPA's Seventh Amendment Rights Were Not Violated.....................22

CONCLUSION.....................................................................................................23

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Addington v. ALPA,*
  2009 U.S. Dist. LEXIS 61724 (D. Ariz. 2009)........................................................5, 9

*Aguinaga v. United Food's Committee Workers International Union,*
  993 F.2d 1463 (10th Cir. 1993) ...........................................................................4, 5,9

*Alicea v. Suffied Poultry, Inc.,*
  902 F.2d 125 (1st Cir. 1990) ..............................................................................6

*Anderson v. Union Paperworkers International Union,*
  641 F.2d 574 (8th Cir. 1981) ..............................................................................6

*Bautista v. Pan American World Airlines,*
  828 F.2d 546 (9th Cir. 1987) ..............................................................................6

*Bennett v. Local Union 66,*
  958 F.2d 1419 (7th Cir 1992) .............................................................................5

*Bensel v. Allied Pilots Association,*
  387 F.3d 298 (3d Cir. 2004)................................................................................4

*Bernard v. Air Line Pilots Assc.,*
  873 F. 2d 213, 216-217 (9th Cir. 1981) ..............................................................8

*Bissell v. United States,* 321
  Fed.Appx. 549, 552 (9th Cir. 2008)...................................................................12

*Blanche Road Corp. v. Bensalem Twp.,*
  57 F.3d 253 (3d Cir.1995)..................................................................................15

*In re Braen,*
  900 F.2d 621 (3d Cir. 1990)..................................................................................2

*Colegrove v. Cameron Machine Co.,*
  172 F. Supp. 2d 611 (W.D. Pa. 2001).................................................................16

*Crinkle v. Jeony,*
  73 F.3d 909, 915-916 (9th Cir 1995) ..................................................................5

*Curtis Publishing Co. v. Butts,*
  351 F.2d 702 (6th Cir. 1965) ..............................................................................17

*Duckett v. Godinez,*
   67 F.3d 734 (9th Cir. 1995) ...............................................................................20

*Fowler v. Local 624 Teamsters,*
   1992 U.S. App. LEXIS 15471 (9th Cir. June 29, 1992)..................................6

*James v. Continental,*
   424 F.2d 1064 (3d Cir. 1970)...........................................................................5

*Kremser v. Keithan,*
   56 F.R.D. 88 (M.D. Pa. 1972)..........................................................................1

*Lewis v. Tuscan Dairy Farms, Inc.,*
   25 F.3d 1138 (2d Cir. 1994)..........................................................................4, 9

*Limbach Co. v. Sheet Metal Workers International Association,*
   949 F.2d 1241 (3d Cir. 1991).......................................................................... 2

*O'Neill v. Airline Pilots Association,*
   939 F.2d 1199 (1991)....................................................................................3,4

*Olefins Trading, Inc. v. Han Yang Chemical Corp.,*
   9 F.3d 282 (3d Cir. 1993)................................................................................1

*Palmer v. Hoffman,*
   318 U.S. 109 (1943).........................................................................................1

*Polys v. Trans-Colorado Airlines, Inc.,*
   941 F.2d 1404 (10th Cir. 1991) .....................................................................12

*Rakestriw v. ALPA,*
   981 F.2d 1524 (7th Cir. 1992) .......................................................................10

*Rathemacher v. IBM Corp.,*
   1992 U.S. Dist. LEXIS 2618 (D.N.J. Feb. 28, 1992) ......................................1

*Matter of Rhone-Poulenc Rorer, Inc.,*
   51 F.3d 1293 (7th Cir. 1995) .........................................................................23

*Rivera v. Baccarat, Inc.,*
   10 F. Supp. 2d 318 (S.D. N.Y. 1998).............................................................17

*Rodriguez v. Banco Central Corp.,*
   990 F.2d 7 (1st Cir. 1993)..............................................................................13

*Shell v. Missouri Pacific R. Co.*,
   684 F.2d 537 (8th Cir. 1982) ...................................................................16

*Spellacy v. Airline Pilots Association International*,
   156 F.3d 120 (2d Cir. 1998)......................................................................6

*Springer v. Henry*,
   435 F.3d 268 (3d Cir. 2006).......................................................................1

*Stephenson v. State Farm Mutual Automobile Insurance*,
   2010 WL. 2605343 (N.D. Miss. 2010) ......................................................14

*Stryker Trauma, S.A. v. Synthes (USA)*,
   2007 U.S. Dist. LEXIS 47467 (D.N.J. June 29, 2007) .............................2, 8

*Ullman v. Starbucks Corp.*,
   152 F. Supp. 2d 322 (S.D. N.Y. 2001)............................................20, 21,22

*United States v. Scholl*,
   166 F.3d 964 (9th Cir. 1999), cert. denied, 528 U.S. 873 (1999)...............21

*Vaca v. Sipes*,
   386 U.S. 171, 191 (1967 ............................................................................5

*Warehouse Union Local 860 v. National Labor Relations Board*,
   652 F.2d 1022 (D.C. Cir. 1981) .................................................................6

## FEDERAL RULES

Fed. R. Civ. P. 51 .............................................................................................5

Fed. R. Civ. P. 61 .............................................................................................1

Fed.R.Evid. 103 ...............................................................................................13

Fed.R.Evid. 103(a)(2) .....................................................................................12

## PRELIMINARY STATEMENT

A motion for a new trial should only be granted when "refusal to take such action appears to the court inconsistent with substantial justice." *Rathemacher v. IBM Corp.*, 1992 U.S. Dist. LEXIS 2618, at *7 (D.N.J. Feb. 28, 1992) (citing Fed. R. Civ. P. 61). The "district court's power to grant a new trial is limited to those circumstances where a miscarriage of justice would result if the verdict were to stand." *Olefins Trading, Inc. v. Han Yang Chemical Corp.* 9 F.3d 282, 289 (3d Cir. 1993)(citation omitted). "A new trial should be granted only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006).

A new trial is not proper when a claimed error is harmless and did not affect the substantial rights of the parties. Only if an error is substantial and prejudicial should the court consider the error something other than harmless. *Kremser v. Keithan*, 56 F.R.D. 88, 92 (M.D. Pa. 1972). The burden of proving harmful error rests on the party moving for a new trial. *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943) ("He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.").

ALPA's motion for a new trial raises nineteen claims of error. Its arguments are wrong, several were not preserved, and none of the claimed errors support a conclusion that the jury's verdict was "inconsistent with substantial justice." The parties had a fair trial. ALPA is disappointed with the result, but the trial was fair and no legitimate basis for a new trial has been asserted. ALPA was allowed to try "its case," and there is nothing in its motion that would compel a new trial. The motion should be denied.

1

## LEGAL ARGUMENT

### I.     The Court's Instructions Were Proper.

A party seeking to alter a judgment based on erroneous jury instructions must establish

that: (1) it made a proper and timely objection to the jury instructions; (2) those instructions were

legally deficient; (3) the errors had prejudicial effect; and (4) it requested alternative instructions

that would have remedied the error. *Stryker Trauma, S.A. v. Synthes (USA)*, 2007 U.S. Dist.

LEXIS 47467, at *4 (D.N.J. June 29, 2007). "Failure to instruct the jury as requested does not

constitute error, so long as the instruction, taken as a whole, properly advises the jury of the

issues and the applicable law." *Id.* at 20. Errors in parts of a charge that "do not prejudice the

complaining party are not sufficient grounds on which to vacate a judgment and order a new

trial." *Id.* at *20-21.

Although a jury instruction must properly apprise the jury of the law, such an analysis is

conducted of the jury instructions as a *whole*. *Limbach Co. v. Sheet Metal Workers Int'l Ass'n*,

949 F.2d 1241, 1259 n. 15 (3d Cir. 1991) (en banc) (citing *Link v. Mercedes-Benz of North*

*America, Inc.*, 788 F.2d 918, 922 (3d Cir. 1986)(emphasis added)). "When interpreting jury

instructions, the reviewing court considers the totality of the instructions and not a particular

sentence or paragraph in isolation." *Limbach*, 949 F.2d at 1259, n. 15 (citing *In re Braen*, 900

F.2d 621, 626 (3d Cir. 1990). Harmless errors in parts of a jury charge that do not prejudice the

complaining party are not sufficient grounds on which to vacate a judgment and order a new

trial." *Armstrong v. Burdette Tomlin memorial Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)(citing

*Watson v. S.E. Penn. Transp. Auth.*, 207 F.3d 207, 221-22 (3d Cir. 2000)).

In challenging the Court's jury instructions, ALPA turns the relevant duty of fair

representation ("DFR") law on its head, proposing a standard that would insulate a union from

all but the most egregious behavior. Here, ALPA breached its duty of fair representation to the TWA pilots when it intentionally subordinated their interests to those of the American pilots. ALPA acted in bad faith and arbitrarily by failing to take various actions on behalf of its TWA pilot members, and interfering with the TWA pilots' own effort to establish a fair integration policy for the purpose of enticing the American pilots to rejoin ALPA. ALPA's conflict of interest infected its entire representation of the TWA pilots and directly led to a myriad of arbitrary decisions, made with an improper motive, by ALPA.

The Court's instructions accurately informed the jury of the law it was to apply when deciding whether ALPA breached its duty of fair representation to its members, and allowed a permissible verdict.

### A. The Court's Instructions Accurately Stated the Law Defining Arbitrariness in a DFR Context.

ALPA takes issue with the Court's Instruction 15 which provides "a union's conduct is arbitrary if, looking at all the evidence presented, it is so far outside a wide range of reasonableness that it is irrational. A union acts arbitrarily when it makes decisions based on considerations that are not legitimate union objectives. Examples of arbitrary conduct include things like acting in a perfunctory or superficial manner."

ALPA argues this instruction was erroneous because the Court omitted the word "wholly" before irrational, ALPA contends that a union is insulated from liability if there is <u>any</u> basis for arguing its actions were appropriate. This is not the law.

ALPA cites *O'Neill v. Airline Pilots Ass'n,* 939 F.2d 1199 (2d Cir. 1991), as support for its position. The Court in *O'Neill* reversed a finding that the union had breached its duty of fair representation where it turned out, in retrospect, that the union had agreed to a bad settlement. *O'Neill,* 499 U.S. at 79. Unlike *O'Neill,* the breach of the duty of fair representation in this case

does not follow from employee dissatisfaction with the end product of contract negotiations with the employer and does not require hindsight to take issue with ALPA's actions. Rather, ALPA tainted the integration process and deprived the TWA pilots of all effective means of protecting their interests. The Third Circuit has already held in this case that proof of this kind would support liability. "If Appellants prove their allegations that ALPA failed to take specific actions on behalf of its members for an improper purpose or in bad faith, they may obtain relief..." *Bensel v. Allied Pilots Ass'n*, 387 F. 3d 298, 311 (3d Cir. 2004). *See also Lewis v. Tuscan Dairy Farms, Inc.*, 25 F. 3d 1138, 1142 (2d Cir. 1994)(distinguishing *O'Neill*); *Aguinaga v. United Food's Comm Workers Int'l Union* 993 F.2d 1463, 1471 (10th Cir. 1993).

The Court in *Lewis* rejected a similar argument by the union. The union in *Lewis* claimed a rational legitimate basis for its actions and that that basis should be accorded deference. The Second Circuit upheld the trial court determination that the union had breached its duty of fair representation, distinguishing *O'Neill*. The court held that even if the union had practical reasons for the agreement it entered into with the employer, that alone would not insulate the union from liability. 25 F.3d at 1142.

*Aguinaga* has some factual similarities to this case, in that the union there also sought to obtain status as a bargaining representative for a different group of employees. The court rejected the union's argument that it was entitled to deference as counseled in *O'Neill*. The court held that a union is to be accorded deference only if the union's motives were proper. 993 F.2d at 1471. The court continued that where union members present evidence that the union had ulterior motives in sacrificing the members' rights and in concealing its activities, there was sufficient evidence for a jury to find a breach of the duty of fair representation. *Id.; see also*

*Bennett v. Local Union 66,* 958 F.2d 1419, 1438 (7th Cir 1992), *Crinkle v. Jeony*, 73F.3d 909, 915-916 (9th Cir 1995), *Addington v. ALPA* 2009 U.S. Dist. LEXIS 61724 (D. Ariz. 2009).

Here, The Court instructed the jury that ALPA's actions required deference and that the jury could find ALPA acted arbitrarily only if its actions were "so far outside a wide range of reasonableness that its is irrational." Inclusion of the word wholly, as urged by ALPA would be a misstatement of the applicable law.

### B. Defendant Waived any Objection to the Inclusion of "Perfunctory or Superficial" in the Instruction.

A jury instruction conference, during which the court informs the parties of its proposed jury instructions, is mandated by the Federal Rules. *See* Fed. R. Civ. 51 (b)(1). Also mandated by the Rules is the need to object to an instruction or the failure to give an instruction on the record, distinctly stating the matter objected to and the grounds for the objection. Fed. R. Civ. P. 51 (c)(1).

ALPA takes issue with the last sentence of Instruction 15, which states: "examples of arbitrary conduct include things like acting in a perfunctory or superficial manner." ALPA, however, failed to object to that language. *See Tr. Vol. 17*, 121: 24. Its objection is therefore waived. ALPA nevertheless argues that the Court should have provided the instruction that ALPA requested. Suggesting an alternative instruction, however, does not constitutes an objection to the instruction used. A party has no vested interest in any particular form of instruction, the language of the instruction is for the trial court to determine. *James v. Continental*, 424 F. 2d 1064, 1065 (3d Cir. 1970). Instruction 15 was appropriate and does not support a basis for granting a new trial. Further, the complained of language was a correct statement of the law. *Vaca v. Sipes*, 386 U.S. 171, 191 (1967).

### C. The Court's Instruction Concerning Bad Faith was Proper.

ALPA's objection to Instruction 16 is a further attempt to relitigate issues concerning the standard to be applied when finding a DFR based on bad faith. The Court previously addressed the issues in denying ALPA's summary judgment motion, and ALPA has not established that the instruction given was legally erroneous or prejudicial.

Federal courts have recognized that a union's misleading conduct toward its members may serve as a basis for DFR claims. *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)("A union acts in bad faith when it acts with an improper intent, purpose, or motive... Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct."); *Fowler v. Local 624 Teamsters*, 1992 U.S. App. LEXIS 15471 (9th Cir. June 29, 1992) (finding that union breached its duty of fair representation when it made false assurances that medical insurance would cover member's family's psychotherapy sessions); *Alicea v. Suffied Poultry, Inc.*, 902 F.2d 125 (1st Cir. 1990); *Bautista v. Pan American World Airlines*, 828 F.2d 546, 550 (9th Cir. 1987) ("intentionally misleading statements by union officials of a newly negotiated agreement, can supply the bad faith necessary for DFR violation."); *Anderson v. Union Paperworkers Int'l Union*, 641 F.2d 574, 577 (8th Cir. 1981) ("the duty of fair representation includes a duty to communicate honestly with employees..."); *Warehouse Union Local 860 v. National Labor Relations Board*, 652 F.2d 1022 (D.C. Cir. 1981).

ALPA argues reversal of the jury verdict is required because the Court failed to apply a purported bad faith standard articulated in *Deboles*. It further argues a failure of "guidance" in the application of the appropriate "bad faith" instructions. ALPA's reliance on *Deboles* is misplaced and its objection to the lack of guidance offered by the instructions is waived, as it was not an issue raised during the charge conference.

The examples of bad faith in Instruction 16 are supported by applicable case law and are not "legally deficient." ALPA's argument seems to be that because the examples given are consistent with evidence in the case the instructions become suggestive. *See Tr. Vol. 17*, at 137:10-15. Defendant offers no support for this proposition. Additionally, this argument is directly contrary to a later argument that the portion of the instruction addressing "Ignoring Union Policies" was inappropriate because it claimed no evidence was introduced on the issue. *See* Def.'s Mem., p. 11.

### 1. Acting with Hostility.

ALPA argues that without proper guidance by the Court on what would satisfy the bad faith standard "a jury could understandably conclude that plaintiffs could establish that ALPA acted with hostility towards union members merely by evidence that ALPA National representatives used a raised voice in talking to them." This total speculation on the part of ALPA of what a jury could conclude fails in all respects to support a basis for altering the jury verdict. First ALPA did not object during the charge conference that the instruction failed to provide guidance. Secondly, it has not argued that the charge had a prejudicial effect. ALPA merely speculates that it could have an effect on a jury, not even this jury, that heard five weeks of specific testimony dealing with ALPA's bad faith. Finally, ALPA fails to point to alternative instructions that would have remedied the error.

### 2.   Making Misleading Statements.

ALPA continues with its argument on what a jury possibly could rely on, without any support to the record, but relying on *Deboles*. *Deboles*, however, is factually distinguishable from this case in that there the court found that the union's misrepresentation did not cause an injury. The case does not proport to define those situations when a misleading statement can

7

form the basis of a DFR.  Under the facts in *Deboles,* the court first found that the misrepresentation by that union did not cause the injury of which the plaintiffs complained. Notwithstanding that finding, however, the court sought to impose DFR liability on the union for the misrepresentation, standing alone.  Here, there was a specific finding by the jury that there was a breach of the duty of fair representation and that the breach caused injury to TWA pilots. *Deboles* is simply not applicable.

### 3.  Ignoring Union Policies.

The analysis of the jury instruction must be taken as a whole, but ALPA continues with its attempt to parse the jury instructions into minute sections.  ALPA's objection during the charge conference to that portion of Instruction 16, citing the union's violation of its policies as an example of bad faith, was that the instruction was not supported by the evidence.  *Tr. Vol. 17,* 136:24-25.  In response to that objection, Mr. Press set forth the evidence that showed various instances where ALPA did ignore its policies.  *Tr. Vol. 17,* 138:1-13.  There was no further objection to this language or any suggested additional or different language presented.  ALPA's objection is thus waived.  Further, the instruction was a proper statement of the law.  *Bernard v. Air Line Pilots Assc.,* 873 F. 2d 213, 216-217 (9th Cir. 1981).

### 4.  Not Disclosing Conflicts of Interest.

As with many of its other objections, ALPA did not meet the standard for challenging a jury instruction.  Additionally, ALPA raises a second new argument that the Court's jury instructions somehow suggest a more exacting DFR standard was to be applied in this case.  That is a fanciful argument based on a misreading of *O'Neill.*  The deferential standard announced in *O'Neill* was based on a set of facts which showed that in retrospect, the union's decision was a

bad one. In those circumstances it is appropriate to be deferential to avoid the attempt to Monday morning quarterback.

*O'Neill's* progeny make clear that the standard is different when the union's actions were the result of an improper motive. *Lewis* 25 F.3d at 1143 (no range of reasonableness can encompass such conduct by a union), *Aguinaga* 993 F. 2d at 1471 (deference counseled in *O'Neill* only appropriate insofar as the union's motive was proper.) Thus this Instruction is consistent with relevant DFR case law.

### 5.  The Court's Instruction on Bad Faith Motive was an Accurate Statement of the Law.

ALPA continues with its argument, unsupported by law, that it is somehow insulated from liability unless plaintiffs prove that its bad faith was the sole motive for its actions. This argument misstates the law. To attempt to impose upon Plaintiffs a burden of proving that there was <u>no</u> possible proper motive to explain ALPA's actions is nonsensical, particularly in light of ALPA's conflict of interest.

In *Aguinaga,* the court found the union had breached its duty of fair representation when it bartered away the plaintiffs' means of protecting themselves and left the plaintiffs without representation. 993 F.2d at 1471. Such action standing alone is sufficient to establish DFR liability.

In *Lewis*, the court found that even if the union did have a practical justification for the agreement it entered into, this justification did not insulate the union from liability. 25 F.3d at 1142.

The cases cited by Defendants do not stand for the proposition that the suggestion of rational motive can insulate a defendant from a DFR violation. The Court in *Addington v. Bradford*, 2009 U.S. Dist. LEXIS 61724 at *39 (D. Ariz. 2009) recognized that union liability

for bad faith requires a subjective examination of the union's actual motives and purposes. The court, citing to *Rakestraw v. ALPA*, 981 F.2d 1524 (7th Cir. 1992), rejected a rule that would validate all union conduct that could be rationally related to legitimate union objections regardless of actual motive. *Id.* at *44.

The Court's instruction on bad faith motive was appropriate.

### D. The Court's Causation Instruction was Appropriate.

ALPA did not object to the causation portion of Instruction 13. That objection is thus waived. The objections ALPA did lodge to Instruction 13 were addressed by the Court and the instruction was modified as a result. The Court's initial Instruction 13 equated a duty of fair representation as to a duty of undivided loyalty. ALPA raised its objection to this language, and the language was removed. *See Tr. Vol. 17*, p. 104:1-11-114:1-15.

ALPA raised no objection to the causation portion of the instruction. In fact, Plaintiffs objected to inclusion of the causation portion of this instruction because the case was bifurcated at ALPA's request. Its motion, which was granted by the Court, sought to have the first stage of the litigation address only whether ALPA had breached its duty of fair representation. It was only at the Final Pretrial Conference that ALPA attempted to introduce causation into this phase of the case. Plaintiffs objected to this late change by ALPA as they believed any showing of injury was appropriately left to the damages phase of the litigation. That objection to the instruction was rejected by the Court in an earlier conference and the causation portion added to Instruction 13.

Notwithstanding its failure to object to the causation instruction that it sought, ALPA now maintains that the instruction allowed the jury to speculate whether there were damages. ALPA cites Plaintiffs' closing arguments as support that the instruction allowed the jury to

10

"speculate." ALPA cites no case for its claim that the instruction somehow became deficient as a result of closing argument. Further, the jury is permitted to make reasonable inferences from the evidence presented. There was no necessity for the jury to "speculate" and, to the contrary, their decision was based on the evidence they heard.

ALPA argues the Court should have given an instruction requiring Plaintiffs prove that actual harm was caused by ALPA's breach. Such an instruction fails to recognize that the damages were left to the second phase of the litigation. There has been no discovery on the "actual harm" caused to the TWA pilots by ALPA's breach of its duty of fair representation, and to require such a showing would have unfairly prejudiced Plaintiffs. The jury found, consistent with the evidence, that ALPA's DFR violation caused injury to TWA Pilots. The damages phase will address the actual harm caused, and to have instructed on that earlier would have been in error.

### E.    The Evidence Supports the Jury's Finding of Injury

There is no dispute that Supplement CC resulted in the stapling of over 1200 TWA pilots. Those pilots were then furloughed. There was also undisputed testimony by TWA pilots who were demoted from a Captain to a First Officer and/or from a larger plane to a smaller plane as a result of the seniority integration. This undisputed testimony satisfies the "injury in fact" prong that ALPA claims Plaintiffs are required to establish during this phase of the trial. Those pilots suffered monetary damages stemming form their demotion, whether it be from Captain to First Officer or from First Officer to having no job at all.

Further, both Captain Day and Ronald Wilder testified that a better deal could have been achieved if ALPA had provided the support they requested. Certainly at the liability trial Plaintiffs are required to establish no more than a better deal could have been achieved, and are

11

not required to recreate what a fair and reasonable seniority integration would have looked like.

The complexities of such a seniority integration is purportedly the reason ALPA moved for

bifurcation in the first place.

## II.    Jeffrey Brundage's Testimony Was Not Offered or Admissible.

ALPA argues that the Court erroneously excluded the deposition testimony of Jeffrey

Brundage. This argument fails for two reasons. First, the alleged error was not preserved.

Second, the testimony by and large consisted of an inadmissible nonresponsive narrative from

the witness. It is well settled that "[e]rror may not be predicated on a ruling ... excluding

evidence [unless] the substance of the evidence was made known to the court by offer ...."

*Fed.R.Evid. 103(a)(2)*. The offer is required "so that the trial judge can reconsider ... while there

is still time to remedy the situation." *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404,

1407, n. 1 (10th Cir. 1991). In the context of a deposition, the offering party is required to offer

the testimony "as evidence during trial." *Bissell v. United States,* 321 Fed.Appx. 549, 552 (9th

Cir. 2008). ALPA never did this with respect to Brundage's deposition.

At the conclusion of the proceedings on June 22, 2011, ALPA submitted a color-coded

copy of Brundage's deposition for the Court's review. The following morning, the Court held a

conference off the record at which the Court expressed problems it found with Brundage's

testimony. The Court then took the bench and summarized his views for the record:

> [Brundage] was very much an out of control witness, in the sense that you ask a question,
> he would launch into a three page answer.

> [I]n many cases, he gave answers that took up two pages of transcript, that often, usually,
> launched into areas that had nothing to do with the question that was being asked.

> [Even when he was being led he would go off. So we have, we talked about this, we did
> that, we did this. You know, their position with this. But you have no idea, you know,
> who was talking to whom, where it was, who was present, what was said.

After making these observations, the Court noted that ALPA's counsel, "said he was going to go back and look at this and, you know, see if he can work something up, narrow what is being offered, et cetera. But right now I am not going to let this be played in this form." *Tr. Vol. 10,* pp. 3-4.

This was the last word on the subject of Brundage's deposition. ALPA did not follow-up on its commitment to narrow what it had initially designated, and no part of the transcript was ever identified for the record and offered in evidence. Without a formal offer of proof as required by Fed.R.Evid. 103, ALPA failed to preserve any alleged error concerning the Brundage testimony.

Even if properly offered and preserved, however, the testimony would have been properly excluded. In this regard, ALPA ignores the basis for the Court's remarks concerning the testimony. ALPA argues in its motion that the testimony should have been admitted because it was relevant. Plaintiffs' objections, however, did not go to relevance. They were "hearsay, speculation, improper narrative and non-responsive" – the same problems the Court expressed with the testimony. ALPA's assertion of relevance is simply not responsive to the reasons why the testimony was properly excluded.

"Trial judges are constantly making judgments about the use of leading questions, the need to clarify witness answers, and similar matters of trial management. In this realm the widest possible latitude is given to the judge on the scene." *Rodriguez v. Banco Cent. Corp.,* 990 F.2d 7, 12 (1st Cir. 1993). "The remedy where an irresponsive or improper answer is given to a proper question is a motion to strike out the answer. ... If a witness gives an irresponsive answer the court may exclude the answer from the consideration of the jury. If the answer is only partially irresponsive, that part may be excluded." *Federal Trial Handbook Civil,* § 36.10 (4th

ed.). A court thus may exclude deposition testimony not responsive to the answer posed at the deposition. *See Stephenson v. State Farm Mut. Auto. Ins.,* 2010 WL 2605343 (N.D. Miss. 2010).

The Court accurately characterized Mr. Brundage's testimony. He was an "out of control" witness whose testimony by and large consisted of nonresponsive narrative speeches. The Court gave ALPA the opportunity to narrow its designations, but ALPA whether for some strategic reason or from simple neglect, failed to do so. Indeed, ALPA did not even formally offer any of the testimony. It thus can not now be heard to argue the Court should have *sua sponte* admitted the testimony.

### III. Plaintiffs' Counsel Did Not Engage In Any Misconduct.

ALPA's motion for a new trial makes the same frivolous and defamatory argument made in its motion to revoke the *pro hac vice* admissions of Allen Press and Joe Jacobson; *i.e.* that Press and Jacobson orchestrated and carried-out a grand conspiracy to commit perjury. The allegation, however, is completely baseless. There was no false testimony from the Plaintiffs, and Press and Jacobson did not knowingly offer false testimony. There is nothing to support its outrageous allegation. Plaintiffs thus asked ALPA to withdraw its frivolous motion. ALPA refused, and Plaintiffs then moved for Rule 11 sanctions. *See* Doc. No. 443. Plaintiffs incorporate the arguments in support of that motion as if fully restated herein.

ALPA makes the additional argument that a new trial should be granted because Press mischaracterized the evidence in three respects in his closing argument. These are taken up separately.

### A. Extension of the 1113 hearing.

In his closing, Press said that Richard Seltzer had testified that the right to an extension of an 1113 hearing was "automatic." This was a mistake, albeit an honest one, but it did not

prejudice ALPA. A lawyer's misstatement of the evidence or law requires a new trial only when the misstatement "made it reasonably probable that the verdict was influenced by prejudicial statements." *Blanche Road Corp. v. Bensalem Twp.*, 57 F.3d 253, 264 (3d Cir.1995). No such conclusion can be reached here for Press' single word mistake.

Seltzer did not use the word "automatic" in his less-than-clear description of a party's right to extend an 1113 hearing. Interestingly, however, ALPA mischaracterizes his actual testimony in this regard. ALPA states that "Mr. Seltzer testified 'the statute instructed the Judge not to extend the start of the hearing unless the company agreed.'" *Doc. No. 416*, page 30. This statement implies that Seltzer testified that the company's consent is required in *all* cases. This is not what Seltzer said. Seltzer testified:

> the Court will schedule the hearing no later than two weeks after the motion is filed. And the Court, for it says something like special circumstances or the circumstances of the case, can extend it one week, and that is all. The hearing has to start 21 days after the motion is filed. No later than that. Unless the company agrees.

*Tr. Vol. 16,* 120: 23 - 121:4. Seltzer did not say the company had to agree to the first extension, as ALPA implies in its brief. His actual testimony, when viewed in the context of Press' over-all argument, shows that ALPA could not have been prejudiced by Press' reference to an "automatic" extension.

Press made the statement about postponing the 1113 hearing in the context of questioning ALPA's excuse as to why it would not allow a membership ratification vote of the scope waiver issue. The ALPA advisors told the MEC the "train is leaving the station" – there is no time for a vote. *Tr. Vol. 16*, 145:4-25. Contrary to these statements, there was a vehicle to obtain more time. And although it may not have been "automatic," according to Mr. Seltzer, the bankruptcy judge "can" extend the hearing date for one week under "special circumstances." And this was the point of Press' argument. Membership ratification of such an important issue was a

circumstance that would have supported a request by ALPA for an extension, had it been supportive of the TWA pilots desire to have a ratification vote.

Press' mistaken reference to an "automatic" right to an extension did not prejudice ALPA. This is especially evident in light of the Court's instructions to the jury "that arguments of counsel are not evidence," *Jury Charge*, § 6, and "your recollection [ ] should control during your deliberations and not the statements of ... counsel," *Jury Charge*, § 8. ALPA provides no basis to conclude that the jury ignored these instructions. It is ALPA's burden to show that the jury did not follow the instructions. *See Shell v. Missouri Pacific R. Co.*, 684 F.2d 537, 542 (8th Cir. 1982) (motion for new trial properly denied where the movant "presents no basis for this court to assume that the jury did not follow [instructions similar to this Court's charges concerning argument of counsel"). Even where counsel mischaracterizes the evidence and the law, there must be some basis to conclude the jury in fact ignored the Court's instructions in order to grant a new trial:

> [Defendant] claims that [plaintiff's] counsel mischaracterized the defense evidence and incorrectly stated Pennsylvania law. [Defendant] does not explain, however, how there is a reasonable probability that the jury was influenced by [plaintiff's] counsel's comment. When my jury charge is considered as a whole, it becomes all the less probable that any harm was created by the prejudicial statement here. I made it clear to the jury members that they should consider only my instructions on the relevant law and not any characterizations by counsel.

*Colegrove v. Cameron Machine Co.* 172 F.Supp.2d 611, 633 (W.D. Pa. 2001).   Press's singular reference to an "automatic" right to an extension of the 1113 hearing is no ground to grant a new trial.

**B.    Funding provided by ALPA.**

ALPA complains of Press's statement that ALPA denied the TWA pilots' requests for funding "every time my guys asked for money." ALPA points to its payments of MEC flight

16

pay loss and operating expenses as evidence that Press improperly mischaracterized the evidence. This, however, mischaracterizes Press's argument.

The argument about funding was expressly limited to ALPA's rejections of the TWA pilots' request for supplemental funding. Press first read from the ALPA Merger Policy's "Statement of Intent:"

> nothing in this policy restricts the MEC chairman of such a group [a pilot group faced with a merger with a larger non-ALPA carrier] from petitioning the president for supplemental funding to allow proper representation.

After reading this policy statement, Press then made the statement ALPA complains about. He said:

> ALPA policy anticipates that in the situation my clients were faced with, that they get a request for more money. That is the statement of intent. And every time my guys asked ALPA for money. What was the answer? No.

*Tr. Vol. 18*, 150: 8-14. Press then referred to ALPA's denial of the two specific requests for supplemental funding mentioned in the evidence – the MEC's request for funding to hire an independent lawyer, and its request for money from ALPA's "war chest," the "major contingency fund." *Id.*, 150-52.

There was nothing improper by this argument. And even if there was, ALPA did not preserve the issue. "It is an elementary principle of federal law that a new trial will not be granted where a party seeks to raise for the first time, on a motion for a new trial, (the objection) that opposing counsel was guilty of misconduct in his argument to the jury, where such conduct was not excepted to during the trial." *Curtis Publishing Co. v. Butts,* 351 F.2d 702, 714 (6th Cir. 1965). *See also Rivera v. Baccarat, Inc.,* 10 F.Supp.2d 318, 326 (S.D. N.Y. 1998) ("[Counsel's inaccurate statements in closing] generally concerned collateral matters, and in none of these instances did [defendant's] counsel object.").

ALPA did not object during closing argument to the statement it now claims requires a new trial. Instead, it has post trial scoured the record for things about which to complain. Having no good argument, ALPA's thrown together the baseless connection that Press mischaracterized the evidence in his closing. The argument should be rejected.

### C. ALPA's Negotiating Assistance.

Similar to its complaint about funding, ALPA takes statements out of context to weave its argument that Press misstated the evidence regarding ALPA's negotiating assistance. And here again, it made no timely objection to any of the argument it now claims misstated the evidence. The issue was not preserved, and thus ALPA's argument should be rejected. Regardless, the complained about argument was proper.

Press' argument concerning negotiating assistance was directed at three specific negotiating standards established by ALPA, and its failure to meet any of them:

> 1. ALPA violated its written policy on "Crisis and Concessionary" negotiations which required that such negotiations be "coordinated" by the president's office, *Tr. Vol. 18*, 146:7-25;
>
> 2. ALPA violated its written policy on seniority negotiations with a non-ALPA carrier which required the president to take "reasonable steps" to assure a procedure that will achieve a "fair and equitable" integration, *Tr. Vol. 18*, 148:12 - 149:17; and
>
> 3. ALPA did not meet its public representations concerning negotiating assistance that the "bigger the stakes, the more experienced person we have, the more season veteran on the team," *Tr. Vol. 18*, 147:8 - 148:5.

The statements complained of by ALPA were all made in this context, and Press did not mischaracterize the evidence in this regard.

### IV. Plaintiffs' Cross-Examination of Seth Rosen was Appropriate.

The issue of denying jump seat privileges was a substantial issue in Plaintiffs' case against ALPA. Mike Day, a member of the merger committee testified at length that he and his

committee were focused in trying to obtain leverage to be used in its contract negotiations with ALPA. Mr. Day testified that he and others had ideas to try and gain leverage but that those ideas were consistently rejected. One specific idea that Mr. Day presented to Duane Woerth was the withholding of jump seat privileges. Mr. Day's testimony was that Duane Woerth told him that ALPA never engaged in suspending jump seat privileges. Duane Woerth confirmed this during cross-examination, proclaiming that to engage in a "jump seat war" was against ALPA policy and never done. This was an untrue statement. ALPA did suspend jump seat privileges to Continental pilots who crossed the picket line during an ALPA sanctioned strike.

This line of testimony was appropriate in judging Duane Woerth's credibility on the issue of the denial of jump seat privileges to generate leverage for the TWA pilots.

Rosen's admission concerning ALPA's scab list came at the conclusion of a lengthy series of questions which led to it. ALPA did not object to any of those questions, or the ultimate question producing the admission. *Tr. Vol.* 16, pp. 50-54. A party who fails to object to errors at trial "waives the right to complain about them following trial." *See Matsushita Elec. Indus. Co.*, 2006 WL 3193982, at *15.

ALPA not only waived its objection to the evidence, its untimely complaint has no merit. The evidence of ALPA's scab list was highly relevant.

ALPA's witnesses testified that it rejected the TWA pilots' request to engage the American pilots in a cockpit jump seat war because its jump seat policy prevented pilots from denying use of the jump seat for "political" or other purposes. The evidence, however, was that ALPA pilots were expected to keep scabs out of their jump seats, and the scab list was prepared and distributed to all ALPA members to identify these unwelcomed pilots. The evidence of the

scab list thus refuted the false notion advanced by ALPA that it did not deny use of jump seats for political or other purposes.

## V.     The Court Did Not Engage In Any Misconduct.

As if its unjustified attack on counsel were not enough, ALPA also unjustifiably charges the Court with misconduct. It claims the Court's comments and questioning during Seth Rosen's direct examination require a new trial because they suggested to the jury that the Court thought ALPA's witnesses and counsel were lying. ALPA's slur has no merit.

"[T]he standard for a new trial based on judicial misconduct is extremely high, and the moving party must demonstrate that 'the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality.'" *Ullman v. Starbucks Corp.*, 152 F.Supp.2d 322, 326 (S.D. N.Y. 2001), quoting *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). ALPA's motion does not meet this high standard.

ALPA first complains about a comment the Court made to Fram that he had misstated facts. The Court made this statement, but it was a true statement. Furthermore, ALPA asked for, and was granted a curative instruction that was read to the jury shortly after the comment was made. The Court's comments thus can not be the basis for any further relief.

ALPA then charges the Court with having "essentially advised the jury ... that ALPA *was* involved in organizing the American pilots and that ALPA's witnesses, and its counsel were lying in suggesting otherwise." This is an absurd charge. All the Court said was this: "That is unclear. That is your take. I am not sure the evidence doesn't support another inference on that. ... The jury will decide that. That is what we have them here for." *ALPA's Brief*, Doc. No. 416, page 38.

The testimony proceeded, and ALPA charges the Court with having then interrupted to "suggest [in its questions] that ALPA made the cards 'disappear' in order to conceal evidence of its involvement in the card campaign." The Court's exchange with Rosen made no such suggestion. The Court merely established that Rosen lacked any knowledge concerning the cards and their disappearance. *ALPA's Brief*, Doc. No. 416, pages 38-40. This was proper. "'A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition.'" *Ullman*, 152 F.Supp.2d at 327, quoting *United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999), *cert. denied*, 528 U.S. 873 (1999).

The testimony proceeded, and the Court intervened again when Fram twice posed questions that were designed to have Rosen offer self-serving conjecture that ALPA did not print the cards distributed to the American pilots. ALPA claims the Court's questioning in this regard emphasized the Court's "conclusion ... that ALPA was involved in the card campaign and that it had destroyed the cards to cover-up its wrongful conduct." This is not true. All the Court did was to clarify Mr. Rosen's previously stated lack of knowledge concerning the cards, and prevent defense counsel from using mis-leading questions from suggesting to the jury otherwise. *ALPA's Brief*, Doc. No. 416, pages 40-41.

ALPA's final charge of misconduct against the Court is that it intentionally embarrassed Rosen by asking him if he was aware that ALPA officials had offered to reimburse Clark and Hunnibell their campaign expenses; and when Mr. Rosen denied such knowledge, asking him if he would be surprised if that happened. *ALPA's Brief*, Doc. No. 416, pages 41-42. ALPA does not explain how this brief exchange embarrassed Mr. Rosen. Nor does ALPA explain how Rosen's putative embarrassment materially prejudiced ALPA's case. The Court merely assisted

21

in the orderly presentation of the evidence on cross-examination concerning ALPA's offers to reimburse Clark and Hunnibell.

Contrary to ALPA's harsh assertions, the Court's comments and questions of Rosen were appropriate in all respects. They do not reflect any actual or implied bias against ALPA. "Rather, they were nothing more than the Court's attempts to ensure the smooth running of the trial and the complete development of the facts for the jury's consideration." *Ullman*, 152 F.Supp.2d at 328. Indeed, the Court was as tough on plaintiffs' witnesses as it was on ALPA's. Furthermore, the Court's final charge to the jury contained multiple instructions to the effect that nothing the Court said or did should be taken as indicating its views on the merits of the case. *Final Jury Charge*, Sections 1 and 19. ALPA has presented no evidence to indicate the jury disregarded these instructions.

## VI.   ALPA's Seventh Amendment Rights Were Not Violated.

ALPA requested the case be bifurcated such that the first jury would decide liability, and that causation and damages be determined later. Immediately before trial, ALPA attempted to sandbag plaintiffs by insisting that plaintiffs also prove "injury in fact" in the first phase of the trial. The Court acceded to ALPA's effort to change the rules of the game. Now, having lost despite its sharp play, ALPA now contends that the Court's adaptation of the procedures demanded by ALPA violates ALPA's right to a jury trial. ALPA should not be allowed to assert error on the basis that it was granted the procedural relief it requested.

ALPA claims the second, damages jury will need to reexamine the liability and causation issues determined by the first jury. Not true, but even if it were, this 'problem' was one created by ALPA when it moved the point of bifurcation from the issue of liability) to the issues of

liability and injury in fact. *See Matter of Rhone-Poulenc Rorer, Inc.,* 51 F.3d 1293, 1302 (7th Cir. 1995) (in bifurcating a case, "the district judge must carve at the joint.").

In any case, ALPA is incorrect in stating that the second jury must redecide issues resolved by the first. The first jury decided two issues: (1) that ALPA breached its duty of fair representation to all of the TWA pilots, and (2) that this breach injured at least "some" of the TWA pilots. The second jury will have to decide two different issues: (1) which TWA pilots were injured, and (2) to what extent.

The issues tried in each phase are different. With proper instructions, the second jury will not reexamine either of the two issues determined by the first jury. In any case, the risk of prejudice if the second jury reexamines liability falls squarely on the plaintiffs, not ALPA. ALPA lost the first trial on liability and causation. If the second jury reexamines any of these issues, ALPA can do no worse than it already has, and plaintiffs face the risk that ALPA may do better.

ALPA is not prejudiced by the situation it demanded, and the granting of ALPA's bifurcation request does not provide ALPA with any basis for a new trial.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion for a New Trial should be denied.

Dated:  September 12, 2011          Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By:   s/ Lisa J. Rodriguez
      Lisa J. Rodriguez
      Nicole M. Acchione
      258 Kings Highway East
      Haddonfield, NJ  08033
      (856) 795-9002

23

GREEN JACOBSON, P.C
Martin M. Green
Joe Jacobson
Allen P. Press
Jonathan Andres
Pierre Laclede Center, Suite 700
7733 Forsyth Boulevard
St. Louis, Missouri 63105
(314) 862-6800