```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
 2

 3  _____

    PATRICK BRADY, et als.,
 4
                    Plaintiffs,
 5
        vs.                        CIVIL ACTION NO. 02-2917 (JEI)
 6
                                   MOTION TO REVOKE
 7                                 PRO HAC VICE ADMISSION

 8                                 MOTION FOR SANCTIONS

 9  AIRLINE PILOTS ASSOCIATION,

10
                    Defendant.
11  _____

12                           UNITED STATES COURTHOUSE
                             ONE JOHN F. GERRY PLAZA
13                           4TH AND COOPER STREETS
                             CAMDEN, NEW JERSEY 08101
14                           (856) 968-4986
                             THURSDAY, SEPTEMBER 22, 2011
15

16  B E F O R E:    THE HONORABLE JOSEPH E. IRENAS
                             UNITED STATES DISTRICT JUDGE
17

18  A P P E A R A N C E S:

19

20          TRUJILLO, RODRIGUEZ & RICHARDS
            BY:  LISA RODRIGUEZ, ESQUIRE
21                   -AND-
            NICOLE ACCHIONE, ESQUIRE
22          ATTORNEYS FOR PLAINTIFFS

23

24                           LISA MARCUS, C.S.R.
25                           CERTIFICATE # 1492
                             OFFICIAL U.S. REPORTER
```

1    A P P E A R A N C E S:

2

3        GREEN & JACOBSON
        BY:  JOSEPH JACOBSON, ESQUIRE
                 -AND-
4            ALLEN PRESS, ESQUIRE
        ATTORNEYS FOR PLAINTIFFS

5

6        ARCHER & GREINER
        BY:  STEVEN FRAM, ESQUIRE
                 -AND-
7            DANIEL KATZ, ESQUIRE
        ATTORNEYS FOR PLAINTIFFS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Camden, New Jersey*

```
 1          THE COURT:  Hello?

 2          MS. RODRIGUEZ:  Good afternoon, your Honor.  This is

 3  Lisa Rodriguez.

 4          THE COURT:  Ms. Rodriguez, I'm here with Lisa Marcus

 5  who is the court reporter, also my courtroom deputy Larry

 6  MacStravic is in the room, and my law clerk Nick Bamman is in

 7  the room, so there's four of us here.

 8          Okay.  Now, can I have the appearances of everybody on

 9  this call?

10          MS. RODRIGUEZ:  Your Honor, this is Lisa Rodriguez

11  for the plaintiff.

12          THE COURT:  All right.

13          MS. ACCHIONE:  Nicole Acchione for the plaintiffs.

14          MR. PRESS:  Allen Press for the plaintiffs.

15          MR. JACOBSON:  Joe Jacobson for the plaintiffs.

16          THE COURT:  That's Joe Jacobson?

17          MR. JACOBSON:  Yes, your Honor.

18          THE COURT:  All right.  Go ahead.

19          MR. FRAM:  Your Honor, this is Steve Fram for ALPA.

20  And also on the line is John Connell, my partner.

21          THE COURT:  Steve Fram, F-R-A-M, and John Connell.

22          MR. KATZ:  Judge Irenas, Dan Katz, and I'm on the

23  line as well.

24          THE COURT:  Okay.  There are a variety of motions

25  pending.  And, in fact, one thing I want to do before the
```

hearing is out, is set a new court hearing date for the trial

motion.  But the purpose of this call is to deal with two

applications, one is an application to revoke the *pro hac vice*

admission of Allen Press and Joe Jacobson, and the second is a

motion by the plaintiffs to impose Rule 11 sanctions on the

defendant for bringing the motion.  And then I guess there's a

third application inherent buried in the defense papers, is a

request for legal fees if they win the Rule 11 motion under, I

think it's 11(c)(2), so I guess that could be called a third

application.

Now, the motion is Mr. Fram's motion or defense motion,

but Mr. Fram appears to be the muscle behind the motion.

Mr. Fram, I'm going to turn it over to you, you can rely on

your papers or you can emphasize or do whatever you want.  So

you're on.

MR. FRAM:  Thank you, your Honor.

I hadn't anticipated arguing the merits of the motion.

Indeed, we have a reply brief that is a draft.

THE COURT:  No, I'm not going to wait for any reply

brief.  I don't need a reply brief for this, there's already

overkill on this motion.  And it hardly behooves you to say

you're not prepared to argue, you clearly are deeply involved

in the preparation of this motion, and judging from your

affidavits you know the record with exquisite detail.

MR. FRAM:  I do, your Honor.  It's not that I'm not

1    prepared, I think what I meant to say is I didn't anticipate

2    being asked to argue now.

3         THE COURT:  Well, I've spent the last four hours

4    going over the papers and it strikes me that, you know, it's

5    the kind of motion that I believe should be disposed of

6    quickly in any case.  I think Mr. Jacobson, because of his

7    pending selection as one of three possible candidates, if

8    that's still out there, for the Supreme Court of Missouri,

9    maybe puts a little more urgency to get the motion dealt with.

10   But I want to deal with it now, I don't want any more briefs

11   from anybody.  But I'll give you all the -- I'm not going to

12   limit your argument in any way.

13        MR. FRAM:  Thank you, your Honor.

14        Let me summarize what I think are the major points.

15   The first is that Mr. Press elicited testimony from Roland

16   Wilder and Wilder's depositions in August 2008 that was

17   clearly incorrect testimony.

18        THE COURT:  You say clearly incorrect, do you think

19   adding the word clearly somehow or other adds weight to your

20   argument?  Why is it so clear?

21        MR. FRAM:  Because Wilder was physically, your Honor,

22   in Louisville.

23        THE COURT:  I don't know that he was physically in

24   Louisville.  And even if he was physically in Louisville, you

25   mean you can't get back from Louisville to St. Louis?  I mean,

1  he flip-flopped four times.  And even his last time when he

2  was supposedly so clear, he said based on the entry in my day

3  book or my diary and based on the bill he had submitted, and I

4  think maybe based on an airline ticket, he said in effect I

5  must have been, but it wasn't based on his memory.  Even by

6  his own statement he's not saying I remember where I was, he's

7  just saying I now conclude I was there.  And he flip-flopped

8  three or four times on this.  And there were, well, at least I

9  believe I could count eight or nine witnesses who also say he

10  was there on April 2nd, and they're not all plaintiff's

11  witnesses, some of them are your witnesses.

12          MR. FRAM:  No, your Honor, one of the things we're

13  going to point out or we're going to point out in our reply

14  brief is the deposition testimony relied upon by the

15  plaintiff, they argue that Clay Warner and Glanzer and Tumblin

16  said he was there on the 2nd.

17          THE COURT:  And Gross.

18          MR. FRAM:  They all say that.

19          THE COURT:  And Gross.

20          MR. FRAM:  Sorry, who, your Honor?

21          THE COURT:  Gross.  I thought there was another one.

22          MS. RODRIGUEZ:  Dave Singer.

23          THE COURT:  Singer, not Gross.  Singer.

24          MS. RODRIGUEZ:  Dave Singer said he was there on the

25  2nd.

**1**          THE COURT:  Yeah.

**2**          MR. FRAM:  No, Warner did not say he was there on the

**3** 2nd.

**4**          THE COURT:  Not Warner, Singer.

**5**          MR. FRAM:  Singer said he didn't recall.

**6**          THE COURT:  I read Warner's testimony and I think it

**7** could be construed as saying that he was there.  What about

**8** all the pilots who some of them weren't even there until the

**9** evening of the 1st said --

**10**          MR. FRAM:  Your Honor, that's what they said and, of

**11** course, Wilder contradicted them.  Wilder said that --

**12**          THE COURT:  Well, that's why we have juries.  This

**13** event took place ten years ago, there were numerous meetings

**14** of all kinds, there were meetings at which people walked in

**15** and out.  I mean, your notion that he corrected his testimony,

**16** he changed his testimony.  He didn't correct -- I mean, that's

**17** your word, corrected.  He changed his testimony.

**18**          MR. FRAM:  His memory was refreshed.

**19**          THE COURT:  No, his memory -- he didn't say -- no,

**20** that's what he didn't say.  He didn't say I remember now, he

**21** just said based on these documents, look at the language where

**22** he testified, is based on these documents I must have not been

**23** there.  He doesn't say his memory was refreshed.

**24**          MR. FRAM:  Based upon the documents, he testified

**25** that he was 100 percent certain.

 1          THE COURT:  Based on the documents, but not based on

 2   his memory.

 3          MR. FRAM:  Your Honor, in any event, our position is

 4   that he could physically only have been, based upon the

 5   testimony, in one place on April 2nd.

 6          THE COURT:  How far is Louisville from St. Louis?

 7          MR. JACOBSON:  An hour flight, your Honor.

 8          MR. FRAM:  Your Honor, there's no suggestion by

 9   anybody he flew one place to the other.

10          THE COURT:  I don't think there's any suggestion.

11   The guy flips back and forth.  We have, as I say, at least

12   eight or nine witnesses who testify he was there.  You accuse

13   the plaintiffs in what is the most starkly strong terms of

14   suborning perjury, about probably close to the worst thing you

15   can charge a trial lawyer with, it probably doesn't get too

16   much worse than that.  And based on what?

17          MR. FRAM:  Your Honor, we accuse them of presenting

18   false testimony.

19          THE COURT:  You accuse them with suborning perjury.

20   You've accused them of orchestrating it so that everybody gave

21   the same testimony.  That's suborning, that's more than

22   presenting.

23          MR. FRAM:  And we point out, your Honor, that even

24   some of the plaintiffs' witnesses changed their testimony from

25   deposition.

1        THE COURT:  Everybody in this case was changing their

2   testimony.

3        MR. FRAM:  And the documents, the underlying

4   documents, which are undisputed, could not possibly have been

5   used to refresh memories.

6        THE COURT:  When you say disputed, I mean, take an

7   entry in a daybook or an entry in a bill, if I had a dollar

8   for every entry by put in a daybook, in my diary when I was

9   practicing law and the event didn't take place because there

10  was a change in plans or because something happened or because

11  something else happened, I'd be a rich man.  And as to

12  billing, and even though my old firm kept meticulous, tried to

13  keep very meticulous bills that we were accused sometimes of

14  being over meticulous, but mistakes were always being made.

15  People are human.  You write down what you did in six cases

16  you worked on or one case you worked on, maybe you didn't get

17  it right.

18       MR. FRAM:  We have the agenda for the April 2nd

19  meeting.

20       THE COURT:  Right.  And because the agenda omits a

21  name, that proves he wasn't there.  Maybe it was planned he

22  wasn't going to be there but he changed his mind and showed

23  up.

24       MR. FRAM:  Your Honor, there's no evidence to suggest

25  that happened.

1          THE COURT:  There's six people who testified he was

2    there.  I mean, you're -- there's six or seven, actually more

3    than six.  I think if you include the six pilots that did

4    testify and then the ones, I'll call them the defense

5    witnesses, Singer, Warner, there's probably seven or eight who

6    indicated he was there that day.

7          MR. FRAM:  Your Honor, that's our point.  Our point

8    is that somebody was incorrect in terms of their testimony.

9          THE COURT:  That's true in every case.  When you have

10   a case involving events that took place, you know, eight to

11   ten years ago, where you have numerous meetings all over the

12   country, you have very many people involved, yeah, people's

13   memories are going to disagree.  And even between the 1st and

14   the 2nd, what happened on the 1st or what happened on the 2nd,

15   no reason to believe that in people's minds they couldn't

16   conflate in one way or another or get confused in one way or

17   another.  Yeah, it may well be that somebody's right and

18   somebody's wrong, but that's why we have juries.  We don't go

19   around accusing people of suborning perjury.

20         MR. FRAM:  Your Honor, the jury system only works if

21   the evidence the jury's getting is fairly presented.  We have

22   not only --

23         THE COURT:  Well, who presented it?  You could

24   present, nobody blocked -- it wasn't that the billing, the

25   daybook and stuff was unknown at the trial, that stuff was

1    known a long time ago, long before the trial.  You had the

2    opportunity to put any of that that you wanted to put forward,

3    I mean, that's legitimate to make an argument.

4        MR. FRAM:  Your Honor, we think we proved and

5    certainly persuaded some jurors, we don't know because no one

6    interviewed the jury, we don't know what they believe or not,

7    but for all we know the jury agreed with our position.

8        THE COURT:  Well, maybe the did, it was fine.  Maybe

9    some of them agreed that really -- because remember what

10   role -- the testimony about what role and Wilder's position

11   was, even those who testified he was there, was itself a

12   little ambiguous as to, you know, some of it was referred to

13   as body language, you know, some of the testimony was how he

14   comported himself, what he said or didn't say at that meeting,

15   whether they agreed with the decision to waive scope or didn't

16   agree or on what terms he agreed, that's not all crystal

17   clear.

18       MR. FRAM:  Your Honor, that's one of our points.  One

19   of our points is that not only did he have people testifying

20   he was there, but contrary to the documents.

21       THE COURT:  That's what the jury is for.

22       MR. FRAM:  But they're giving testimony about the

23   details of what he said and how he looked that they didn't

24   recall or testify at their deposition.

25       THE COURT:  Well, fine, you point that out.  You had

1   the depositions.  You had Wilder's flip-flopping.  You had

2   what the witness' prior -- the pilots who testified.

3   Certainly the ones that were in your camp you had control over

4   who also testified he was there.  Yeah, we have a lot of

5   varying testimony, what's unusual about that?

6            MR. FRAM:  What's unusual about it, your Honor --

7            THE COURT:  I tried a case for three-and-a-half

8   months once involving a 45 minute meeting at which either

9   three or four people were present, there wasn't even an

10  agreement as to one of the four was present, and the case went

11  for three-and-a-half months solely on what was said at that

12  meeting.  I tried it from, like, June 4th, 1986, to

13  September 14th, 1996, before Judge Landau in the Superior

14  Court before he was on App. Div.  In fact, he was promoted to

15  the App. Div. while the trial was going on.

16       Yeah, people give widely varying recollections of who

17  was present at a meeting, what was said at a meeting, you

18  know, what kind of body language people showed at a meeting,

19  what kind of expressions they showed at a meeting.  That's why

20  we have juries or triers of fact, in this case it was a jury.

21           MR. FRAM:  So, your Honor, let me just draw a

22  distinction, if I could.  I don't disagree with that.  The

23  plaintiffs put on their case.  We argued.  And I think I

24  argued persuasively in my closing that their evidence and

25  testimony I think was incredible, and I think at least some of

1    the jurors may well have believed that.

2         But the motion to revoke the *pro hac vice* admission

3    stands separate and apart from that.  Because, in addition to

4    that testimony about April 2nd, we have, as you recall,

5    uniform testimony from the plaintiffs pilot list is that they

6    don't remember anything that was discussed or who even

7    presented on March 21 and 22.  Are we to believe that's a

8    coincidence, that these people have a vivid recollection of

9    things that are helpful to the plaintiff's case.

10        THE COURT:  Well, that's the day, the waiver of

11   scope, April 2nd.  Isn't that the day they waived scope?

12        MS. RODRIGUEZ:  Yes.

13        MR. FRAM:  They voted, your Honor.

14        THE COURT:  They voted to waive scope, that could be

15   a pretty memorable day since much of this case in a sense

16   focused on that decision to waive scope at that time.

17        MR. FRAM:  But they discussed those issues, as you

18   may recall, in detail.  They discussed --

19        THE COURT:  Oh, I think they were discussing those

20   issues for a long time, I agree with you.

21        MR. FRAM:  They were.

22        THE COURT:  At various meetings of all kinds, yeah, I

23   agree with that.

24        MR. FRAM:  But the question is is it a coincidence, a

25   complete coincidence that six plaintiff's witnesses to a

```
 1   person --

 2           THE COURT:  Some defense witnesses as well.

 3           MR. FRAM:  But six witnesses to a person have no

 4   recollection whatsoever of the advice given at a March 21st

 5   and 22nd meetings.  We just don't buy it, your Honor, we

 6   think --

 7           THE COURT:  That fine, and you're allowed to argue

 8   that.  You argued that very strenuously, you called them all

 9   liars.

10           MR. FRAM:  I didn't use that word, your Honor.

11           THE COURT:  Well, all right, maybe I'm taking liberty

12   with the English language, but you certainly indicated they

13   weren't telling the truth.

14           MR. FRAM:  I did.  And I think the evidence supports

15   that.

16           THE COURT:  That's what a liar is, isn't it, somebody

17   who doesn't tell the truth?

18           MR. FRAM:  Well, no, it's a little bit different than

19   that, your Honor.  And again --

20           THE COURT:  Oh, you thought it may have been an

21   accident on their part, they didn't deliberately do it, which

22   is inconsistent with much of your brief where you very clearly

23   suggest there was perjury suborned.

24           MR. FRAM:  Well, your Honor, people --

25           THE COURT:  Didn't you in your brief suggest that
```

1  perjury was suborned?

2          MR. FRAM:  Your Honor, the brief says what it says.

3  Do I think that personally?  I do.

4          THE COURT:  Yes.  Well, the brief, that came through

5  in the brief.  I'm not stupid, I can read.

6          MR. FRAM:  The brief said that there was false

7  testimony.

8          THE COURT:  Yes, but you suggested there was

9  woodshedding, I mean, to use the old expression.  They were

10 talking to, talked to, that they didn't want to -- you know,

11 they wanted to create consistent testimony, they didn't want

12 to have inconsistencies, et cetera.  I mean, you suggested

13 suborning perjury.  As you said now, you believe it.  And the

14 fact that you believe that comes through with crystal clarity

15 in the brief.  I read your brief about six times.

16         MR. FRAM:  Your Honor, the declarations we have --

17         THE COURT:  And the declarations as well.  You have a

18 couple declarations.  The declarations are basically

19 attaching -- most of your declaration is attaching

20 transcripts.

21         MR. FRAM:  The declarations I'm referring to, your

22 Honor, are those of Mr. Press and Mr. Jacobson --

23         THE COURT:  Right.

24         MR. FRAM:  -- they admit in their declarations that

25 there were discussions with the plaintiff's witnesses.

 1          THE COURT:  Well, you don't suggest that somebody who

 2     doesn't discuss the case with his own witnesses, are you

 3     kidding me, it would be malpractice not to do that.

 4          MR. FRAM:  Your Honor, Mr. Jacobson says that he

 5     never talked to Hollander about the events of April 23rd, so

 6     we have that in the declaration that they never discussed --

 7          THE COURT:  So you're saying he lied when he said

 8     that?

 9          MR. FRAM:  No.  No.  No.  Of course not, your Honor.

10     I'm saying --

11          THE COURT:  All they say -- on Hollander, which has

12     to do with Woerth's statement that, the alleged statement "get

13     real" or the TWA pilots "have to get real" and deals with the

14     April 23rd meeting, he says basically that there was

15     confusion.  And it's very clear from the record that when you

16     confronted, when you -- Hollansder 'fessed right up, I mean,

17     he made not the slightest effort to weasel, just that he was

18     confused.  And what he said was at the end of the day, I was

19     in constant phone contact with people who were there so I knew

20     what was going on at the meeting, but I wasn't physically

21     there, he never tried to conceal that.  Nothing -- when you

22     read the record as a whole, there's nothing indicating he was

23     trying to hide anything.

24          MR. FRAM:  He testified directly on direct that I was

25     there, he was asked the question --

1          THE COURT:  Yes, and I was even confused by that.  I

2     thought -- when we had our *voir dire* hearing, I thought that

3     he was there, and I think I even said that he can testify as

4     to what he heard Woerth say.  I think I said that, didn't I?

5          MR. FRAM:  Your Honor, he testified directly I was

6     there on the 23rd.

7          THE COURT:  Right.  And when you crossed him at some

8     point later on, he said he wasn't there.

9          MR. FRAM:  But how -- so how was Hollander's initial

10    testimony, which he never would have corrected if I didn't

11    cross him on it --

12         THE COURT:  I don't know, that's what

13    cross-examination is for.  That's what cross is for.

14         MR. FRAM:  How was -- but is the point of a trial,

15    your Honor, to put on false testimony?

16         THE COURT:  No, you put on testimony, the witnesses

17    do the best they can and often make mistakes.  That's a big

18    difference from a lawyer suborning perjury or deliberately

19    putting on false.  I mean, what you have charged these lawyers

20    with, if proven, could result in their being disbarred,

21    possibly even permanently.

22         MR. FRAM:  Your Honor, we have minutes of that

23    April 23rd meeting.

24         THE COURT:  So what?

25         MR. FRAM:  Hollander is not there.

```
 1          THE COURT:  No, he's not listed in the minutes.

 2          MR. FRAM:  No, but --

 3          THE COURT:  He's not listed in the minutes, it

 4  doesn't mean he wasn't there.  By the way, he admits he wasn't

 5  there now.  He admitted to the jury he wasn't there.

 6          MR. FRAM:  There's a statement by Case on the --

 7          THE COURT:  Right.  He reads a statement in which

 8  Hollander explains why he can't be there.

 9          MR. FRAM:  All right.  So if we're to believe that

10  both Hollander, who is testifying, and Mr. Jacobson, who is

11  presenting him --

12          THE COURT:  Hold it.  Mr. Jacobson -- Hollander --

13  the state of the record now is Hollander said he wasn't there.

14  That's a different story whether Jacobson deliberately put on

15  false testimony.

16          MR. FRAM:  Your Honor, the documents --

17          THE COURT:  I hope you don't do this too often,

18  Mr. Fram.  You've tried complicated cases, and complicated

19  cases we're going to have witnesses veering off.  Do you know

20  what Justice Weintraub once said, the late great Justice

21  Weintraub, he said all automobile accidents happen on the

22  yellow pad in a lawyer's office.  You know, trials put all

23  kinds of pressures on people, there are sometimes multiple

24  depositions, there's review of the facts with the lawyers,

25  there's the inherent self interest that people have.
```

```
 1              MR. FRAM:  Your Honor, I'm not able to hear you.

 2              THE COURT:  I'm not saying anything now anyhow.

 3              MR. FRAM:  Your Honor, this is the only time I've

 4    ever filed a motion like this before.  And I did it because,

 5    as I've outlined in my declaration, we watched with dismay --

 6              THE COURT:  Somebody is moving papers around or cups

 7    around.

 8              MR. FRAM:  I don't know who is doing that, your

 9    Honor.

10              THE COURT:  Whoever is doing it, stop.

11              MR. FRAM:  So, your Honor, obviously, you have

12    reviewed the papers carefully, as is your practice and which

13    we certainly appreciate.  I've outlined the facts that I think

14    supports the motion and supported of them.  And I genuinely

15    believe and strongly believe, based upon the motion, that

16    there was false testimony and that counsel knew with respect

17    to some of that false testimony that it was false.

18              THE COURT:  And you go a step further in your brief,

19    you basically argue that the consistency, if you want to call

20    it that, of the testimony of the defense pilot witnesses is a

21    result of, and I use the woodshedding, the result of

22    testimonial review, if you will, with each of those witnesses

23    and the fact that it was suborned.

24              MR. FRAM:  You just said defense witnesses, I think

25    you meant plaintiff's witnesses.
```

1          THE COURT:  Plaintiff's witnesses.  I'm sorry, you're

2   correct.

3          MR. FRAM:  Your Honor, there's no question that

4   circumstances sometimes speak louder than direct testimony.

5   My experience tells me, and the declarations we have from my

6   firm, as your Honor commented before, that time was spent

7   preparing witnesses and my conclusion, I think the only

8   conclusion you can draw from the changes from deposition, from

9   the detail and the like, is that the result of those

10  discussions is that the testimony on the plaintiff's side was

11  conformed.

12         THE COURT:  Was conformed, that's the language of

13  suborning perjury.

14         MR. FRAM:  That's what happened.

15         THE COURT:  That is the language.  I mean, you're

16  gussing it up using the word conformed, that but the

17  language -- that's your charge that this was suborned perjury.

18         MR. FRAM:  What's the explanation for how --

19         THE COURT:  No, don't ask me a question.

20         MR. FRAM:  All right.

21         THE COURT:  Make an argument.

22         MR. FRAM:  It's rhetoric.

23         THE COURT:  Don't even ask a rhetoric question, it

24  gets me nervous.

25         MR. FRAM:  My conclusion is based upon the facts and

1   the research and other false testimony from these witnesses,

2   which we have not raised as far as this motion but which we've

3   noted in my declaration, is that the process of preparing

4   these witnesses to testify resulted in different testimony

5   than what was given at deposition and testimony that's

6   inconsistent with documents that are reliable and

7   undisputable.  And the only conclusion I can draw, and I think

8   it's the right conclusion, is the circumstances here were that

9   the plaintiffs wanted to present, did present a uniform

10  consistent story.

11          THE COURT:  Okay.

12          MR. FRAM:  But I think the facts speak loudly.  I

13  think the Hollander testimony about April 23rd, we've read

14  Mr. Jacobson's declaration --

15          THE COURT:  I have several times.

16          MR. FRAM:  Your Honor is familiar with the

17  transcripts.

18          THE COURT:  I read the transcripts, some of them

19  several times.

20          MR. FRAM:  Your Honor, I think you were as clear as

21  you could have been, when you permitted to Mr. Hollander to

22  testify, that his testimony had to be on firsthand

23  information.

24          THE COURT:  I did.  The answer is absolutely.  I

25  thought, and you quoted my section in your papers from the

1    trial, and there was no question at that point I believed that

2    he had been there and I thought that his testimony as to what

3    the ALPA president said was admissible as long as it was -- he

4    was reporting what he heard him say and I said so.

5            MR. FRAM:  And your Honor was shocked when I asked

6    him on cross-examination.

7            THE COURT:  I don't shock that easily, but the answer

8    is, yes, I mean, I was surprised.

9            MR. FRAM:  You were surprised, and you were surprised

10   in part, I'm sure, because as we all were, because this issue

11   of what Woerth allegedly said has been a big issue in this

12   case.  I think we pointed out in one of our papers that you

13   summarized the evidence about the issues in your published

14   Opinion denying summary judgment, it's an issue that Mr. Press

15   mentioned in his opening, the issue who was there and what was

16   said has been a big issue in the case for a long time.  And we

17   don't accept the explanation that Mr. Jacobson has offered

18   that he didn't talk to the witness ahead of time or talk to

19   somebody ahead of time about that issue and that this is all a

20   result of confusion.

21           THE COURT:  Remember, Mr. Jacobson, who got into the

22   case actually fairly late, I think, would certainly be aware

23   of, let's call it the documentary evidence that would support

24   an argument that Hollander -- well, Hollander's own testimony

25   he wasn't there.  But, I mean, who was it, was it Ted Case who

```
 1   read the message from Hollander?

 2           MR. FRAM:  Yes, your Honor.

 3           THE COURT:  I mean, we knew -- I mean, that was

 4   already in the record.  I mean, that blurb about Case said

 5   Hollander couldn't attend and his lack of being listed as

 6   being there.  So you're saying, well, we'll put this false

 7   testimony on, we know Fram has the goodies but we will put it

 8   on anyhow.

 9           MR. FRAM:  No, your Honor.  No, we're saying that in

10   the middle of a trial if we throw enough stuff up against the

11   wall, the defendants will not be able to address all of it,

12   they won't be able to catch all of it.

13           THE COURT:  Why would he have any reason to think

14   that?  Why would they -- I saw nothing in the defendant's

15   performance in this case other than to suggest they were

16   extraordinarily well prepared, they had documents, the

17   minutes, whatever other documents there were, they were well

18   organized.

19           MR. FRAM:  Your Honor --

20           THE COURT:  I absolutely disagree with that premise

21   that anybody had any reason to believe that, well, Fram won't

22   notice this document or Fram won't see this set of minutes or

23   he won't think of it, that somehow or other you're throwing

24   stuff against the wall and poor old Mr. Fram and poor young

25   Mr. Katz -- how do you like that, Mr. Katz?
```

```
 1        MR. KATZ:  I like that.  That's a new one.

 2        THE COURT:  Yeah.  Young Mr. Katz and old Mr. Fram

 3  would somehow or other, and their assistants, would somehow or

 4  other miss a relevant document or a relevant piece of

 5  deposition or something like that.  Nothing about this case --

 6        Would somebody stop moving paper around?

 7        MR. FRAM:  Your Honor, I appreciate the Court's

 8  observation about our about level of preparedness.  But the

 9  fact of the matter is there were many other instances where we

10  had to identify things that were not consistent and many as

11  well where we didn't have as much resources.  I think I've

12  cited in my declaration the situation where Matt Comlish, if

13  your Honor recalls, he gives this dramatic testimony about

14  confronting of Duane Woerth on Capitol Hill about being yelled

15  at and on and on and on.  And then I find Welch is testifying,

16  from reviewing his deposition with my name, when Mr. Katz

17  asked him that very same question in his deposition he said I

18  never talked to Duane Woerth about this issue at all.

19        THE COURT:  And he was confronted with that.

20        MR. FRAM:  And he was.  And he --

21        THE COURT:  So you wind up almost better off by

22  proving a witness, you know, may have been erroneous in his

23  direct testimony.

24        MR. FRAM:  Your Honor, I really fear that we're

25  confusing whether or not the testimony, Comlish's testimony
```

1  was clearly false either in the deposition or trial.

2          THE COURT:  It may have been inaccurate, but that's a

3  far cry from a lawyer deliberately putting on false testimony

4  or even worse suborning it.

5          MR. FRAM:  Your Honor, Comlish lied in his deposition

6  or he lied at trial, we don't know which.

7          THE COURT:  No, he was erroneous either at trial or

8  at deposition.

9          MR. FRAM:  Well, your Honor, in the absence of an

10 explanation that he had some type of epiphany or remembered

11 some things --

12         THE COURT:  Remembrance of things past, as Proust

13 said.

14         MR. FRAM:  In the absence of some explanation, and

15 none was given, he never tried to address it on redirect, the

16 conclusion is reached that he made something up, he either

17 withheld it at deposition or made up at trial.  My point is,

18 back to your Honor's comment, is that to say let's put stuff

19 on at trial and rely upon the defense to catch us and get all

20 these instances, again to the extent we catch them, to the

21 extent the jury observes that and it hurts their credibility,

22 yeah.  If we're arguing a new trial motion, maybe the Court

23 would be concerned that there was some prejudice with respect

24 to some of these incidents.  We don't believe, as we may have

25 pointed out in our papers, I don't think the jury, if they

1    even thought about it, was prepared to decide in favor of the

2    plaintiff with respect to the events of April 2nd, we don't

3    know because we don't have a verdict that's specific to that.

4    But the motion we're arguing now goes to whether or not we

5    caught them or proved it was false, there was lying, really

6    says nothing about whether or not there's violations, as we

7    believe there were, of RPC 3.3.

8           THE COURT:  Look, if somebody is suborning perjury or

9    if somebody deliberately puts on testimony he or she knows to

10   be false, I agree with you that that violates the RPC, not

11   only on the candor to the Tribunal, but probably a few other

12   ones as well, a few other RPC's as well.  That point you don't

13   have to -- if I thought -- and I can think of one particular

14   lawyer that's disbarred now from many states who had a habit

15   of doing that, of putting on false testimony.  So there's no

16   question.  The premise that suborning perjury or even putting,

17   I don't know where the line just putting on testimony you know

18   to be false and suborning it, it's a pretty close line, but

19   would not justify revoking a *pro hac vice* admission, I agree

20   with that.  The question is, is that what's happened here.  I

21   don't disagree with the premise.

22          MR. FRAM:  Your Honor, look, we put the proof

23   forward.

24          THE COURT:  I know you did.

25          MR. FRAM:  The most striking example is the Hollander

1    testimony about April 23rd.

2            THE COURT:  Well, actually you spend much more time

3    with Wilder than you do on that issue.

4            MR. FRAM:  Because I think why spend time on

5    something that is as clear from the transcript.

6            THE COURT:  All right.

7            MR. FRAM:  I was there on the 23rd, yes, I was, when

8    in fact we know it wasn't.  So I don't think there's any point

9    in spending more time on that.  You've seen the transcript.

10   You were there, you were as surprised as I was, I'm sure as we

11   all were, when he admitted readily on cross, no, I wasn't

12   there.  And we said if you weren't there, why did you say five

13   minutes ago you were.  So it's up to you, obviously, your

14   Honor, to decide whether you find Mr. Jacobson's explanation

15   of how that happened to be credible.  We don't.  But,

16   obviously, that's why you're the Judge and we are not.

17           THE COURT:  That's why George Bush, Sr., appointed

18   me, to make just these kind of decisions.

19           MR. FRAM:  I doubt he had these kinds of decisions in

20   mind, your Honor.  But, in any event, you either think that we

21   met the burden and, of course, we don't have to prove any of

22   this beyond a reasonable doubt.

23           THE COURT:  No, I agree with that, that's not the

24   standard.

25           MR. FRAM:  That's not the standard.  We don't have

1   access to documents that might undercut some of the statements

2   made in the declaration.  One of the things we're going to

3   point out in our reply brief, which you will never see, no one

4   will --

5           THE COURT:  Hopefully.

6           MR. FRAM:  -- is that those declarations don't talk

7   about the specifics of who was involved in the meeting.  They

8   don't explain, for example, how Hollander's deposition

9   testimony came -- how he went from saying that Wilder was

10  there on the 2nd but stood silent, he said not a word.  How

11  did he go from that to testifying at trial that Wilder said

12  all kinds of things and people told him to be quiet, that's

13  never explained.

14          So, from our perspective, your Honor, the plaintiff's

15  lawyers have not met their burden of addressing the issues

16  that we raised.  And for that reason we believe that it would

17  be appropriate for the Court to grant the motion.  We don't

18  want to continue in a case that in all likelihood, certainly

19  if it continues, it's going to be contentious and have a lot

20  of issues, we've outlined that as well.  So unless your Honor

21  has other questions --

22          THE COURT:  No.

23          MR. FRAM:  -- we would otherwise rest on our papers

24  and ask the Court to grant the motion.

25          Is there anything you want me to say, your Honor, with

1   respect to the Rule 11 motion?

2         THE COURT:  Well, I'm going to deal with that a

3   little separately.  I think I have to rule on this first, then

4   I think the two Rule 11 motions, their motion and your motion,

5   well, you didn't make a separate motion but it's in your

6   papers, can be heard.  That's my plan.

7         MR. FRAM:  Okay.  Unless you have further questions,

8   your Honor, that's all I have.  I rest on my papers otherwise.

9         THE COURT:  Mr. Katz, anything you want to add?

10        MR. KATZ:  Nothing to add, your Honor.

11        THE COURT:  Thank you.

12      Now, as to the plaintiff's side, I don't know how

13  you're going to break -- I mean, clearly, Mr. Jacobson should

14  have the laboring aura on the April 23rd incident with

15  Hollander.  I don't know how you're going to handle the

16  April 2nd business.  So I'll leave it to the plaintiffs to

17  whack up the argument any way they want.

18        MR. PRESS:  Judge, this is Allen Press.

19        THE COURT:  Yes, Allen.

20        MR. PRESS:  There's not an ounce of truth in anything

21  Mr. Fram has said this morning.

22        THE COURT:  Oh, there's an ounce of truth.

23        MR. PRESS:  No, I mean about the fact that we coached

24  our witnesses to lie.  This is just an outrageous allegation,

25  Judge, there's no truth to it at all.  It's hard for me to

1    temper my comments about this.

2              THE COURT:  Well, temper them anyhow.

3              MR. PRESS:  I know.  I'm trying my best, Judge.

4              THE COURT:  By the way, one of Mr. Fram's geniuses as

5    a lawyer, is that he can wield an AK-47 and do it in such a

6    calm straightforward way without raising his voice, without

7    betraying any kind of, you know, unease or anything, he does

8    it smooth as silk.  So why don't you emulate that.

9              MR. PRESS:  Judge, you obviously read all the papers

10   and I don't know what I can really add to that.

11             THE COURT:  Add whatever you think is most

12   persuasive.

13             MR. PRESS:  I'm telling you as a lawyer, and I'm

14   talking to a judge, that what Mr. Fram accused me of doing

15   didn't happen.  It didn't happen.

16             THE COURT:  All right.  I hear you.

17             MR. PRESS:  You know, he's entitled to his belief,

18   Judge, but he's not entitled to make allegations that have no

19   objective reasonableness, and these accusations don't have

20   any.  There's nothing reasonable at all in anything he's

21   alleged us having done and we would ask you to sanction him.

22   I've never filed a Rule 11 motion, never done it in 20 years,

23   but I think Rule 11 is made for this.  And really, Judge,

24   that's all I have to add to what's already in the record.

25             THE COURT:  Okay.  Mr. Jacobson?

```
 1          MR. JACOBSON:  Your Honor, I'll also try to be brief.
 2          As you noted earlier, my involvement in the case was
 3   late.  I had a gap of approximately three weeks from the
 4   ending of the trial I completed before this trial, I was on a
 5   two week patent infringement in the Larimak (ph) case trial,
 6   associates prepared the documents for me for each witness.
 7   There was nothing in my file relating to Mr. Hollander
 8   regarding the April 23rd meeting and I didn't talk to him
 9   about it.  When I heard his statements in the voir dire, I
10   understood from what he was saying there that he was at that
11   meeting.  I had him the question, he said he was, and I asked
12   him for more about it.  I don't know whether his Honor is
13   confused or I was confused or both of us were confused, I
14   thought that he said he was there and I asked him questions
15   about it.  And sometime later on cross he was asked about the
16   meeting and he said, no, I wasn't there, and I was surprised
17   to hear that because I thought he said he was earlier.  As the
18   Court notes, it's almost a six-week trial, people are going to
19   make mistakes, misstate things.
20          I didn't attempt to encourage him to the say anything
21   that wasn't true.  I didn't prepare him to say anything that
22   wasn't true.  Neither Allen nor I engaged in any kind of
23   conspiracy with these witnesses to say anything about April
24   2nd other than what they had to say.  To my understanding,
25   they were saying the same things they were saying well before
```

```
 1    we got into the case about Wilder being there April 2nd.  I
 2    did not attempt to present any false evidence to the Court or
 3    to the jury in any way whatsoever.  And if there were
 4    statements made that could be shown to be actually inaccurate
 5    of some omission of someone that was there at the time, that's
 6    unfortunate but that's not that surprising in a six-week trial
 7    ten years after the date.
 8         So I ask to be allowed to remain in this case to
 9    continue as counsel for the plaintiffs should I not be
10    appointed to the bench.
11            THE COURT:  Okay.  Anything further?
12            MR. JACOBSON:  That's it for me, your Honor.
13            THE COURT:  Ms. Rodriguez, anything you want to add?
14            MS. RODRIGUEZ:  No, your Honor.  The only thing I
15    would add, I'll just take the specific of the Matt Comlish
16    testimony, to make such outrageous accusations when that
17    little piece of testimony, did you speak to Duane Woerth on
18    the hill, no, and then he scowled at me, quite frankly, you
19    might say the question --
20            THE COURT:  I'm sorry, who scowled at you?
21            MS. RODRIGUEZ:  Duane Woerth.  But that's not
22    speaking -- that's technically not inaccurate and he raised it
23    to the jury, he raised it to Matt Comlish on the stand, these
24    were all issues which were vetted by the jury and it's
25    incumbent upon the jury to make these credibility
```

1    determinations and they did it.  And I think it was a well

2    tried case on both sides and I would ask your Honor to deny

3    this motion out of hand.

4            THE COURT:  Okay.  Anything further?  Anything you

5    want to add, Mr. Fram?

6            MR. FRAM:  No, your Honor.  Thank you, though.

7            THE COURT:  All right.  As everybody has noted, this

8    is a case that took, I think it was five-and-a-half weeks,

9    something like that, to try.  It involved events which took

10   place basically about ten years before the trial.  It involved

11   lots of people.  I mean, there were dozens of people who in a

12   way were intimately involved in different committees, you had

13   the MEC itself, you had the negotiating committees, you had

14   MEC's at each of the three locations that TWA, major terminals

15   they maintained.  There were lots of meetings, some formal,

16   some informal, people talking to each other, so to be

17   surprised that after ten years people may be confused or some

18   meeting stands out in your mind, others don't.  I'm always

19   amazed that when I look back on events, there's sometimes an

20   event that will, from 50 years ago will stick in my mind like

21   glue.  In other events, which you might consider much more

22   important to my life, I've absolutely no recollection of.  But

23   something that might really be very minor or not important in

24   my life, it just sticks in my head for some reason, who knows

25   what it was that causes it to stick.

1    Ten years is a long time, and in the pressure of

2 litigation, and it is pressure when you're being deposed,

3 sometimes deposed more than once, and you testify and there's

4 the pressures that litigation itself put you on -- put you

5 under -- it's not surprising that people may remember some

6 things, not remember other things, change their testimony

7 between deposition and trial or even in the middle of

8 testimony or in the middle of a deposition change their

9 testimony, and that's unfortunately to be expected.

10    Learned Hand once write an article in 1901, before he

11 was a judge, I think it was in 1901, I think it was in the

12 Albany Law Review, but he wrote an article opposing the use of

13 expert testimony, period, he wouldn't allow it.  He just

14 thought the self-interest pressures of litigation would

15 overwhelm in effect good science.  I don't know that he's

16 right or wrong.  But make no mistake about it, a trial is a

17 high pressure event.

18    Now, let's turn first to the question of Roland

19 Wilder's presence or absence of April 2nd at the MEC meeting

20 at which there was a waiver of scope, which, of course, was a

21 key event in the unfolding story of the TWA pilots and the

22 company being acquired by American.

23    Wilder changed his story, I think it was four times, it

24 was either three times or four times between depositions and

25 trial, because he was deposed more than once and he changed it

1    at trial.  He also wrote a certification as well.  In addition

2    to being deposed, he gave a certification.  There's no

3    question that, or to my mind there's no question that when he

4    finally came to rest on the position that he was, quote,

5    100 percent certain that he wasn't present on April 2nd, was

6    not based on his memory.  There's no indication in any

7    deposition or trial that he remembers that.  There's

8    indication that he reaches that conclusion based on a

9    description in his bill, which I call it daybook or diary, and

10    maybe also based on an airline ticket receipt of some kind

11    that he concludes that he was not there.  So he's

12    flip-flopping back and forth.  To what extent he conflates the

13    April 1st, if you want to call it pre-meeting and the

14    April 2nd formal meeting, I don't know, but he does or he may

15    be conflating those at some point, I don't know.

16          We have -- as I say, we have, I believe it's six, five

17    or six witnesses who I would call plaintiff's witnesses who

18    testified that he was there, and at least some of those

19    witnesses were not even present on April 1st.  They arrived

20    in -- I think it was St. Louis where it took place?

21          MR. JACOBSON:  Yes.

22          THE COURT:  They arrived in St. Louis in the evening

23    after the April 1st meeting had taken place and they uniformly

24    testified that Wilder was there on the 2nd, April 2nd.  At

25    least some witnesses who I can identify as defense witnesses

1   also testified that Clay Warner was there -- not Clay Warner,

2   Roland Wilder was there.  Clay Warner being one of them.

3   David Singer being another.  And I think there were two others

4   as well.  So there was a fair uniformity.  Was the uniformity

5   in describing what it was that Wilder did or said on

6   April 2nd?  No, there was not uniformity, I think there was

7   differences between the witness.  But to jump from the fact

8   that six plaintiff's witnesses said that he was there to the

9   conclusion that that can only be explained by either suborning

10  of perjury or the deliberately presenting evidence you know to

11  be false, I think is a very dubious proposition.  I think to

12  accuse a lawyer of suborning perjury --

13          MR. JACOBSON:  Your Honor, may I interrupt one

14  second?  This is Joe Jacobson.

15          THE COURT:  Yes.

16          MR. JACOBSON:  I need to leave, I'm supposed to be

17  introduced to by a Chief Justice to several members of the Bar

18  in about three minutes.  I apologize.

19          THE COURT:  All right.  I'm sure Mr. Press will carry

20  the cudgels.

21          MR. JACOBSON:  Thank you very much, your Honor.

22          THE COURT:  Okay.

23          MR. JACOBSON:  Bye-bye.

24          THE COURT:  Bye-bye.

25          And I think, quite candidly, and I use this word -- I

noodle this word around in my head, but I think it almost

verges on the reckless to charge a lawyer with suborning

perjury or deliberately putting on testimony you know to be

false without something more than is put forward in this case,

which has been basically on inference on inference on

speculation.  And even when I turn to the, which Mr. Fram says

now he's emphasizing more than the Wilder testimony even

though in the brief it wasn't, it was the lesser emphasized,

but I'll accept that, the witness Hollander on

cross-examination was very -- I mean, when he was confronted

with stuff he said, yeah, I wasn't there, it surprised people,

it surprised me, because what we thought he had testified,

what I thought he had testified to, and I think what even

Mr. Jacobson thought he had testified to.  But to leap from

that, to use expressions like they were throwing stuff up on

the wall and hoping it would stick, you know, that kind of

argument I think again is almost reckless.

      This is two law firms that, actually more than two law

firms, it was four law firms that were involved in the trial,

all of whom had extraordinary mastery of the complex file, a

mastery of what the witnesses said, what the documents said.

To think that somebody says, well, I'll throw some stuff up I

know to be false, and maybe they won't catch it, is an

allegation which cannot be supported, which defies any kind of

logic given the nature of the lawyers in this case and their

1   preparation for this case, which has lasted for six or seven

2   years.  I think the case was originally filed in 2002, if I'm

3   not mistaken.  Indeed, the statute of limitations was the

4   major issue before the Circuit which brought the case here,

5   brought the case back to me.

6        And I think what we have is what I've had many times

7   before when I was a trial lawyer, these cases where a lot of

8   people are involved, a lot of meetings take place, memories

9   fade, the pressure of litigation sometimes makes people, not

10  because they're lying, I've heard people get up on the stand

11  and say things that I suspected was totally untrue but I

12  didn't think they were lying, I didn't think the people were

13  telling an untruth in the sense that they knew I'm going to

14  get up there and try to fool somebody, but sometimes the

15  pressure of litigation gets them to remember things in a

16  different way.  It's a very sensitive process.  That's why we

17  have juries.  That why we have skilled cross-examination.

18  Because all the points Mr. Fram raises, they were all brought

19  out on cross-examination, every one of them.  He had the

20  documents, he had the transcripts from prior depositions, he

21  was familiar exquisitely with those transcripts, he was

22  familiar with the documents, and certainly able and in fact

23  did bring out whatever there was and argued before the jury.

24       I am going to deny the deny the motion to disqualify or

25  to revoke the *pro hac vice* admission of Mr. Jacobson and

1   Mr. Press and their law firm from continuing in this case.

2           Now, I'm going to turn to the -- well, they're opposite

3   sides of the same coin, I guess, Mr. Fram's motion by

4   definition loses because I think 11(c)(2) talks about the

5   prevailing party and he was not the prevailing party on the

6   motion so he would not be entitled to legal fees.

7           I'll now turn to the motion for Rule 11 sanctions.  And

8   who's going to argue that for the plaintiff?

9             MR. PRESS:  This is Mr. Press.

10          Again, Judge, I don't know really what to add.  But,

11  first of all, thank you for denying Mr. Fram's motion.  But in

12  doing that, Judge, you characterized the allegations as almost

13  reckless and dubious, and that characterization I would agree

14  with and I think it's squarely within what Rule 11 is designed

15  to punish.

16          We were defamed by Mr. Fram in a very serious and

17  public way.  He may be immune from civil suit, but Rule 11

18  provides a remedy that we think is appropriate in this

19  situation.  And we ask for you to grant our motion and enter

20  whatever sanction you deem appropriate.

21            THE COURT:  Now, you're relying on 11(b)(2)?

22            MR. FRAM:  I don't have the rule in front of me.  The

23  provision on evidentiary tort or your claim or your

24  allegation.

25            THE COURT:  (B)(2) says the claims offenses and other

```
 1   legal contentions are warranted by existing law or by a
 2   non-frivolous argument for extending, modifying, or reversing
 3   existing law.
 4          MR. PRESS:  That's not the provision.  I think it's
 5   (b)(3).
 6          THE COURT:  Oh, the factual contentions of
 7   evidentiary support for is specifically so identified --
 8          MR. PRESS:  The standard to be employed under that is
 9   an objective standard, it's not what Mr. Fram believes in his
10   heart or his head, it's what is objectively reasonable.  And
11   here there is no objectively reasonable facts or evidence to
12   support any of the outrageous claims made against us.  And for
13   that reason we believe you should grant the motion for
14   sanctions.
15          THE COURT:  Okay.  Mr. Fram?
16          MR. PRESS:  That's all I would add to the record on
17   that, Judge.
18          THE COURT:  Mr. Fram?
19          MR. FRAM:  Thank you, your Honor.
20        Your Honor, I hear buzzing in the background.  Can you
21   hear me okay?
22          THE COURT:  I can hear you now, but I also hear that
23   buzzing.
24          MR. FRAM:  It sounds like somebody is on a cell
25   phone, your Honor.
```

1      Your Honor, you commented in just ruling on the

2  revocation motion that a number of defense witness --

3          THE COURT:  Hold it.

4      If anybody is on a cell phone, please hang up.

5          MS. RODRIGUEZ:  That's me, your Honor, and I will

6  hang up.

7          THE COURT:  Do it right now.

8          MS. RODRIGUEZ:  Okay.

9          THE COURT:  Okay.  Mr. Fram.

10         MR. FRAM:  That's much better.

11     Your Honor commented that a number of the defense

12  witnesses testified that Mr. Wider was there on the second.

13  And I would just note that if you had an opportunity to read

14  those transcripts, that's not what they said.  Clay Warner did

15  not say --

16         THE COURT:  Oh, Clay Warner is a little -- Clay

17  Warner, he doesn't use the date in his deposition, but I think

18  he's fairly clearly talking about the time of day that the

19  waiver was done.  I disagree, I think you could read it that

20  way.  What about also Singer?

21         MR. FRAM:  Your Honor, Singer did say in his

22  deposition that he thought that Wilder might have been there

23  on the 2nd but he wasn't sure.  And, of course, he testified

24  at trial that he didn't know.  And, of course, Singer as a

25  witness, you may or may not understand this, your Honor, but

1    we were never permitted to sit and prepare Singer for a

2    deposition or his testimony at trial.  Mr. Press took the

3    position that Mr. Singer, as a member of the class, was

4    somebody we couldn't talk to.  So we just basically had to put

5    him on cold at deposition and put him on cold at trial.

6              THE COURT:  You didn't get a chance to work him over?

7              MR. FRAM:  Your Honor, as you commented before, we're

8    going back ten years and people are not necessarily going to

9    remember things clearly.

10             THE COURT:  That I agree with.  That I agree with.

11             MR. FRAM:  And that's one of the reasons why when

12   people all of a sudden do remember things clearly and remember

13   them more clearly at trial than they did at deposition, it

14   becomes a question.  But, in any event, Singer's recollection

15   I think was vague.

16        There was also an assertion, your Honor, in the

17   plaintiff's papers that Tumblin and Glanzer had testified in

18   deposition that Wilder was there on the 2nd and that's just

19   not the case.  They were very vague about it, they never said

20   the 2nd, that was one of the points we were going to highlight

21   in the reply brief that --

22             THE COURT:  Their testimony could be construed as

23   saying that, the jury might draw the inference that's what

24   they said.

25             MR. FRAM:  Obviously, your Honor, when people say I

1   don't recall, there's lots of different instances you can

2   draw.

3           THE COURT:  I mean, you have flip-flopping all over

4   the place here.

5           MR. FRAM:  Well, some witnesses are saying pretty

6   adamantly I don't recall, and some witnesses are

7   flip-flopping.

8           THE COURT:  And some --

9           MR. FRAM:  As I said before, when people flip in a

10  direction that seems to be --

11          THE COURT:  But that's a mile away from suborning

12  perjury.

13          MR. FRAM:  Well, your Honor, let me just --

14          THE COURT:  That's a mile away.  Man, that is

15  shooting a bullet right at somebody's -- between the eyes.

16          MR. FRAM:  Your Honor, we didn't -- the motion didn't

17  accuse anybody of perjury or suborning perjury.  You asked me

18  do I believe that --

19          THE COURT:  And the answer was yes.  But you didn't

20  have to say yes because I read your brief, I said I read it

21  over and over again, and there was a question that's what -- I

22  don't know, maybe the word wasn't used.

23          MR. FRAM:  Your Honor, you sat through the trial and

24  you heard my closing and I didn't use the L word, it wasn't

25  necessary.

1          THE COURT:  You mean liar?

2          MR. FRAM:  That the plaintiffs had come up with a

3    story that was consistent, I think the evidence supports that.

4    I think if the jury had an opportunity to address that issue,

5    they would have agreed, but they didn't.  But the point is to

6    focus on the Rule 11 issue, we didn't set out to prove and

7    didn't allege there was perjury or subornation of perjury, but

8    we argued that was there was false testimony.

9          THE COURT:  False testimony is one thing.  Testimony,

10   or let's call it inaccurate, that's one thing, testimony that

11   is inaccurate.  It's quite another thing for a lawyer to

12   either know it's false, or worse, work the witnesses over to

13   get them to say that --

14         MR. FRAM:  Your Honor, this goes --

15         THE COURT:  -- that's a big difference.  I mean,

16   there's testimony all the time that a witness gives that turns

17   out to be inaccurate for one reason or another.  But --

18         MR. FRAM:  Back to the point -- I go back to the

19   point that your Honor made a couple moments ago, which is that

20   your Honor expected and believed from observing the trial that

21   all of the lawyers were extraordinarily well prepared, and

22   that was certainly our assumption and our understanding with

23   respect to Mr. Jacobson.  That's why when he put Mr. Hollander

24   on, Mr. Hollander testified the way that he did, sat there and

25   said, wait a minute, how could he be putting that testimony on

1    when he has a well prepared lawyer, has talked to the witness

2    ahead of time, must have looked at a documents, must have

3    understood that the documents clearly show he wasn't there.

4    So I think your Honor's comments --

5              THE COURT:  Well, no, I'm reading right now in

6    Wilder's own testimony, and he says now I am confident I was

7    not there.  This is that section of the 100 percent

8    confidence.  I am confident I was not there on April 2nd

9    because I learned of the vote on April 2nd by telephone.  And

10   I learned, as a result of this proceeding, that the vote was

11   taken on April 2nd not April 1st.  He's not really testifying

12   from his memory, he's testifying from basically what he

13   learned from the litigation.

14             MR. FRAM:  Your Honor, he obviously knew on the 2nd

15   from the telephone calls that are reflected in his invoice

16   about the vote, and he certainly knew well before the

17   litigation about the vote.  Because, as your Honor knows,

18   he -- because TWA and MEC for the rest of the year proposed a

19   different litigation and the like.

20             But in terms of the argument, the assertion here that

21   the facts were wrong, every single fact that we relied upon in

22   the revocation motion is an accurate fact.  And there isn't a

23   single fact in there that's not and there isn't a single fact

24   that we could have found that is contrary to that.  And we

25   certainly didn't anticipate, for example, that Mr. Jacobson

1    would come back and say, well, I was confused and unprepared.

2    I never would have expected that.  Your Honor never would have

3    expected that.  We certainly didn't anticipate the argument

4    that Wilder's bills, that he exercised billing judgment and

5    wrote off time and submitted a bill that was inaccurate.

6    Those are arguments that I don't think -- they're really

7    arguments, they're not facts.  And the issue here really is

8    whether -- not whether the facts that we've advanced for the

9    *pro hac vice* motion are accurate, they're clearly accurate,

10   there's no suggestion otherwise, but whether the inference

11   that you draw from those facts is an inference that's

12   warranted or not.

13          And for all of the reasons that I argued to the jury in

14   my closing and for all of the reasons that are outlined in the

15   papers, we believe that they are warranted and that a

16   reasonable person could reach that conclusion.

17          THE COURT:  You know, you use the phrase in your

18   brief at Page 15 without consciously synthesizing their

19   stories.

20          MR. FRAM:  Yes.  Yes, your Honor.

21          THE COURT:  That's suborning perjury.

22          MR. FRAM:  Your Honor, what we still don't have is we

23   don't know don't have an explanation for how witnesses --

24          THE COURT:  That's what you don't have.  You can't

25   bring a motion on what you don't have.

```
 1            MR. FRAM:  No, the only inference that I think can be
 2   drawn from the fact that the stories went from inconsistent to
 3   consistent and from vague to very detailed with respect to
 4   April 2nd and that all of a sudden people came in and had no
 5   recollection of March 21st and 22nd, that can't be
 6   inconsistent, that can't be --
 7            THE COURT:  You're rearguing the motion now.
 8            MR. FRAM:  No.
 9            THE COURT:  But my point only is that it's a
10   devastating accusation against a lawyer.
11            MR. FRAM:  Your Honor, I appreciate that and I
12   understand the Court's concern about that, but there was a lot
13   at stake at the trial, you sat through it and clearly
14   appreciate that someone's recollection was not accurate.  And
15   I think you appreciate as well --
16            THE COURT:  I think there were a ton of recollections
17   that were not accurate.
18            MR. FRAM:  And that some of the testimony in view of
19   that was false.
20            THE COURT:  I don't think there's a single witness
21   who testified who gave a fully accurate recounting of the
22   events about which he or she testified.
23            MR. FRAM:  So again --
24            THE COURT:  Not one witness on other side.
25            MR. FRAM:  And that's what happens, your Honor.
```

```
 1          THE COURT:  Yeah, that happens.  That's not to say

 2  that you don't have a trial because of that, that's what

 3  happens in trial.

 4          MR. FRAM:  Absolutely, your Honor.

 5          THE COURT:  But I don't think -- I don't think

 6  Woerth -- I think Woerth shaded his testimony.  I think --

 7  that doesn't mean he deliberately lied, but I think testimony

 8  was -- every single witness in some respect shaded their

 9  testimony one way or another, not necessarily deliberately but

10  gave a picture that was not really completely accurate.  But

11  so what?  You know, that's what a jury is for, to sort that

12  out.

13          MR. FRAM:  Your Honor, and that's what happens when

14  you deal with a case with lots of witnesses and lots of

15  events.  But the fact of the matter is that there was some

16  testimony, it's been admitted, that was false, including the

17  Hollander testimony, and the fair inference, and we've cited

18  Justice Frankfurter --

19          THE COURT:  And the fair inference is that the

20  lawyers suborned it?

21          MR. FRAM:  No.  No.  No.  The fair inference is that

22  the lawyers knew that certain of the testimony was false.

23          THE COURT:  And that they put it on and argued it.

24          MR. FRAM:  I think they did.

25          THE COURT:  I mean, the line between doing that is
```

1   suborning perjury, although I think you in your brief you

2   crossed -- a person reading that brief would reach the

3   conclusion that you're charging subornation.

4          MR. FRAM:  Your Honor, that's not what the brief says

5   and that's not the standard, and whether or not somebody

6   looking at these facts could reach that conclusion is a

7   different matter.  But the fact remains that a lawyer knowing

8   the facts and knowing the documents and everything else, I

9   think, no question in my mind, that a fair inference from what

10  happened here in terms of the --

11         THE COURT:  Now, you're rearguing the motion, you're

12  not arguing whether there should be sanctions.

13         MR. FRAM:  Well, your Honor, what I'm arguing is that

14  the facts we rely upon, it sounds like it's the only --

15         THE COURT:  Well, the facts are -- the core facts

16  that we start with is what was testified to at trial, what was

17  testified to in prior depositions, what was contained in a

18  couple of case declarations, those facts are uncontested.  You

19  know, what's in the transcript is in the transcript, what's in

20  the depositions is in the depositions, what's in the -- so

21  those facts are all true.

22         MR. FRAM:  Yes, your Honor.

23         THE COURT:  That's why I maybe take -- the question

24  is the facts, to the extent that the facts that are relevant

25  to your motion, though, are not those facts, the facts that

1    are relevant to your motion would be did the two lawyers

2    knowing that testimony was false deliberately put it before

3    the jury, before the tribunal and argue it when they knew it

4    was false or even worse, did they suborn it, did they actually

5    take the six witnesses and by, quote, preparing them harmonize

6    their testimony or, in the words of your brief, did they

7    synthesize their stories.  Those are allegations about the

8    state of mind of the plaintiff's lawyers and you want me to

9    draw an inference as to what that state of mind was.  From

10   your interpretation of the evidence, you're talking about

11   Wilder correcting his testimony.  But Wilder changed his

12   testimony.  I don't know if he corrected it, he changed it.

13   And somehow or other the use of adverbs or adjectives doesn't

14   really help the argument any.  And the notion here that

15   defense counsel deliberately put on false testimony because

16   you reached the conclusion that a certain version of the facts

17   are true and another version is false, as you can tell by my

18   ruling on the underlying motion, I have a lot of trouble with.

19          MR. FRAM:  You just said defense counsel.

20          THE COURT:  Well, it's the plaintiff's counsel.

21          MR. FRAM:  Yes.  Well, your Honor, look, you

22   obviously don't feel that we have met the burden of proving

23   that.  But to focus on Rule 11, is there any fact we cited in

24   the brief that is not accurate or is there any other

25   information available to us that --

```
 1          THE COURT:  Well, it's the legal -- basically, the
 2   implicit fact has to do with the state of mind of the defense
 3   counsel because that's inherent to your motion.  If defense
 4   counsel -- I'm sorry.  Plaintiff's counsel.  If plaintiff's
 5   counsel believed everything they put on was true, even if it
 6   turned out not to be true or the jury found it not to be true,
 7   isn't a ground for, you know, sanctioning them in any way.  So
 8   implicit in your motion is the charge that the state of mind
 9   of the plaintiffs was venal, that they either knew something
10   was false when they offered it and argued it and even worse
11   the inference in your papers that the lawyers had something to
12   do with harmonizing, in your view, the testimony of the pilots
13   who testified that Wilder was present, and that's the fact
14   that's highly contested.
15          MR. FRAM:  Your Honor, that inference from the facts,
16   again no one has challenged the facts and said --
17          THE COURT:  No.  No.  But it's also -- maybe it's a
18   mixed conclusion of fact and law, you're reaching a legal
19   conclusion that the rules of ethics were violated by the
20   lawyers in the case and you can't get there without arguing
21   the state of mind of the two lawyers.
22          MR. FRAM:  And one of the bases for that argument,
23   which your Honor mentioned before, is that you expected all
24   the lawyers on both sides were well prepared and understood
25   the record.
```

1          THE COURT:  And I believe they did.

2          MR. FRAM:  And that's why, with respect to

3  April 23rd, we reached the conclusion, I reached the

4  conclusion that Mr. Jacobson knew the documents relating to

5  the meeting, was familiar with the record, and when he put

6  Mr. Hollander up on the stand and had him testify he was there

7  on the 23rd.

8          THE COURT:  So in his mind he knew there were

9  documents that said that and he knew in the sense of, whatever

10  the word is, had reason to believe that the testimony was

11  false but he put it on anyhow in the hope that you wouldn't

12  catch it.

13          MR. FRAM:  Well, your Honor --

14          THE COURT:  Is that your argument?

15          MR. FRAM:  That's the only conclusion to reach.

16          THE COURT:  No, it's not the only conclusion to

17  reach.  There's an affidavit from Mr. Jacobson which gives a

18  different conclusion.  It's not the only conclusion.  You

19  can't use words like, oh, that's the only conclusion, that's

20  not argument.

21          MR. FRAM:  Your Honor, I didn't anticipate that

22  Mr. Jacobson would say I was unprepared for this very

23  important case on this important issue.

24          THE COURT:  No, he's saying that he was -- you know,

25  there were tons of witnesses, to say he wasn't aware of a

1  particular document or hadn't talked to this particular

2  witness, is not the same as saying he was unprepared.  Come

3  on, that's not fair.

4          MR. FRAM:  Jacobson only presented, if my

5  recollection is right, he only presented one or two of the

6  plaintiffs.

7          THE COURT:  Yeah, that's the point, he only, although

8  he was there, I think, every day, he only presented a couple

9  of witnesses, I believe.  I think you're right on that.

10         MR. FRAM:  That's my recollection.  And I would have

11  expected him to know the record backwards and forwards, as any

12  lawyer would have, and from the state of the minutes that

13  Hollander wasn't there.

14         THE COURT:  Anything further by either side?

15         MR. FRAM:  No, your Honor.

16         MR. PRESS:  Judge, it's Mr. Press.

17      You've been saying that --

18         THE COURT:  Me?

19         MR. PRESS:  You've been saying that the notion we've

20  suborned perjury is something to be inferred from ALPA's

21  brief, but they say it directly.

22         THE COURT:  Tell me where.

23         MR. PRESS:  Pages 26 and 27, that I knowingly induced

24  Roland Wilder to testify falsely.

25         THE COURT:  Just a minute.  26.  I have 26 in front

1    of me.

2          MR. PRESS:  26, Subparagraph 1, that's in the single

3    spacing at the bottom.  Then the next page at Paragraph 5 he

4    says that I had five witnesses testifying falsely knowing the

5    truth.

6          THE COURT:  Yeah, by having --

7              (Reading Silently)

8          THE COURT:  All right.

9          MR. PRESS:  They say that I coached, that's their

10   term, I coached witnesses.

11         THE COURT:  Where is that?

12         MR. PRESS:  That's on Page 26 in the middle.

13         THE COURT:  Improperly coached.

14         MR. PRESS:  Yes.

15         THE COURT:  That subornation.

16         MR. PRESS:  The direct charge is that we suborned

17   perjury, Judge.

18         THE COURT:  No, when I read the thing as a whole and,

19   as I said, I read it several times, I was left with the

20   impression fundamentally that the only way you could read this

21   was a charge of subornation.  I didn't focus on the word

22   coaching, I should have.

23         MR. PRESS:  I just wanted to highlight that, Judge.

24   That's all I wanted to add.

25         THE COURT:  Unless anybody has anything they want to

 1    add, I'm going to rule.

 2         All right.  With respect to the motion by the plaintiff

 3    for Rule 11 sanctions, I'm going to grant the motion.  I find

 4    there was a violation of (b)(2) and (b)(3).  I think (b)(3),

 5    to the extent it charges, well, coaching the witnesses, but it

 6    charges in effect a guilty state of mind, that's a factual

 7    assertion as to what the two lawyers were thinking or believed

 8    when they put the testimony on.  And I believe the brief can

 9    fairly be read to charge not only knowingly putting on false

10    testimony but putting on -- but having suborned it, having

11    taken steps to, as they say, the word coach to make the

12    witnesses testify to something they know to be false, they

13    knew to be false, the lawyers knew to be false.  So to the

14    extent we're dealing with a guilty state of mind or the

15    argument that there was coaching of some kind or suborning

16    perjury of some kind, I believe there's no factual support for

17    that.  And I don't believe the inferences that the defendant

18    is trying to draw are adequate support for charges of that

19    seriousness.  Even applying a preponderance of the evidence

20    standard, I don't believe by a preponderance of the evidence

21    that they've proven that Mr. Press or Mr. Jacobson had a

22    guilty state of mind when that evidence was offered, either

23    that they knew it to be false and offered it knowing its

24    falsity, or even worse, played a role by coaching or otherwise

25    in creating that falsity.  As I say in this case, there were

1   no surprises, everybody had everything.  That's (b)(3).

2       (b)(2) is requirements that there has to be a proper

3   legal contention that's warranted by existing law.  I think

4   the question to some degree whether there was a violation of

5   the ethics rules, could be construed as an issue of law as

6   well as an issue of fact.  And I think that based on the facts

7   that I did find were supported, i.e., what the depositions

8   said, what the testimony said, since we had transcripts of all

9   of that, I do not believe there was a sound legal conclusion

10  or sound legal basis for concluding under existing law or by

11  an extension of existing law that the rules of ethics were

12  violated and therefore that revoking a *pro hac vice* admission

13  would be justified.

14      And understand, I believe that if I found a violation,

15  particularly of the obligation of candor to the tribunal, I

16  believe that under many circumstances that could justify, as a

17  matter of law, revoking a *pro hac vice* admission.  I think it

18  could also justify much more severe sanctions, like suspension

19  or disbarment.  But I found in this case such facts, as were

20  established, do not justify that legal conclusion.

21      I am therefore, going to grant the motion.  I'm giving

22  the plaintiffs 14 days to submit an affidavit as to what legal

23  fees.  I'm imposing, in other words, the legal fees in

24  defending this motion.  I'm imposing, in addition to that,

25  imposing a $5,000 sanction in addition to legal fees and

 1    costs, which has to be paid within 30 days.

 2          Anything further?

 3            MR. FRAM:  I don't believe the motion sought

 4    sanctions based upon --

 5            THE COURT:  I'm awarding.

 6            MR. FRAM:  -- the failure -- I just wanted to make

 7    sure the Court was aware.

 8            THE COURT:  Well, if they disclaim receiving

 9    sanctions, I will withdraw it.

10            MR. FRAM:  No, your Honor, seeking sanctions on the

11    failure to investigate the law properly, I thought it was a

12    factual investigation.

13            THE COURT:  Well, I think there's a close line here,

14    it's sort of a mixed question of law and fact and I'm sticking

15    with my ruling.

16            MR. FRAM:  I understand, your Honor.

17            THE COURT:  Okay.

18            MR. PRESS:  The $5,000 on top of the legal fees, who

19    is to receive that money?

20            THE COURT:  You.

21            MR. PRESS:  Me, Mr. Press, or my firm?

22            THE COURT:  Your law firm.  I don't want to get into

23    a partnership agreement.

24            MR. PRESS:  Okay.

25            THE COURT:  You know, as to how that would be --

1   well, I'll do it this way, it's $2,500 each for you and for

2   Mr. Jacobson.

3          MR. PRESS:  Okay.

4          THE COURT:  All right.  How your law firm deals with

5   it, I'll leave it up to you.  I used to represent law firms

6   where money was somehow or other paid and law firms suggested

7   they were entitled to the money not the lawyers.  So I'll let

8   your partnership agreement deal with that.

9          MR. FRAM:  Your Honor, could I just clarify in terms

10  of who the award is against?  I assume it's against me.

11         THE COURT:  Yes, it's not against the client.

12         MR. FRAM:  I just wanted to make sure.

13         THE COURT:  It's not against ALPA.  I have nothing in

14  the record that has suggested that somehow or other, and there

15  are cases where there is authority that Rule 11 can be against

16  a client if you can show, I believe if you can show that the

17  client played some role in bringing about the improper filing.

18  But I don't find that here.  Maybe it was there but I don't

19  know about it, nothing in this record has suggested to me that

20  the motion was somehow or other ALPA's internal people were

21  beating up on outside counsel to file this motion.  So far as

22  I know, this motion was the result of counsel's work.  So, no.

23  And I'm also, actually, as part of my Order, that no part of

24  the $5,000 and no part of the fees can be charged back to

25  ALPA.

1          MR. FRAM:  Yes, your Honor.

2          THE COURT:  Okay.  I want that in the Order.

3      Anything else?

4      By the way, Lisa Marcus, since I have a feeling that

5  someone's going to want this transcript, is the court

6  reporter.  She is Judge Simandle's full-time court report but

7  today she's sitting in for me.  Okay?

8          MR. PRESS:  Thank you, Judge.

9          THE COURT:  Okay.  I'll see you later.

10             (Proceedings Concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

C E R T I F I C A T E

7

8

9

10

11        I, LISA MARCUS, Official Court Reporter for the
United States District Court for the District of New Jersey,
Certified Shorthand Reporter and Notary Public of the State of
12   New Jersey, do hereby certify that the foregoing is a true and
accurate transcription of my original stenographic notes to
13   the best of my ability of the matter hereinbefore set forth.

14

                        s/Lisa Marcus
15                        LISA MARCUS
                        Official U.S. Reporter
16                        N.J. Certificate No. XIO1492

17

DATE:   September 26, 2011
18

19

20

21

22

23

24

25

*United States District Court*
*Camden, New Jersey*

## $

**$2,500** [1] - 58:1
**$5,000** [3] - 56:25, 57:18, 58:24

## '

**'fessed** [1] - 16:16

## 0

**02-2917** [1] - 1:5
**08101** [1] - 1:13

## 1

**1** [1] - 54:2
**100** [3] - 7:25, 35:5, 45:7
**11** [13] - 4:5, 4:8, 29:1, 29:4, 30:22, 30:23, 39:7, 39:14, 39:17, 44:6, 50:23, 55:3, 58:15
**11(b)(2** [1] - 39:21
**11(c)(2** [2] - 4:9, 39:4
**14** [1] - 56:22
**1492** [1] - 1:25
**14th** [1] - 12:13
**15** [1] - 46:18
**1901** [2] - 34:10, 34:11
**1986** [1] - 12:12
**1996** [1] - 12:13
**1st** [7] - 7:9, 10:13, 10:14, 35:13, 35:19, 35:23, 45:11

## 2

**20** [1] - 30:22
**2002** [1] - 38:2
**2008** [1] - 5:16
**2011** [2] - 1:14, 60:17
**21** [1] - 13:7
**21st** [2] - 14:4, 47:5
**22** [2] - 1:14, 13:7
**22nd** [2] - 14:5, 47:5
**23rd** [11] - 16:5, 16:14, 17:6, 17:23, 21:13, 27:1, 27:7, 29:14, 31:8, 52:3, 52:7
**26** [6] - 53:23, 53:25, 54:2, 54:12, 60:17
**27** [1] - 53:23
**2nd** [29] - 6:10, 6:16, 6:25, 7:3, 8:5, 9:18, 10:14, 13:4, 13:11, 26:2, 28:10, 29:16, 31:24, 32:1, 34:19, 35:5, 35:14, 35:24, 36:6, 41:23, 42:18, 42:20, 45:8, 45:9, 45:11, 45:14, 47:4

## 3

**3.3** [1] - 26:7
**30** [1] - 57:1

## 4

**45** [1] - 12:8
**4th** [1] - 12:12
**4TH** [1] - 1:13

## 5

**5** [1] - 54:3
**50** [1] - 33:20

## 8

**856** [1] - 1:14

## 9

**968-4986** [1] - 1:14

## A

**ability** [1] - 60:13
**able** [4] - 19:1, 23:11, 23:12, 38:22
**absence** [3] - 25:9, 25:14, 34:19
**absolutely** [4] - 21:24, 23:20, 33:22, 48:4
**accept** [2] - 22:17, 37:9
**access** [1] - 28:1
**Acchione** [1] - 3:13
**ACCHIONE** [2] - 1:21, 3:13
**accident** [1] - 14:21
**accidents** [1] - 18:21
**accurate** [9] - 45:22, 46:9, 47:14, 47:17, 47:21, 48:10, 50:24, 60:12
**accusation** [1] - 47:10
**accusations** [2] - 30:19, 32:16
**accuse** [5] - 8:12, 8:17, 8:19, 36:12, 43:17
**accused** [3] - 8:20, 9:13, 30:14
**accusing** [1] - 10:19
**acquired** [1] - 34:22
**ACTION** [1] - 1:5
**adamantly** [1] - 43:6
**add** [12] - 29:9, 29:10, 30:10, 30:11, 30:24, 32:13, 32:15, 33:5, 39:10, 40:16, 54:24, 55:1
**adding** [1] - 5:19
**addition** [4] - 13:3, 35:1, 56:24, 56:25
**address** [3] - 23:11, 25:15, 44:4
**addressing** [1] - 28:15

**adds** [1] - 5:19
**adequate** [1] - 55:18
**adjectives** [1] - 50:13
**admissible** [1] - 22:3
**admission** [6] - 4:4, 13:2, 26:19, 38:25, 56:12, 56:17
**ADMISSION** [1] - 1:7
**admit** [1] - 15:24
**admits** [1] - 18:4
**admitted** [3] - 18:5, 27:11, 48:16
**advanced** [1] - 46:8
**adverbs** [1] - 50:13
**advice** [1] - 14:4
**affidavit** [2] - 52:17, 56:22
**affidavits** [1] - 4:24
**afternoon** [1] - 3:2
**agenda** [2] - 9:18, 9:20
**ago** [6] - 7:13, 10:11, 11:1, 27:13, 33:20, 44:19
**agree** [9] - 11:16, 13:20, 13:23, 26:10, 26:19, 27:23, 39:13, 42:10
**agreed** [5] - 11:7, 11:9, 11:15, 11:16, 44:5
**agreement** [3] - 12:10, 57:23, 58:8
**ahead** [4] - 3:18, 22:18, 22:19, 45:2
**airline** [2] - 6:4, 35:10
**AIRLINE** [1] - 1:9
**AK-47** [1] - 30:5
**Albany** [1] - 34:12
**allegation** [3] - 29:24, 37:24, 39:24
**allegations** [3] - 30:18, 39:12, 50:7
**allege** [1] - 44:7
**alleged** [2] - 16:12, 30:21
**allegedly** [1] - 22:11
**ALLEN** [1] - 2:4
**Allen** [5] - 3:14, 4:4, 29:18, 29:19, 31:22
**allow** [1] - 34:13
**allowed** [2] - 14:7, 32:8
**almost** [5] - 24:21, 31:18, 37:1, 37:17, 39:12
**ALPA** [4] - 3:19, 22:3, 58:13, 58:25
**ALPA's** [2] - 53:20, 58:20
**als** [1] - 1:3
**amazed** [1] - 33:19
**ambiguous** [1] - 11:12
**American** [1] - 34:22
**AND** [4] - 1:13, 1:21, 2:3, 2:6
**answer** [3] - 21:24, 22:7, 43:19
**anticipate** [4] - 5:1, 45:25, 46:3, 52:21
**anticipated** [1] - 4:17
**anyhow** [4] - 19:2, 23:8, 30:2, 52:11
**apart** [1] - 13:3
**apologize** [1] - 36:18
**App** [2] - 12:14, 12:15
**appearances** [1] - 3:8
**application** [3] - 4:3, 4:7, 4:10
**applications** [1] - 4:3
**applying** [1] - 55:19
**appointed** [2] - 27:17, 32:10

**appreciate** [5] - 19:13, 24:7, 47:11, 47:14, 47:15
**appropriate** [3] - 28:17, 39:18, 39:20
**April** [30] - 6:10, 8:5, 9:18, 13:4, 13:11, 16:5, 16:14, 17:23, 21:13, 26:2, 27:1, 29:14, 29:16, 31:8, 31:23, 32:1, 34:19, 35:5, 35:13, 35:14, 35:19, 35:23, 35:24, 36:6, 45:8, 45:9, 45:11, 47:4, 52:3
**ARCHER** [1] - 2:5
**argue** [7] - 4:22, 5:2, 6:15, 14:7, 19:19, 39:8, 50:3
**argued** [8] - 12:23, 12:24, 14:8, 38:23, 44:8, 46:13, 48:23, 51:10
**arguing** [6] - 4:17, 25:22, 26:4, 49:12, 49:13, 51:20
**argument** [15] - 5:12, 5:20, 11:3, 20:21, 22:24, 29:17, 37:17, 40:2, 45:20, 46:3, 50:14, 51:22, 52:14, 52:20, 55:15
**arguments** [2] - 46:6, 46:7
**arrived** [2] - 35:19, 35:22
**article** [2] - 34:10, 34:12
**assertion** [3] - 42:16, 45:20, 55:7
**assistants** [1] - 24:3
**associates** [1] - 31:6
**ASSOCIATION** [1] - 1:9
**assume** [1] - 58:10
**assumption** [1] - 44:22
**attaching** [2] - 15:19
**attempt** [2] - 31:20, 32:2
**attend** [1] - 23:5
**ATTORNEYS** [3] - 1:22, 2:4, 2:7
**August** [1] - 5:16
**aura** [1] - 29:14
**authority** [1] - 58:15
**automobile** [1] - 18:21
**available** [1] - 50:25
**award** [1] - 58:10
**awarding** [1] - 57:5
**aware** [3] - 22:22, 52:25, 57:7

---

## B

**b)(2** [3] - 39:25, 55:4, 56:2
**b)(3** [1] - 55:4
**b)(3)** [3] - 40:5, 55:4, 56:1
**background** [1] - 40:20
**backwards** [1] - 53:11
**Bamman** [1] - 3:6
**Bar** [1] - 36:17
**based** [18] - 6:2, 6:3, 6:4, 6:5, 7:21, 7:22, 7:24, 8:1, 8:4, 8:16, 19:15, 20:25, 35:6, 35:8, 35:10, 56:6, 57:4
**bases** [1] - 51:22
**basis** [1] - 56:10
**beating** [1] - 58:21
**becomes** [1] - 42:14
**behind** [1] - 4:12
**behooves** [1] - 4:21

---

**belief** [1] - 30:17
**believes** [1] - 40:9
**bench** [1] - 32:10
**best** [3] - 17:17, 30:3, 60:13
**betraying** [1] - 30:7
**better** [2] - 24:21, 41:10
**between** [6] - 10:13, 34:7, 34:24, 36:7, 43:15, 48:25
**beyond** [1] - 27:22
**big** [4] - 17:17, 22:11, 22:16, 44:15
**bill** [4] - 6:3, 9:7, 35:9, 46:5
**billing** [1] - 9:12, 10:24, 46:4
**bills** [2] - 9:13, 46:4
**bit** [1] - 14:18
**blocked** [1] - 10:24
**blurb** [1] - 23:4
**body** [2] - 11:13, 12:18
**book** [1] - 6:3
**bottom** [1] - 54:3
**BRADY** [1] - 1:3
**break** [1] - 29:13
**brief** [26] - 4:18, 4:20, 6:14, 14:22, 14:25, 15:2, 15:4, 15:5, 15:6, 15:15, 19:18, 28:3, 31:1, 37:8, 42:21, 43:20, 46:18, 49:1, 49:2, 49:4, 50:6, 50:24, 53:21, 55:8
**briefs** [1] - 5:10
**bring** [2] - 38:23, 46:25
**bringing** [2] - 4:6, 58:17
**brought** [3] - 38:4, 38:5, 38:18
**bullet** [1] - 43:15
**burden** [3] - 27:21, 28:15, 50:22
**buried** [1] - 4:7
**Bush** [1] - 27:17
**business** [1] - 29:16
**buy** [1] - 14:5
**buzzing** [2] - 40:20, 40:23
**bye** [4] - 36:23, 36:24
**bye-bye** [2] - 36:23, 36:24

---

## C

**C.S.R** [1] - 1:24
**calm** [1] - 30:6
**CAMDEN** [1] - 1:13
**camp** [1] - 12:3
**candidates** [1] - 5:7
**candidly** [1] - 36:25
**candor** [2] - 26:11, 56:15
**cannot** [1] - 37:24
**Capitol** [1] - 24:14
**carefully** [1] - 19:12
**carry** [1] - 36:19
**case** [38] - 5:6, 9:1, 9:16, 10:9, 10:10, 12:7, 12:10, 12:20, 12:23, 13:9, 13:15, 16:2, 22:12, 22:16, 22:22, 23:15, 24:5, 28:18, 31:2, 31:5, 32:1, 32:8, 33:2, 33:8, 37:4, 37:25, 38:1, 38:2, 38:4, 38:5, 39:1, 42:19, 48:14, 49:18, 51:20,

---

52:23, 55:25, 56:19
**Case** [3] - 18:6, 22:25, 23:4
**cases** [5] - 9:15, 18:18, 18:19, 38:7, 58:15
**catch** [5] - 23:12, 25:19, 25:20, 37:23, 52:12
**caught** [1] - 26:5
**causes** [1] - 33:25
**cell** [2] - 40:24, 41:4
**certain** [4] - 7:25, 35:5, 48:22, 50:16
**certainly** [11] - 11:5, 12:3, 14:12, 19:13, 22:22, 28:18, 38:22, 44:22, 45:16, 45:25, 46:3
**CERTIFICATE** [1] - 1:25
**Certificate** [1] - 60:16
**certification** [2] - 35:1, 35:2
**Certified** [1] - 60:11
**certify** [1] - 60:12
**cetera** [1] - 15:12
**challenged** [1] - 51:16
**chance** [1] - 26:13
**change** [3] - 9:10, 34:6, 34:8
**changed** [8] - 7:16, 7:17, 8:24, 9:22, 34:23, 34:25, 50:11, 50:12
**changes** [1] - 20:8
**changing** [1] - 9:1
**characterization** [1] - 39:13
**characterized** [1] - 39:12
**charge** [7] - 8:15, 20:17, 37:2, 51:8, 54:16, 54:21, 55:9
**charged** [2] - 17:19, 58:24
**charges** [3] - 55:5, 55:6, 55:18
**charging** [1] - 49:3
**Chief** [1] - 36:17
**Circuit** [1] - 38:4
**circumstances** [3] - 20:4, 21:8, 56:16
**cited** [3] - 24:12, 48:17, 50:23
**civil** [1] - 39:17
**CIVIL** [1] - 1:5
**claim** [1] - 39:23
**claims** [2] - 39:25, 40:12
**clarify** [1] - 58:9
**clarity** [1] - 15:14
**class** [1] - 42:3
**Clay** [6] - 6:15, 36:1, 41:14, 41:16
**clay** [1] - 36:2
**clear** [6] - 5:20, 6:2, 11:17, 16:15, 21:20, 27:5
**clearly** [14] - 4:22, 5:17, 5:18, 5:19, 14:22, 25:1, 29:13, 41:18, 42:9, 42:12, 42:13, 45:3, 46:9, 47:13
**clerk** [1] - 3:6
**client** [3] - 58:11, 58:16, 58:17
**close** [3] - 8:14, 26:18, 57:13
**closing** [3] - 12:24, 43:24, 46:14
**coach** [1] - 55:11
**coached** [4] - 29:23, 54:9, 54:10, 54:13
**coaching** [4] - 54:22, 55:5, 55:15, 55:24
**coin** [1] - 39:3

**coincidence** [3] - 13:8, 13:24, 13:25
**cold** [2] - 42:5
**Comlish** [4] - 24:12, 25:5, 32:15, 32:23
**Comlish's** [1] - 24:25
**comment** [1] - 25:18
**commented** [4] - 20:6, 41:1, 41:11, 42:7
**comments** [2] - 30:1, 45:4
**committees** [2] - 33:12, 33:13
**company** [1] - 34:22
**complete** [1] - 13:25
**completed** [1] - 31:4
**completely** [1] - 48:10
**complex** [1] - 37:20
**complicated** [2] - 18:18
**comported** [1] - 11:14
**conceal** [1] - 16:21
**concern** [1] - 47:12
**concerned** [1] - 25:23
**conclude** [1] - 6:7
**Concluded** [1] - 59:10
**concludes** [1] - 35:11
**concluding** [1] - 56:10
**conclusion** [23] - 20:7, 20:8, 20:25, 21:7, 21:8, 25:16, 35:8, 36:9, 46:16, 49:3, 49:6, 50:16, 51:18, 51:19, 52:3, 52:4, 52:15, 52:16, 52:18, 52:19, 56:9, 56:20
**confidence** [1] - 45:8
**confident** [2] - 45:6, 45:8
**conflate** [1] - 10:16
**conflates** [1] - 35:12
**conflating** [1] - 35:15
**conformed** [3] - 20:11, 20:12, 20:16
**confronted** [3] - 16:16, 24:19, 37:10
**confronting** [1] - 24:14
**confused** [8] - 10:16, 16:18, 17:1, 31:13, 33:17, 46:1
**confusing** [1] - 24:25
**confusion** [2] - 16:15, 22:20
**Connell** [2] - 3:20, 3:21
**consciously** [1] - 46:18
**consider** [1] - 33:21
**consistency** [1] - 19:19
**consistent** [5] - 15:11, 21:10, 24:10, 44:3, 47:3
**conspiracy** [1] - 31:23
**constant** [1] - 16:19
**construed** [3] - 7:7, 42:22, 56:5
**contact** [1] - 16:19
**contained** [1] - 49:17
**contention** [1] - 56:3
**contentions** [2] - 40:1, 40:6
**contentious** [1] - 28:19
**contested** [1] - 51:14
**continue** [2] - 28:18, 32:9
**continues** [1] - 28:19
**continuing** [1] - 39:1
**contradicted** [1] - 7:11
**contrary** [2] - 11:20, 45:24

**control** [1] - 12:3
**COOPER** [1] - 1:13
**core** [1] - 49:15
**correct** [2] - 7:16, 20:2
**corrected** [4] - 7:15, 7:17, 17:10, 50:12
**correcting** [1] - 50:11
**costs** [1] - 57:1
**counsel** [10] - 19:16, 32:9, 50:15, 50:19, 50:20, 51:3, 51:4, 51:5, 58:21
**counsel's** [1] - 58:22
**count** [1] - 6:9
**country** [1] - 10:12
**couple** [4] - 15:18, 44:19, 49:18, 53:8
**course** [6] - 7:11, 16:9, 27:21, 34:20, 41:23, 41:24
**Court** [10] - 5:8, 12:14, 25:22, 28:17, 28:24, 31:18, 32:2, 57:7, 60:10, 60:11
**court** [4] - 3:5, 4:1, 59:5, 59:6
**COURT** [185] - 1:1, 3:1, 3:4, 3:12, 3:16, 3:18, 3:21, 3:24, 4:19, 5:3, 5:18, 5:23, 6:17, 6:19, 6:21, 6:23, 7:1, 7:4, 7:6, 7:12, 7:19, 8:1, 8:6, 8:10, 8:19, 9:1, 9:6, 9:20, 10:1, 10:9, 10:23, 11:8, 11:21, 11:25, 12:7, 13:10, 13:14, 13:19, 13:22, 14:2, 14:7, 14:11, 14:16, 14:20, 14:25, 15:4, 15:8, 15:17, 15:23, 16:1, 16:7, 16:11, 17:1, 17:7, 17:12, 17:16, 17:24, 18:1, 18:3, 18:7, 18:12, 18:17, 19:2, 19:6, 19:10, 19:18, 20:1, 20:12, 20:15, 20:19, 20:21, 20:23, 21:11, 21:15, 21:18, 21:24, 22:7, 22:21, 23:3, 23:13, 23:20, 24:2, 24:19, 24:21, 25:2, 25:7, 25:12, 26:8, 26:24, 27:2, 27:6, 27:17, 27:23, 28:5, 28:22, 29:2, 29:9, 29:11, 29:19, 29:22, 30:2, 30:4, 30:11, 30:16, 30:25, 32:11, 32:13, 32:20, 33:4, 33:7, 35:22, 36:15, 36:19, 36:22, 36:24, 39:21, 39:25, 40:6, 40:15, 40:18, 40:22, 41:3, 41:7, 41:9, 41:16, 42:6, 42:10, 42:22, 43:3, 43:8, 43:11, 43:14, 43:19, 44:1, 44:9, 44:15, 45:5, 46:17, 46:21, 46:24, 47:7, 47:9, 47:16, 47:20, 47:24, 48:1, 48:5, 48:19, 48:23, 48:25, 49:11, 49:15, 49:23, 50:20, 51:1, 51:17, 52:1, 52:8, 52:14, 52:16, 52:24, 53:7, 53:14, 53:18, 53:22, 53:25, 54:6, 54:8, 54:11, 54:13, 54:15, 54:18, 54:25, 57:5, 57:8, 57:13, 57:17, 57:20, 57:22, 57:25, 58:4, 58:11, 58:13, 59:2, 59:9
**Court's** [2] - 24:7, 47:12
**COURTHOUSE** [1] - 1:12
**courtroom** [1] - 3:5
**create** [1] - 15:11
**creating** [1] - 55:25
**credibility** [2] - 25:21, 32:25
**credible** [1] - 27:15
**cross** [5] - 17:11, 17:13, 22:6, 27:11, 31:15, 37:10, 38:17, 38:19
**cross-examination** [5] - 17:13, 22:6,

37:10, 38:17, 38:19
**crossed** [2] - 17:7, 49:2
**cry** [1] - 25:3
**crystal** [2] - 11:16, 15:14
**cudgels** [1] - 36:20
**cups** [1] - 19:6

**D**

**Dan** [1] - 3:22
**DANIEL** [1] - 2:7
**DATE** [1] - 60:17
**date** [3] - 4:1, 32:7, 41:17
**Dave** [2] - 6:22, 6:24
**David** [1] - 36:3
**daybook** [4] - 9:7, 9:8, 10:25, 35:9
**days** [2] - 56:22, 57:1
**deal** [4] - 4:2, 5:10, 29:2, 48:14, 58:8
**dealing** [1] - 55:14
**deals** [2] - 16:13, 58:4
**dealt** [1] - 5:9
**decide** [2] - 26:1, 27:14
**decision** [2] - 11:15, 13:16
**decisions** [2] - 27:18, 27:19
**declaration** [7] - 15:19, 16:6, 19:5, 21:3, 21:14, 24:12, 28:2
**declarations** [9] - 15:16, 15:17, 15:18, 15:21, 15:24, 20:5, 28:6, 49:18
**deem** [1] - 39:20
**deeply** [1] - 4:22
**defamed** [1] - 39:16
**Defendant** [1] - 1:10
**defendant** [2] - 4:6, 55:17
**defendant's** [1] - 23:14
**defendants** [1] - 23:11
**defending** [1] - 56:24
**defense** [14] - 4:7, 4:11, 10:4, 14:2, 19:20, 19:24, 25:19, 35:25, 41:2, 41:11, 50:15, 50:19, 51:2, 51:3
**defies** [1] - 37:24
**definition** [1] - 39:4
**degree** [1] - 56:4
**deliberately** [11] - 14:21, 17:18, 18:14, 25:3, 26:9, 36:10, 37:3, 48:7, 48:9, 50:2, 50:15
**deny** [1] - 33:2, 38:24
**denying** [2] - 22:14, 39:11
**deposed** [4] - 34:2, 34:3, 34:25, 35:2
**deposition** [22] - 6:14, 8:25, 11:24, 20:8, 21:5, 24:5, 24:16, 24:17, 25:1, 25:5, 25:8, 25:17, 28:8, 34:7, 34:8, 35:7, 41:17, 41:22, 42:2, 42:5, 42:13, 42:18
**depositions** [9] - 5:16, 12:1, 18:24, 34:24, 38:20, 49:17, 49:20, 56:7
**deputy** [1] - 3:5
**describing** [1] - 36:5
**description** [1] - 35:9
**designed** [1] - 39:14

**detail** [3] - 4:24, 13:18, 20:9
**detailed** [1] - 47:3
**details** [1] - 11:23
**determinations** [1] - 33:1
**devastating** [1] - 47:10
**diary** [3] - 6:3, 9:8, 35:9
**difference** [2] - 17:18, 44:15
**differences** [1] - 36:7
**different** [9] - 14:18, 18:14, 21:4, 33:12, 38:16, 43:1, 45:19, 49:7, 52:18
**dire** [2] - 17:2, 31:9
**direct** [4] - 16:24, 20:4, 24:23, 54:16
**direction** [1] - 43:10
**directly** [3] - 16:24, 17:5, 53:21
**disagree** [5] - 10:13, 12:22, 23:20, 26:21, 41:19
**disbarment** [1] - 56:19
**disbarred** [2] - 17:20, 26:14
**disclaim** [1] - 57:8
**discuss** [1] - 16:2
**discussed** [4] - 13:6, 13:17, 13:18, 16:6
**discussing** [1] - 13:19
**discussions** [2] - 15:25, 20:10
**dismay** [1] - 19:5
**disposed** [1] - 5:5
**disputed** [1] - 9:6
**disqualify** [1] - 38:24
**distinction** [1] - 12:22
**District** [2] - 60:11
**DISTRICT** [3] - 1:1, 1:1, 1:16
**Div** [2] - 12:14, 12:15
**document** [3] - 23:22, 24:4, 53:1
**documentary** [1] - 22:23
**documents** [21] - 7:21, 7:22, 7:24, 8:1, 9:3, 9:4, 11:20, 18:16, 21:6, 23:16, 23:17, 28:1, 31:6, 37:21, 38:20, 38:22, 45:2, 45:3, 49:8, 52:4, 52:9
**dollar** [1] - 9:7
**done** [3] - 30:21, 30:22, 41:19
**doubt** [2] - 27:19, 27:22
**down** [1] - 9:15
**dozens** [1] - 33:11
**draft** [1] - 4:18
**dramatic** [1] - 24:13
**draw** [8] - 12:21, 20:8, 21:7, 42:23, 43:2, 46:11, 50:9, 55:18
**drawn** [1] - 47:2
**Duane** [4] - 24:14, 24:18, 32:17, 32:21
**dubious** [2] - 36:11, 39:13

---

**E**

**easily** [1] - 22:7
**effect** [3] - 6:4, 34:15, 55:6
**effort** [1] - 16:17
**eight** [4] - 6:9, 8:12, 10:5, 10:10
**either** [11] - 12:8, 25:1, 25:7, 25:16, 27:20, 34:24, 36:9, 44:12, 51:9, 53:14, 55:22

---

**elicited** [1] - 5:15
**emphasize** [1] - 4:14
**emphasized** [1] - 37:8
**emphasizing** [1] - 37:7
**employed** [1] - 40:8
**emulate** [1] - 30:8
**encourage** [1] - 31:20
**end** [1] - 16:18
**ending** [1] - 31:4
**engaged** [1] - 31:22
**English** [1] - 14:12
**enter** [1] - 39:19
**entitled** [4] - 30:17, 30:18, 39:6, 58:7
**entry** [4] - 6:2, 9:7, 9:8
**epiphany** [1] - 25:10
**erroneous** [2] - 24:22, 25:7
**ESQUIRE** [6] - 1:20, 1:21, 2:3, 2:4, 2:6, 2:7
**established** [1] - 56:20
**et** [2] - 1:3, 15:12
**ethics** [3] - 51:19, 56:5, 56:11
**evening** [2] - 7:9, 35:22
**event** [8] - 7:13, 8:3, 9:9, 27:20, 33:20, 34:17, 34:21, 42:14
**events** [8] - 10:10, 16:5, 26:2, 33:9, 33:19, 33:21, 47:22, 48:15
**evidence** [14] - 9:24, 10:21, 12:24, 14:14, 22:13, 22:23, 32:2, 36:10, 40:11, 44:3, 50:10, 55:19, 55:20, 55:22
**evidentiary** [2] - 39:23, 40:7
**examination** [5] - 17:13, 22:6, 37:10, 38:17, 38:19
**example** [3] - 26:25, 28:8, 45:25
**exercised** [1] - 46:4
**existing** [5] - 40:1, 40:3, 56:3, 56:10, 56:11
**expected** [6] - 34:9, 44:20, 46:2, 46:3, 51:23, 53:11
**experience** [1] - 20:5
**expert** [1] - 34:13
**explain** [1] - 28:8
**explained** [2] - 28:13, 36:9
**explains** [1] - 18:8
**explanation** [6] - 20:18, 22:17, 25:10, 25:14, 27:14, 46:23
**expression** [1] - 15:9
**expressions** [2] - 12:19, 37:15
**exquisite** [1] - 4:24
**exquisitely** [1] - 38:21
**extending** [1] - 40:2
**extension** [1] - 56:11
**extent** [6] - 25:20, 25:21, 35:12, 49:24, 55:5, 55:14
**extraordinarily** [2] - 23:16, 44:21
**extraordinary** [1] - 37:20
**eyes** [1] - 43:15

---

**F**

**fact** [23] - 3:25, 12:14, 12:20, 15:14, 19:23, 24:9, 27:8, 29:23, 36:7, 38:22, 45:21, 45:22, 45:23, 47:2, 48:15, 49:7, 50:23, 51:2, 51:13, 51:18, 56:6, 57:14
**facts** [25] - 18:24, 19:13, 20:25, 21:12, 40:11, 45:21, 46:7, 46:8, 46:11, 49:6, 49:8, 49:14, 49:15, 49:18, 49:21, 49:24, 49:25, 50:16, 51:15, 51:16, 56:6, 56:19
**factual** [4] - 40:6, 55:6, 55:16, 57:12
**fade** [1] - 38:9
**failure** [2] - 57:6, 57:11
**fair** [6] - 36:4, 48:17, 48:19, 48:21, 49:9, 53:3
**fairly** [4] - 10:21, 22:22, 41:18, 55:9
**false** [37] - 8:18, 15:6, 17:15, 17:19, 18:15, 19:16, 19:17, 21:1, 23:6, 25:1, 25:3, 26:5, 26:10, 26:15, 26:18, 32:2, 36:11, 37:4, 37:23, 44:8, 44:9, 44:12, 47:19, 48:16, 48:22, 50:2, 50:4, 50:15, 50:17, 51:10, 52:11, 55:9, 55:12, 55:13, 55:23
**falsely** [2] - 53:24, 54:4
**falsity** [2] - 55:24, 55:25
**familiar** [4] - 21:16, 38:21, 38:22, 52:5
**far** [4] - 8:6, 21:2, 25:3, 58:21
**favor** [1] - 26:1
**fear** [1] - 24:24
**fees** [7] - 4:8, 39:6, 56:23, 56:25, 57:18, 58:24
**few** [2] - 26:11, 26:12
**file** [3] - 31:7, 37:20, 58:21
**filed** [3] - 19:4, 30:22, 38:2
**filing** [1] - 58:17
**finally** [1] - 35:4
**fine** [3] - 11:8, 11:25, 14:7
**firm** [6] - 9:12, 20:6, 39:1, 57:21, 57:22, 58:4
**firms** [5] - 37:18, 37:19, 58:5, 58:6
**first** [4] - 5:15, 29:3, 34:18, 39:11
**firsthand** [1] - 21:22
**five** [4] - 27:12, 33:8, 35:16, 54:4
**five-and-a-half** [1] - 33:8
**flew** [1] - 8:9
**flight** [1] - 8:7
**flip** [7] - 6:1, 6:7, 12:1, 35:12, 43:3, 43:7, 43:9
**flip-flopped** [2] - 6:1, 6:7
**flip-flopping** [4] - 12:1, 35:12, 43:3, 43:7
**flips** [1] - 8:11
**flopped** [2] - 6:1, 6:7
**flopping** [4] - 12:1, 35:12, 43:3, 43:7
**focus** [3] - 44:6, 50:23, 54:21
**focused** [1] - 13:16
**fool** [1] - 38:14
**FOR** [5] - 1:1, 1:8, 1:22, 2:4, 2:7

**foregoing** [1] - 60:12
**formal** [2] - 33:15, 35:14
**forth** [3] - 8:11, 35:12, 60:13
**forward** [3] - 11:2, 26:23, 37:4
**forwards** [1] - 53:11
**four** [9] - 3:7, 5:3, 6:1, 6:8, 12:9, 12:10, 34:23, 34:24, 37:19
**fram** [1] - 24:2
**FRAM** [140] - 2:6, 3:19, 3:21, 4:16, 4:25, 5:13, 5:21, 6:12, 6:18, 6:20, 7:2, 7:5, 7:10, 7:18, 7:24, 8:3, 8:8, 8:17, 8:23, 9:3, 9:18, 9:24, 10:7, 10:20, 11:4, 11:18, 11:22, 12:6, 12:21, 13:13, 13:17, 13:21, 13:24, 14:3, 14:10, 14:14, 14:18, 14:24, 15:2, 15:6, 15:16, 15:21, 15:24, 16:4, 16:9, 16:24, 17:5, 17:9, 17:14, 17:22, 17:25, 18:2, 18:6, 18:9, 18:16, 19:1, 19:3, 19:8, 19:11, 19:24, 20:3, 20:14, 20:18, 20:20, 20:22, 20:25, 21:12, 21:16, 21:20, 22:5, 22:9, 23:2, 23:9, 23:19, 24:7, 24:20, 24:24, 25:5, 25:9, 25:14, 26:22, 26:25, 27:4, 27:7, 27:19, 27:25, 28:6, 28:23, 29:7, 33:6, 39:22, 40:19, 40:24, 41:10, 41:21, 42:7, 42:11, 42:25, 43:5, 43:9, 43:13, 43:16, 43:23, 44:2, 44:14, 44:18, 45:14, 46:20, 46:22, 47:1, 47:8, 47:11, 47:18, 47:23, 47:25, 48:4, 48:13, 48:21, 48:24, 49:4, 49:13, 49:22, 50:19, 50:21, 51:15, 51:22, 52:2, 52:13, 52:15, 52:21, 53:4, 53:10, 53:15, 57:3, 57:6, 57:10, 57:16, 58:9, 58:12, 59:1
**Fram** [19] - 3:19, 3:21, 4:12, 4:13, 18:18, 23:7, 23:21, 23:22, 23:24, 29:21, 30:14, 33:5, 37:6, 38:18, 39:16, 40:9, 40:15, 40:18, 41:9
**Fram's** [4] - 4:11, 30:4, 39:3, 39:11
**Frankfurter** [1] - 48:18
**frankly** [1] - 32:18
**frivolous** [1] - 40:2
**front** [2] - 39:22, 53:25
**full** [1] - 59:6
**full-time** [1] - 59:6
**fully** [1] - 47:21
**fundamentally** [1] - 54:20

**G**

**gap** [1] - 31:3
**geniuses** [1] - 30:4
**genuinely** [1] - 19:14
**George** [1] - 27:17
**GERRY** [1] - 1:12
**given** [4] - 14:4, 21:5, 25:15, 37:25
**Glanzer** [2] - 6:15, 42:17
**glue** [1] - 33:21
**goodies** [1] - 23:7
**grant** [6] - 28:17, 28:24, 39:19, 40:13,

55:3, 56:21
**great** [1] - 18:20
**GREEN** [1] - 2:2
**GREINER** [1] - 2:5
**Gross** [3] - 6:17, 6:19, 6:23
**gross** [1] - 6:21
**ground** [1] - 51:7
**guess** [3] - 4:6, 4:9, 39:3
**guilty** [3] - 55:6, 55:14, 55:22
**gussing** [1] - 20:16
**guy** [1] - 8:11

**H**

**habit** [1] - 26:14
**HAC** [1] - 1:7
**hac** [7] - 4:3, 13:2, 26:19, 38:25, 46:9, 56:12, 56:17
**half** [3] - 12:7, 12:11, 33:8
**hand** [1] - 33:3
**Hand** [1] - 34:10
**handle** [1] - 29:15
**hang** [2] - 41:4, 41:6
**hard** [1] - 29:25
**hardly** [1] - 4:21
**harmonize** [1] - 50:5
**harmonizing** [1] - 51:12
**head** [3] - 33:24, 37:1, 40:10
**hear** [7] - 19:1, 30:16, 31:17, 40:20, 40:21, 40:22
**heard** [6] - 17:4, 22:4, 29:6, 31:9, 38:10, 43:24
**hearing** [3] - 4:1, 17:2
**heart** [1] - 40:10
**hello** [1] - 3:1
**help** [1] - 50:14
**helpful** [1] - 13:9
**hereby** [1] - 60:12
**hereinbefore** [1] - 60:13
**hide** [1] - 16:23
**high** [1] - 34:17
**highlight** [1] - 42:20, 54:23
**highly** [1] - 51:14
**Hill** [1] - 24:14
**hill** [1] - 32:18
**himself** [1] - 11:14
**hold** [2] - 18:12, 41:3
**Hollander** [21] - 16:5, 16:11, 17:25, 18:8, 18:10, 18:12, 18:13, 21:13, 21:21, 22:24, 23:1, 23:5, 26:25, 29:15, 31:7, 37:9, 44:23, 44:24, 48:17, 52:6, 53:13
**Hollander's** [3] - 17:9, 22:24, 28:8
**Hollansder** [1] - 16:16
**Honor** [109] - 3:2, 3:10, 3:17, 3:19, 4:16, 4:25, 5:13, 5:21, 6:12, 6:20, 7:10, 8:3, 8:7, 8:8, 8:17, 8:23, 9:24, 10:7, 10:20, 11:4, 11:18, 12:6, 12:21, 13:13, 14:5, 14:10, 14:19, 14:24, 15:2, 15:16,

15:22, 16:4, 16:9, 17:5, 17:15, 17:22, 18:16, 19:1, 19:3, 19:9, 19:11, 20:3, 20:6, 21:16, 21:20, 22:5, 23:2, 23:9, 23:19, 24:7, 24:13, 24:24, 25:5, 25:9, 26:22, 27:14, 27:20, 28:14, 28:20, 28:25, 29:8, 29:10, 31:1, 31:12, 32:12, 32:14, 33:2, 33:6, 36:13, 36:21, 40:19, 40:20, 40:25, 41:1, 41:5, 41:11, 41:21, 41:25, 42:7, 42:16, 42:25, 43:13, 43:16, 43:23, 44:14, 44:19, 44:20, 45:14, 45:17, 46:2, 46:20, 46:22, 47:11, 47:25, 48:4, 48:13, 49:4, 49:13, 49:22, 50:21, 51:15, 51:23, 52:13, 52:21, 53:15, 57:10, 57:16, 58:9, 59:1
**Honor's** [2] - 25:18, 45:4
**HONORABLE** [1] - 1:16
**hope** [2] - 18:17, 52:11
**hopefully** [1] - 28:5
**hoping** [1] - 37:16
**hour** [1] - 8:7
**hours** [1] - 5:3
**human** [1] - 9:15
**hurts** [1] - 25:21

**I**

**i.e** [1] - 56:7
**identified** [1] - 40:7
**identify** [2] - 24:10, 35:25
**immune** [1] - 39:17
**implicit** [2] - 51:2, 51:8
**important** [4] - 33:22, 33:23, 52:23
**impose** [1] - 4:5
**imposing** [3] - 56:23, 56:24, 56:25
**impression** [1] - 54:20
**improper** [1] - 58:17
**improperly** [1] - 54:13
**inaccurate** [7] - 25:2, 32:4, 32:22, 44:10, 44:11, 44:17, 46:5
**incident** [1] - 29:14
**incidents** [1] - 25:24
**include** [1] - 10:3
**including** [1] - 48:16
**inconsistencies** [1] - 15:12
**inconsistent** [4] - 14:22, 21:6, 47:2, 47:6
**incorrect** [3] - 5:17, 5:18, 10:8
**incredible** [1] - 12:25
**incumbent** [1] - 32:25
**indeed** [2] - 4:18, 38:3
**indicated** [2] - 10:6, 14:12
**indicating** [1] - 16:22
**indication** [2] - 35:6, 35:8
**induced** [1] - 53:23
**inference** [13] - 37:5, 42:23, 46:10, 46:11, 47:1, 48:17, 48:19, 48:21, 49:9, 50:9, 51:11, 51:15
**inferences** [1] - 55:17
**inferred** [1] - 53:20

**informal** [1] - 33:16
**information** [2] - 21:23, 50:25
**infringement** [1] - 31:5
**inherent** [3] - 4:7, 18:25, 51:3
**initial** [1] - 17:9
**instances** [3] - 24:9, 25:20, 43:1
**interest** [2] - 18:25, 34:14
**internal** [1] - 58:20
**interpretation** [1] - 50:10
**interrupt** [1] - 36:13
**interviewed** [1] - 11:6
**intimately** [1] - 33:12
**introduced** [1] - 36:17
**investigate** [1] - 57:11
**investigation** [1] - 57:12
**invoice** [1] - 45:15
**involved** [8] - 4:22, 10:12, 28:7, 33:9, 33:10, 33:12, 37:19, 38:8
**involvement** [1] - 31:2
**involving** [2] - 10:10, 12:8
**IRENAS** [1] - 1:16
**Irenas** [1] - 3:22
**issue** [15] - 22:10, 22:11, 22:14, 22:15, 22:16, 22:19, 24:18, 27:3, 38:4, 44:4, 44:6, 46:7, 52:23, 56:5, 56:6
**issues** [6] - 13:17, 13:20, 22:13, 28:15, 28:20, 32:24
**itself** [3] - 11:11, 33:13, 34:4

### J

**JACOBSON** [12] - 2:2, 2:3, 3:15, 3:17, 8:7, 31:1, 32:12, 35:21, 36:13, 36:16, 36:21, 36:23
**Jacobson** [24] - 3:15, 3:16, 4:4, 5:6, 15:22, 16:4, 18:10, 18:12, 18:14, 22:17, 22:21, 29:13, 30:25, 36:14, 37:14, 38:25, 44:23, 45:25, 52:4, 52:17, 52:22, 53:4, 55:21, 58:2
**Jacobson's** [2] - 21:14, 27:14
**JEI** [1] - 1:5
**Jersey** [2] - 60:11, 60:12
**JERSEY** [2] - 1:1, 1:13
**Joe** [4] - 3:15, 3:16, 4:4, 36:14
**JOHN** [1] - 1:12
**John** [2] - 3:20, 3:21
**JOSEPH** [2] - 1:16, 2:3
**Judge** [15] - 3:22, 12:13, 27:16, 29:25, 30:3, 30:9, 30:18, 30:23, 39:10, 39:12, 40:17, 54:17, 54:23, 59:6, 59:8
**JUDGE** [1] - 1:16
**judge** [4] - 29:18, 30:14, 34:11, 53:16
**judging** [1] - 4:23
**judgment** [2] - 22:14, 46:4
**jump** [1] - 36:7
**June** [1] - 12:12
**juries** [4] - 7:12, 10:18, 12:20, 38:17
**jurors** [2] - 11:5, 13:1
**jury** [19] - 10:20, 11:6, 11:7, 11:21,

12:20, 18:5, 25:21, 25:25, 32:3, 32:23, 32:24, 32:25, 38:23, 42:23, 44:4, 46:13, 48:11, 50:3, 51:6
**jury's** [1] - 10:21
**Justice** [4] - 18:20, 36:17, 48:18
**justified** [1] - 56:13
**justify** [4] - 26:19, 56:16, 56:18, 56:20

### K

**KATZ** [4] - 2:7, 3:22, 24:1, 29:10
**Katz** [6] - 3:22, 23:25, 24:2, 24:16, 29:9
**keep** [1] - 9:13
**kept** [1] - 9:12
**key** [1] - 34:21
**kidding** [1] - 16:3
**kind** [11] - 5:5, 12:18, 12:19, 27:18, 30:7, 31:22, 35:10, 37:16, 37:24, 55:15, 55:16
**kinds** [5] - 7:14, 13:22, 18:23, 27:19, 28:12
**knowing** [5] - 49:7, 49:8, 50:2, 54:4, 55:23
**knowingly** [2] - 53:23, 55:9
**known** [1] - 11:1
**knows** [3] - 26:9, 33:24, 45:17

### L

**laboring** [1] - 29:14
**lack** [1] - 23:5
**Landau** [1] - 12:13
**language** [7] - 7:21, 11:13, 12:18, 14:12, 20:12, 20:15, 20:17
**Larimak** [1] - 31:5
**Larry** [1] - 3:5
**last** [2] - 5:3, 6:1
**lasted** [1] - 38:1
**late** [3] - 18:20, 22:22, 31:3
**Law** [1] - 34:12
**law** [20] - 3:6, 9:9, 37:18, 37:19, 39:1, 40:1, 40:3, 51:18, 56:3, 56:5, 56:10, 56:11, 56:17, 57:11, 57:14, 57:22, 58:4, 58:5, 58:6
**lawyer** [14] - 8:15, 17:18, 25:3, 26:14, 30:5, 30:13, 36:12, 37:2, 38:7, 44:11, 45:1, 47:10, 49:7, 53:12
**lawyer's** [1] - 18:22
**lawyers** [16] - 17:19, 18:24, 28:15, 37:25, 44:21, 48:20, 48:22, 50:1, 50:8, 51:11, 51:20, 51:21, 51:24, 55:7, 55:13, 58:7
**leap** [1] - 37:14
**learned** [3] - 45:9, 45:10, 45:13
**Learned** [1] - 34:10
**least** [5] - 6:8, 8:11, 12:25, 35:18, 35:25
**leave** [3] - 29:16, 36:16, 58:5
**left** [1] - 54:19

**legal** [13] - 4:8, 39:6, 40:1, 51:1, 51:18, 56:3, 56:9, 56:10, 56:20, 56:22, 56:23, 56:25, 57:18
**legitimate** [1] - 11:3
**lesser** [1] - 37:8
**level** [1] - 24:8
**liar** [2] - 14:16, 44:1
**liars** [1] - 14:9
**liberty** [1] - 14:11
**lie** [1] - 29:24
**lied** [4] - 16:7, 25:5, 25:6, 48:7
**life** [2] - 33:22, 33:24
**likelihood** [1] - 28:18
**limit** [1] - 5:12
**limitations** [1] - 38:3
**line** [6] - 3:20, 3:23, 26:17, 26:18, 48:25, 57:13
**IISA** [1] - 1:20
**Lisa** [4] - 3:3, 3:4, 3:10, 59:4
**LISA** [3] - 1:24, 60:10, 60:15
**list** [1] - 13:5
**listed** [3] - 18:1, 18:3, 23:5
**litigation** [8] - 34:2, 34:4, 34:14, 38:9, 38:15, 45:13, 45:17, 45:19
**locations** [1] - 33:14
**logic** [1] - 37:25
**look** [5] - 7:21, 26:8, 26:22, 33:19, 50:21
**looked** [2] - 11:23, 45:2
**looking** [1] - 49:6
**loses** [1] - 39:4
**louder** [1] - 20:4
**loudly** [1] - 21:12
**Louis** [4] - 5:25, 8:6, 35:20, 35:22
**Louisville** [5] - 5:22, 5:24, 5:25, 8:6
**lying** [3] - 26:5, 38:10, 38:12

### M

**MacStravic** [1] - 3:6
**maintained** [1] - 33:15
**major** [3] - 5:14, 33:14, 38:4
**malpractice** [1] - 16:3
**man** [2] - 9:11, 43:14
**March** [3] - 13:7, 14:4, 47:5
**MARCUS** [3] - 1:24, 60:10, 60:15
**Marcus** [3] - 3:4, 59:4, 60:14
**mastery** [2] - 37:20, 37:21
**Matt** [3] - 24:12, 32:15, 32:23
**matter** [5] - 24:9, 48:15, 49:7, 56:17, 60:13
**mean** [27] - 5:25, 7:15, 7:16, 9:6, 10:2, 11:3, 15:9, 15:12, 16:16, 17:19, 18:4, 20:15, 22:8, 22:25, 23:3, 23:4, 29:13, 29:23, 33:11, 37:10, 43:3, 44:1, 44:15, 48:7, 48:25
**meant** [2] - 5:1, 19:25
**MEC** [3] - 33:13, 34:19, 45:18
**MEC's** [1] - 33:14
**meeting** [21] - 9:19, 11:14, 12:8, 12:12,

12:17, 12:18, 12:19, 16:14, 16:20,
17:23, 28:7, 31:8, 31:11, 31:16, 33:18,
34:19, 35:13, 35:14, 35:23, 52:5
**meetings** [7] - 7:13, 7:14, 10:11, 13:22,
14:5, 33:15, 38:8
**member** [1] - 42:3
**members** [1] - 36:17
**memorable** [1] - 13:15
**memories** [3] - 9:5, 10:13, 38:8
**memory** [7] - 6:5, 7:18, 7:19, 7:23, 8:2,
35:6, 45:12
**mentioned** [2] - 22:15, 51:23
**merits** [1] - 4:17
**message** [1] - 23:1
**met** [3] - 27:21, 28:15, 50:22
**meticulous** [3] - 9:12, 9:13, 9:14
**middle** [4] - 23:10, 34:7, 34:8, 54:12
**might** [6] - 28:1, 32:19, 33:21, 33:23,
41:22, 42:23
**mile** [2] - 43:11, 43:14
**mind** [15] - 9:22, 27:20, 33:18, 33:20,
35:3, 49:9, 50:8, 50:9, 51:2, 51:8,
51:21, 52:8, 55:6, 55:14, 55:22
**minds** [1] - 10:15
**minor** [1] - 33:23
**minute** [3] - 12:8, 44:25, 53:25
**minutes** [8] - 17:22, 18:1, 18:3, 23:17,
23:22, 27:13, 36:18, 53:12
**miss** [1] - 24:4
**Missouri** [1] - 5:8
**misstate** [1] - 31:19
**mistake** [1] - 34:16
**mistaken** [1] - 38:3
**mistakes** [3] - 9:14, 17:17, 31:19
**mixed** [2] - 51:18, 57:14
**modifying** [1] - 40:2
**moments** [1] - 44:19
**money** [3] - 57:19, 58:6, 58:7
**months** [2] - 12:8, 12:11
**morning** [1] - 29:21
**most** [4] - 8:13, 15:19, 26:25, 30:11
**motion** [56] - 1:6, 4:2, 4:5, 4:6, 4:8, 4:11,
4:12, 4:17, 4:21, 4:23, 5:5, 5:9, 13:2,
19:4, 19:14, 19:15, 21:2, 25:22, 26:4,
28:17, 28:24, 29:1, 29:4, 29:5, 30:22,
33:3, 38:24, 39:3, 39:6, 39:7, 39:11,
39:19, 40:13, 41:2, 43:16, 45:22, 46:9,
46:25, 47:7, 49:11, 49:25, 50:1, 50:18,
51:3, 51:8, 55:2, 55:3, 56:21, 56:24,
57:3, 58:20, 58:21, 58:22
**MOTION** [1] - 1:8
**motions** [2] - 3:24, 29:4
**moving** [2] - 19:6, 24:6
**MR** [173] - 3:14, 3:15, 3:17, 3:19, 3:22,
4:16, 4:25, 5:13, 5:21, 6:12, 6:18,
6:20, 7:5, 7:10, 7:18, 7:24, 8:3, 8:7,
8:8, 8:17, 8:23, 9:3, 9:18, 9:24, 10:7,
10:20, 11:4, 11:18, 11:22, 12:6, 12:21,
13:13, 13:17, 13:21, 13:24, 14:3,
14:10, 14:14, 14:18, 14:24, 15:2, 15:6,

15:16, 15:21, 15:24, 16:4, 16:9, 16:24,
17:5, 17:9, 17:14, 17:22, 17:25, 18:6,
18:9, 18:16, 19:1, 19:3, 19:8, 19:11,
19:24, 20:3, 20:14, 20:18, 20:20,
20:22, 20:25, 21:12, 21:16, 21:20,
22:5, 22:9, 23:2, 23:9, 23:19, 24:1,
24:7, 24:20, 24:24, 25:5, 25:9, 25:14,
26:22, 26:25, 27:4, 27:7, 27:19, 27:25,
28:6, 28:23, 29:7, 29:10, 29:18, 29:20,
29:23, 30:3, 30:9, 30:13, 30:17, 31:1,
32:12, 33:6, 35:21, 36:13, 36:16,
36:21, 36:23, 39:9, 39:22, 40:4, 40:8,
40:16, 40:19, 40:24, 41:10, 41:21,
42:7, 42:11, 42:25, 43:5, 43:13, 43:16,
43:23, 44:2, 44:14, 44:18, 45:14,
46:20, 46:22, 47:1, 47:8, 47:11, 47:18,
47:23, 47:25, 48:4, 48:13, 48:21,
48:24, 49:4, 49:13, 49:22, 50:19,
50:21, 51:15, 51:22, 52:2, 52:13,
52:15, 52:21, 53:4, 53:10, 53:15,
53:16, 53:19, 53:23, 54:9, 54:12,
54:14, 54:16, 54:23, 57:3, 57:6, 57:10,
57:16, 57:18, 57:21, 57:24, 58:3, 58:9,
58:12, 59:1, 59:8
**MS** [10] - 3:2, 3:10, 3:13, 6:22, 6:24,
13:12, 32:14, 32:21, 41:5, 41:8
**multiple** [1] - 18:23
**muscle** [1] - 4:12
**must** [4] - 6:5, 7:22, 45:2


**N**

**N.J** [1] - 60:16
**name** [2] - 9:21, 24:16
**nature** [1] - 37:25
**necessarily** [2] - 42:8, 48:9
**necessary** [1] - 43:25
**need** [2] - 4:20, 36:16
**negotiating** [1] - 33:13
**nervous** [1] - 20:24
**never** [14] - 16:5, 16:6, 16:21, 17:10,
24:18, 25:15, 28:3, 28:13, 30:22, 42:1,
42:19, 46:2
**NEW** [1] - 1:1, 1:13
**New** [2] - 60:11, 60:12
**new** [3] - 4:1, 24:1, 25:22
**next** [1] - 54:3
**Nick** [1] - 3:6
**NICOLE** [1] - 1:21
**Nicole** [1] - 3:13
**nine** [2] - 6:9, 8:12
**NO** [1] - 1:5
**nobody** [1] - 10:24
**non** [1] - 40:2
**non-frivolous** [1] - 40:2
**none** [1] - 25:15
**noodle** [1] - 37:1
**Notary** [1] - 60:11
**note** [1] - 41:13

**noted** [3] - 21:3, 31:2, 33:7
**notes** [2] - 31:18, 60:12
**nothing** [10] - 16:21, 16:22, 23:14, 24:5,
26:6, 29:10, 30:20, 31:7, 58:13, 58:19
**notice** [1] - 23:22
**notion** [3] - 7:15, 50:14, 53:19
**number** [2] - 41:2, 41:11
**numerous** [2] - 7:13, 10:11


**O**

**objective** [2] - 30:19, 40:9
**objectively** [2] - 40:10, 40:11
**obligation** [1] - 56:15
**observation** [1] - 24:8
**observes** [1] - 25:21
**observing** [1] - 44:20
**obviously** [7] - 19:11, 27:13, 27:16,
30:9, 42:25, 45:14, 50:22
**OF** [1] - 1:1
**offenses** [1] - 39:25
**offered** [4] - 22:17, 51:10, 55:22, 55:23
**office** [1] - 18:22
**Official** [2] - 60:10, 60:15
**OFFICIAL** [1] - 1:25
**often** [2] - 17:17, 18:17
**old** [4] - 9:12, 15:9, 23:24, 24:2
**omission** [1] - 32:5
**omits** [1] - 9:20
**once** [2] - 12:8, 18:20, 34:3, 34:10,
34:25
**one** [33] - 3:25, 4:3, 5:7, 6:12, 6:21, 8:5,
8:9, 9:16, 10:16, 11:5, 11:18, 12:10,
22:12, 24:1, 26:13, 28:2, 28:3, 30:4,
36:2, 36:13, 38:19, 42:11, 42:20, 44:9,
44:10, 44:17, 47:24, 48:9, 51:16,
51:22, 53:5
**ONE** [1] - 1:12
**ones** [3] - 10:4, 12:3, 26:12
**opening** [1] - 22:15
**Opinion** [1] - 22:14
**opportunity** [3] - 11:2, 41:13, 44:4
**opposing** [1] - 34:12
**opposite** [1] - 39:2
**orchestrating** [1] - 8:20
**Order** [2] - 58:23, 59:2
**organized** [1] - 23:18
**original** [1] - 60:12
**originally** [1] - 38:2
**otherwise** [4] - 28:23, 29:8, 46:10,
55:24
**ounce** [2] - 29:20, 29:22
**outlined** [4] - 19:5, 19:13, 28:20, 46:14
**outrageous** [3] - 29:24, 32:16, 40:12
**outside** [1] - 58:21
**overkill** [1] - 4:21
**overwhelm** [1] - 34:15
**own** [4] - 6:6, 16:2, 22:24, 45:6

## P

**pad** [1] - 18:22
**page** [1] - 54:3
**Page** [2] - 46:18, 54:12
**pages** [1] - 53:23
**paid** [2] - 57:1, 58:6
**paper** [1] - 24:6
**papers** [15] - 4:7, 4:14, 5:4, 19:6, 19:12, 21:25, 22:12, 25:25, 28:23, 29:6, 29:8, 30:9, 42:17, 46:15, 51:11
**Paragraph** [1] - 54:3
**part** [5] - 14:21, 22:10, 58:23, 58:24
**particular** [3] - 26:13, 53:1
**particularly** [1] - 56:15
**partner** [1] - 3:20
**partnership** [2] - 57:23, 58:8
**party** [2] - 39:5
**past** [1] - 25:12
**patent** [1] - 31:5
**PATRICK** [1] - 1:3
**pending** [2] - 3:25, 5:7
**people** [32] - 7:14, 9:15, 10:1, 10:12, 10:19, 11:19, 12:9, 12:16, 12:18, 13:8, 14:24, 16:19, 18:23, 18:25, 28:12, 31:18, 33:11, 33:16, 33:17, 34:5, 37:11, 38:8, 38:9, 38:10, 38:12, 42:8, 42:12, 42:25, 43:9, 47:4, 58:20
**people's** [2] - 10:12, 10:15
**percent** [3] - 7:25, 35:5, 45:7
**performance** [1] - 23:15
**period** [1] - 34:13
**perjury** [24] - 8:14, 8:19, 10:19, 14:23, 15:1, 15:13, 17:18, 20:13, 20:17, 26:8, 26:16, 36:10, 36:12, 37:3, 43:12, 43:17, 44:7, 46:21, 49:1, 53:20, 54:17, 55:16
**permanently** [1] - 17:21
**permitted** [2] - 21:21, 42:1
**person** [4] - 14:1, 14:3, 46:16, 49:2
**personally** [1] - 15:3
**perspective** [1] - 28:14
**persuaded** [1] - 11:5
**persuasive** [1] - 30:12
**persuasively** [1] - 12:24
**ph** [1] - 31:5
**phone** [3] - 16:19, 40:25, 41:4
**phrase** [1] - 46:17
**physically** [5] - 5:21, 5:23, 5:24, 8:4, 16:20
**picture** [1] - 48:10
**piece** [2] - 24:4, 32:17
**pilot** [2] - 13:5, 19:20
**PILOTS** [1] - 1:9
**pilots** [6] - 7:8, 10:3, 12:2, 16:13, 34:21, 51:12
**place** [10] - 7:13, 8:5, 8:9, 9:9, 10:10, 33:10, 35:20, 35:23, 38:8, 43:4
**plaintiff** [5] - 3:11, 6:15, 26:2, 39:8, 55:2

**plaintiff's** [16] - 6:10, 13:9, 13:25, 15:25, 19:25, 20:1, 20:10, 28:14, 29:12, 35:17, 36:8, 42:17, 50:8, 50:20, 51:4
**Plaintiffs** [1] - 1:4
**plaintiffs** [14] - 3:13, 3:14, 3:15, 4:5, 8:13, 12:23, 13:5, 21:9, 29:16, 32:9, 44:2, 51:9, 53:6, 56:22
**PLAINTIFFS** [3] - 1:22, 2:4, 2:7
**plaintiffs'** [1] - 8:24
**plan** [1] - 29:6
**planned** [1] - 9:21
**plans** [1] - 9:10
**played** [2] - 55:24, 58:17
**PLAZA** [1] - 1:12
**point** [19] - 6:13, 8:23, 10:7, 11:25, 17:8, 17:14, 22:1, 25:17, 26:12, 27:8, 28:3, 35:15, 44:5, 44:18, 44:19, 47:9, 53:7
**pointed** [2] - 22:12, 25:25
**points** [5] - 5:14, 11:18, 11:19, 38:18, 42:20
**poor** [1] - 23:24
**position** [5] - 8:3, 11:7, 11:10, 35:4, 42:3
**possible** [1] - 5:7
**possibly** [2] - 9:4, 17:21
**practice** [1] - 19:12
**practicing** [1] - 9:9
**pre** [1] - 35:13
**pre-meeting** [1] - 35:13
**prejudice** [1] - 25:23
**premise** [3] - 23:20, 26:16, 26:21
**preparation** [2] - 4:23, 38:1
**prepare** [2] - 31:21, 42:1
**prepared** [8] - 4:22, 5:1, 23:16, 26:1, 31:6, 44:21, 45:1, 51:24
**preparedness** [1] - 24:8
**preparing** [3] - 20:7, 21:3, 50:5
**preponderance** [2] - 55:19, 55:20
**presence** [1] - 34:19
**present** [10] - 10:24, 12:9, 12:10, 12:17, 21:9, 32:2, 35:5, 35:19, 51:13
**presented** [6] - 10:21, 10:23, 13:7, 53:4, 53:5, 53:8
**presenting** [4] - 8:17, 8:22, 18:11, 36:10
**president** [1] - 22:3
**PRESS** [27] - 2:4, 3:14, 29:18, 29:20, 29:23, 30:3, 30:9, 30:13, 30:17, 39:9, 40:4, 40:8, 40:16, 53:16, 53:19, 53:23, 54:2, 54:9, 54:12, 54:14, 54:16, 54:23, 57:18, 57:21, 57:24, 58:3, 59:8
**Press** [13] - 3:14, 4:4, 5:15, 15:22, 22:14, 29:18, 36:19, 39:1, 39:9, 42:2, 53:16, 55:21, 57:21
**pressure** [5] - 34:1, 34:2, 34:17, 38:9, 38:15
**pressures** [3] - 18:23, 34:4, 34:14
**pretty** [3] - 13:15, 26:18, 43:5
**prevailing** [2] - 39:5
**PRO** [1] - 1:7

**pro** [7] - 4:3, 13:2, 26:19, 38:25, 46:9, 56:12, 56:17
**proceeding** [1] - 45:10
**proceedings** [1] - 59:10
**process** [2] - 21:3, 38:16
**promoted** [1] - 12:14
**proof** [1] - 26:22
**proper** [1] - 56:2
**properly** [1] - 57:11
**proposed** [1] - 45:18
**proposition** [1] - 36:11
**Proust** [1] - 25:12
**prove** [2] - 27:21, 44:6
**proved** [2] - 11:4, 26:5
**proven** [2] - 17:20, 55:21
**proves** [1] - 19:23
**provides** [1] - 39:18
**proving** [2] - 24:22, 50:22
**provision** [2] - 39:23, 40:4
**Public** [1] - 60:11
**public** [1] - 39:17
**published** [1] - 22:13
**punish** [1] - 39:15
**purpose** [1] - 4:2
**put** [25] - 9:8, 11:2, 12:23, 17:15, 17:16, 18:14, 18:22, 23:6, 23:7, 25:18, 26:22, 34:4, 37:4, 42:4, 42:5, 44:23, 48:23, 50:2, 50:15, 51:5, 52:5, 52:11, 55:8
**puts** [2] - 5:9, 26:9
**putting** [7] - 17:19, 25:3, 26:15, 26:16, 26:17, 37:3, 44:25, 55:9, 55:10

## Q

**questions** [3] - 28:21, 29:7, 31:14
**quickly** [1] - 5:6
**quiet** [1] - 28:12
**quite** [3] - 32:18, 36:25, 44:11
**quote** [2] - 35:4, 50:5
**quoted** [1] - 21:25

## R

**raised** [4] - 21:2, 28:16, 32:22, 32:23
**raises** [1] - 38:18
**raising** [1] - 30:6
**reach** [5] - 46:16, 49:2, 49:6, 52:15, 52:17
**reached** [4] - 25:16, 50:16, 52:3
**reaches** [1] - 35:8
**reaching** [1] - 51:18
**read** [16] - 7:6, 15:5, 15:15, 16:22, 21:13, 21:18, 23:1, 30:9, 41:13, 41:19, 43:20, 54:18, 54:19, 54:20, 55:9
**readily** [1] - 27:11
**reading** [3] - 45:5, 49:2, 54:7
**reads** [1] - 18:7
**real** [2] - 16:13

**really** [12] - 11:9, 24:24, 26:5, 30:10, 30:23, 33:23, 39:10, 45:11, 46:6, 46:7, 48:10, 50:14
**rearguing** [2] - 47:7, 49:11
**reason** [8] - 10:15, 23:13, 23:21, 28:16, 33:24, 40:13, 44:17, 52:10
**reasonable** [5] - 27:22, 30:20, 40:10, 40:11, 46:16
**reasonableness** [1] - 30:19
**reasons** [3] - 42:11, 46:13, 46:14
**receipt** [1] - 35:10
**receive** [1] - 57:19
**receiving** [1] - 57:8
**reckless** [3] - 37:2, 37:17, 39:13
**recollection** [8] - 13:8, 14:4, 33:22, 42:14, 47:5, 47:14, 53:5, 53:10
**recollections** [2] - 12:16, 47:16
**record** [12] - 4:24, 16:15, 16:22, 18:13, 23:4, 30:24, 40:16, 51:25, 52:5, 53:11, 58:14, 58:19
**recounting** [1] - 47:21
**redirect** [1] - 25:15
**referred** [1] - 11:12
**referring** [1] - 15:21
**reflected** [1] - 45:15
**refresh** [1] - 9:5
**refreshed** [2] - 7:18, 7:23
**regarding** [1] - 31:8
**relating** [2] - 31:7, 52:4
**relevant** [4] - 24:4, 49:24, 50:1
**reliable** [1] - 21:6
**relied** [2] - 6:14, 45:21
**rely** [3] - 4:13, 25:19, 49:14
**relying** [1] - 39:21
**remain** [1] - 32:8
**remains** [1] - 49:7
**remedy** [1] - 39:18
**remember** [11] - 6:6, 7:20, 11:9, 13:6, 22:21, 34:5, 34:6, 38:15, 42:9, 42:12
**remembered** [1] - 25:10
**remembers** [1] - 35:7
**remembrance** [1] - 25:12
**reply** [6] - 4:18, 4:19, 4:20, 6:13, 28:3, 42:21
**report** [1] - 59:6
**REPORTER** [1] - 1:25
**Reporter** [3] - 60:10, 60:11, 60:15
**reporter** [2] - 3:5, 59:6
**reporting** [1] - 22:4
**represent** [1] - 58:5
**request** [1] - 4:8
**requirements** [1] - 56:2
**research** [1] - 21:1
**resources** [1] - 24:11
**respect** [9] - 19:16, 25:23, 26:2, 29:1, 44:23, 47:3, 48:8, 52:2, 55:2
**rest** [4] - 28:23, 29:8, 35:4, 45:18
**result** [7] - 17:20, 19:21, 20:9, 22:20, 45:10, 58:22

**resulted** [1] - 21:4
**reversing** [1] - 40:2
**Review** [1] - 34:12
**review** [2] - 18:24, 19:22
**reviewed** [1] - 19:12
**reviewing** [1] - 24:16
**revocation** [2] - 41:2, 45:22
**revoke** [3] - 4:3, 13:2, 38:25
**REVOKE** [1] - 1:6
**revoking** [3] - 26:19, 56:12, 56:17
**rhetoric** [2] - 20:22, 20:23
**rich** [1] - 9:11
**RICHARDS** [1] - 1:20
**Rodriguez** [4] - 3:3, 3:4, 3:10, 32:13
**RODRIGUEZ** [11] - 1:20, 1:20, 3:2, 3:10, 6:22, 6:24, 13:12, 32:14, 32:21, 41:5, 41:8
**Roland** [4] - 5:15, 34:18, 36:2, 53:24
**role** [4] - 11:10, 55:24, 58:17
**room** [2] - 3:6, 3:7
**RPC** [2] - 26:7, 26:10
**RPC's** [1] - 26:12
**rule** [2] - 29:3, 39:22, 55:1
**Rule** [13] - 4:5, 4:8, 29:1, 29:4, 30:22, 30:23, 39:7, 39:14, 39:17, 44:6, 50:23, 55:3, 58:15
**rules** [2] - 51:19, 56:5, 56:11
**ruling** [3] - 41:1, 50:18, 57:15

---

# S

**s/Lisa** [1] - 60:14
**sanction** [3] - 30:21, 39:20, 56:25
**sanctioning** [1] - 51:7
**SANCTIONS** [1] - 1:8
**sanctions** [9] - 4:5, 39:7, 40:14, 49:12, 55:3, 56:18, 57:4, 57:9, 57:10
**sat** [3] - 43:23, 44:24, 47:13
**saw** [1] - 23:14
**science** [1] - 34:15
**scope** [6] - 11:15, 13:11, 13:14, 13:16, 34:20
**scowled** [2] - 32:18, 32:20
**second** [3] - 4:4, 36:14, 41:12
**section** [2] - 21:25, 45:7
**see** [3] - 23:22, 28:3, 59:9
**seeking** [1] - 57:10
**selection** [1] - 5:7
**self** [2] - 18:25, 34:14
**self-interest** [1] - 34:14
**sense** [3] - 13:15, 38:13, 52:9
**sensitive** [1] - 38:16
**separate** [2] - 13:3, 29:5
**separately** [1] - 29:3
**SEPTEMBER** [1] - 1:14
**September** [2] - 12:13, 60:17
**serious** [1] - 39:16
**seriousness** [1] - 55:19
**set** [4] - 4:1, 23:22, 44:6, 60:13

**seven** [3] - 10:2, 10:5, 38:1
**several** [4] - 21:15, 21:19, 36:17, 54:19
**severe** [1] - 56:18
**shaded** [2] - 48:6, 48:8
**shock** [1] - 22:7
**shocked** [1] - 22:5
**shooting** [1] - 43:15
**Shorthand** [1] - 60:11
**show** [2] - 45:3, 58:16
**showed** [3] - 9:22, 12:18, 12:19
**shown** [1] - 32:4
**side** [4] - 20:10, 29:12, 47:24, 53:14
**sides** [3] - 33:2, 39:3, 51:24
**silent** [1] - 28:10
**Silently** [1] - 54:7
**silk** [1] - 30:8
**Simandle's** [1] - 59:6
**Singer** [11] - 6:22, 6:23, 6:24, 7:4, 10:5, 36:3, 41:20, 41:21, 41:24, 42:1, 42:3
**singer** [2] - 6:23, 7:5
**Singer's** [1] - 42:14
**single** [6] - 45:21, 45:23, 47:20, 48:8, 54:2
**sit** [1] - 42:1
**sitting** [1] - 59:7
**situation** [2] - 24:12, 39:19
**six** [15] - 9:15, 10:1, 10:2, 10:3, 13:25, 14:3, 15:15, 31:18, 32:6, 35:16, 35:17, 36:8, 38:1, 50:5
**six-week** [2] - 31:18, 32:6
**skilled** [1] - 38:17
**slightest** [1] - 16:17
**smooth** [1] - 30:8
**solely** [1] - 12:11
**someone** [1] - 32:5
**sometime** [1] - 31:15
**sometimes** [7] - 9:13, 18:23, 20:4, 33:19, 34:3, 38:9, 38:14
**sorry** [4] - 6:20, 20:1, 32:20, 51:4
**sort** [2] - 48:11, 57:14
**sought** [1] - 57:3
**sound** [2] - 56:9, 56:10
**sounds** [2] - 40:24, 49:14
**spacing** [1] - 54:3
**speaking** [1] - 32:22
**specific** [2] - 26:3, 32:15
**specifically** [1] - 40:7
**specifics** [1] - 28:7
**speculation** [1] - 37:6
**spend** [2] - 27:2, 27:4
**spending** [1] - 27:9
**spent** [2] - 5:3, 20:6
**squarely** [1] - 39:14
**Sr** [1] - 27:17
**St** [4] - 5:25, 8:6, 35:20, 35:22
**stake** [1] - 47:13
**stand** [3] - 32:23, 38:10, 52:6
**standard** [6] - 27:24, 27:25, 40:8, 40:9, 49:5, 55:20

**stands** [2] - 13:3, 33:18
**starkly** [1] - 8:13
**start** [1] - 49:16
**state** [10] - 18:13, 50:8, 50:9, 51:2, 51:8, 51:21, 53:12, 55:6, 55:14, 55:22
**State** [1] - 60:11
**statement** [5] - 6:6, 16:12, 18:6, 18:7
**statements** [3] - 28:1, 31:9, 32:4
**States** [1] - 60:11
**states** [1] - 26:14
**STATES** [3] - 1:1, 1:12, 1:16
**statute** [1] - 38:3
**stenographic** [1] - 60:12
**step** [1] - 19:18
**steps** [1] - 55:11
**Steve** [2] - 3:19, 3:21
**STEVEN** [1] - 2:6
**stick** [3] - 33:20, 33:25, 37:16
**sticking** [1] - 57:14
**sticks** [1] - 33:24
**still** [2] - 5:8, 46:22
**stood** [1] - 28:10
**stop** [2] - 19:10, 24:6
**stories** [3] - 46:19, 47:2, 50:7
**story** [5] - 18:14, 21:10, 34:21, 34:23, 44:3
**straightforward** [1] - 30:6
**STREETS** [1] - 1:13
**strenuously** [1] - 14:8
**strikes** [1] - 5:4
**striking** [1] - 26:25
**strong** [1] - 8:13
**strongly** [1] - 19:15
**stuff** [8] - 10:25, 23:10, 23:24, 25:18, 37:11, 37:15, 37:22
**stupid** [1] - 15:5
**submit** [1] - 56:22
**submitted** [2] - 6:3, 46:5
**suborn** [1] - 50:4
**subornation** [4] - 44:7, 49:3, 54:15, 54:21
**suborned** [8] - 14:23, 15:1, 19:23, 20:17, 48:20, 53:20, 54:16, 55:10
**suborning** [19] - 8:14, 8:19, 8:21, 10:19, 15:13, 17:18, 20:13, 25:4, 26:8, 26:16, 26:18, 36:9, 36:12, 37:2, 43:11, 43:17, 46:21, 49:1, 55:15
**Subparagraph** [1] - 54:2
**sudden** [2] - 42:12, 47:4
**suggest** [5] - 9:24, 14:23, 14:25, 16:1, 23:15
**suggested** [5] - 15:8, 15:12, 58:6, 58:14, 58:19
**suggestion** [3] - 8:8, 8:10, 46:10
**suit** [1] - 39:17
**summarize** [1] - 5:14
**summarized** [1] - 22:13
**summary** [1] - 22:14
**Superior** [1] - 12:13

**support** [5] - 22:23, 40:7, 40:12, 55:16, 55:18
**supported** [2] - 19:14, 37:24, 56:7
**supports** [3] - 14:14, 19:14, 44:3
**supposed** [1] - 36:16
**supposedly** [1] - 6:2
**Supreme** [1] - 5:8
**surprised** [8] - 22:8, 22:9, 27:10, 31:16, 33:17, 37:11, 37:12
**surprises** [1] - 56:1
**surprising** [2] - 32:6, 34:5
**suspected** [1] - 38:11
**suspension** [1] - 56:18
**synthesize** [1] - 50:7
**synthesizing** [1] - 46:18
**system** [1] - 10:20

### T

**talks** [1] - 39:4
**technically** [1] - 32:22
**Ted** [1] - 22:25
**telephone** [2] - 45:9, 45:15
**temper** [2] - 30:1, 30:2
**ten** [7] - 7:13, 10:11, 32:7, 33:10, 33:17, 34:1, 42:8
**term** [1] - 54:10
**terminals** [1] - 33:14
**terms** [6] - 8:13, 10:8, 11:16, 45:20, 49:10, 58:9
**testified** [23] - 7:22, 7:24, 10:1, 11:11, 12:2, 12:4, 16:24, 17:5, 35:18, 35:24, 36:1, 37:12, 37:13, 37:14, 41:12, 41:23, 42:17, 44:24, 47:21, 47:22, 49:16, 49:17, 51:13
**testify** [10] - 8:12, 10:4, 11:24, 17:3, 21:4, 21:22, 34:3, 52:6, 53:24, 55:12
**testifying** [7] - 11:19, 18:10, 24:15, 28:11, 45:11, 45:12, 54:4
**testimonial** [1] - 19:22
**testimony** [83] - 5:15, 5:17, 6:14, 7:6, 7:15, 7:16, 7:17, 8:5, 8:18, 8:21, 8:24, 9:2, 10:8, 11:10, 11:13, 11:22, 12:5, 12:25, 13:4, 13:5, 15:7, 15:11, 17:10, 17:15, 17:16, 18:15, 19:16, 19:17, 19:20, 20:4, 20:10, 21:1, 21:4, 21:5, 21:13, 21:22, 22:2, 22:24, 23:7, 24:13, 24:23, 24:25, 25:3, 26:9, 26:15, 26:17, 27:1, 28:9, 32:16, 32:17, 34:6, 34:8, 34:9, 34:13, 37:3, 37:7, 42:2, 42:22, 44:8, 44:9, 44:10, 44:16, 44:25, 45:6, 47:18, 48:6, 48:7, 48:9, 48:16, 48:17, 48:22, 50:2, 50:6, 50:11, 50:12, 50:15, 51:12, 52:10, 55:8, 55:10, 56:8
**THE** [186] - 1:1, 1:16, 3:1, 3:4, 3:12, 3:16, 3:18, 3:21, 3:24, 4:19, 5:3, 5:18, 5:23, 6:17, 6:19, 6:21, 6:23, 7:1, 7:4, 7:6, 7:12, 7:19, 8:1, 8:6, 8:10, 8:19, 9:1, 9:6, 9:20, 10:1, 10:9, 10:23, 11:8,

11:21, 11:25, 12:7, 13:10, 13:14, 13:19, 13:22, 14:2, 14:7, 14:11, 14:16, 14:20, 14:25, 15:4, 15:8, 15:17, 15:23, 16:1, 16:7, 16:11, 17:1, 17:7, 17:12, 17:16, 17:24, 18:1, 18:3, 18:7, 18:12, 18:17, 19:2, 19:6, 19:10, 19:18, 20:1, 20:12, 20:15, 20:19, 20:21, 20:23, 21:11, 21:15, 21:18, 21:24, 22:7, 22:21, 23:3, 23:13, 23:20, 24:2, 24:19, 24:21, 25:2, 25:7, 25:12, 26:8, 26:24, 27:2, 27:6, 27:17, 27:23, 28:5, 28:22, 29:2, 29:9, 29:11, 29:19, 29:22, 30:2, 30:4, 30:11, 30:16, 30:25, 32:11, 32:13, 32:20, 33:4, 33:7, 35:22, 36:15, 36:19, 36:22, 36:24, 39:21, 39:25, 40:6, 40:15, 40:18, 40:22, 41:3, 41:7, 41:9, 41:16, 42:6, 42:10, 42:22, 43:3, 43:8, 43:11, 43:14, 43:19, 44:1, 44:9, 44:15, 45:5, 46:17, 46:21, 46:24, 47:7, 47:9, 47:16, 47:20, 47:24, 48:1, 48:5, 48:19, 48:23, 48:25, 49:11, 49:15, 49:23, 50:20, 51:1, 51:17, 52:1, 52:8, 52:14, 52:16, 52:24, 53:7, 53:14, 53:18, 53:22, 53:25, 54:6, 54:8, 54:11, 54:13, 54:15, 54:18, 54:25, 57:5, 57:8, 57:13, 57:17, 57:20, 57:22, 57:25, 58:4, 58:11, 58:13, 59:2, 59:9
**therefore** [2] - 56:12, 56:21
**they've** [1] - 55:21
**thinking** [1] - 55:7
**third** [2] - 4:7, 4:9
**three** [9] - 5:7, 6:8, 12:7, 12:9, 12:11, 31:3, 33:14, 34:24, 36:18
**three-and-a-half** [2] - 12:7, 12:11
**throw** [2] - 23:10, 37:22
**throwing** [2] - 23:23, 37:15
**THURSDAY** [1] - 1:14
**ticket** [2] - 6:4, 35:10
**TO** [1] - 1:6
**today** [1] - 59:7
**ton** [1] - 47:16
**tons** [1] - 52:25
**took** [6] - 7:13, 10:10, 33:8, 33:9, 35:20, 42:2
**top** [1] - 57:18
**tort** [1] - 39:23
**totally** [1] - 38:11
**transcript** [5] - 27:5, 27:9, 49:19, 59:5
**transcription** [1] - 60:12
**transcripts** [7] - 15:20, 21:17, 21:18, 38:20, 38:21, 41:14, 56:8
**trial** [38] - 4:1, 8:15, 10:25, 11:1, 12:15, 17:14, 22:1, 23:10, 25:1, 25:6, 25:7, 25:17, 25:19, 25:22, 28:11, 31:4, 31:5, 31:18, 32:6, 33:10, 34:7, 34:16, 34:25, 35:1, 35:7, 37:19, 38:7, 41:24, 42:2, 42:5, 42:13, 43:23, 44:20, 47:13, 48:2, 48:3, 49:16
**trials** [1] - 18:22
**tribunal** [2] - 50:3, 56:15

Tribunal [1] - 26:11
tried [7] - 9:12, 12:7, 12:12, 16:21, 18:18, 25:15, 33:2
triers [1] - 12:20
trouble [1] - 50:18
true [9] - 10:9, 31:21, 31:22, 49:21, 50:17, 51:5, 51:6, 60:12
TRUJILLO [1] - 1:20
truth [6] - 14:13, 14:17, 29:20, 29:22, 29:25, 54:5
try [3] - 31:1, 33:9, 38:14
trying [3] - 16:23, 30:3, 55:18
Tumblin [2] - 6:15, 42:17
turn [5] - 4:13, 34:18, 37:6, 39:2, 39:7
turned [1] - 51:6
turns [1] - 44:16
TWA [4] - 16:13, 33:14, 34:21, 45:18
two [10] - 4:2, 29:4, 31:5, 36:3, 37:18, 50:1, 51:21, 53:5, 55:7
type [1] - 25:10

## U

U.S [2] - 1:25, 60:15
uncontested [1] - 49:18
under [5] - 4:8, 34:5, 40:8, 56:10, 56:16
undercut [1] - 28:1
underlying [2] - 9:3, 50:18
understood [3] - 31:10, 45:3, 51:24
indisputable [1] - 21:7
undisputed [1] - 9:4
unease [1] - 30:7
unfolding [1] - 34:21
unfortunate [1] - 32:6
unfortunately [1] - 34:9
uniform [2] - 13:5, 21:9
uniformity [3] - 36:4, 36:6
uniformly [1] - 35:23
United [1] - 60:11
UNITED [3] - 1:1, 1:12, 1:16
unknown [1] - 10:25
unless [3] - 28:20, 29:7, 54:25
unprepared [3] - 46:1, 52:22, 53:2
untrue [1] - 38:11
untruth [1] - 38:13
unusual [2] - 12:5, 12:6
up [19] - 9:23, 16:16, 20:16, 23:10, 24:21, 25:16, 25:17, 27:13, 29:17, 37:15, 37:22, 38:10, 38:14, 41:4, 41:6, 44:2, 52:6, 58:5, 58:21
urgency [1] - 5:9

## V

vague [3] - 42:15, 42:19, 47:3
variety [1] - 3:24
various [1] - 13:22
varying [2] - 12:5, 12:16

veering [1] - 18:19
venal [1] - 51:9
verdict [1] - 26:3
verges [1] - 37:2
version [2] - 50:16, 50:17
vetted [1] - 32:24
vice [7] - 4:3, 13:2, 26:19, 38:25, 46:9, 56:12, 56:17
VICE [1] - 1:7
view [2] - 47:18, 51:12
violated [2] - 51:19, 56:12
violates [1] - 26:10
violation [3] - 55:4, 56:4, 56:14
violations [1] - 26:6
vivid [1] - 13:8
voice [1] - 30:6
voir [2] - 17:2, 31:9
vote [4] - 45:9, 45:10, 45:16, 45:17
voted [2] - 13:13, 13:14
vs [1] - 1:5

## W

wait [2] - 4:19, 44:25
waive [1] - 11:15, 13:14, 13:16
waived [1] - 13:11
waiver [3] - 13:10, 34:20, 41:19
walked [1] - 7:14
wall [3] - 23:11, 23:24, 37:16
Warner [6] - 6:15, 7:2, 7:4, 10:5, 36:1, 36:2, 41:14, 41:16, 41:17
Warner's [1] - 7:6
warranted [4] - 40:1, 46:12, 46:15, 56:3
watched [1] - 19:5
weasel [1] - 16:17
week [3] - 31:5, 31:18, 32:6
weeks [2] - 31:3, 33:8
weight [1] - 5:19
Weintraub [2] - 18:20, 18:21
Welch [1] - 24:15
whack [1] - 29:17
whatsoever [2] - 14:4, 32:3
whole [2] - 16:22, 54:18
widely [1] - 12:16
wider [1] - 41:12
wield [1] - 30:5
Wilder [19] - 5:16, 5:21, 7:11, 27:3, 28:9, 28:11, 32:1, 34:23, 35:24, 36:2, 36:5, 37:7, 41:22, 42:18, 50:11, 51:13, 53:24
Wilder's [6] - 5:16, 11:10, 12:1, 34:19, 45:6, 46:4
win [1] - 4:8
wind [1] - 24:21
withdraw [1] - 57:9
withheld [1] - 25:17
witness [13] - 22:18, 24:22, 31:6, 36:7, 37:9, 41:2, 41:25, 44:16, 45:1, 47:20, 47:24, 48:8, 53:2

witness' [1] - 12:2
witnesses [43] - 6:9, 6:11, 8:12, 8:24, 10:5, 13:25, 14:2, 14:3, 15:25, 16:2, 17:16, 18:19, 19:20, 19:22, 19:24, 19:25, 20:1, 20:7, 21:1, 21:4, 29:24, 31:23, 35:17, 35:19, 35:25, 36:8, 37:21, 41:12, 43:5, 43:6, 44:12, 46:23, 48:14, 50:5, 52:25, 53:9, 54:4, 54:10, 55:5, 55:12
Woerth [8] - 17:4, 22:11, 24:14, 24:18, 32:17, 32:21, 48:6
Woerth's [1] - 16:12
woodshedding [2] - 15:9, 19:21
word [12] - 5:19, 7:17, 14:10, 20:16, 28:10, 36:25, 37:1, 43:22, 43:24, 52:10, 54:21, 55:11
words [3] - 50:6, 52:19, 56:23
works [1] - 10:20
worse [6] - 8:16, 25:4, 44:12, 50:4, 51:10, 55:24
worst [1] - 8:14
write [2] - 9:15, 34:10
wrote [3] - 34:12, 35:1, 46:5

## X

XIO1492 [1] - 60:16

## Y

year [1] - 45:18
years [10] - 7:13, 10:11, 30:22, 32:7, 33:10, 33:17, 33:20, 34:1, 38:2, 42:8
yelled [1] - 24:14
yellow [1] - 18:22
young [2] - 23:24, 24:2