UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, *et al.*, | |
| Plaintiffs, | Civil Action No. 02-2917 (JEI) |
| v. | |
| AIR LINE PILOTS ASSOCIATION, | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS**

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ 08033
Telephone: 856-795-9002

**GREEN JACOBSON, P.C**
Martin M. Green
Joe D. Jacobson
Allen P. Press
Jonathan F. Andres
7733 Forsyth Boulevard
Suite 700
St. Louis, Missouri 63105
Telephone: 314-862-6800
*Attorneys for the Plaintiffs*

Dated: October 10, 2011

## INTRODUCTION

Plaintiffs' damage model will employ a common methodology that will be applied to every member of the certified class of former TWA pilots. And, although application of this model may show that certain class members did not suffer lost income damages as a result of ALPA's breach, the class should remain certified. Decertification of the class would accomplish nothing and runs counter to the purpose for which Rule 23 was enacted, namely to avoid the waste of judicial resources and inconsistent verdicts which would result in the approximately 2000 damage trials that would be necessary if this case does not proceed on a classwide basis.

ALPA ignores these facts. It also ignores the fact that it twice stipulated to class certification which included the very class definition to which it now complains, and that it moved to bifurcate liability and damages. As a result of the bifurcation order, the parties have not engaged in discovery on the issue of damages, which would include expert testimony and a methodology for determining damages. Plaintiffs should not be prejudiced by virtue of the procedural posture ALPA created early in the litigation.

More importantly, damages can readily be determined on a classwide basis. Plaintiffs will present a damage model that will calculate damages, using a common methodology that will be applied across the entire class. This issue will predominate in the next trial, and ALPA does not provide any basis for claiming a classwide methodology is inappropriate. It merely states that it cannot fathom a methodology that would yield damages to all class members. This is far from the appropriate inquiry where, as here, discovery on damages has not even occurred. Therefore, ALPA's motion should be denied.

**LEGAL ARGUMENT**

I. **FOLLOWING THE SUCCESSFUL LIABITY FINDING, THE TWA PILOT CLASS REMAINS PROPERLY CERTIFIED.**

A. **Defendant Has Not Satisfied the Standard for Decertification.**

The standard for decertification is high. A motion for decertification must be premised on a change of circumstances that makes continued class action treatment improper. *Elias v. Ungar's Food Products, Inc.*, 2009 U.S. Dist. LEXIS 74140, * 15 (D.N.J. 2009) ("In order to warrant motion practice to decertify the earlier-certified class, the Court must be presented with a changed factual situation that renders the original certification 'unsound'"). *See also Bayshore Ford Truck v. Ford Motor Co.*, 2010 U.S. Dist. LEXIS 7454, * 6 (D.N.J. 2010) (citing *Zenith Labs, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (court's decertification order should not be reviewed for just any reason, but rather, if upon further development of the facts, it appears that the original certification order is unsound). Here, ALPA has neither satisfied its burden to show any changed circumstances, nor demonstrated any cognizable reason to justify decertifying the class. Instead, it continues to play its tired refrain that Plaintiffs will be unable to prove damages.

ALPA argues that common issues no longer predominate since some TWA pilots will be unable to establish lost income by virtue of ALPA's breach of its duty of fair representation, and therefore the entire class must be decertified. To support this argument, ALPA cites to the trial testimony of some former TWA pilots, *e.g.*, Mike Day, who testified that he did not suffer lost income when Supplement CC was imposed and he became a pilot with American Airlines.

Defendant's argument, however, is misguided. The common issue of how the seniority integration should have taken place predominates over any individual wage loss issues. The seniority integration forms the framework from which the individual wage loses are determined.

2

It may be the case that Captain Day, and the others cited by ALPA, would have earned better seniority if not for ALPA's breach. ALPA's argument also fails to account for all elements of damages resulting from ALPA's breach.

Next, as argued in greater detail below, Plaintiffs have not yet engaged in fact or expert discovery on the issue of damages, as a result of the bifurcation order. Any damage theory utilized by the Plaintiffs will, however, involve a common methodology and that methodology will apply equally to each member of the TWA pilot class.

Although an antitrust case, *Brown v. Pro Football, Inc.*, 146 F.R.D. 1 (D.D.C. 1992), is helpful. There, a certified class of professional football players sued the players' clubs and the National Football League alleging violations of the antitrust laws after the defendants imposed a fixed salary following an impasse over negotiations relating to pay rates for the players upcoming contract. The trial court entered a liability judgment and, prior to trial on the issue of damages, the defendant moved to decertify the class on the ground that common issues were lacking, citing to differences among the class members.

The *Brown* court rejected defendant's arguments, finding that judicial resources would be conserved and manageability maintained only if decertification were denied. The Court acknowledged that damages need not be identical for a class to remain properly certified.

> It is rare that any two class action plaintiffs are identically-situated, have received identical injuries, and deserve identical damages. More often, plaintiffs have common injuries from a common source, and the jury must determine the exact amount of each's individual damages.

*Brown*, 146 F.R.D. at 4. The court went on, noting that there was a formula that could be applied to each member of the class and, "although there [were] necessarily individual issues in the damages determinations, there is a common link among the class members which will serve to justify class action status." *Id.* The *Brown* court held that in cases "where the fact of injury and

3

damage breaks down on what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculations,' the existence of individualized claims for damages seems to offer no barrier to class certification on the grounds of manageability." *Brown*, 146 F.R.D. at 5.

As in *Brown*, calculating damages in this case will be a "virtually mechanical task" once discovery is concluded, experts retained and a common damage model developed. Contrary to ALPA's arguments, decertification would render this case unmanageable because it would force over 2000 separate trials, which would not only require a tremendous expenditure of judicial resources, but would invariably result in inconsistent verdicts.

### B. Common Issues Continue to Predominate as Plaintiffs Enter the Damage Phase of this Litigation.

ALPA suggests that the liability finding is worthless because it leaves open the question of which TWA pilots were injured, and that the jury verdict form should have required the jurors to decide questions such as "whether there were some pilots who would have been placed higher on the integrated seniority list if ALPA had fulfilled its duty," "whether they were furloughed as a direct result of that differential placement on the merged seniority list," and to identify which pilots were in that category. Db, p. 18. ALPA, however, did not ask for those questions to be submitted to the jury. Indeed, the use of such questions runs counter to the position ALPA took in its motion for bifurcation when it asked that all aspects of damages be reserved until the liability phase of the litigation was completed. The jury was not presented with evidence, nor should it have been presented with evidence, that would have enabled it to determine which class members suffered injury as a result of ALPA's breach. That is the very issue left for the damage phase of this litigation.

4

ALPA next argues, as it argued in its other post-trial motions – that the jury verdict fails to identify the specific conduct the jury decided violated ALPA's duty of fair representation, and which instances of misconduct caused injury to which TWA pilots. That argument, however, is inconsistent with Plaintiffs' allegations that ALPA failed to do anything substantive to aid the TWA pilots in their seniority negotiations. Any one failure standing alone would not necessarily raise ALPA's actions to the level of a DFR violation, but it was the entire course of conduct – characterized by no real action by ALPA over a 15-month period of time – that the pilots argued was actionable. That evidence in its totality provided a rational basis for the jury to find that ALPA acted arbitrarily or in bad faith in defending the TWA pilots' seniority. It was likewise based upon that evidence that the jury properly concluded that ALPA's breach caused injury to some TWA pilots. The jury was not required to parse the record and pick which evidence of misconduct lead to the damage suffered by the TWA pilots. The jury in the damage trial will similarly not be required to break down a continued course of inactions on the part of ALPA to weigh the impact of each failure to act.

Plaintiffs proved during the trial that the overall outcome of the seniority integration between the TWA pilots and the American pilots would have been more favorable but for ALPA's misconduct. *See* Jury Verdict Sheet. During the damage phase of the litigation, Plaintiffs will, in all likelihood, present a damage model to approximate a fair and reasonable seniority list. The damage calculation is then simply a formula to determine individual damages. A classwide approach to resolving these issues is clearly superior to an individualized method.

The cases cited by ALPA do not support decertification of the class. For instance, in *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437 (D.N.J. 2009), the Court denied Plaintiff's motion for class certification, in part, because each class member was required to prove as part of

5

liability, that the challenged billing practices were not only erroneous but also done with scienter. Since proof of scienter would require individualized determinations, it could not be said that common issues predominated. Here, unlike in *Quest*, liability has already been established. The actions of ALPA had a common impact and there is nothing to suggest that liability could have been different for different pilots. The jury found that ALPA breached its duty of fair representation to all of the TWA pilots. Now, all that remains to be decided by the jury in the damage trial is what monetary damages the TWA pilot class suffered as a result of ALPA's breach, and such a calculation can be achieved using a common methodology applicable to the entire class. The fact that the Plaintiffs' anticipated damage model may result in some class members having not sustained lost income damage does not make the class any less "ascertainable based upon objective criteria." Db, p. 16.

*Kinnel v. Mid-Atl. Mausoeums*, 850 F.2d 958 (3d Cir. 1988), is factually inapposite. There, the jury expressly found liability against only one of the two defendants, but the trial court nonetheless entered judgment against both defendants. Thereafter, during a short trial to determine damages, the jury awarded damages against both defendants. On appeal, the Third Circuit reversed the damage award against the defendant against whom the jury did not find liability. Here, the jury found liability against ALPA when it found that ALPA breached its duty of fair representation to the TWA pilots and that, as a result, some of the pilots were harmed. Plaintiffs are now permitted to prove the damages sustained by the TWA pilot class as a result of ALPA's breach.

## II. THE CASE WAS BIFURCATED AT THE REQUEST OF THE DEFENDANT AND PLAINTIFFS SHOULD NOT BE PREJUDICED BY VIRTUE OF THE BIFURCATION ORDER.

As a direct result of ALPA's motion to bifurcate liability and damages, Plaintiffs have not yet conducted discovery on the issue of damages. The complexity of a damage model is precisely why ALPA sought to bifurcate liability and damages. Specifically, ALPA stated that:

> Given the nature of the transaction involved, calculation of damages would be an extremely complex undertaking. To prove the proper amount of damages, Plaintiffs would need to show what the seniority list would have looked like had ALPA not [breached its duty of fair representation]. *Doc. No. 112*, pp. 8-9.
>
> \* \* \*
>
> Establishing what the consolidated seniority list would have looked like had negotiations turned out differently in this case would be, in short, an exceedingly complex and resource-intensive endeavor, requiring extensive discovery and expert witness testimony. *Id.*, p. 10.

*See* Doc. No. 112.

ALPA further argued that it was "confident that it will prevail on the question of liability, most likely on summary judgment, but, in any event, certainly at trial on that issue, thus obviating the need for the extensive inquiry that would be required to establish damages." *Id.*, p. 11. As we now know, ALPA's foretelling of the future fell woefully short, and so through this motion, ALPA seeks to back pedal. Knowing that Plaintiffs have not developed the facts needed to prove damages, it would be fundamentally unfair for ALPA to reverse its position and place upon plaintiffs the burden of presenting a damage model at this point in the litigation in order to defeat ALPA's decertification motion.

The TWA pilot class proved at trial through common evidence a laundry list of misdeeds and lost opportunities committed by ALPA, all of which were motivated by ALPA's desire to curry favor with the American pilots. ALPA's actions deprived the pilots of all effective means

7

of protecting their seniority interests in their negotiations with the American pilots. Now, following a favorable decision on liability, the Plaintiffs intend to establish that ALPA's conduct caused the pilot class to suffer damages, as was done by other courts addressing damages following a separate finding of DFR liability. *See, e.g., Lewis v. Tuscan Dairy Farmers*, 25 F.3d 1138 (2d Cir. 1994), and *Aguinaga v. United Food and Commercial Workers*, 993 F.2d 1463, 1470-71 (10th Cir. 1993).

## CONCLUSION

For the reasons stated herein, ALPA's Motion to Decertify the Class must be denied.

Dated: October 10, 2011

Respectfully submitted,

TRUJILLO RODRIGUEZ & RICHARDS, LLC

By:   s/ Lisa J. Rodriguez
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ 08033
(856) 795-9002

GREEN JACOBSON, P.C
Martin M. Green
Joe D. Jacobson
Allen P. Press
Jonathan F. Andres
7733 Forsyth Boulevard
Suite 700
St. Louis, Missouri 63105
Telephone: 314-862-6800