# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____  )
                                   )
PATRICK BRADY, et al.,             )
                                   )
         Plaintiffs,               )
                                   )
    v.                             )   Civil Action No. 02-2917 (JEI)
                                   )
AIR LINE PILOTS ASSOCIATION,       )
INTERNATIONAL,                     )   Motion Date: July 16, 2012
                                   )
         Defendant.                )
_____  )

## REPLY BRIEF OF DEFENDANT
## IN SUPPORT OF ITS MOTION
## FOR CERTIFICATION OF THE ORDER OF MAY 4, 2012,
## DENYING ALPA'S MOTION FOR JUDGMENT AS A MATTER OF LAW,
## FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

                                    Archer & Greiner, P.C.
                                    One Centennial Square
                                    Haddonfield, New Jersey 08033-0968
                                    (856) 795-2121
                                    By:   Steven J. Fram, Esquire
                                          John C. Connell, Esquire

*Pro Hac Vice*:
    Daniel M. Katz, Esquire
    Katz & Ranzman, P.C.
    4530 Wisconsin Ave., N.W., Suite 250
    Washington, DC 20016
    (202) 659-4656

Attorneys for Defendant,
    Air Line Pilots Association, International

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ...............................................................................................1

ARGUMENT.......................................................................................................1

    1.    "Substantial Ground for Difference of Opinion"................................1

    2.    "Controlling Question of Law" ........................................................2

    3.    "May Materially Advance the Ultimate Termination of the Litigation" ........................................................................................9

CONCLUSION ..................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
    499 U.S. 65 (1991) .................................................................................................. 5

*Avaya Inc. v. Telecom Labs, Inc.*,
    CIV 06-2490 JEI, 2012 WL 1495371 (D.N.J. Apr. 26, 2012) ....................... 1, 9

*Blyden v. Mancusi*,
    186 F.3d 252 (2d Cir. 1999) ................................................................................... 7

*Cox v. Admin. U.S. Steel & Carnegie Pension Fund*,
    17 F.3d 1386 (11th Cir. 1994) ............................................................................... 4

*Deboles v. Trans World Airlines*,
    552 F.2d 1005 (3d Cir. 1977) ..................................................................... 3, 6, 9

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ................................................................................ 12

*Humphrey v. Moore*,
    375 U.S. 335 (1964) ............................................................................................... 6

*In re Fibreboard Corp.*,
    893 F.2d 706 (5th Cir. 1990) .............................................................................. 13

*Matter of Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) .............................................................................. 13

*Public Interest Research Group of N.J., Inc. v. Hercules, Inc.*,
    830 F. Supp. 1549 (D.N.J. 1993) .......................................................................... 8

*SEC v. Lucent Technologies, Inc.*,
    Civ. No. 04-2315, 2009 WL 4508583 (D.N.J. Nov. 16, 2009) ...................... 10

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011) ......................................................................................... 12

*Sullivan v. DB Invs.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................................ 12

*Viking Yacht Co. v. Composites One L.L.C.*,
    Civ. No. 05-538 (JEI), 2009 WL 1683991 (D.N.J. June 15, 2009) ............... 10-11

*Zenith Radio Corp. v. Matsushita Electronic Indust. Co.*,
    494 F. Supp. 1190 (E.D. Pa. 1980) ....................................................................8

**STATE CASES**

*Viner v. Sweet*,
    70 P.3d 1046 (Cal. 2003) .................................................................................4

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) ...................................................................................... passim

**RULES**

Fed. R. Civ. P. 23 ....................................................................................................7

Fed. R. Civ. P. 50(b) ...................................................................................... passim

**CONSTITUTIONAL PROVISIONS**

Seventh Amendment ................................................................................................7

**OTHER AUTHORITIES**

American Law Institute, *Principles of Aggregate Litigation* (2009) (the
    "*Principles*") .............................................................................................. 11-12

# INTRODUCTION

In opposing the motion of Defendant Air Line Pilots Association, International ("ALPA"), for the Court to certify its Order of May 4, 2012, denying ALPA's motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), Plaintiffs contend that ALPA has failed to show that the Court incorrectly denied ALPA's Rule 50(b) motion, that ALPA's present motion raises only factual arguments that are inappropriate for interlocutory review, and that appellate review at this time would only delay the resolution of the parties' dispute.  We show below that Plaintiffs' contentions are without merit and that interlocutory review of the controlling legal issues we have identified would materially advance the ultimate termination of this litigation.

# ARGUMENT

### 1. "Substantial Ground for Difference of Opinion"

Plaintiffs argue that ALPA failed to articulate a legal issue that the Court "wrongly decided," Pls.' Opp'n Br. at 1, 4-5, but § 1292(b) merely requires proof that there is "substantial ground for difference of opinion" concerning the issue. *See, e.g.*, *Avaya Inc. v. Telecom Labs, Inc.*, CIV 06-2490 JEI, 2012 WL 1495371, at *4 (D.N.J. Apr. 26, 2012) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)).  It is therefore incorrect that ALPA must show that the Court decided the legal issues identified in its opening brief wrongly; instead, ALPA must only meet the lower threshold of showing that these issues are debatable.  *See*

1

ALPA's Br. at 3 & n.3 (citing decisions of District Judges Simandle and Ackerman certifying their orders for interlocutory review, despite their confidence in the correctness of their rulings, because substantial grounds existed for difference of opinion as to the issues they were deciding). ALPA satisfied this standard in its opening brief. *See id.* at 4-21. In fact, this Court has acknowledged that substantial ground exists for difference of opinion as to the applicable DFR standard in this case, describing it as unclear and "very tricky." *See id.* at 4.[1]

### 2. "Controlling Question of Law"

Plaintiffs contend that ALPA's motion raises factual arguments rather than controlling issues of law. Pls.' Opp'n Br. at 1, 3-11. However, the extensive trial record here does not detract from the purely legal nature of the questions ALPA seeks to appeal.

On the question of causation, for instance, Plaintiffs concede the absence of <u>any</u> record evidence showing causation in fact. *See id.* at 11 ("[T]he issue of what damages were actually caused by ALPA's breach will . . . not be resolved until the damages trial is complete. . . . There was no . . . evidence [at the liability trial] of the actual harm caused to the TWA pilots by ALPA's breach of the duty of fair

---

[1] Plaintiffs argue that the Third Circuit's 2004 decision in this case supports their interpretation of the DFR doctrine to be applied here. *See* Pls.' Opp'n Br. at 7-8. However, the court had only the statute of limitations issue before it with respect to the claims against ALPA, not what constitutes a sufficient showing of arbitrary or bad faith conduct. Thus, Plaintiffs' interpretation of that decision merely frames the debatable legal questions of which ALPA now seeks review.

representation."). Plaintiffs' position conforms to their opposition to ALPA's Rule 50(b) motion, where they objected that "ALPA attempts to use the lack of proof of actual damages, or a damage theory, as a shield against finding ALPA liable for a DFR." Pls.' Rule 50(b) Opp'n Br., Doc. 447, at 12. Plaintiffs' assertions prove our point.

Thus, we demonstrated in our opening brief that numerous appellate court DFR decisions require hard evidence that the union conduct in question directly resulted in the harm about which the plaintiffs complain. *See* ALPA's Br. at 15-20. In *Deboles v. Trans World Airlines*, 552 F.2d 1005, 1017 (3d Cir. 1977), for example, the Third Circuit reversed the district court's liability verdict, which was based on "speculative, *post hoc* reasoning," because a union official's "false statements may not create liability under the federal labor laws absent a showing of tangible injury proximately resulting from the falsehood." These decisions support the view that causation in fact constitutes an essential element of proving a DFR violation, which plaintiffs must prove with direct evidence, such as, in the case at bar, testimony from the representatives of American Airlines and the American pilots that they would have agreed to a better seniority integration. An interlocutory appeal would not require the appellate court to sift through mountains of transcripts and exhibits, as Plaintiffs contend, because *no evidence exists* in the trial record that the TWA pilots would have secured more favorable seniority

3

arrangements if ALPA had done what Plaintiffs contend it should have. Pls.' Opp'n Br. at 11 (conceding "no . . . evidence of the actual harm caused to the TWA pilots"). Contrary to Plaintiffs' contention, *id.* at 9-10, whether the absence of non-speculative evidence of a "tangible injury" invalidates the verdict is a controlling question of law, not a factual dispute.

In this connection, Plaintiffs place undue reliance on *Cox v. Admin. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386 (11th Cir. 1994), which at best shows that their position on this legal question has support in the Eleventh Circuit.[2] As noted above, ALPA's opening brief cites contrary DFR decisions from six other circuits and the U.S. Supreme Court. The *Cox* case underscores the appropriateness of this controlling legal issue for interlocutory review.

Plaintiffs also cite a state court legal malpractice case, *Viner v. Sweet*, 70 P.3d 1046, 1052-54 (Cal. 2003), for the proposition that a jury may infer causation. Pls.' Opp'n Br. at 10-11. But that decision does not hold that the many DFR decisions on which ALPA relies do not raise a debatable issue. There, because the plaintiffs had failed to establish that the alleged malpractice had caused a worse

---

[2] Unlike here, the record in *Cox*, which involved corrupt union officials who demanded and accepted personal benefits in exchange for agreeing to concessions in the collective bargaining agreement they were negotiating, contained significant direct evidence, including testimony at a criminal trial, that was sufficient to establish that the union officials' misconduct had resulted in an inferior collective bargaining contract. *See Cox*, 17 F.2d at 1401-02.

4

outcome in the corporate transaction at issue, the California Supreme Court reversed lower courts, which had allowed a jury verdict to stand.[3]

Similarly, the issues concerning the deference owed to union determinations in the face of allegations of arbitrary or bad faith conduct are controlling legal issues, not questions of fact. Here, two TWA MEC members, Steve Rautenberg and David Singer, testified at trial that they agreed with the professionals who advised the MEC to accept the package of agreements offered by American and TWA management at the MEC meeting on April 2, 2001, because of the increased pay and many other benefits the deal offered, along with the risks of contesting TWA's then-pending Section 1113 motion. In light of this undisputed evidence, ALPA submits that the line of DFR authority referenced in ALPA's opening brief, at 6-15, requires as a matter of law that the liability verdict be overturned, as Plaintiffs produced no evidence whatsoever that the professionals' advice fell "so

---

[3] Plaintiffs cite to trial evidence regarding the Hunnibell/Clark card campaign, Pls.' Opp'n Br. at 6, but the meeting with Clark occurred on December 6, 2001, and the Rindfleisch emails were on December 21, 2001, not, as Plaintiffs contend, "while the TWA pilots were in the midst of their struggle with the American pilots." Supplement CC was signed on November 7, 2001, so the December meeting and emails were indisputably circumstantial evidence. As Plaintiffs have conceded, the trial evidence included nothing directly indicating that any ALPA official, staffer or advisor changed his advice or decision on account of an ALPA interest in becoming the bargaining agent for the American pilots. Nor was there any evidence showing that intentional misrepresentations or arbitrary or dishonest conduct of ALPA's caused any injury to the former TWA pilots, as opposed to actions by American Airlines and the Allied Pilots Association.

far outside a 'wide range of reasonableness,' that it was wholly 'irrational' or 'arbitrary.'" *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Nor did Plaintiffs adduce "substantial evidence of fraud, deceitful action or dishonest conduct," *Humphrey v. Moore*, 375 U.S. 335, 348 (1964), in connection with the provision of this advice. In view of the complete dearth of evidence at trial that the professionals' advice was irrational or that it derived from dishonesty, the doctrine of deference bars any claim that ALPA's conduct was arbitrary or in bad faith, and the five-week duration of the liability trial is irrelevant to ALPA's point that it has raised controlling issues of law.

In any event, numerous § 1292(b) cases involved complex factual records that nonetheless presented controlling legal issues that were deemed appropriate for certification for interlocutory review. In *Deboles*, for example, the district court granted a § 1292(b) motion after a liability finding against the union but before a damages trial. 552 F.2d at 1007-08. The interlocutory appeal took place despite the complex factual context in which the case arose, which entailed collective bargaining negotiations and differing seniority arrangements for the workers at TWA and at the Kennedy Space Center. *Id*. The interlocutory review spared the district court and the parties significant time, energy and money by avoiding the damages phase of the litigation.

6

By contrast, in *Blyden v. Mancusi*, 186 F.3d 252, 256-57 (2d Cir. 1999), a civil rights case arising from a complicated array of facts surrounding the prisoner riot and forcible retaking of Attica prison in 1971, judicial resources were wasted due to the lack of an interlocutory appeal. The district court, which had certified the case as a class action and bifurcated it into liability and damages phases, on two separate occasions expressed its willingness to certify an appeal from the liability verdict before moving into the damages phase; defense counsel nevertheless "opted to wait until the final damages judgments were entered before appealing." *Id.* at 260-61. Following two years of discovery on damages issues and a damages trial with respect to two of the prisoners, the inevitable appeal resulted in a reversal and remand because of Seventh Amendment violations resulting from the bifurcation of the class action case into liability and damages phases. *Id*. at 268. The appellate court criticized the defense for the delay and wasted resources resulting from the failure to accept the district court's invitation to seek an interlocutory appeal between the liability verdict and the damages trial. *Id*. at 272.

Another factually complex case, *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974), involved complicated facts related to the disclosure and computation of finance charges for credit card holders under the Truth-in-Lending Act, as well as complex class certification issues under Fed. R. Civ. P. 23. Despite

7

this complexity, the Third Circuit reviewed the case under § 1292(b), based on Congress's clear intent to "avoid a wasted trial" and to provide for immediate appeal in "cases involving prolonged assessment of damages after determination of liability."  *Id*.

Similarly, in *Zenith Radio Corp. v. Matsushita Electronic Indust. Co.*, 494 F. Supp. 1190, 1243-44 (E.D. Pa. 1980), the court framed a legal issue for interlocutory appeal from its interpretation of the Antidumping Act of 1916, which involved highly complicated facts regarding competition in the manufacture of consumer electronic products in the U.S. and Japan.

Likewise, in *Public Interest Research Group of N.J., Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1555 (D.N.J. 1993), the court certified for interlocutory appeal a case involving whether plaintiffs had properly noticed all 728 of the alleged Clean Water Act violations.  The court explained its rationale for finding that a "controlling question of law" existed, as follows:

> If the court proceeds immediately to trial and does not certify the notice issue for interlocutory appeal, the plaintiffs will assuredly appeal the court's ruling . . . . [and, in] the event that the plaintiffs are successful on their post-trial appeal, this court will be required to have a new trial as to the liability issues and the appropriate penalty for some or all of the additional 600-plus violations in question. The court would then have to conduct a second trial, hearing similar issues.

*Id*. at 1555.

Accordingly, cases involving complicated facts are often amenable to § 1292(b) review. Here, the issues ALPA poses for interlocutory appeal are "controlling questions of law," which are appropriate for § 1292(b) certification. *See Katz*, 496 F.2d at 754; *Deboles*, 552 F.2d at 1008; *Avaya*, 2012 WL 1495371, at *4.

### 3. "May Materially Advance the Ultimate Termination of the Litigation"

Plaintiffs contend that the parties are on the eve of the damages trial, and that an appeal now would delay resolution of this case, not advance it. Pls.' Opp'n Br. at 2, 11-13. However, many of the cases discussed above involved an interlocutory appeal after a liability verdict, and a damages trial in the case at bar may not be "just months away," as Plaintiffs say. *Id.* at 2.

For one thing, we understand that Plaintiffs may need to ask for an extension of time to prepare and serve their expert witness reports because American is consumed with its own Chapter 11 proceedings and, in particular, its § 1113 motions, and it has been unable to produce any of the documents Plaintiffs have requested for their experts to use in preparing their reports on damages calculations. American recently asked the bankruptcy court to extend its exclusive right to propose a reorganization plan for three months, until December 28, 2012, *see In re AMR Corp.*, Ch. 11 Case No. 11-15463, Doc. 3440 (Bankr. S.D.N.Y July 3, 2012), and it may take American months to provide the information necessary

9

for Plaintiffs' experts to analyze and report on the damages issues in the instant case.

Even after Plaintiffs serve their experts' reports, ALPA will need to review the reports and depose the experts. And there is also a need for extensive fact discovery from Plaintiffs. ALPA has served document requests and interrogatories on Plaintiffs, but has agreed that their responses may await the completion of their experts' reports. Once we receive the experts' reports, depose the experts and review Plaintiffs' responses to ALPA's discovery requests, ALPA may have its experts prepare their own reports. Plaintiffs would of course have the opportunity to depose them.

Finally, ALPA anticipates that the parties may file pre-trial motions, and that the Court may order further pre-trial proceedings, such as a joint pre-trial order and a pre-trial conference. Clearly, the damages trial may be more than "just months away," as no trial date has even been set yet, and substantial discovery and pre-trial preparation remain to be completed.

Plaintiffs nonetheless argue that this Court should deny ALPA permission to seek an interlocutory appeal on account of the timing of its § 1292(b) request, citing *SEC v. Lucent Technologies, Inc.*, Civ. No. 04-2315, 2009 WL 4508583 (D.N.J. Nov. 16, 2009), and *Viking Yacht Co. v. Composites One L.L.C.*, Civ. No.

10

05-538 (JEI), 2009 WL 1683991 (D.N.J. June 15, 2009).[4] In *Viking Yacht*, 2009 WL 1683991, at *1-2, the motion for certification was filed just ten days before the trial, and sought to amend an order entered almost two years earlier, among others. In *Lucent*, 2009 WL 4508583, at *10, the motion was also "significantly time-delayed," having been filed four years after the court's decision on the key legal question and only nineteen days before the final pre-trial conference. Here, by contrast, there are no dates set for expert depositions, for Plaintiffs' responses to ALPA's discovery requests, or for a pre-trial conference or the damages trial. And, unlike in *Lucent* and *Viking Yacht*, ALPA acted expeditiously after the Court denied ALPA's Rule 50(b) motion on May 4, 2012.

As stated in ALPA's opening brief, moreover, discovery and pre-trial proceedings can continue while interlocutory review is sought and conducted. For the reasons outlined in ALPA's opening § 1292(b) brief, that parallel effort would advance the resolution of this case.

The American Law Institute's *Principles of Aggregate Litigation* (2009) (the "*Principles*") recommend that interlocutory appeals be allowed from the determination of liability issues in class actions. This recommendation has

---

[4] Plaintiffs' brief asserts at n.1 that the timing of ALPA's motion is "suspect." But ALPA announced its intention to file a § 1292(b) motion at the May 4 hearing, immediately after the Court denied ALPA's Rule 50(b) motion, and ALPA filed the motion on June 21. ALPA could not possibly have filed its § 1292(b) motion before the Court set the damages discovery schedule because that occurred in the same order in which the Court denied ALPA's Rule 50(b) motion.

particular pertinence in the case at bar—a class action on behalf of approximately 2300 former TWA pilots—in which the consequences of assessing damages are far-reaching for both sides.  The *Principles*, which summarize the current thinking on the management of class litigation, have already been cited with approval by both the United States Supreme Court and the Third Circuit.  *See, e.g.*, *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2377 (2011) (citing § 2.11 of the *Principles*); *Sullivan v. DB Invs.*, 667 F.3d 273, 340 n.11 (3d Cir. 2011) (Scirica, J., concurring) (citing § 3.15 of the *Principles*); *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 266 (3d Cir. 2011) (citing § 2.02 of the *Principles*).

Section 2.09 of the *Principles* recommends that interlocutory appeals be permitted from "any class-wide determination of a common issue on the merits . . . ."  *Principles*, § 2.09.  The comments to Section 2.09 explain that the determination of a common issue on the merits "should be regarded as being of sufficient definiteness to permit interlocutory appeal, especially given the practical significance of that determination for subsequent proceedings."  The disposition of an appeal from a liability determination, the comments note, "should precede the disposition of the remaining issues raised by the underlying claims – for example, the obtaining of damage awards for particular claimants."  The comments acknowledge the delay associated with an interlocutory appeal but note that determinations of common issues are generally "of sufficient centrality to

12

proceedings on other issues . . . as to be tantamount" to the type of "controlling question of law" for which § 1292(b) applies.

Section 2.09 of the Principles is consistent with the many cases that have allowed interlocutory review, by way of mandamus and otherwise, of liability determinations and of trial plans for class trials. *See, e.g.*, *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) (granting mandamus and reversing order of class certification); *see also In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990) (granting mandamus and reversing trial plan for common trial of over 3000 asbestos cases). Allowing an interlocutory appeal on the issue of whether ALPA breached its DFR is therefore fully consistent with Section 2.09.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in ALPA's opening brief, ALPA respectfully requests that the Court certify its Order of May 4, 2012, denying ALPA's Rule 50(b) motion for judgment as a matter of law, for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

        Respectfully submitted,

        Archer & Greiner, P.C.
        One Centennial Square
        Haddonfield, New Jersey 08033-0968
        (856) 795-2121

By:   */s/ Steven J. Fram*
        Steven J. Fram, Esquire
        John C. Connell, Esquire

*Pro Hac Vice*:

    Daniel M. Katz, Esquire
    Katz & Ranzman, P.C.
    4530 Wisconsin Ave., N.W., Suite 250
    Washington, DC 20016
    (202) 659-4656

Attorneys for Defendant,
Air Line Pilots Association, International

Dated: July 9, 2012

8637407v1