1          **UNITED STATES DISTRICT COURT**
           **FOR THE DISTRICT OF NEW JERSEY**

2

3    _____

**PATRICK BRADY, et al,**

4
              **Plaintiffs,**              **CIVIL ACTION NUMBER:**

5
              **-vs-**                      **02-2917 (JEI)**

6

**AIR LINE PILOTS ASSOCIATION,**
7    **INTERNATIONAL,**

8             **Defendants.**
     _____

9         Mitchell H. Cohen United States Courthouse
          One John F. Gerry Plaza
10        Camden, New Jersey 08101
          July 12, 2012
11

**B E F O R E:**        THE HONORABLE JOSEPH E. IRENAS
12                      SENIOR UNITED STATES DISTRICT JUDGE

13

14   **A P P E A R A N C E S:**

15   TRUJILLO, RODRIGUEZ & RICHARDS, ESQS.
     BY:  LISA RODRIGUEZ, ESQUIRE
16          and
          ALLEN PRESS, ESQUIRE
17        JOSEPH JACOBSON, ESQUIRE
     Attorneys for the Plaintiffs.

18

19   ARCHER & GREINER, ESQS.
     BY:  STEVEN J. FRAM, ESQUIRE
20          and
          JOHN C. CONNELL, ESQUIRE
21        DANIEL KATZ, ESQUIRE
          ELIZABETH GINSBERG, ESQUIRE
22   Attorneys for the Defendants.

23

     Certified as True and Correct as required by Title 28, U.S.C.,
24   Section 753
          /S/ Cathy J. Ford, CCR, CRR, RPR
25

──────── TELEPHONE CONFERENCE ────────

1       THE COURT:  Hello.

2       MS. RODRIGUEZ:  Good morning, Judge Irenas.  Lisa

3  Rodriquez for the plaintiff.

4       THE COURT:  Hi, Ms. Rodriguez.  First of all, I have

5  a court reporter here.  You're for the plaintiffs, obviously.

6  Will the other parties on this call, identify themselves so

7  the court reporter can get it down.

8       MR. FRAM:  Your Honor, good morning, Steven Fram of

9  Archer and Greiner for ALPA.  Also on the phone for ALPA is my

10 partner, John Connell, co-counsel Daniel Katz and Elizabeth

11 Ginsberg who is in-house counsel at ALPA.

12      THE COURT:  Welcome to all four of you.

13      MR. JACOBSON:  Joe Jacobson is also here for the

14 plaintiff.

15      THE COURT:  Mr. Jacobson, welcome.

16      MR. PRESS:  Allen Press for the plaintiff as well,

17 Judge.

18      THE COURT:  Welcome to you too.  And what prompted

19 this particular call was a letter I got two days ago, or

20 actually I got it yesterday, it's dated two days ago but I saw

21 it yesterday, in which Ms. Rodriguez said they were going to

22 be unwilling, not unwilling, unable to meet the original

23 deadlines for identifying experts and producing their reports

24 which were July 2nd and August 6th.

25      MS. RODRIGUEZ:  Your Honor, we have a -- no, we were

─ TELEPHONE CONFERENCE ─

1  able to make the identifying deadline.  We have identified our

2  experts.

3        THE COURT:  So the problem is not identifying them,

4  but getting their reports completed by the 6th.  She also said

5  in her penultimate paragraph -- and I am quoting it --

6  additionally, it's become apparent that we need to seek *in

7  limine* rulings from the Court on certain issues necessary for

8  experts to complete their reports.  We are working to repair

9  these motions, but again need data in the hands of ALPA and/or

10  American.

11      So, I think what I'm going to do at this point is turn

12  it over to Ms. Rodriguez to explain her entire position here.

13        MS. RODRIGUEZ:  Yes, Your Honor.  When we were last

14  before you on May 4th, I believe was the date, when you ruled

15  on the posttrial motions, we entered into a very enthusiastic

16  schedule for expert discovery.  And we took it to heart and

17  have been working, first, in identifying our experts; and,

18  secondly, in doing the groundwork for their reports.

19      We had served discovery on ALPA back in -- I think as

20  early as last December when there was still the bifurcation

21  and no ability -- they -- no ability to seek discovery, but we

22  wanted them to have the discovery that we wanted early and

23  they have had it since December.  And so a lot of what our

24  experts need to do -- their final report is in the hands of

25  the defendants.  But as we have been working with our experts

─────────────── TELEPHONE CONFERENCE ───────────────

1   to get the reports done, it became apparent that it may make

2   sense at this stage of the litigation to, again, kind of do it

3   in a two-stage process.  And what we are thinking now, and as

4   we work with our experts, what seems to make some sense, is

5   that there is a next phase, a damage phase, with the common

6   evidence of the class which will produce a gross number and

7   that gross number may need some fine tuning with regard to

8   evidentiary issues.  And that's where the motion *in limine*

9   came up.  And that would be the trial in the next phase of the

10  litigation.

11        And then subsequent to that trial, there would be a

12  referral to the special master's so that the defendants can

13  address the mitigation issues which I'm sure that they -- the

14  individual mitigation issues which I'm sure they will be

15  anxious to address.

16        And I'll just mention, your Honor, that methodology or

17  that way of proceeding is one that has been adopted in many of

18  the employment cases.  And there is a very good description of

19  it in a case called Vulcan versus the City of New York which

20  is --

21           THE COURT:  Vulcan is a police union.

22           MS. RODRIGUEZ:  It's a fire department.

23           THE COURT:  I'm sorry, you're right, it's a fire

24  department union.

25           MS. RODRIGUEZ:  But the methodology, I think, makes

─────────────── TELEPHONE CONFERENCE ───────────────

1   sense.  And it's something that I think can easily,

2   appropriately be adapted for this case.

3           THE COURT:  Let me break it down.  Let me start with

4   discovery.

5           Are you saying that your reports can't be completed

6   because there is information that ALPA has -- ALPA or American

7   has, which of course is in bankruptcy now, that until you have

8   it, those reports can't be completed; is that what you are

9   telling me?

10          MS. RODRIGUEZ:  Go ahead, Allen.

11          MR. PRESS:  This is Allen Press.  Judge, that's a yes

12   as to American and a no as to ALPA.

13          ALPA's compliance has been fine with us.  And the APA,

14   the American Pilot's Union is another source of where we are

15   getting pushback.

16          MS. RODRIGUEZ:  We still don't have the list from

17   ALPA, Allen, which we need.

18          MR. PRESS:  Mr. Katz and I spoke yesterday about it,

19   Lisa and, I'm sorry, as soon as the judge enters the

20   confidentiality order, they are going to release that list to

21   us.

22          MS. RODRIGUEZ:  Okay.

23          THE COURT:  Who is?

24          MR. PRESS:  ALPA.

25          THE COURT:  Is there an order before me that I'm

———— TELEPHONE CONFERENCE ————

1    supposed to sign?

2          MR. PRESS:  I believe it is, Judge.  I thought I saw

3    it on e-mail to that effect.

4          MS. RODRIGUEZ:  I think Mr. Connell filed it on the

5    docket yesterday, your Honor.

6          THE COURT:  Oh, yesterday.  All right.

7          MR. PRESS:  So the date of that we need primarily is

8    in the hands of the third-parties that are in this bankruptcy

9    and completely distracted and --

10          THE COURT:  Well, APA is not in bankruptcy, I assume.

11          MR. PRESS:  No, but they're in the 1113 process with

12    American.  They just put out a potential contract for

13    membership restitution last week.  But I've shown some

14    patience with these lawyers, but I told them that my patience

15    has to be at an end now.  And if I can't get a commitment from

16    them or what they're going to do, I need to go down to Texas

17    and hire a lawyer and file a motion to compel.  That's where

18    we are, Judge.

19          THE COURT:  And you're saying to me that until you

20    get that information from American slash APA, your experts

21    can't finish their reports?

22          MR. PRESS:  It won't be the best report possibly.

23          THE COURT:  Well, no report is ever the best report

24    possible.  I need a little more than that.

25          MS. RODRIGUEZ:  Your Honor, I think there is --

1  again, I think that there are two issues:  One is there is

2  substantially along the way in doing a report that's they're

3  doing, and with the August 6th deadline in mind.  But they --

4  just given the timing of when we were first able to obtain

5  experts, we ended up crunched in the middle of the summer

6  because of their schedules even with the most basic report

7  they're going to be pushing up against that deadline.  And so

8  we need a little bit of relief from that deadline.  But then

9  in order to have the most complete report, we'd like to be

10  able to pursue the information from American in Texas to

11  complete it.

12          THE COURT:  Let me hear from the defendants.

13          MR. FRAM:  Your Honor, thank you.  Steve Fram.

14      Your Honor, if the plaintiffs need some additional time

15  to finish their reports whether it be vacation or whatever, we

16  don't oppose that.  And I understand how difficult and complex

17  the whole process is.

18          THE COURT:  Well, I mean, a lot of this is a

19  reflection of the fact that, intuitively, at least to me, the

20  calculation of damages is an extraordinarily difficult

21  exercise.  Just it feels that way intuitively to me.

22          MR. FRAM:  Your Honor, we appreciate that.  As I

23  think you know that we went through a mediation where both

24  counsel worked together to try to focus on some of the issues,

25  and I think we all learned, among other things, that it is

─── TELEPHONE CONFERENCE ───

 1  very complex.

 2          THE COURT:  That's just to me, that's intuitive only

 3  to me, since I didn't participate in that but --

 4          MR. FRAM:  Your Honor, if they need more time, that's

 5  fine, we understand.  We're a little bit confused, I guess,

 6  about the type of motion they're talking about and whether or

 7  not that's necessary for them to complete their expert

 8  reports.

 9          THE COURT:  I'm going to get to that next.  Let them

10  address that first, and I'll get back to you, Mr. Fram, on

11  that.

12          MR. FRAM:  Your Honor, I guess what we would like to

13  see happen is a date for the expert reports.  If their

14  position is they do need information from the APA and from

15  American, then we'd like to see some mention of dates by which

16  they'll file motions to compel and bring that to a head so

17  that we're just not out in limbo in terms of scheduling.

18          THE COURT:  Okay, Mr. Press, or whoever is going to

19  speak, tell me a little bit about the *in limine* rulings.  I

20  mean, I know what the word "*in limine*" means, but it doesn't

21  give me much of a clue as to what you are talking about.

22          MS. RODRIGUEZ:  I think right now we anticipate, and

23  it doesn't necessarily need to be in this first phase, I think

24  what may be helpful is if we could, after meeting with,

25  spending more time with our expert, present a trial plan,

—— TELEPHONE CONFERENCE ——

1    trial type plan to you.  For instance, there will be issues

2    with regard to mitigation and what is and what is not

3    mitigation.  I don't think that those issues are appropriately

4    in the next phase of this litigation, and so I think it would

5    be helpful if we could layout to you, and I am just not in a

6    position to do it today because we're not sure of the full

7    parameters of what we think --

8            THE COURT:  By the way, is the damage phase also

9    jury?

10            MS. RODRIGUEZ:  The next damage phase will be a jury,

11    and that will be a gross number.  And then from that gross

12    number, I think that if you adopt the kind of procedure that

13    was used in Vulcan Society, then that is where the defendants

14    have the opportunity to challenge some of the mitigation

15    issues that I'm sure that they believe is appropriate.

16            THE COURT:  Who is the judge in Vulcan?

17            MS. RODRIGUEZ:  The judge was, I don't know how you

18    pronounce it, Garaufis, G-A-R-A-U-F-I-S.

19            THE COURT:  One of the newer Federal judges?

20            MS. RODRIGUEZ:  Yes.

21            THE COURT:  I don't know him or her.

22            MS. RODRIGUEZ:  It's a case that cited -- it's

23    Nicholas.

24        It's been cited by a lot of other courts, and it's a

25    methodology that just appears to make a lot of sense.

─────────── TELEPHONE CONFERENCE ───────────

1          THE COURT:  I assume it's a reported case.

2          MS. RODRIGUEZ:  I have the cite here, your Honor, if

3    you would like it?

4          THE COURT:  What's the cite?

5          MS. RODRIGUEZ:  I have a Lexis cite.  It's 2011 U.S.

6    District Lexis 60276.

7          THE COURT:  Start over again.

8          MS. RODRIGUEZ:  U.S. District Court Lexis 60276.

9    June 6, 2011.

10          THE COURT:  Okay.

11          MR. JACOBSON:  Joe Jacobson here.

12          THE COURT:  Yes, Mr. Jacobson.

13          MR. JACOBSON:  You asked about *in limine* motions.

14   And, for example, one of the questions that we would like to

15   get a ruling from the Court, because we think it's a legal

16   issue as opposed to a fact issue, is for example whether or

17   not certain pension plans amounts are includable or not

18   includable on damages.  There were two different pension

19   plans, the A and B plan, and the dollar values of those are

20   substantial but we're not clear whether or not that is

21   something we can appropriately claim for our class members or

22   not.  So, it's those type of things we're talking about the

23   motion *in limine* will resolve whether the Court decides

24   certain items are in or out for damages.

25          THE COURT:  That strikes me as a little strange.  I

───────── TELEPHONE CONFERENCE ─────────

 1   mean, why wouldn't you take the position they are included and

 2   they can be challenged by the other side.

 3          MS. RODRIGUEZ:  That's what I said, your Honor.  I

 4   think that --

 5          THE COURT:  I don't understand that at all.

 6          MS. RODRIGUEZ:  I think we need to put some pens and

 7   paper on it.  I think the biggest issue is with regard to what

 8   we're thinking about on *in limine* issues are with regard to

 9   mitigation.  But, again, that comes -- we believe that is

10   appropriate for that to come at the next stage.  But we're

11   just at this stage working with our experts to try to put some

12   meat on the bones of what we think those issues are.  So I

13   think we are probably a week premature from being able to tell

14   you exactly what we think they are, but I just wanted to get

15   in touch with you as soon as we knew that there was probably

16   going to be issues with getting a report done by August.

17          THE COURT:  Would it be useful to have another

18   telephone conversation like two weeks from now?

19          MS. RODRIGUEZ:  I think that would be very useful.

20          THE COURT:  I don't know what basis I would have for

21   setting any dates right now.  Anything I did now would be

22   total guess work.

23          MS. RODRIGUEZ:  I think that would be extremely

24   useful, your Honor, and we will endeavor to get --

25          THE COURT:  Mr. Fram, is that all right with you?

─────────────── TELEPHONE CONFERENCE ───────────────

1      MR. FRAM:  It is, your Honor.  I think there is much

2  we agree on.  We agree that there needs to be a trial plan.

3  We agree that mitigation is an important issue.  I do tend to

4  think, your Honor, and maybe you want to defer this, I do

5  think we need to see the expert report before we can really

6  figure out what type of trial plan there is.

7      THE COURT:  I agree.  That makes sense to me.

8      MR. FRAM:  Yes.  The other thing, your Honor, if I

9  can just note, we did go ahead and serve the plaintiffs with

10 written discovery, interrogatories and doc request.  I think

11 it was -- I think they went out at the end of May.  And if you

12 recall from our conference on May the 4th, we were told, you

13 don't need to go ahead and take any discovery, but we did want

14 the plaintiff to know what information we would want to

15 challenge their expert reports or to focus on these issues.

16 So, if we are going to be asked to, I guess, comment on a plan

17 and a concept of maybe bifurcating this case further, it

18 probably would be helpful for your Honor to process those

19 sooner as opposed to later which pilots they're seeking

20 damages for and to get some of that information.

21      If you recall, your Honor, there are basically three

22 groups of former TWA pilots in this group of 2,300 or so.  You

23 got the senior most pilots who were never furloughed, as we

24 understand it they ended up --

25      THE COURT:  Are they above the staple point?

——————— TELEPHONE CONFERENCE ———————

 1          MR. FRAM:  Above the furlough point, your Honor.

 2    There was a group above the staple point who was furloughed,

 3    but a group that was above the staple point that weren't

 4    furloughed.  And we think those ones above the so-called

 5    furlough point, some of them made substantially more, all of

 6    them they did better at American than TWA.

 7          THE COURT:  Well, the pay rates were much higher, I

 8    know that.

 9          MR. FRAM:  Exactly, your Honor.

10          So we have questions about whether they have damages,

11    and we're unclear at this point if the plaintiffs are even

12    going to seek damages on their behalf.

13          And we have the most junior pilots, your Honor, who

14    were at the bottom of the staple point, they're the ones who

15    were furloughed in the immediate aftermath of 9/11, and who I

16    think we all agreed were going to be furloughed no matter

17    what.  So we think that they felt they have no damage claims.

18          And we think there is a group in the middle that really

19    is the potential largest universe of pilots who have damage

20    claims.  We don't yet know from the plaintiff's perspective

21    who those people are.  And it's helpful for us to know sooner

22    as opposed to later that the group for whom they are seeking

23    damages is 200 as opposed to 500 or a 1,000.  So it's

24    appropriate at this point, or maybe you want to put this off,

25    your Honor, for a couple more weeks.

─────────────── TELEPHONE CONFERENCE ───────────────

1    THE COURT:  Well, first I want to have Ms. Rodriguez

2  or Mr. Press or Mr. Jacobson's comments on this.

3    MS. RODRIGUEZ:  Your Honor, I think that, first of

4  all, I think that having a conference call in two weeks would

5  be extremely helpful because it would, again, allow us to put

6  some meat on the framework that we are anticipating right now

7  and better able to address some of the things that Mr. Fram

8  raises.

9    Secondly, I think that it also underscores that there

10  is probably -- and, again, there is probably a methodology or

11  a way of proceeding where some of the discovery can be

12  perhaps, and, again, I rather have the framework first but can

13  be staged a little bit so it doesn't have to all occur right

14  now.

15    And I hear Mr. Fram.  I think we can work something

16  out; and I think that the expert report that we are

17  anticipating right now will be based on common proof and

18  common evidence and it will yield a gross number.  And whether

19  or not it makes sense to have that happen and then

20  subsequent -- and then Mr. Fram's subsequent individual

21  discovery, perhaps, it does.  But it's those kind of things

22  that I'd like the opportunity to talk to both --

23    THE COURT:  Well, this is a little vague.  The notion

24  of coming up with a gross figure and not knowing which

25  particular pilots would be entitled to recover, I have a

─────── TELEPHONE CONFERENCE ───────

1    little bit of a problem getting my head around that, but --

2            MS. RODRIGUEZ:  Your Honor, the gross number would

3    not be who wouldn't be able to recover.  The gross number is

4    going to be based on pilot numbers.  So you don't actually

5    need the -- you don't need to know that it's, you know, John

6    Smith.  You'll know it's Pilot No. 72.

7            THE COURT:  Well, if we know the number in the list

8    that automatically tells us who the pilot is.

9            MS. RODRIGUEZ:  So they'll have that.  Again, as we

10   anticipate, you'll have that number.  Now, that number will be

11   without the benefit of mitigation.  And so that --

12           THE COURT:  That I clearly understand.

13           MS. RODRIGUEZ:  So, that's what they will know.  They

14   will know what pilots we say suffer damages and what pilots --

15           THE COURT:  But the point they will know it is when

16   you're saying the expert reports come out?

17           MS. RODRIGUEZ:  Yes.

18           THE COURT:  Not before?

19           MS. RODRIGUEZ:  No.  Because that's based on part of

20   what the expert is doing.

21           THE COURT:  All right.

22        Larry, have you looked, I a saw you sneak out and look

23   at the calendar while we were talking here.

24           THE DEPUTY COURT CLERK:  Yes, sir.  I have two

25   proposed dates.  Wednesday, July 25th, at 1:00 or Friday,

─── TELEPHONE CONFERENCE ───

 1    July 27th, at 12:00.

 2            MR. PRESS:  Both are fine for Press and Jacobson.

 3            MS. RODRIGUEZ:  Both are fine for me as well, your

 4    Honor.

 5            MR. KATZ:  Your Honor, this is Dan Katz, I am on

 6    vacation that entire week, the 23rd through the 28th.

 7            THE COURT:  What about the following week?

 8            MR. KATZ:  The following week is fine for me.

 9            THE COURT:  Is the following week fine for all of

10    you?

11            MS. RODRIGUEZ:  Yes.

12            THE COURT:  I'm sorry, somebody started to say

13    something.

14            MR. FRAM:  Your Honor, Steve Fram.  The following

15    week is fine for me with the exception of Monday the 6th.

16            MS. RODRIGUEZ:  The following week -- you're skipping

17    two weeks.

18            MR. FRAM:  Oh, I'm sorry.

19            MS. RODRIGUEZ:  The following week starts with Monday

20    the 30th.

21            MR. FRAM:  Oh, I'm sorry.  Let me go back.

22            THE DEPUTY COURT CLERK:  July 31st at 3:00.  That's a

23    Tuesday, three o'clock.

24            MR. FRAM:  What was the date, your Honor, please?

25            THE COURT:  31st which is a Tuesday.

─────────── TELEPHONE CONFERENCE ───────────

1          MR. FRAM:  Your Honor, that's fine for Steve Fram.

2   Dan?  John?

3          MR. KATZ:  Yeah, that's fine for me.

4          MS. RODRIGUEZ:  31st at three, your Honor?

5          THE COURT:  Three.

6          MS. RODRIGUEZ:  Allen, Joe?

7          MR. JACOBSON:  That's a yes for Press and Jacobson.

8          MS. RODRIGUEZ:  Good.

9          THE COURT:  The reason it's three is I'm trying a

10  case and you know my trial schedule.  This would be after that

11  trial ends for that day which will be somewhere between 2:00

12  and 2:30 and then I'll take you guys on.

13          MR. PRESS:  Judge, this is Allen Press.

14          THE COURT:  Yes, Mr. Press.

15          MR. PRESS: I will have better information from

16  American and APA as to what they are willing to do without a

17  motion.  And if it's, in fact, satisfactory, we will have a

18  motion on file before this conference.

19          THE COURT:  Well, that would be useful.  Will this be

20  a motion before the bankruptcy court?

21          MR. PRESS:  No, be in the court who issued the

22  subpoena which was Fort Worth.

23          THE COURT:  I see.  Oh, that's right.  That's by the

24  local rules provides for that, I think.  Okay.  All right.  It

25  will be further information we can deal with at the time.

─ TELEPHONE CONFERENCE ─

1          Now, there is one other thing that I want to just

2    mention now because I think I may want to set a date for.

3    There are pending motions by the defendants which I think is

4    fully briefed at this point for a 1292(b) certification for

5    interlocutory appeal.  Hello?

6          MS. RODRIGUEZ:  Yes, Your Honor.

7          THE COURT:  Am I correct, that the defendants have

8    made such a motion and it's briefed?

9          MS. RODRIGUEZ:  Yes.

10          THE COURT:  Well, do you want me to decide that

11    without oral argument, with oral argument?  What is your

12    pleasure.  If you want oral argument, I want to set a date

13    right now and get that lined up.

14          MR. FRAM:  Steve Fram on behalf of ALPA.  We think

15    that oral argument might be helpful to the Court, and if you

16    are willing to hear us, we'd appreciate the opportunity.

17          THE COURT:  I'm always willing to hear on any motion,

18    oral argument, so if the party wants it, particularly if the

19    moving parties wants it, but if either party wants it.

20          Now, do you want that in person, over the telephone?

21    Because I know with lawyers in Saint Louis, it's a little bit

22    of a burden.  And Mr. Katz is in Washington, D.C. I think.

23    Right, Mr. Katz?

24          MR. KATZ:  I am in Washington, D.C.  I'd be happy to

25    travel to New Jersey.

─────── TELEPHONE CONFERENCE ───────

1      THE COURT:  Well, Washington to New Jersey is a

2  little easier than Saint Louis.  I found traveling from Saint

3  Louis to anywhere is a hassle, notwithstanding it was once a

4  hub for a major airline.  I always found it a little hard to

5  get in and out of Saint Louis, but what do I know.

6      So, tell me what you want?  Do you want oral argument

7  in court or telephone.  I am willing to do either one.

8      MR. KATZ:  I'd be happy to come to New Jersey and

9  have the argument in person.

10      THE COURT:  Is that a problem for you folks in Saint

11  Lou?

12      MR. PRESS:  No, there's direct flights, Judge.  It's

13  not really a problem.

14      THE COURT:  Okay.  From Philly to Saint Louis there

15  is direct flights?

16      MR. PRESS:  Yes, Southwest Airlines and U.S. Airways.

17      THE COURT:  Oh, all right.  You wouldn't have thought

18  of Saint Louis to Philadelphia as the Southwest but, hey, what

19  do I know?  Can we have a date?

20      THE DEPUTY COURT CLERK:  What timeframe are you

21  looking at, Judge?  Before the conference or after the

22  conference?

23      THE COURT:  I don't think it's really tied to the

24  conference particularly.  I am willing to have it when it's

25  convenient for the lawyers.  I just want to make sure we have

─── TELEPHONE CONFERENCE ───

 1   a date that meets their schedules, but other than that --

 2           MR. PRESS:  It makes great sense for us to do it with

 3   the conference, if you are available.  I think some of the

 4   issues might be better hashed out in person when we talk about

 5   the trial plans.

 6           THE COURT:  As long as you're willing to stay late

 7   that day.  It's not a problem for me.  I can stay late because

 8   we are starting at three.

 9       Let's do this.  Let's make it -- if anything, I can

10   adjourn that a half hour early for that day.

11           THE DEPUTY COURT CLERK:  It's a bench trial.  You can

12   do whatever you want.  You can tell them to go home at noon.

13           THE COURT:  Yeah, I have more flexibility.  Let's

14   make it for 2:00 rather than three.

15           MR. JACOBSON:  Joe Jacobson here.  I would not be

16   able to make it into Philadelphia myself on that day.  While I

17   can be on a phone conference, I am in court that morning in

18   Saint Louis.

19           THE COURT:  I think we have the capability of -- Mr.

20   Press would be here, right?

21           MR. PRESS:  Yes.

22           THE COURT:  I think we can, we have done it in the

23   courtroom, we do have the capability, I believe, of phoning

24   you in.

25           MR. JACOBSON:  That would be great.

─ TELEPHONE CONFERENCE ─

1          THE COURT:  We've done it actually a few times.  I

2   think we had one from North Dakota.  For some reason I wound

3   up having a North Dakota attorney but he appeared by

4   telephone.  He was very active in the argument.

5          Okay.  Let's do it at two o'clock rather than

6   three o'clock.  And the trial that I have, I'll just adjourn

7   it an hour or so.  Instead of ending at two, I'll end at one

8   or 12:30 or something.

9          MS. RODRIGUEZ:  Very good.  Thank you, your Honor.

10          THE COURT:  It's going to be in person except for Mr.

11   Jacobson, okay, who will dial in.  But Mr. Press will be there

12   from the same firm?

13          MR. PRESS:  Yes.

14          THE COURT:  Okay.  And we'll do both the scheduling

15   issues that we're now wrestling with, and we'll do just a

16   straight argument on the certification for -- what's it

17   1292(b), is that it?

18          MR. FRAM:  Yes, Your Honor.

19          THE COURT:  1292(b) certification for interlocutory

20   appeal.  You all have to treat me very nicely.  I am a new

21   grandfather.

22          MS. RODRIGUEZ:  Congratulations.

23          MR. FRAM:  Congratulations.

24          THE COURT:  My 49-year old daughter waited 20 years

25   to have another child, but she is now 49 and produced an 8.3

———— TELEPHONE CONFERENCE ————

1   ounce bouncing baby girl three weeks ago.

2          MS. RODRIGUEZ:  That's wonderful.  Congratulations.

3          THE COURT:  So I now have a grandson who is a senior

4   in college, or will be a senior this fall, and a three-week

5   old.

6          MS. RODRIGUEZ:  At least it spreads out the tuition

7   payments.

8          THE COURT:  Right.  I paid tuition for my first

9   grandson.  I paid all that, but this next one is on her own.

10  Okay.

11         MR. PRESS:  Judge, just one more thing.  That

12  confidentiality order, can you enter that at your earliest

13  convenience, Judge?

14         THE COURT:  Well, if it's on electronic filing, we

15  can print it out and get it signed today because today is the

16  day that I'm here all day.  The only thing I leave in time for

17  my poker game, but other than that I am -- well, that's not, I

18  don't have to leave here until six for that so I'm okay.  I

19  should get it done today.  You're sure it was filed

20  electronically yesterday?

21         MR. FRAM:  That's correct.

22         THE COURT:  We'll check it, if it's there.  We'll

23  call somebody if we can't find it, we'll let you know.  Okay.

24         MS. RODRIGUEZ:  Thank you, your Honor.

25         MR. FRAM:  Thank you, your Honor.