# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICK BRADY, et al., | Civil Action No. 02-2917 (JEI) |
| Plaintiffs, | |
| v. | |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | |
| Defendant. | |

_____

**AMENDED ANSWER OF DEFENDANT**
**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**
**TO PLAINTIFFS' SECOND AMENDED RESTATED COMPLAINT**
_____

Archer & Greiner
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, New Jersey 08033-0968
(856) 795-2121

*Pro Hac Vice:*

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Katz & Ranzman, P.C.
4530 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 659-4656

*Attorneys for Defendant Air Line Pilots Association, International*

Air Line Pilots Association, International (ALPA) submits the following amended answer to the Plaintiffs' Second Amended Restated Complaint:

1.      In response to the allegations contained in paragraph 1, ALPA states that the Plaintiffs named in the caption of the Second Amended Restated Complaint were employed as pilots by Trans World Airlines, Inc. (TWA Inc.) and represented by ALPA in April 2001, when American Airlines, Inc. (American) acquired substantially all of TWA Inc.'s assets and employees through a wholly-owned subsidiary, TWA Airlines LLC (TWA LLC).  Except as specifically admitted, ALPA denies the allegations contained in paragraph 1.

2.      In response to the first sentence of paragraph 2, ALPA states that, on February 12, 2003, the Court certified a plaintiff class defined as all former TWA Inc. pilots who were employed as pilots by TWA LLC in April 2001, with the named Plaintiffs as class representatives.  In further response to the same sentence, ALPA admits that Plaintiffs are pursuing a claim for damages against ALPA but denies that they are seeking equitable relief against ALPA and also denies that Plaintiffs are currently pursuing any claims whatsoever against the Allied Pilots Association (APA), American or TWA LLC because those claims have been dismissed.  In response to the second sentence of paragraph 2, ALPA states that the alleged "loss of seniority integration rights" about which Plaintiffs there complain resulted from the waiver of those rights by the TWA Master Executive Council (TWA MEC), ALPA's coordinating council and administrative arm at TWA Inc., which included some of the Plaintiffs. In response to the third sentence of paragraph 2, ALPA states that all of Plaintiffs' claims except a claim for breach of the duty of fair representation under the Railway Labor Act (RLA), 45 U.S.C. §§ 151-188, have been dismissed.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 2.

3.     In response to the first sentence of paragraph 3, ALPA admits that Plaintiffs'

remaining claim arises under the RLA.  In response to the second sentence of paragraph 3,

ALPA denies that Plaintiffs currently have any other claims.  In response to the third sentence of

paragraph 3, ALPA admits that venue is appropriate in this judicial district.  Except as

specifically admitted, paragraph 3 states legal conclusions to which no response is required, but

to the extent a response is deemed required, ALPA denies the allegations contained in paragraph

3.

4.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations

contained in paragraph 4 and, for that reason, denies those allegations.

5.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations

contained in paragraph 5 and, for that reason, denies those allegations.

6.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations

contained in paragraph 6 and, for that reason, denies those allegations.

7.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations

contained in paragraph 7 and, for that reason, denies those allegations.

8.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations

contained in paragraph 8 and, for that reason, denies those allegations.

9.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations

contained in paragraph 9 and, for that reason, denies those allegations.

10.    ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations

contained in paragraph 10 and, for that reason, denies those allegations.

11.    ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations

contained in paragraph 11 and, for that reason, denies those allegations.

12.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 12 and, for that reason, denies those allegations.

13.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 13 and, for that reason, denies those allegations.

14.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 14 and, for that reason, denies those allegations.

15.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 15 and, for that reason, denies those allegations.

16.     In response to the allegations in paragraph 16, ALPA states that the named Plaintiffs were pilots employed by TWA Inc. and TWA LLC in April 2001.  Except as specifically admitted, ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 16 and, for that reason, denies those allegations.

17.     In response to the first sentence of paragraph 17, ALPA states that APA is no longer a defendant in this action but otherwise admits the allegations in that sentence.  In response to the second sentence of paragraph 17, ALPA states that, on April 3, 2002, the National Mediation Board (NMB) extended the certification of APA as the collective bargaining representative of the pilots employed by American to cover the pilots of TWA LLC, as well.  In further response to the same sentence, ALPA states that APA continues to be the certified representative of those pilots.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 17.

18.     ALPA admits the allegations contained in the first sentence of paragraph 18.  In response to the second sentence of paragraph 18, ALPA states that ALPA was the collective bargaining representative within the meaning of the RLA for the Plaintiffs and other class

4

members employed as pilots by TWA Inc. and TWA LLC prior to April 3, 2002.  Except as specifically admitted, ALPA denies the allegations contained in the second sentence of paragraph 18.

19.     In response to the allegations of paragraph 19, ALPA states that, from April 10, 2001, until March 5, 2002, TWA LLC was a "common carrier by air" within the meaning of the RLA, 45 U.S.C. § 181, that TWA LLC operated domestically and internationally, and that on March 5, 2002, the NMB found that TWA LLC and American were operating as a single carrier for the purpose of collective bargaining under the RLA.  Except as specifically admitted, ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 19 and, for that reason, denies those allegations.

20.     In response to the allegations of paragraph 20, ALPA states that, at all relevant times, American has been operating domestically and internationally and that it has been a "common carrier by air" within the meaning of the RLA, 45 U.S.C. § 181.  Except as specifically admitted, ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 19 and, for that reason, denies those allegations.

21-27.  In response to the allegations contained in paragraphs 21 through 27, ALPA states that, on February 12, 2003, the Court certified a plaintiff class defined as all former TWA Inc. pilots who were employed as pilots by TWA LLC in April 2001, with the named Plaintiffs as class representatives.  ALPA denies the allegations of the second and third sentences of paragraph 27 to the effect that Plaintiffs are seeking seniority integration rights or injunctive relief inasmuch as Plaintiffs seek only money damages against ALPA.  Except as specifically found by the Court in its February 12, 2003 order, ALPA denies the allegations contained in paragraphs 21 through 27.

28.     ALPA admits the allegations contained in the first sentence of paragraph 28.  In response to the second sentence of paragraph 28, ALPA states that TWA Inc. employed approximately 2300 pilots when American acquired substantially all of TWA Inc.'s assets in April 2001.  Except as specifically admitted, ALPA denies the allegations contained in the second sentence of paragraph 28.

29.     In response to the allegations in paragraph 29, ALPA states that it was the exclusive collective bargaining representative within the meaning of the RLA for TWA Inc.'s pilots beginning in the late 1930s.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 29.

30.     ALPA admits the allegations contained in paragraph 30.

31.     In response to the allegations of paragraph 31, ALPA states that the TWA MEC was ALPA's coordinating council and administrative arm at TWA Inc. and TWA LLC, that the TWA MEC members were elected by ALPA members at TWA Inc. and TWA LLC, and that the three TWA MEC officers were elected by the TWA MEC.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 31.

32.     ALPA admits the allegations contained in paragraph 32.

33.     In response to the first sentence of paragraph 33, ALPA states that American did not immediately integrate all of TWA Inc.'s assets and associated airline operations into American upon completion of the purchase.  Except as specifically admitted, ALPA denies the allegations contained in the first sentence of paragraph 33.  ALPA admits the allegations contained in the second and third sentences of paragraph 33.

34.     ALPA admits the allegations contained in paragraph 34.

35.     In response to the allegations in paragraph 35, ALPA states that, from April 10, 2001, until April 3, 2002, TWA LLC recognized ALPA as the collective bargaining representative of the Plaintiffs and other class members employed by TWA LLC.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 35.

36.     ALPA admits the allegations contained in the first sentence of paragraph 36.  In response to the second sentence of paragraph 36, ALPA states that the provisions of the collective bargaining agreement (CBA) between ALPA and TWA Inc. speak for themselves with respect to their requirements and denies the allegations of the second sentence of paragraph 36 to the extent inconsistent with those provisions.  Notwithstanding the foregoing, ALPA states that its CBA with TWA Inc. required TWA Inc. to ensure that any purchaser agree to a set of procedures to integrate pilot seniority lists in the event of a merger or acquisition, and, in the event the pilots at the acquiring carrier were not represented by ALPA, to follow the procedures set forth in Sections 3 and 13 of the Allegheny-Mohawk Labor Protective Provisions (LPPs).  In response to the third sentence of paragraph 36, ALPA states that Section 3 of the LPPs calls for "provisions [to] be made for the integration of seniority lists in a fair and equitable manner," and that Section 13 of the LPPs requires the arbitration of disputes, including certain disputes arising under Section 3 of the LPPs.  Except as specifically admitted, ALPA denies the allegations contained in the second and third sentences of paragraph 36.

37.     ALPA admits the allegations contained in paragraph 37.

38.     ALPA denies the allegations contained in paragraph 38.

39.     ALPA states that the terms of the Purchase Agreement speak for themselves with respect to their requirements and denies the allegations of Paragraph 36 to the extent inconsistent with those terms.  Notwithstanding the foregoing, ALPA states that the Purchase Agreement

provided that, as a precondition to American's consummation of the acquisition, TWA Inc. would amend its CBAs with its unions in certain respects, including amending its CBA with ALPA to waive the seniority integration provisions referenced in ALPA's response to paragraph 36.

40.     In response to the allegations of paragraph 40, ALPA states that TWA Inc. filed for bankruptcy protection under Chapter 11 of Title 11 of the U.S. Code, as contemplated by the asset purchase agreement, and initiated a bidding process approved by the U.S. Bankruptcy Court in Wilmington, Delaware, to auction TWA Inc.'s assets, which ended with American's proposal being the only one that conformed to the bidding procedures.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 40.

41.     ALPA denies the allegations contained in paragraph 41.

42.     In response to the allegations contained in paragraph 42, ALPA states that, through the TWA MEC negotiating committee and the TWA MEC merger committee, it negotiated with TWA Inc. and with APA to obtain a fair and equitable seniority integration for the TWA Inc. pilots while also providing the assurances American needed in order to proceed with the transaction that presented the only option for continued employment of the TWA Inc. pilots.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 42.

43.     In response to the allegations in paragraph 43, ALPA states that TWA Inc. filed a Section 1113 motion in the bankruptcy court on or about March 15, 2001, that the assertions and requests of the Section 1113 motion speak for themselves with regard to their meaning, and denies the allegations characterizing the Section 1113 motion in paragraph 43 to the extent inconsistent with those assertions and requests.  Notwithstanding the foregoing, ALPA states that

the Section 1113 motion sought to abrogate TWA Inc.'s entire CBA with ALPA.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 43.

44.     ALPA denies the allegations contained in paragraph 44.

45.     ALPA denies the allegations contained in paragraph 45.

46.     ALPA denies the allegations contained in paragraph 46.

47.     ALPA denies the allegations contained in paragraph 47.

48.     ALPA states that the provisions of American's March 30, 2001 letter to Plaintiff Pastore speak for themselves and denies the allegations of paragraph 48 to the extent inconsistent with those provisions.  Notwithstanding the foregoing, ALPA states that the quotation from that letter contained in paragraph 48 appears to be an accurate quotation of a portion of that letter. Except as specifically admitted, ALPA denies the allegations contained in paragraph 48.

49.     In response to the allegations of paragraph 49, ALPA states that, on April 2, 2001, the TWA MEC adopted a resolution agreeing to waive the seniority integration protections in the TWA Inc. CBA.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 49.

50.     ALPA denies the allegations contained in paragraph 50.

51.     In response to the allegations of paragraph 51, ALPA states that, after the TWA MEC agreed to waive the seniority integration protections in the TWA Inc. CBA, ALPA entered into a CBA with TWA LLC, dated April 9, 2001, the terms of which governed the former TWA Inc. pilots' employment at TWA LLC.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 51.

52.     In response to the allegations contained in paragraph 52, ALPA states that the provisions of the TWA LLC CBA speak for themselves with respect to the duration of the CBA

and denies the allegations of paragraph 52 to the extent inconsistent with those provisions.

Notwithstanding the foregoing, ALPA states that Section 30 of the TWA LLC CBA, entitled

"Effective Dates and Conditions," provided in pertinent part as follows:

> This Transition Agreement will remain effect and not be amendable, until integration of the TWA-LLC and American Airline pilot crafts or classes, specifically, action by the National Mediation Board ("NMB") pursuant to Section 2 Ninth of the Railway Labor Act recognizing the inclusion of the TWA-LLC pilots under the American Airlines Inc. NMB certification for the pilot craft or class. This Transition Agreement will terminate in all respects as of the date of such action by the National Mediation Board.

Except as specifically admitted, ALPA denies the allegations contained in paragraph 52.

53.     In response to the allegations contained in paragraph 53, ALPA states that the

provisions of the TWA LLC CBA speak for themselves with respect to the commitments of

TWA LLC and American contained in the CBA and denies the allegations of paragraph 53 to the

extent inconsistent with those provisions.  Notwithstanding the foregoing, ALPA states that

Section 29 of the TWA LLC CBA incorporated by reference a letter of agreement signed by

American and TWA LLC officials and by Plaintiff Pastore on behalf of ALPA that provided, in

relevant part, as follows:

> For its part, American Airlines, Inc. ("American") agrees to use its reasonable best efforts with its labor organizations representing the airline pilots (and flight engineers) crafts or classes to secure a fair and equitable process for the integration of seniority.  In that regard, American will engage a facilitator to organize meetings with the labor organizations representing the airline pilots (and flight engineers) and American and TWA-LLC.  American agrees to adopt the procedures that result from this process for seniority integration.

Except as specifically admitted, ALPA denies the allegations contained in paragraph 53.

54.     In response to the allegations contained in paragraph 54, ALPA states that

American's purchase of TWA Inc.'s assets closed on April 10, 2001, and at that point nearly all

TWA pilots became TWA LLC employees.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 54.

55.     In response to the allegations of paragraph 55, ALPA states that the provisions of the American-APA transition agreement speak for themselves with regard to their meaning and denies the allegations of paragraph 55 to the extent inconsistent with those provisions. Notwithstanding the foregoing, with respect to the first sentence of paragraph 55, ALPA states that, on July 10, 2001, American and APA signed a transition agreement creating an exception to the Scope provisions in Section 1 of their CBA in order to allow American to place its code on TWA LLC flights pending the integration of American and TWA LLC.  In further response to the allegations contained in the second sentence of paragraph 55, ALPA states that the transition agreement between American and APA included a provision stating, in relevant part, as follows:

> The American Airlines and TWA LLC pilot seniority list shall be combined to form a single System Seniority List pursuant to Section 13 of the AA/APA Agreement.  In the event that APA and American Airlines decide to modify the application of Section 13, APA shall provide the modified list to American Airlines.

Except as specifically admitted, ALPA denies the allegations contained in paragraph 55.

56.     In response to the allegations contained in the first sentence of paragraph 56, ALPA states that the provisions of the American-APA transition agreement speak for themselves with respect to their meaning and denies the allegations of paragraph 56 to the extent inconsistent with those provisions.  Notwithstanding the foregoing, ALPA states that Section 13(A) of APA's CBA with American included a provision stating, in relevant part, that "[s]eniority as a pilot shall be based upon the length of service as a flight deck operating crew member with the Company . . . ."  In further response to the allegations contained in the second sentence of paragraph 56, ALPA states that the transition agreement between American and APA

included a provision modifying Supplement J to their CBA to extend the furlough protections for American pilots provided in Supplement J.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 56.

57.     ALPA admits the allegations contained in the first sentence of paragraph 57 and denies the allegations contained in the second sentence of paragraph 57.

58.     ALPA denies the allegations contained in paragraph 58.

59.     ALPA denies the allegations contained in the first sentence of paragraph 59 and admits the allegations contained in the second sentence of paragraph 59.

60.     ALPA states that former TWA Inc. pilots were employees of TWA LLC for a period of time following April 9, 2001, and that TWA LLC was then a wholly owned subsidiary of American, but ALPA in all other respects denies the allegations contained in paragraph 60.

61.     In response to the first sentence of paragraph 61, ALPA states that American and APA executed Supplement CC on November 8, 2001.  In response to the second sentence of paragraph 61, ALPA states that the provisions of Supplement CC speak for themselves with regard to their terms and denies the allegations of the second sentence of paragraph 61 to the extent inconsistent with those provisions.  Notwithstanding the foregoing, ALPA states that Supplement CC modified Section 13 of APA's CBA to permit a seniority integration for some TWA LLC pilots that placed them on the combined seniority list senior to some American pilots. Except as specifically admitted, ALPA denies the allegations contained in paragraph 61.

62.     In response to the allegations of paragraph 62, ALPA states that the former TWA Inc. pilots employed at TWA LLC continued to be represented for purposes of collective bargaining by ALPA from April 10, 2001, until April 3, 2002, but in all other respects ALPA denies the allegations contained in paragraph 62.

63.    In response to the allegations contained in paragraph 63, ALPA states the provisions of Supplement CC speak for themselves with regard to their terms and denies the allegations of paragraph 63 to the extent inconsistent with those provisions.  Notwithstanding the foregoing, ALPA further states in response to the allegations of paragraph 63 that, of the approximately 2,300 TWA LLC pilots, approximately 1,000 were integrated into American's seniority list senior to some American pilots and that the remainder were placed at the end of the combined seniority list as of April 10, 2001.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 63.

64.    ALPA admits the allegations contained in paragraph 64.

65.    In response to the allegations contained in paragraph 65, ALPA states the provisions of the NMB's rulings of March 5 and April 3, 2002, speak for themselves with regard to their terms and denies the allegations of paragraph 65 to the extent inconsistent with those provisions.  Notwithstanding the foregoing, ALPA further states in response to the allegations contained in the first sentence of paragraph 65 that the NMB determined on March 5, 2002, that American and TWA LLC constituted a single carrier for purposes of collective bargaining and provided ALPA with thirty (30) days to submit an application showing sufficient interest to permit an election to select the combined pilot group's collective bargaining representative.  In further response to the allegations of the second sentence of paragraph 65, ALPA states that on March 18, 2002, ALPA notified the NMB that it would not file an application to seek to represent the American pilots.  In further response to the allegations of the third sentence of paragraph 65, ALPA states that on April 3, 2002, the NMB extended APA's certification as the collective bargaining representative of the American pilots to include the TWA LLC pilots and that this action by the NMB triggered the provision in Section 30 of the CBA between ALPA

and TWA LLC terminating that CBA.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 65.

66.     In response to the allegations contained in paragraph 66, ALPA states that ALPA pursued a grievance on behalf of the TWA LLC pilots against both TWA LLC and American alleging that the carriers had failed to use their reasonable best efforts with APA to secure a fair and equitable process for seniority integration.  In further response to the allegations contained in paragraph 66, ALPA states that the arbitration of the grievance resulted in an adverse decision dated April 18, 2002.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 66.

67.     ALPA admits the allegations contained in paragraph 67.

68.     In response to the allegations contained in paragraph 68, ALPA states that, in June 1999, the U.S. District Court for the Northern District of Texas ordered APA, its president and vice-president to pay American a compensatory civil contempt fine of more than $45,000,000 because they had failed to comply with an order issued by the Court in February 1999 in connection with an illegal "sick out" related to American's acquisition of Reno Air.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 68.

69.     ALPA denies the allegations contained in paragraph 69.

70.     In response to the first sentence of paragraph 70, ALPA states that in October 2000 its Board of Directors passed a resolution reaffirming ALPA's "longstanding objective to provide representation for all members of the airline piloting profession in the United States and Canada, including through merger of independent pilots' associations with ALPA by agreement."  Except as specifically admitted, ALPA denies the allegations contained in the first sentence of paragraph 70.  In response to the allegations of the second sentence of paragraph 70,

ALPA states that APA represented the airline pilots employed by American during the year 2001 but ALPA lacks knowledge sufficient to form a belief as to the truth of the remaining allegations contained in the second sentence of paragraph 70 and, for that reason, denies those allegations.

71.     In response to the first sentence of paragraph 71, ALPA incorporates its response to the first sentence of paragraph 70.  Except as specifically admitted, ALPA denies the allegations contained in the first sentence of paragraph 71.  ALPA admits the allegations contained in the second sentence of paragraph 71.

72.     ALPA admits the allegations contained in paragraph 72.

73.     ALPA denies the allegations contained in paragraph 73.

74.     ALPA admits the allegations contained in paragraph 74.

75.     ALPA admits the allegations contained in the first sentence of paragraph 75 and denies the allegations contained in the second sentence of paragraph 75.

76.     ALPA admits the allegations contained in the first sentence of paragraph 76 and denies the allegations contained in the second sentence of paragraph 76.

77.     In response to the allegations contained in paragraph 77, ALPA states that during 2001 some individual American pilots, acting without authorization from APA, sought to organize the American pilots on behalf of ALPA by collecting authorization cards seeking a representation election under the auspices of the NMB.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 77.

78.     ALPA denies the allegations contained in paragraph 78.

79.     ALPA denies the allegations contained in paragraph 79.

80.     ALPA denies the allegations contained in paragraph 80.

81.     In response to the allegations contained in paragraph 81, ALPA states that the provisions of the letter that ALPA President Duane Woerth sent to Plaintiff Pastore and other former TWA Inc. pilots on February 27, 2002, speak for themselves with regard to the letter's content and denies the allegations of paragraph 81 to the extent inconsistent with those provisions.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 81.

82.     In response to the allegations contained in paragraph 82, ALPA states that Supplement CC speaks for itself with regard to its terms and denies the allegations of paragraph 82 to the extent inconsistent with those terms.  Notwithstanding the foregoing, ALPA states that Supplement CC defined the term "Implementation Date" for the purposes of that agreement as "the date on which the National Mediation Board issues a decision finding that American and TWA LLC are or have become a single carrier."  Except as specifically admitted, ALPA denies the allegations contained in paragraph 82.

83.     In response to the first sentence of paragraph 83, ALPA incorporates its response to paragraph 63.  Except as specifically admitted, ALPA denies the allegations contained in the first sentence of paragraph 83.  In response to the allegations of the second and third sentences of paragraph 83, ALPA states that some former TWA Inc. pilots have been furloughed and others downgraded at American but ALPA in all other respects lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and on that basis denies the remaining allegations contained in the second and third sentences of paragraph 83.

84.     ALPA lacks knowledge sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 84 and, for that reason, denies those allegations.  ALPA denies the allegations contained in the second sentence of paragraph 84.

85.     ALPA admits the allegations contained in paragraph 85.

86.     ALPA admits the allegations contained in paragraph 86.

87.     ALPA admits the allegations contained in paragraph 87.

88.     ALPA admits the allegations contained in paragraph 88.

89.     ALPA admits the allegations contained in paragraph 89.

90.     ALPA admits the allegations contained in paragraph. 90

91.     ALPA denies the allegations contained in paragraph 91.

92.     ALPA denies the allegations contained in paragraph 92.

93.     In response to the allegations contained in paragraph 93, ALPA states that, under the RLA, it owed a duty of fair representation to the TWA LLC pilots until April 3, 2002, when the NMB extended APA's certification as the collective bargaining representative of the American pilots to include the TWA LLC pilots and APA's duty of fair representation to the combined unit commenced.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 93.

### COUNT I
### THE CLASS v. ALPA
### BREACH OF DUTY OF FAIR REPRESENTATION

94.     In response to the allegations contained in paragraph 94, ALPA incorporates its responses to paragraphs 1-93.

95.     In response to the allegations contained in the first sentence of paragraph 95, ALPA states that its duty of fair representation to the pilots of TWA Inc. and TWA LLC continued throughout its representation of those pilots as their collective bargaining agent, *i.e.*, through April 3, 2002.  In response to the allegations contained in the second sentence of paragraph 95, ALPA incorporates by reference its response to the allegations of paragraph 35.

Except as specifically admitted, ALPA denies the allegations contained in the second sentence of paragraph 95.

96.     Paragraph 96 states legal conclusions to which no response is required.  To the extent a response is deemed to be required, ALPA denies the allegations contained in paragraph 96.

97.     In response to the allegations contained in paragraph 97, ALPA states that it represented the TWA LLC pilots in negotiations pursuant to the RLA with TWA LLC regarding their wages, benefits, and working conditions and that it also represented the TWA LLC pilots in all other negotiations that American and APA consented to undertake with the TWA LLC pilots. Except as specifically admitted, ALPA denies the allegations contained in paragraph 97.

98.     ALPA denies the allegations contained in paragraph 98.

99.     ALPA denies the allegations contained in paragraph 99.

100.     ALPA denies the allegations contained in paragraph 100.

101.     ALPA denies the allegations contained in paragraph 101.

102.     ALPA denies the allegations contained in paragraph 102.

103.     ALPA denies the allegations contained in paragraph 103.

104.     ALPA denies the allegations contained in paragraph 104.

105.     ALPA denies the allegations contained in paragraph 105.

106.     ALPA denies the allegations contained in paragraph 106.

107.     ALPA denies the allegations contained in paragraph 107.

108.     ALPA denies the allegations contained in paragraph 108.

109.     ALPA denies the allegations contained in paragraph 109.

110.     In response to the allegations contained in paragraph 110, ALPA states that some pilots employed at TWA Inc. and TWA LLC complained about ALPA's actions and that ALPA truthfully responded regarding its dealings with APA and its actions to protect the pilots' rights. Except as specifically admitted, ALPA denies the allegations contained in paragraph 110.

111.     In response to the allegations of paragraph 111, ALPA states that the terms of the letter sent to President Woerth by Plaintiff Pastore speak for themselves and on that basis ALPA denies the allegations of paragraph 111.  Except as specifically admitted, ALPA denies the allegations contained in paragraph 111.

112.     Paragraph 112 states legal conclusions to which no response is required.  To the extent a response is deemed to be required, ALPA denies the allegations contained in paragraph 112.

## COUNTS II to X

113-199.  In response to the allegations contained in paragraphs 113 through 199, ALPA states that the allegations in these paragraphs pertain to Counts in Plaintiffs' Second Amended Restated Complaint that have been dismissed and to which no response is therefore required.  To the extent a response is deemed to be required, ALPA denies the allegations contained in paragraphs 113 through 199.

The remainder of Plaintiffs' Second Amended Restated Complaint, a paragraph beginning "WHEREFORE," contains a statement of the relief Plaintiffs seek, and therefore no response is required.  To the extent a response is deemed required, ALPA denies the allegations contained in this paragraph and denies that Plaintiffs are entitled to any relief at all.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs have failed to state a claim upon which relief can be granted.

2.      Plaintiffs' claim is barred by the applicable statute of limitations.

3.      Plaintiffs have failed to exhaust their administrative remedies.

4.      The Court lacks subject matter jurisdiction over Plaintiffs' claims.

5.      Plaintiffs' claim constitutes an impermissible collateral attack on a final and

binding Bankruptcy Court Order or Orders, including the Order of April 6, 2001,

approving an agreement among TWA Inc., TWA LLC and ALPA.

6.      Punitive damages are unavailable on the claim asserted by Plaintiffs.

7.      Plaintiffs have failed to mitigate their damages.


WHEREFORE, Defendant Air Line Pilots Association, International, prays for judgment

in its favor, for dismissal of the Second Amended Restated Complaint, with prejudice, for

reimbursement of its costs and attorney's fees, and for such other relief as the Court deems

appropriate.

Dated: _____

Respectfully submitted,

Theodore V. Wells, Jr., Esquire
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

 - and -

Archer & Greiner
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, New Jersey 08033
(856) 795-2121

By: _____ */s/ John C. Connell* _____
    John C. Connell, Esquire
    Steven J. Fram, Esquire
    Kerri E. Chewning, Esquire

*Pro Hac Vice:*

Jay Cohen, Esquire
Daniel J. Toal, Esquire
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Daniel M. Katz, Esquire
Katz & Ranzman, P.C.
4530 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 659-4656

*Attorneys for Defendant Air Line Pilots Association, International*
9013887v1