# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, <br><br> Defendant. | Civil Action No. 02-2917 (JEI) <br><br> **Oral Argument Requested** <br><br> Motion Date: November 19, 2012 |

_____

### REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS ANSWER
_____

                                   Archer & Greiner
                                   A Professional Corporation
                                   One Centennial Square
                                   Haddonfield, New Jersey 08033-0968
                                   (856) 795-2121

*Pro Hac Vice:*

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Katz & Ranzman, P.C.
4530 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 659-4656

*Attorneys for Defendant Air Line Pilots Association, International*

## Table of Contents

Page

Preliminary Statement .................................................................................................... 1

Argument ........................................................................................................................ 3

    I. Amendment of the Answer Would Not Be Futile ................................... 3

    II. Plaintiffs Will Not Suffer Prejudice if Leave to Amend Is Granted ....... 7

    III. ALPA's Delay Was Not Undue .......................................................... 10

Conclusion ................................................................................................................... 12

# Table of Authorities

**Page(s)**

**CASES**

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006) ................................................................... 10, 11

*Bechtel v. Robinson*,
  886 F.2d 644 (3d Cir. 1989) ........................................................................ 7

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
  252 F.3d 267 (3d Cir. 2001) ........................................................................ 8

*Doe v. Abington Friends Sch.*,
  480 F.3d 252 (3d Cir. 2007) ...................................................................... 11

*Dole v. Arco Chem. Co.*,
  921 F.2d 484 (3d Cir. 1990) ............................................................. 7, 8, 10

*Harrison Beverage Co. v. Dribeck Imps., Inc.*,
  133 F.R.D. 463 (D.N.J. 1990) ..................................................................... 4

*Howze v. Jones & Laughlin Steel Corp.*,
  750 F.2d 1208 (3d Cir. 1984) .................................................................... 10

*Long v. Wilson*,
  393 F.3d 390 (3d Cir. 2004) ........................................................................ 3

*McKenna v. City of Philadelphia*,
  636 F. Supp. 2d 446 (E.D. Pa. 2009) .......................................................... 5

*Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*,
  106 F. Supp. 2d 761 (D.N.J. 2000) .......................................................... 3, 4

*Synthes, Inc. v. Marotta*,
  281 F.R.D. 217 (E.D. Pa. 2012) .................................................................. 3

*Tubari, Ltd., Inc. v. NLRB*,
  959 F.2d 451 (3d Cir. 1992) ........................................................................ 4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 15(a) ............................................................. 1, 10

Defendant Air Line Pilots Association, International ("ALPA") respectfully submits this reply brief in further support of its motion for leave to amend its answer.

**<u>Preliminary Statement</u>**

In their opposition brief, Plaintiffs attempt to turn the liberal standard for amendment of pleadings under Federal Rule of Civil Procedure 15(a) on its head. Unable to offer a compelling reason why they would be prejudiced if ALPA were permitted to amend, Plaintiffs instead argue principally that ALPA's amendment should be denied as futile. But Plaintiffs do not even attempt to satisfy their "heavy burden" of showing the futility of a proposed amendment. Courts in this district, as elsewhere, permit an amendment to be denied as futile only where it is frivolous or facially insufficient. Plaintiffs nonetheless argue—without any supporting authority—that *ALPA* should be required to refute their contention of futility by proving "the existence of sufficient numbers of substantially-equivalent jobs available to the class members *before* it is allowed to amend its answer." (Pls.' Br. in Opp'n to Def.'s Mot. for Leave to Amend its Answer 3, ECF No. 513 ("Pls.' Br.").) The law provides no support for Plaintiffs' effort to shift its burden onto ALPA.

In all events, even if ALPA had a burden at this stage to demonstrate the viability of its failure to mitigate affirmative defense, the limited damages

discovery taken to date confirms its merit. The discovery shows, for example, not only that substantially equivalent jobs were available for furloughed pilots who sought them out, but also that some class members did not bother to do so. Accordingly, it is already apparent, even before ALPA has had the opportunity to conduct discovery of the class members, that ALPA's proposed affirmative defense is meritorious. As a result, even if—contrary to law—ALPA had some burden to establish the merits of its failure to mitigate defense *before* conducting discovery, the available evidence easily demonstrates its viability and conclusively rebuts Plaintiffs' opposition to ALPA's motion to amend its answer on grounds of futility.

Nor have Plaintiffs offered any coherent reason why they would be prejudiced were ALPA permitted to amend its answer, much less explained how this case would have proceeded any differently had ALPA pleaded failure to mitigate earlier in the case. Failure to mitigate is an affirmative defense related solely to damages, discovery related to which has only just begun. Indeed, Plaintiffs have only recently started collecting information from class members about their actual earnings, which they concede must be set off against any damages Plaintiffs claim to have suffered. (*See* Pls.' Br. 2.) But Plaintiffs offer no explanation why they could not collect information regarding the defense of failure to mitigate at the same time. Moreover, Plaintiffs have indicated that they intend

to use the off-set data to prepare their final expert reports, the deadline for which has yet to be established, but they do not even attempt to explain how their experts would be inconvenienced if required to account for failure to mitigate in those same reports.

ALPA thus has easily satisfied the liberal standard for amendment and its motion to amend its answer to assert failure to mitigate as an affirmative defense should be granted.

## Argument

### I.  Amendment of the Answer Would Not Be Futile

"[M]otions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). "[T]he futility of an amendment may only serve as a basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim [or defense] that is legally insufficient on its face." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000). "If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (emphasis in original and citation omitted).

"A determination as to futility does not require a conclusive determination on the merits of a claim or defense . . . ." *Pharm. Sales*, 106 F. Supp. 2d at 764. A newly asserted defense need only "appear to be sufficiently

well-grounded in fact or law" so as not to be "a frivolous pursuit." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990). Thus, "in making its determination as to an amendment's futility, the court looks only to the pleadings," *Pharm. Sales*, 106 F. Supp. 2d at 765, and "does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense." *Harrison Beverage*, 133 F.R.D. at 469.

Despite this well-settled law, Plaintiffs ask the Court to take the extraordinary step of requiring ALPA to "demonstrate the existence of sufficient numbers of substantially-equivalent jobs available to the class members *before* it is allowed to amend its answer." (Pls.' Br. 3.) This attempt to require ALPA to prove a defense before asserting it is contrary to well-established caselaw and common sense, and should be denied out-of-hand. *See, e.g.*, *Harrison Beverage*, 133 F.R.D. at 469; *Pharm. Sales*, 106 F. Supp. 2d at 764.

But even if that law were not settled, Plaintiffs' suggestion is at odds with what ALPA would ultimately have to prove to establish failure to mitigate on the merits. First, regardless of the availability of "substantially equivalent" employment, courts have found failure to mitigate where plaintiffs have stated that they have made no attempts to seek alternate employment. *See, e.g.*, *Tubari, Ltd., Inc. v. NLRB*, 959 F.2d 451, 454 (3d Cir. 1992) ("[T]he employer meets its burden on the mitigation issue by showing that the employee has withdrawn from the

4

employment market."); *McKenna v. City of Philadelphia*, 636 F. Supp. 2d 446, 464 (E.D. Pa. 2009) ("Although [defendant] has failed to establish the availability of substantially equivalent employment, it can still establish a failure to mitigate by showing that [plaintiff] withdrew from all participation in the workforce.").

Several of the named plaintiffs have testified that they did not seek employment during portions of the relevant period. Sally Young, for example, testified that, after she was furloughed, she "needed a couple months off" and "took care of [her] sons" for six months before beginning her job search. (Declaration of Daniel J. Toal dated November 12, 2012 ("Toal Decl.") Ex. A: Young Dep. 43:12-25.) Young also testified that she deferred returning to American after being recalled from furlough because "[she] had two sons that were of an age that [she] felt required more of [her] presence than a recall class that American Airlines would provide." (*Id.* 35:9-11.) Michael Finucan testified that after he was furloughed, he worked for a mortgage lender but "never made formal application with any prospective employer," even though he believed that there may have been flying positions available overseas. (Toal Decl. Ex. B: Finucan Dep. 43:10-44:7.) He did not apply for any of the positions with airlines, he explained, because of his family obligations. (*Id.* 44:8-45:7.)

Moreover, contrary to Plaintiffs' assertion that there were not "any substantially-equivalent jobs . . . available," (Pls.' Br. 3) testimony by named

5

plaintiffs confirms that this was not so. Theodore Case testified that some former TWA pilots who were furloughed declined to return to American upon being recalled because "[s]ome of them have better jobs and some of them have decent jobs." (Toal Decl. Ex. C: Case Dep. 61:1-2.)[1] Michael Finucan testified that JetBlue Airways was hiring in 2003. (Toal Decl. Ex. B: Finucan Dep. 45:1-7.) And Howard Hollander, when asked if he knew of former TWA pilots who were hired by other carriers after being furloughed by American, testified that he "personally kn[e]w of at least six off—offhand." (Toal Decl. Ex. D: Hollander Dep. 87:19-20.)[2]

---

[1] Case explained that "[m]ost of the parties that [he is] familiar with went to Cathay Pacific and it's a very financially stable company. It's Chinese and British and, essentially, they've got a job for life as long as they show up and most of those pilots who went to Cathay, not all of them, but most of those pilots who went to Cathay will more than likely stay there." (Toal Decl. Ex. C: Case Dep. 61:20-62:1.)

[2] Likewise, media reports during the relevant period confirm that, though the airline industry was crippled by the attacks of September 11, airlines continued to hire. *See, e.g.*, *Daily Briefing*, Atlanta J.-Const., Feb. 19, 2002 (Southwest Airlines "bucked the trend of layoffs and flight reductions after Sept. 11" and "Southwest says it plans to hire 250 pilots"); Barbara De Lollis & Chris Woodyard, *Airline Workers Looking for Options as Industry Dips*, USA Today, Oct. 21, 2004 (quoting American Airlines pilot who joined JetBlue in January 2004 saying "he's never felt so secure, knowing the airline plans to hire 350 pilots next year"); Matt Kempner & Dave Hirschman, *Pilots Press UPS with Strike Vote, But Talks Go On*, Atlanta J.-Const., May 13, 2005 (noting that UPS "plans to hire 300 pilots" in 2005); Jaime S. Jordan, *Southwest Plans to Open Crew Bases in Las Vegas Next Year*, Dallas Bus. J., Nov. 2, 2006 (reporting that Southwest Airlines plans to hire 500 to 600 pilots in 2007); Julie Johnsson, *Pilots Turning Scarce as Demand Takes Wing: After Years of Layoffs and Pay*

As a result, there is abundant evidence, even at this preliminary stage of damages discovery, confirming that the defense of failure to mitigate is viable and meritorious.

## II. Plaintiffs Will Not Suffer Prejudice if Leave to Amend Is Granted

Although prejudice to the non-moving party may be a basis for denying leave to amend a pleading, "the non-moving party must do more than merely claim prejudice." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). "[T]here must be some showing that [the non-moving party] 'was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (quoting *Bechtel*, 886 F.2d at 652). Put differently, "[i]n order to make the required showing of prejudice, regardless of the stage of the proceedings, [a party] is required to demonstrate that its ability to present its case would be seriously impaired were amendment allowed." *Id.* Such

---

*Cuts, Expansion of Air Travel Creates Shortage of Qualified Crews*, Chi. Trib., Feb. 4, 2007 (reporting that "Continental Airlines plans to hire 336 pilots in 2007, after adding 491 in 2006" and that "Delta Air Lines, which saw a large number of pilots take early retirement, plans to hire 200 pilots during 2007"); *Number Crunching: 100*, Chi. Sun Times, June 20, 2007 (stating that United Airlines plans to hire 100 pilots); *Northwest, Pilots Confirm Agreement*, Sacramento Bus. J., Aug. 7, 2007 (reporting that Northwest Airlines "recently said it plans to hire 250 to 350 new pilots"); *Pilots Hired Last Month Most Since '01*, Chi. Trib., Oct. 12, 2007 (noting that "more than 1,360 pilots were hired in September [2007]," with major airlines hiring 295 pilots and national operators hiring 729 pilots during the month).

7

prejudice must be "undue or substantial" to justify denial of leave to amend. *Bechtel*, 886 F.2d at 652.

Although the Third Circuit has "considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories," *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001), "the need for additional discovery does not conclusively establish prejudice," *Dole*, 921 F.2d at 488.

Here, Plaintiffs argue that they will suffer prejudice from amendment of ALPA's answer because obtaining evidence of class members' job search efforts allegedly "will be a massive undertaking." (Pls.' Br. 4.) But Plaintiffs concede that they are already undertaking to "collect data on set-off earnings from the class members." (*Id.* at 2.) And Plaintiffs offer no explanation why discovery relevant to attempts to find alternative employment cannot be collected at the same time as data showing the fruits of those efforts. Indeed, Plaintiffs acknowledge that ALPA's request for production of documents—which covers the topics relevant to the defense of failure to mitigate—were served months before class counsel began collecting data from the class. (*See id.* at 4; Pls. Notice of Mot. for Approval of Form of Class Notice, Sept. 18, 2012, ECF No. 498.) Moreover, Plaintiffs have been on notice that ALPA planned to assert failure to mitigate as a defense since at least July 31, 2012. In fact, Plaintiffs' counsel, Ms. Rodriguez,

represented to this Court that: "[A]t least as to the mitigation part of the case—that has to be presented. That the defendants have to have a chance to test mitigation separately . . . ." (Toal Decl. Ex. E: Tr. 28:17-19, July 31, 2012.)

Discovery regarding failure to mitigate also makes far more sense at this stage of the proceedings than it would have at the liability phase. At that time, the relevance of any discovery on the defense would have been contingent on the liability verdict. As a result, by deferring such discovery until after the liability trial, ALPA saved Plaintiffs and their counsel considerable time and expense on what would have been an irrelevant issue had ALPA prevailed at the liability stage.

Plaintiffs also claim they would be prejudiced because their experts' reports do not consider failure to mitigate damages. (Pls.' Br. 5.) But Plaintiffs have served only preliminary reports to date, and they further assert that the final reports will include set-offs for wages that pilots earned during furloughs. Plaintiffs advance no reason why their experts cannot simultaneously consider the failure of some class members to mitigate damages in their final reports.

Finally, as demonstrated above, the depositions of the named plaintiffs were conducted with the affirmative defense of failure to mitigate in mind. Therefore, Plaintiffs' supposed concern that the class representatives would have to be re-deposed is misplaced.

Therefore, Plaintiffs' argument that they will suffer prejudice from amendment misses the mark. ALPA is the party who will suffer prejudice if leave to amend is denied.

### III.   ALPA's Delay Was Not Undue

Plaintiffs concede, as they must, that "delay alone is an insufficient reason to deny leave to amend." (Pl.'s Br. 6); *accord Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984). "There is, of course, no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" *Arthur*, 434 F.3d at 205. The key is whether "the record bespeaks [a] dilatory motive or repeated and unjustified failures to amend." *Id.* at 206. Moreover, the Third Circuit recognizes that "[t]he liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case." *Id*. "It allows for misunderstandings and good-faith lapses in judgment, so long as the party thereafter acts reasonably and diligently." *Id.* After all, "[a]mendment may be permitted at any point during the course of litigation." *Dole*, 921 F.2d at 488.

Here, though ALPA filed its answer almost eight years ago, the issue of mitigation has only become relevant once this case moved past the liability phase and began to focus on damages. Discovery on failure to mitigate before this

phase of the case would have been wasteful and—with the possible exception of discovery that class counsel only recently sought from class members—nothing in this case would have proceeded differently.[3] Any such discovery, however, would have been sought from class members after ALPA made clear that it planned to assert this defense, but shortly before it filed the instant motion. As a result, any prejudice to class members from having to comply with a request for discovery related to their failure to mitigate was self-inflicted.

Significantly, ALPA did not act with a dilatory motive or repeatedly fail to seek leave to amend its answer at obvious earlier points in the litigation. Even if ALPA arguably could have moved sooner for leave to amend its answer, it acted "reasonably and diligently" in seeking leave to amend almost immediately after Plaintiffs' revealed their damages theory, which clarified the key issues at the damages phase. Therefore, ALPA's delay cannot be deemed undue. *See Arthur*, 434 F.3d at 206. The Court should reject Plaintiffs' argument to the contrary.

---

[3] Though Plaintiffs assert that they would have "moved for summary on the claim based on the lack of any substantially-equivalent jobs being available, long before damages discovery began," ALPA respectfully submits that such a motion would have been, at best, premature. *See Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("[I]t is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.") (internal quotation marks and citation omitted).

## **Conclusion**

For the foregoing reasons, the Court should grant ALPA's motion for leave to amend its answer.

| | |
|---|---|
| Dated:  Haddonfield, NJ<br>         November 12, 2012 | Respectfully submitted,<br><br>Theodore V. Wells, Jr., Esquire<br>Paul, Weiss, Rifkind, Wharton<br>   & Garrison LLP<br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br><br> - and -<br><br>Archer & Greiner<br>A Professional Corporation<br>One Centennial Square<br>Haddonfield, New Jersey 08033<br><br><br>By:   /s/ John C. Connell<br>      John C. Connell, Esquire<br>      Kerri E. Chewning, Esquire |

*Pro Hac Vice:*

Jay Cohen, Esquire
Daniel J. Toal, Esquire
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Daniel M. Katz, Esquire
Katz & Ranzman, P.C.
4530 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 659-4656

*Attorneys for Defendant Air Line Pilots Association, International*