1                     UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
2

3    _____

PATRICK BRADY, et al.,
4
              Plaintiffs,              CIVIL ACTION NUMBER:
5
              -vs-                     NO. 02-2917 (JEI)
6
AIR LINE PILOTS ASSOCIATION,                    MOTION
7    INTERNATIONAL,

8              Defendant.
     _____
9          Mitchell H. Cohen United States Courthouse
           One John F. Gerry Plaza
10         Camden, New Jersey 08101
           Friday, January 4, 2013
11
     B E F O R E:              THE HONORABLE JOSEPH E. IRENAS
12                             UNITED STATES DISTRICT JUDGE

13   A P P E A R A N C E S:

14   TRUJILLO, RODRIGUEZ & RICHARDS, LLC
     BY:  LISA J. RODRIGUEZ, ESQUIRE
15        NICOLE M. ACCHIONE, ESQUIRE
              Counsel for Plaintiffs
16
     GREEN JACOBSON, P.C.
17   BY:  ALAN P. PRESS, ESQUIRE
              Counsel for Plaintiffs
18
     PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
19   BY:  JAY COHEN, ESQUIRE
          DANIEL J. TOAL, ESQUIRE
20            Counsel for Defendant

21   ARCHER & GREINER, P.C.
     BY:  JOHN C. CONNELL, ESQUIRE
22            Counsel for Defendant
     (Appearances continued on Page 2)
23
      Certified as true and correct as required by Title 28,
24   U.S.C., Section 753.

25                          /S/ Karen Friedlander, CCR, RMR

                     United States District Court
                        Camden, New Jersey

1    **A P P E A R A N C E S   C O N T I N U E D:**

2

     KATZ & RANZMAN, P.C.
3    BY:   DANIEL M. KATZ, ESQUIRE
              Counsel for Defendant
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE DEPUTY CLERK:  All rise.

 2              THE COURT:  Who are these people?  Why are they here?

 3       Everybody please be seated and good morning.

 4              MS. RODRIGUEZ:  Good morning.

 5              RESPONSE:  Good morning.

 6              THE COURT:  How old is this case?

 7              MR. PRESS:  Going on 11 years, Judge.

 8              THE COURT:  Well, this is an 11-year motion to amend

 9       the answer to a case which has been half-tried already.  So

10       may I first have the appearances of counsel.

11              MS. RODRIGUEZ:  Good morning, Your Honor.  Lisa

12       Rodriguez from Trujillo, Rodriguez and Richards, and also with

13       me is Nicole Acchione from the same firm.

14              MS. ACCHIONE:  Good morning.

15              THE COURT:  Good morning.

16              MR. PRESS:  Alan Press is here for plaintiffs, as

17       well.

18              THE COURT:  Can't forget you.

19              MR. COHEN:  Your Honor, Jay Cohen from Paul, Weiss

20       for defendant, with Mr. Toal, Mr. Connell and Mr. Katz.

21              MR. KATZ:  Good morning, Judge Irenas.

22              THE COURT:  Good morning.  Mr. Katz is certainly a

23       familiar face.

24              MR. KATZ:  Thank you, Your Honor.

25              THE COURT:  Well, it's a motion to amend.  And
```

*United States District Court*
*Camden, New Jersey*

1  specifically, it's a motion to amend to add a separate

2  defense.  It's No. 7.  It's one short sentence, and it's to

3  add mitigation.  I will get into that a little bit, but add

4  mitigation as a separate defense.

5       As I see the case, a certain element of mitigation was

6  already in the case, because remember, to the extent you're

7  subtracting prior earnings -- subsequent earnings of the

8  pilots, that's mitigation.  And I think it's very clear from

9  the record here that that was in the case from Day 1.

10       I mean, the idea was that if a pilot, assume, started a

11  gardening business, you know, and was making money, that

12  whatever he made in that business was going to be credited

13  against whatever he lost.  If he was a pilot, that means, I

14  assume, he got a pilot's job of any kind, for lesser pay or

15  the same pay or more pay, that that would be counted against

16  whatever damages he was entitled to.  Do we all agree to that?

17       MS. RODRIGUEZ:  Yes.

18       THE COURT:  That was never an issue.  And that's

19  mitigation.  So to some degree, there's always been in the

20  case, very clearly from the notices that were sent out to the

21  pilots in many other ways, that that was going to be a credit

22  the defendant was entitled to against any damage claim,

23  because I think a fair number of these pilots did continue

24  piloting.  Sometimes they piloted for other organizations.

25  They may have gone to a freight, for instance, a freight

1    forwarder of some kind and done that kind of piloting, and in

2    some cases they did other work.

3        I remember a few cases where they actually did other

4    non-piloting work and then maybe went pack to piloting later

5    on, and in some cases didn't go back to piloting later on.  I

6    think you have both of those kinds of situations.

7        What really is being sought to be added here is the

8    notion of effort, if you want to put it -- that a pilot is

9    obligated.  That's the defense, to make an effort to maximize

10   his earnings, and that if a pilot decided, well, I'll take an

11   easier job, or I'll take no job, I'll just stay home and, you

12   know, become a housewife or house husband, you know, and just

13   do nothing.  Or as they say, take a very simple job, a

14   low-stress job compared to a pilot's job, you know, take some

15   kind of a low-stress job for a lot less money, and in effect,

16   not maximize efforts to get a job that's closely equivalent to

17   the one that the pilot had -- he or she had before the events,

18   which are the subject matter of this case, took place.

19       And so in a funny way, it's an expansion of the

20   mitigation defense rather than a brand-new defense, because,

21   again, actual earnings, which have never been in dispute,

22   would be deducted from any damage for a particular pilot.

23       So just with that observation -- Mr. Cohen, are you

24   going to do the argument?

25       MR. COHEN:  Yes, Your Honor.

*United States District Court*
*Camden, New Jersey*

1            THE COURT:  Okay, then, it's your motion.

2            MR. COHEN:  Yes, Your Honor.

3            THE COURT:  I must say, it wasn't very long.  I saw

4  this big stack of paper and I thought, oh, I'm going to have

5  to read another one.  It turns out I only had to read about

6  three pages because the next new complaint -- a new answer,

7  excuse me.

8            MR. COHEN:  Right.

9            THE COURT:  A new amended answer, only had one

10  sentence.

11            MR. COHEN:  Right.  Well, it's hard to write a lot of

12  words about one sentence so --

13            THE COURT:  Yes, so -- oh, no, I'm not complaining.

14  Don't take that as a complaint on my part.

15            MR. COHEN:  I didn't take it as a complaint, Your

16  Honor.

17            Look, I think Your Honor has actually grasped the

18  issue, and if you think about it, at least a very odd set of

19  circumstances, because under the plaintiff's view of what

20  should appropriately be deducted from damages.  Somebody who

21  goes out, actually puts in the effort, as Your Honor said it,

22  gets another job, and has a setoff against damages because, in

23  fact, you should not be better off than you would have been

24  had you continued to be where you think you should have been

25  on a seniority list at TWA or a new airline.  So people --

1          THE COURT:  Well, it would be an American.

2          MR. COHEN:  American, yes.  So you go out and you

3  get -- so people go out and get a new job, are going to get

4  that deducted.

5          People who say, I don't want to do anything, I don't

6  want to be a pilot, and probably would not have been a pilot

7  had they continued at American, that's a logical inference

8  from that, they do better, if you don't take into account what

9  we are calling mitigation.  I mean, the fact of the matter is,

10  that it is, you know, I don't like to use the word "windfall"

11  prematurely.

12          THE COURT:  What's trouble -- let me tell you what is

13  a little troublesome to me.

14          MR. COHEN:  Yeah.

15          THE COURT:  Is that -- that we get into intent, what

16  is a person's intent, and we -- you know, it becomes a very

17  fact-intensive inquiry.  It's a person-by-person inquiry.  You

18  do need -- it's not something that can be determined outside

19  of the jury.  I mean, I don't know that it would be

20  permissible for me to say, okay, I'll set up some

21  administrative, I'll appoint a magistrate or I'll appoint a

22  master under Rule 50-something, appoint a special master to,

23  you know, review the cases one by one.  I'm not sure I even

24  have a right to do that.

25          MR. COHEN:  Yeah, but, Your Honor, I think that --

1          THE COURT:  Am I right on that?

2          MR. COHEN:  You are right, Your Honor.

3          THE COURT:  It would be -- there's a jury.

4          MR. COHEN:  Right.

5          THE COURT:  And there would be a jury verdict.  A

6  person by person.  Well, if you're going to have that, then

7  there's discovery, because we have not had discovery on that,

8  and it's not -- I mean, it's one thing to take discovery on

9  past pay, because you can do that by charts.  Under the

10  Federal Rules of Evidence, there are about two different

11  approaches of creating summary, summary evidence, which is

12  permissible to bring before a jury.

13          MR. COHEN:  Right.  A thousand-and-something.

14          THE COURT:  A thousand and six, I think.  It's -- I

15  had a nine-and-a-half-month trial involving very complex tax

16  evasion.  A lot of the evidence was put in -- there were, I

17  think, a million marked documents at some point.  I mean, in

18  the -- we had a, you know, like a repository, we had

19  repository, we had three of them around the state, repository

20  of documents.  I don't know if there was a million, a lot of

21  them.  I think 20,000, actually separately, actually went into

22  evidence, but the key evidence were charts, basically -- were

23  basically summaries or charts.

24          And there are two different approaches of the rules of

25  evidence for that.  One is when the underlying documents are

1   in evidence, and one, when the underlying documents are not in

2   evidence.

3             MR. COHEN:  A summary of voluminous evidence.

4             THE COURT:  What?

5             MR. COHEN:  A summary of voluminous evidence.

6             THE COURT:  Right, exactly.  And so, fine, we were

7   able to get lots of stuff before the jury.  I hate to use the

8   word "efficiently," but for a nine-and-a-half-month trial, but

9   -- a nine-and-a-half-month jury trial.  But -- and criminal to

10  boot, which makes it even tougher.  But it was.  It was --

11  given the immense volume of documents and the state of

12  technology at that time, it was '97, '98.  You know, it seemed

13  like long ago, but the technology in handling voluminous

14  documents is much better now than it was then.

15            MR. COHEN:  Your Honor --

16            THE COURT:  But here, I can't put -- I can't create a

17  table.  I mean, it's a very fact-intensive point.

18            MR. COHEN:  I think you might be able to create a

19  table, Your Honor.  Let me say a couple things.

20            THE COURT:  Okay.  You understand where I'm --

21            MR. COHEN:  I understand precisely.  Your Honor is

22  concerned about how you are going to manage this trial with

23  this issue in it, and I understand that.  So I have --

24            THE COURT:  Not just the trial, manage discovery.

25            MR. COHEN:  Well, I think the discovery will be

1   fairly easy.  Let me get to that in a second.

2          But I think there are two or three layers of answer.

3   One is, and I'm going to go right past this, but I do need to

4   say it.  We do think under the Walmart's -- under the Supreme

5   Court's Walmart decision, they do have to prove damages person

6   by person.  How you do it in a context of a trial, because no

7   one is expecting 2300 people to testify, and that is obviously

8   not the way we would intend to conduct the trial.

9          I do think that it can be done in the same kind of

10  summary fashion.  It will be a little bit messier, but it can

11  be done in the same kind of summary fashion as, in fact, what

12  they are calling the setoff damages.

13         Now, when they sent out their questionnaire, do you

14  remember when we were last here, Your Honor --

15         THE COURT:  Yes, but in the Walmart case you are

16  dealing with the primary claim.  You were saying -- the

17  Supreme Court said you got to prove -- what was that, women --

18         MR. COHEN:  Women discrimination.

19         THE COURT:  Prejudice against women in

20  promotion and -- promotion and advancement.

21         MR. COHEN:  Correct.

22         THE COURT:  And pay rates within the company.  So

23  that's the primary claim, at Supreme Court, yeah.  You can't

24  bury the fact that if Miss Jones, you know, worked in Ohio in

25  a Walmart in Columbus, you have to prove whatever it is --

**1**        MR. COHEN:  Right.  But I do think, Your Honor, the
**2**   same thing.

**3**        THE COURT:  This is not the same.  This is not the
**4**   primary claim.  We are talking about the defense --

**5**        MR. COHEN:  -- look at Walmart -- post-Walmart and
**6**   apply it to damages, as well.

**7**        But here is what we have in mind, Your Honor.  And we
**8**   could have done this in one shot, but I still think we could
**9**   do it in two.  The plaintiff sent questionnaires in early
**10**  December, after we were last here, to members of the class,
**11**  asking for --

**12**       THE COURT:  Early December just a month ago?

**13**       MR. COHEN:  Yes.  Remember, we were here on
**14**  November 15th.

**15**       THE COURT:  Yeah.

**16**       MR. COHEN:  And in early December, questionnaires
**17**  went out.  And Your Honor, in your last order, directed them
**18**  to give us certain information by December 31 and the
**19**  remainder by January 31, and that's proceeding.  That's
**20**  proceeding.

**21**       THE COURT:  Well, I'm glad someone is listening to
**22**  one of my orders.

**23**       MR. COHEN:  In connection -- in connection with that
**24**  mailing, we asked the plaintiffs, we said, we think if you ask
**25**  a small number of additional questions with respect to efforts

1   to acquire work, right, that will give us the information that

2   we need for mitigation, in addition to setoff.

3        They refused to do that.  So that means that what we

4   would suggest, Your Honor, is, clearly there is something

5   wrong with the world, where somebody who actually goes out and

6   gets a job does worse -- I mean, you could have two pilots in

7   this case, under their theory, who are on the same -- exactly

8   the same line.

9        THE COURT:  Ask the Tea Party.  They think that's the

10  way it is in this country.

11       MR. COHEN:  Yeah.  But we're not sure it should be

12  the rule, Your Honor.

13       And we can send out a short questionnaire to the same

14  people that they sent it out to, that asked them to describe

15  their efforts to get work.  It seems to us that we can

16  aggregate that information in a way and argue to Your Honor

17  that those folks should fit into certain categories, and that

18  their effort in that way -- we're not suggesting that each

19  person will say, okay, you said you looked for a job, and you

20  looked on Tuesday, how many hours did you look on Tuesday, how

21  about on Wednesday --

22       THE COURT:  And given the time frames here, a lot of

23  that information -- you know, it's one thing if you asked

24  somebody what did you do six months ago to go find a job, you

25  know, that person --

1    MR. COHEN:  Right.

2    THE COURT:  -- would -- even if they're not a good

3  record keeper, would have memory of some of those efforts.  Go

4  back 11 years ago or ten years ago or nine years ago or eight

5  years ago, sometimes they might not have that kind of

6  information.

7    MR. COHEN:  The information may not be perfect.  The

8  information they're collecting is not going to be perfect.

9  You know, they've received information on wages from only a

10  couple hundred people, so far.  Half the people sent in

11  documents, half the people didn't send in documents.  We're

12  going to have data issues no matter what.

13    But respectfully, what I would say, Your Honor, is,

14  that's not a reason to not allow us to pursue a defense, which

15  we think is firmly grounded in the law, will make all of these

16  arguments about whether or not they should have done it or

17  shouldn't have done it, our merits arguments.  They are

18  certainly not whether we should be able to assert a defense.

19    And we are not suggesting 2300 depositions, obviously,

20  or even 230 or even 23, to find out what people did.  What

21  we're saying is, we are entitled to basic information.

22    It would have been efficient if the plaintiffs had

23  agreed to just tack it onto their questionnaire.  They didn't,

24  so we'll do it, if Your Honor permits.  But, you know, to

25  deprive us of a defense, which is a fundamental damages

1  defense because, you know, it may be complicated.  We don't

2  think it's that complicated.  How we will present it at trial

3  is a real issue, Your Honor.  We will have to grapple with

4  that.  But what we would say is, that's not a reason to deny

5  us the discovery.

6       You ultimately may decide that there's no efficient

7  way, that the information is not, you know, is not

8  sufficiently reliable to be introduced.  We are a long way

9  away from that.  But rather than talk at all of the problems

10 might be, let us just get the information and -- you know,

11 it's the same 2300 recipients -- it's really fewer but a bunch

12 of them are actually not damage -- don't have damages.

13       THE COURT:  Yeah, but a small number because of the

14 way the stapling was --

15       MR. COHEN:  600.

16       THE COURT:  Because of the way the stapling was done.

17       MR. COHEN:  I think it's about 600, Your Honor.

18       THE COURT:  At some point there are pilots who really

19 didn't suffer.

20       MR. COHEN:  Yeah, I think that's what it says.

21       THE COURT:  But I don't know what the -- I don't know

22 what the number is.

23       MR. COHEN:  I think their expert said it's a quarter

24 of the class.  Let's just take that as proxy.

25       THE COURT:  I don't know.

 1          MR. COHEN:  Yeah.  So what I'm saying is, for those

 2    1500 or so folks for whom they are collecting setoff

 3    information, we can collect information about what they did to

 4    try to look for work, and I think the information will suggest

 5    a pattern when we get it.

 6          I think that will be very hard for us to prove in the

 7    context of a class action, that somebody who was out looking

 8    for work should have tried harder but, for example, one of the

 9    named plaintiffs, Sally Young, you know, we've given Your

10    Honor her testimony.

11          THE COURT:  Well, she's flying now, isn't she?

12          MR. COHEN:  I don't know what she's doing now.  But

13    there was a period of time --

14          THE COURT:  At some point she did go back flying.  I

15    can't remember whether it was for American or somebody else,

16    but I know she went -- she did go back as a pilot at some

17    point.

18          MR. COHEN:  But we are going to find some folks who

19    simply dropped out of the workforce, and you know, there are

20    going to be some reasonably bright lines in this information,

21    and we will have to confront how we deal with the lines that

22    are not so bright.  But I think it's premature to worry about

23    the presentation for us at trial.

24          We are mindful of it.  We understand that we are going

25    to have to introduce in a way that allows you to try a case

1   efficiently, and we intend to do that in the same way that the

2   damages and setoff numbers are going to be tried in an

3   efficient way.  We are not going to have 2300 people come in

4   here and say, yes, these are my tax returns and, yes, this is

5   what I earned, and I'm not really holding back any money.

6   They've collected certifications under oath.

7        I mean, we may want to test some of them, if we think

8   there are some outliers, and they may want to do the same

9   thing with some of our allegations.

10        But we're -- you know, I think there's been a gross

11   exaggeration about the effort.  It could have been underway

12   already if they had simply put our questions onto theirs.  But

13   we're prepared to do it.  And, you know, they are collecting

14   their information in two months.  That's the period of time

15   for which they've got these questionnaires out.  We can get

16   the questions out in a few days.  If they don't want to give

17   us the addresses of the class, we'll give it to them to mail,

18   as long as it comes back to us.  And we can do that.

19        So, you know, the question is, Your Honor, there's just

20   a fundamental unfairness.  There is a potential for windfall

21   for people who were really not in the workforce.  And that's

22   really what we're trying to get, who really did not try to get

23   a job.

24        Yes, if this was an individual case, we would have the

25   opportunity to go in great detail about the plaintiff's

1    individual efforts.  We understand the limitations in a class

2    action.  We will have to come up with a way of demonstrating

3    this, in a way that's efficient.  So that's all we're trying

4    to do, Your Honor.

5            THE COURT:  Okay.  I don't know who's going to handle

6    the argument for the plaintiffs.

7            MS. RODRIGUEZ:  Your Honor, I hear Mr. Cohen talk

8    about fundamental unfairness, and I've spent the last couple

9    days reading a lot of cases on mitigation -- motions to amend,

10   and fundamental unfairness was not a term that I found in any

11   of the cases that I read.

12           There are three terms that continually present

13   themselves and that is whether the amendment was sought in a

14   pragmatically sufficient time, whether there's prejudice --

15           THE COURT:  Pragmatically sufficient time.

16           MS. RODRIGUEZ:  Pragmatically sufficient time.

17           THE COURT:  Okay.

18           MS. RODRIGUEZ:  Whether there was prejudice and

19   whether the amendment will cause delay.

20           Mr. Cohen talks about, it's premature to worry about

21   the presentation at trial, but that's exactly what Your Honor

22   has to worry about in this case that's almost eleven years

23   old.

24           The answer to this case was initially filed in early

25   2005.  It was filed before the motion for bifurcation, several

1   months before the motion for bifurcation.

2         THE COURT:  Okay.  The bifurcation of this case came

3   fairly late in the game.

4         MS. RODRIGUEZ:  It came late in the game, but it also

5   just happened in 2005.  It was after the motion to amend.  So

6   in their briefing, they say the issue of mitigation didn't

7   arise until after the liability trial.  But that is an issue

8   that was addressed squarely by the Court in Resolution Trust

9   versus American National Bank.  And that Court makes clear

10  that the issue of mitigation arises when the lawsuit is filed.

11  Pure and simply.

12        So it wasn't raised in the Answer, it wasn't raised in

13  any of the pretrial proceedings.  It wasn't raised after the

14  trial.  It wasn't raised before the motions of the expert

15  reports were filed.  It was not raised until after plaintiffs

16  filed their expert reports, and now, all of a sudden, the

17  motion for mitigation is filed.

18        THE COURT:  I don't -- you're right, there wasn't a

19  formal raising of the issue.  The issue is really defined by

20  me, and that the type of -- or part of mitigation that was

21  really the subject of their motion, because we do have some

22  mitigation.  But facts which indicated that there might be

23  that kind of mitigation, there were no -- were no in this

24  case.

25        This is not a case where facts suddenly popped up late

1    in the game that nobody knew about earlier that suggested a

2    mitigation issue.

3                MS. RODRIGUEZ:  Well, Your Honor --

4                THE COURT:  The fact that we knew -- I mean, I knew

5    that there were -- that the response of the pilots who had

6    been affected adversely, you know, by the merger, included

7    some people who strove to stay in the business, as best they

8    could as pilots, and those -- and that there were some

9    who didn't.

10               Those facts were known.  I knew them.

11               MS. RODRIGUEZ:  Well, the facts were known, but the

12   defense wasn't raised.

13               THE COURT:  Well, that is different -- that's not

14   saying it's not like a case where some facts come up that

15   nobody knew about.  There are cases sometimes where things

16   come up at just the eve of trial that literally nobody knew

17   about.  And we try to -- as a court and as lawyers, we try to

18   deal with them.  We may wind up -- hey, I've had cases where I

19   ordered depositions during a trial, you know what I mean?

20   They try the case through the day and they take depositions in

21   the evening, you know, because something really new came up

22   that nobody knew about.

23               But we knew, and I'm addressing this, really, to

24   Mr. Cohen, as well, for when he rebuts, that we knew there was

25   a great mixture of responses way back.  I mean, you know, as I

1  say, some people strove very hard to stay in the pilot

2  business, you know, with varying degrees of success, but at

3  least it was pretty clear from the record they were trying.

4  They would go to work for, as I say, a freight -- a freight

5  forwarder of some kind, or a very small -- they'd fly for a

6  very small regional carrier, where they had been flying, you

7  know, big passenger jets for their original employer.

8        But we also knew there were people who said, well, I'll

9  use this occasion maybe to change my lifestyle, maybe go into

10  some other kind of work, stay out of the labor market

11  altogether.  We knew that.  I mean, I can't give you a

12  citation right now, but it was in my mind-set that the

13  responses were very different.

14        And I don't know if this helps Mr. Cohen, because I

15  think it was -- there were facts known to the parties, and to

16  the defense specifically, that might have suggested a broader

17  mitigation defense than the one that actually was being

18  allowed up to this motion.

19        MS. RODRIGUEZ:  As early -- well, at least as early

20  as May of 2012, defendants stood here and talked -- in

21  connection with one of the motions about possible discovery

22  that might be needed in the defense phase, and they talked

23  about far-reaching things, like whether somebody could fly in

24  China, and at that point, we raised it.  The mitigation is not

25  in the case.  And that was in May, and we didn't see a motion

1   in May.  We didn't see a motion in June, we didn't see a

2   motion in July.

3           THE COURT:  Okay.  I get it, I get it.

4           MS. RODRIGUEZ:  There's a case that's remarkably on

5   point, and it's an older case, it's a 1989 case out of the

6   District of Illinois, and I think, Your Honor, if you would

7   read it, would find it fairly amusing because the case starts

8   by saying, this case came to this Court's calendar somewhat

9   bewhiskered, nearly three years old.  And I think if the judge

10  thought that bewhiskered was three years old, he would have

11  quite a lot to say about an 11-year-old case.  But in that --

12          THE COURT:  Who was the judge?  Not Zagle.

13          MS. RODRIGUEZ:  Shadur, Shadur.

14          THE COURT:  Oh, yeah.  Well, he's a very cautious --

15  Shadur is, what can I say?  I've been on panels with him.

16  He's -- if "close" the right word?  You know, he's not a

17  fly-off-the-handle type of judge, let me put it that way.

18          MR. COHEN:  He's a very experienced judge.

19          THE COURT:  What?

20          MR. COHEN:  He's a very experienced judge, Your

21  Honor.

22          THE COURT:  He's very experienced, very serious type

23  of person.  I'm going to his personality.  You know, I

24  remember that he would -- he hated speaking off the cuff.

25  When he was going to speak, he liked to have it all written

1   out before, you know.  Some judges, whose name I won't

2   mention, you know, just give whatever random thought popped

3   into their head -- my head, a head, and the -- but I remember

4   seeing Judge Shadur, you know, he wanted to have it all

5   written out so it came out right, and he was that type -- and

6   I say this in praise.  He's a -- I consider him a very, very

7   good judge.

8           MS. RODRIGUEZ:  Well, the cite to that case is 1989,

9   US District, Lexus 3558.

10          THE COURT:  Is that in your papers?

11          MS. RODRIGUEZ:  It is not, Your Honor.  I just found

12  it.

13          THE COURT:  Then let me have the name of it.

14          MS. RODRIGUEZ:  It's G-U-D-Y-K-A Sales Company --

15          THE COURT:  G-U-D -- G-U-D.

16          MS. RODRIGUEZ:  G-U-D-Y-K-A Sales Company, versus

17  Lacy Forest Products, and it's 1989.

18          THE COURT:  Where is this, Forest?

19          MS. RODRIGUEZ:  Lacy Forest Products, L-A-C-Y.

20          MR. COHEN:  Do you have a copy for us, by any chance?

21          MS. RODRIGUEZ:  I'm sorry, I just came across it last

22  night while I was preparing.

23          THE COURT:  Do you have that down?

24      Okay.  And what's the --

25          MS. RODRIGUEZ:  It's 1989, US District, Lexus 3558.

1          THE COURT:  Okay.

2          MS. RODRIGUEZ:  In that case, following a finding of

3     liability in a bifurcated action, the defendants moved to

4     amend the answer to add mitigation to damages.  And the Court

5     made a distinction between the actual earnings at issue and

6     earnings that could have been earned.

7          THE COURT:  And I came up with that?

8          MS. RODRIGUEZ:  And you came up with that --

9          THE COURT:  I think the same way Shadur did without

10    actually reading anything?

11         MS. RODRIGUEZ:  And the Court found that actual

12    earnings at issue -- you know, everybody kind of knows that

13    mitigation being pled or not pled, that's an issue when you're

14    talking about loss.

15         THE COURT:  It defines -- that was my -- what was

16    going through my head, that defines loss, in a way.

17         MS. RODRIGUEZ:  That defines loss.

18         THE COURT:  And as I say, it's very clear to me that

19    that was in the case, going way back.

20         MS. RODRIGUEZ:  And we've never -- we've never

21    maintained anything else.

22         THE COURT:  No, no.  Nobody has maintained, neither

23    side has maintained anything else up to now.

24         MS. RODRIGUEZ:  Interestingly, in this case, the

25    plaintiffs did try to argue that they were entitled to not

1   even setoff.  But notwithstanding, the judge made a

2   distinction between actual earnings and earnings that could

3   have been earned.  And he said, as to actual earnings, they're

4   in the case.  Whether or not you pled mitigation, they're in

5   the case, actual earnings get set off.

6        THE COURT:  Well, that's what I tried to say when I

7   came out on the bench, that's clearly in the case.  And that

8   is mitigation, it's just -- it's just --

9        MS. RODRIGUEZ:  But as far as those earnings that

10  could have been earned, after liability finding, after the

11  case is proceeding, those -- if the answer did not amend --

12  did not contain that affirmative defense, he was not allowing

13  them to, at the late date, amend the Answer to add mitigation

14  to damages, and that's where we are, Your Honor.

15       It was -- defendant's motion was not filed in a

16  pragmatically sufficient time.  There is prejudice to the

17  plaintiffs by adding it at this late date, and it will cause

18  delay.  And for all those reasons, defendant's motion should

19  be denied.

20       MR. COHEN:  Your Honor, if I --

21       THE COURT:  Let her sit down.

22       MR. COHEN:  Oh, yeah, of course.

23       Do you want me at the podium, Your Honor?

24       THE COURT:  No, that's personal preference.  You can

25  go to the podium or you can stay there.  I don't care.

1          MR. COHEN:  I will stay here, Your Honor, if it's all

2    right.

3          Look, we will take a look at the case.  I mean, I'm not

4    used to getting cases cited at arguments months after the

5    briefing's been filed.  I'll just say that Judge Shadur -- I

6    went to the University of Chicago.  I have classmates who

7    clerked for him, but -- and he's a fine judge, but there is a

8    circuit here, it's called the Third Circuit, and there are

9    lots of cases that we've cited that talk about how freely and

10   liberally motions to amend should be.

11         THE COURT:  Posner would say that the Seventh covers

12   the whole country.

13         MR. COHEN:  Yes, Your Honor.  Some of the judges, who

14   were my law professors, they have a peculiar view of the

15   world.

16         But look, that has nothing to do with the what we're --

17   the law in this circuit -- and I want to get back to facts.

18   The law in this circuit couldn't be clearer, that motions to

19   amend are freely granted.

20         THE COURT:  Well, that's the law, I believe,

21   basically, in every circuit.  I mean, the general statement

22   that amendments should be freely granted in the interest of

23   justice, I don't know that -- I'm not aware of any circuit

24   that doesn't basically hold that, I mean, in a generalized

25   way.  That's the law everywhere, and the state courts, as

 1   well.

 2         MR. COHEN:  So, Your Honor, if I could just go to

 3   these points.  Let me start with the delay.  It's easy to get

 4   up on the plaintiff's side and say the case is 11 years old.

 5   It is 11 years old.  But when did they start seeking the

 6   information from their class about setoff?  On December 6th.

 7   We're less than 30 days later than that.  If they had accepted

 8   our suggestion and added our questions to the questionnaire,

 9   there would be zero delay, because we would be on exactly the

10   same timetable that they're on.

11         So now that we're saying -- now what we're saying is,

12   since they refused to ask these questions, we'll ask them.

13   There were some holidays.  We are essentially a month behind.

14   In a case in which the class is seeking a billion dollars in

15   damages, according to their expert, before setoffs, you know,

16   a month's delay, which could have been avoided by the

17   plaintiffs simply tacking on our questions, is not a delay,

18   and you can't just get up and say we're prejudiced.  What

19   prejudice?  There's no prejudice.

20         You know, when this moved into the damages phase, in

21   the spring of 2012, we served Interrogatories and document

22   requests on them that clearly set out that we were pursuing a

23   mitigation defense.  So we would be having exactly the same

24   discussion if we had made the motion on September 1 or

25   August 1, as we're having today.  They full well knew that it

1    was our intent to do it.  We had discussions with them in

2    November and December.

3              THE COURT:  Well, what about their argument that

4    this -- if you look back to 11 years ago, at the point when

5    the Complaint is filed and the initial Answer is filed, why

6    isn't it in the case then?

7              MR. COHEN:  Well --

8              THE COURT:  I mean...

9              MR. COHEN:  Your Honor, there's no doubt that it

10   could have been pled.

11             THE COURT:  And the nature of this case probably made

12   it clearer than some that mitigation would be an issue.  I

13   mean, the very nature of the case.

14             MR. COHEN:  And I don't want to play the

15   I-wasn't-there game.

16             THE COURT:  Well, you weren't.

17             MR. COHEN:  I wasn't.  And the fact of the matter is,

18   Your Honor, once -- you know, once the case was bifurcated,

19   you know, once -- no one was dealing with damages.  The

20   damages discovery began a few months ago.

21             So, for example, when the named-plaintiffs' depositions

22   were taken, the class reps in September, we asked the

23   mitigation questions at the deposition.

24             THE COURT:  I'm not talking about discovery.

25             MR. COHEN:  Yes.

1          THE COURT:  I'm talking about the argument that is

2    supported, by at least some cases, that the issue -- that when

3    the issue of mitigation is fairly clear from the outset of the

4    case, that it's -- that it could be an issue, that's when you

5    measure the time from, not from --

6          MR. COHEN:  Right.  And what I'm saying --

7          THE COURT:  Not from when the parties kind of woke up

8    and said, okay, now we got to do this.

9          MR. COHEN:  Your Honor, all of the cases about

10   liberal granting and freely granting amendments all come up in

11   context of cases where it could have been a circuit earlier.

12   We are not saying it could not have been a circuit earlier.

13   The question is against the backdrop of these cases, and the

14   reality of this case, whereas Your Honor has said, everyone

15   understood mitigation was an issue, and we have made it clear

16   to them since the beginning of damages discovery, is there

17   prejudice?  Other than the word "prejudice," I don't hear it.

18         Is there delay?  I don't think there's any delay.  And

19   to the extent there's a modest month or so, it could have been

20   avoided.  So is it futile?  I don't think we can make a

21   finding of futility.  They tried to argue that in their

22   papers.  That's really a merits discussion.

23         So, Your Honor, yes, it could have been done earlier.

24   It would probably have been better if it had been done

25   earlier.  The question is, should you exercise your discretion

1    to grant it now, and should these -- should these members of

2    the class, if they succeed in the damages phase in getting any

3    meaningful damages, should they get a windfall or should we

4    measure damages in the appropriate way?

5              THE COURT:  Well, I'm going to exercise my

6    discretion.  It's just a question of which way I'm going to

7    exercise it.

8              MR. COHEN:  I walked right into that.

9              THE COURT:  No question I'll be exercising my

10   discretion.

11             MR. COHEN:  So, Your Honor, I mean, I think when we

12   look at the case law, all of these cases come up in the

13   context of the party opposing the amendment saying, you should

14   have done it earlier.

15             THE COURT:  Yeah, that's exactly the context it

16   always comes up in.

17             MR. COHEN:  But here we are, and the question is,

18   does this fit within the broad range of cases that grant a

19   free amendment?  Given that we know it's been in the case,

20   that when the mediation shut down and the discovery began, we

21   immediately began seeking discovery relating to the mitigation

22   defense.  We've quoted for you Ms. Rodriguez's own statement

23   from July of 2012 in a conference, where she said mitigation

24   is in the case.

25             You know, we know it's here.  This is a gotcha.  This

*United States District Court*
*Camden, New Jersey*

1  is not a case that should be decided on a gotcha.  I mean, it

2  really shouldn't be, Your Honor.

3          THE COURT:  All right.  Okay.  Thank you, Mr. Cohen.

4          Do you want to comment on the gotcha argument?

5          MS. RODRIGUEZ:  Just very briefly, two issues of

6  prejudice.  One is the fact that, when it wasn't in the case,

7  things like maintaining job applications over the last 11

8  years just hasn't been done, and it wasn't contemplated that

9  that would ever be an issue in this case.

10          The other thing is, and Mr. Cohen goes back to the

11  argument in -- or the Interrogatories and document requests

12  that were served in May of this year, that asked for very

13  specific information, that he says he contends should have put

14  us on notice that it was in the case.

15          At that time we refused to --

16          THE COURT:  A little bit of a boot-strapping argument

17  there.

18          MS. RODRIGUEZ:  Refused to produce the information,

19  saying, in fact, mitigation was not pled.  So they were on

20  notice, at least as early as May, and they were on notice

21  before we started putting our expert report together.

22          I don't know that our expert methodology would have

23  been different if they had to contemplate this additional

24  layer of information.  I'm not sure how it would have changed.

25  But it's certainly something that would have been contemplated

1    at that time, before a lot of time and a lot of money was

2    spent on methodologies and expert reports that did not include

3    that component of damages.  Thank you.

4          THE COURT:  Anything further?

5          MR. COHEN:  Your Honor, if I could just respond to

6    that last bit.  I just, you know -- their expert did an entire

7    report without considering setoff, and said, I'll deal with it

8    later as a subtraction.  We're suggesting a second

9    subtraction.  So I don't see how --

10         THE COURT:  Well, yeah.  I mean, I understand the

11   difference between, you know, a deduction for actual earnings

12   and a deduction for what you might have earned had you -- had

13   you put in the type of effort that we think you should have

14   put in.

15         MR. COHEN:  My only point is, I can't see how it

16   would have affected their damages methodology.

17         THE COURT:  No.  All right.  The -- I'm going to --

18   originally, I thought I might decide this from the bench but

19   I'm not.  I'm going to -- I'm going to write something on it

20   and -- you know, in the next week or so.  Could I see you,

21   though, all in my chambers?  Around the corner.

22         RESPONSE:  Yes, Your Honor.

23         MR. COHEN:  May we leave the other things in the

24   courtroom?

25         THE COURT:  I think so.  Yeah, you can do that.

1          We will actually lock the door.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **C E R T I F I C A T E.**

2

3

4

5      I, **KAREN FRIEDLANDER, CCR, RMR,** Official United States

6  Court Reporter and Certified Court Reporter of the State of

7  New Jersey, do hereby certify that the foregoing is a true and

8  accurate transcript of the testimony as taken stenographically

9  by and before me at the time, place and on the date

10  hereinbefore set forth.

11      I do further certify that I am neither a relative nor

12  employee nor attorney nor counsel of any of the parties to

13  this action, and that I am neither a relative nor employee of

14  such attorney or counsel and that I am not financially

15  interested in this action.

16

17

18

19

20

21

22      **/S/ Karen Friedlander, CCR**
        **KAREN FRIEDLANDER, CCR**
23      Certificate No. 30XI00128200
        Date:  January 7, 2013
24

25

*United States District Court*
*Camden, New Jersey*

**'**

**'97** [1] - 9:12
**'98** [1] - 9:12

**/**

**/S** [2] - 1:25, 33:22

**0**

**02-2917** [1] - 1:5
**08101** [1] - 1:10

**1**

**1** [4] - 4:9, 26:24, 26:25
**11** [6] - 3:7, 13:4, 26:4, 26:5, 27:4, 30:7
**11-year** [1] - 3:8
**11-year-old** [1] - 21:11
**1500** [1] - 15:2
**15th** [1] - 11:14
**1989** [4] - 21:5, 22:8, 22:17, 22:25

**2**

**2** [1] - 1:22
**20,000** [1] - 8:21
**2005** [2] - 17:25, 18:5
**2012** [3] - 20:20, 26:21, 29:23
**2013** [2] - 1:10, 33:16
**23** [1] - 13:20
**230** [1] - 13:20
**2300** [4] - 10:7, 13:19, 14:11, 16:3
**28** [1] - 1:23

**3**

**30** [1] - 26:7
**30XI00128200** [1] - 33:23
**31** [1] - 11:18, 11:19
**3558** [2] - 22:9, 22:25

**4**

**4** [1] - 1:10

**5**

**50-something** [1] - 7:22

**6**

**600** [2] - 14:15, 14:17
**6th** [1] - 26:6

**7**

**7** [2] - 4:2, 33:23
**753** [1] - 1:24

**A**

**able** [3] - 9:7, 9:18, 13:18
**accepted** [1] - 26:7
**ACCHIONE** [2] - 1:15, 3:14
**Acchione** [1] - 3:13
**according** [1] - 26:15
**account** [1] - 7:8
**accurate** [1] - 33:8
**acquire** [1] - 12:1
**action** [5] - 15:7, 17:2, 23:3, 33:13, 33:15
**ACTION** [1] - 1:4
**actual** [7] - 5:21, 23:5, 23:11, 24:2, 24:3, 24:5, 31:11
**add** [5] - 4:1, 4:3, 23:4, 24:13
**added** [2] - 5:7, 26:8
**adding** [1] - 24:17
**addition** [1] - 12:2
**additional** [2] - 11:25, 30:23
**addressed** [1] - 18:8
**addresses** [1] - 16:17
**addressing** [1] - 19:23
**administrative** [1] - 7:21
**advancement** [1] - 10:20
**adversely** [1] - 19:6
**affected** [2] - 19:6, 31:16
**aggregate** [1] - 12:16
**ago** [9] - 9:13, 11:12, 12:24, 13:4, 13:5, 27:4, 27:20
**agree** [1] - 4:16
**agreed** [1] - 13:23
**AIR** [1] - 1:6

**airline** [1] - 6:25
**al** [1] - 1:3
**Alan** [1] - 3:16
**ALAN** [1] - 1:17
**allegations** [1] - 16:9
**allow** [1] - 13:14
**allowed** [1] - 20:18
**allowing** [1] - 24:12
**allows** [1] - 15:25
**almost** [1] - 17:22
**altogether** [1] - 20:11
**amend** [10] - 3:8, 3:25, 4:1, 17:9, 18:5, 23:4, 24:11, 24:13, 25:10, 25:19
**amended** [1] - 6:9
**amendment** [4] - 17:13, 17:19, 29:13, 29:19
**amendments** [2] - 25:22, 28:10
**American** [5] - 7:1, 7:2, 7:7, 15:15, 18:9
**amusing** [1] - 21:7
**answer** [7] - 3:9, 6:6, 6:9, 10:2, 17:24, 23:4, 24:11
**Answer** [3] - 18:12, 24:13, 27:5
**Appearances** [1] - 1:22
**appearances** [1] - 3:10
**applications** [1] - 30:7
**apply** [1] - 11:6
**appoint** [3] - 7:21, 7:22
**approaches** [2] - 8:11, 8:24
**appropriate** [1] - 29:4
**appropriately** [1] - 6:20
**ARCHER** [1] - 1:21
**argue** [3] - 12:16, 23:25, 28:21
**argument** [7] - 5:24, 17:6, 27:3, 28:1, 30:4, 30:11, 30:16
**arguments** [3] - 13:16, 13:17, 25:4
**arise** [1] - 18:7
**arises** [1] - 18:10
**assert** [1] - 13:18
**ASSOCIATION** [1] - 1:6
**assume** [2] - 4:10, 4:14
**attorney** [2] - 33:12, 33:14
**August** [1] - 26:25

**avoided** [2] - 26:16, 28:20
**aware** [1] - 25:23

**B**

**backdrop** [1] - 28:13
**Bank** [1] - 18:9
**basic** [1] - 13:21
**become** [1] - 5:12
**becomes** [1] - 7:16
**began** [3] - 27:20, 29:20, 29:21
**beginning** [1] - 28:16
**behind** [1] - 26:13
**bench** [2] - 24:7, 31:18
**best** [1] - 19:7
**better** [4] - 6:23, 7:8, 9:14, 28:24
**between** [3] - 23:5, 24:2, 31:11
**bewhiskered** [2] - 21:9, 21:10
**bifurcated** [2] - 23:3, 27:18
**bifurcation** [3] - 17:25, 18:1, 18:2
**big** [2] - 6:4, 20:7
**billion** [1] - 26:14
**bit** [4] - 4:3, 10:10, 30:16, 31:6
**boot** [2] - 9:10, 30:16
**boot-strapping** [1] - 30:16
**BRADY** [1] - 1:3
**brand** [1] - 5:20
**brand-new** [1] - 5:20
**briefing** [1] - 18:6
**briefing's** [1] - 25:5
**briefly** [1] - 30:5
**bright** [2] - 15:20, 15:22
**bring** [1] - 8:12
**broad** [1] - 29:18
**broader** [1] - 20:16
**bunch** [1] - 14:11
**bury** [1] - 10:24
**business** [4] - 4:11, 4:12, 19:7, 20:2
**BY** [4] - 1:14, 1:19, 1:21, 2:3

**C**

**calendar** [1] - 21:8
**Camden** [1] - 1:10
**care** [1] - 24:25

**carrier** [1] - 20:6
**case** [49] - 3:6, 3:9, 4:5, 4:6, 4:9, 4:20, 5:18, 10:15, 12:7, 15:25, 16:24, 17:22, 17:24, 18:2, 18:24, 18:25, 19:14, 19:20, 20:25, 21:4, 21:5, 21:7, 21:8, 21:11, 22:8, 23:2, 23:19, 23:24, 24:4, 24:5, 24:7, 24:11, 25:3, 26:4, 26:14, 27:6, 27:11, 27:13, 27:18, 28:4, 28:14, 29:12, 29:19, 29:24, 30:1, 30:6, 30:9, 30:14
**cases** [16] - 5:2, 5:3, 5:5, 7:23, 17:9, 17:11, 19:15, 19:18, 25:4, 25:9, 28:2, 28:9, 28:11, 28:13, 29:12, 29:18
**categories** [1] - 12:17
**cautious** [1] - 21:14
**CCR** [4] - 1:25, 33:5, 33:22, 33:22
**certain** [3] - 4:5, 11:18, 12:17
**certainly** [3] - 3:22, 13:18, 30:25
**Certificate** [1] - 33:23
**certifications** [1] - 16:6
**Certified** [2] - 1:23, 33:6
**certify** [2] - 33:7, 33:11
**chambers** [1] - 31:21
**chance** [1] - 22:20
**change** [1] - 20:9
**changed** [1] - 30:24
**charts** [3] - 8:9, 8:22, 8:23
**Chicago** [1] - 25:6
**China** [1] - 20:24
**circuit** [7] - 25:8, 25:17, 25:18, 25:21, 25:23, 28:11, 28:12
**Circuit** [1] - 25:8
**circumstances** [1] - 6:19
**citation** [1] - 20:12
**cite** [1] - 22:8
**cited** [2] - 25:4, 25:9
**CIVIL** [1] - 1:4
**claim** [4] - 4:22, 10:16, 10:23, 11:4
**class** [9] - 11:10, 14:24, 15:7, 16:17,

17:1, 26:6, 26:14, 27:22, 29:2
**classmates** [1] - 25:6
**clear** [6] - 4:8, 18:9, 20:3, 23:18, 28:3, 28:15
**clearer** [2] - 25:18, 27:12
**clearly** [4] - 4:20, 12:4, 24:7, 26:22
**CLERK** [1] - 3:1
**clerked** [1] - 25:7
**close** [1] - 21:16
**closely** [1] - 5:16
**Cohen** [9] - 1:9, 3:19, 5:23, 17:7, 17:20, 19:24, 20:14, 30:3, 30:10
**COHEN** [57] - 1:19, 3:19, 5:25, 6:2, 6:8, 6:11, 6:15, 7:2, 7:14, 7:25, 8:2, 8:4, 8:13, 9:3, 9:5, 9:15, 9:18, 9:21, 9:25, 10:18, 10:21, 11:1, 11:5, 11:13, 11:16, 11:23, 12:11, 13:1, 13:7, 14:15, 14:17, 14:20, 14:23, 15:1, 15:12, 15:18, 21:18, 21:20, 22:20, 24:20, 24:22, 25:1, 25:13, 26:2, 27:7, 27:9, 27:14, 27:17, 27:25, 28:6, 28:9, 29:8, 29:11, 29:17, 31:5, 31:15, 31:23
**collect** [1] - 15:3
**collected** [1] - 16:6
**collecting** [3] - 13:8, 15:2, 16:13
**Columbus** [1] - 10:25
**comment** [1] - 30:4
**Company** [2] - 22:14, 22:16
**company** [1] - 10:22
**compared** [1] - 5:14
**complaining** [1] - 6:13
**Complaint** [1] - 27:5
**complaint** [2] - 6:6, 6:14, 6:15
**complex** [1] - 8:15
**complicated** [2] - 14:1, 14:2
**component** [1] - 31:3
**concerned** [1] - 9:22
**conduct** [1] - 10:8
**conference** [1] - 29:23
**confront** [1] - 15:21
**connection** [3] -

11:23, 20:21
**Connell** [1] - 3:20
**CONNELL** [1] - 1:21
**consider** [1] - 22:6
**considering** [1] - 31:7
**contain** [1] - 24:12
**contemplate** [1] - 30:23
**contemplated** [2] - 30:8, 30:25
**contends** [1] - 30:13
**context** [5] - 10:6, 15:7, 28:11, 29:13, 29:15
**continually** [1] - 17:12
**continue** [1] - 4:23
**continued** [3] - 1:22, 6:24, 7:7
**copy** [1] - 22:20
**corner** [1] - 31:21
**correct** [2] - 1:23, 10:21
**Counsel** [5] - 1:15, 1:17, 1:20, 1:22, 2:3
**counsel** [3] - 3:10, 33:12, 33:14
**counted** [1] - 4:15
**country** [2] - 12:10, 25:12
**couple** [3] - 9:19, 13:10, 17:8
**course** [1] - 24:22
**Court** [8] - 10:17, 10:23, 18:8, 18:9, 23:4, 23:11, 33:6
**court** [1] - 19:17
**COURT** [86] - 1:1, 3:2, 3:6, 3:8, 3:15, 3:18, 3:22, 3:25, 4:18, 6:1, 6:3, 6:9, 6:13, 7:1, 7:12, 7:15, 8:1, 8:3, 8:5, 8:14, 9:4, 9:6, 9:16, 9:20, 9:24, 10:15, 10:19, 10:22, 11:3, 11:12, 11:15, 11:21, 12:9, 12:22, 13:2, 14:13, 14:16, 14:18, 14:21, 14:25, 15:11, 15:14, 17:5, 17:15, 17:17, 18:2, 18:18, 19:4, 19:13, 21:3, 21:12, 21:14, 21:19, 21:22, 22:10, 22:13, 22:15, 22:18, 22:23, 23:1, 23:7, 23:9, 23:15, 23:18, 23:22, 24:6, 24:21, 24:24, 25:11, 25:20, 27:3, 27:8, 27:11, 27:16, 27:24, 28:1,

28:7, 29:5, 29:9, 29:15, 30:3, 30:16, 31:4, 31:10, 31:17, 31:25
**Court's** [2] - 10:5, 21:8
**Courthouse** [1] - 1:9
**courtroom** [1] - 31:24
**courts** [1] - 25:25
**covers** [1] - 25:11
**create** [2] - 9:16, 9:18
**creating** [1] - 8:11
**credit** [1] - 4:21
**credited** [1] - 4:12
**criminal** [1] - 9:9
**cuff** [1] - 21:24

**D**

**damage** [3] - 4:22, 5:22, 14:12
**damages** [21] - 4:16, 6:20, 6:22, 10:5, 10:12, 11:6, 13:25, 14:12, 16:2, 23:4, 24:14, 26:15, 26:20, 27:19, 27:20, 28:16, 29:2, 29:3, 29:4, 31:3, 31:16
**DANIEL** [2] - 1:19, 2:3
**data** [1] - 13:12
**Date** [1] - 33:23
**date** [3] - 24:13, 24:17, 33:9
**days** [3] - 16:16, 17:9, 26:7
**deal** [3] - 15:21, 19:18, 31:7
**dealing** [2] - 10:16, 27:19
**December** [6] - 11:10, 11:12, 11:16, 11:18, 26:6, 27:2
**decide** [2] - 14:6, 31:18
**decided** [2] - 5:10, 30:1
**decision** [1] - 10:5
**deducted** [3] - 5:22, 6:20, 7:4
**deduction** [2] - 31:11, 31:12
**Defendant** [4] - 1:8, 1:20, 1:22, 2:3
**defendant** [2] - 3:20, 4:22
**defendant's** [2] - 24:15, 24:18
**defendants** [2] - 20:20, 23:3

**defense** [17] - 4:2, 4:4, 5:9, 5:20, 11:4, 13:14, 13:18, 13:25, 14:1, 19:12, 20:16, 20:17, 20:22, 24:12, 26:23, 29:22
**defined** [1] - 18:19
**defines** [2] - 23:15, 23:16, 23:17
**degree** [1] - 4:19
**degrees** [1] - 20:2
**delay** [8] - 17:19, 24:18, 26:3, 26:9, 26:16, 26:17, 28:18
**demonstrating** [1] - 17:2
**denied** [1] - 24:19
**deny** [1] - 14:4
**deposition** [1] - 27:23
**depositions** [4] - 13:19, 19:19, 19:20, 27:21
**deprive** [1] - 13:25
**DEPUTY** [1] - 3:1
**describe** [1] - 12:14
**detail** [1] - 16:25
**determined** [1] - 7:18
**difference** [1] - 31:11
**different** [5] - 8:10, 8:24, 19:13, 20:13, 30:23
**directed** [1] - 11:17
**discovery** [12] - 8:7, 8:8, 9:24, 9:25, 14:5, 20:21, 27:20, 27:24, 28:16, 29:20, 29:21
**discretion** [2] - 28:25, 29:6, 29:10
**discrimination** [1] - 10:18
**discussion** [2] - 26:24, 28:22
**discussions** [1] - 27:1
**dispute** [1] - 5:21
**distinction** [2] - 23:5, 24:2
**District** [3] - 21:6, 22:9, 22:25
**DISTRICT** [3] - 1:1, 1:1, 1:12
**document** [2] - 26:21, 30:11
**documents** [8] - 8:17, 8:20, 8:25, 9:1, 9:11, 9:14, 13:11
**dollars** [1] - 26:14
**done** [11] - 5:1, 10:9, 10:11, 11:8, 13:16, 13:17, 14:16, 28:23, 28:24, 29:14, 30:8

**door** [1] - 32:1
**doubt** [1] - 27:9
**down** [3] - 22:23, 24:21, 29:20
**dropped** [1] - 15:19
**during** [1] - 19:19

**E**

**early** [7] - 11:9, 11:12, 11:16, 17:24, 20:19, 30:20
**earned** [5] - 16:5, 23:6, 24:3, 24:10, 31:12
**earnings** [13] - 4:7, 5:10, 5:21, 23:5, 23:6, 23:12, 24:2, 24:3, 24:5, 24:9, 31:11
**easier** [1] - 5:11
**easy** [2] - 10:1, 26:3
**effect** [1] - 5:15
**efficient** [4] - 13:22, 14:6, 16:3, 17:3
**efficiently** [2] - 9:8, 16:1
**effort** [6] - 5:8, 5:9, 6:21, 12:18, 16:11, 31:13
**efforts** [5] - 5:16, 11:25, 12:15, 13:3, 17:1
**eight** [1] - 13:4
**element** [1] - 4:5
**eleven** [1] - 17:22
**employee** [2] - 33:12, 33:13
**employer** [1] - 20:7
**entire** [1] - 31:6
**entitled** [4] - 4:16, 4:22, 13:21, 23:25
**equivalent** [1] - 5:16
**ESQUIRE** [7] - 1:14, 1:15, 1:17, 1:19, 1:19, 1:21, 2:3
**essentially** [1] - 26:13
**et** [1] - 1:3
**evasion** [1] - 8:16
**eve** [1] - 19:16
**evening** [1] - 19:21
**events** [1] - 5:17
**everywhere** [1] - 25:25
**Evidence** [1] - 8:10
**evidence** [9] - 8:11, 8:16, 8:22, 8:25, 9:1, 9:2, 9:3, 9:5
**exactly** [6] - 9:6, 12:7,

17:21, 26:9, 26:23, 29:15

**exaggeration** [1] - 16:11

**example** [2] - 15:8, 27:21

**excuse** [1] - 6:7

**exercise** [3] - 28:25, 29:5, 29:7

**exercising** [1] - 29:9

**expansion** [1] - 5:19

**expecting** [1] - 10:7

**experienced** [3] - 21:18, 21:20, 21:22

**expert** [8] - 14:23, 18:14, 18:16, 26:15, 30:21, 30:22, 31:2, 31:6

**extent** [2] - 4:6, 28:19

## F

**face** [1] - 3:23

**fact** [10] - 6:23, 7:9, 7:17, 9:17, 10:11, 10:24, 19:4, 27:17, 30:6, 30:19

**fact-intensive** [2] - 7:17, 9:17

**facts** [7] - 18:22, 18:25, 19:10, 19:11, 19:14, 20:15, 25:17

**fair** [1] - 4:23

**fairly** [4] - 10:1, 18:3, 21:7, 28:3

**familiar** [1] - 3:23

**far** [3] - 13:10, 20:23, 24:9

**far-reaching** [1] - 20:23

**fashion** [2] - 10:10, 10:11

**Federal** [1] - 8:10

**few** [3] - 5:3, 16:16, 27:20

**fewer** [1] - 14:11

**filed** [10] - 17:24, 17:25, 18:10, 18:15, 18:16, 18:17, 24:15, 25:5, 27:5

**financially** [1] - 33:14

**fine** [2] - 9:6, 25:7

**firm** [1] - 3:13

**firmly** [1] - 13:15

**first** [1] - 3:10

**fit** [2] - 12:17, 29:18

**fly** [3] - 20:5, 20:23, 21:17

**fly-off-the-handle** [1] -

21:17

**flying** [3] - 15:11, 15:14, 20:6

**folks** [3] - 12:17, 15:2, 15:18

**following** [1] - 23:2

**FOR** [1] - 1:1

**foregoing** [1] - 33:7

**Forest** [3] - 22:17, 22:18, 22:19

**forget** [1] - 3:18

**formal** [1] - 18:19

**forth** [1] - 33:10

**forwarder** [2] - 5:1, 20:5

**frames** [1] - 12:22

**free** [1] - 29:19

**freely** [4] - 25:9, 25:19, 25:22, 28:10

**freight** [4] - 4:25, 20:4

**Friday** [1] - 1:10

**FRIEDLANDER** [2] - 33:5, 33:22

**Friedlander** [2] - 1:25, 33:22

**full** [1] - 26:25

**fundamental** [4] - 13:25, 16:20, 17:8, 17:10

**funny** [1] - 5:19

**futile** [1] - 28:20

**futility** [1] - 28:21

## G

**G-U-D** [1] - 22:15

**game** [4] - 18:3, 18:4, 19:1, 27:15

**gardening** [1] - 4:11

**GARRISON** [1] - 1:18

**general** [1] - 25:21

**generalized** [1] - 25:24

**Gerry** [1] - 1:9

**given** [4] - 9:11, 12:22, 15:9, 29:19

**glad** [1] - 11:21

**gotcha** [3] - 29:25, 30:1, 30:4

**grant** [2] - 29:1, 29:18

**granted** [2] - 25:19, 25:22

**granting** [2] - 28:10

**grapple** [1] - 14:3

**grasped** [1] - 6:17

**great** [2] - 16:25, 19:25

**GREEN** [1] - 1:16

**GREINER** [1] - 1:21

**gross** [1] - 16:10

**grounded** [1] - 13:15

**GUD** [1] - 22:15

**GUDYKA** [2] - 22:14, 22:16

## H

**half** [6] - 3:9, 8:15, 9:8, 9:9, 13:10, 13:11

**half-tried** [1] - 3:9

**handle** [2] - 17:5, 21:17

**handling** [1] - 9:13

**hard** [3] - 6:11, 15:6, 20:1

**harder** [1] - 15:8

**hate** [1] - 9:7

**hated** [1] - 21:24

**head** [4] - 22:3, 23:16

**hear** [2] - 17:7, 28:17

**helps** [1] - 20:14

**hereby** [1] - 33:7

**hereinbefore** [1] - 33:10

**hold** [1] - 25:24

**holding** [1] - 16:5

**holidays** [1] - 26:13

**home** [1] - 5:11

**Honor** [48] - 3:11, 3:19, 3:24, 5:25, 6:2, 6:16, 6:17, 6:21, 7:25, 8:2, 9:15, 9:19, 9:21, 10:14, 11:1, 11:7, 11:17, 12:4, 12:12, 12:16, 13:13, 13:24, 14:3, 14:17, 15:10, 16:19, 17:4, 17:7, 17:21, 19:3, 21:6, 21:21, 22:11, 24:14, 24:20, 24:23, 25:1, 25:13, 26:2, 27:9, 27:18, 28:9, 28:14, 28:23, 29:11, 30:2, 31:5, 31:22

**HONORABLE** [1] - 1:11

**hours** [1] - 12:20

**house** [1] - 5:12

**housewife** [1] - 5:12

**hundred** [1] - 13:10

**husband** [1] - 5:12

## I

**I-wasn't-there** [1] - 27:15

**idea** [1] - 4:10

**Illinois** [1] - 21:6

**immediately** [1] - 29:21

**immense** [1] - 9:11

**include** [1] - 31:2

**included** [1] - 19:6

**indicated** [1] - 18:22

**individual** [2] - 16:24, 17:1

**inference** [1] - 7:7

**information** [20] - 11:18, 12:1, 12:16, 12:23, 13:6, 13:7, 13:8, 13:9, 13:21, 14:7, 14:10, 15:3, 15:4, 15:20, 16:14, 26:6, 30:13, 30:18, 30:24

**initial** [1] - 27:5

**inquiry** [2] - 7:17

**instance** [1] - 24:3

**intend** [2] - 10:8, 16:1

**intensive** [2] - 7:17, 9:17

**intent** [3] - 7:15, 7:16, 27:1

**interest** [1] - 25:22

**interested** [1] - 33:15

**interestingly** [1] - 23:24

**INTERNATIONAL** [1] - 1:7

**Interrogatories** [2] - 26:21, 30:11

**introduce** [1] - 15:25

**introduced** [1] - 14:8

**involving** [1] - 8:15

**Irenas** [1] - 3:21

**IRENAS** [1] - 1:11

**issue** [19] - 4:18, 6:18, 9:23, 14:3, 18:6, 18:7, 18:10, 18:19, 19:2, 23:5, 23:12, 23:13, 27:12, 28:2, 28:3, 28:4, 28:15, 30:9

**issues** [2] - 13:12, 30:5

## J

**JACOBSON** [1] - 1:16

**January** [3] - 1:10, 11:19, 33:23

**Jay** [1] - 3:19

**JAY** [1] - 1:19

**JEI** [1] - 1:5

**JERSEY** [1] - 1:1

**Jersey** [2] - 1:10, 33:7

**jets** [1] - 20:7

**job** [15] - 4:14, 5:11, 5:13, 5:14, 5:15, 5:16, 6:22, 7:3, 12:6, 12:19, 12:24, 16:23, 30:7

**John** [1] - 1:9

**JOHN** [1] - 1:21

**Jones** [1] - 10:24

**JOSEPH** [1] - 1:11

**Judge** [4] - 3:7, 3:21, 22:4, 25:5

**JUDGE** [1] - 1:12

**judge** [8] - 21:9, 21:12, 21:17, 21:18, 21:20, 22:7, 24:1, 25:7

**judges** [2] - 22:1, 25:13

**July** [2] - 21:2, 29:23

**June** [1] - 21:1

**jury** [6] - 7:19, 8:3, 8:5, 8:12, 9:7, 9:9

**justice** [1] - 25:23

## K

**Karen** [2] - 1:25, 33:22

**KAREN** [2] - 33:5, 33:22

**Katz** [2] - 3:20, 3:22

**KATZ** [4] - 2:2, 2:3, 3:21, 3:24

**keeper** [1] - 13:3

**key** [1] - 8:22

**kind** [12] - 4:14, 5:1, 5:15, 10:9, 10:11, 13:5, 18:23, 20:5, 20:10, 23:12, 28:7

**kinds** [1] - 5:6

**known** [3] - 19:10, 19:11, 20:15

**knows** [1] - 23:12

## L

**L-A-C-Y** [1] - 22:19

**labor** [1] - 20:10

**Lacy** [2] - 22:17, 22:19

**last** [7] - 10:14, 11:10, 11:17, 17:8, 22:21, 30:7, 31:6

**late** [5] - 18:3, 18:4, 18:25, 24:13, 24:17

**law** [7] - 13:15, 25:14, 25:17, 25:18, 25:20, 25:25, 29:12

**lawsuit** [1] - 18:10

**lawyers** [1] - 19:17
**layer** [1] - 30:24
**layers** [1] - 10:2
**least** [5] - 6:18, 20:3, 20:19, 28:2, 30:20
**leave** [1] - 31:23
**less** [2] - 5:15, 26:7
**lesser** [1] - 4:14
**Lexus** [2] - 22:9, 22:25
**liability** [3] - 18:7, 23:3, 24:10
**liberal** [1] - 28:10
**liberally** [1] - 25:10
**lifestyle** [1] - 20:9
**limitations** [1] - 17:1
**line** [1] - 12:8
**LINE** [1] - 1:6
**lines** [2] - 15:20, 15:21
**LISA** [1] - 1:14
**Lisa** [1] - 3:11
**list** [1] - 6:25
**listening** [1] - 11:21
**literally** [1] - 19:16
**LLC** [1] - 1:14
**LLP** [1] - 1:18
**lock** [1] - 32:1
**logical** [1] - 7:7
**look** [9] - 6:17, 11:5, 12:20, 15:4, 25:3, 25:16, 27:4, 29:12
**looked** [2] - 12:19, 12:20
**looking** [1] - 15:7
**loss** [3] - 23:14, 23:16, 23:17
**lost** [1] - 4:13
**low** [2] - 5:14, 5:15
**low-stress** [2] - 5:14, 5:15

## M

**magistrate** [1] - 7:21
**mail** [1] - 16:17
**mailing** [1] - 11:24
**maintained** [3] - 23:21, 23:22, 23:23
**maintaining** [1] - 30:7
**manage** [2] - 9:22, 9:24
**marked** [1] - 8:17
**market** [1] - 20:10
**master** [1] - 7:22
**matter** [4] - 5:18, 7:9, 13:12, 27:17
**maximize** [2] - 5:9, 5:16
**mean** [19] - 4:10, 7:9, 7:19, 8:8, 8:17, 9:17,

**12:6, 16:7, 19:4,
19:19, 19:25, 20:11,
25:3, 25:21, 25:24,
27:13, 29:11, 30:1,
31:10
**mean..** [1] - 27:8
**meaningful** [1] - 29:3
**means** [2] - 4:13, 12:3
**measure** [2] - 28:5, 29:4
**mediation** [1] - 29:20
**members** [2] - 11:10, 29:1
**memory** [1] - 13:3
**mention** [1] - 22:2
**merger** [1] - 19:6
**merits** [2] - 13:17, 28:22
**messier** [1] - 10:10
**methodologies** [1] - 31:2
**methodology** [2] - 30:22, 31:16
**might** [8] - 9:18, 13:5, 14:10, 18:22, 20:16, 20:22, 31:12, 31:18
**million** [2] - 8:17, 8:20
**mind** [2] - 11:7, 20:12
**mind-set** [1] - 20:12
**mindful** [1] - 15:24
**Miss** [1] - 10:24
**Mitchell** [1] - 1:9
**mitigation** [31] - 4:3, 4:4, 4:5, 4:8, 4:19, 5:20, 7:9, 12:2, 17:9, 18:6, 18:10, 18:17, 18:20, 18:22, 18:23, 19:2, 20:17, 20:24, 23:4, 23:13, 24:4, 24:8, 24:13, 26:23, 27:12, 27:23, 28:3, 28:15, 29:21, 29:23, 30:19
**mixture** [1] - 19:25
**modest** [1] - 28:19
**money** [4] - 4:11, 5:15, 16:5, 31:1
**month** [6] - 8:15, 9:8, 9:9, 11:12, 26:13, 28:19
**month's** [1] - 26:16
**months** [5] - 12:24, 16:14, 18:1, 25:4, 27:20
**morning** [8] - 3:3, 3:4, 3:5, 3:11, 3:14, 3:15, 3:21, 3:22
**MOTION** [1] - 1:6
**motion** [16] - 3:8, 3:25, 4:1, 6:1, 17:25,

**18:1, 18:5, 18:17,
18:21, 20:18, 20:25,
21:1, 21:2, 24:15,
24:18, 26:24
**motions** [5] - 17:9,
18:14, 20:21, 25:10,
25:18
**moved** [2] - 23:3,
26:20
**MR** [60] - 3:7, 3:16,
3:19, 3:21, 3:24,
5:25, 6:2, 6:8, 6:11,
6:15, 7:2, 7:14, 7:25,
8:2, 8:4, 8:13, 9:3,
9:5, 9:15, 9:18, 9:21,
9:25, 10:18, 10:21,
11:1, 11:5, 11:13,
11:16, 11:23, 12:11,
13:1, 13:7, 14:15,
14:17, 14:20, 14:23,
15:1, 15:12, 15:18,
21:18, 21:20, 22:20,
24:20, 24:22, 25:1,
25:13, 26:2, 27:7,
27:9, 27:14, 27:17,
27:25, 28:6, 28:9,
29:8, 29:11, 29:17,
31:5, 31:15, 31:23
**MS** [29] - 3:4, 3:11,
3:14, 4:17, 17:7,
17:16, 17:18, 18:4,
19:3, 19:11, 20:19,
21:4, 21:13, 22:8,
22:11, 22:14, 22:16,
22:19, 22:21, 22:25,
23:2, 23:8, 23:11,
23:17, 23:20, 23:24,
24:9, 30:5, 30:18
**must** [1] - 6:3

## N

**name** [2] - 22:1, 22:13
**named** [2] - 15:9,
27:21
**named-plaintiffs'** [1] -
27:21
**National** [1] - 18:9
**nature** [2] - 27:11,
27:13
**nearly** [1] - 21:9
**need** [3] - 7:18, 10:3,
12:2
**needed** [1] - 20:22
**never** [4] - 4:18, 5:21,
23:20
**NEW** [1] - 1:1
**new** [7] - 5:20, 6:6,
6:9, 6:25, 7:3, 19:21

**New** [2] - 1:10, 33:7
**next** [2] - 6:6, 31:20
**Nicole** [1] - 3:13
**NICOLE** [1] - 1:15
**night** [1] - 22:22
**nine** [4] - 8:15, 9:8,
9:9, 13:4
**nine-and-a-half-
month** [3] - 8:15, 9:8,
9:9
**NO** [1] - 1:5
**nobody** [5] - 19:1,
19:15, 19:16, 19:22,
23:22
**non** [1] - 5:4
**non-piloting** [1] - 5:4
**nothing** [2] - 5:13,
25:16
**notice** [2] - 30:14,
30:20
**notices** [1] - 4:20
**notion** [1] - 5:8
**notwithstanding** [1] -
24:1
**November** [2] - 11:14,
27:2
**number** [4] - 4:23,
11:25, 14:13, 14:22
**NUMBER** [1] - 1:4
**numbers** [1] - 16:2

## O

**oath** [1] - 16:6
**obligated** [1] - 5:9
**observation** [1] - 5:23
**obviously** [2] - 10:7,
13:19
**occasion** [1] - 20:9
**odd** [1] - 6:18
**OF** [1] - 1:1
**Official** [1] - 33:5
**Ohio** [1] - 10:24
**old** [6] - 3:6, 17:23,
21:9, 21:10, 26:4,
26:5
**older** [1] - 21:5
**once** [3] - 27:18, 27:19
**one** [20] - 4:2, 5:17,
6:5, 6:9, 6:12, 7:23,
8:8, 8:25, 9:1, 10:3,
10:7, 11:8, 11:22,
12:23, 15:8, 20:17,
20:21, 27:19, 30:6
**One** [1] - 1:9
**opportunity** [1] -
16:25
**opposing** [1] - 29:13
**order** [1] - 11:17

**ordered** [1] - 19:19
**orders** [1] - 11:22
**organizations** [1] -
4:24
**original** [1] - 20:7
**originally** [1] - 31:18
**outliers** [1] - 16:8
**outset** [1] - 28:3
**outside** [1] - 7:18
**own** [1] - 29:22

## P

**P.C** [3] - 1:16, 1:21,
2:2
**pack** [1] - 5:4
**Page** [1] - 1:22
**pages** [1] - 6:6
**panels** [1] - 21:15
**paper** [1] - 6:4
**papers** [2] - 22:10,
28:22
**part** [2] - 6:14, 18:20
**particular** [1] - 5:22
**parties** [3] - 20:15,
28:7, 33:12
**Party** [1] - 12:9
**party** [1] - 29:13
**passenger** [1] - 20:7
**past** [2] - 8:9, 10:3
**PATRICK** [1] - 1:3
**pattern** [1] - 15:5
**Paul** [1] - 3:19
**PAUL** [1] - 1:18
**pay** [5] - 4:14, 4:15,
8:9, 10:22
**peculiar** [1] - 25:14
**people** [15] - 3:2, 6:25,
7:3, 7:5, 10:7, 12:14,
13:10, 13:11, 13:20,
16:3, 16:21, 19:7,
20:1, 20:8
**perfect** [2] - 13:7, 13:8
**period** [2] - 15:13,
16:14
**permissible** [2] - 7:20,
8:12
**permits** [1] - 13:24
**person** [9] - 7:17, 8:6,
10:5, 10:6, 12:19,
12:25, 21:23
**person's** [1] - 7:16
**person-by-person** [1]
- 7:17
**personal** [1] - 24:24
**personality** [1] - 21:23
**phase** [3] - 20:22,
26:20, 29:2
**pilot** [10] - 4:10, 4:13,

5:8, 5:10, 5:17, 5:22,
7:6, 15:16, 20:1
**pilot's** [1] - 4:14, 5:14
**piloted** [1] - 4:24
**piloting** [5] - 4:24, 5:1,
5:4, 5:5
**pilots** [7] - 4:8, 4:21,
4:23, 12:6, 14:18,
19:5, 19:8
**PILOTS** [1] - 1:6
**place** [2] - 5:18, 33:9
**plaintiff** [1] - 11:9
**plaintiff's** [3] - 6:19,
16:25, 26:4
**Plaintiffs** [3] - 1:4,
1:15, 1:17
**plaintiffs** [9] - 3:16,
11:24, 13:22, 15:9,
17:6, 18:15, 23:25,
24:17, 26:17
**plaintiffs'** [1] - 27:21
**play** [1] - 27:14
**Plaza** [1] - 1:9
**pled** [5] - 23:13, 24:4,
27:10, 30:19
**podium** [2] - 24:23,
24:25
**point** [9] - 8:17, 9:17,
14:18, 15:14, 15:17,
20:24, 21:5, 27:4,
31:15
**points** [1] - 26:3
**popped** [2] - 18:25,
22:2
**Posner** [1] - 25:11
**possible** [1] - 20:21
**post** [1] - 11:5
**post-Walmart** [1] -
11:5
**potential** [1] - 16:20
**pragmatically** [4] -
17:14, 17:15, 17:16,
24:16
**praise** [1] - 22:6
**precisely** [1] - 9:21
**preference** [1] - 24:24
**prejudice** [9] - 10:19,
17:14, 17:18, 24:16,
26:19, 28:17, 30:6
**prejudiced** [1] - 26:18
**premature** [2] - 15:22,
17:20
**prematurely** [1] - 7:11
**prepared** [1] - 16:13
**preparing** [1] - 22:22
**present** [2] - 14:2,
17:12
**presentation** [2] -
15:23, 17:21
**Press** [1] - 3:16

**PRESS** [3] - 1:17, 3:7,
3:16
**pretrial** [1] - 18:13
**pretty** [1] - 20:3
**primary** [3] - 10:16,
10:23, 11:4
**problems** [1] - 14:9
**proceeding** [3] -
11:19, 11:20, 24:11
**proceedings** [1] -
18:13
**produce** [1] - 30:18
**Products** [2] - 22:17,
22:19
**professors** [1] - 25:14
**promotion** [1] - 10:20
**prove** [4] - 10:5,
10:17, 10:25, 15:6
**proxy** [1] - 14:24
**pure** [1] - 18:11
**pursue** [1] - 13:14
**pursuing** [1] - 26:22
**put** [8] - 5:8, 8:16,
9:16, 16:12, 21:17,
30:13, 31:13, 31:14
**puts** [1] - 6:21
**putting** [1] - 30:21

**Q**

**quarter** [1] - 14:23
**questionnaire** [4] -
10:13, 12:13, 13:23,
26:8
**questionnaires** [3] -
11:9, 11:16, 16:15
**questions** [7] - 11:25,
16:12, 16:16, 26:8,
26:12, 26:17, 27:23
**quite** [1] - 21:11
**quoted** [1] - 29:22

**R**

**raised** [7] - 18:12,
18:13, 18:14, 18:15,
19:12, 20:24
**raising** [1] - 18:19
**random** [1] - 22:2
**range** [1] - 29:18
**RANZMAN** [1] - 2:2
**rates** [1] - 10:22
**rather** [2] - 5:20, 14:9
**reaching** [1] - 20:23
**read** [4] - 6:5, 17:11,
21:7
**reading** [2] - 17:9,
23:10

**real** [1] - 14:3
**reality** [1] - 28:14
**really** [13] - 5:7, 14:11,
14:18, 16:5, 16:21,
16:22, 18:19, 18:21,
19:21, 19:23, 28:22,
30:2
**reason** [2] - 13:14,
14:4
**reasonably** [1] - 15:20
**reasons** [1] - 24:18
**rebuts** [1] - 19:24
**received** [1] - 13:9
**recipients** [1] - 14:11
**record** [3] - 4:9, 13:3,
20:3
**refused** [4] - 12:3,
26:12, 30:15, 30:18
**regional** [1] - 20:6
**relating** [1] - 29:21
**relative** [2] - 33:11,
33:13
**reliable** [1] - 14:8
**remainder** [1] - 11:19
**remarkably** [1] - 21:4
**remember** [6] - 4:6,
5:3, 10:14, 15:15,
21:24, 22:3
**Remember** [1] - 11:13
**report** [2] - 30:21, 31:7
**Reporter** [2] - 33:6
**reports** [3] - 18:15,
18:16, 31:2
**repository** [2] - 8:18,
8:19
**reps** [1] - 27:22
**requests** [2] - 26:22,
30:11
**required** [1] - 1:23
**Resolution** [1] - 18:8
**respect** [1] - 11:25
**respectfully** [1] -
13:13
**respond** [1] - 31:5
**response** [1] - 19:5
**RESPONSE** [2] - 3:5,
31:22
**responses** [2] - 19:25,
20:13
**returns** [1] - 16:4
**review** [1] - 7:23
**RICHARDS** [1] - 1:14
**Richards** [1] - 3:12
**RIFKIND** [1] - 1:18
**rise** [1] - 3:1
**RMR** [2] - 1:25, 33:5
**RODRIGUEZ** [30] -
1:14, 1:14, 3:4, 3:11,
4:17, 17:7, 17:16,

17:18, 18:4, 19:3,
19:11, 20:19, 21:4,
21:13, 22:8, 22:11,
22:14, 22:16, 22:19,
22:21, 22:25, 23:2,
23:8, 23:11, 23:17,
23:20, 23:24, 24:9,
30:5, 30:18
**Rodriguez** [2] - 3:12
**Rodriguez's** [1] -
29:22
**Rule** [1] - 7:22
**rule** [1] - 12:12
**Rules** [1] - 8:10
**rules** [1] - 8:24

**S**

**Sales** [2] - 22:14,
22:16
**Sally** [1] - 15:9
**saw** [1] - 6:3
**seated** [1] - 3:3
**second** [2] - 10:1,
31:8
**Section** [1] - 1:24
**see** [7] - 4:5, 20:25,
21:1, 31:9, 31:15,
31:20
**seeing** [1] - 22:4
**seeking** [3] - 26:5,
26:14, 29:21
**send** [2] - 12:13, 13:11
**seniority** [1] - 6:25
**sent** [5] - 4:20, 10:13,
11:9, 12:14, 13:10
**sentence** [3] - 4:2,
6:10, 6:12
**separate** [2] - 4:1, 4:4
**separately** [1] - 8:21
**September** [2] - 26:24,
27:22
**serious** [1] - 21:22
**served** [2] - 26:21,
30:12
**set** [6] - 6:18, 7:20,
20:12, 24:5, 26:22,
33:10
**setoff** [8] - 6:22,
10:12, 12:2, 15:2,
16:2, 24:1, 26:6,
31:7
**setoffs** [1] - 26:15
**Seventh** [1] - 25:11
**several** [1] - 17:25
**Shadur** [6] - 21:13,
21:15, 22:4, 23:9,
25:5
**short** [2] - 4:2, 12:13

**shot** [1] - 11:8
**shut** [1] - 29:20
**side** [2] - 23:23, 26:4
**simple** [1] - 5:13
**simply** [4] - 15:19,
16:12, 18:11, 26:17
**sit** [1] - 24:21
**situations** [1] - 5:6
**six** [2] - 8:14, 12:24
**small** [4] - 11:25,
14:13, 20:5, 20:6
**someone** [1] - 11:21
**sometimes** [3] - 4:24,
13:5, 19:15
**somewhat** [1] - 21:8
**sorry** [2] - 22:21
**sought** [2] - 5:7, 17:13
**speaking** [1] - 21:24
**special** [1] - 7:22
**specific** [1] - 30:13
**specifically** [2] - 4:1,
20:16
**spent** [2] - 17:8, 31:2
**spring** [1] - 26:21
**squarely** [1] - 18:8
**stack** [1] - 6:4
**stapling** [2] - 14:14,
14:16
**start** [2] - 26:3, 26:5
**started** [2] - 4:10,
30:21
**starts** [1] - 21:7
**State** [1] - 33:6
**state** [3] - 8:19, 9:11,
25:25
**statement** [2] - 25:21,
29:22
**STATES** [2] - 1:1, 1:12
**States** [2] - 1:9, 33:5
**stay** [6] - 5:11, 19:7,
20:1, 20:10, 24:25,
25:1
**stenographically** [1] -
33:8
**still** [1] - 11:8
**stood** [1] - 20:20
**strapping** [1] - 30:16
**stress** [2] - 5:14, 5:15
**strove** [2] - 19:7, 20:1
**stuff** [1] - 9:7
**subject** [2] - 5:18,
18:21
**subsequent** [1] - 4:7
**subtracting** [1] - 4:7
**subtraction** [2] - 31:8,
31:9
**succeed** [1] - 29:2
**success** [1] - 20:2
**sudden** [1] - 18:16

**suddenly** [1] - 18:25
**suffer** [1] - 14:19
**sufficient** [4] - 17:14,
17:15, 17:16, 24:16
**sufficiently** [1] - 14:8
**suggest** [2] - 12:4,
15:4
**suggested** [2] - 19:1,
20:16
**suggesting** [3] -
12:18, 13:19, 31:8
**suggestion** [1] - 26:8
**summaries** [1] - 8:23
**summary** [6] - 8:11,
9:3, 9:5, 10:10,
10:11
**supported** [1] - 28:2
**Supreme** [3] - 10:4,
10:17, 10:23

## T

**table** [2] - 9:17, 9:19
**tack** [1] - 13:23
**tacking** [1] - 26:17
**talks** [1] - 17:20
**tax** [2] - 8:15, 16:4
**Tea** [1] - 12:9
**technology** [2] - 9:12,
9:13
**ten** [1] - 13:4
**term** [1] - 17:10
**terms** [1] - 17:12
**test** [1] - 16:7
**testify** [1] - 10:7
**testimony** [2] - 15:10,
33:8
**THE** [88] - 1:1, 1:11,
3:1, 3:2, 3:6, 3:8,
3:15, 3:18, 3:22,
3:25, 4:18, 6:1, 6:3,
6:9, 6:13, 7:1, 7:12,
7:15, 8:1, 8:3, 8:5,
8:14, 9:4, 9:6, 9:16,
9:20, 9:24, 10:15,
10:19, 10:22, 11:3,
11:12, 11:15, 11:21,
12:9, 12:22, 13:2,
14:13, 14:16, 14:18,
14:21, 14:25, 15:11,
15:14, 17:5, 17:15,
17:17, 18:2, 18:18,
19:4, 19:13, 21:3,
21:12, 21:14, 21:19,
21:22, 22:10, 22:13,
22:15, 22:18, 22:23,
23:1, 23:7, 23:9,
23:15, 23:18, 23:22,
24:6, 24:21, 24:24,

25:11, 25:20, 27:3,
27:8, 27:11, 27:16,
27:24, 28:1, 28:7,
29:5, 29:9, 29:15,
30:3, 30:16, 31:4,
31:10, 31:17, 31:25
**theirs** [1] - 16:12
**themselves** [1] - 17:13
**theory** [1] - 12:7
**they've** [3] - 13:9,
16:6, 16:15
**Third** [1] - 25:8
**thousand** [2] - 8:13,
8:14
**thousand-and-**
**something** [1] - 8:13
**three** [6] - 6:6, 8:19,
10:2, 17:12, 21:9,
21:10
**timetable** [1] - 26:10
**Title** [1] - 1:23
**Toal** [1] - 3:20
**TOAL** [1] - 1:19
**today** [1] - 26:25
**together** [1] - 30:21
**took** [1] - 5:18
**tougher** [1] - 9:10
**transcript** [1] - 33:8
**trial** [14] - 8:15, 9:8,
9:9, 9:22, 9:24, 10:6,
10:8, 14:2, 15:23,
17:21, 18:7, 18:14,
19:16, 19:19
**tried** [5] - 3:9, 15:8,
16:2, 24:6, 28:21
**trouble** [1] - 7:12
**troublesome** [1] -
7:13
**true** [2] - 1:23, 33:7
**TRUJILLO** [1] - 1:14
**Trujillo** [1] - 3:12
**Trust** [1] - 18:8
**try** [7] - 15:4, 15:25,
16:22, 19:17, 19:20,
23:25
**trying** [3] - 16:22,
17:3, 20:3
**Tuesday** [2] - 12:20
**turns** [1] - 6:5
**TWA** [1] - 6:25
**two** [7] - 8:10, 8:24,
10:2, 11:9, 12:6,
16:14, 30:5
**type** [5] - 18:20, 21:17,
21:22, 22:5, 31:13

## U

**U.S.C** [1] - 1:24

**ultimately** [1] - 14:6
**under** [7] - 6:19, 7:22,
8:9, 10:4, 12:7, 16:6
**underlying** [2] - 8:25,
9:1
**understood** [1] -
28:15
**underway** [1] - 16:11
**unfairness** [3] - 16:20,
17:8, 17:10
**UNITED** [1] - 1:1
**United** [2] - 1:9, 33:5
**uNITED** [1] - 1:12
**University** [1] - 25:6
**up** [17] - 7:20, 17:2,
18:25, 19:14, 19:16,
19:18, 19:21, 20:18,
23:7, 23:8, 23:23,
26:4, 26:18, 28:7,
28:10, 29:12, 29:16
**US** [2] - 22:9, 22:25

## V

**varying** [1] - 20:2
**verdict** [1] - 8:5
**versus** [2] - 18:9,
22:16
**view** [2] - 6:19, 25:14
**volume** [1] - 9:11
**voluminous** [3] - 9:3,
9:5, 9:13
**vs** [1] - 1:5

## W

**wages** [1] - 13:9
**walked** [1] - 29:8
**Walmart** [5] - 10:5,
10:15, 10:25, 11:5
**Walmart's** [1] - 10:4
**ways** [1] - 4:21
**Wednesday** [1] -
12:21
**week** [1] - 31:20
**WEISS** [1] - 1:18
**Weiss** [1] - 3:19
**WHARTON** [1] - 1:18
**whereas** [1] - 28:14
**whole** [1] - 25:12
**wind** [1] - 19:18
**windfall** [3] - 7:10,
16:20, 29:3
**woke** [1] - 28:7
**women** [3] - 10:17,
10:18, 10:19
**word** [4] - 7:10, 9:8,
21:16, 28:17

**words** [1] - 6:12
**workforce** [2] - 15:19,
16:21
**world** [2] - 12:5, 25:15
**worry** [3] - 15:22,
17:20, 17:22
**worse** [1] - 12:6
**write** [2] - 6:11, 31:19
**written** [2] - 21:25,
22:5

## Y

**year** [1] - 30:12
**years** [12] - 3:7, 13:4,
13:5, 17:22, 21:9,
21:10, 26:4, 26:5,
27:4, 30:8
**Young** [1] - 15:9

## Z

**Zagle** [1] - 21:12
**zero** [1] - 26:9