# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br><br>  Defendant. | Civil Action No. 02-2917 (JEI) |

_____

## DEFENDANT ALPA'S BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO DEPOSE ABSENT CLASS MEMBERS
_____

                                  Archer & Greiner
                                  A Professional Corporation
                                  One Centennial Square
                                  Haddonfield, New Jersey 08033-0968
                                  (856) 795-2121

*Pro Hac Vice:*

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Katz & Ranzman, P.C.
4530 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 659-4656

*Attorneys for Defendant Air Line Pilots Association, International*

## **Table of Contents**

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 4

I.   ALPA Is Entitled to Discovery on Individual Class Member Damages ........ 4

II.  Limited Discovery Is Appropriate to Test Mr. Salamat's Assumptions
     That Implicate Verifiable Individual Damages and Set-Offs ........................ 6

     A.  Salamat Assumes All Furloughed Pilots Will Return to
         American Airlines ............................................................................... 6

     B.  Mr. Salamat Assumes a Set-Off Percentage for Non-
         Responders Based on the Class Members Who Provided Full
         Financials ............................................................................................ 8

     C.  Mr. Salamat Assumes Unharmed Pilots Suffered Monetary
         Damages .............................................................................................. 9

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Deboles* v. *Trans World Airlines,*
    552 F.2d 1005 (3d Cir. 1977) ................................................................................ 4

*Gunter* v. *Ridgewood Energy Corp.*,
    No. 95-438, 1996 U.S. Dist. LEXIS 22298 (D.N.J. Oct. 16, 1996) .................... 6

*Kaas* v. *Pratt & Whitney*,
    No. 89-8343, 1991 WL 158943 (S.D. Fla. Mar. 18, 1991) ................................. 5

*Krueger* v. *N.Y. Tel. Co.*,
    163 F.R.D. 446 (S.D.N.Y. 1995) ......................................................................... 5

*Rosen* v. *Reckitt & Colman Inc.*,
    No. 91-1675, 1994 WL 652534 (S.D.N.Y. Nov. 17, 1994) ................................ 5

*Sala* v. *Nat'l R.R. Passenger Corp.*,
    721 F. Supp. 80 (E.D. Pa. 1989) ......................................................................... 5

*Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.*,
    289 U.S. 689 (1933) ............................................................................................ 4

*Sutton* v. *Med. Serv. Ass'n of Pa.*,
    No. 92-4787, 1994 WL 246166 (E.D. Pa. 1994) ................................................ 5

*Wal-Mart Stores, Inc.* v. *Dukes*,
    131 S.Ct. 2541 (2011) ......................................................................................... 5

Pursuant to the Court's May 3, 2013 Case Management Order, Defendant Air Line Pilots Association, International ("ALPA") respectfully submits this brief in support of its motion for leave to depose a limited number of absent class members.

## PRELIMINARY STATEMENT

At recent Status Conferences before this Court, including those of February 15 and May 3, 2013, ALPA indicated that it wanted to depose a limited number of absent class members with respect to their damages, and in particular, the set-offs of those damages calculated by plaintiffs' experts. As the Court instructed, ALPA now makes that request in writing, and further details herein the specific discovery it proposes to take and the reasons why such discovery is appropriate and required.

Certain discovery, namely depositions of a targeted sample of absent class members, is necessary to test the reliability of assumptions made by plaintiffs' experts in connection with their damage theories and calculations. As plaintiffs are using their experts' models, including the method for calculating set-offs for "actual" income earned, to support their claim for damages, ALPA is entitled to such reasonable discovery as a matter of law.

Further, the assumptions detailed in this submission affect the damages attributed to a significant number of class members, and thus carry

1

significant implications for the amount of damages to which plaintiffs are entitled. And because the accuracy of these assumptions is testable through depositions of representative members of the class, ALPA requests appropriate and narrowly tailored discovery to verify the accuracy of plaintiffs' experts' assumptions. Specifically, for the reasons detailed herein, ALPA seeks to depose 11 class members (as listed in Exhibit A) who represent the following categories of plaintiffs:  (i) current (as of end of 2011) furloughees who voluntarily deferred or declined recall by American Airlines ("American"); (ii) absent class members who did not respond to inquiries from plaintiffs' counsel and expert for their earnings while on furlough; and (iii) pilots for whom plaintiffs' expert attributes damages even though they seem not to have been harmed by the seniority integration.

## BACKGROUND

The sole issue in the current phase of this case is the amount of damages that plaintiffs may recover for the breach of ALPA's duty of fair representation found by the jury in the liability trial.  Plaintiffs, through their experts, have put forward several damage models by which they purport to address that issue, all of which include damages attributable to "lost earnings."  Plaintiffs' principal damages expert, Rikk Salamat, submitted a report, dated October 12, 2012 (the "Initial Report"), in which he estimated (using a variety of different models) damages attributable to, among other things, lost earnings due to furlough

for the time period April 2002 through June 2012 and future employment damages for the time period July 2012 through June 2026.  As defined by Mr. Salamat, furlough damages "include lost income while pilots were on furlough, interest on that income and the impact on pilots' pensions."  (Salamat Set-Off Rpt. at 1.)  For future damages, Mr. Salamat assumes that all pilots who are either employed with American or on furlough (whether voluntarily or forced) by June 2012—the last point at which he had data at the time of his Initial Report—will be employed by American going forward, and that American "will continue to look as it did in June 2012 until 2026."  (Salamat Init. Rpt. at 43.)

   As this Court previously acknowledged, "[t]here is no question that Defendants should be able to use set-offs [based on class members' actual earnings] to determine the scope of damages" and that "the set-offs are properly encompassed in the definition of lost earnings in this case."  (Jan. 9, 2013 Order ¶ 4.)  In connection with gathering information on set-off income, in late 2012, Plaintiffs' counsel sent class members a questionnaire in which they requested information about any time the individual spent furloughed from American Airlines and any income earned from other sources while on furlough.  Mr. Salamat prepared a supplemental report, dated April 30, 2013 (the "Set-Off Report"), in which he used the individual class members' responses to the questionnaire to calculate his estimate of the "set-off of furlough damages in the

3

period 2002 to 2011." (Salamat Set-Off Rpt. at 1.) Mr. Salamat did not calculate any set-off for future employment damages because set-offs, under his methodology, are only applicable to periods while a pilot was on furlough, and his models do not contemplate furlough damages in the future. (Salamat Dep. 43:2-11, May 29, 2013.) He also did not calculate any set-off for periods while class members were on active duty as American pilots. (Salamat Dep. 89-90, May 29, 2013.)

The Set-Off Report and Mr. Salamat's subsequent deposition revealed that he made a number of assumptions relating to class members' individual choices and circumstances, and related income, that may not be correct when examined against actual data. Therefore, ALPA seeks discovery from absent class members to test these assumptions.

## ARGUMENT

### I. ALPA Is Entitled to Discovery on Individual Class Member Damages

As a general matter, "[t]he remedy of discovery is as appropriate for proof of a plaintiff's damages as it is for proof of other facts essential to his case." *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.*, 289 U.S. 689, 693 (1933). And, plaintiffs are entitled only to damages that equal the amount of their injuries. *See Deboles* v. *Trans World Airlines,* 552 F.2d 1005, 1019-20 (3d Cir. 1977) ("Numerous labor law decisions limit relief only to redress of specific injuries.")

4

Therefore, ALPA is entitled to discovery necessary to verify assumptions by plaintiffs' experts that have the effect of double-counting damages, or improperly discounting setoffs based on actual income earned.

Moreover, because a class action defendant is "entitled to individualized determinations" of each class members' eligibility for damages, *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S.Ct. 2541, 2560 (2011), courts have held that certain "class-wide discovery on issues of individual damages is entirely appropriate." *Krueger* v. *N.Y. Tel. Co.*, 163 F.R.D. 446, 451 (S.D.N.Y. 1995). This class-wide discovery may include depositions of plaintiff class members— including non-named class members—as to damages, among other issues. *See, e.g.*, *Kaas* v. *Pratt & Whitney*, No. 89-8343, 1991 WL 158943, at *5 (S.D. Fla. Mar. 18, 1991); *Rosen* v. *Reckitt & Colman Inc.*, No. 91-1675, 1994 WL 652534, at *4 (S.D.N.Y. Nov. 17, 1994); *see also, e.g.*, *Sala* v. *Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80 (E.D. Pa. 1989) (finding settlement preferable to trial because "each of the . . . class members would have been subject to a possible deposition" at damages phase); *Sutton v. Med. Serv. Ass'n of Pa.*, No. 92-4787, 1994 WL 246166 (E.D. Pa. 1994) (quoting *Sala*). ALPA does not seek class-wide discovery on damage issues at this point. Instead, ALPA proposes to take depositions of a targeted sample of class members in order to test certain assumptions on which plaintiffs' experts' damage calculations are based against actual individual

5

circumstances.[1] As a class action defendant, ALPA is entitled to conduct this sort of damage discovery.

## II. Limited Discovery Is Appropriate to Test Mr. Salamat's Assumptions That Implicate Verifiable Individual Damages and Set-Offs

Plaintiffs' experts attribute damages (and set-offs) to individual class members on the basis of a number of assumptions. While ALPA will challenge many of these assumptions through the existing factual record and its own expert witnesses, there are certain assumptions, detailed below, that are verifiable only by the individual class members themselves.

### A. Salamat Assumes All Furloughed Pilots Will Return to American Airlines

In his May 29, 2013 deposition, Mr. Salamat testified that he "assume[d] [the furloughees] would all return" to American on the date they will become eligible, and that he makes that assumption class-wide, regardless of whether an individual had already declined offers of recall or had better employment alternatives. (*See* Salamat Dep. 49:11, May 29, 2013.) On the basis

---

[1] Even if ALPA sought discovery of class-wide damage issues, the proposed depositions still meet the standard for permissible discovery from absent class members. The District of New Jersey permits discovery from absent class members where (1) the information requested is relevant to the decision of common questions, (2) the discovery requests are tendered in good faith and are not unduly burdensome, (3) when the information is not available from the class representative parties, and (4) when the information is not already known to defendants. *See Gunter* v. *Ridgewood Energy Corp.*, No. 95-438, 1996 U.S. Dist. LEXIS 22298 at *7–8 (D.N.J. Oct. 16, 1996). The information that ALPA seeks is relevant to the decision of common questions, in particular, the class-wide methodology for calculating damages as set forth by plaintiffs' experts. It is also sufficiently targeted to impose little burden on the plaintiff class, and cannot otherwise be known by defendants or be obtained from any parties other than absent class members.

6

of this assumption, Mr. Salamat credits every class member who is on furlough as of the last available data point with up to 14 years of future employment damages. According to plaintiffs' damage models, if the former TWA pilots are employed by American, they accrue damages from lost income based on having lower seniority than they would have had but for ALPA's alleged breach.

This assumption is not necessarily consistent with actual events. Although Mr. Salamat concedes that an individual class member's intent to return to American would have been relevant to "whether there [were] future employment damages" for that pilot (*See* Salamat Dep. 49:11, May 29, 2013), this question was never posed to the class members. Nevertheless, individual pilot questionnaires often indicated that absent class members did *not* intend to seek reemployment. Given that, as Mr. Salamat acknowledged, plaintiffs' damage models "would overstate damages" "[t]o the extent that some pilots who decline recall may not have an intention to return to American Airlines at all" (*see* Salamat Dep. 107:15, May 29, 2013), ALPA should be allowed to question individual class members who were on voluntary furlough about their intent to return to American and any action taken in response to furlough recall notices since the questionnaires were submitted months ago. There are nearly 600 pilots who were on voluntary furlough—meaning they had already been offered recall from furlough and opted to not accept at that time—at the end of 2011. ALPA proposes to depose a sample

of these pilots to test the accuracy of Mr. Salamat's assumption that all of these similarly situated individuals would return to active employment with American.

### B. Mr. Salamat Assumes a Set-Off Percentage for Non-Responders Based on the Class Members Who Provided Full Financials

In calculating set-offs, Mr. Salamat classified the class member questionnaire responses into three categories "according to the degree of completeness for years the pilot was on furlough" (Salamat Set-Off Rpt. at 2): (i) "complete" responses; (ii) "partial" responses, which were incomplete but Mr. Salamat (or his staff) nonetheless "concluded that income could be calculated from what was submitted;" and (iii) no response, or responses which provided insufficient information such that "a pilot's set-off income could not be calculated" (the "Non-Responders").

To estimate set-off income for the Non-Responders, Mr. Salamat assumed that the set-off percentage would be comparable to that for the group of pilots with "complete" and "partial" responses. Mr. Salamat, however, admitted that "pilots may not have responded to the questionnaire [because] . . . the pilots believed their damages to have been set-off." (Salamat Set-Off Rpt. at 5.) He also conceded that he had "no basis for concluding whether those pilots completely set off their damages or didn't set them off at all or anywhere in between," and that he did nothing to "try and assess the accuracy" of the estimates used to calculate set-

8

offs for the Non-Responders.  (*See* Salamat Dep. 49:11; 77:24-78:2, May 29, 2013.)

ALPA seeks limited discovery from Non-Responders to test the validity of Mr. Salamat's set-off estimates.  The Non-Responders account for, by Salamat's calculations, at least 18 percent of the information that he required to actually calculate set-offs.

### C. Mr. Salamat Assumes Unharmed Pilots Suffered Monetary Damages

As this Court has acknowledged, more senior former-TWA pilots—who were not furloughed and suffered no detriment from the seniority merger in terms of the type of equipment and seat they could fly at American—were not harmed by the seniority integration.  *See, e.g.,* Sept. 18, 2012 Hearing Tr. 4:15-20 ("We know that a certain number [of pilots] didn't [have a loss], the ones that were above the staple point didn't."); Jan. 4, 2013 Hearing Tr. 14:18-19 ("At some point there are pilots who really didn't suffer.").  And the questionnaire responses of such pilots suggest that they would agree that they have not been harmed.  When asked in the questionnaire to describe any "employment or economic impact from the TWA-AA seniority merger" that they have suffered, pilots in that senior group do not identify compensable damages.  Instead, they point to things like a "$2000 contribution to [this] lawsuit," or an inability to fly aircraft types that were

9

reserved for legacy American pilots (e.g., 777s) under the rationale that TWA did not contribute any such equipment to the merged carrier.

Mr. Salamat, however, calculates significant damages for such pilots, which are not subject to any set-offs under his methodology, because he assumes they suffered "lifestyle" damages.  (Salamat Init. Rpt. at 44 ("A pilot who is restricted in exchanging seniority for income must therefore use it for lifestyle.").)  For example, according to Mr. Salamat's calculations, his preferred damage model, the "Salamat Model," includes an "estimated monetary value of the loss of lifestyle" of approximately $5.1 million in damages.  (Salamat Init. Rpt. at 44.)

ALPA requests leave to depose a sampling of these class members to assess if and how they could have used additional seniority to have increased their income at American Airlines.

## CONCLUSION

For the foregoing reasons, we therefore respectfully request that the Court permit ALPA to depose the 11 class members set forth in the attached list at Exhibit A.

Dated: Haddonfield, NJ
       June 12, 2013

Respectfully submitted,

Theodore V. Wells, Jr., Esquire
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

 - and -

Archer & Greiner
A Professional Corporation
One Centennial Square
Haddonfield, New Jersey 08033

By: */s/ Kerri E. Chewning*
   John C. Connell, Esquire
   Kerri E. Chewning, Esquire

*Pro Hac Vice:*

Jay Cohen, Esquire
Daniel J. Toal, Esquire
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Daniel M. Katz, Esquire
Katz & Ranzman, P.C.
4530 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 659-4656

*Attorneys for Defendant Air Line Pilots Association, International*