**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, New Jersey 08033
(856) 795-9002
Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, et al., | Civil Action No. 02-2917 (JEI) |
| Plaintiffs, | |
| v. | |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY**

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ  08033
(856) 795-9002

**GREEN JACOBSON, P.C.**
Allen Press
Joe Jacobson
7733 Forsyth Boulevard, Suite 700
Pierre Laclede Center
St. Louis, Missouri 63105
(314) 862-6800

June 14, 2013

# **TABLE OF CONTENTS**

I. PROCEDURAL AND FACTUAL BACKGROUND .......................................................1

II. ARGUMENT..........................................................................................................3

    A.    A Refund of Union Dues is an Available Remedy for a Breach of the Duty of Fair Representation...............................................................................3

        1.    A Variety of Damages are Available for DFR Violations........................3

        2.    This Case is Analogous to Attorney Conflict of Interest Cases ...............6

        3.    Restitution of Dues Has Been Recognized as an Appropriate Remedy in Non-DFR Cases .......................................................................9

    B.    Plaintiffs' Have Adequately Pleaded a Claim for a Refund of Union Dues ............................................................................................10

III. CONCLUSION.....................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Addington v. U.S. Airline Pilots Association,*
   Civil Action No. 08-1633 (D. Ariz. March 26, 2009) .......................... 9, 10

*Aguinaga v. United Food and Commercial Workers Int'l Union,*
   854 F.Supp. 757 (D. Kan. 1994) .......................................................... 4

*Air Line Pilots Ass'n v. O'Neill,*
   499 U.S. 65 (1991) .............................................................................. 4

*ATACS Corp. v. Trans World Communs.,*
   155 F.3d 659 (3d Cir. 1998) ................................................................ 1

*Bensel v. Allied Pilots Ass'n,*
   675 F.Supp.2d 493 (D.N.J. 2009) ................................................. 2, 4, 7

*Brotherhood of Railroad & S.S. Clerks, Freight Handlers, Exp. & Station Emp. v. Allen,*
   373 U.S. 113 (1963) ............................................................................ 9

*Clark v. McDonald's Corp.,*
   213 F.R.D. 198 (D.N.J. 2003) ............................................................ 10

*Communication Workers of America v. Beck,*
   487 U.S. 735 (1988) ............................................................................ 9

*Dean v. Trans World Airlines, Inc.,*
   708 F.2d 486 (9th Cir. 1983) ............................................................... 9

*Deboles v. Trans World Airlines, Inc.,*
   522 F.2d 1005 (3d Cir. 1977) .............................................................. 4

*Eckard Brandes, Inc. v. Riley,*
   338 F.3d 1082 (9th Cir. 2003) ............................................................. 5

*Evans Products Co. v. West American Ins. Co.,*
   736 F.2d 920 (3d Cir. 1984) .............................................................. 11

*Foodcomm Int'l v. Barry,*
   463 F.Supp 2d 818 (N.D. Ill. 2006) .............................................. 11, 12

*Gomez v. Gov't of Virgin Islands*,
    882 F.2d 733 (3d Cir. 1989) ............................................................................ 4

*Huber v. Taylor*,
    469 F.3d 67 (3d Cir. 2006) .............................................................................. 5

*In re DeSoto*,
    2010 Bankr.LEXIS 4497 (D.N.J. 2010) .......................................................... 7

*International Association of Machinists v. Street*,
    367 U.S. 740 (1961) ........................................................................................ 9

*International Brotherhood of Elec. Workers v. Foust*,
    442 U.S. 42 (1979) .......................................................................................... 5

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946) ........................................................................................ 5

*Smith Transp., Inc. v. Truck & Bus Wash, Inc.*,
    2007 U.S. Dist. LEXIS 30508 (W.D. Pa., April 25, 2007) ........................... 11

*Steele v. Louisville & Nashville R. Co.*,
    323 U.S. 192 (1944) ........................................................................................ 5

*Vaca v. Sipes*,
    386 U.S. 171 (1967) ........................................................................................ 3

**STATE CASES**

*In re Simon*,
    206 N.J. 306 (2011) ........................................................................................ 7

*Pessoni v. Rabkin*,
    220 A.D.2d 732 (1995) ................................................................................... 8

*Rice v. Perl*,
    320 N.W.2d 407 (Minn. 1982) ........................................................................ 8

*State of Nebraska v. Shapiro*,
    665 N.W.2d 615 (Neb. 2003) .......................................................................... 8

*White v. Roundtree Transport, Inc.*,
    386 So. 2d 1287 (Fla. App. 1980) ................................................................... 8

Case 1:02-cv-02917-JEI   Document 554-1   Filed 06/14/13   Page 5 of 18 PageID: 17155

**RULES**

F.R.C.P. 8 .................................................................................................................. 10, 11, 13

F.R.C.P. 54(c) .................................................................................................................... 11

**OTHER AUTHORITIES**

*Restatement (Third) of the Law Governing Lawyers*, §37 .................................................. 8

Plaintiffs submit this Brief in support of their Motion to Compel Discovery from ALPA relating to the union dues collected by ALPA from the former TWA Pilots for the period January 9, 2001 through April 3, 2002, inclusive. The motion is filed with leave of Court following the parties' May 30, 2013 telephonic discovery conference. *See* Docket No. 551.

## I. PROCEDURAL AND FACTUAL BACKGROUND

One element of damages Plaintiffs may present at the damages trial is a refund of the union dues or agency fees the TWA Pilots paid to ALPA from January 9, 2001, when the TWA/American transaction was announced, through April 3, 2002, when ALPA ceased to represent the former TWA Pilots.

The evidence in the liability trial established that ALPA's breach of duty involved not one or two isolated events but rather ongoing misconduct that spanned this 15-month period. Although charged with the fiduciary duty of fair representation, including a duty of loyalty to its members, the evidence showed that ALPA sacrificed the interests of the TWA Pilots to pursue its goal of having the American Airline pilots join ALPA. ALPA's breach came as the TWA Pilots were struggling to preserve reasonable seniority rights during their seniority integration negotiations with the American Pilots. This Court recognizes ALPA's conflict and its impact on the TWA Pilots. *See, e.g.,* Docket No. 480, Motion for JNOV Hearing Tr., May 4, 2012, pp. 25-26 ("I'm going to deny the motion. I

believe that there was clearly evidence that there was a conflict of interest, and I think there was evidence from which a jury could infer that ALPA was not taking the kinds of actions or even considering fully the kinds of actions which might have put pressure on American or the American pilots…. At every point where the union was asked to take let's call it a hostile position toward American or the American pilots for the effort to get TWA a better deal, [ALPA] rejected it at every turn"). *See also Bensel v. Allied Pilots Ass'n,* 675 F.Supp.2d 493, 502 (D.N.J. 2009) (summary judgment opinion).

During damages phase discovery, Plaintiffs served document requests and interrogatories upon ALPA to ascertain the union dues ALPA collected from each class member from January 1, 2001 through April 3, 2002. *See* Declaration of Nicole M. Acchione, Ex. A (Plaintiffs' Fourth Request for Production of Documents, served March 18, 2013) and B (Plaintiffs' First Set of Damage Interrogatories, served March 18, 2013).[1]

ALPA objected to the production of any discovery relating to union dues, claiming that a refund of union dues is "not recoverable in this action." *See*

---

[1] Plaintiffs first requested information from ALPA about its collection of union dues from the TWA Pilots in November 2011. Plaintiffs' First Set of Document Requests on the Issue of Damages requested "Documents reflecting all union dues paid by TWA airline pilots to ALPA from January 1, 2001 through April 2002. Acchione Decl., Ex. F, No. 10. ALPA objected to this document request on the ground that it was "not reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs did not seek the Court's assistance with respect to this earlier discovery dispute.

2

Acchione Decl., Ex. C (ALPA's Responses and Objections to Plaintiffs' Fourth Request for Production of Documents) and D (ALPA's Responses and Objections to Plaintiffs' First Set of Damage Interrogatories). ALPA also objected on the basis that Plaintiffs were barred from raising a claim for dues restitution since it was not specifically pleaded in the Second Amended Complaint. *See* Acchione Decl., Ex. E (ALPA's May 29, 2013 Letter to Court).

In response to Plaintiff's written request, the Court held a telephonic discovery conference on May 30, 2013 and authorized the filing of this motion.

As detailed below, a refund of the union dues is a legally-recognized element of damages for a breach of the duty of fair representation. Furthermore, contrary to ALPA's assertions, Plaintiffs sufficiently pleaded that they would be seeking a refund of their union dues from ALPA.

## II. ARGUMENT

### A. A Refund of Union Dues is an Available Remedy for a Breach of the Duty of Fair Representation.

#### 1. A Variety of Damages are Available for DFR Violations.

The appropriate remedy, or remedies, for a breach of a union's duty of fair representation varies with the circumstances of the breach. *Vaca v. Sipes*, 386 U.S. 171, 195 (1967). As a general matter, courts will fashion a remedy sufficient to make the union members whole. Courts fashioning a "make whole" remedy in the context of a duty of fair representation breach have awarded compensatory

3

damages flowing from the union's misconduct. *Aguinaga v. United Food and Commercial Workers Int'l Union*, 854 F.Supp. 757, 761 (D. Kan. 1994) ("The purpose of an award of backpay (including fringe benefits) is to make employees whole for the losses suffered.").

Courts analogize a union's breach of its duty of fair representation to a breach of a fiduciary duty. "The duty of fair representation is thus akin to the duty owed by other fiduciaries to their beneficiaries. For example, some Members of the Court have analogized the duty a union owes to the employees it represents to the duty a trustee owes to trust beneficiaries. Others have likened the relationship between union and employee to that between attorney and client." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 74 (1991) (citations omitted)). *See also Gomez v. Gov't of Virgin Islands*, 882 F.2d 733, 738 (3d Cir. 1989) (DFR breach analogous to breach of fiduciary duty); *Bensel*, 675 F.Supp.2d at 502. Indeed, there are several cases in which the Third Circuit refers to the "fiduciary duty of fair representation." *See, e.g., Deboles v. Trans World Airlines, Inc.*, 522 F.2d 1005, 1018 (3d Cir. 1977).

Courts often require a fiduciary who has breached his duty to disgorge any fees or other things of value received in his fiduciary capacity.

> The Restatement supports the district court's award of disgorgement as a remedy for breach of the duty of loyalty. It provides, "if an agent receives anything as a result of his violation of a duty of loyalty to the

4

principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal." *Restatement (Second) of Agency*, § 403. *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086-87 (9th Cir. 2003); *accord Huber v. Taylor*, 469 F.3d 67, 78-79 (3d Cir. 2006) (need not show actual damages to obtain disgorgement in breach of fiduciary duty case).

Moreover, district courts possess "all the inherent equitable powers" available for the proper and complete exercise of their federal question jurisdiction. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). The Supreme Court, interpreting the Railway Labor Act, which is silent on the issue of disgorgement, held:

> We conclude that the duty which the statute imposes on a union representative of a craft to represent the interests of all its members stands on no different footing and that the statute contemplates resort to the usual judicial remedies of injunction and award of damages when appropriate for breach of that duty.

*Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 208 (1944). The Supreme Court "emphasized that relief in each case should be fashioned to make the injured employee whole … damages and equitable relief could be awarded when necessary to ensure full compensation." *International Brotherhood of Elec. Workers v. Foust*, 442 U.S. 42, 48-49 (1979) (citations omitted). The Act excludes only punitive damages.

Here, ALPA's desire to acquire the American pilots as members, a well-documented desire admitted to at trial by former ALPA President Duane Woerth,

5

created a conflict of interest that infected the entire seniority integration process. Seniority is of critical importance to a pilot's career. Clearly a union's job includes working to protect its members' seniority. Such protection is an important part of what the members' dues is buying. ALPA's conflict of interest, however, caused it to not work for the protection of the TWA Pilots' seniority as it should have. Instead, ALPA "took a dive," and largely abandoned its TWA Pilot members to curry favor with the American pilots. Since ALPA took a dive rather fight the fight, by rights it should return the dues it was paid in anticipation of it fighting for the Plaintiffs' seniority rights.

    2.    <u>This Case is Analogous to Attorney Conflict of Interest Cases</u>

This case is also analogous to cases where an attorney collects legal fees from a client despite having a disqualifying conflict of interest or engaging in other violations of the ethical rules. This Court has already made this analogy, likening the legal standard to which ALPA is held to the standards applicable to lawyers:

> Lawyers have an ethical duty to inform their clients of any possible or actual conflicts of interest. A lawyer breaches his ethical duty to his client by failing to disclose conflicts of interest regardless of the legal matter: "a possible effect on the quality of the attorney's services on behalf of the client … may be a diminution in the vigor of his representation …. The fact that a deleterious result cannot be identified subsequently as having actually occurred does not refute the existence of the likelihood of its occurrence, depending upon the facts and circumstances, at the time the decision was made to represent the client without having obtained his consent." ….

> The harm resulting from honest services fraud is similar to the harm in lawyer-client conflict of interest cases and the harm alleged by the Plaintiffs here: the harm caused by a breach of the duty of undivided loyalty.

*Bensel,* 675 F. Supp. 2d at 502 (quoting *International Business Machines Corp. v. Levin,* 579 F.2d 271, 280 (3d Cir. 1978).

The majority of courts hold that an attorney may not recover fees for services rendered during a conflict of interest in violation of the Rules of Professional Conduct. For instance, in *In re Simon,* 206 N.J. 306 (2011), the Court held:

> All methods of collecting a fee, including "the right to sue in a court of law on a contract basis," "are subject to an overriding caveat: an attorney's violation of the [RPCs] in connection with the representation of the client from whom the fee is sought may jeopardize that attorney's right to collect fees for services rendered.'"

*In re Simon,* 206 N.J. at 317, citing Kevin H. Michels, *New Jersey Attorney Ethics: The Law of New Jersey Lawyering,* §37:1-1 (2011) and quoting *Straubinger v. Schmitt,* 348 N.J. Super. 494, 500 (App. Div. 2002). "Thus, the fee-collection process is governed by the conflict of interest rules." *Id.* In *In re DeSoto,* 2010 Bankr.LEXIS 4497 (D.N.J. 2010), while attempting to resolve a motion by the debtor to disgorge attorney fees paid to her former counsel due to a conflict of interest, the Court reiterated age-old case law holding that compensation for services rendered "necessarily implies loyal and disinterested service," and that once a conflict of interest has been shown, fees may not be awarded. *DeSoto,* 2010

7

Bank.LEXIS at *13, quoting *Woods v. City National Bank & Trust Co.*, 312 U.S. 262 (1941), and citing *In re Bernheim*, 1988 U.S.Dist. LEXIS 15494, *11-13 (D.N.J. Jan. 19, 1988).

Other courts have also held that a lawyer may not collect a fee when a conflict of interest or other ethical violation exists. *See, e.g., State of Nebraska v. Shapiro*, 665 N.W.2d 615, 625 (Neb. 2003) (once a conflict of interest or other ethical violation has been established, the attorney is prohibited from collecting fees for his or her services); *Pessoni v. Rabkin*, 220 A.D.2d 732 (1995) (lawyer whose representation of multiple parties created conflict of interest not entitled to compensation); *White v. Roundtree Transport, Inc.*, 386 So. 2d 1287, 1289 (Fla. App. 1980) (right to collect attorney's fee terminates once attorney should have realized that he could not ethically represent the client); *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982).

Finally, the Restatement (Third) of the Law Governing Lawyers states:

> A lawyer engaging in a clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.

*Restatement (Third) of the Law Governing Lawyers*, § 37. If one considers these factors and applies them to ALPA's conduct, a forfeiture – or disgorgement – of all

of ALPA's union fees from the TWA Pilots during the period that it was operating under a conflict is appropriate.

      3.    <u>Restitution of Dues Has Been Recognized as Appropriate Remedy in Non-DFR Cases.</u>

Restitution of union dues is recognized as an appropriate remedy against a union in other contexts. *See, e.g., International Association of Machinists v. Street*, 367 U.S. 740, 775 (1961) (restitution appropriate where dues were spent over objection for political purposes); *Brotherhood of Railroad & S.S. Clerks, Freight Handlers, Exp. & Station Emp. v. Allen*, 373 U.S. 113, 120-21 (1963) (appropriate remedy for dissenting employees is restitution of sum already exacted and expended by union over employees' objection); *Dean v. Trans World Airlines, Inc.*, 708 F.2d 486, 488 (9th Cir. 1983) ("it would have been appropriate for Dean to seek judicial relief by way of ... a rebate" of dues improperly spent). *See also Communication Workers of America v. Beck*, 487 U.S. 735 (1988). These cases demonstrate that, under appropriate circumstances, a refund of union dues is an available remedy. Plaintiffs respectfully submit that the circumstances of this case present an appropriate case for such disgorgement in addition to damages for the pilots' wage losses.

While there is no duty of fair representation case directly on point, the one court to consider the issue found that disgorgement could be an appropriate remedy, although denying that relief under the facts of that case. *Addington v. U.S.*

9

*Airline Pilots Association,* Civil Action No. 08-1633 (D. Ariz. March 26, 2009) ("refund of union dues may be appropriate and consistent with these principles when the very collection or expenditure of dues is unlawful"). *See* Acchione Decl., Ex. G.  The *Addington* court denied disgorgement of the union dues paid because those plaintiffs, if successful in their claims, could be made whole by a combination of compensatory damages in the form of back pay and having their seniority restored. Thus, the *Addington* court concluded a disgorgement of union dues would overcompensate the plaintiffs, going "beyond any make-whole remedy that the alleged harm requires," and thus would be punitive. Here, of course, the TWA Pilots cannot have their seniority restored. The disgorgement of union dues, in addition to the TWA Pilots' lost wage damages, would therefore not be "punitive," as feared by the *Addington* Court.

      **B.**    **Plaintiffs' Have Adequately Pleaded a Claim for a Refund of Union Dues**

Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief."  F.R.C.P. 8. Under the notice pleading standard, a complaint need only state a general demand for damages and need not specify the precise nature and type of damages. *See, e.g., Clark v. McDonald's Corp.*, 213 F.R.D. 198, 231 (D.N.J. 2003) (upholding validity of complaint that "prays

*Airline Pilots Association,* Civil Action No. 08-1633 (D. Ariz. March 26, 2009) ("refund of union dues may be appropriate and consistent with these principles when the very collection or expenditure of dues is unlawful"). *See* Acchione Decl., Ex. G.  The *Addington* court denied disgorgement of the union dues paid because those plaintiffs, if successful in their claims, could be made whole by a combination of compensatory damages in the form of back pay and having their seniority restored. Thus, the *Addington* court concluded a disgorgement of union dues would overcompensate the plaintiffs, going "beyond any make-whole remedy that the alleged harm requires," and thus would be punitive. Here, of course, the TWA Pilots cannot have their seniority restored. The disgorgement of union dues, in addition to the TWA Pilots' lost wage damages, would therefore not be "punitive," as feared by the *Addington* Court.

    **B.**    **Plaintiffs' Have Adequately Pleaded a Claim for a Refund of Union Dues**

Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief."  F.R.C.P. 8. Under the notice pleading standard, a complaint need only state a general demand for damages and need not specify the precise nature and type of damages. *See, e.g., Clark v. McDonald's Corp.*, 213 F.R.D. 198, 231 (D.N.J. 2003) (upholding validity of complaint that "prays

generally for 'compensatory damages' under state law while leaving unsaid the nature of the injuries for which compensation is sought" and noting that damages categories should be disclosed in discovery, not at the pleading stage).

Plaintiffs are not limited to just the specific damages categories listed in their Complaint. *See* F.R.C.P. 54(c) (a judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); *Evans Products Co. v. West American Ins. Co.*, 736 F.2d 920, 923 (3d Cir. 1984) ("a court is not limited to granting relief to a party solely on the basis of theories of recovery set forth in the pleadings"); *Foodcomm Int'l v. Barry*, 463 F.Supp 2d 818, 833-34 (N.D. Ill. 2006) (plaintiffs could recover compensatory damages for lost profits even though not specifically demanded in complaint; prayer for "any further relief" was sufficient under Rule 8).

While restitution is often an equitable cause of action, courts routinely hold that restitution can be a component of monetary damages. *See, e.g., ATACS Corp. v. Trans World Communs.*, 155 F.3d 659, 669 (3d Cir. 1998) (restitution is a theory of damages on a breach of contract claim); *Smith Transp., Inc. v. Truck & Bus Wash, Inc.*, 2007 U.S. Dist. LEXIS 30508, at *5 (W.D. Pa., April 25, 2007) (same). Under Rule 8, Plaintiffs are perfectly within their rights to pursue multiple theories of damages. Restitution is but one avenue by which Plaintiffs may recover damages for Defendant's breach of its fiduciary duty of fair representation. There

11

is no case law stating that restitution must be plead with specificity, either as a component of monetary damages or otherwise. ALPA bears the burden of showing that it will somehow be prejudiced by allowing Plaintiffs to seek discovery to support a possible theory of damages based on restitution or disgorgement. *Foodcomm*, 463 F. Supp. 2d at 833-34.

Plaintiffs' Second Amended Restated Complaint asserts a claim for breach of the duty of fair representation against ALPA. In the Complaint, Plaintiffs specifically allege that ALPA owed the Class a duty of fair representation and collected $3 million in dues from the TWA Pilots each year. Paragraph 95 of the Complaint states:

> As the collective bargaining agent of the Class, ALPA owed a duty of fair representation to the Class pursuant to the obligations imposed upon it by the RLA and the fiduciary duty to represent the Class in good faith until at least April 3, 2002 when the NMB declared APA to be the certified collecting bargaining agent for all American and TWA-LLC pilots including the Class of former TWA pilots. Until that time, ALPA remained the certified representative for the TWA Pilots *and continued to collect dues from the pilots of approximately $3,000,000.00 per year*.

Docket No. 45 (Second Amended Complaint, ¶ 95) (emphasis added).

For the injuries sustained as a result of this breach, Plaintiffs demand "compensatory damages against …. ALPA together with pre and post judgment interest," as well as "such other relief as the Court deems equitable and just." *Id.* at ¶¶ 6, 10. This claim for compensatory damages is broad enough to encompass a

claim for the refund of union dues. Plaintiffs have satisfied the pleading requirements of F.R.C.P. 8 to bring disgorgement of union fees into the case.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs have adequately pleaded and are entitled to pursue all of their claims for damages, including their claim for the refund of the union dues they paid to ALPA while ALPA was abandoning Plaintiffs' interests due to its conflict of interest. Plaintiffs' Motion to Compel should therefore be granted and ALPA required to respond to Plaintiffs' discovery requests related to the union dues ALPA collected from the TWA Pilots from January 9, 2001 through April 3, 2002.

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

_s/ Lisa J. Rodriguez_
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ  08033
(856) 795-9002

**GREEN JACOBSON, P.C.**
Allen Press
Joe Jacobson
7733 Forsyth Boulevard, Suite 700
Pierre Laclede Center
St. Louis, Missouri 63105
(314) 862-6800