# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, et al., <br><br>         Plaintiffs, <br><br>         v. <br><br> AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, <br><br><br>         Defendant. | Civil Action No. 02-2917 (JEI) |

_____

## DEFENDANT ALPA'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

_____

Archer & Greiner
A Professional Corporation
One Centennial Square
Haddonfield, New Jersey 08033-0968
(856) 795-2121

*Pro Hac Vice:*

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Katz & Ranzman, P.C.
4530 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 659-4656

*Attorneys for Defendant Air Line Pilots Association, International*

## Table of Contents

**Page**

PRELIMINARY STATEMENT.............................................................................. 1

BACKGROUND ................................................................................................. 4

ARGUMENT...................................................................................................... 8

I.  Plaintiffs' Discovery Requests Should Be Precluded Because They Constitute a Belated Attempt to Amend Plaintiffs' Pleadings ..................... 9

II. Plaintiffs Should Be Precluded From Amending Their Claims to Justify the Discovery Requests......................................................................................11

   A.  Amendment Should Not Be Allowed Because it Would Improperly Prejudice ALPA ......................................................................................11

   B.  Amendment Would Be Futile Because Restitution is Not An Available Remedy For Breach of the Duty of Fair Representation ...........................12

      1.  As a Matter of Well-Established Federal Law, Monetary Damages Against a Union Must Be Compensatory ...............................................12

      2.  Plaintiffs' Analogies to State Law Fiduciary Duties Are  Irrelevant to Availability of Restitution in the Union Context ....................................18

CONCLUSION .................................................................................................19

**Table of Authorities**

**Page(s)**

**Cases**

*Abood v. Detroit Bd. of Educ.*,
    431 U.S. 209 (1977)................................................................................11

*Addington v. US Airline Pilots Ass'n*,
    No. CV-081633, 08-1728, 2009 WL 856334 (D. Ariz. Mar. 26, 2009).....passim

*Addington v. US Airline Pilots Ass'n*,
    2008 WL 5581945 (D. Ariz. Oct. 28, 2008), ECF No. 86 ...............................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................2, 9

*Bowen v. USPS*,
    459 U.S. 212 (1983)................................................................................12

*Bhd. of Ry. & Steamship Clerks, Freight Handlers, Express & Station Employees,*
    *et. al. v. Allen*,
    373 U.S. 113 (1963)................................................................................17

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1990)............................................................................18, 19

*Chicago Teachers Union v. Hudson*,
    475 U.S. 292 (1986)................................................................................17

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
    252 F.3d 267 (3d Cir. 2001)...............................................................3, 11, 12

*David Scharf and Samuel Offen*,
    244 N.L.R.B. 905 (1979) .........................................................................17

*Dean v. Trans World Airlines*,
    708 F.2d 486 (9th Cir. 1983).....................................................................17

*Deboles v. Trans World Airlines*,
   552 F.2d 1005 (3d Cir. 1977) ............................................................................13

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ........................................................................................15

*NLRB v. Haberman Constr. Co.*,
   641 F.2d 351 (5th Cir. 1981) ...........................................................................13

*Int'l Bhd. of Elec. Workers v. Foust*,
   442 U.S. 42 (1979) ....................................................................................passim

*Int'l Assoc. of Machinists v. Street*,
   367 U.S. 740 (1961) ...................................................................................16, 17

*Lorenz v. CSX Corp.*,
   1 F.3d 1406 (3d Cir. 1993) .................................................................................8

*McCurdy v. Wedgewood Capital Mgmt. Co.*,
   No. Civ. A 97-4304, 1998 WL 964185 (E.D. Pa. Nov. 16, 1998) .....................8

*McKenna v. Pac. Rail Serv.*,
   32 F.3d 820 (3d Cir. 1994) ...............................................................................10

*McLaughlin v. Copeland*,
   455 F. Supp. 749 (D. Del. 1978), *aff'd*, 595 F.2d 1213 (3d Cir. 1979) ..............8

*Shane v. Fauver*,
   213 F.3d 113 (3d Cir. 2000) ...............................................................................9

*Umland v. PLANCO Fin. Servs.*,
   542 F.3d 59 (3d Cir. 2008) ...............................................................................10

*Violas v. GMC*,
   No. 95-0487, 1997 U.S. Dist. LEXIS 16247 (D.N.J. Jan. 29, 1997) ................13

**Statutes**

45 U.S.C. § 152 ...................................................................................................18

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)............................................................................8

Fed. R. Civ. P. 8.........................................................................2, 9, 10

Defendant Air Line Pilots' Association, International ("ALPA") respectfully submits this brief in opposition to plaintiffs' motion to compel discovery from ALPA relating to union dues paid by the former Trans World Airlines ("TWA") pilots.

## PRELIMINARY STATEMENT

Plaintiffs in this action are approximately 2,300 former TWA pilots who claim that, due to a purported conflict of interest, their union, ALPA, failed to "vigorously" represent them following American Airlines' acquisition of certain TWA assets in 2001.  As a result, plaintiffs contend that they were disadvantaged in negotiations over an integrated seniority list.  In more than a decade of litigation, nearly two years of which have been dedicated to discovery on plaintiffs' damage claims, plaintiffs have sought, as their remedy for this purported breach, compensatory damages based on the seniority they supposedly would have had but for ALPA's breach of its duty of fair representation.  The discovery sought and developed to date—including plaintiffs' experts' reports and testimony—has related exclusively to that theory of damages.

On March 18, 2013, however, plaintiffs served new discovery requests that sought information pertaining to "the amount of union dues or agency fees paid to ALPA by each member of the class of TWA pilots."  ALPA objected to the requests as "not reasonably calculated to lead to the discovery of admissible

evidence," given that plaintiffs had "not advanced any allegations, claims for damages, or damage theories that implicate the requested information." (Acchione Decl. Exs. C, D.)  In response, plaintiffs revealed for the first time, more than 10 years after filing their complaint in this action, that they now intend to seek "restitution of union dues" as a remedy in this action.  Plaintiffs' motion to compel this discovery from ALPA should be denied for each of the following independent reasons:

*First,* the discovery sought is irrelevant because it relates only to an unpleaded claim for damages.  While plaintiffs' submission bears the title of "Motion to Compel Discovery," in actuality it is a thinly veiled effort to get the Court to endorse plaintiffs' pursuit of unpleaded damages.  The statements in the Complaint on which plaintiffs rely to argue that they "have adequately pleaded a claim for refund of union dues" do not meet the basic pleading standard required by Rule 8.  Nothing in the Complaint reasonably could be construed as providing ALPA the requisite "fair notice" of plaintiffs' restitution claim and the "grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, a claim for restitution of dues has not been adequately pleaded.

*Second,* plaintiffs should not be allowed to amend their complaint to belatedly add a claim for restitution because such amendment would prejudice ALPA.  ALPA has spent significant time and resources conducting and developing

2

discovery based on plaintiffs' *existing* damage theories and claims.  ALPA's

factual defense against a claim for restitution would rely on a different set of facts

and additional expert testimony, and therefore would "result in additional

discovery, cost and preparation" on ALPA's part.  *Cureton v. Nat'l Collegiate*

*Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Such burden constitutes

substantial or undue prejudice warranting denial of leave to amend.  *Id.*

   *Third,* and most significantly, the requested discovery will never be

relevant—and amendment is therefore futile—because, as a matter of law,

restitution of union dues is not an available remedy for breach of a union's duty of

fair representation based on an alleged conflict of interest.  Federal law dictates

that monetary damages for a breach of the duty of fair representation must be

compensatory.  *See, e.g., Int'l Bhd. of Elec. Workers v. Foust,* 442 U.S. 42 (1979).

Any monetary damages beyond what is necessary to compensate the plaintiffs are

inherently punitive, and therefore unavailable in any action against a union.  *Id.*  In

*Addington v. US Airline Pilots Association*, Nos. CV 08-1633-PHX-NVW, CV08-

1728-PHX-NVW, 2009 WL 856334, at *2 (D. Ariz. Mar. 26, 2009), the only case

directly on point, the court therefore found that the efforts of a group of pilots to

seek restitution of union dues and fees as remedy for their union's alleged breach

of the duty of fair representation—premised, as here, on a claimed conflict of

interest—was clearly impermissible because "it is nothing short of punitive to

3

extract monetary relief from the union beyond whatever compensatory damages may be provable at trial."  The same holds true here.

## BACKGROUND

On March 18, 2013, plaintiffs served ALPA with their Fourth Request for Production of Documents on the Issue of Damages and their First Set of Damage Interrogatories (the "Discovery Requests").  Both requested discovery on the "amount of union dues or agency fees paid to ALPA by each member of the class of TWA pilots during the period January 1, 2001 through April 30, 2002, inclusive."[1]  ALPA objected to the Discovery Requests because they sought "information that is not reasonably calculated to lead to the discovery of admissible evidence, as plaintiffs have not advanced any allegations, claims for damages, or damage theories that implicate the requested information."  (Acchione Decl. Exs. C, D.)  In response, plaintiffs announced for the first time, after more than a decade of litigation, that they intend to seek "restitution of union dues" as a remedy in this action.   (Declaration of Daniel J. Toal, dated July 1, 2013 ("Toal Declaration"), Ex. A.)

Plaintiffs' Second Amended Restated Complaint (the "Complaint"), dated January 27, 2003, is devoid of any mention of a claim for restitution of union

---

[1] Plaintiffs later clarified that the end date for the Discovery Requests should have been April 3, 2002.

dues, or any allegations that would support such a damage claim.[2]  The Complaint alleges that ALPA breached its duty of fair representation to the TWA pilots by failing to represent their interests vigorously in the seniority integration negotiations that arose out of the transaction between American Airlines and TWA.  Specifically, plaintiffs contended that ALPA's desire to become the certified bargaining representative of the American Airlines pilots created a conflict of interest that adversely affected the TWA pilots' placement on the merged seniority list.  The only allegation in the Complaint bearing on union dues is that ALPA wished to represent the American pilots because they "numbered over 11,000 and paid annual union dues of approximately $30,000,000," whereas ALPA "collect[ed] dues from the [TWA] pilots of approximately $3,000,000 per year."  (Compl. ¶¶ 70, 95, 103.)  Plaintiffs did not allege that there was something unlawful about ALPA's collection of dues from the TWA pilots, nor did they allege that ALPA spent any portion of the dues improperly.

Plaintiffs now claim that "[s]ince ALPA took a dive rather [than] fight the fight [to protect plaintiffs' seniority rights], by rights it should return the dues it was paid in anticipation of it fighting for Plaintiffs' seniority rights," although they tellingly cite no authority supporting the existence of this supposed right.  (Pls.' Br.

---

[2] The Complaint specifies a litany of other remedies sought, including reinstatement of benefits, rehiring, seniority benefits, renegotiation of integration, compensatory damages, punitive damages, costs, and attorneys' fees (see Compl. Demand ¶¶ 1-10).  We attach the relevant pages of the Complaint as Exhibit B to the Toal Declaration because these pages are missing from the version on the docket.

at 6.)  Plaintiffs' argument also ignores the reality that ALPA membership dues
serve many purposes and fund various activities and services that support ALPA's
members and represented employees.  Indeed, the plaintiff class of former TWA
pilots concededly made use of ALPA's broad slate of programs and services in
connection with American Airlines transaction, including, among many other
examples:

- ALPA National attorney Clay Warner provided the TWA Master Executive Council ("TWA MEC") with assistance negotiating contracts for the MEC's chosen merger advisors (Trial Tr. Vol. 15 at 21:12-22:21);

- ALPA assisted the TWA MEC in collecting special merger assessments to fund unanticipated costs (*see* D-008);

- At the TWA MEC's request, ALPA's Financial Analysis department prepared a comparison of proposed collective bargaining agreements (D-137);

- ALPA awarded the TWA MEC funds from its Major Contingency Fund to sustain operations through seniority negotiations (D-066);

- In April 2002, ALPA represented the TWA pilots in a claim before the System Board of Adjustment alleging that TWA LLC improperly closed the Los Angeles, New York, and San Francisco domiciles (*see* Compl. ¶¶ 87-89).

ALPA funded its work on behalf of the TWA pilots primarily through dues
collected and pooled from its *entire* union membership, just as ALPA funds all of
its operations.

Because issues relating to union dues and expenditures have been irrelevant to this case to date, they have not been a part of the discovery efforts.[3] Instead, ALPA has expended significant time and money conducting discovery on the damage claims and theories that plaintiffs actually asserted, including, over the past ten months alone, depositions of seventeen witnesses on the issue of damages and reports of five expert witnesses.

Faced with ALPA's continuing objections to the Discovery Requests, plaintiffs sought intervention of the court by letter dated May 23, 2013. During the May 30, 2013 telephonic conference with the Court, plaintiffs' counsel revealed their true motivation for suddenly pursuing the disputed discovery. Even under plaintiffs' methodologically flawed "main" damage theory, a significant percentage of the class would not be entitled to any damages because they "wouldn't have fared any better" under the seniority lists that plaintiffs' experts claim would have been negotiated "but for" a breach by ALPA.[4]  (*See* Conf. Tr. May 30, 2013 at 7:7-7:10.)  Plaintiffs' counsel view restitution of union dues as a way to get *all* members of the class—whether harmed by the breach or not—"some

---

[3] Plaintiffs first sought information on dues payments made by the class to ALPA in November 2011—*prior to* ALPA's pursuit and development of all of this damage discovery—but failed to further pursue the discovery after ALPA objected that the request was "not reasonably calculated to lead to the discovery of admissible evidence."  (Pls.' Br. at 2 n.1.)  Had they done so, this issue could have been resolved earlier.  Instead, plaintiffs sat on the issue for more than a year.

[4] For example, the "but-for" seniority list advanced by plaintiffs' primary damages expert—the Salamat Model or DMODEL—does not attribute any damages to more than 650 members of the approximately 2,300-person class.

level of compensation." (*Id.* at 7:7-7:16.)  Plaintiffs evidently filed the present motion in furtherance of that improper objective.

## ARGUMENT

The Federal Rules of Civil Procedure dictate that the scope of discovery is limited to information that is "relevant to any party's claim or defense," meaning that it must "appear[ ] reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Because the information sought in plaintiffs' Discovery Requests relates only to an *unpleaded* and legally infirm claim (*see infra* Section I), it is irrelevant as a matter of law.  *See McCurdy v. Wedgewood Capital Mgmt. Co.*, No. Civ. A 97-4304, 1998 WL 964185, at *11 (E.D. Pa. Nov. 16, 1998) (denying motion to compel material "relevant only to an unpleaded claim"); *McLaughlin v. Copeland*, 455 F. Supp. 749, 753 (D. Del. 1978) (a plaintiff "is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim he has not made"), *aff'd*, 595 F.2d 1213 (3d Cir. 1979).

Nor should plaintiffs be permitted to amend their Complaint now in a belated effort to make the discovery sought "relevant" to this case.  First, ALPA unquestionably would be prejudiced by such amendment.  *See Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir. 1993) ("prejudice to the [non-amending] party is the touchstone for the denial of an amendment") (quoting *Cornell & Co. v.*

8

*Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

Second, any such amendment would be futile because, as a matter of law,

restitution of union dues is not an available remedy for a breach of the duty of fair

representation premised on a conflict of interest. *See, e.g., Shane v. Fauver,* 213

F.3d 113, 115 (3d Cir. 2000) (leave to amend is properly denied where amendment

would be futile).

## I.   Plaintiffs' Discovery Requests Should Be Precluded Because They Constitute a Belated Attempt to Amend Plaintiffs' Pleadings

The Complaint, as well as plaintiffs' conduct over more than a decade

of litigation, provided no indication that plaintiffs would seek restitution of union

dues or upon what allegations such remedy would be based.  Plaintiffs argue that

they "have satisfied the pleading requirements of [Federal Rule of Civil Procedure]

8 to bring disgorgement of union fees into the case" because:  (i) their prayers for

"compensatory damages against . . . ALPA" and "such other relief as the Court

deems equitable and just" are "broad enough to encompass a claim for the refund

of union dues"; and (ii) the Complaint alleges that ALPA "continued to collect

dues from the [TWA] pilots of approximately $3,000,000 per year" and thus

provided notice of a possible claim for restitution.  (Pls. Br. at 12-13.)  But Rule 8

requires more.

As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 557 (2007), "the threshold requirement of Rule 8(a)(2) [is] that the 'plain

statement' [of the claim] possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Plaintiffs have not met this requirement.  The Complaint's general plea for "compensatory damages" and "such other relief as the Court deems equitable and just" is not enough to overcome the omission of a specific claim for dues restitution given the inclusion of no fewer than nine specific forms of other relief sought, including compensatory damages, punitive damages (against non-ALPA defendants), attorneys' fees, rehiring, and renegotiation of seniority integration. *See McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 832 (3d Cir. 1994) ("in the context of the pleadings," plaintiffs gave no notice of front pay damage claim where requested relief was "to offer them employment and to pay back wages, compensatory damages, punitive damages and attorneys' fees").

Additionally, the Complaint alleges nothing more on the issue of union dues than the annual amount ALPA collected from the TWA pilots.  This does not remotely give ALPA "fair notice" that plaintiffs sought restitution of union dues.  *See Twombly* at 555.  As a result, plaintiffs have not sufficiently pleaded any claim for restitution and their request for discovery related to that claim should be denied.  *See id.*; *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 69 (3d Cir. 2008) (claim is not pleaded where complaint "leaves a reader to guess" as to its bases and lacks sufficient facts "to raise a right to relief above the speculative level").

## II.   Plaintiffs Should Be Precluded From Amending <u>Their Claims to Justify the Discovery Requests</u>

### A.   Amendment Should Not Be Allowed Because it Would Improperly Prejudice ALPA

Substantial or undue prejudice to ALPA "is a sufficient ground for denial of leave to amend."  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  In assessing "the hardship to the defendants if the amendment were permitted," this Circuit has specifically "considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."  *Id.*

Such hardship is evident here because the calculation of restitutionary damages requires much more than mere proof of the sum of dues paid to ALPA during the specified period—the subject of the Discovery Requests at issue.  Both parties would need to determine and support their assessment of the *pro rata* share of dues spent in violation of the law.  *See, e.g., Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 212-13 (1977).  In order to determine the relative proportion of illegitimate and legitimate actions and the funds attributable to these actions, detailed information would be required about, among other things, the challenged activities of the union and the entire scope of union services.

Plaintiffs first mentioned dues restitution as a possible theory of damages on May 8, 2013 (*see* Toal Decl. Ex. A), after damage discovery was

nearly complete.  Therefore, none of the discovery that ALPA conducted over the past two years was targeted at a defense against a restitution claim.  Of particular note, ALPA recently conducted depositions of seven former TWA pilots, all of which would need to be re-opened were plaintiffs permitted to advance this unpleaded theory of damages, so that ALPA would have an opportunity to inquire into union dues issues that were not relevant to the case at the time of the original depositions.  Moreover, the parties have, between them, submitted seven expert reports since October 2012 and have deposed (or will depose this summer) each of these experts—none of this discovery makes mention of anything relating to union dues.

Because the "additional discovery, cost, and preparation" necessary to defend a claim for restitution constitutes substantial and undue prejudice, amendment of plaintiffs' claims should be prohibited.  *See Cureton*, 252 F.3d at 273.

### B.     Amendment Would Be Futile Because Restitution is Not an Available Remedy for Breach of the Duty of Fair Representation

#### 1.     As a Matter of Well-Established Federal Law, Monetary Damages Against a Union Must Be Compensatory

The law is well-settled that the appropriate remedy for a union's breach of the duty of fair representation is one that compensates for injuries attributable to the breach, thereby making the injured employees "whole."  *See*

*Bowen v. USPS*, 459 U.S. 212, 222 (1983) ("Of paramount importance is the right of the employee, who has been injured by both the employer's and the union's breach, to be made whole."); *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 48-49 (1979) (the "fundamental purpose of unfair representation suits is to compensate for injuries caused by violation of employees' rights"). In acknowledgment of the fact that employees' "welfare depends upon the strength of their union," the Supreme Court has emphasized repeatedly that "general labor policy disfavors punishment" in order to protect the "financial stability of unions" and the "careful balance of individual and collective interests . . . in the unfair representation arena." *See id.* at 48-52; *see also Deboles v. Trans World Airlines*, 552 F.2d 1005, 1019-20 (3d Cir. 1977); *Violas v. GMC*, No. 95-0487, 1997 U.S. Dist. LEXIS 16247, at *54 (D.N.J. Jan. 29, 1997). Accordingly, the law is equally well-settled that damages which exceed remedial, "make whole" awards are punitive and "may not be assessed against a union," including for breaches of the duty of fair representation. *Foust*, 442 U.S. at 52; *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 362 (5th Cir. 1981) ("Such a remedy would be punitive rather than remedial and we therefore could not enforce it.").

Where, as here, a duty of fair representation claim is premised on a union's conflict of interest, restitution of union dues would be punitive rather than compensatory and thus is not an available remedy. As plaintiffs acknowledge in

13

their brief (Pls. Br. at 9), *Addington v. US Airline Pilots Ass'n*, No. CV-081633, 08-1728, 2009 WL 856334, at *1 (D. Ariz. Mar. 26, 2009), is the only court to have considered this issue and is directly on point.  Similar to the present case, *Addington* involved a group of America West pilots who sued their union for breach of the duty of fair representation in connection with the integration of the pilot seniority lists of America West and U.S. Airways.  The *Addington* plaintiffs alleged that the proposal put forward by its union advanced the interests of the U.S. Airways pilots—who were represented by the same union—at the expense of the America West pilots.  Faced with claims that were virtually identical to those advanced here, the *Addington* court reasoned that the alleged "independent failure to represent fairly that adversely affect[ed] their wages, benefits, and working conditions" would not be "remedied by the suspension or disgorgement of [the union's] regular funding."  *Id.* at *2.  Thus, the court held "[r]estitution of fees and dues . . . goes beyond any make-whole remedy that the alleged harm requires" and dismissed the related claims for relief.  *Id.* at *1.[5]

---

[5] As here, the remedies sought by the *Addington* plaintiffs included injunctive relief, damages to "compensate Plaintiffs for the value of lost wages and benefits caused by" the breach, and "such other relief that the Court deems necessary and proper."  *See* First Amended Complaint ¶ 123(A)–(E), *Addington v. US Airline Pilots Assoc.*, 2008 WL 5581945 (D. Ariz. Oct. 28, 2008) (No. 08-CV-1633), ECF No. 86.  The *Addington* plaintiffs later attempted to introduce a new claim for restitution without amending their pleadings.  *Addington v. US Airline Pilots Assoc.*, Nos. CV-08-1633, CV-08-1728, 2009 WL 856334, at *1 (D. Ariz. Mar. 26, 2009).  The court dismissed the claim, finding that it failed even the generous standard of notice pleading and, in all events, failed to state a claim for which relief could be granted.  *See id.*

A claim for restitution in the present case is equally improper.[6] Plaintiffs here allege an "independent failure to represent fairly" based on ALPA's supposed refusal to more vigorously protect their seniority rights.  And plaintiffs do not—and cannot—articulate a theory under which the amount of union dues paid ALPA corresponds to the alleged "injuries *caused by union misconduct*," such that restitution could serve to remedy the specific harm.  *See Foust*, 442 U.S. at 50 (emphasis added); *see also Addington*, 2009 WL 856334, at *2.  To the contrary, the restitution sought by plaintiffs here is the very definition of "punitive." Damages are punitive when they "are not compensation for injury," but instead amount to "private fines . . . to punish" defendants for wrongful conduct.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974).  Plaintiffs' own experts' damage opinions and calculations evidence the non-remedial nature of the restitution that plaintiffs now seek to pursue here.

Plaintiffs' experts propose a number of alternative seniority lists that, in their view, would have been implemented absent ALPA's breach.  By purporting to quantify the monetary impact of the actual seniority rankings relative

---

[6] Plaintiffs' argue that their situation is distinguishable from *Addington* because "the TWA Pilots cannot have their seniority restored." (Pls. Br. at 10)  They claim that the *Addington* court concluded that a disgorgement of union dues would be punitive only because plaintiffs "could be made whole by a combination of compensatory damages . . . and having their seniority restored." (*Id.*)  This purported rationale is found nowhere in the *Addington* decision, and contradicts the reasoning that the *Addington* court provided, as discussed above.  Though plaintiffs attempt to distinguish *Addington* on this basis, plaintiffs' damages expert purports to be able to fully compensate plaintiffs for any lost seniority through monetary damages.  (*See* Salamat Orig. Rpt. at 44.)

to those on the "but-for" seniority lists, plaintiffs' main damages expert purports to calculate a specific damage number for each and every pilot that he maintains would make him or her "whole."  This number is completely independent of dues restitution.  Thus, restitution of union dues for all of the pilots to whom damages are attributed under the experts' theories goes beyond "make whole" damages and is punitive.  Similarly, an award of dues restitution for the more than a quarter of the class (over 650 pilots) who suffered *no* monetary harm from the seniority integration or actually *benefitted* from it—according to plaintiffs' primary damages model—would penalize ALPA for conduct that caused no harm and thus would constitute a windfall to those pilots.  And yet, that is precisely what class counsel admittedly attempts to do here—use dues restitution as a way to give "some level of compensation for ALPA's breach" to those pilots that "wouldn't have fared any better" under plaintiffs' experts' "but-for" lists.  (*See* Conf. Tr. May 30, 2013 at 7:7–7:16.)  This is impermissible, as "it is nothing short of punitive to extract monetary relief from the union beyond whatever compensatory damages may be provable at trial."  *Addington*, 2009 WL 856334, at *2; *see also, e.g., Foust,* 442 U.S. at 52.

The "non-DFR" cases on which plaintiffs attempt to rely (Pls. Br. at 9) are inapposite.  *International Association of Machinists v. Street*, 367 U.S. 740, 768-69 (1961) and *Brotherhood of Railway & Steamship Clerks, Freight Handlers,*

*Express & Station Employees, et. al. v. Allen*, 373 U.S. 113, 121 (1963) merely

hold that agency shop agreements must grant non-members the opportunity to

object to union political expenditures, and that failure to do so could warrant

restitution of the portion of fees used for such expenditures. Likewise, in *Dean v.*

*Trans World Airlines*, 708 F.2d 486 (9th Cir. 1983), the plaintiff claimed that his

union breached its duty of fair representation by allegedly using the plaintiff's

agency fees for political expenditures. The court, relying on *Street* and *Allen*,

noted that "a rebate for political and ideological expenditures" might be

appropriate relief. *Id.* at 488.

   *Street* and its progeny thus make clear that restitution is appropriate

*only* where the union's "offending conduct . . . was the *collection and use* of dues

money for improper purposes." *See Addington,* 2009 WL 856334 at *1 (citing

*Street* and holding that restitution was not permissible where plaintiffs "allege[d]

no wrongful collection or expenditure"); *see also, e.g., Chicago Teachers Union v.*

*Hudson*, 475 U.S. 292 (1986) (restitution of agency fees charged for ideological

expenditures unrelated to collective bargaining); *David Scharf and Samuel Offen*,

244 N.L.R.B. 905 (1979) (disgorgement of dues and initiation fees illegally

withheld). This is not such a case.[7]

---

[7] So long as a union is properly certified and levies only those dues to which it is entitled, its
dues monies *cannot* constitute ill-gotten gains because unions enjoy a statutory right to collect

2.      Plaintiffs' Analogies to State Law Fiduciary Duties Are
        <u>Irrelevant to Availability of Restitution in the Union Context</u>

In the absence of case law in the union context favorable to their

position, plaintiffs conclude—on the basis of nothing more than analogy to cases

involving breaches of fiduciary duties and, most notably, attorney conflicts of

interest—that "a forfeiture—or disgorgement—of all of ALPA's union fees from

the TWA pilots during the period that it was operating under a conflict is

appropriate."  (Pls. Br. at 4-9.)  Plaintiffs' argument must fail.

The Supreme Court has considered the extent to which attorney

malpractice claims were analogous to claims for breach of the duty of fair

representation, and ultimately rejected the analogy as "inadequate in several

respects."  *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S.

558, 566-69 (1990).  Indeed, the Court, looking at "the nature of the underlying

relationship between the parties," held that these types of actions are

"fundamentally different":

> Unlike employees represented by a union, a client controls the
> significant decisions concerning his representation. Moreover, a client
> can fire his attorney if he is dissatisfied with his attorney's
> performance. This option is not available to an individual employee
> who is unhappy with a union's representation, unless a majority of the
> members of the bargaining unit share his dissatisfaction.

___

dues and fees from all employees represented by the bargaining unit.  *See* 45 U.S.C. § 152.

*Id.* at 568-69.   Important among these distinctions is that, unlike the attorney in a typical malpractice suit, unions represent *groups of individuals*, often with "antithetical interests," who pool resources in order to realize the benefits of a collectively achieved outcome.  *See id.* at 586 (Kennedy, J., dissenting in part). And whereas in the attorney-client context restitution is targeted at the wrongdoer, the punitive nature of a restitution remedy against a union would be spread throughout the bargaining unit.  This result would directly contradict the stated goal of courts not to inflict harm upon employees represented by the union, who bear no culpability for the alleged wrongdoing.  *See Foust*, 442 U.S. at 48-52. Accordingly, plaintiffs' attempt to shoehorn this case into the damage framework of attorney conflict cases is inapt and unavailing.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel discovery relating to union dues and agency fees that class members paid to ALPA should be denied.

Dated:  Haddonfield, NJ
        July 1, 2013

Respectfully submitted,

Theodore V. Wells, Jr., Esquire
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

 - and -

Archer & Greiner
A Professional Corporation
One Centennial Square
Haddonfield, New Jersey 08033

By:  */s/ Kerri E. Chewning*
     John C. Connell, Esquire
     Kerri E. Chewning, Esquire

*Pro Hac Vice:*

Jay Cohen, Esquire
Daniel J. Toal, Esquire
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Daniel M. Katz, Esquire
Katz & Ranzman, P.C.
4530 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 659-4656

*Attorneys for Defendant Air Line Pilots Association, International*