# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br><br>Defendant. | Civil Action No. 02-2917 (JEI) |

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**SCHNADER HARRISON SEGAL & LEWIS** LLP
Lisa J. Rodriguez
Nicole M. Acchione
Woodland Falls Corporate Complex
220 East Lake Drive, Suite 200
Cherry Hill, N.J.
(856) 482-5222

**GREEN JACOBSON, P.C.**
Joe D. Jacobson
Allen P. Press
7733 Forsyth Boulevard,  Suite 700
St. Louis, MO  63100
Telephone: (314) 862-6800

DATED:  September 30, 2013

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

STATEMENT OF PROCEDURAL HISTORY ............................................... 2

LEGAL ARGUMENT ....................................................................................... 4

I.   THE STANDARD FOR SUMMARY JUDGMENT ............................... 4

   A.   There are Disputed Issues of Material Facts Concerning the Amount
        of Damages the TWA Pilots Suffered ................................................ 4

   B.   There is Ample Evidence in the Record for a Jury to Determine the
        Amount of Damages ........................................................................... 6

        1.   The Rightful Place Proposal ...................................................... 7

   C.   ALPA Bears the Risk of Uncertainty as to the Amount of Damages ....... 11

   D.   The Cases Relied on by ALPA are Inapposite .................................. 15

   E.   The Opinions of APA and American are Not Relevant ...................... 16

II.   ALPA'S ATTEMPT TO CUT OFF DAMAGES AS OF APRIL 2002 IS
      WITHOUT SUPPORT ........................................................................ 18

   A.   TWA Pilots Continued to Accrue Damages Until September 5, 2012 .... 19

CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguinaga v. United Food and Commercial Workers Int'l Union,*
854 F.Supp. 757 (D. Kan. 1994)...............................................19, 20, 21

*Bowen v. United Sates Postal Serv.,*
459 U.S. 212 (1983)...............................................................................21

*Burton v. General Motors Corp.,*
2008 U.S.Dist.LEXIS 62758 (S.D. Indiana 2008)................................12

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)................................................................................4

*Deboles v. Trans World Airlines, Inc.,*
552 F.2d 1005 (3d Cir. 1977)..................................................................3

*Instit Pasteur v. Simon,*
383 F. Supp. 2d. 809 (E.D. Pa. 2005) ...................................................16

*Locklin v. Day-Glo Color Corp.,*
429 F.2d 873 (7th Cir. 1970) .................................................................12

*London v. Weitzman,*
884 S.W.2d 674 (Mo. App. 1994) ..........................................................13

*Lucente v. IBM,*
146 F. Supp. 2d 298 (S.D.N.Y. 2001).....................................................4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)................................................................................4

*NLRB v. J.H. Rutter-Rex Mfg. Co.,*
396 U.S. 258 (1969)...............................................................................20

*Palmer v. Connecticut Railway & Lighting Co.,*
311 U.S. 544, 61 S. Ct. 379, 85 L.Ed. 336 (1941) ...............................12

*Pettway v. American Case Iron Pipe Co.,*
494 F.2d 211 (5th Cir. 1974) ..........................................................13, 14

*Richardson v. Communication Workers of America,*
443 F.2d 974 (8th Cir. 1971) ................................................................19

*Sharceski v. Westinghouse Elec. Corp.,*
    54 F.3d 1089 (3d Cir. 1995)..................................................................................11

*Story Parchment Co. v. Paterson Parchment Paper Co.,*
    282 U.S. 555 (1931)..............................................................................6, 15, 16

*Vaca v. Sipes,*
    386 U.S. 171 (1967)..............................................................................19

### OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ..................................................................................4

Fed. R. Civ. P. 56(c) ..................................................................................4

## **INTRODUCTION**

ALPA's motion for summary judgment asks the Court to overturn the first jury verdict, as well as 82 years of Supreme Court precedent.  Its arguments ignore the jury's finding of liability, causation, and the fact of damage. ALPA is not writing on a blank slate. The liability phase is over and ALPA's breach is no longer an "alleged breach." The jury verdict is clear. The pilots were damaged. It is now up to the jury to decide the amount of those damages.

The first jury found that ALPA breached its duty of fair representation and that as a result of that breach at least some of the pilots were damaged. The jury reached its verdict after a detailed jury charge.  Specifically, the jury charge stated, *as requested by ALPA*:

> If Plaintiffs prove that ALPA's conduct was arbitrary or motivated by bad faith, they must then prove a tangible injury resulting from that conduct in order to prevail. A labor union can only be held liable for a breach of its duty of fair representation if its breach directly causes injury to an individual or group to whom the duty is owed. *In this case, proving injury means that Plaintiffs are required to demonstrate that, but for ALPA's breach of its duty of fair representation the overall outcome of the integration of the TWA Pilots into American would have been more favorable.*

Docket No. 411 (Jury Charge, p. 14) (emphasis added).

ALPA contends that summary judgment should be granted because Plaintiffs are unable to meet their burden of proving that they suffered monetary harm as a result of ALPA's "alleged breach" of the duty of fair representation. Def's Brief at

62. To reach this result would require the Court to ignore the charge ALPA requested, and ignore the jury's finding that but for ALPA's breach there would have been a better seniority list. Instead, ALPA collapses the issue of the fact of damages with the amount of damage to reach its conclusion that the Plaintiffs should recover nothing. This conclusion is not supported by common sense or the cases relied on by ALPA.

## STATEMENT OF PROCEDURAL HISTORY

The trial of this case was bifurcated at ALPA's request. In support of its motion to bifurcate, ALPA acknowledged that the first phase of litigation was "one that solely concerns the actions of ALPA in the 2001 negotiations that resulted in the seniority arrangements that ultimately emerged," while the second phase would "focus[] instead on the questions of how the individual pilots would have fared in 2002 and thereafter had seniority arrangements proved more favorable." *See* Docket No. 112 (Def. Motion to Bifurcate, p. 14). When it asked this Court to bifurcate the trial, ALPA represented that "the underlying facts, the evidence necessary to establish those facts, and the witnesses who would testify to that evidence, are entirely distinct on the two issues." *Id.* at 15.

The Court bifurcated the trial exactly as ALPA asked and the parties tried the first phase of the case exactly as ALPA asked it be tried. ALPA objected to Plaintiffs' request that the first phase trial focus solely on ALPA's breach, leaving

2

causation and damages to a second trial. ALPA successfully argued that a finding of liability on a breach of the duty of fair representation claim necessarily required a showing that the breach caused injury. *See, e.g., Deboles v. Trans World Airlines, Inc.,* 552 F.2d 1005, 1018-1019 (3d Cir. 1977) (proximate causation of injury is an element of unfair representation claim). Plaintiffs' arguments for a narrower first phase that excluded causation issues were rejected by the Court at ALPA's behest.

Over the course of almost six weeks in the summer of 2011, a 12-person jury received evidence about whether ALPA breached its duty of fair representation in connection with the TWA pilots' seniority integration into American Airlines. The jury also heard evidence on whether ALPA's breach caused harm to the TWA pilots. After deliberating over the evidence based on the Court's instructions, the jury unanimously concluded that ALPA breached its duty of fair representation to the class of approximately 2300 former TWA pilots in connection with the pilots' loss of their seniority when American Airlines acquired TWA, and that ALPA's breach caused injury in fact to TWA pilots. Docket No. 413 (Jury Verdict).

Immediately following the verdict, ALPA filed post-trial motions for a new trial, judgment notwithstanding the verdict, and to decertify the class. Docket Nos. 415, 416 and 444. The motions were stayed for five months while the parties unsuccessfully participated in mediation. By Orders dated May 4, 2012, the Court denied ALPA's post-trial motions, Docket Entry 478, and the parties have since

engaged in extensive damage discovery, including the exchange of reports by seven experts, two retained by plaintiffs and five by defendant.

## LEGAL ARGUMENT

## I.   THE STANDARD FOR SUMMARY JUDGMENT

Federal Rule 56 provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party may move for full or partial summary judgment of a claim. Fed. R. Civ. P. 56(a). Summary judgment is appropriate "when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.   There are Disputed Issues of Material Facts Concerning the Amount of Damages the TWA Pilots Suffered

Try as ALPA might to re-characterize the issue before the Court, the *fact* of damage is not at issue. The *fact* of damages was decided in favor of the Plaintiffs in July 2011. What remains to be determined is the *amount* of damages, a separate factual issue. *See Lucente v. IBM*, 146 F. Supp. 2d 298, 302 (S.D.N.Y. 2001) (calculation of the amount of damages is a factual determination).

4

Here, the *only* disputed fact remaining to be decided by the jury is the amount of damages appropriate to make the TWA pilots whole. The following material facts are undisputed.

- ALPA breached its duty of fair representation, as the jury found;

- ALPA's breach of its duty caused injury, as the jury found;

- Contemporaneous with the underlying seniority negotiations, Prof. Tannen prepared a Rightful Place Proposal;

- Prof. Tannen's proposal was described by ALPA as "fair, "based on scientific principles," reflective of pre-transaction career expectations, and reflective of an outcome consistent with unions dealing fairly with each other;

- ALPA did not obtain the Rightful Place integration for the TWA pilots;

- In place of the Rightful Place Proposal that ALPA endorsed as "fair," TWA pilots' seniority rights were set forth in Supplement CC;

- TWA pilots paid ALPA dues to represent their interests during and before the seniority negotiations.

*See* Plaintiffs' Statement of Undisputed Facts, filed herewith.

These undisputed facts lie in sharp contrast to the arguments that ALPA presses in its motion. ALPA argues that summary judgment as to damages is appropriate because Plaintiffs' expert reports are inadmissible and, once stricken, there is no evidence to support plaintiffs claim. This argument fails on two counts. First, the but-for seniority lists prepared by Salamat and Farber are admissible as proper expert opinion testimony. ALPA's summary judgment motion fails on its own terms because this evidence should be admitted. Thus, this first argument

need not be further addressed here. *See* Plaintiffs' Memorandum in Opposition to ALPA's Motion to Exclude Plaintiffs' Experts filed herewith. ALPA's motion also fails even if it were right – which it is not – about the inadmissibility of Farber and Salamat's but-for seniority lists. Even without these lists, there is another alternative but-for seniority list that is unquestionably admissible in evidence as an admission of a party opponent. Professor Michael Tannen's "Rightful Place" Proposal provides a but-for list that ALPA adopted and endorsed during the negotiations as reasoned, scientific, compelling, and persuasive. *See* Declaration of Lisa J. Rodriguez, Ex. A (ALPA's Rightful Place Proposal Video and Transcript).

## B.   There is Ample Evidence in the Record for a Jury to Determine the Amount of Damages

Plaintiffs have provided the reports of two experts. Their reports employ different and independently developed methodologies to arrive at reasonable "but for" seniority lists for the merger. As demonstrated in Plaintiffs opposition to ALPA's motion to strike, plaintiffs' experts' methodologies are sound and will assist the jury in forming "a reasonable and probable estimate" of adequate compensation. *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562 (1931). Even without Farber's and Salamat's but-for lists, Prof. Tannen's

2001 alternative seniority list is enough evidence to allow the jury to arrive at a reasonable estimate of damages.[1]

### 1.    The Rightful Place Proposal

In or around June 2001, the TWA Merger Committee turned its focus towards a proposal that would address the American pilots' concern that their "career expectations" be safeguard in any seniority integration. Rodriguez Decl., Ex. G (Day Trial Test., p. 18).  ALPA retained a labor and economics professor, Michael Tannen, to prepare such a proposal. *Id.* (Day Trial Test., p. 18.)

ALPA, fully aware of TWA's "perilous financial condition," adopted and endorsed Prof. Tannen's seniority integration proposal, which was called the "Rightful Place Proposal." *See* Rodriguez Decl., Ex. A (ALPA's RPP video and transcript). ALPA's promotional video, entitled "Pilot Seniority Integration Proposal June 2001," described Professor Tannen's proposal and featured ALPA's then President, Duane Woerth, attorney Roland Wilder, and Prof. Tannen himself.

Woerth leads off the ALPA video, framing ALPA's promise to the TWA pilots and ALPA's adoption and endorsement of Prof. Tannen's work:

> For over the past 75 Years, pilots of TWA have met numerous challenges … from pioneering air travel to fending off corporate raiders.  The TWA pilots were among the first to join [ALPA]; and in

---

[1]    Salamat prepared a report stating the damages to the Class resulting from the adoption of Tannen's but-for list.  ALPA has not challenged Salamat's ability to calculate damages resulting from Tannen's list.

their six- plus decades in ALPA, the pilots of TWA have been crucial to the successes that have made our union strong.

… But today, the TWA pilots face another challenge, obtaining a fair seniority integration.  ALPA supported the pilots of TWA with the best legal and representational resources available to weather the bankruptcy successfully.

We made those same resources available to ensure that the TWA pilots were able to obtain the maximum number of contractual provisions and protections possible in a transition agreement with the new TWA Airlines LLC, and we will continue to make those resources available to your MEC in order to successfully complete your integration into American Airlines.  As you may know, the executive board recently passed a resolution that pledges the full moral support of our entire association along with the funds necessary to enable your MEC to represent your interests.

Rodriguez Decl., Ex. A (RPP Transcript at 1-2) (emphasis added).

Woerth goes on the describe the importance of seniority to TWA pilots, adopting Prof. Tannen's work as a reasonable, fair outcome that accommodates all relevant interests:

Seniority integrations are always complex and difficult. As all pilots know, seniority determines almost everything in a pilot's professional life. It is here where two pilot groups in a merger first have to work with each other. Both sides in a merger must try to approach the other side with a sense of fairness and respect in order to achieve an integration that will ultimately provide solidarity instead of division.

I'm encouraged that the TWA pilots are putting forth a proposal based on the fairness and appreciation for the concerns of both groups.  The fact that the proposal is based on a reasoned and scientific approach that considers many factors, such as the career expectations of both pilot groups, is compelling and persuasive.

8

> I'm also encouraged that the TWA pilots are seeking an integration that will promote solidarity once the two pilot groups are combined. ….

*Id.* at 2-3 (emphasis added).

After his unequivocal endorsement of Prof. Tannen's work as one based on "fairness" and a "reasoned and scientific approach that considers … career expectations of both groups," Woerth introduced Roland Wilder. Woerth described Wilder as an expert in seniority integrations, and represented that Wilder "will provide an overview to help us understand some of the more important principles associated with seniority integration." *Id.* at 3.

To achieve this goal, Wilder explains that Tannen was hired to undertake the challenge of quantifying the goal of preserving career expectations "to produce measurable criteria for use in integrating seniority lists." *Id.* at 6.

ALPA's video production then features Prof. Tannen who explains the proposal. *See* Rodriguez Decl., Ex. A (RPP Transcript, p. 7-19). Acknowledging that "no integration methodology can result in every individual being made better off in all respects," Tannen explains that "individuals can rightfully expect to not have their status or career expectations diminished as a result of the integration." *Id.* at 9. The goals that Tannen describes are as follows:

> Maintain AA bidding rights and career expectations, including pre-January 9, 2001 expectations – AA fleet growth projection, added captains, and first officer jobs, that is, the number of captains and first officer jobs that can be expected to be added as a result of the firm aircraft growth should be factored in; maintain TWA current bidding

9

rights and career expectations also with no protection for aircraft growth; avoid windfalls at the expense of other pilots; preclude detrimental seat or equipment change.

*Id.* at 10.

Tannen describes the implementation of these goals as based on two concepts: the running mate concept, and promotion expectations pre and post integration. These concepts, when applied, were designed to assure a fair integration to both pilot groups while preserving career expectations.

> After Prof. Tannen's presentation, Wilder returned to sum up:

> Professor Tannen has developed a seniority integration method that optimizes benefits of the transaction for both the American Airlines and Trans World Airlines pilot groups. No pilot's pretransaction career expectations will be disappointed.

> Former TWA pilots will enjoy enhanced job opportunities. The upward career progression of most American pilots will be advanced, and none will be impeded by implementation of a seniority list consolidation on the basis of the principles outlined by Professor Tannen. The list so constructed will be fair and equitable in fact as well as name since each pilot will occupy his or her rightful place.

*Id.* at 19-20.

The statement of Captain Woerth touting the fairness of the Rightful Place proposal was presented to the jury at the first trial. He admitted in his carefully prepared video statement that the Rightful Place proposal considered the financial condition of TWA in determining a pilot's career expectation leading to a fair seniority integration. ALPA represented the Rightful Place proposal to be a fair,

principled integration. No one will ever know precisely what could have been achieved through negotiations had ALPA not breached its duty to the TWA pilots.

The damage phase jury will be asked to calculate the difference between what the pilots earned under Supplement CC and what they would have earned under either the alternative seniority lists developed by Plaintiffs' experts or the alternative seniority list proposed by ALPA during negotiations. These lists permit a reasonable estimate of the class's wage losses. Any uncertainties in calculating losses should be resolved against ALPA, the wrongdoer whose actions created the uncertainty.

### C.   ALPA Bears the Risk of Uncertainty as to the Amount of Damages

The concept that a wrongdoer bears the risk of uncertainty in proving damages is well-recognized:

> We recognized that "[t]rial courts and the parties themselves invariably lack perfect hindsight to forecast what would have happened had there been no unlawful acts." *Rodriguez v. Taylor*, 569 F.2d 1231, 1238 (3d Cir. 1997); *International Broth. of Teamsters v. United States*, 431 U.S. 324, 372 (1977) ("process of recreating the past will necessarily involve a degree of approximation and imprecision"). We have concluded, however, that the risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim.

*Sharceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100-01 (3d Cir. 1995).

In *Burton v. General Motors Corp.,* 2008 U.S.Dist.LEXIS 62758 (S.D. Indiana 2008), the court refused to vacate a damage award that Defendant argued was too speculative. "There must be an adequate basis in the record for an award of damages, but it is not necessary for the evidence to show the amount of damages with absolute certainty or precision." *Burton*, 2008 U.S. Dist.LEXIS 62758, * 76, citing *Trustmark Ins. Co. v. General & Cologne Life Re*, 424 F.2d 542, 552 (7th Cir. 2005); *Palmer v. Connecticut Railway & Lighting Co.*, 311 U.S. 544, 561 (1941) ("Certainty as to the amount [of damages] goes no further than to require a basis for a reasoned conclusion"); *Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 879 (7th Cir. 1970) (the amount of damages can be circumstantial "even to the point of estimates based upon assumptions, provided that the assumptions rest upon an adequate base").

This principle has been applied by courts in other areas of the law closely analogous to this case, *e.g.,* attorney malpractice and employment discrimination.

> In a legal malpractice action, a court may be tempted to characterize the plaintiff's damage claim as speculative because of the difficulty in liquidating the claim. This is because legal malpractice litigation often involves hypothetical questions which have real consequences. For example, how much did the client lose when the lawsuit was not prosecuted? Or, how much better off would the client have been had the suit been defended or been defended for comprehensively?
>
> No one can say precisely what the plaintiff lost or should have lost in such situations, but difficulty or imprecision in calculating damages does not exculpate the attorney. Even

12

> though damages cannot be calculated precisely, they can be estimated. Otherwise, attorneys could avoid liability because damages are difficult to measure. The beneficiaries would tend to be those attorneys whose errors were the greatest and whose conduct succeeded in complicating the issue of calculating the extent of the client's injury.
>
> Thus, damages are speculative only if the uncertainty concerns the fact of whether there are any damages rather than the amount.

*London v. Weitzman*, 884 S.W.2d 674, 677-78 (Mo. App. 1994).

These principles have also been recognized by courts in the employment context. A thorough treatment is found in *Pettway v. American Case Iron Pipe Co.,* 494 F.2d 211 (5th Cir. 1974):

> The method of calculating a class-wide back pay award must not be rigid. This results from the impossibility of calculating the precise amount of back pay. There is no way of determining which jobs the class members would have bid on and have obtained if discriminatory testing, seniority, posting and bidding system and apprentice and on-the-job training programs had not been in existence. Class members outnumber promotion vacancies; jobs have become available only over a period of time; then vacancies enjoy different pay rates; and determination of who was entitled to the vacancy would have to be determined on a judgment of seniority and ability at that time. This process creates a quagmire of hypothetical judgments. It does not follow that back pay claims based on promotions cannot be award. Unrealistic exactitude is not required.

*Pettway*, 494 F.2d at 260-61 (citation omitted).

The *Pettway* Court noted the superiority of addressing these complex and imprecise issues on a classwide basis:

13

> When the class size or the ambiguity of promotion of hiring practices or the multiple effects of discriminatory practices or the illegal practices continued over an extended period of time calls forth the quagmire of hypothetical judgment discussed earlier, a class-wide approach to measure of back pay is necessitated. It should be emphasized that this is not a choice between one approach more precise than another, any method is simply a process of conjectures. When a court is faced with the employment situation like this case, where employees start at entry level jobs in a department and progress into a myriad of other positions and departments on the basis of seniority and ability over an extended period of time, exact reconstruction of each individual claimant's work history, as if discrimination had not occurred, is not only imprecise but impractical.

*Id.* at 261-62.

ALPA asks the Court to shift the risk of uncertainty in determining damages to the Plaintiffs. In doing so, ALPA ignores the finding of liability against ALPA. ALPA also relies in large measure on irrelevant opinion testimony by American and APA officials in which they speculate what they would have done in the negotiations if ALPA had bargained more vigorously.

ALPA claims Plaintiffs have failed to satisfy their burden, arguing that Plaintiffs must provide evidence that the APA *would have agreed* to a more favorable seniority integration for the TWA pilots. Def. Brief at 63. That is not the standard. The issue of *whether* the integration of the TWA pilots into American would have been *more favorable* has already been decided by the first jury. *See* Docket No. 411 (Jury Charge). What remains for the second jury is to determine a

reasonable estimate of the damages the TWA pilots suffered as a result of not obtaining this more favorable integration.

### D. The Cases Relied on by ALPA are Inapposite.

The Supreme Court in *Story Parchment,* 282 U.S. at 562, held that there was a clear distinction between the measure of proof necessary to establish the fact of damage and that needed to prove the amount of damage. The Supreme Court recognized that when the wrong itself made ascertainment of the amount of damages difficult, it would be a "perversion of the fundamental principles of justice," to relieve the wrongdoer from liability. *Id.* at 563.

The Court concluded that where the jury found injury in fact, the calculation of the damages should be submitted to the jury to allow them to "form such reasonable and probable estimate, as in the exercise of good faith and sound judgment they think shall produce adequate compensation." *Id.* at 565. "[W]hatever uncertainty there may be in this mode of estimating damages, is an uncertainty caused by defendants own wrongful act; and justice and sound public policy alike require that he should bear the rest of uncertainty thus produced." To do otherwise the Court offered "would be little less than legalized robbery." *Id.*

Here, we know that damages were suffered by the TWA pilots attributable to ALPA's breach. The jury told us so. It is only the amount of their damage that is uncertain. ALPA tainted the seniority integration process when it failed to fairly

15

negotiate for the TWA pilots. It created the situation giving rise to the uncertainty. It may not now avail itself of the uncertainty it created to avoid paying for its breach.

*Instit Pasteur v. Simon*, 383 F. Supp. 2d. 809 (E.D. Pa. 2005), also cited by ALPA, is not instructive. There the court was not determining the amount of damages after a finding of liability. Instead it was both the existence and extent of damages that were too speculative to be submitted to the jury. *Id.* at 811.

### E. The Opinions of APA and American are Not Relevant

Finding no support in the case law to support its summary judgment motion, ALPA turns to the recent deposition testimony of APA and American officials, taken 12 years after the merger. ALPA uses this testimony to support its contention that Supplement CC was the best seniority integration available to the TWA pilots, given TWA's precarious financial position. While that testimony may have been relevant in the first trial, it no longer is. The testimony contradicts the finding of the liability jury. It is also contradicted by ALPA's own expert, Prof. Katia Sycara.

Professor Sycara offers opinions that a negotiation is a fluid process and that there are distinct classes of arguments that change both the importance of an issue in a negotiation as well as the perception of an issue's value to the parties. *See, e.g.*, Rodriguez Decl., Ex. E (Sycara Report at 4). She described negotiations as "an ill-structured and complex process that to date has defined all attempts at

analysis." Rodriguez Decl., Ex. F (Sycara Dep. Tr. at 14-15). Prof. Sycara opined that negotiations are not a static process, and that parties often find themselves moving to the other side of the lines they drew in the sand earlier in the negotiations. Sycara Rpt. at 20.

Professor Sycara offered that it is preferable during negotiations to use one's weakest arguments first and build progressively to one's stronger arguments. She contended that arguments have a cumulative impact, Sycara Dep. Tr. 44-45; 96-97, and contended that even if an argument does not persuade the other side it may nevertheless move the other side's internal line closer to one's own, helping later arguments bring about agreement. Sycara Dep. Tr. at 47, 51. Prof. Sycara also opined that an argument can bring pressure towards agreement even if it makes no logical sense or does not follow reason. Sycara Dep. Tr. at 103.

ALPA's breach changed the negotiation process and caused a diminished outcome for the TWA pilots in the seniority integration. The fact that various participants to the tainted seniority negotiations now assert they would not have acted differently had ALPA not breached its duty is not relevant. It is speculation. No one can know for certain what they would have done under different circumstance. The parties to the negotiations were deprived of the back and forth inherent in vigorous negotiations. They cannot say now, 12 years later, how they

would have responded to a forceful ALPA in place of the softy with whom they dealt at the time.

Roland Wilder, a lawyer and expert in labor negotiations gave us a practical expression of Sycara's theories when he said, "good things happen to employee groups that fight." Rodriguez Decl, Ex. H (Wilder Dep. Tr. 108:7-14). The evidence at trial showed Wilder advanced several strategies, all rejected by ALPA, to create the situation recognized by Sycara as pivotal in a negotiation. In fact, simply the presence of Wilder would have benefited the pilots in their negotiations, as recognized by Sycara in her report where she opined about the impact that an expert in the field would have on negotiations.  Sycara Dep. Tr. at 116.  Again the parties to the negotiation were deprived of the practical benefit of Wilder's expertise and their impact on the negotiations because his recommendations were rejected by ALPA.

## II.    ALPA'S ATTEMPT TO CUT OFF DAMAGES AS OF APRIL 2002 IS WITHOUT SUPPORT

Alternatively, ALPA moves for partial summary judgment urging the Court to limit damages to the duration of the 1997 Collective Bargaining Agreement. There is no support for that limitation. Plaintiffs agree, however, that damages through 2026 are no longer appropriate.  American's bankruptcy and, in particular, the bankruptcy court's Section 1113 Order setting aside American's collective bargaining agreement with the APA on September 5, 2012, is an intervening event

that breaks the causal connection between ALPA's breach of its duty of fair representation and the TWA pilots' diminished income and employment prospects, and thus presents a landmark that appropriately cuts-off plaintiffs' damages.

## A.   TWA Pilots Continued to Accrue Damages Until September 5, 2012

The appropriate remedy for a breach of a union's duty of fair representation varies with the circumstances of the particular breach. *Vaca v. Sipes*, 386 U.S. 171, 195 (1967).  As a general matter, courts will fashion a remedy sufficient to make the union members whole. Here the task is to fashion a damages remedy that compensates TWA pilots for the loss of their valuable seniority rights, which affected their incomes and even their opportunity to work. An employee who loses his seniority has "lost his reasonable expectancy as to his continued employment.*" Richardson v. Communication Workers of America,* 443 F.2d 974, 979 (8th Cir. 1971).

Courts fashioning a "make whole" remedy in the context of a duty of fair representation breach have awarded compensatory damages, such as back pay, flowing from the union's misconduct. *Aguinaga v. United Food and Commercial Workers Int'l Union,* 854 F.Supp. 757, 761 (D. Kan. 1994) ("The purpose of an award of backpay (including fringe benefits) is to make employees whole for the losses suffered").  The court recognized that the burden was on the Union to show when a claim for back pay should be tolled.  *Id.* at 764.  It rejected the notion that

19

the actions of the employer post-breach was indicative of what it would have done absent the breach.

The purpose of awarding back pay is to make an employee whole, or "restore the economic status quo that would have obtained but for the wrongdoing on the part of ...the union." *Aguinaga*, 993 F.2d at 1473, citing *Bowen v. United Sates Postal Serv.*, 459 U.S. 212, 222-23 (1983) and *NLRB v. J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 263 (1969).

Supplement CC was the seniority integration that resulted from ALPA's breach. That list was the operative list going forward and the TWA pilots' future at American was determined by it. The ongoing financial impact to the TWA pilots at American flowed directly from that list. Those damages cannot be divorced from ALPA's breach. *Aguinaga,* 854 F. Supp. at 764. There is no reasonable rationale for limiting the damages of the class to the term of the collective bargaining agreement (CBA) in effect when the breach occurred. ALPA knew that the seniority integration arrived at would follow the TWA pilots as they transitioned into American and likely for the rest of their professional careers. The ongoing applicability of Supplement CC was recognized by Keith Wilson, APA President, in January 2013, when he acknowledged that Supplement CC established TWA pilots' seniority, continuing even after American Airlines' bankruptcy. (Def's Ex. 44)

Thus the damages resulting from ALPA's breach were ongoing. However, Plaintiffs concede that the chain of causation was broken when Supplement CC was eliminated by the bankruptcy court pursuant to American's Section 1113 motion. It would not be appropriate to accrue wage damages past September 5, 2012.

None of the cases cited by ALPA support its proposition that the TWA pilots' back pay damages should terminate with the end of the 1997 CBA. The issue in *Bowen v. United Postal Service,* 459 U.S. 212 (1983), was not whether the union employee was entitled to back damages resulting from the union's breach of its duty of fair representation. Rather the issue was apportionment of damages between the union and the employer when the employer discharged an employee in violation of a collective bargaining agreement and the union failed to arbitrate the claim. *Id.* at 220. There the court recognized that when determining how damages should be apportioned between the employer and the union, the right of the employee to be made whole was of paramount importance. *Id.* at 222.

*Aguinaga v. United Food,* 854 F. Supp. 757, on the other hand, is instructive. After a finding by the court that the union breached its duty of fair representation, the court proceeded to determine appropriate class-wide damages. The court recognized the inherent difficulties in making a determination of what would have happened in the absence of a union's breach. *Id.* at 763. It found

21

unpersuasive the Union's argument that absent the breaches involved the employer would have done exactly what it did in the presence of the breach. *Id.* at 764. The Court then engaged in its own analysis based on the existing evidence, without the aid of an expert, to arrive at an appropriate damage methodology which recognized the importance of making the employee whole.

Defendant has offered no support for its claim that back-pay damages are appropriately cut off at the end of the 1997 CBA. Supplement CC was the direct result of ALPA's breach and that list followed the TWA pilots impacting their seniority at American. To make the TWA pilots whole and compensate them for the loss of their valuable seniority rights, a damage remedy must include the damages that flowed from that breach. Plaintiffs believe that Supplement CC continued to damage the TWA pilots under Supplement CC no longer existed.

## **CONCLUSION**

The first jury determined that ALPA breached its duty of fair representation to the TWA pilots and that the breach resulted in a seniority list less favorable than what would have been achieved had the breach not occurred. It is now time to determine the amount of damages suffered by the TWA pilots. There is credible evidence, both in the way of expert testimony and ALPA's own documents, that provides a basis for a second jury to reach a reasonable and probable estimate of

the amount of damages. Accordingly, ALPA's motion for summary judgment should be denied.

**SCHNADER HARRISON SEGAL & LEWIS LLP**

BY:_____*s/ Lisa J. Rodriguez*_____

Lisa J. Rodriguez
Nicole M. Acchione
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1165
(856) 482-5222

**GREEN JACOBSON, P.C.**
Allen P. Press
Joe Jacobson
7733 Forsyth Boulevard, Suite 700
Pierre Laclede Center
St. Louis, Missouri 63105
(314) 862-6800
Counsel for Plaintiffs

23