# EXHIBIT A

TWA – TANNEN PROPOSAL

JUNE 2001 – FILE #:   4010

(MUSIC PLAYS) {SLIDE A} {SLIDE B} {SLIDE C}

Capt. Duane Woerth:   For over the past 75 years, pilots of TWA have met numerous challenges (MUSIC STOPS) from pioneering air travel to fending off corporate raiders.   The TWA pilots were among the first to join the Air Line Pilots Association; and, in their six-plus decades in ALPA, the pilots of TWA have been crucial to the successes that have made our union strong.

ALPA is the world's leading pilot union with over 60,000 members.   Thanks, in large part, to the TWA pilots.   But today, the TWA pilots face another challenge, obtaining a fair seniority integration.   ALPA supported the pilots of TWA with the best legal and representational resources available to weather the bankruptcy successfully.

We made those same resources available to ensure that the TWA pilots were able to obtain the maximum number of contractual provisions and protections possible in a transitional agreement with the new TWA Airlines LLC, and we will continue to make those resources available to your MEC in order to successfully complete your integration into American Airlines.

As you may know, the executive board recently passed a resolution that pledges the full moral support of our entire association along with the funds necessary to enable your MEC to represent your interests.

The resolution was passed by acclamation, demonstrating a widespread support within ALPA for TWA pilots; and your national leadership will work with your MEC to fight for fair treatment by both American Airlines and the Allied Pilots.

Seniority integrations are always complex and difficult.  As all pilots know, seniority determines almost everything in a pilot's professional life.  It is here where two pilot groups in a merger first have to work with each other.

Both sides in a merger must try to approach the other side with a sense of fairness and respect in order to achieve an integration that will ultimately provide solidarity instead of division.

I'm encouraged that the TWA pilots are putting forth a proposal based on the fairness and appreciation for the concerns of both groups.  The fact that the proposal is based on a reasoned and scientific approach that considers many factors, such as the career expectations of both pilot groups, is compelling and persuasive.

I'm also encouraged that the TWA pilots are seeking an integration that will promote solidarity once the two pilot groups are combined.  After all, the combined pilot group will be better off working together against management in the future years in order to achieve common goals.

All pilots should remember that our strength as a labor movement resides in our solidarity which, in turn, is based on mutual respect and professionalism.  The TWA pilots have supported many pilot groups over the years, and ALPA will be at your side as you transition into American Airlines.

Now attorney Roland Wilder, of the law firm Baptiste and Wilder, has been retained by the TWA MEC to assist in seniority integration.  He has extensive experience in air carrier transaction and seniority integration having represented various crafts and classes in many previous mergers including Delta Western, US Airways and US Airways Shuttle, Pan Am/National, and TWA/Ozark.

He has argued the nature of seniority rights before the Supreme Court of the United States, and Mr. Wilder will now provide an overview to help us understand some of the more important principles associated with seniority integration.

(MUSIC PLAYS) {SLIDE D} {SLIDE E}

Roland P. Wilder:  Seniority is entirely a creature of collective bargaining.  As the Supreme Court has made clear (MUSIC STOPS) seniority rights do not exist apart from the collective bargaining agreement.  For pilots, of course, no term or condition of employment is more important than seniority.

The seniority number is not important in and of itself.  Rather, the number's importance lies in its function as a competitive device governing job selection situations.

Your seniority number will determine your status, that is, whether you fly as a captain or first officer.  Seniority will also determine your category, referring to the equipment you fly.  It will determine whether you hold a bid line or fly reserve.  It will also determine your domicile.

Think of your seniority number as a key to job opportunities. On a small carrier, where the desirable job opportunities are few, a high seniority number is essential to compete with those limited opportunities.  On a large carrier, a high seniority number is less important to advancement because the pool of desirable job opportunities is so much larger.  This is another way of saying that a seniority number key unlocks different job opportunities on different airlines.  No fact is more important to consider when merging seniority lists.

TWA - TANNEN PROPOSAL
JUNE 2001 - FILE #:  4010                                    - 4 -

Two methods of seniority integration are most familiar to pilots. Both, unfortunately, are somewhat crude in their application. The first is the date-of-hire method. This method works best in situations when merging relatively homogeneous seniority lists in transactions between air carriers of comparable size and economic strength.

The difficulty is that this situation is not typical of most transactions. Because most transactions do not involve a combination of equals, date-of-hire integrations usually have required the imposition of conditions and restrictions, which impose limitations on how seniority may be used.

For example, equipment may be fenced off. Domiciles may be protected, and bidding rights may be restricted for prescribed periods. These are some of the more common restrictions found in date-of-hire seniority plans. Many other types of restrictions have been imposed as well. Think of conditions and restrictions as locked doors your seniority key cannot open.

Now, it is a truism that the more substantial the differences between merged carriers, the more onerous the conditions and restrictions imposed in date-of-hire integrations. In some cases, the conditions and restrictions have so impeded operation of the seniority principle that the resulting integration is date of hire in name only.

For approximately ten years, date of hire has not been the presumptively preferred method of seniority integration among ALPA-represented pilots.  The ratio method is often applied when a date-of-hire seniority integration is considered inequitable. Ratios are typically constructed on a status and equipment basis in an attempt to distribute pilots from a smaller carrier among their counterparts from the larger carrier on the consolidated post-merger seniority list.

The idea is to integrate pilots within their peer groups according to a mathematical ratio, which is determined by pilot populations within each peer group.  Peer groups, in turn, are determined on the basis of job comparability, which, in this industry, is measured by status and equipment.

Conditions and restrictions may be imposed on seniority lists integrated by the ratio method, but they are usually less onerous than those used in date-of-hire integrations.  The relative crudity of date-of-hire and ratio integration methods has led to a search for a better, more precise way to integrate pilot seniority lists.

The general goal of seniority integration can be easily stated. It is to maintain pilot career expectations and equitably share the benefits of the transaction without creating windfalls at the expense of either pilot group.  The challenge is to quantify

this goal to produce measurable criteria for use in integrating seniority lists.

To undertake this challenge, Professor Michael B. Tannen was retained by our firm.  His study demonstrated the feasibility of combining a peer-group analysis and a captain-expectancy calculation to determine the rightful place of every American Airlines and former Trans World Airlines pilot on the post-transaction consolidated seniority list.  Professor Tannen will now explain the rightful place seniority concept.

(MUSIC PLAYS) {SLIDE F} {SLIDE G}

Michael B. Tannen, PhD:  The acquisition of TWA assets and the hiring of former TWA pilots by (MUSIC STOPS) American Airlines is a fact.  It will bring change to American Airlines, along with other developments, accelerate change in the industry in ways that can be anticipated and in ways that may not.

The prosperity of American Airlines depends critically upon how the carrier can adjust to the changing landscape.  If corporate leaders are right, the industry, in the near future, will be characterized by more effective competition, in which competition among powerful equals will be the rule, not the exception.  A carrier that cannot successfully compete in the

new environment is a carrier that will be fortunate to assume second place and, more likely, may fail.

A stronger American Airlines will emerge if management's ability to respond to new challenges is not unduly compromised by unnecessary rules or a workforce containing many demoralized or combative members.  A fair and equitable seniority integration among AA and former TWA pilots, unfettered by a myriad of Byzantine conditions and restrictions, is a pivotal step in ensuring the survival, indeed, the prosperity of the carrier and its workforce.  It is evident that a fair share of the larger pie benefits both pilot groups.

(MUSIC PLAYS) {SLIDE H} {SLIDE I} {SLIDE J}

A fair agreement will incorporate the principles of horizontal and vertical equity.  The principle of horizontal equity (MUSIC STOPS) dictates that, in any seniority integration, there be similar and fair treatment among equals, that is, among members of the same status, equipment-class category.

Status and equipment class are paramount considerations, but the inquiry cannot be limited to current status alone.  Career expectations among members of each category should also be factored into determination of the rightful-place seniority integration.

The principle of vertical equity dictates that there be fair treatment between members of different categories, preserving a distinction between bidding and other rights that characterize those that are higher up on the seniority list from those who expect, in the future, to occupy a higher relative position. The task of establishing an equitable seniority integration is to incorporate these principles of horizontal and vertical equity.

Change, inevitably, disturbs the status quo.  However, when the response is well-thought through, change should create circumstances in which most pilots prosper.  A successful seniority integration will focus on responding to change by establishing an equitable seniority list according to recognized and major concepts or principles.

No integration methodology can result in every individual being made better off in all respects, but individuals can rightfully expect to not have their status or career expectations diminished as a result of the integration.

The goals of the integrations proposal are as follows:
{SLIDE K} Maintain AA bidding rights and career expectations, including pre-January 9, 2001 expectations - AA fleet growth projection, added captains, and first officer jobs, that is, the number of captains and first officer jobs that can be expected

to be added as a result of firm aircraft growth should be factored in; maintain TWA current bidding rights and career expectations also with no projection for aircraft growth; avoid windfalls at the expense of other pilots; preclude detrimental seat or equipment changes.

{SLIDE L}

Implementation of this methodology is based upon an interpretation of two principle concepts, the running mate concept and promotion expectations pre and post integration.

The running mate concept is interpreted to mean, broadly, that individuals in the same status equipment category prior to their seniority integration, that is on the separate AA and TWA lists, belong in the same neighborhood, that is seniority range, in the integrated list.

Promotion expectations are considered in terms of when an individual could realistically expect to bid, win, and hold the status of captain in a given equipment category.  This involves defining what the relevant equipment categories are before these captain expectancy dates can be determined.  It also involves projecting how these expectations are affected by anticipated growth in the number of aircraft.

Implementing these concepts presents challenges, notably, the correct categorization of jobs and dealing with personal choices and potential logical inconsistencies.  Regarding categorization of equipment and jobs, the challenge is to reduce the many equipment types into a more manageable, indeed, smaller set of categories without combining pieces of equipment that are not comparable.

There are two ways of addressing this:  A, contractually, examining the pay scale and other compensation or contractual features associated with a piece of equipment; B, reveal preference, where on the seniority list do most captains flying a given piece of equipment actually lie?

    {SLIDE M}

Both approaches suggest the utility of the same three categories:  large widebody captains incorporating 777 and D11 captaincies; small widebody captains, 767, 757, and A300; and narrowbody captains, all others.

The running mate concept applied to these categories implies that pilots from the two seniority lists be integrated with their running mates.  The procedure used in performing this integration will be discussed later.

More difficult is the problem that seniority numbers for captains, on any piece of equipment, span many more places than the actual numbers of captaincies associated with that equipment.  This reflects different attributes of jobs commanding the same piece of equipment and the individual choices that are made when evaluating these differences.  Some individuals who could command a larger aircraft prefer not to exercise their bidding rights to do so because they find their current position more attractive.

{SLIDE N}

The accompanying chart shows the distribution of AA seniority numbers in each equipment category along the horizontal axis and the cumulative percentile of individuals in that category along the vertical axis.  It demonstrates that seniority numbers span many more places than there are captaincies for that piece of equipment.

In the large widebody group, the seniority ranges from numbers 1 to 2,472.  Yet there are only 346 such captain positions.  The top 50% of large widebody captains fall on a much narrower range, seniority range 1 through 416.  In the small widebody group, AA has 1504 captains.  Yet seniority numbers range from 6 to 5,768.  In the narrowbody group, AA has 2,817 captains.  Yet seniority numbers range from 57 to 5,768.

The chart also demonstrates the considerable overlap in seniority numbers that categorize each category, again, reflecting differences in the terms of employment associated with captains jobs on each aircraft and the individual choices made when confronted with those differences.

{SLIDE O}

While seniority numbers cover a broad range for each category, their distribution is fairly linear until the bottom 5% of each category is reached. {SLIDE P} In other words, the bottom 5% of persons who command such equipment spread over a far wider seniority range than would be inferred on the basis of where the top 95% lie. In statistical terms, the bottom 5% of captains jobs in each category constitute outliers in which these jobs are evidently less attractive than the jobs held by persons in the top 95%.

Similar findings also appear for the TWA seniority list. The considerable overlap among seniority numbers that accompany successive equipment categories imply that many pilots prefer to exercise their bidding rights by assuming a higher relative seniority position on a smaller piece of equipment than a lower relative seniority position on a larger piece of equipment. According to their revealed preference, the jobs they now hold

are more attractive to them than the alternative of commanding a larger aircraft under different employment terms.

A more useful characterization of pilot jobs, therefore, refers to grouping jobs in which the incumbent could choose to use his or her seniority position to buy the rights to captaincy of an aircraft in that category but prefers, instead, to buy the rights to captaincy of a smaller aircraft or a more desirable first officer position.  These groupings are terms seniority neighborhoods.

The preceding chart suggests natural boundaries for these neighborhoods.  The large widebody neighborhood, termed Neighborhood I, begins with the first seniority number and runs to the 95th percentile of large widebody captains, seniority number 50 and 51 on the AA list.  The next neighborhood, II, begins with the next seniority number 50 and 52 and continues until the 95th percentile of the small widebody group, AA number 4426.

Similar calculations have been performed for TWA absent the large widebody neighborhood.  {SLIDE Q} In total, there are four neighborhoods for AA, three for TWA; and the seniority boundaries are as shown in the accompanying diagram.

The seniority list shown must be modified for the planned acquisition of aircraft by American Airlines. {SLIDE R} Information on the number of aircraft orders, firm orders, and anticipated aircraft attrition indicates that from 2000, 2002, AA committed to the following net growth in the number of aircraft prior to the acquisition of TWA.

{SLIDE S}

Assuming a time in variant pilot staffing ratio, this net growth would result in the following increase in captain's positions at or above the 95th percentile. Growth in number of likely, also, to create a commensurate increase in the number of most desirable first officer jobs.

Most desirable first officer jobs, hereafter referred to as DFOs are defined as those positions in which the incumbent apparently, on the basis of seniority number, could successfully bid and displace an existing captain from that category of aircraft but chooses not to. {SLIDE T} In the case of widebody aircraft, for example, there are currently 12 widebody first officers with a seniority number above the 95th percentile, large widebody captain.

The total projected increase in captain and DFO positions absent the purchase of TWA by category is shown as follows. {SLIDE U}

These totals were added to the number of positions in each category.  For example, absent growth, the 95th percentile of the large widebody captaincy range on the AA list extended to seniority number 1551.  The net acquisition of additional widebody aircraft creates 120 captain and DFO jobs but no other jobs in other equipment category.  Thus, 120 jobs should be added to Neighborhood I, extending the range of that neighborhood to seniority number 1671.

Neighborhood II, under projected growth, begins with seniority number 1672 and continues to the 95th percentile of that neighborhood including the net addition of 137 small widebody captain and DFO jobs.  The former no-growth lower boundary of Neighborhood II is thus altered by including the 137 additional small widebody captain and DFO jobs plus the 120 large widebody and DFO jobs.

     {SLIDE V}

Integration of Neighborhoods III on the AA and TWA list is based upon the next expected promotion date of members of that neighborhood.  Expected promotion is defined as the date upon which the individual would move to the next higher neighborhood. Using the retirement or checkout dates of individuals higher up on the seniority list, small widebody promotion expectancy dates were calculated for current members of Neighborhood III.  The

small widebody promotion expectancy date is defined specifically as the earliest date upon which someone who is now in Neighborhood III could reasonably expect to bid, win, and hold a small widebody captain seat if they so choose.

The date upon an individual would rise to the 95th percentile of the small widebody list is defined as the date upon which they could experience their promotion to the next neighborhood and thus have a small widebody captain expectancy.  That date was derived using retirement or checkout dates of individuals higher up on the seniority list.

These small widebody captain expectancy dates performed separately for AA and TWA were then used to integrate all individuals on both lists who are now in the narrowbody captain expectancy range.  Individuals with earlier captain expectancy dates move ahead of those with later dates.

The integrated ordering of pilots in Neighborhood III was constructed using next promotion expectancy dates.  An examination of this ordering, however, revealed that, in some cases, TWA pilots with a later date of hire appeared before AA pilots with an earlier date of hire.

{SLIDE W}

This represents a source of perceived inequity, and the TWA MEC agreed to a modification of the methodology by dropping TWA pilots with a later date of hire down the list to where they were below AA pilots with an earlier date of hire.

A similar procedure was applied to persons in Neighborhood IV. Dates upon which a member of Neighborhood IV could expect to rise to 95th percentile of the narrowbody captaincy range were calculated using retirement dates of all those holding a higher seniority number on the same AA or TWA list.

{SLIDE X}

Then, the integration procedure identical to that just described was performed using these narrowbody captain expectancy dates. Again, an adjustment for date of hire was performed when TWA pilots were above AA pilots when the latter had an earlier date of hire.  This adjustment ensured that no TWA pilot with a later date of hire was placed above an AA pilot with an earlier date of hire.

Neighborhood I is composed entirely of AA pilots since no TWA pilots command large widebody aircraft.  {SLIDE Y} Thus, the first 1,671 places on the integrated seniority list is awarded to AA pilots.  This represents the top 95% of current widebody captains and also those pilots who could bid and expect to

become large widebody captain, that is those with a seniority number above the 95th percentile large widebody captain, plus an allowance for the expected growth in such positions due to aircraft growth discussed earlier.

Neighborhood II on both lists involve elements of comparability and noncomparability.  Comparability exists because pilots in this neighborhood on each list command or could choose to command small widebody aircraft.  Noncomparability exists because AA pilots in this range currently have an expectation of being able to subsequently bid large widebody captain but TWA pilots in Neighborhood II currently do not.  Noncomparability also exists, however, because 44% of AA small widebody captains have already been placed in Neighborhood I leaving the lower 56% of small widebody captains to be integrated.

Recognizing these aspects of comparability and noncomparability, the widely-known ratio method was employed to integrate members of AA Neighborhood II and TWA Neighborhood II.  Further checks were performed to ensure that no TWA pilot with a later date of hire in the integrated Neighborhood II was placed above an AA pilot with an earlier date of hire.

Using the integrated list that resulted from the above methodology, promotion expectancy dates were computed for all pilots in Neighborhoods III and IV.  Comparing these dates with

the dates obtained from the pre-integrated list revealed that AA pilots faired either better or no worse in terms of promotion expectancy dates on the integrated list than on the pre-integrated list.

Roland P. Wilder:  Professor Tannen has developed a seniority integration method that optimizes benefits of the transaction for both the American Airlines and Trans World Airlines pilot groups.  No pilot's pretransaction career expectations will be disappointed.

Former TWA pilots will enjoy enhanced job opportunities.  The upward career progression of most American pilots will be advances, and none will be impeded by implementation of a seniority list consolidated on the basis of the principles outlined by Professor Tannen.  The list (MUSIC PLAYS) so constructed will be fair and equitable in fact as well as name since each pilot will occupy his or her rightful place.

{SLIDE Z} {SLIDE AA}

## END OF PRESENTATION



SLIDE A

"...American's acquisition of TWA was a very solid, strategic move that I think is going to benefit American Airlines in the long term."

— Julius Maldutis,
Managing Director-Global Aviation Analyst
CIBC World Markets

SLIDE B

Turnaround at TWA Gave American a Reason to Save It

The Kansas City Star
January 12, 2001

SLIDE C

"Probably the single most important asset is obviously the people asset. I think the company has not only very loyal and dedicated employees, but also throughout the system, people who understand what it takes to run a successful airline."

- Julius Maldutis,
Managing Director- Global Aviation Analyst
CIBC World Markets

SLIDE D

# A Whole New Chapter:
# American uses TWA's
# bankruptcy filing skillfully in
# its acquisition, adding
# pressure on rival United

## -- CFO Magazine, May 2001

SLIDE E

"TWA brings a lot of very valuable assets to American Airlines."

-Julius Maldutis

Managing Director- Global Aviation Analyst

CIBC World Markets

SLIDE F

# TWA Officially Becomes Part of American Airlines

-- St. Louis Post-Dispatch, April 10, 2001

SLIDE G

"Midsize Airlines' weighing options; Delta, Continental and Northwest Have Few Choices for Partnerships"

-- The Dallas Morning News, January 9, 2001

SLIDE H

# Deal Could Leave Little Sky for the Also-Rans

-- The New York Times,
January 10, 2001

SLIDE I

# Canceled Flight

AirFares – The United Airlines – US
Airways deal is dead   The winner?
Don Carty's American

-- Forbes Magazine
April 16, 2001

SLIDE J

# Establishing the Rightful Place

## Goals

- Maintain AA pre-transaction bidding rights and career expectations, including pre-Jan 9, 2001 AA fleet growth projection

- Maintain TWA pre-transaction career expectations, no growth

- Avoid windfalls at the expense of other pilots

- Preclude detrimental seat equipment changes

SLIDE K

# Two Integration Concepts

- Running Mate
  - Integrating Pilots in the same pre-integration equipment category and status (ratio)

- Next Promotion Expectancy

SLIDE L

# Categories

- Large widebody captains (777 & D11)

- Small widebody captains (767, 757, &A300)

- Narrowbody captains (all others)

SLIDE M





SLIDE O



SLIDE Q

# Increase in Aircraft

|  | Number | Percent |
|---|---|---|
| Change in number of large widebody aircraft | -12 | 35.29 |
| Change in number of small widebody aircraft | -23 | 9.20 |
| Change in number of narrowbody aircraft | -2 | .4 |

SLIDE R

# Increase in captains position

| Aircraft Category | Base number captains (95ᵗʰ percentile) | Net Growth Rate | New Positions |
|---|---|---|---|
| Large Widebody | 329 | 35.29% | 116 |
| Small Widebody | 1429 | 9.29% | 131 |
| Narrowbody | 2676 | .44% | 12 |



SLIDE S

# Increase in Most Desirable First Officer Positions

| Aircraft Category | Base number DFOs | Net Growth Rate | New Positions |
|---|---|---|---|
| Large Widebody | 12 | 35.29% | 4 |
| Small Widebody | 62 | 9.20% | 6 |
| Narrowbody | 272 | .44% | 1 |

o fullscreen, ctrl+click to snap to video size

SLIDE T



Integrating Neighborhood III

# AA DOH Adjustment

- No TWA pilot with a later DOH precedes an AA pilot with an earlier DOH

Integrating Neighborhood IV

SLIDE X

AMR: TWA to Show
Profits Later This Year

-- Reuters, April 18, 2001

SLIDE Z

"I believe that this merger will go down in history as a successful one."

— Julius Maldutis,
Managing Director- Global Aviation Analyst
CIBC World Markets

SLIDE AA