UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br><br>　　　　　　　Defendant. | Civil Action No. 02-2917 (JEI) |

_____

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO BAR THE EXPERT TESTIMONY OF FELTMAN AND LEVINE AND TO LIMIT THE EXPERT TESTIMONY OF MURPHY**
_____

**SCHNADER HARRISON SEGAL & LEWIS,** LLP
Lisa J. Rodriguez
Nicole M. Acchione
Woodland Falls Corporate Complex
220 East Lake Drive, Suite 200
Cherry Hill, N.J.
(856) 482-5222

**GREEN JACOBSON, P.C.**
Allen P. Press
Joe D. Jacobson
7733 Forsyth Boulevard, Suite 700
St. Louis, MO  63100
Telephone: (314) 862-6800

DATED:  October 18, 2013

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................4

I. Levine and Murphy's Proposed Testimony About TWA's Viability and its Impact on Seniority Integration Negotiations Violates the Seventh Amendment ....................................................................4

II. TWA's Financial Viability and Its Alleged Impact on the TWA Pilots' Career Expectations is Not Relevant to Determining Damages and Does Not Rebut Plaintiffs' Experts' Opinions ...................................................................................7

III. ALPA Should Be Precluded From Arguing TWA Pilots Had Minimal or No Career Expectations ............................................11

CONCLUSION .............................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bensel v. Allied Pilots Ass'n*,
    387 F.3d 298, 305 (3d Cir. 2004) ........................................................................8

ALPA describes Levine and Murphy as rebuttal expert witnesses but, in fact, they are both causation witnesses. One only needs to read Levine and Murphy's reports to see that their role is to testify that the TWA pilots could not have achieved a better seniority integration regardless of ALPA's breach. Levine and Murphy opine that *no* better list could have been achieved in the absence of ALPA's breach, and that the TWA pilots were lucky they were not completely stapled. *See* Levine Rpt., p. 36; Murphy Rpt., ¶147.[1] These are improper opinions because they contradict the first jury's verdict that the TWA pilots were damaged as a result of ALPA's misconduct.

The real reason ALPA wants to use Levine and Murphy is to impeach the jury verdict, which found for the plaintiffs on the issue of causation. ALPA admits as much in its brief. For example, at page 27, ALPA argues that Murphy's opinions go to whether *any* list other than Supplement CC was achievable. Def.'s Opp'n Br., p. 27. ALPA even acknowledges at page 28 of its brief that its experts want to

---

[1] The Reports of Michael E. Levine dated March 15, 2012, Kevin Murphy dated June 7, 2012, and James S. Feltman dated March 15, 2012, were attached as Exhibits 1, 3 and 5 respectively to Plaintiffs' Opening Brief. Docket No. 568. Given the volume of materials submitted to the Court in connection with the parties' *Daubert* motions (Docket Nos. 568 and 569) and ALPA's motion for summary judgment (Docket No. 569), reference is made to the docket where these exhibits have already been filed, rather than resubmitting the documents.

present testimony it wishes it had presented during the first trial. Def.'s Opp'n Br., p. 28.

The first jury, though, already decided the issue of whether ALPA caused damage. The Court expressly instructed the jury that to find for plaintiffs it had to conclude that, but for ALPA's actions, there would have been a more favorable seniority list. Murphy's opinion that the "economics of bargaining" produced Supplement CC and Levine's opinion that the plaintiffs could not have achieved a better outcome are inconsistent with the jury's verdict.

In its attempt to avoid the Seventh Amendment bar, ALPA tries to rewrite Levine and Murphy's reports by conjuring new opinions for them. ALPA claims they opine that alternative, "marginally" better seniority integrations could have been achieved but for ALPA's breach. Def.'s Opp'n Br., p. 3 ("both experts squarely address the issue of how much more favorable the outcome of any seniority list integration achieved through negotiations might have been"). ALPA's rewrite of its experts' reports does not transform the unequivocal opinions expressed by its witnesses: there would be no difference in seniority lists even if ALPA had not breached its duty.  These experts do not allow for the possibility of a "marginally better" list. They stop their analysis with the product of ALPA's breach -- Supplement CC -- offering no alternative and not even contemplating a but-for world free of the breach and causation the first jury found.

ALPA also contends its experts provide evidence about TWA's pre-merger financial condition and viability that contradict assumptions allegedly made by Plaintiffs' experts. Def.'s Opp'n Br., p. 5, 31-37. ALPA misrepresents Plaintiffs' expert testimony. Salamat, for instance, made no assumptions concerning the financial viability of TWA. In fact, he expressly stated that he did not consider the financial viability of TWA because it was irrelevant to his analysis. Salamat Dep. Tr. I:85.[2] While Farber did consider the economics of TWA when selecting "comparable" transactions, he did not make the assumptions attributed to him by ALPA about TWA's pre-merger financial viability.

Finally, ALPA claims the pre-merger financial viability of TWA, standing alone, dictates the TWA pilots' career expectations, and that this evidence is relevant to assist the jury in determining what alternative seniority integrations could have been achievable absent the breach. ALPA's experts, however, do not offer alternative, more conservative, seniority lists based upon these alleged diminished career expectations. Instead, they only opine that the TWA pilots, regardless of ALPA's actions, were not harmed. Contrary to the position its experts take today, ALPA never told the TWA pilots that they had no career expectations.

---

[2]   Salamat's expert report was attached as Exhibit 1 to Plaintiffs' Opposition to ALPA's Motion to Exclude. Salamat's deposition transcripts were also attached as Exhibits 6-8, Docket No. 579-1.

3

Rather, when the events underlying this case were actually unfolding ALPA touted a seniority list very favorable to the TWA pilots that ALPA asserted considered the legitimate career expectations of both pilot groups.

## ARGUMENT

I. **Levine and Murphy's Proposed Testimony About TWA's Viability and its Impact on Seniority Integration Negotiations Violates the Seventh Amendment.**

ALPA states that Levine and Murphy "squarely address the issue of how much more favorable the outcome of any seniority list integration achieved through negotiations between the TWA MEC and the APA might have been for the TWA pilots as a whole." Def.'s Opp'n Br., p. 3. ALPA states Levine and Murphy address the "range of achievable seniority integration outcomes," and that both experts conclude that the "the seniority integration would not have been significantly more favorable to the TWA pilot group given the overarching circumstances of the negotiations with the APA." Def.'s Opp'n Br., p. 4.

This is not what Levine and Murphy say.

Levine, following his lengthy and detailed review of TWA's financial status, concludes: "TWA pilots were fortunate to have secured *any* deviation from an arrangement that stapled all of them to the bottom of the seniority list." Levine Rpt., p. 36. While ALPA tries to recast this conclusion to mean that Levine testified that a marginally better list could have been achieved, that is simply not

4

Levine's opinion. ALPA's arguments have no resemblance to the words Levine actually uses in his report.

ALPA also contends Levine does not "rule out the possibility that the TWA pilots could have obtained a modestly more favorable seniority integration," yet that is exactly what he does. ALPA cites to nowhere in his report or testimony where Levine holds open even a glimmer of hope for the TWA pilots, let alone the "rays of hope ... that with appropriate continued representation by ALPA, a more propitious seniority agreement than Supplement CC could have been obtained for the Class." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 305 (3d Cir. 2004). Rather, Levine writes the "TWA pilots had very poor prospects at the time of the acquisition and the American pilots knew it, so there was *no* prospect of improving them through negotiating tactics and the TWA pilots therefore had little if any choice but to accept the American pilots' offer." Levine Rpt., p. 7.

Nothing in Levine's report or deposition testimony reflects an opinion on his part that the TWA pilots would have achieved even a marginally better list absent ALPA's breach. He certainly does not offer an alternative but-for list from which a jury could calculate damages. To the contrary, Levine concludes that there was nothing ALPA could have done to change the result and, thus, the TWA pilots should feel "fortunate" for not having been stapled to the bottom of the seniority list. Levine Rpt., p. 36.

5

Levine's opinion should be excluded because it is in direct conflict with the first jury's verdict and thus violates the Seventh Amendment's prohibition against a second jury reconsidering an issue decided by the first jury.

Murphy's opinions suffer from the same defect. Murphy, like Levine, also opines that the TWA pilots were not harmed.

> My analysis shows that Supplement CC gave the TWA pilots a reasonable share of the benefits from integrating the American and TWA pilots. *Thus, there is no support in the economics of bargaining and negotiation to suggest that the TWA pilots have been damaged.*

Murphy Rpt., p. 47 (emphasis added).

In its brief, ALPA reinvents Murphy's opinion to be something it is not. "[T]hey [Murphy and Levine] certainly do not rule out the possibility that the TWA pilots could have obtained a modestly more favorable seniority integration in which some small number of pilots would be better off than under Supplement CC." Def.'s Opp'n Br., p. 4. Again, ALPA's arguments are at odds with its own expert, who unambiguously opines that the TWA pilots have not been damaged. The "economics of bargaining," Murphy claims, result in Supplement CC and nothing else. Murphy Rpt., p. 47.

ALPA acknowledges that the Seventh Amendment prohibits it from presenting evidence to the damages phase jury that a more favorable seniority list could not have been achieved by the TWA pilots even if ALPA had not breached

6

its duty of fair representation. Def.'s Opp'n Br., p. 15. Yet, that is precisely what Levine and Murphy's opinions do, if permitted. ALPA even admits that it is attempting to retry liability through the testimony of these experts, arguing that ALPA "must be able to present evidence – expert and fact – going to the issue of whether *any* alternative list was achievable in any negotiations between the TWA MEC and the APA." Def.'s Opp'n Br., p. 27 (emphasis added). The issue for the damages trial, however, is not whether *any* alternative list was achievable. That issue has already been answered in the affirmative by the first jury, which found that a better list could have been achieved. The issue now is *how much better* a list than Supplement CC's list was achievable but for ALPA's breach. None of ALPA's experts will assist the jury in answering the one question that remains to be answered. ALPA is barred by the Seventh Amendment from presenting evidence or argument to the contrary.

## II. TWA's Financial Viability and Its Alleged Impact on the TWA Pilots' Career Expectations is Not Relevant to Determining Damages and Does Not Rebut Plaintiffs' Experts' Opinions.

ALPA contends that evidence about TWA's lack of financial viability is admissible to rebut assumptions made by Plaintiffs' experts. Plaintiffs' experts' opinions, however, do not depend upon any assumption that TWA would be a "viable" air carrier absent the transaction or on a stand alone basis.

7

Salamat testified that he made no assumptions concerning TWA's financial viability in reaching his opinions. Salamat Dep. Tr. I: 50-51. Salamat also testified that the subjective, pre-merger career expectations of the two pilot groups were irrelevant to his analysis, "[b]ecause at the end of the day the premerger career expectations of pilots matters to the extent that they brought X number of jobs with them and not … what may or may not happen with … the company absent the merger. That stuff is argued. In my experience, it doesn't play any significant role in the outcome of seniority integrations." Salamat Dep. Tr. at I:85.

Thus, Salamat did not rely on any assumption about TWA's finances, its viability, or the pilots' resulting career expectations when developing his but-for seniority lists. There being no such assumptions baked into his opinions, ALPA can not "rebut" his opinions with expert testimony that analyzes TWA's pre-merger financial condition or viability. ALPA can cross-examine Salamat about his experience that financial viability is not a factor in how arbitrators resolve seniority mergers without conducting a mini-trial about TWA's pre-merger viability. Such a mini-trial would be pointless and, because pointless, confusing to the jury.

With regard to Farber, he did consider TWA's finances in a very general way when he selected the airline mergers he deemed comparable to the TWA/American transaction. Farber distinguished between those airlines that were financially stressed, on the one hand, and those that had stopped flying, on the

8

other, and placed TWA in the first group. Farber Dep. Tr. II:15.[3] Farber did not conduct, and was not asked to conduct, an in-depth analysis of what might have happened to TWA absent the American transaction.

The notion that American was TWA's "white knight," and saved the airline and its employees from total ruin, has been raised in other contexts. For instance, one of ALPA's other experts, Richard Kasher, *rejected that very argument* when he presided as the arbitrator over the TWA/American mechanics seniority dispute. During the course of that arbitration, the American employees expressed sentiments similar to those expressed now by ALPA through its experts. Kasher refused to accept the characterization of American as a "white knight," even after hearing testimony that TWA was in "financial extremis" and its future "bleak." Rodriguez Decl., Ex. A (Kasher Award, pp. 44-45).

In selecting comparables, Farber stated, "I chose my group of comparable mergers by looking for transactions in which the acquired airline was in weakened financial condition, but still flying, and contributed substantial assets to the combined airline." Farber Rpt., p. 20. He testified that he did not need to conduct a detailed examination of TWA's financial condition. Instead, he was satisfied with

---

[3] Farber's expert report was attached as Exhibit 9 to Plaintiffs' Opposition to ALPA's Motion to Exclude. Farber's deposition transcripts were also attached as Exhibits 10-11. Docket No. 579-1.

knowing that TWA was weak but still flying, and that it brought jobs and assets to the transaction. Farber Dep. Tr. I:75-77, 130. The transactions he selected as comparable were similar to TWA in that they, too, involved airlines in weakened condition that were still flying that brought substantial assets to the combined airline.

ALPA latches onto Farber's use of the word "imminent" in Paragraph 33 of his report (as in "had ceased flying or was expected to cease flying imminently") and contends that, as a result of this phrase, an in-depth mini-trial on TWA's viability, featuring multiple fact witnesses and two different expert witnesses, is now necessary to "rebut" Farber's selection of comparables. ALPA, however, can adequately cross-examine Farber about his opinions without this additional evidence.  Farber testified that he believed that TWA was not in imminent danger of not flying because of the presence of another suitor – Carl Icahn. Farber Dep. Tr. 125 (Day 1); s*ee also* Farber Dep. Tr. II:5 (TWA was not free falling).  Farber also explained that what he meant was that TWA was not in a situation at the time of the transaction "in what I would call an output free fall [where] it was absolutely clear that the routes and equipment they used would no longer be used…." Farber Dep. Tr. II:14. A mini-trial on TWA's financial viability, therefore, would not even address the factors that Farber explained he was considering when describing TWA as an airline that was not in imminent danger of not flying.

## III. ALPA Should Be Precluded From Arguing TWA Pilots Had Minimal or No Career Expectations.

ALPA contends that a carrier's lack of financial viability necessarily establishes that the carrier's pilots lack career expectations. This contention is without foundation in the record. Moreover, the evidence in the record, and the first jury's finding on causation, leave no room for ALPA's argument. There are many factors relevant to a pilot's career expectations, the primary one being the jobs the acquired airline brings to the merger. *See* Salamat Dep. Tr. I:85. ALPA offers no expert testimony to the contrary.

ALPA's contention that the TWA pilots had no reasonable career expectations because of TWA's financial viability is also inconsistent with the evidence. Contemporaneous with the seniority negotiations between the TWA and American pilots, ALPA supported a seniority integration proposal that ALPA acknowledged took into account the career expectations of both the TWA and American pilots. *See* Tannen's Rightful Place Proposal Transcript ("RPP Tr.").[4] At no time did ALPA tell the TWA pilots they had no career expectations. Instead, ALPA touted the "Rightful Place Proposal" - a seniority proposal that, incidentally, is more favorable to the TWA pilots than the proposals advanced by Plaintiffs'

---

[4] A transcript of Tannen's Rightful Place Proposal was attached as Exhibit B to the Declaration of Lisa J. Rodriguez submitted in Opposition to ALPA's Motion for Summary Judgment. Docket No. 580-1.

11

experts - as one "based on a reasoned and scientific approach that considers many factors, such as the career expectations of both pilot groups." RPP Tr., p. 2.

Moreover, while ALPA and its experts now want to assert that TWA was essentially valueless, to wit, neither it nor its pilots were bringing anything of value to the transaction with American to justify a seniority list any different from Supplement CC, that is not what ALPA was saying in real time. When ALPA was touting the seniority proposal that it said reflected both TWA and American pilots' career expectations, ALPA said there were many benefits that TWA brought to the transaction:

> "American's acquisition of TWA was a very solid, strategic move that … is going to benefit American." (RPP Tr., Slide B, quoting Julius Maldutis, Managing Director, Global Aviation Analyst);
>
> "Turnaround at TWA gave American a reason to save it." (RPP Tr., Slide C, quoting The Kansas City Star, January 12, 2001);
>
> "TWA brings a lot of very valuable assets to American Airlines." (RPP Tr., Slide F, quoting Julius Maldutis, Managing Director, Global Aviation Analyst).

ALPA thus admitted that a pilot's career expectation is not based exclusively on the carrier's financial condition, but on a variety of factors including the assets brought to the transaction, such as the assets TWA brought to its merger with American. The opinions of Feltman and Levine about TWA's pre-merger financial condition are thus inconsistent with the evidence and therefore irrelevant.

## **CONCLUSION**

The expert reports and testimony of defense experts James Feltman and Michael Levine should be excluded in their entirety. Defense expert Kevin Murphy should be precluded from opining that the TWA pilots would not have obtained a seniority integration more favorable than Supplement CC, regardless of ALPA's breach of its duty of fair representation.

**SCHNADER HARRISON SEGAL & LEWIS LLP**

BY:_____s/ Lisa J. Rodriguez_____
  Lisa J. Rodriguez
  Nicole M. Acchione
  Woodland Falls Corporate Park
  220 Lake Drive East, Suite 200
  Cherry Hill, NJ 08002-1165
  (856) 482-5222

  **GREEN JACOBSON, P.C.**
  Allen P. Press
  Joe Jacobson
  7733 Forsyth Boulevard, Suite 700
  St. Louis, Missouri 63105
  (314) 862-6800
  Counsel for Plaintiffs

13