# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, *et al.*,<br><br>           *Plaintiffs,*<br><br>    v.<br><br>AIR LINE PILOTS ASSOCIATION,<br>INTERNATIONAL,<br><br>           *Defendant.* | Civil Action No. 02-cv-2917 (JEI) |

# BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**SCHNADER HARRISON SEGAL & LEWIS** LLP
Lisa J. Rodriguez
Nicole M. Acchione
Woodland Falls Corporate Complex
220 East Lake Drive, Suite 200
Cherry Hill, N.J.
(856) 482-5222

**GREEN JACOBSON, P.C.**
Allen P. Press
Joe D. Jacobson
7733 Forsyth Boulevard, Suite 700
St. Louis, MO  63100
Telephone: (314) 862-6800

Dated:  February 14, 2014

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................... 1

BACKGROUND OF THE LITIGATION ............................................ 3

   I.   FACTUAL BACKGROUND ...................................................... 3

   II.  LITIGATION HISTORY ......................................................... 3

   III. THE PROPOSED SETTLEMENT ........................................... 8

       A.   Relief to the Class ......................................................... 9

       B.   Release to ALPA ......................................................... 12

       C.   Attorneys' Fees and Reimbursement of Litigation Expenses ............ 12

       D.   Named Plaintiff Incentive Awards ................................. 13

ARGUMENT ................................................................................... 14

   I.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................................. 14

       A.   The Standards for Preliminary Approval ......................... 14

       B.   This Settlement Is The Result of Arm's-Length Negotiations by Experienced Class Counsel On the Brink of Trial and After Complete Discovery. ................................................. 17

       C.   The Proposed Settlement Provides Substantial Benefit to the Class ................................................................... 19

II. THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED........................................................................20

    A. The Settlement Notice Informs The Class That There Will Not Be A Second Opportunity to Opt-Out.................................23

III. SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE .................................................................................24

CONCLUSION ..................................................................................24

PHDATA 4850200_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alves v. Main,*
 2012 U.S. Dist. LEXIS 171773 (D.N.J. 2012)....................................................18

*Bensel v. Air Line Pilots Association,*
 387 F.3d 298 (3d Cir. 2004).....................................................................5

*Bensel v. Allied Pilots Ass'n,*
 263 F.R.D. 150 (D.N.J. 2009) ...................................................................3

*Bensel v. Allied Pilots Ass'n,*
 675 F.Supp.2d 493 (D.N.J. 2009) ..............................................................3

*Bernhard v. TD Bank, N.A.*
 2009 U.S. Dist. LEXIS 92308, *5 (D.N.J. Oct. 5, 2009)...................................17

*D'Amato v. Deutsche Bank,*
 236 F.3d 78 (2d Cir. 2001)......................................................................17

*Denney v. Deutsche Bank AG,*
 443 F.3d 253 (2d Cir. 2006).....................................................................23

*Ehrheart v. Verizon Wireless,*
 609 F.3d 590 (3d Cir. 2010).....................................................................14

*Girsh v. Jepson,*
 521 F.2d 153 (3d Cir. 1975).....................................................................16

*In re Cendant Corp. Litig.,*
 264 F.3d 201 (3d Cir. 2001).....................................................................16

*In re Cendant Corp. Sec. Litig.,*
 109 F.Supp.2d 235 (D.N.J. 2000) ..............................................................21

*In re Citigroup Inc. Bond Litigation*
 2013 U.S. Dist. LEXIS 117838, (S.D.N.Y. Aug. 20, 2013 ...............................17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
 55 F.3d 768 (3d Cir. 1995)...............................................................15, 16

PHDATA 4850200_1

*In re MetLife Demutualization Litig.*,
  689 F.Supp.2d 297 (E.D.N.Y. 2010)................................................................23

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  177 F.R.D. 216 (D.N.J. 1997).......................................................................21

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997)...................................................................18

*In re School Asbestos Litig.*,
  921 F.2d 1330 (3d Cir. 1986)......................................................................15

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)........................................................................15

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 2008)..............................................................16

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950)....................................21

*Tiro v. Public House Invs., LLC*,
  2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013)...............................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96, 114 (2d Cir. 2005)...................................................................24

## RULES, STATUTES AND OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ...................................................................22

Federal Rule of Civil Procedure 23(b)(2) ........................................................4, 6

Federal Rule of Civil Procedure 23(b)(3) ............................................................6

Federal Rule of Civil Procedure 23(e) .................................................15, 16, 24

Federal Rule of Civil Procedure 23(e)(1)(B) ......................................................20

Federal Rule of Civil Procedure 23(e)(3)...........................................................23

Federal Rule of Civil Procedure 23(e)(4)............................................................23

PHDATA 4850200_1

Manual for Complex Litigation, § 30.42 (4th Ed.) ....................................... 16, 20, 21

Newberg on Class Actions, § 11.26 (4th Ed. 2010)................................................ 15

Plaintiffs submit this brief in support of their motion requesting (i) preliminary approval of the Settlement; (ii) approval of the form and manner of notice to the certified class; and (iii) the scheduling of a fairness hearing to consider final approval of the Settlement, approval of the Plan of Allocation, and approval of Class Counsel's motion for an award of attorneys' fees, payment of litigation expenses, and payment of incentive awards to the current and former Named Plaintiffs.

## **INTRODUCTION**

Class Counsel, on behalf of the certified Class of former TWA Pilots, have agreed to settle all claims against the Air Line Pilots Association, International ("ALPA") for its breach of the duty of fair representation to the TWA Pilots, in return for a payment to the Class of $53,000,000. This Settlement Fund will be deposited in an escrow account subject to the jurisdiction of the Court. This settlement provides a substantial benefit to the Class and is a good result in light of the risks posed by continued litigation.

The Settlement was reached after 11 years of hard-fought litigation, extensive discovery, rigorous motion practice, and a five-week trial on liability. Following arm's-length settlement negotiations conducted in November 2013 by JAMS mediator David Geronemus, Esquire, an agreement-in-principle was reached. The Settlement Agreement was finalized two months before trial on

1

damages was scheduled to begin and after the parties had concluded briefing on *Daubert* and summary judgment motions. The Settlement Agreement was finalized and executed on January 23, 2014.

During the course of the litigation, Class Counsel: (i) engaged in extensive discovery, including participating in over 50 depositions throughout the country, and the production and review of more than 70,000 pages of documents produced by plaintiffs, ALPA and multiple non-parties; (ii) litigated electronic discovery and spoliation issues, including through the assistance of a Court-appointed Special Master, the Honorable Ronald Hedges; (iv) defeated Defendant's pre- and post-trial dispositive motion practice, including two motions for decertification of the Class; (v) successfully tried the issues of liability and causation before a unanimous 12-person jury in the summer of 2011; (vi) submitted two expert reports on the issue of damages; (vii) completed nearly all pre-trial preparations in connection with the damages trials; and (viii) engaged in two sets of mediated discussions for a possible settlement of the Action (the first mediation, over two days, was unsuccessful) before reaching an agreement in principle to settle just months before the trial on damages was scheduled to begin. Thus, at the time the settlement agreement was reached, Class Counsel had a thorough understanding of the claims and the risks of continued litigation.

Class Counsel, who have extensive experience litigating class and complex actions, believe that the Settlement is in the best interests of the Class and should be approved.

## BACKGROUND OF THE LITIGATION

### I.   FACTUAL BACKGROUND

This Court, having presided over the lawsuit for the past 11 years, and over the liability trial, is fully familiar with the facts giving rise to the claims against ALPA and with ALPA's defenses. Plaintiffs reference such facts below only to the extent relevant to the issues raised in this motion, but otherwise assume familiarity with the facts as described in this Court's prior decisions. *Bensel v. Allied Pilots Ass'n,* 675 F.Supp.2d 493 (D.N.J. 2009) (denying ALPA's motion for summary judgment); *Bensel v. Allied Pilots Ass'n,* 263 F.R.D. 150 (D.N.J. 2009) (denying Plaintiffs' motion for sanctions). *See also* Docket Nos. 478 (Order denying ALPA's post-trial motions), 480 (May 4, 2012 Transcript of Post-Trial Motions).

### II.   LITIGATION HISTORY

Filed in 2002, this case was initially brought against former Named Plaintiff[1] LeRoy "Bud" Bensel and a defendant class of former TWA Pilots by the American Airlines pilots' union, the Airline Pilots Association or "APA." The APA sought

---

[1]   Named Plaintiffs are also referred to as "Class Representatives." *See* Settlement Agreement, ¶ 1(i).

declaratory relief concerning the Supplement CC seniority integration adopted by the APA and American Airlines following American's asset acquisition of TWA, Inc.

Bensel, in his representative capacity, filed a counter-claim against the APA and sued ALPA as a third party Defendant.[2]

Early in the litigation, the Court reorganized the case so that Bensel and the other pilots were listed as the plaintiffs, individually and on behalf of the former TWA Pilots.[3] ALPA, APA, TWA, LLC, and American Airlines were named as defendants. *See* Docket No. 49.

By Order dated February 12, 2003, the Court certified the following class under Federal Rule of Civil Procedure 23(b)(2):  All persons formerly employed as pilots by TWA, Inc., who became or may become employed as pilots by TWA,

---

[2]    The former TWA pilots were initially represented by the law firm Cureton Kaplan, PC, until that firm's withdrawal in 2005. That firm was formally removed as counsel by Order May 16, 2006, when current Class Counsel agreed to take over the representation of the Pilots on a contingent fee basis. *See* Docket No. 159

[3]    The original 12 named plaintiffs were: LeRoy "Bud" Bensel, James Arthur, Patrick Brady, Theodore Case, Matthew Comlish, Darshanprit Dhillon, Lemuel Dougherty, Michael Finucan, John Hefley, Howard Hollander, Robert Pastore, and Sally Young. *See* Docket No. 48. Because of case management issues, in 2006, the 12 were reduced to six (Bensel, Brady, Case, Finucan, Hollander and Young) and subsequently reduced to five with the removal of Bensel. *See* Docket Nos. 159 and 344.

PHDATA 4850200_1

LLC as a result of the April 2001 asset sale between American Airlines and TWA, Inc. *See* Docket No. 48.

On May 2, 2003, Defendants moved to dismiss Plaintiffs' complaint and, by Order and Opinion dated July 18, 2003, this Court granted the motions, dismissing Plaintiffs' complaint in its entirety. Plaintiffs appealed the dismissal to the Third Circuit and, by Opinion dated October 26, 2004, the Third Circuit reversed the dismissal as to the TWA Pilots' claim against ALPA. The case was remanded back to the District Court for further proceedings. *Bensel v. Air Line Pilots Association*, 387 F.3d. 298 (3d Cir. 2004).

Following remand, in 2005 former Class Counsel sought to be relieved as Counsel. *See* Docket Entry No. 121. Although the Court denied the request until replacement counsel was retained, the entire case was essentially stayed for 12 months until current Class Counsel entered their appearance. During that 12 month hiatus, no discovery was conducted and the case did not advance in any material way.

In April 2006, current Class Counsel filed an Order to Show Cause why the Class Representatives should not be realigned. By Order dated May 16, 2006, current Class Counsel were appointed by the Court and the Named Plaintiffs reduced from 12 to six. Docket No. 159.

In September 2006, Class Counsel moved to recertify the Class under Federal Rule of Civil Procedure 23(b)(3), instead of Rule 23(b)(2), under which the Class had been certified. Docket No. 176. In connection with that motion, Class Counsel obtained Court approval of the form and manner of disseminating a Notice of Class Action, providing class members with a description of the litigation and an opportunity to opt out. *See* Docket No. 213.[4] The Class Notice, distributed to Class Members and dated May 18, 2007, contained a description of Plaintiffs' claims and a definition of the Class, identified the Class Representatives, and explained to Class Members the procedure for opting out. *See* Exhibit E (Notice of Pendency). Six members of the class of 2337 TWA Pilots opted out. *See* Exhibit D for a list of opt outs.

Intensive discovery efforts began immediately after Class Counsel's appointment. Class Counsel defended the depositions of six current or former Named Plaintiffs, and began reviewing, coding, and indexing the 26,000 documents produced by ALPA prior to Class Counsel's appointment. Additional

---

[4]     The Court approved Notice of Pendency modified slightly the class description to omit the phrase "or may become" employed as a pilot with TWA, LLC. This modification did not change the composition of the Class in any way and, instead, accurately reflected the fact that no TWA pilot "may become employed" by TWA, LLC since TWA, LLC had long ceased to exist. *See* Ex. E (Notice of Pendency, p. 1).

extensive document discovery continued from ALPA as well as non-party witnesses, resulting in the production and review of over 50,000 additional documents. Throughout the litigation, Plaintiffs served multiple sets of Interrogatories and Requests for the Production of Documents upon ALPA and responded to ALPA's written discovery requests. Plaintiffs also served subpoenas on non-parties for the production of documents and testimony.

Class Counsel deposed 23 witnesses, including 16 ALPA employees and agents. Class Counsel also initiated a spoliation of evidence inquiry with the Court that resulted in the appointment of Special Master Ronald Hedges and review of ALPA's backup tapes for additional documents believed to be spoliated by ALPA.

Upon the conclusion of discovery, Class Counsel successfully opposed ALPA's Motion for Summary Judgment and prepared their pretrial submissions. The pretrial included over 300 exhibits, designations for 11 depositions, and the designation and preparation of over a dozen witnesses. Docket No. 348, 352.

Over the course of five weeks in the summer of 2011, Class Counsel presented evidence to a 12-person jury about whether ALPA breached its duty of fair representation in connection with the TWA pilots' placement on the American Airlines' pilot seniority list. The jury unanimously concluded that ALPA breached its duty of fair representation to the class of more than 2300 former TWA pilots

PHDATA 4850200_1

and that ALPA's breach caused injury in fact to TWA pilots.  Docket No. 413 (Jury Verdict).

Immediately following the verdict, ALPA filed post-trial motions for a new trial, judgment notwithstanding the verdict, and to decertify the class.  Docket Nos. 415, 416 and 444. The fully briefed motions were stayed for five months while the parties unsuccessfully participated in a first round of mediation sessions with former federal District Judge James Rosenbaum.  By Order dated May 4, 2012, the Court denied ALPA's post-trial motions, Docket Entry 478, and the parties then engaged in extensive damage discovery. This discovery included the depositions of former TWA executives, APA officers, and investment bankers as fact witnesses, as well as the exchange of seven expert reports and depositions of each expert.

At the time Settlement was reached, both parties had filed and fully briefed multiple motions to strike expert testimony. ALPA filed a motion for summary judgment on damages. Trial on damages was scheduled to begin March 17, 2014.

## III.   THE PROPOSED SETTLEMENT

Any settlement requires the parties to balance the merits of the claims and defenses asserted and to consider the risks of continued litigation and delay, including risks of collectibility. Plaintiffs maintain that the claims asserted against ALPA are meritorious, that maintenance of class certification would prove successful in the face of appellate scrutiny, and that Plaintiffs would prevail at the

damage phase trial. ALPA, however, maintains that Plaintiffs would not prevail on the trial on damages and, even if they did, the liability or damages verdicts would be reversed on appeal. ALPA has demonstrated its willingness to litigate all claims vigorously.

The parties have concluded that the benefits of settlement in this case outweigh the benefits of continued litigation in light of the risks, which include but are not limited to the risk of having Plaintiffs' damages experts excluded, the risk of summary judgment in favor of ALPA, the time and expense associated with proceeding to trial on damages, the risk of losing at trial, the time and expense associated with appellate review, the risk of losing on appeal, the countless uncertainties of litigation, and serious issues regarding collectability of any judgment obtained for the Class, including ALPA's meager net worth and disputes regarding insurance coverage for the claims.

The material terms of the Settlement, as set forth in the Settlement Agreement attached as Exhibit A, are summarized as follows:

**A.     Relief to the Class**

Under the allocation plan, every member of the Class will receive an allocation of settlement funds of no less than $200. The amounts awarded are intended to reflect the relative economic harm suffered by the pilots, with the most senior and most junior pilots on the TWA seniority list receiving lesser amounts,

while the bulk of the settlement funds are distributed to those in the middle of the seniority list. Pilots with TWA seniority numbers from 1 to 821 will generally receive amounts ranging for $200 up to an estimated $2,600. Roughly half of this group, generally the most senior pilots, will receive the minimum amount of $200 each. Pilots with TWA seniority numbers from 822 to 994 will generally receive amounts estimated at between $2,800 and $31,000. Pilots with TWA seniority numbers from 946 to 1881 will generally receive the maximum amount, estimated at $32,000. Pilots with TWA seniority numbers from 1882 to 2103 will generally receive amounts estimated at between $3,000 and $25,000. Pilots with TWA seniority numbers from 2104 to 2337 will generally receive amounts estimated at between $200 and $2,000. Roughly half of this group, generally the most junior pilots, will receive the minimum amount of $200 each. Pilots who were members of the Class but who never worked under Supplement CC receive the minimum award of $200.

The reason all of these figures are estimated is that the determination of the amount to be received by Class members in the seniority list is calculated using a series of formulas that determine and then use a constant referred to as the X-Value. The formulas were developed by the Class's damages expert, Rikk Salamat. The precise value of the X-Value depends on the total Net Settlement Fund after deduction of attorneys' fees and other expenses. It also depends on the number of

Class members who submit claims, among other factors. The estimates in the prior paragraph are based on a Net Settlement Fund for distribution of $32 million and full participation by all pilots.

The formulas consider, among other factors, the number of months a pilot was furloughed under Supplement CC when he or she would not have been furloughed under a Date-of-Hire ("DOH") seniority list and the number of months a pilot could have held a captain's seat under DOH but not under Supplement CC. The formulas also take into account the average set-off for alternative employment earnings by furloughed pilots and the pay rate percentages in sections 3.A.4 and 3.B.2 in the 2003 American pilots' collective bargaining agreement.

Additional information concerning the formulas used to determine the plan of allocation, as well as information concerning the plan of allocation itself, will be made available to the Class on the settlement website. A detailed narrative description of the calculations and a spreadsheet showing the awards proposed for each Class member will be provided to the Court in connection with Final Approval.

Amounts remaining in the Settlement Fund after distribution under the allocation plan described above will be allocated to Class Members in a second distribution. If amounts remain in the Settlement Fund after the second distribution, Class Counsel will seek Court approval for a *cy pres* distribution to an

organization to be determined by Counsel as approved by the Court. *See* Settlement Agreement, ¶ 12.

### B.    Release to ALPA

In exchange for the consideration paid by ALPA and its re-insurers, and upon compliance with the terms of the Settlement Agreement, Class Members who have not previously excluded themselves from the Class will provide a release of their claims in this case. Specifically, the Class Members will release ALPA and its re-insurers from "legal and administrative relief of any kind … arising from or relating to facts alleged in the Action, whether known or unknown, asserted or unasserted, that any Class Member who has not timely excluded himself or herself from the Action ever had, could have had, now has, or can, shall or may have in the future arising out of the Action or the underlying allegations." Settlement Agreement, ¶ 31(a). Each Class Member will be required to sign and return a Claim Form to the Claims Administrator, in the form attached as Ex. C, before receiving a payout from the Settlement Fund.

### C.    Attorneys' Fees and Reimbursement of Litigation Expenses

Prior to the Fairness Hearing, Counsel will file a motion seeking an award of attorneys' fees in an amount of 30 percent of the total settlement fund, and for reimbursement of all reasonable litigation expenses incurred by Class Counsel. Although Class Counsel could seek up to one-third of any award or settlement for

fees, Counsel has instead agreed to set aside 3%, or $1.5 million, of what they could seek as part of their fee, in a fund to reimburse class members for their contributions towards litigation expenses. Settlement Agreement, ¶ 15. As part of the Class Notice, class members will be instructed that they can submit a request for reimbursement of monetary contributions to the litigation, along with any documentation supporting their request, *e.g.*, copies of checks or receipts, to the Claims Administrator. To qualify for reimbursement, a class member will also be required to attest under penalty of perjury that they did, in fact, make the claimed contributions.

To the extent such expenses exceed the $1.5 million set-aside fund, class members being reimbursed shall be paid on a pro-rata basis. After payment of such expenses, any remaining funds in the set-aside shall revert to the Settlement Fund. Settlement Agreement, ¶ 15.

### D.   Named Plaintiff Incentive Awards

The parties have agreed that Class Counsel will petition the Court for Named Plaintiff Incentive Awards, and ALPA has agreed not to object to any reasonable request. Class Counsel intend to seek Court approval for the following incentive award payments:

> Sally Young, Howard Hollander: $80,000 each
> Patrick Brady, Theodore Case, Michael Finucan: $60,000 each
> Bud Bensel, Matthew Comlish, Robert Pastore: $25,000 each

James Arthur, John Hefley: $10,000 each
Lemuel "Butch" Dougherty, Darsh Dhillon: $2,500 each

These awards will appropriately compensate the Named Plaintiffs for the considerable time and effort they respectively expended in prosecuting this case against ALPA. Each Named Plaintiff contributed to the litigation in meaningful yet different ways. The proposed awards compensate the current Named Plaintiffs for their continued service as class representatives and their participation in discovery, depositions and trial.  Howard Hollander and Sally Young are compensated an additional $20,000 for their service as court appointed liaison class representatives. Docket No. 159, ¶ 3.

The individual contributions of each Named Plaintiff will be detailed further in connection with final approval, and is addressed here because the Class will be given Notice of the proposed incentive awards in the Settlement Notice.

**ARGUMENT**

**I.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

**A.   The Standards for Preliminary Approval**

The settlement of class action litigation is favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the

14

federal courts"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise would linger for years").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions. The first step a court takes in approving a class settlement is to preliminarily evaluate the proposed settlement. *In re GMC Trucks*, 55 F.3d at 785. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Newberg on Class Actions*, § 11.26 (4th Ed. 2010).

Preliminary approval is appropriate, and there is an initial presumption of fairness, when the court finds that "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are

experienced in similar litigation; and (4) only a small fraction of the class objected." [5] *In re Cendant Corp. Litig.*, 264 F.3d 201, 233, n. 18 (3d Cir. 2001); *In re GMC Trucks*, 55 F.3d at 785; *Manual for Complex Litigation*, § 30.42 (4th Ed.).

Once preliminary approval is granted and after notice of the settlement reaches the class, enabling class members to object to the settlement if they wish, a court must hold a hearing to make a final decision as to whether the settlement is "fair, reasonable, and adequate," as required by Rule 23(e). *In re GMC Trucks*, 55 F.3d at 785. For purposes of final settlement approval, courts in this Circuit apply nine additional factors – the "*Girsh*" factors – to evaluate whether a settlement meets the requirements of Rule 23(e). *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975).[6]

---

[5]    This last factor, regarding the portion of the Class that has objected at the time of final approval, is evaluated at the Fairness Hearing after Class Notice and opportunity to object has been provided to the Class. *McCoy v. Health Net, Inc.,* 569 F. Supp. 2d 448, 458-59 (D.N.J. 2008).

[6]    The Girsh factors are (1) the complexity and duration of the litigation; (2) reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigations. *Girsh*, 521 F.2d at 157.

PHDATA 4850200_1

Plaintiffs here request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement so that notice of the Settlement can be given to the Class.

**B.    This Settlement Is The Result of Arm's-Length Negotiations by Experienced Class Counsel On the Brink of Trial and After Complete Discovery.**

The proposed settlement is the result of arm's-length negotiations in formal mediation under the auspices of an independent mediator among Class Counsel, counsel for ALPA and its re-insurers. The participation of an independent mediator insures that the settlement negotiations were conducted at arm's length and without collusion between the parties. *Bernhard v. TD Bank*, N.A., 2009 U.S. Dist. LEXIS 92308, *5 (D.N.J. Oct. 5, 2009); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Tiro v. Public House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013), citing *In re Citigroup Inc. Bond Litigation*, 2013 U.S. Dist. LEXIS 117838, (S.D.N.Y. Aug. 20, 2013) ("Additionally, whereas here, the settlement is the by-product of a mediation before an experienced employment law mediator, there is a presumption of fairness and arm's-length negotiations.").

In this case, the material terms of the proposed Settlement are the product of an in-person, 16-hour mediation session conducted with a highly respected neutral

JAMS mediator, David Geronemus. Prior to the mediated session, Mr. Geronemus conducted multiple telephone conferences with the parties, both in a group and *ex parte*, and received extensive briefing and documents of record.[7]

Here, the parties litigated this 11-year old case through trial and a finding of liability on the part of ALPA. They were on the brink of a trial on damages. It is clear that the parties and their counsel were well-informed before reaching an agreement to settle this case. Indeed, all fact and expert damages discovery had been completed. Class Counsel therefore had a thorough appreciation of the merits of their damages claim and – after weighing the cost, length of time, and risks involved in litigating the matter to a successful conclusion – determined that the Settlement is in the best interest of the Class. Class Counsels' judgment that the Settlement is in the best interest of the Class should be given considerable weight.[8]

---

[7]    This was the second mediation in which the parties participated.  In January 2012, following trial on liability and before the resolution of post-trial motion practice, the parties participated in two days of mediation with a different JAMS mediator, retired Federal District Court Judge James M. Rosenbaum.

[8]    *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) ("the Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected and accomplished in this type of litigation"); *Alves v. Main*, 2012 U.S. Dist. LEXIS 171773, at *72 (D.N.J. 2012) ("courts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class") (internal quotations omitted).

PHDATA 4850200_1

### C.   The Proposed Settlement Provides Substantial Benefit to the Class

The proposed Settlement creates a settlement fund of $53,000,000 in cash. This is a benefit to the Class. The benefit of the proposed Settlement must be compared to the risk that no recovery or a lesser recovery might be the result after trial and appeals, years in the future.

The damage claims left to be tried involved numerous, novel, and complex issues. No reported decisions were found in which similar damages theories had been tried. If the case were to proceed to a trial on damages, Plaintiffs intended to present evidence of the alternative seniority list that could have been achieved if ALPA had not breached its duty of fair representation. From this recreated, but-for seniority list, Plaintiffs would then have presented a classwide damages model to establish damages as to each class member stemming from their lost seniority.

Through its five experts and the testimony of approximately a dozen fact witnesses, ALPA was prepared to present numerous defenses to Plaintiffs' damages case, including but not limited to testimony from the Chairman of the APA's negotiating committee that the American pilots would never have agreed to any seniority list more favorable to the TWA Pilots than that contained in Supplement CC. ALPA was also prepared to present expert testimony that, at most, the staple point may have moved in some marginal way in favor of the TWA Pilots but nowhere near the but-for seniority list presented by Plaintiffs' experts. ALPA's

primary damages expert, Professor Kevin Murphy, recalculated damages using Plaintiffs' primary damages expert Rikk Salamat's model. Making corrections deemed necessary by Murphy but otherwise using Salamat's assumptions and methods, Murphy calculated the Class's maximum damages at $16.2 million.

Moreover, the individualized nature of choices made by each TWA pilot would have, according to ALPA, supported renewed motions to decertify the Class with respect to damages. Although Plaintiffs believe they would have prevailed against all of ALPA's arguments, and ultimately prevailed at trial and on appeal, no one can know whether the Court's pending pretrial rulings would have limited Plaintiffs' case, or how the jury would have reacted to the evidence at trial.

Class Counsel is certain that if Plaintiffs were to prevail on damages, ALPA would have appealed both the liability and damages verdicts. At best, an appeal would delay recovery to the Class. At worst, it would lead to a recovery materially less than the Settlement amount or no recovery at all. This settlement provides a risk-free recovery for the Class.

## II.   THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED.

"Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise...." Manual for Complex Litigation, §21.312. The notice

of the Proposed Settlement "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections."). "To satisfy this standard, the notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard." *In re Cendant Corp. Sec. Litig.*, 109 F.Supp.2d 235, 254 (D.N.J. 2000); Manual for Complex Litig., §21.312.

Here, Plaintiffs will notify members of the Class of the Settlement by mailing the Settlement Notice, attached as Exhibit B, to all Class Members via First Class U.S. Mail. The Claims Administrator maintains an address list from when it mailed the Notice of Pendency of Class Action in 2007. That list was recently updated by the Claims Administrator in connection with a 2012 mailing from Class Counsel to the Class in preparation for the damages trial. For purposes

of providing Notice of Settlement, that list will again be updated and notice mailed to each class member identified on that list. The Claims Administrator will make all reasonable efforts to obtain an address for any Class Member's Settlement Notice that is returned by the United States Postal Service as undeliverable. Furthermore, copies of the fully executed Settlement Agreement, court orders, applicable court filings, the Settlement Notice and any other documents the parties deem appropriate will be available on a specially-designated page of Class Counsel's firm website with the URL *http://www.stlouislaw.com/TWA*.

Consistent with Rule 23, the Settlement Notice will advise Class Members of (i) the essential terms of the Settlement, including the Plan of Allocation; (ii) their rights with respect to the Settlement, including their right to object; (iii) information regarding Class Counsel's motion for attorneys' fees and reimbursement of litigation expenses; and (iv) the proposed incentive awards for the current and former Named Plaintiffs. The Settlement Notice will also provide specifics on the date, time and place of the Fairness Hearing and describe the procedures, as well as deadlines, for objecting to the Settlement, the proposed Plan of Allocation, or the motion for attorneys' fees, payment of Litigation Expenses, or payment of incentive awards.

PHDATA 4850200_1

### A.   The Settlement Notice Informs The Class That There Will Not Be A Second Opportunity to Opt-Out.

The Class Notice previously approved by the Court and disseminated to the Class informed class members of their right to request exclusion from the Class and explained how to request exclusion from the Class. *See* Ex. E (Notice of Pendency of Class Action). The Notice further stated that the rights of class members who did not exclude themselves would be affected by the litigation.  Ex. E (Notice of Pendency of Class Action, p. 1, and ¶ ¶ 6, 8) ("you will be included in and bound by any judgment or settlement"). The Class Notice provided Class Members with full information concerning their opt out right, ample opportunity to exercise that right, and explained that by opting out they would not be bound by any proceedings or future settlements. Ex. E, ¶ 8(b).  Six former TWA Pilots opted out of the litigation.

While Rule 23(e)(4) allows the Court to condition settlement of a class action on providing absent class members another opportunity to opt out, the Court is not required to do so. The decision whether to grant a second opt-out period under Rule 23(e)(4) is "confided to the [district] court's discretion," and "[n]either due process nor Rule 23(e)(3) requires … a second opt-out period." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006); *In re MetLife Demutualization Litig.*, 689 F.Supp.2d 297, 345 (E.D.N.Y. 2010) ("It is not necessary to provide the class members with an opportunity to opt out of the

Settlement… Because the class members were given 'notice of the action[s], the opportunity to opt out, notice of the proposed Settlement, and the opportunity to object,' the court is not required to afford 'a second opportunity to opt out'") (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).

## III.   SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the approval process is a final fairness hearing. At this hearing, the Court will hear all evidence and argument necessary to make its Settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. Objectors will also have their opportunity to be heard. The Court will determine after the fairness hearing whether the Settlement should be finally approved, disapproved, or modified, and whether to enter a final order and judgment under Rule 23(e). Plaintiffs respectfully request that the Court set a hearing date for final approval on May 14, 2014, which is approximately 60 days after the Notice will have been mailed, or as soon thereafter as is convenient for the Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) granting Preliminary Approval of the Settlement; (2) approving the proposed form and method of providing Notice of the Settlement and directing that

Notice be sent to the Class; (3) appointing McGladrey LLP to serve as the Claims

Administrator; (4) scheduling a Fairness Hearing at which time the Court can

consider final Settlement approval and Class Counsel's application for an award of

attorneys' fees and expenses.

Respectfully submitted,

_____*s/ Lisa J. Rodriguez*_____
Lisa J. Rodriguez
Nicole M. Acchione
**SCHNADER HARRISON SEGAL
& LEWIS LLP**
Woodland Falls Corporate Complex
220 East Lake Drive, Suite 200
Cherry Hill, N.J.
(856) 482-5222

**GREEN JACOBSON, P.C.**
Allen P. Press
Joe D. Jacobson
7733 Forsyth Boulevard, Suite 700
St. Louis, MO  63100
Telephone: (314) 862-6800

PHDATA 4850200_1