UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, <br><br> Defendant. | Civil Action No. 02-2917 (JEI) |

## STIPULATION AND CLASS ACTION SETTLEMENT AGREEMENT

This Stipulation and Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") is entered into among (1) Plaintiffs and Class Counsel; (2) the Air Line Pilots Association, International ("ALPA" or "Defendant"), and Defendant's counsel; (3) ALPA's captive insurer, Kitty Hawk Insurance ("Kitty Hawk"), and its counsel; and (4) the underwriters of Kitty Hawk reinsurance policies LK9905267 and LK9905268, listed as Exhibit A to this Agreement (collectively, the "Reinsurers"), and their counsel, in the matter of *Brady, et al. v. Air Line Pilots Association, International,* Civil Action No. 02-2917, pending in the United States District Court for the District of New Jersey (the "Action"). This Settlement Agreement is subject to approval by the Court under Federal Rule of Civil Procedure 23. If the Court fails to approve the Settlement, the parties hereto may revise the Agreement or terminate the Settlement.

This Agreement states all of the terms of the Settlement and is intended by the parties hereto to fully and finally compromise, resolve, discharge and settle the Released Claims subject to the terms and conditions set forth below. All capitalized terms used in this Agreement shall have the definitions set forth in Section II below:

Doc#: US1:9144604v1

# I.   BACKGROUND

A.     This Action, originally filed in 2002, arose out of American Airlines' ("American's") 2001 acquisition of certain assets of Trans World Airlines, Inc. ("TWA"), the resulting negotiation of a seniority list integration by the unions representing the TWA and American pilot groups, and the implementation of a seniority list integration agreement ("Supplement CC") by American and the union representing the American and, ultimately, the former TWA pilots.  Plaintiffs contend that ALPA breached its duty of fair representation to the TWA pilots in connection with this seniority list integration.  ALPA disputes that it breached its duty of fair representation to the TWA pilots, and disputes that any TWA pilots suffered economic harm as a result of that alleged breach.

B.     In February 2003, the Court certified a class of TWA pilots, and in July 2003, granted dispositive motions dismissing Plaintiffs' claims against each defendant.  On appeal, the United States Court of Appeals for the Third Circuit affirmed dismissal of Plaintiffs' claims against all defendants other than ALPA, but revived Plaintiffs' duty of fair representation claims against ALPA.

C.     The proceedings in the present Court were bifurcated into liability and damages phases in May 2005.  Following extensive discovery, motion practice, and a six-week trial on liability in 2011, a jury found that ALPA "violate[d] its duty of fair representation to the TWA Pilots" and that this breach "directly caused injury to some of the TWA Pilots."  ALPA subsequently filed a series of post-trial motions seeking, *inter alia*, to set aside the liability jury's verdict and to decertify the class.  The Court denied these motions.

D.     Since the liability trial, the Parties have engaged in more than two years of discovery on the issue of damages.  The Parties have exchanged reports from seven experts, conducted more than twenty fact and expert depositions, and produced additional documents.

Motions to exclude or limit the testimony of both of Plaintiffs' damages experts and three of ALPA's five experts are fully briefed, as is ALPA's motion for summary judgment on damages.

E.      The damages trial is currently scheduled to begin on March 17, 2014.  Plaintiffs anticipate presenting evidence that they believe would establish that the TWA pilots suffered significant monetary damages as a result of ALPA's alleged breach.  ALPA, for its part, anticipates presenting evidence it believes would establish that the TWA pilots suffered, at most, nominal damages as a result of the implementation of Supplement CC.

F.      Each party to this Agreement acknowledges that it faces significant risks if this case proceeds to trial.  Plaintiffs believe that at a damages trial they could establish through expert testimony that the TWA pilots suffered monetary damages as a result of the implementation of Supplement CC, but acknowledge that the Court's disposition of the pending *Daubert* and summary judgment motions may affect Plaintiffs' damages case.  ALPA has vigorously defended this Action since inception and opposes any significant award of damages to the TWA pilots.  ALPA recognizes, however, that Plaintiffs prevailed in the liability trial and may prevail in a damages trial.  The Reinsurers contend that they have no liability under their reinsurance contracts with Kitty Hawk (the "Reinsurance Contracts") even if final judgment is entered and affirmed in the Plaintiffs' Action against ALPA, but acknowledge that ALPA and Kitty Hawk contend that there is coverage for such claims.

G.      Recognizing the risks each faces if the Action goes forward, the parties hereto have decided to enter into this Settlement Agreement to avoid the expense and uncertainties of additional, protracted litigation.

H.      The parties hereto agree that this Settlement Agreement, including any documents filed seeking approval of this Settlement Agreement, is not and shall not be deemed or construed

3

to be an admission by or evidence against ALPA or the Reinsurers.

I.      This Settlement Agreement and the terms stated herein (collectively, the "Settlement") are the result of arm's-length negotiations among the parties to this Agreement, with the assistance of JAMS Mediator David Geronemus, Esquire.  This Settlement is subject to approval of the Court.

J.      Given the risks of additional, protracted litigation, Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Settlement is in the best interests of the Named Plaintiffs and the Class.  Class Counsel believe the Consideration provided by this Settlement will benefit Named Plaintiffs and the Class, and that the Consideration is appropriate in light of the strengths and weaknesses of Plaintiffs' claims, ALPA's defenses, and the attendant uncertainties of continued litigation.

THEREFORE, it is agreed by and among the parties hereto, subject to the approval of the Court, that the Action against ALPA be settled in accordance with the terms of this Agreement, and without costs against Plaintiffs, the Class, ALPA or the Reinsurers (except as provided below), on the following terms and conditions:

## II.      <u>DEFINITIONS</u>

1.      The following terms shall have the meanings stated below.

a.      **Administration Costs** means all costs and expenses incurred in connection with administration of the Settlement, including without limitation, soliciting claims, assisting with the filing of claims, administering and distributing the Settlement Fund to the Class, processing proofs of claim, filing tax returns on behalf of the Settlement Fund, escrow fees and costs.

b.      **Class Counsel** means the law firms appointed by the Court by Order

dated May 16, 2006, as amended by Order dated June 19, 2006, specifically Trujillo Rodriguez & Richards, LLC (Lisa J. Rodriguez and Nicole M. Acchione) (later substituted by the law firm of Schnader Harrison Segal & Lewis, LLC, effective August 1, 2013) and Green Jacobson, PC (Allen P. Press and Joe Jacobson).

        c.     **Class** and **Class Members** means those former TWA pilots as defined by this Court's February 12, 2003 Order certifying this matter as a class action, and as amended by Order dated March 19, 2007, and who have not opted out of the Class in accordance with the procedures set forth in prior notices sent to the Class as directed by the Court' Order dated March 19, 2007. The Class definition is: All persons formerly employed as a pilot by TWA, Inc. and who became employed as a pilot by TWA, LLC as a result of the April 2001 asset sale between American Airlines and TWA, Inc.

        d.     **Court** means the United States District Court for the District of New Jersey.

        e.     **Effective Date** shall have the meaning set forth in Paragraph 27 below.

        f.     **Escrow Account** means the bank account maintained by the Escrow Agent into which the Settlement Fund shall be deposited.

        g.     **Escrow Agent** means Fulton Financial Advisors, a division of Fulton Bank, NA, or its successors.

        h.     **Final Judgment and Order** means the Court's final judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement.

        i.     **Named Plaintiffs** means Patrick Brady, Theodore Case, Michael Finucan, Howard Hollander, and Sally Young. The Named Plaintiffs are also referred to as "Class Representatives."

Doc#: US1:9144604v1

j.      **Net Settlement Fund** means the Settlement Fund less any taxes, attorneys' fees, expert fees, Administration Costs, or other costs and expenses approved by the Court.

k.      **Notice Costs** means all reasonable costs and expenses incurred in connection with printing and providing notice to Class Members, including the creation and maintenance of an appropriate web page with links to relevant documents as agreed upon by the Parties.

l.      **Notice Date** means the date by which the Notice of Proposed Settlement of Class Action is to be mailed.

m.      **Notice Plan** means the plan that will be approved by the Court to notify the members of the Class of the pendency of the Settlement, the terms and conditions of the Settlement, and their rights in connection with the Settlement.

n.      **Notice of Proposed Settlement of Class Action** means the document approved by the Court for dissemination to the members of the Class notifying them of the pendency of the Settlement, the terms and conditions of the Settlement, and their rights in connection with the Settlement.

o.      **Objection Date** means the date by which members of the Class must file with the Court and serve Class Counsel and ALPA any written objections to the Settlement, the Plan of Allocation, or Class Counsel's request for attorneys' fees and expenses and incentive awards, described in the Notice of Proposed Settlement of Class Action.

p.      **Parties** means each of the Named Plaintiffs in the Action, on behalf of the Class, and ALPA. "**Party**" means any of them individually.

q.      **Plaintiffs** means the Named Plaintiffs and each member of the Class.

r.      **Plan of Allocation** means the Plan of Allocation to be proposed to the Court by Class Counsel.

s.      **Preliminary Approval Order** means the Order that Plaintiffs and Defendant will seek from the Court, as described in Paragraph 18 below.

t.      **Reinsurers** means the underwriters of Kitty Hawk reinsurance policies LK9905267 and LK9905268, provided by JLT Risk Solutions Limited, on behalf of assured Kitty Hawk, and original assured ALPA, listed as Exhibit A to this Agreement.  "**Reinsurer**" means any of them individually.

u.      **Released Claims** means the claims, causes of action, demands, rights, actions, suits, and requests for equitable, legal and administrative relief of any kind or nature described in Paragraphs 31.a - 31.c below, including Unknown Claims as defined below.

v.      **Released Parties** means:

(i)      with respect to Defendant, ALPA as well as each and all of its former, present, or future subsidiaries, affiliates, successors and assigns, and each and all of the former, present or future directors, officers, agents, representatives, members, attorneys, insurers, accountants, heirs, employees, successors and assigns of each of them (together, the "Defendant Releasees");

(ii)      with respect to Kitty Hawk, Kitty Hawk as well as each and all of its former, present, or future subsidiaries, affiliates, successors and assigns, and each and all of the former, present or future directors, officers, agents, representatives, members, attorneys, accountants, heirs, employees, successors and assigns of each of them (together, the "Kitty Hawk Releasees");

(iii)      with respect to Plaintiffs, Plaintiffs, as defined above, as well as each and all of their present and former agents, representatives, heirs, and attorneys, excluding those persons who requested to be excluded from the Class following the notice of pendency of class action dated May 18, 2007 (together, the Plaintiff Releasees");

(iv)      with respect to the Reinsurers, the Reinsurers, as defined above, as well as each and all of their former, present, or future subsidiaries, affiliates, successors and assigns, and each and all of the former, present or future directors, officers, agents, representatives, members, attorneys, accountants, heirs, employees, successors and assigns of each of them (together the "Reinsurer

Doc#: US1:9144604v1

Releasees").

w.    **Settlement** means the settlement contemplated by this Settlement Agreement.

x.    **Settlement Fund** means the sum of Fifty Three Million United States Dollars (US $53,000,000.00), to be paid by ALPA, Kitty Hawk, and the Reinsurers.

y.    **Unknown Claims** means any Released Claims which any Named Plaintiff or any other Class Member does not know or suspect to exist in his or her favor at the time of the release of the Defendant Releasees, the Kitty Hawk Releasees, and the Reinsurers Releasees, any of Defendant's claims which it does not know or suspect to exist in its favor at the time of the release of the Plaintiff Releasees and Reinsurers Releasees, and any of Reinsurers' claims which they do not know or suspect to exist in their favor at the time of the release of the Defendant Releasees and the Kitty Hawk Releasees, which, if known, might have affected his, her, its or their decision(s) with respect to this Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs, Defendant, Kitty Hawk and the Reinsurers shall expressly waive, and each of the other Plaintiff Releasees, Defendant Releasees, Kitty Hawk Releasees, and Reinsurer Releasees shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs, Defendant, Kitty Hawk, and Reinsurers acknowledge, and each of the other Plaintiff Releasees, Defendant Releasees, Kitty Hawk Releasees, and Reinsurer Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately

Doc#: US1:9144604v1

bargained for and a key element of the settlement.

## III.     <u>SETTLEMENT TERMS</u>

<u>Consideration</u>

2.      In consideration of the releases as provided for herein and in full and complete settlement of all the Released Claims, ALPA, and Kitty Hawk and the Reinsurers, on behalf of ALPA, shall pay or cause to be paid to Plaintiffs, for the benefit of the Class, in settlement of the claims against ALPA, the Settlement Fund as follows:

a.      The Reinsurers will, within thirty (30) calendar days following execution of this Settlement Agreement, cause to be paid the sum of $26,153,750.00 United States Dollars (comprising the individual amounts set out in Exhibit A to this Agreement) into the Escrow Account;

b.      ALPA and Kitty Hawk will, within seventy five (75) calendar days following the execution of this Settlement Agreement, cause to be paid the sum of $26,846,250.00 United States Dollars into the Escrow Account; and

c.      As of the Effective Date of this Settlement, ALPA will agree to the entry of the Final Judgment and Order.

3.      The parties to this Agreement agree that the respective monetary sum for each Reinsurer set out in Exhibit A is the total amount that each such Reinsurer shall have to pay in satisfaction of any claims released hereunder.

4.      In all events, none of ALPA, Kitty Hawk or the Reinsurers shall be held jointly or severally liable for the Consideration described in subparagraphs 2.a and 2.b above, except as otherwise set forth in subparagraph 2.b.

5.      The Settlement Fund shall be deposited into an interest-earning escrow account at a federally-insured financial institution designated by Class Counsel.  The Released Parties shall not have any responsibility or liability whatsoever for investment decisions with respect to the funds held in the Escrow Account.

Doc#: US1:9144604v1

6.     The parties to this Agreement agree to treat the Settlement Fund as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and the Escrow Agent, as administrator of the Escrow Account within the meaning of Treasury Regulation within the meaning of Treasury Regulations § 1.468B-2(k)(3), shall be responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any taxes, including any interest or penalties thereon, owed with respect to the Escrow Account.  In addition, the Escrow Agent, Defendant, Kitty Hawk, and the Reinsurers, as required, shall do all things that are necessary or advisable to carry out the provisions of this paragraph.

7.     All taxes arising with respect to the income earned by the Settlement Fund, including any taxes or tax treatments that may be imposed upon the Defendant, Kitty Hawk, or the Reinsurers with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes and any expenses and costs incurred in connection with the payments of taxes pursuant to this paragraph (including without limitation, expenses of tax attorneys and/or accountants and mailing, administration and distribution costs and expenses relating to the filing or the failure to file all necessary or advisable tax returns), shall be paid out of the Settlement Fund.  Defendant, Kitty Hawk, and the Reinsurers shall not have any liability or responsibility for the taxes or any tax expenses.  Class Counsel, or their agents, shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treas. Reg. § 1.468B-2(k), and to the extent applicable, Treas. Reg. § 1.468B-2(1). Such tax returns shall be consistent with the terms herein and in all events shall reflect that all taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

Class Counsel, or their agents, shall also timely pay taxes and tax expenses out of the Settlement Fund, and are authorized to withdraw, without prior order of the Court, from the Escrow Account amounts necessary to pay taxes and tax expenses.  The parties hereto agree to cooperate with each other and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement.  Defendant, Kitty Hawk, and the Reinsurers shall not have any responsibility or liability for the acts or omissions of Class Counsel or their agents, as described herein.

**Verification of Financial Information**

8.     In connection with the negotiation of this Agreement, ALPA has provided Class Counsel with copies of ALPA's most recent audited financial statements.  Class Counsel enters into this Agreement in reliance on the truth and accuracy of these financial statements, and within thirty (30) days following execution of the Settlement Agreement, ALPA agrees to provide Class Counsel with an affidavit attesting to the truth and accuracy of these financial statements.

**Administration and Distribution of the Settlement Fund**

9.     Class Counsel or its authorized agents, subject to the supervision, direction and approval of the Court, shall administer and oversee distribution of the Settlement Fund.  As part of the Preliminary Approval Order, Plaintiffs shall seek appointment of McGladrey, LLP as the Court-appointed Administrator.

10.     The Settlement Fund shall be applied as follows:

    a.     Without further Order of the Court, to pay up to $5,000,000 towards Administration Costs.  After the Effective Date, any Administration Costs in excess of this amount shall be paid from the remainder of the Settlement Fund, subject to the approval of Class Counsel, without further order of the Court.

    b.     Subject to the approval and further order(s) of the Court, to pay to Class

Doc#: US1:9144604v1

Counsel the amount awarded by the Court as Plaintiffs' attorneys' fees, class representative incentive awards, and reimbursement of expenses and costs, as described in Paragraphs 14, 15 and 16 below.

c.    To pay taxes and tax expenses owed by the Settlement Fund.

d.    Subject to the approval and further order(s) of the Court, to distribute the balance of the Net Settlement Fund to Class Members in accordance with the Plan of Allocation, to be submitted to the Court for approval at a later date, or as otherwise ordered by the Court.

e.    In order to participate in such distribution of the Net Settlement Fund, each Class Member shall be required to submit timely a separate signed Proof of Claim and Release.  Unless otherwise ordered by the Court, any Class Member who fails to submit a Proof of Claim and Release within such period as may be established by the Court shall be forever barred from receiving any payments pursuant to this Agreement, but in all other respects will be subject to and bound by the provisions of this Agreement and the Final Judgment and Order.

f.    Defendant shall bear no responsibility for the costs, fees or expenses described in this paragraph, beyond the obligations described in Paragraph 2, and will not take any position with respect to Class Counsel's proposed Plan of Allocation.

11.    Prior to the distribution of the Net Settlement Fund, Class Counsel shall present for the approval of the Court a final accounting of the receipts to and disbursements from the Settlement Fund and the proposed distribution of the Net Settlement Fund to Authorized Claimants.  No such distribution shall be made in the absence of an order approving the accounting and proposed distribution.

12.    Payment from the Settlement Fund made pursuant to and in the manner set forth above shall be deemed conclusive of compliance with this Agreement as to all Class Members. If any funds remain in the Net Settlement Fund by reason of uncashed distributions or otherwise, then after the Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund six months after the initial

Doc#: US1:9144604v1

distribution of such funds shall be redistributed to Settlement Class Members who have cashed their initial distributions in a manner consistent with the Plan of Allocation.  In the event that Class Counsel determines that further redistribution of any balance remaining (following the initial distribution and redistribution) is no longer feasible, thereafter Class Counsel shall donate the remaining funds, if any, to a non-sectarian charitable organization(s) certified under the United States Internal Revenue Code § 501(c)(3), to be designated by Class Counsel and approved by the Court.

13.     No Class Member shall have any claim against the Parties, or any of their counsel, based on the distributions made substantially in accordance with this Agreement and/or orders of the Court.  Except as otherwise provided, the Parties and their respective counsel shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Claim or nonperformance of the Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

**Attorneys' Fees, Class Representative Incentive Awards, and Reimbursement of Expenses and Costs**

14.     <u>Named Plaintiffs' Incentive Awards</u>.  Class Counsel may petition the Court for an incentive award for Class Members who made useful contributions to the Action.  ALPA will not object to any reasonable incentive awards proposed by Class Counsel.  The incentive awards shall be paid from the Settlement Fund as an expense of the Action, at the time the initial distribution of settlement proceeds is made to the Class Members.

15.     <u>Attorneys' Fees and Costs.</u> In advance of the Fairness Hearing, Class Counsel may file with the Court a motion for an award of attorneys' fees and for reimbursement of

Doc#: US1:9144604v1

expenses to be paid from the Settlement Fund.  Expenses to be reimbursed will include Class

Counsel's out-of-pocket expenses, expenses incurred by Class Representatives and other Class

Members, and anticipated Administration Costs.  Expenses incurred by Class Members may be

reimbursed separately, from a $1.5 million expense reimbursement set-aside designated from the

Settlement Fund.  Class Members shall submit proof of such expenses for review and approval

by the Administrator.  To the extent such expenses exceed the $1.5 million set-aside, they shall

be paid on a pro rata basis.  After payment of such expenses, any remaining funds in the set-aside

shall revert to the Settlement Fund.  ALPA will not object to any request for attorneys' fees that

does not exceed one-third of the Settlement Fund.  Class Counsel may pay themselves their

court-approved fees out of the Settlement Fund within 10 business days after entry of the later of

final judgment and any order awarding attorneys' fees and expenses.

16.    <u>Attorneys' Fees, Class Representative Incentive Awards, and Reimbursement of
Expenses and Costs Separate</u>. The procedure for, and the allowance or disallowance by the Court

of, any attorneys' fees, incentive awards payable to the Named Plaintiffs and other Class

Members, or reimbursement of expenses and costs, or reimbursement of expenses incurred by

Class Members as described in paragraph 15, are to be considered by the Court separately from

the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement (except

that the Parties agree that any award of fees, incentive awards, and expenses and costs shall be

payable solely from the Settlement Fund), and separately from consideration of the Plan of

Allocation. Any order or proceedings relating to the payment of attorneys' fees, incentive

awards, expenses and costs, including without limitation proceedings brought by former or other

counsel for the Class or Class Members, and any appeal from any order relating thereto, or any

reversal or modification thereof, shall not operate to terminate or cancel the Settlement

Agreement, to alter the Settlement Fund or the obligations of the Released Parties under the Settlement Agreement, or to affect or delay the finality of the judgment approving the Settlement Agreement and the Settlement of the Action set forth herein. Finalization of the Plan of Allocation will be contingent upon final resolution of the attorneys' fees, incentive awards, and expenses and costs issues.

## IV.   PROCEDURES

### Settlement Implementation

17.   The parties to this Agreement agree to cooperate to implement the terms of the Settlement Agreement, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement.

### Motion for Preliminary Approval

18.   As soon as reasonably practicable following execution of this Settlement Agreement, the Parties will jointly submit this Settlement Agreement to the Court and make a motion pursuant to Rule 23 of the Federal Rules of Civil Procedure for entry of a Preliminary Approval Order, to:

a.   preliminarily approve this Agreement;

b.   set a date and time for a fairness hearing as soon as practicable;

c.   approve the form of Notice of Proposed Settlement of Class Action and summary form of notice;

d.   approve a Notice Plan;

e.   appoint McGladrey, LLP as the Notice and Claims Administrator (the "Administrator");

f.   set an Objection Date; and

g.    set a period of time during which Class Members must file Claims in order to participate in the distribution of the Net Settlement Fund.

**Class Notification**

19.    Notice of this Settlement shall be given to the Class Members as soon as practicable after entry of the Court's order approving the form of Notice of Proposed Settlement of Class Action, provided, however, that the notice process shall commence no later than thirty (30) days after the entry of such order. Class Notice will include details of the proposed Settlement, including the Plan of Allocation, the application for attorneys' fees, incentive awards and expenses and costs, the date and time for the Fairness Hearing, and Class Members' right to object.  The Administrator will mail Notice of Settlement to all Class Members, postage-paid by first class United States Mail, after updating the last known address as reflected in Class Counsel's records.  The Parties will request jointly that the Court create and maintain a web page containing links to relevant documents, as agreed upon by the Parties.  If such request is not granted, the Administrator will be responsible for the creation and maintenance of such a web page.  With the exception of the obligations conferred by Paragraph 20 of this Agreement, Class Counsel, or their agents, bear all responsibility for any and all obligations relating to class notification.

20.    Notice Costs will be paid by Defendant, separate from any payment to the Settlement Fund.

**Cost of Settlement Administration**

21.    Administration Costs will be an expense of the Action payable out of the Settlement Fund.  Defendant, the Reinsurers, and Kitty Hawk shall bear no responsibility for the costs, fees or expenses described in this Paragraph, beyond the obligations described in paragraphs 2 and (with respect to Defendant) 20 above.

16

**Objections to Settlement**

22.      Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement, the Plan of Allocation, or the request by Class Counsel for an award of attorneys' fees, expenses and costs, or the application for incentive awards, must file with the Clerk of the Court and serve Class Counsel and Counsel for ALPA, no later than ten (10) days before the Fairness Hearing, a statement of the objection, as well as the specific reasons, if any, for each objection, including any legal support that the Class Member wishes to bring to the District Court's attention and any evidence the Class Member wishes to introduce in support of the objection. Such objection must conform to the format described in subparagraph b below. Any Class Member who files and serves a written objection, as described herein, may appear at the Fairness Hearing and request to be heard with respect to the objection timely filed in accordance with this Section.

a.      Any Class Member filing a written objection or appearing at the Fairness Hearing in accordance with this Section may do so either on his or her own or through an attorney hired at the objecting Class Member's own expense. If a Class Member hires an attorney to represent him or her, the attorney must file a notice of appearance with the Clerk of the District Court no later than seven (7) days before the Fairness Hearing or as the District Court may otherwise direct, and serve a copy of such notice of appearance on Class Counsel and Counsel for ALPA.

b.      Any objection, whether filed by a Class Member or an attorney hired on a Class Member's behalf, must conform to the following format: i) The objection must contain a heading that refers to the Action by case name and case number; ii) a statement of the legal and factual basis for each objection or intervention argument; iii) a statement whether the Class Member intends to appear at the Fairness Hearing, either in person or through counsel; iv) a description of any and all evidence the Class Member intends to offer at the Fairness Hearing, including but not limited to the names, addresses and expected testimony of any witnesses, and a description of all exhibits intended to be introduced at the Fairness Hearing; and v) a list of other cases in which the Class Member or counsel for the Class Member has appeared either as an objector or counsel for an objector in the last five years. Any motion to intervene must comply with the Federal Rules of Civil Procedure and the Local Rules of Court.

**Fairness Hearing and Final Judgment and Order**

23.    The Parties will request that a Fairness Hearing be set within sixty (60) days following the date for mailing the Class Notice.

24.    At the Fairness Hearing, the Parties shall jointly request entry of a Final Judgment and Order, the entry of which is a condition of this Settlement Agreement:

  a.    determining that Defendant, Named Plaintiffs and all other Class Members, Kitty Hawk, and the Reinsurers, have submitted to the jurisdiction of the Court for purposes of the proposed Settlement, and that the Court has subject matter jurisdiction to approve the Settlement Agreement;

  b.    finding that the notice given pursuant to this Settlement Agreement: (a) constitutes the best practicable notice under the circumstances; (b) constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and (c) meets the requirements of due process, the Federal Rules of Civil Procedure, and any other applicable rules of the Court;

  c.    approving finally the Settlement Agreement and its terms as being in good faith and fair, reasonable, and adequate to the members of the Class, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing the Settlement Agreement's consummation pursuant to its terms;

  a.    dismissing the Action with prejudice, determining that there is no just reason for delay, and ordering that the judgment of dismissal of the Action shall be final and appealable;

  b.    incorporating the releases set forth in Section V below and forever releasing and discharging the Released Parties from the Released Claims and any other claims or liabilities relating to the Action;

  d.    barring all persons from bringing any claim for contribution or indemnification against the Defendant Releasees, Kitty Hawk Releasees and Reinsurer Releasees arising out of or related to the Released Claims;

  e.    finding that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11, except as already determined by the Court;

  f.    reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement Agreement.

25.    At the Fairness Hearing, Class Counsel also will request entry of an order

approving the Plan of Allocation as fair, reasonable, and adequate.  Any modification of the Plan

of Allocation by the Court shall not affect the enforceability of this Agreement, provide any of

the Parties with the right to terminate the Settlement, or impose an obligation on Defendant,

Kitty Hawk, or the Reinsurers to increase the consideration paid in connection with the

Settlement.

26.    At the Fairness Hearing, Class Counsel may also request entry of an order,

pursuant to Paragraphs 14 through 16 above:

>    a.    approving Class Counsel's application for attorneys' fees and ordering the
> fees paid out of the Settlement Fund;

>    b.    approving the costs and expenses submitted by Class Counsel to be paid
> out of the Settlement Fund;

>    c.    approving incentive awards to Class Representatives and certain Class
> Members to be treated as expenses of the Class and paid out of the Settlement Fund.

27.    <u>Effective Date</u>. This Settlement shall become final and effective upon the

occurrence of all of the following events, the date of the last of which is the "Effective Date":

> (1) This Settlement Agreement is finally approved by the Court;

> (2) The Court enters a Final Judgment and Order;

> (3) The Action is dismissed with prejudice; and

> (4) The time to appeal or seek permission to appeal from the Court's Final
> Judgment and Order has expired, or, if appealed, the Final Judgment and Order
> has been affirmed by the court of last resort to which such appeal has been taken
> and the time for any petition for reargument, appeal or review, by certiorari or
> otherwise, has expired.

**Effect of Disapproval, Cancellation, or Termination of Agreement**

28.    If the Court does not enter the Judgment substantially in the form provided for in

Paragraph 24, or if the Court enters the Judgment and appellate review is sought and, on such

review, the entry of Judgment is reversed, modified, vacated or set aside on appeal, then (except

Doc#: US1:9144604v1

as provided in Paragraphs 16 and 25 of this Agreement), this Agreement shall be cancelled and terminated, unless all parties to this Agreement who are adversely affected thereby, in their sole discretion within thirty days from the date of the mailing of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court.  Such notice may be provided on behalf of Plaintiffs and the Class by Class Counsel.  No party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein, except to the extent provided for in Paragraphs 16 and 25, relating to the Plan of Allocation and award of attorneys' fees and expenses and incentive awards.  The Parties agree to make all reasonable efforts to obtain final approval of the Settlement Agreement, even after reversal on appeal, by making such reasonable amendments to the Settlement Agreement, Plan of Allocation, or other elements of the Settlement that do not affect the amount of the Settlement Fund contributed by ALPA or the Reinsurers.

29.     Defendant shall have the right and option to terminate this Settlement Agreement if the following (an "Event of Termination") occurs: the Court requires a further opportunity for Class Members to opt-out of the Class and more than 3% of the present Class Members opt out. Following the Event of Termination, Defendant may terminate this Settlement Agreement by providing written notice ("Notice of Termination") within twenty (20) calendar days following the last date by which Class Members must opt out of the Class.  Notice of Termination will be deemed to have been timely only if filed with the District Court, through the Court's electronic filing system, within such 20-day period.

30.     In the event this Agreement is terminated or cancelled or fails to become effective for any reason, then within ten (10) business days after written notice is sent by Class Counsel or

counsel for Defendant to all parties hereto, any cash deposited into the Escrow Account, and any funds received by Class Counsel or any of their predecessors or successors from the Escrow Account, shall be refunded to ALPA and the Reinsurers (in a manner consistent with the proportional amount each paid into the Escrow Account), including interest accrued, except for Administration Costs that have been paid or incurred at the time of termination, and less any taxes paid or payable on the Settlement Fund (including any costs and expenses of tax attorneys and accountants) at the time of termination. In such event, the parties to this Agreement shall be deemed to have reverted *nunc pro tunc* to their respective status as of the date and time immediately before November 26, 2013 and they shall proceed in all respects as if this Settlement Agreement and related orders had not been executed and without prejudice in any way from the negotiation, fact or terms of this Settlement, provided that the Parties will jointly request that the Court provide sufficient reasonable time for the Parties and counsel to prepare for further proceedings in light of the passage of time since the execution of this Settlement Agreement.

## V.  **RELEASES**

31.  <u>Releases</u>.

a.  Upon the Effective Date, Plaintiffs, on behalf of themselves and their present and former agents, representatives, heirs, and attorneys, excluding those Class Members who were excluded from the Class following the notice of pendency of class action dated May 18, 2007, shall release and forever discharge any and all claims, causes of action, demands, rights, actions, suits, and requests for equitable, legal and administrative relief of any kind or nature whatsoever against the Defendant Releasees, Kitty Hawk Releasees, Reinsurer Releasees, and any party in this Action, arising from or relating to facts alleged in the Action, whether known or unknown, asserted or unasserted, that any Class Member who has not timely excluded himself or herself from the Action ever had, could have had, now has, or can, shall or may have in the future arising out of the Action or the underlying allegations.

b.  Upon the Effective Date, Defendant, Kitty Hawk, and the Reinsurers shall release and forever discharge any and all claims, causes of action, demands, rights, actions, suits, and requests for equitable, legal and administrative relief of any kind or

Doc#: US1:9144604v1

nature whatsoever against the Plaintiff Releasees, whether known or unknown, asserted or unasserted, that they ever had, or could have had relating to the institution or prosecution of this Action.

c. The Reinsurers' contribution to the Settlement Fund, described in paragraph 2, will fully extinguish any and all of Reinsurers' obligations under the Reinsurance Policies in connection with payment of the Settlement Fund.  Upon the Effective Date, in consideration of this payment by Reinsurers, Defendant, Kitty Hawk, and Plaintiffs shall release and forever discharge any and all claims, causes of action, demands, rights, actions, suits, and requests for equitable, legal and administrative relief of any kind or nature whatsoever against the Reinsurer Releasees arising out of actual or potential reinsurance coverage for liability or damages arising out of the Action.  Notwithstanding the aforementioned, nothing in this release shall be interpreted as releasing Reinsurers from any contractual and/or equitable obligation to credit Kitty Hawk in the event of the receipt of any subrogated recovery, whether in respect of the Released Claims or otherwise.

32.    No Transfer or Assignment of Claims.  In executing this Agreement, Plaintiffs and Class Counsel represent, and it is expressly understood and agreed between the Parties, that no Class Member who has not timely and validly excluded himself or herself from the Action has ever transferred or assigned any of his or her claims relating to the Action.  To the extent that there has been any transfer or assignment by any Class Member of any claims relating to the Action of which Named Plaintiffs and Class Counsel are not presently aware, Named Plaintiffs agree, on behalf of the Class, that any such transfer or assignment is subject to the terms of this Agreement and the Releases herein.

33.    Covenant Not to Sue. Upon the Effective Date, each Class Member covenants and agrees that he or she shall not hereafter seek to establish liability or assert claims, on behalf of their self or any other person, entity or class, against any of the Released Parties, in whole or in part, for any of the claims described in Paragraph 31 herein, as limited by this Paragraph 33.  The parties agree that this covenant may be pleaded as a full and complete defense to any action, suit, or other proceeding that may be instituted, prosecuted or attempted with respect to any of the claims described in subparagraph a herein.  All Class Members who have not timely and validly

excluded themselves from the Class and all persons acting on behalf of or in concert with any such Class Members shall be enjoined from, directly or indirectly:

    a.  commencing, prosecuting, participating in (as a class member or otherwise), or assisting in any lawsuit or other proceeding against Defendant or any of the Released Parties that asserts or purports to assert claims that (i) were alleged, asserted, described, set forth or referred to in the Action, or (ii) are within the scope of the Released Claims as embodied in Paragraph 31 of the Settlement Agreement; and

    b.  organizing or soliciting Class Members or those who submit a Request for Exclusion into a separate class for purposes of pursuing, as a purported class action, a lawsuit or other proceeding on behalf of Class Members or those who submit a Request for Exclusion, that asserts or purports to assert claims that (i) were alleged, asserted, described, set forth or referred to in the Action, or (ii) are within the scope of the Released Claims, as embodied in Paragraph 31 of the Settlement Agreement.

34.   <u>Effect of Releases</u>.  This Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that may be instituted, prosecuted or attempted with respect to any of the Released Claims.  The parties hereto further agree that this Settlement Agreement may be pleaded as necessary for the purpose of enforcing this Settlement Agreement.  The foregoing mutual releases shall not apply to any claim for breach of this Agreement, and each of the parties hereto retains the right to bring suit to enforce this Agreement or to seek damages arising out of any breach thereof.

## VI.   <u>MISCELLANEOUS</u>

35.   <u>Exhibits</u>.   All of the Exhibits to be attached hereto shall be incorporated by reference as though fully set forth herein.   In the event that there exists a conflict or inconsistency between the terms of this Agreement and the terms of any exhibit attached hereto, the terms of this Agreement shall prevail.

36.   <u>No Admission</u>.   It is expressly understood and agreed that this Settlement Agreement does not in any way embody, reflect, or imply any admission of wrongdoing on the part of any of the Released Parties, and the parties hereto may not use it for such purpose in any

Doc#: US1:9144604v1

subsequent legal proceeding.   Neither this Settlement Agreement nor any proceedings undertaken in accordance with the terms set forth herein shall be construed as or deemed to be evidence or an admission or concession by any of the Released Parties as to the validity of any of the Released Claims.

37.   <u>No Prejudice to Parties From Confidential Settlement Communications</u>.   In the event that this Settlement Agreement does not become final in accordance with the terms hereof, the parties hereto expressly reserve all of their rights and preserve all applicable defenses.   All communications between the parties hereto leading up to or related to the Settlement are confidential settlement communications inadmissible under Rule 408 of the Federal Rules of Evidence and any and all other applicable federal and state laws in any proceedings between the parties to this Agreement or between a Class Member and a Party.   The provisions of this paragraph shall survive and continue to apply to each Party, even if the Court does not approve the Settlement Agreement, or the Court's approval of the Settlement Agreement is set aside, or Defendant terminates the Settlement Agreement pursuant to the provisions of paragraph 29 of this Settlement Agreement.

38.   <u>Binding Effect</u>.   The terms of this Settlement Agreement shall be binding on, and inure to the benefit of, the parties hereto and their respective successors and assigns. The parties hereto expressly disclaim any intention to create rights under this Settlement Agreement that may be enforced by any non-party under any circumstances whatsoever, except as expressly provided in this Settlement Agreement.

39.   <u>Entire Agreement</u>.   This Settlement Agreement and its Exhibits constitute the entire, complete, and integrated statement of each and every term and provision agreed to by the Parties, and is not subject to any conditions not provided for in this Settlement Agreement.

24

There are no promises, understandings, or terms of the Settlement Agreement other than those stated herein.  This Settlement Agreement supersedes and renders of no effect all other oral or written communications concerning the subject matter hereof.

40.    Disclosures About Settlement.    The Parties agree that the Settlement set forth herein constitutes a fair, reasonable and adequate resolution of the claims that Plaintiffs asserted against ALPA, and that it promotes the public interest.    The Parties further agree that unless ordered by the Court, they will not publicize, disseminate, refer to, or otherwise distribute to any third party, including Class Members other than the Named Plaintiffs, any information regarding the negotiations between the Parties, or any other information or documents they have obtained from the other side in connection with negotiations to resolve this Action, other than in effort to garner support for and minimize objections to the Settlement.

41.    Modification and Waiver.    After entry of the Court's order preliminarily approving the Settlement, the terms and provisions of this Settlement Agreement may not be changed, waived, modified, or varied in any manner whatsoever unless in a writing duly signed by counsel for all parties hereto or their successors-in-interest and with the consent of the Court. Any failure by any party to insist upon the strict performance by any other party hereto of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the provisions hereof, and that party, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Settlement Agreement to be performed by the other party.

42.    No Party to this Agreement is the Drafter. This Settlement Agreement was mutually prepared by the parties hereto and shall not be construed against any of them solely by reason of authorship.

Doc#: US1:9144604v1

43.   <u>Execution in Counterparts</u>. The signatories to this Settlement Agreement may execute this Settlement Agreement in counterparts, and the execution of counterparts shall have the same effect as if all counsel had signed the same instrument.  Facsimile signatures shall be considered as valid signatures as of the date of this Settlement Agreement, but the original signature pages shall subsequently by appended to this Settlement Agreement and filed with the Court.

44.   <u>Notices.</u>  Notices required by this Agreement shall be submitted either by any form of overnight mail or in person to:

GREEN JACOBSON, PC
Allen P. Press
Joe Jacobson
7733 Forsyth Blvd.
Suite 700
Clayton, MO 63105

SCHNADER HARRISON SEGAL & LEWIS LLP
Lisa J. Rodriguez
Nicole M. Acchione
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, NJ 08002

**COUNSEL FOR NAMED PLAINTIFFS AND THE CLASS**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON  LLP
Jay Cohen
Daniel Toal
1285 Avenue of the Americas
New York, NY 10019

**COUNSEL FOR DEFENDANT ALPA**

Doc#: US1:9144604v1

APPLEBY (BERMUDA) LIMITED
John Wasty
Canon's Court
22 Victoria Street
PO Box HM 1179
Hamilton HM EX, Bermuda

**COUNSEL FOR KITTY HAWK**

SEDGWICK CHUDLEIGH
Mark Chudleigh
E.W. Pearman Building
20 Brunswick Street
Hamilton HM10, Bermuda

**COUNSEL FOR REINSURERS**

45.     <u>Jurisdiction as between Named Plaintiffs, Class Members, and Defendant</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without regard to choice of law principles, to the extent that federal law does not apply, provided, however, that any and all disputes between Kitty Hawk and the Reinsurers arising out of or in connection with this Settlement Agreement shall be governed by the arbitration provisions in the Reinsurance Contracts.  The United States District Court for the District of New Jersey shall have exclusive jurisdiction over all provisions and terms of this Settlement Agreement and over the administration and any and all disputes of any kind between or among the Named Plaintiffs, Class Members, and Defendant relating in any way to, or arising in any way out of, this Settlement Agreement.

46.     <u>Jurisdiction Over Reinsurers</u>.   The Reinsurers have agreed to submit to the jurisdiction of the United States District Court for the District of New Jersey solely for purposes of enforcing their obligation to make the payment described in Paragraph 2 (Settlement Terms, Consideration).  The Court shall have no jurisdiction over the Reinsurers for any other reason,

Doc#: US1:9144604v1

and the negotiation, execution, performance of a) this Settlement Agreement; b) any and all memoranda of understanding and which are now superseded by this Settlement Agreement; and c) any actions by Reinsurers in connection therewith do not constitute, nor shall they be construed to constitute, any admission or any evidence that Reinsurers are subject to the jurisdiction of any United States federal court, or of any court or state, territory, possession or jurisdiction of the United States.

Doc#: US1:9144604v1

IN WITNESS WHEREOF, the Parties hereto through their fully authorized

representatives have agreed to this Settlement Agreement:

On behalf of Plaintiffs,                                      DATED: January 22, 2014

| SCHNADER HARRISON SEGAL & LEWIS, LLP | GREEN JACOBSON, PC |
|---|---|
| BY: _Lisa J. Rodriguez_ Nicole M. Acchione Woodland Falls Corporate Park 220 Lake Drive East, Suite 200 Cherry Hill, NJ 08002 (856) 482-5222 | BY: Allen P. Press Joe Jacobson 7733 Forsyth Blvd. Suite 700 Clayton, MO 63105 (314) 862-6800 |

On behalf of Defendant Air Line Pilots Association,

| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | ARCHER & GREINER, PC |
|---|---|
| BY:_____ Jay Cohen Daniel Toal 1285 Avenue of the Americas New York, NY 10019 (212) 373-3000 | BY:_____ John Connell 33 East Euclid Avenue Haddonfield, NJ 08033 (856) 795-2121 |

On behalf of Kitty Hawk,

| APPLEBY (BERMUDA) LIMITED | |
|---|---|
| BY:_____ John Wasty Canon's Court 22 Victoria Street PO Box HM 1179 Hamilton HM EX, Bermuda (441) 295-2244 | |

29

IN WITNESS WHEREOF, the Parties hereto through their fully authorized representatives have agreed to this Settlement Agreement:

On behalf of Plaintiffs,                     DATED: January 22, 2014

| SCHNADER HARRISON SEGAL & LEWIS, LLP<br><br>BY:_____<br>Lisa J. Rodriguez<br>Nicole M. Acchione<br>Woodland Falls Corporate Park<br>220 Lake Drive East, Suite 200<br>Cherry Hill, NJ 08002<br>(856) 482-5222 | GREEN JACOBSON, PC<br><br>BY:_____<br>Allen P. Press<br>Joe Jacobson<br>7733 Forsyth Blvd.<br>Suite 700<br>Clayton, MO 63105<br>(314) 862-6800 |

On behalf of Defendant Air Line Pilots Association,

| PAUL, WEISS, RIFKIND, WHARTON & GARRISON  LLP<br><br>BY: _Daniel J. Toal_ (signature)<br>Jay Cohen<br>Daniel Toal<br>1285 Avenue of the Americas<br>New York, NY 10019<br>(212) 373-3000 | ARCHER & GREINER, PC<br><br><br>BY:_____<br>John Connell<br>33 East Euclid Avenue<br>Haddonfield, NJ 08033<br>(856) 795-2121 |

On behalf of Kitty Hawk,

| APPLEBY (BERMUDA) LIMITED<br><br>BY:_____<br>John Wasty<br>Canon's Court<br>22 Victoria Street<br>PO Box HM 1179<br>Hamilton HM EX, Bermuda<br>(441) 295-2244 | |

29

IN WITNESS WHEREOF, the Parties hereto through their fully authorized representatives have agreed to this Settlement Agreement:

On behalf of Plaintiffs,                           DATED: January 22, 2014

| SCHNADER HARRISON SEGAL & LEWIS, LLP | GREEN JACOBSON, PC |
|---|---|
| BY:_____ | BY:_____ |
| Lisa J. Rodriguez | Allen P. Press |
| Nicole M. Acchione | Joe Jacobson |
| Woodland Falls Corporate Park | 7733 Forsyth Blvd. |
| 220 Lake Drive East, Suite 200 | Suite 700 |
| Cherry Hill, NJ 08002 | Clayton, MO 63105 |
| (856) 482-5222 | (314) 862-6800 |

On behalf of Defendant Air Line Pilots Association,

| PAUL, WEISS, RIFKIND, WHARTON & GARRISON  LLP | ARCHER & GREINER, PC |
|---|---|
| BY:_____ | BY:_____ |
| Jay Cohen | John Connell |
| Daniel Toal | 33 East Euclid Avenue |
| 1285 Avenue of the Americas | Haddonfield, NJ 08033 |
| New York, NY 10019 | (856) 795-2121 |
| (212) 373-3000 | |

On behalf of Kitty Hawk,

| APPLEBY (BERMUDA) LIMITED | |
|---|---|
| BY:_____ | |
| John Wasty | |
| Canon's Court | |
| 22 Victoria Street | |
| PO Box HM 1179 | |
| Hamilton HM EX, Bermuda | |
| (441) 295-2244 | |

29

IN WITNESS WHEREOF, the Parties hereto through their fully authorized representatives have agreed to this Settlement Agreement:

On behalf of Plaintiffs,                    DATED: January 22, 2014

| SCHNADER HARRISON SEGAL & LEWIS, LLP<br><br>BY:_____<br>Lisa J. Rodriguez<br>Nicole M. Acchione<br>Woodland Falls Corporate Park<br>220 Lake Drive East, Suite 200<br>Cherry Hill, NJ 08002<br>(856) 482-5222 | GREEN JACOBSON, PC<br><br>BY:_____<br>Allen P. Press<br>Joe Jacobson<br>7733 Forsyth Blvd.<br>Suite 700<br>Clayton, MO 63105<br>(314) 862-6800 |
| --- | --- |

On behalf of Defendant Air Line Pilots Association,

| PAUL, WEISS, RIFKIND, WHARTON & GARRISON  LLP<br><br><br>BY:_____<br>Jay Cohen<br>Daniel Toal<br>1285 Avenue of the Americas<br>New York, NY 10019<br>(212) 373-3000 | ARCHER & GREINER, PC<br><br><br>BY:_____<br>John Connell<br>33 East Euclid Avenue<br>Haddonfield, NJ 08033<br>(856) 795-2121 |
| --- | --- |

On behalf of Kitty Hawk,

| APPLEBY (BERMUDA) LIMITED<br><br>BY:_____<br>John Wasty<br>Canon's Court<br>22 Victoria Street<br>PO Box HM 1179<br>Hamilton HM EX, Bermuda<br>(441) 295-2244 | |
| --- | --- |

29

On behalf of the Reinsurers,

| | |
|---|---|
| SEDGWICK CHUDLEIGH<br><br><br>BY:_____<br>Mark Chudleigh<br>E.W. Pearman Building<br>20 Brunswick Street<br>Hamilton HM10, Bermuda<br>(441) 296-9276 | |

30

# Exhibit A

## 1ST Excess (LK9905267)

| Syndicate | Percentage | Contribution US$ |
|---|---|---|
| 1241 | 30.769 | 7,692,250.00 |
| 1007 | 23.077 | 5,769,250.00 |
| 33 | 15.385 | 0 |
| 376 | 15.385 | 3,846,250.00 |
| 861 | 5.538 | 1,384,500.00 |
| 1209 | 9.846 | 2,461,500.00 |
| | 100% | 21,153,750.00 |

## 2ND Excess (LK9905268)

| Syndicate | Percentage | Contribution US$ |
|---|---|---|
| 1241 | 6.25 | 312,500.00 |
| 1007 | 7.812 | 390,600.00 |
| 2488 | 8.593 | 429,650.00 |
| 623 | 17.187 | 859,350.00 |
| 33 | 17.187 | 859,350.00 |
| 376 | 7.813 | 390,650.00 |
| 861 | 4.219 | 210,950.00 |
| 1209 | 7.500 | 375,000.00 |
| 1211 | 10.938 | 546,900.00 |
| 570 | 1.563 | 78,150.00 |
| 456 | 7.813 | 390,650.00 |
| 205 | 3.125 | 156,250.00 |
| | 100% | 5,000,000.00 |