# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK BRADY, *et al.,* | |
| *Plaintiffs,* | |
| v. | Civil Action No. 02-2917 (JEI) |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | |
| *Defendant.* | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR FINAL APPROVAL OF SETTLEMENT

Lisa J. Rodriguez
Nicole M. Acchione
SCHNADER HARRISON SEGAL
  & LEWIS LLP
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, N.J. 08002-1165
(856) 482-5222

Allen P. Press
Joe D. Jacobson
GREEN JACOBSON, P.C.
7733 Forsyth Blvd., Suite 700
Clayton, MO 63105
(314) 862-6800

Dated: May 9, 2014

<u>**TABLE OF CONTENTS**</u>

**Page(s)**

TABLE OF AUTHORITIES ................................................................... ii

I.    PRELIMINARY STATEMENT ....................................................1

II.   HISTORY OF SETTLEMENT NEGOTIATIONS AND MEDIATIONS .......2

III.  TERMS OF THE SETTLEMENT ..................................................4

IV.   THE PLAN OF ALLOCATION ....................................................5

V.    THE NOTICE ..............................................................................7

VI.   THE COURT SHOULD APPROVE THE SETTLEMENT ...........................8

   A.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE............ 8

      1.   Complexity, Expense and Likely Duration of the Litigation ................... 10

      2.   Significant Obstacles and Risks to Recovery .......................................... 12

      3.   Reaction of the Class .............................................................................. 16

      4.   Stage of the Proceedings and Amount of Discovery ............................... 17

      5.   Ability of Plaintiffs to Maintain Class Certification............................... 19

      6.   Ability of Defendant to Withstand a Greater Judgment .......................... 19

      7.   The Range of Reasonableness of the Settlement Fund in
           Light of the Best Possible Recovery and the Attendant
           Risks of Litigation ................................................................................. 20

VII. CONCLUSION ..........................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Colon v. Passaic City*,
   2012 WL 1457764 (D.N.J. Apr. 24 2012).......................................................18

*Girsh v. Jepson*,
   521 F. 2d 153 (3d Cir. 1975)..................... 8, 9, 10, 12, 16, 17, 19, 20, 21, 22, 23

*Henderson v. Volvo Cars of N. Am. LLC.*,
   2013 WL 1192479 (D. N.J. Mar 22, 2013).................................................10, 18

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ......................................................16

*In re AT&T Corp. Sec. Litig.*,
   455 F. 3d 160 (3d Cir. 2006).........................................................................9, 22

*In re Cendant Corp Litig.*,
   264 F 201 (3d Cir 2001)..............................................................................9, 11, 15

*In re Prudential Ins. Co. Am. Sales*,
   148 F.3d at 319 ..............................................................................................17

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
   2012 WL 1964451 (D.N.J. May 31, 2012 ) ...........................................9, 11, 18

*In re Schering-Plough Corp. Sec. Litig.*,
   2009 WL 5218066 (D.N.J. Dec. 31 2009)........................................................10

*In re Schering-Plough/Merck Merger Litig.*,
   2010 WL 1257722 (D.N.J. Mar. 26 2010)...........................................13, 20, 21

*In re Warfarin Sodium Antitrust Litig.*,
   391 F. 3d 516 (3d Cir. 2004)...............................................................9, 11, 21

*Johnson & Johnson*,
   900 F. Supp. 2d at 484-85 ...............................................................................21

*Plymouth Cnty. Contributory Ret. Sys. v. Hassan*,
   2012 WL 664827 (D.N.J. Feb 28, 2012) ......................................................9, 13

PHDATA 4909736_1

*Robbins v. Koger Props. Inc.*,
116 F.3d 1215 (10th Cir. 1996)............................................................................16

*Rowe v. E.I. DuPont DeNemours & Co.*,
2011 WL 3837106 (D.N.J. Aug. 26, 2011) ......................................................10

*Simon v. KPMG LLP*,
2006 WL 1541048 (D.N.J. June 2, 2006)..........................................................14

*Smith v. Daimler Chrysler Servs. N. Am., LLC*,
2005 WL 2739213, at *3 (D.N.J. Oct. 24, 2005)...............................................15

*United Nat'l Ret. Fun v. Watts*,
2005 WL 2877899 (D.N.J. Oct. 28, 2003) ........................................................21

**Rules and Other Authorities**

Fed. R. Civ. P. 23(e)(2)...........................................................................................8

PHDATA 4909736_1

## I.    PRELIMINARY STATEMENT

The Court should grant final approval to the $53 million Settlement of this class action brought by the former TWA pilots against their union, the Air Line Pilots Association, International (ALPA), for its breach of the duty of fair representation.

This Settlement is an excellent result for the TWA pilots. The case was filed in 2002. It was dismissed by the Court on a motion to dismiss in 2003, and remanded by the Third Circuit in 2004.[1] Following remand to this Court, original plaintiffs' counsel withdrew and the law firms of Trujillo Rodriguez & Richards, LLC[2] and Green Jacobson, P.C. (collectively "Class Counsel") were appointed by the Court as co-Class Counsel in 2006.

Once the case was remanded, litigation began in earnest. Summary judgment motions were filed and decided and, in the Summer of 2011, the case went to trial before a 12-member jury. Following a five-week trial, the jury found in favor of

---

[1]    The original complaint also asserted claims against American Airlines and its pilots' union, the Allied Pilots Association ("APA"). The Third Circuit affirmed dismissal of the Complaint against those parties.

[2]    Effective July 31, 2013, the attorneys of Trujillo Rodriguez & Richards, LLC joined the law firm Schnader Harrison Segal & Lewis, LLP and continued in their role as Class Counsel.

PHDATA 4909736_1

the TWA Pilots, concluding ALPA had breached its duty, and that its breach caused injury to some of the TWA pilots.

After the jury's finding of liability, the parties began conducting discovery on the issue of damages, exchanged expert reports, deposed each other's experts, and filed motions to exclude or limit expert testimony. ALPA also moved for summary judgment on damages. The parties were proceeding towards a March 17, 2014, trial date on damages when the case settled.

Settlement was reached after both sides had a full understanding of the strengths and weaknesses of their respective cases. The Settlement was negotiated at arm's-length with the assistance of a mediator. Class Counsel believe the proposed $53 million settlement is a good result for the Class. It is fair, reasonable, and adequate, and should be approved.

## II.    HISTORY OF SETTLEMENT NEGOTIATIONS AND MEDIATIONS

ALPA took the position from the start that liability could never be established. Consequently, the case was hard fought. Prior to the June 2011 start of the liability trial, ALPA had rejected any suggestion to discuss settlement. There was no offer to settle on the table.

Following the jury's liability finding, there was an initial attempt at mediation. In early 2012, the parties retained the Honorable James Rosenbaum (Ret.) who conducted two in-person mediation sessions in Washington, D.C. The

PHDATA 4909736_1

first mediation session took place February 16, 2012. ALPA's counsel attended, along with representatives of ALPA and its captive insurance company Kitty Hawk, as well as multiple representatives from ALPA's various reinsurers. The parties made no progress during the day-long mediation. It was agreed, however, that the parties would attend a second mediation session, after Plaintiffs had provided ALPA with their expert's preliminary damage analysis.

The second mediation took place March 12, 2012. At this mediation it became clear that settlement was impossible while ALPA's post-trial motions, including its motion for a new trial or motion for judgment notwithstanding the verdict, were still pending. There were some follow-up telephone calls with the mediator, but no progress was made. Mediation efforts were abandoned in the Spring of 2012.

The Court ruled on ALPA's motions, denying them all, on May 4, 2012. The Court then entered a schedule for damages discovery and for the exchange of expert reports. ALPA retained new trial counsel, the law firm of Paul, Weiss, Rifkind, Wharton & Garrison, LLP.

Damages discovery continued over the next year and a half. In August 2013, the parties each filed *Daubert* motions to exclude testimony proferred by the other's proposed experts. At the same time, ALPA moved for summary judgment of Plaintiffs' damage claims. Following completion of briefing on those motions,

PHDATA 4909736_1

the Court set a date for submission of the parties' Joint Final Pretrial Order and a trial date of March 17, 2014. It was at this point the parties considered a renewed effort at mediation.

The parties ultimately agreed to attempt mediation with David Geronemus, a JAMS mediator in New York. The parties scheduled a mediation session on Geronemus' first available date, November 26, 2013. On that date, following more than 14 hours of mediation, the parties entered into a Memorandum of Understanding, agreeing to settle the TWA pilots' claim against ALPA for $53 million. The formal Settlement Agreement was drafted over the next two months, requiring numerous revisions regarding the exact terms of the Settlement, although the financial terms remained unchanged.

## III.    TERMS OF THE SETTLEMENT

The terms of the Settlement are set forth in the Stipulation and Class Action Settlement Agreement dated January 22, 2014 (the "Settlement"). *See* Rodriguez Decl., Exhibit A.[3] Under the terms of the Settlement, Plaintiffs agreed to release any and all claims against Defendant, Kitty Hawk, and the reinsurers arising from

---

[3]    The Declaration of Lisa J. Rodriguez (hereinafter "Rodriguez Decl.") with exhibits is submitted in support of Plaintiffs' Motion for Final Approval of Settlement, Motion to Approve the Plan of Allocation, Motion for Award of Attorneys' Fees and Expenses and Motion for Award of Incentive Payments.

PHDATA 4909736_1

or relating to facts alleged in this action in exchange for a cash payment of $53 million for the benefit of the certified Class. The Class is defined as, "All persons formerly employed as a pilot by TWA, Inc. and who became employed as a pilot by TWA, LLC as a result of the April 2001 asset sale between American Airlines and TWA, Inc."

## IV.   THE PLAN OF ALLOCATION

The Plan of Allocation was filed with the Court as part of Plaintiffs' Motion for Preliminary Approval. It was described in the Settlement Notice mailed to Class members and published in its entirety on a website established for this action, www.stlouislaw.com/TWA. The Plan of Allocation was developed with the assistance of Plaintiffs' expert, Rikk Salamat, and input from the Named Plaintiffs.

Under the Plan of Allocation, every member of the Class who submits a timely Claim Form will receive an allocation of settlement funds. The minimum allocation is $200. The amounts awarded are intended to reflect the relative economic harm suffered by the pilots. The most senior and most junior pilots on the TWA seniority list are to receive smaller amounts, while the bulk of the settlement funds are distributed to those Class Members who were furloughed, but would not have been furloughed under a Date-of-Hire ("DOH") seniority list, and

PHDATA 4909736_1

to those Class Members who could have been Captains under the DOH list but were demoted to First Officer under Supplement CC (the actual seniority list).

The actual amount to be distributed to the Class Members depends upon the net settlement amount after deductions for attorneys' fees and various expenses. The following discussion assumes a net settlement amount of $32 million. It also assumes full participation by all Class Members.

Pilots with TWA seniority numbers from 1 to 821 will generally receive amounts ranging from $200 up to an estimated $2,600. Roughly half of this group, generally the most senior pilots, will receive the minimum amount of $200 each.

Pilots with TWA seniority numbers from 822 to 994 will generally receive amounts estimated at between $2,800 and $31,000.

Pilots with TWA seniority numbers from 946 to 1881 will generally receive the maximum amount, estimated at $32,000.

Pilots with TWA seniority numbers from 1882 to 2103 will generally receive amounts estimated at between $3,000 and $25,000.

Pilots with TWA seniority numbers from 2104 to 2337 will generally receive amounts estimated at between $200 and $2,000. Roughly half of this group, generally the most junior pilots, will receive the minimum amount of $200 each.

PHDATA 4909736_1

Pilots who were members of the Class but who never worked under Supplement CC would receive the minimum award of $200.

A more detailed description of the Plan is set forth in Plaintiffs' Motion to Approve the Plan of Allocation of the Settlement Fund

## V.    THE NOTICE

By Order dated February 21, 2014, the Court preliminarily approved the Settlement and directed that notice be mailed (Settlement Notice) to the Class by March 14, 2014. Class Counsel caused the Settlement Notice to be mailed to 2,331 class members. *See* Rodriguez Decl., Ex. F.

The Notice informed the Class of: (i) the fact and terms of the Settlement; (ii) the right of Class Members to object to the Settlement, the proposed award of attorneys' fees and Plan of Allocation; and (iii) the procedure for objection to the Settlement. Pursuant to the Court's February 21, 2014 Order, any objections to any part of the Settlement must be filed by May 17, 2014. As of the date of the filing of this Motion, there have been over 1,800 claims submitted. Counsel will update the Court about any objections to the Settlement before the May 27, 2014, Final

PHDATA 4909736_1

Approval Hearing.[4] Rodriguez Decl., Ex. D (Notice of Settlement) and Ex. E (Claim Form).

## VI.   THE COURT SHOULD APPROVE THE SETTLEMENT

### A.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Court may approve a class action settlement only if it is "fair reasonable and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit has adopted a nine-factor test to make this determination. The test was first stated in *Girsh v. Jepson*, 521 F. 2d 153, 157 (3d Cir. 1975). The elements of this test have become known as the "Girsh factors." In deciding whether to approve a settlement, the Court must consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

---

[4]      On February 24, 2014, ALPA provided notice of the proposed settlement to state and federal regulators consistent with the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1715. To date, no regulator has objected to the terms of the settlement.

PHDATA 4909736_1

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-cv-1435, 2012 WL

1964451 at *2 (D.N.J. May 31, 2012 ) (*citing Girsh*, 521 F.2d at 157). *See also In*

*re AT&T Corp. Sec. Litig.*, 455 F. 3d 160, 164-65 (3d Cir. 2006).

As this Court has held, applying *Girsh* is not a mechanical exercise:

> These factors are a guide and the absence of one or more
> does not automatically render the settlement unfair . . . .
> Rather, the court must look at all the circumstances of the
> case and determine whether the settlement is within the
> range of reasonableness under *Girsh* . . . . In sum, the
> Court's assessment of whether the settlement is fair,
> adequate and reasonable is guided by the *Girsh* factors,
> but the Court is in no way limited to considering only
> those enumerated factors and is free to consider other
> relevant circumstances and facts involved in [the]
> Settlement.

*Plymouth Cnty. Contributory Ret. Sys. v. Hassan*, No. 08-cv-1022, 2012 WL

664827, at *2 (D.N.J. Feb 28, 2012) (emphasis added) (Cavanaugh); *Schering-*

*Plough ERISA*, 2012 WL 1964451 at *2 (same). The Third Circuit has directed

district courts to apply an "initial presumption of fairness" to settlements if they

find:

> (1) the settlement negotiations occurred at arm's length;
> (2) there was sufficient discovery; (3) the proponents of
> the settlement are experienced in similar litigation; and
> (4) only a small fraction of the Class objected.

*In re Warfarin Sodium Antitrust Litig.*, 391 F. 3d 516, 535 (3d Cir. 2004), *quoting*

*In re Cendant Corp Litig.*, 264 F 3d 201, 232 n.18 (3d Cir 2001) (Cendant I);

PHDATA 4909736_1

*Henderson v. Volvo Cars of N. Am. LLC.*, No 09-cv-4146, 2013 WL 1192479 at *7 (D. N.J. Mar 22, 2013) (same).

Here, the Court should find the proposed Settlement presumptively fair.  It is undisputed that the Settlement was negotiated at arm's-length, in an adversarial context and with the assistance of an independent mediator, by counsel experienced in complex and class litigation.

Moreover, the Settlement occurred after a liability trial and after the close of damages discovery, on a fully-developed damages record, only months before the damages trial was scheduled to begin. *In re Schering-Plough Corp. Sec. Litig.*, No. 01-cv-0829, 2009 WL 5218066 at *3 (D.N.J. Dec. 31, 2009); *Rowe v. E.I. DuPont DeNemours & Co.*, Nos. 06-cv-1810, 0-cv-3080, 2011 WL 3837106 at *11 (D.N.J. Aug. 26, 2011) (finding settlement presumptively fair). It is too soon to assess the fourth factor, as the deadline for objections has not yet passed.  As of the writing of this memorandum, no objections have been filed, although two class members have stated that they plan to object.

The Settlement also satisfies the *Girsh* factors:

### 1.    Complexity, Expense and Likely Duration of the Litigation

The first *Girsh* factor is whether the settlement avoids a lengthy, complex, and expensive continuation of the litigation. "This factor is concerned with assessing the probable costs, in both time and money, of continued litigation."

PHDATA 4909736_1

*Schering-Plough ERISA*, 2012 WL 1964451, at *4 (*quoting Cendant I*, 264 F.3d at 234). The pending damages trial presented many complex factual and legal issues requiring the use of experts, making the trial likely lengthy and expensive. For example, to prevail Plaintiffs would have to persuade the jury that their alternative seniority lists, prepared by their experts, were reasonable. Also, while the affirmative defense of failure to mitigate is not available to ALPA, the Plaintiffs still would have to provide evidence of set-off earnings for the TWA pilots, which would have been complicated on a class-wide basis and possibly confusing to the jury.

If Plaintiffs prevail at the damages trial, ALPA would surely appeal both the liability and the damages findings. The damages trial, post-trial motions, and any appeal would significantly add to the expense of this litigation and delay, potentially for years, any recovery to the Class. There were no assurances that Plaintiffs would ultimately prevail. *See Warfarin*, 391 F.3d at 536 ("it was inevitable that post-trial motions and appeals would not only further prolong this litigation but also reduce the value of any recovery to the class").

Settlement at this juncture results in a substantial present recovery without the risks and delays of trial and post-trial proceedings. The complexity, expense, and likely duration of continued litigation absent the Settlement all weigh heavily in favor of approval.

PHDATA 4909736_1

## 2.    Significant Obstacles and Risks to Recovery

Although Plaintiffs prevailed on the issue of liability at trial, the fourth *Girsh* factor remains an issue. ALPA repeatedly expressed it intent to appeal the liability verdict, if Plaintiffs' prevailed on the issue of damages.

The fifth factor is also extremely relevant: the risk of establishing damages. Plaintiffs intended to establish at trial on damages alternative "but for" seniority lists. That is, what the seniority list would have looked like if not for ALPA's breach of its duty of fair representation to the TWA pilots. Plaintiffs intended to prove two such alternative seniority lists through its two experts, Rikk Salamat and Henry Farber.

Although Plaintiffs are confident in the merits of their damage theory, they acknowledge that the outcome of the case is uncertain, particularly since Plaintiffs would have to overcome numerous legal and factual hurdles which might prevent them from recovering anything. There are significant risks that Plaintiffs would not be able to prove that their theory of damages is valid. This Court recognized the difficulty when it noted that "the calculation of damages [here] is an extraordinary difficult exercise." *See* Doc. No. 569-9 (Toal Decl., Ex. 65, 7/12/12 Hearing Tr. 7:20-21).

At the time of settlement, ALPA had a pending motion for summary judgment contending that Plaintiffs are unable to meet their burden of proving that

PHDATA 4909736_1

they suffered monetary harm as a result of ALPA's breach of duty. ALPA contends that it is Plaintiffs' burden to show that the APA would have agreed to Plaintiffs' "but-for seniority list." ALPA is prepared to introduce evidence at trial that the APA would have never agreed to any such list.

ALPA also contends that the testimony of Plaintiffs' experts, Rikk Salamat and Henry Farber, is not admissible to establish damages. ALPA challenges Plaintiffs' experts' methodologies as speculative and subjective, based on unsound assumptions. ALPA is prepared to introduce experts to challenge Plaintiffs' damages theories, including their factual assumptions. ALPA's motions to bar Salamat and Farber from providing expert testimony and its motion for summary judgment were both pending when Settlement was reached.

In short, despite Counsel's expectation that they could prevail at the damages trial, there are multiple issues pending that present the possibility that Plaintiffs would not be able to prove damages at trial. *See Schering Plough ERISA,* 2012 WL 1964451, at *5 ("that Plaintiff faced significant risks in establishing liability and damages if the matter proceeded to trial … weighs in favor of approval"); *Plymouth Cnty.*, 2012 WL 664827, at *3 ("Plaintiff faces significant risks in establishing liability and damages, and this factor therefore weighs in favor of approval"); *Alves*, 2012 WL 6043272, at *19 (approving settlement where "[l]iability would be a strongly contested issue"); *In re Schering-Plough/Merck*

PHDATA 4909736_1

*Merger Litig.*, No. 09-cv-1099, 2010 WL 1257722, at *11 (D.N.J. Mar. 26 2010) (Cavanaugh) (settlement approved where there was "substantial risk that Plaintiffs would not prevail" on their claim); *Simon v. KPMG LLP*, No. 05-cv-3189, 2006 WL 1541048, at *10-11 (D.N.J. June 2, 2006) (Cavanaugh, J.) ("Plaintiffs would have to overcome numerous legal hurdles" that were "clearly outweighed by the benefits of an immediate settlement").

Plaintiffs face additional risks from their reliance on expert testimony to prove most of their damage case. At trial, Plaintiffs would present the expert testimony of Rikk Salamat and Henry Farber, each of whom independently reached expert opinions on what fair, reasonable seniority lists would have looked like if ALPA had not breached its duty of fair representation to the TWA pilots.

Building on these lists, Salamat is able to calculate the amount of damages suffered by the TWA pilots from their failure to obtain an improved seniority list. Salamat developed a method to calculate the average income that would be earned for each pilot under any proposed seniority list, comparing that income to the income available to each pilot under Supplement CC.

ALPA is prepared to introduce its own experts to challenge each of the assumptions underpinning Plaintiffs' experts' methodologies. This would precipitate a battle of the experts. There are no guarantees about the result of this battle, and no guarantee that the jury would understand or believe Plaintiffs'

PHDATA 4909736_1

experts.  *See Cendant I*, 264 F.3d at 239 ("establishing damages at trial would lead to a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe"); *Smith v. Daimler Chrysler Servs. N. Am., LLC*, 00-cv-6003, 2005 WL 2739213, at *3 (D.N.J. Oct. 24, 2005) (Cavanaugh, J.) (finding risks supported settlement approval where "Plaintiffs would have to rely heavily upon statistical evidence by way of expert opinions with the uncertainty of how the Court or a jury would interpret such opinions"); *Vicuron*, 512 F. Supp. 2d at 285 ("Each side would have offered extensive testimony from expert witnesses on the efficacy of drugs, … clinical studies, … causation and damages. Compelled to choose between experts, it is far from certain that a jury would have found for the class, much less awarded it damages on the order of the settlement agreement").

Even if the Plaintiffs would prevail at trial, the risks confronting them would continue through post-trial motions and probable appeal. *See Merck ERISA*, 2010 WL 547613, at *8 ("Even if Plaintiffs successfully established causation at trial, post-trial motions and appeals present added risk"). As has been aptly noted, "although plaintiffs may prevail at trial, even a victory at trial is not a guarantee of ultimate success" because "the defendants would appeal such judgment" and "[a]n appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself" *Id.* at *11 (internal quotations and citations omitted).

*Robbins v. Koger Props. Inc.*, 116 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict in securities fraud action following two decades of litigation); *In re Apple Computer Sec. Litig.,* No. c-84-20148(A), 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

In short, due to the many significant risks confronting Plaintiffs, both of these *Girsh* factor strongly weigh in favor of final approval of the proposed Settlement.

### 3.    Reaction of the Class

The second *Girsh* factor "evaluates whether members of the class generally support or object to the settlement." *Alves*, 2012 WL 6043272 at *10. As of May 9, 2014, over 1800 class members had already submitted claims. This high percentage of participation in the Settlement is a strong indication that the Class overwhelmingly supports the settlement. *In re Cendant Corp. Litig*., 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weights in favor of Settlement."); *In re Auto. Refinishing Paint Antitrust Litig*., 2007 WL 4570918, at *4 ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements."). The deadline

PHDATA 4909736_1

for objections has not yet passed. Counsel is aware of two likely objections, although neither objection has yet been filed. Plaintiffs will update the Court on any objections before the hearing on May 27, 2014.

### 4.    Stage of the Proceedings and Amount of Discovery

The third *Girsh* factor requires the Court to "consider the degree of case development that Class Counsel have accomplished prior to Settlement, including the type and amount of discovery already undertaken." *Merck ERISA*, 2010 WL 547613 at *7 (quoting *GM Truck*, 55 F.3d at 813). "In short, under this factor, the Court considers whether the amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'" *Merck ERISA*, 2010 WL 547613, at *7 (alteration in original) (quoting *In re Prudential Ins. Co. Am. Sales*, 148 F.3d at 319).

Here, the Settlement was not reached until after a 5-week jury trial on the issue of liability, and two months before the parties were scheduled to go to trial on damages.

It was reached after the completion of all discovery, including damages discovery and expert discovery, and after the review of tens of thousands of documents. It was also after Class Counsel took 23 fact witness depositions and five expert depositions. Finally, it took place after briefing was completed on ALPA's motion for summary judgment and the *Daubert* motions. *See* Decl. of Lisa

PHDATA 4909736_1

J. Rodriguez, ¶¶ 14-29. *See Henderson*, 2013 WL 1192479, at \*9 (approving settlement reached after three years of litigation and substantial completion of discovery, noting that "[g]enerally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success" (citation omitted); *Alves*, 2012 WL 6043272, at \*18 (approving settlement and noting that "this is not a case resolved on a scant record without discovery. Nor does class counsel lack understanding of the facts and issues. Quite the opposite").

Here, all that remained to be done before the scheduled March 17, 2014 trial date was the completion of the Joint Final Pretrial Order. *Rowe*, 2011 WL 3837106, at \*13 ("Given that the parties only negotiated the proposed settlement on the eve of trial, the Court finds that this factor weighs strongly in favor of accepting the parties' proposal").

Plaintiffs and their counsel "have an adequate appreciation of the facts in this matter, and this factor weighs in favor of approval." *Schering-Plough ERISA,* 2012 WL 1964451, at \*4; *see also Colon v. Passaic City*, No. 08-cv-4439, 2012 WL 1457764, at \*4 (D.N.J. Apr. 24 2012) (Cavanaugh, J.) ("considering the amount of effort expended by Class Counsel in this matter, as well Class Counsel's extensive experience litigating class actions … the Court is convinced that Plaintiffs have a sufficient understanding of the merits of this case").

18

PHDATA 4909736_1

Accordingly, the third *Girsh* factor also supports approval of the proposed Settlement.

### 5.    Ability of Plaintiffs to Maintain Class Certification

The sixth *Girsh* factor "evaluates the risk of maintaining the class throughout the trial." *F.C.V. Inc.*, 2006 WL 1319822, at 6. Here, the Class was certified and a liability verdict was reached on a class-wide basis. Defendant maintained that Plaintiffs' damage theory was flawed and did not support damages on a class-wide basis. A motion to decertify was threatened, but not filed. Therefore, although unlikely, it is possible that the Court could decertify the class for the purpose of damages. On a whole, this factor neither supports nor detracts from the fairness of the Settlement.

### 6.    Ability of Defendant to Withstand a Greater Judgment

In addressing the seventh *Girsh* factor, the Court must consider whether Defendants could withstand a judgment much greater than the amount of the settlement. The issue of ALPA's ability to withstand a greater judgment was a prominent issue throughout the mediation. ALPA had $90 million in insurance coverage provided by Kitty Hawk. Kitty Hawk, however, did not have $90 million; rather, it had passed its risks onto Reinsurers. The Reinsurers contended that they had no liability under their reinsurance contracts with Kitty Hawk, even if final judgment was entered and affirmed against ALPA, and offered case authority to

19

support their contention. ALPA represented during the course of the mediation that the most it could pay towards a settlement out of its own resources was approximately $26.5 million.[5]

As part of the negotiation of the Settlement Agreement, ALPA provided Class Counsel with copies of ALPA's most recent audited financial statements. Those financial statements were followed-up with an affidavit of W. Randolph Hekling, ALPA's Vice President for Finance, attesting to the truth and accuracy of the financial statements. The financial evidence demonstrated that ALPA did not have the wherewithal to withstand a judgment in an amount substantially greater than the Settlement.

Even if ALPA's ability to pay was somehow greater, which it is not believed to be, that fact would not offset the tremendous risks that existed relating the Plaintiffs' proof of damages.

>            **7.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The final two *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Schering-*

---

[5]      ALPA and Kitty Hawk jointly paid $26,846,250 of the Settlement, while the Reinsurers paid the remaining $26,253,750.00 of the total $53 million Settlement amount.

PHDATA 4909736_1

*Plough/Merck Merger*, 2010 WL 1257722, at *12 (quoting *Warfarin*, 391 F.3d at 538). A Court asked to approve a settlement "should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor), and a range in light of all the attendant risks of litigation (the ninth factor)." S*chering-Plough/Merck Merger*, 2010 WL 1257722, at 12. Additionally, in conducting its evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution…." *Johnson & Johnson*, 900 F. Supp. 2d at 484-85 (internal quotations and citations omitted). It has been recognized that "[t]he best possible recovery, while arguably more than the settlement, is tempered by the risks of further litigation." *United Nat'l Ret. Fun v. Watts*, No. o4-cv-3603, 2005 WL 2877899, at *4 (D.N.J. Oct. 28, 2003) (Cavanaugh, J.).

Here, ALPA claimed that Plaintiffs' experts' opinions offering "but-for" seniority lists were inadmissible, and that there was no scenario under which the APA would have agreed to a seniority integration list that was substantially better than Supplement CC. Plaintiffs' experts' damage models estimated potential recoverable damages for the damages period, after set-offs, without interest or pension enhancement, ranging from $50.5 million to $468.7 million. ALPA vigorously contested even the low end of this range, and the range depended upon both factual and legal issues that would be hotly contested at trial. This settlement

is within the range of total estimated recoverable damages sustained by the Class. The percentage recovery "must represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*." *Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 105 (D.N.J. 2012) (internal quotations omitted).

As described above, Plaintiffs faced risks with their experts' damage methodologies. Even if Plaintiffs obtained a favorable jury verdict, they faced almost certain appeal on both liability issues and issues relating to damages. Under these circumstances, the $53 million agreed to in mediation is a reasonable settlement in light of the potential recovery and all of the risks facing the Plaintiffs. Settling at this point provides an immediate and substantial monetary benefit for Class Members, and represents a "much better option than little or no recovery at all." *F.C.V. Inc.*, 2006 WL 1319822, at *7. *See also, In re AT&T Corp.*, 455 F.3d at 170 (approving settlement in light of the risks of establishing liability and damages").

PHDATA 4909736_1

## VII.   CONCLUSION

In sum, the *Girsh* factors support approval of the proposed Settlement. The Settlement proposed is fair, reasonable, and adequate. For the foregoing reasons, and for the reasons set forth in the Declaration of Lisa J. Rodriguez, the Plaintiffs respectfully request the Court grant final approval of the Settlement.

By:   /s/*Lisa J. Rodriguez*
      Lisa J. Rodriguez
      Nicole M. Acchione
      SCHNADER HARRISON SEGAL
       & LEWIS LLP
      Woodland Falls Corporate Park
      220 Lake Drive East, Suite 200
      Cherry Hill, N.J. 08002-1165
      (856) 482-5222

      Allen P. Press
      Joe D. Jacobson
      GREEN JACOBSON, P.C.
      7733 Forsyth Blvd., Suite 700
      Clayton, MO  63105
      (314) 862-6800

Dated:  May 9, 2014

PHDATA 4909736_1